UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN JOSE HEALTHCARE SYSTEM, LP,<br><br>Plaintiff,<br><br>v.<br><br>STATIONARY ENGINEERS LOCAL 39 PENSION TRUST FUND,<br><br>Defendant. | Case No. 21-cv-09974-SVK<br><br>**ORDER ON (1) PLAINTIFF'S MOTION TO VACATE ARBITRATION AWARD; AND (2) DEFENDANT'S MOTION TO CONFIRM ARBITRATION AWARD**<br><br>**ORDER SETTING JULY 12, 2022 CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. Nos. 9, 31 |

Plaintiff San Jose Healthcare System, LP, d/b/a Regional Medical Center of San Jose ("RMC") is an acute care hospital located in San Jose, California. Dkt. 1 ¶ 2. Defendant Stationary Engineers Local 39 Pension Trust Fund ("Pension Fund") is the pension trust fund of non-party Stationary Engineers Local 39 ("Union"), which represents a group of engineers, technicians, and utility persons who work for RMC. *Id.* ¶ 3. The Union and RMC are parties to a collective bargaining agreement ("CBA") that obligates RMC to make pension contributions for work covered by the CBA. Dkt. 30 ¶¶ V-VI. Those contributions are governed by a separate Trust Agreement between RMC and the Pension Fund. *Id.* ¶ VI.

This action relates to an October 1, 2021 arbitration award issued by Arbitrator William E. Riker (Dkt. 10-2) on a dispute submitted by the Pension Fund arising under the Trust Agreement. Dkt. 1 ¶ 1. RMC now moves to vacate the arbitration award. Dkt. 9. The Pension Fund moves to confirm the award. Dkt. 31. The Court held a hearing on March 22, 2022. *See* Dkt. 44. All Parties have consented to the jurisdiction of a magistrate judge. Dkt. 23, 26.

Having reviewed and considered the briefs, the arguments at the hearing, the applicable law, and the case file, the Court **GRANTS** Plaintiff RMC's motion to vacate the arbitration award and **DENIES** Defendant Pension Fund's motion to confirm the arbitration award.

## I.  BACKGROUND[1]

### A.  Collective Bargaining Agreement

RMC and the Union are parties to the CBA, which includes a requirement that RMC make contributions to the Pension Fund on behalf of employees covered by the CBA. CBA Article 7 § 6 (Pension Plan). The CBA expressly excludes from its coverage "all per diem and casual employees, including temporary help, i.e., employees hired for a period of time not to exceed ninety (90) calendar days." *Id.* Article 1 § 1 (Recognition). The CBA outlines a grievance procedure culminating in arbitration by the Federal Mediation and Conciliation Service as the "sole method for the settlement of any dispute between the parties over the interpretation, application or claimed violation of any specific provision of this Agreement." *Id.* Article 12 § 1 (Grievance Procedure). The Union is a party to the CBA but is not a party to this litigation or the underlying arbitration.

### B.  Trust Agreement

RMC and the Pension Fund are parties to a Trust Agreement. The Trust Agreement gives the Pension Fund Board of Trustees "the right, authority, and duty … to demand and enforce the prompt payment of contributions to the Fund, including payments due to delinquencies … without being limited or restricted by an [sic] grievance or arbitration procedures provided in the Collective Bargaining Agreement." Trust Agreement § 4.03. Article IX of the Trust Agreement, entitled "Arbitration," contains provisions regarding arbitration "[i]n the event that the Trustees deadlock on any matter arising in connection with the administration of the Fund or the Plan." *Id.* §§ 9.01-9.03. Article IX also includes the following provision:

> No matter in connection with the interpretation or enforcement of any Collective Bargaining Agreement shall be subject to arbitration under this Article. No matter which is subject to arbitration under this Article shall be subject to the grievance procedure of any other arbitration procedure provided in any of the Collective Bargaining Agreements.

---

[1] In this Order, "CBA" refers to the Collective Bargaining Agreement between RMC and the Union at Dkt. 10-3; "Trust Agreement" refers to the Trust Agreement between RMC and the Pension Fund at Dkt. 10-1; and "Award" refers to the arbitrator's award at Dkt. 10-2 that is the subject of this litigation.

*Id.* § 9.04. The Trust Agreement provides that "[a]ll questions pertaining to this Agreement, the Fund or the Pension Plan, and their validity, administration and construction, shall be determined in accordance with the laws of the State of California and with any pertinent laws of the United States." *Id.* § 10.04.

An amendment to the Trust Agreement that took effect on January 1, 1998, added a new section 4.04 to Article IV. *Id.* at PDF p. 25. The new section 4.04 provided, in relevant part: "The Trustees, in their sole discretion and pursuant to said regulations, may refer any claim for delinquent Employer Contributions to final and binding expedited arbitration. . . . " *Id.* The new section 4.04 also set forth various procedural requirements for such an arbitration, including the following subsection (iv):

> All such arbitrations shall be conducted pursuant to the California Arbitration Act (CCP § 1280 et seq.). The arbitrations shall be conducted in an expedited manner and no transcripts prepared or briefs filed. The arbitrator's award shall be in writing and shall issue no later than ten days following the close of the hearing.

*Id.* at PDF p. 26. The 1998 amendment provided that "[i]n all other respects, the provisions of the [original Trust Agreement] shall remain in full force and effect." *Id.* at PDF p. 27.

Effective January 1, 2018, Article IV, Section 4.04(iv) was amended in its entirety to add additional procedural limitations and requirements. *Id.* at PDF pp. 39-40. The 2018 amendment to section 4.04(iv) provides that "[e]xcept as otherwise provided in this Trust Agreement, all such arbitrations shall be conducted pursuant to the California Arbitration Act (CCP Section 1280 et seq.)" and continues to require that "[t]he arbitrator's award shall be in writing and shall issue no later than ten days following the close of the hearing." *Id.* The 2018 amendment provides that "[e]xcept as herein expressly amended or modified, all of the terms and provisions of the [original Trust Agreement] [are] reaffirmed and are continued in full force and effect." *Id.* at PDF p. 40.

**C.    Arbitration Proceedings and Award**

In approximately June 2017, the Pension Fund selected RMC for a payroll compliance audit for the period of February 1, 2010 to October 31, 2013. Dkt. 10 (Griffith Decl.) ¶ 13 and Dkt. 12 at Fund Ex. 10. As a result of the audit, the Pension Fund concluded that pension contributions were owed to five employees. *Id.* Contributions for three of the employees were

3

1  resolved, but contributions for two employees (Kevin Keith and Steve Keith) remained in dispute.
2  *See* Award at 10.  RMC denied liability for pension benefits for these two employees on the
3  grounds that both worked as per diem employees during the time period for which pension
4  contributions were not made and thus were not entitled to pension contributions under the CBA.
5  *Id.* at 10-11.  The Pension Fund took the position that the CBA excluded per diem employees from
6  Union membership only if they worked 90 days or less.  *Id.* at 11.[2]

7       Unable to resolve these disputes, the Pension Fund filed a notice of arbitration on
8  March 29, 2019.  Dkt. 11 at PDF pp. 12-13.  The March 29 notice stated that "the Trustees of the
9  Trust Fund have referred this dispute to arbitration pursuant to Article IV, Section 4.04 of the
10 Pension Trust Agreement."  *Id.*  at PDF p. 13.  The Pension Fund thereafter amended its notice of
11 arbitration several times, with the final notice submitted on December 15, 2020.  *Id.* at PDF pp. 4-
12 11.

13      A virtual arbitration hearing was held on June 24, 2021 before Arbitrator William E. Riker.
14 Award at 1.  The arbitrator issued his award over three months later, on October 1, 2021.  *Id.* at 18.
15 The arbitrator found RMC liable for pension contributions for Kevin Keith and Steve Keith, and
16 also found that RMC failed to provide certain relevant documents.  *Id.* at 17

17      RMC now moves to vacate the Award, and the Pension Fund moves to confirm the Award.
18 Dkt. 9, 31.

19 **II.    DISCUSSION**

20     **A.    Subject Matter Jurisdiction**

21      Before considering the merits of the Parties' motions, the Court must determine whether it
22 has subject matter jurisdiction.  In its petition and motion to vacate the Award, RMC invokes
23 jurisdiction under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185
24 ("LMRA") and under 28 U.S.C. §§ 1331 and 1337.  Dkt. 1 ¶ 4; Dkt. 9 at 2.  In its petition to
25 confirm the Award, the Pension Fund invokes jurisdiction under Section 502 of the Employee

---

[2] The Parties also had a dispute regarding the Pension Fund's audit to obtain documents for the period January 1, 2015 to December 31, 2019.  *See* Dkt. 29 at 1.  This aspect of the Parties' arbitration is not at issue in this case.  *See id.* at 7.

4

Retirement Income Security Act, 29 U.S.C. § 1132 ("ERISA") and the LMRA. Dkt. 30 § I. Neither Party asserts that the Court lacks subject matter jurisdiction over their petitions, but the Court has an independent obligation to confirm that a basis for subject matter jurisdiction exists. *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).

Neither Party claims that diversity jurisdiction exists. *See* Dkt. 1 ¶ 4; Dkt. 30 ¶ I. Accordingly, the Court must determine if the case arises under federal law and therefore presents a federal question. As a preliminary matter, the Court notes that the Federal Arbitration Act ("FAA") does not serve as a basis for subject matter jurisdiction in this case. The FAA, 9 U.S.C. § 1 *et seq.*, authorizes a party to an arbitration agreement to ask a federal court to confirm or vacate an arbitration award. 9 U.S.C. §§ 9, 10. However, the FAA does not confer federal subject matter jurisdiction. *Badgerow v. Walters,* -- U.S. --, 142 S. Ct. 1310, 1316 (2022). Instead, a federal court must have an "independent jurisdictional basis" to resolve the matter. *Id.* (citation omitted). The Supreme Court recently held that in the context of a petition to confirm or vacate an arbitration award under section 9 and 10 of the FAA, a federal court may not "look through" the petition to the underlying substantive dispute to determine if a basis for federal jurisdiction exists. *Id.* at 1317-18. Instead, the court must look at "the face of the application itself" to see if it shows that diversity or federal question jurisdiction exists. *See id.* at 1316.[3]

One possible source of subject matter jurisdiction in this case is the LMRA. In their respective petitions to vacate and confirm the Award, RMC and the Pension Fund both invoke subject matter jurisdiction under the LMRA. Dkt. 1 ¶ 4; Dkt. 30 § I. "Unlike the FAA or state arbitration statutes, the LMRA can be used as a basis for federal question jurisdiction over actions to compel arbitration, as well as petitions to confirm or vacate arbitration awards." *Carter v. Health Net of Cal., Inc.*, 374 F.3d 830, 835 (9th Cir. 2004). "Indeed, arbitration of labor disputes is unique: the FAA and its requirement of an independent basis for federal jurisdiction do not apply at all to arbitration of disputes under the LMRA." *Id.* The LMRA provision regarding

---

[3] The California Arbitration Act is a state statute and thus does not provide a basis for subject matter jurisdiction in federal court. *See Carter v. Health Net of Cal., Inc.*, 374 F.3d 830, 837 (9th Cir. 2004).

jurisdiction in district courts relates to "[s]uits for violation of contracts between an employer and a labor organization." LMRA § 301 (29 U.S.C. § 185).  Here, although the Award discussed the CBA between RMC and the Union, the arbitration arose under the Trust Agreement, which is a contract between RMC and the Pension Fund.  The Union was not a party to the arbitration.  However, "[t]he Ninth Circuit has explained that section 301 of the LMRA confers jurisdiction over all suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce," including actions brought by a trust fund. *Able Bldg. Maintenance Co. v. Board of Trustees of Gen'l Employees Trust Fund*, No. C0303958CRB, 2003 WL 22749151, at *4 (N.D. Cal. Nov. 18, 2003) (citing *Loc. 159, 342, 343 & 444 v. Nor-Cal Plumbing, Inc.*, 185 F.3d 978, 984 (9th Cir. 1999)) (internal quotation marks omitted).  "Section 301 does not limit the parties who may bring suit so long as the object of the suit is the enforcement of rights guaranteed by an agreement between an employer and a labor organization." *Able Bldg.*, 2003 WL22749151, at *4 (citation omitted).  Accordingly, because this litigation relates to an arbitration award that decided the employer's liability for pension contributions under a CBA, the Court concludes that it has subject matter jurisdiction over this case under LMRA.

The Pension Fund also invokes ERISA in its petition to confirm the arbitration award.  Dkt. 30 § I.  The Parties agree that the Trust Fund is a multi-employer employee benefit plan within the meaning of ERISA and that RMC is an employer within the meaning of ERISA.  Dkt. 30 § III-IV; Dkt. 37 § III-IV.  ERISA permits a trust fund to pursue action against a delinquent employer.  *See* 29 U.S.C. § 1132.  Because the Pension Fund brought its cross-petition under ERISA, the Court concludes that it also has subject matter jurisdiction over this case under ERISA.  28 U.S.C. § 1331.

**B.     Legal Standard on Motions to Confirm or Vacate Arbitration Awards**

In their respective motions regarding the Award, the Parties cite multiple legal standards applicable to motions to vacate or confirm arbitration awards:  (1) the LMRA; (2) the FAA; and (3) the California Arbitration Act, Cal. Code Civ. Proc. § 1280 *et seq.* ("CAA").  *See, e.g.,* Dkt. 9 at Notice; Dkt. 31 at 4-6.  At the hearing, neither Party took a definitive position on which of these standards applies.  RMC argued that the FAA was probably the proper standard, but noted there is

6

1 no significant difference between the FAA and LMRA. The Pension Fund argued that CAA
2 should apply, but acknowledged there is no conflict between the applicable standards under the
3 FAA and the CAA for purposes of these motions.

4     "[T]he strong default presumption is that the FAA, not state law, supplies the rules for
5 arbitration." *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1269 (9th Cir. 2002), *opinion amended
6 on denial of reh'g,* 289 F.3d 615 (9th Cir. 2002), *cert. denied*, 537 U.S. 825 (2002). However,
7 "the FAA still permits parties to agree to arbitrate under state rules that differ from those set forth
8 in the FAA." *Sgormo v. Scott,* No. 19-CV-08170-HSG, 2020 WL 6136092, at *5 (N.D. Cal. Oct.
9 19, 2020) (internal citation omitted). In order for state law to govern, "the parties must clearly
10 evidence their intent to be bound by such rules." *Sovak,* 280 F.3d at 1269. "[A] general choice-
11 of-law clause within an arbitration provision does not trump the presumption that the FAA
12 supplies the rules for arbitration." *Id.* at 1270. Here, however, the 2018 amendment to section
13 4.04(iv) of the Trust Agreement provides that "[e]xcept as otherwise provided in this Trust
14 Agreement, all such arbitrations shall be conducted pursuant to the California Arbitration Act
15 (CCP Section 1280 et seq.)." Trust Agreement at PDF p. 39. This clause demonstrates the
16 Parties' clear intent that arbitration be governed by the CAA's rules. *See Johnson v. Gruma
17 Corp.*, 614 F.3d 1062, 1067 (9th Cir. 2010). "Where state arbitration rules control arbitration
18 proceedings, [the reviewing court] must apply the state vacatur standard." *Id.* Notably, however,
19 "[t]he FAA and CAA provide for vacatur of an arbitration award under similar circumstances, and
20 therefore, the Court may consider federal authority interpreting the FAA in adjudicating" petitions
21 to vacate and confirm under the CAA. *Trustees of the U.A. Loc. 38 Defined Benefit Pension Plan
22 v. Trustees of the Plumbers and Pipe Fitters Nat'l Pension Fund*, No. 15-cv-04703-YGR, 2016
23 WL 245281, at *3 n.2 (N.D. Cal. Jan. 21. 2016).

24     As discussed above, the LMRA also provides for district court jurisdiction to review
25 arbitration awards in "[s]uits for violation of contracts between an employer and a labor
26 organization" such as the Award at issue here. LMRA § 301 (29 U.S.C. § 185); *see Carter*, 374
27 F.3d at 835.

28     The choice between the relevant legal standards is not outcome determinative in this case.

All three sources of law—the LMRA, the FAA, and the CAA—require deference to arbitration awards. *See Sheet Metal Workers' Int'l Assn. Loc. Union No. 359 v. Madison Indus., Inc. of Ariz.,* 84 F.3d 1186, 1190 (9th Cir. 1996) (judicial review of arbitration awards under the LMRA is "both limited and highly deferential"); *Aspic Eng'g and Constr. Co. v. EEC Centcom Constructors LLC*, 913 F.3d 1162, 1166 (9th Cir. 2019) (same under FAA); *Moncharsh v. Heily & Blase,* 3 Cal. 4th 1, 33 (1992) (under the CAA, "an award reached by an arbitrator pursuant to a contractual agreement to arbitration is not subject to judicial review except on the grounds set forth in [California Code of Civil Procedure] sections 1286.2 (to vacate) and 1286.6 (for correction)"). Courts ordinarily defer even more to arbitrator's decision in labor cases than in the ordinary commercial context. *See Southwest Reg'l Council of Carpenters v. Drywall Dynamics, Inc.*, 823 F.3d 524, 530 (9th Cir. 2016), *cert. denied*, 137 S. Ct. 827 (2017). Even so, the LMRA, the FAA, and the CAA all provide that a court may (or, under the CAA, must) vacate an arbitration award if the arbitrator exceeds his authority, as RMC argues the arbitrator did here. *See id.* (under LMRA, a court may vacate an arbitration award "when the award does not draw its essence from the collective bargaining agreement and the arbitrator is dispensing his own brand of industrial justice" or "where the arbitrator exceeds the boundaries of the issues submitted to him"); 9 U.S.C. § 10(a)(4) (under FAA, district court may vacate an arbitration award "where the arbitrators exceeded their powers"); Cal. Code Civ. Proc. § 1286.2(a)(4) (under CAA, court shall vacate arbitration award where "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits" of their decision).

Accordingly, the Court will now analyze whether the arbitrator exceeded his authority. The burden of proof in a proceeding to confirm or vacate an arbitration award is on the party defending against enforcement of the award, which in this case is RMC. *K&M Installation, Inc. v. United Brotherhood of Carpenters, Loc. 405,* No. 15-cv-05265-MEJ, 2016 WL 1559712, at *3 (N.D. Cal. Apr. 18, 2016).

### C.     Motion to Vacate and Cross-Motion to Confirm Arbitration Award

In the motion to vacate the arbitration award, RMC argues that the Award should be vacated because the arbitrator exceeded his authority in several respects: (1) by issuing an

8

1  untimely award; (2) by interpreting the CBA; and (3) by considering testimony from trust fund
2  witness Jerry Kalmer. Dkt. 9 at 10-20. In its reply in support of the motion to vacate and in its
3  opposition to the Pension Fund's motion to confirm the arbitration award, RMC makes the
4  additional argument that the Award runs counter to public policy. Dkt. 34 at 10-11; Dkt. 36 at 7-
5  10. The Pension Fund argues that the Award should be confirmed. Dkt. 29, 31.

### 1. Arbitrator's Authority

#### a) Timeliness of Arbitration Award

RMC argues that the Award should be vacated because it was untimely under a provision of the Trust Agreement and that RMC was prejudiced by the delay. Dkt. 9 at 12-13. Paragraph B(iv) of the 2018 amendment to the Trust Agreement (amending Article 4.04) provides that "[t]he arbitrator's award shall be in writing and shall issue no later than ten days following the close of the hearing." Trust Agreement at PDF p. 40 (§ B(iv)). Here, the arbitration hearing took place on June 24, 2021, and the Award did not issue until October 1, 2021, more than three months after the hearing. Dkt. 10 (Griffith Decl.) ¶ 3; Award at 18. The Pension Fund argues that RMC waived its timeliness argument because it did not give notice to the arbitrator or RMC before the Award issued or otherwise raise the issue before filing its motion to vacate the award. Dkt. 29 at 14-15.

California Code of Civil Procedure § 1283.8 is a provision of the CAA that states:

> The award shall be made within the time fixed therefor by the agreement or, if not so fixed, within such time as the court orders on petition of a party to the arbitration. The parties to the arbitration may extend the time either before or after the expiration thereof. A party to the arbitration waives the objection that an award was not made within the time required unless he gives the arbitrators written notice of his objection prior to the service of a signed copy of the award on him.

Here, although the arbitrator did not issue the Award until after the deadline fixed in the Trust Agreement, RMC has not offered any evidence that it gave written notice of its timeliness objection prior to service of the Award. Accordingly, RMC has waived its objection that the Award was not made within the time set forth in the Trust Agreement. *See Humphrey v. Harvest Holdings, LP,* No. G056614, 2020 WL 7306405, at *14 (Cal. Ct. App. Dec. 11, 2020). The Court therefore need not consider whether prejudice is required to vacate an untimely arbitration award

1 and, if so, whether RMC was prejudiced by the delay in this case.

### b) Interpretation of the CBA

RMC argues that the arbitrator exceeded his authority because he interpreted the CBA, in violation of a provision of section 9.04 of the Trust Agreement that prohibited him from interpreting the CBA. Dkt. 9 at 15-17. Specifically, RMC argues that the arbitrator interpreted the CBA to cover the disputed employees in determining that RMC was obligated to make pension payments on their behalf. *Id.* Although the Pension Fund acknowledges that the Award may be vacated if the arbitrator exceeded his authority (*see* Dkt. 29 at 15), it argues that he did not do so.

An arbitrator's authority is derived from, and limited by, the contracts and other rules that give him the power to act. *New United Motor Mfg. v. United Auto Workers Loc. 2244,* 617 F. Supp. 2d 948, 960 (N.D. Cal. 2008); *see also Michigan Mut. Ins. Co. v. Unigard Security Ins. Co.*, 44 F.3d 826, 830 (9th Cir. 1995). In the context of contractual disputes, an arbitrator exceeds his powers when he "disregard[s] contract provisions to achieve a desired result." *Aspic Eng'g*, 913 F.3d at 1167. Arbitration awards should be confirmed as long as the arbitrators' contract interpretation is plausible. *Employers Ins. of Wausau v. Nat'l Fire Ins. Co. of Pittsburgh*, 933 F.2d 1481, 1486 (9th Cir. 1991). However, an arbitrator's interpretation that violates or is in direct conflict with the contract is implausible. *United Food & Commercial Workers Union, Loc. 1119, AFL-CIO v. United Markets, Inc.*, 784 F.2d 1413, 1416 (9th Cir. 1986); *see also Federated Employers of Nevada, Inc. v. Teamsters Loc. No. 631*, 600 F.2d 1263, 1264-65 (9th Cir. 1979) (holding that arbitration award was properly vacated where the CBA provided that the arbitrator "must select as his award either the last offer made by the Employers or the last offer made by the Union at the conclusion of negotiation" but the arbitrator adopted instead a modified version of the Union's last offer; holding that "[t]he violation of an express and explicit restriction on the arbitrator's power cannot be a plausible interpretation"); *Pacific Motor Trucking Co. v. Automotive Machinists Union*, 702 F.2d 176, 177 (9th Cir. 1983) (holding that arbitrator's award was properly vacated where CBA provided that the company could select Working Foremen without regard to seniority but arbitrator concluded, based on past practice, that an employee could not be demoted from the Working Foreman position due to his long tenure in that position, thus "disregard[ing] a

specific contract provision to correct what he perceived as an injustice"). Moreover, where "[t]he contractual language forbade the arbitrator to decide [a] dispute," he acts in excess of his powers if he decides the dispute. *Frederick Meiswinkel, Inc. v. Laborers' Union Loc. 261,* 744 F.2d 1375, 1377 (9th Cir. 1984).

As discussed above, under the Trust Agreement, interpretation of the CBA was not subject to arbitration. Trust Agreement § 9.04. A review of the Award in this case demonstrates that the arbitrator interpreted the CBA. Indeed, he expressly acknowledged as much. *See, e.g.,* Award at 14 ("The question of whether contributions are owed turns on the interpretation of Article I, § 1 of the CBA"); *id.* ("Within the context of the CBA as a whole, this exclusion [in Article I, § 1 of the CBA can only be interpreted to mean that per diem employees hired to work as Stationary Engineers for a period not to exceed 90 days are excluded from the CBA …"). The arbitrator concluded that "[t]o the extent that this matter required the Arbitrator to review and interpret provisions of a CBA to determine whether there is an obligation to contribute, the Arbitrator has the power and authority to do so under the terms of the Trust Agreement." *Id.* at 12-13. The arbitrator's statements that he was interpreting the CBA are borne out by the substance of his decision, in which he employs principles of contract construction to interpret the exclusion of per diem employees from pension obligations and to conclude that Kevin Keith and Steve Keith were "per diem employees who worked more than 90 days" for whom pension contributions were due and owing. *See id.* at 14-16.

Because the arbitrator interpreted the CBA, his Award was in direct conflict with the Trust Agreement, which provided that "[n]o matter in connection with the interpretation or enforcement of any Collective Bargaining Agreement shall be subject to arbitration." Trust Agreement § 9.04. This conflict renders the arbitrator's interpretation implausible. Moreover, the arbitrator's discussion of his authority (*see* Award at 12-13) does not cite or address the language in section 9.04 of the Trust Agreement. Accordingly, there is no arbitrator's interpretation of that provision to which the Court may defer.

The Pension Fund relies on language in section 9.04 of the Trust Agreement indicating that the provision prohibiting the arbitrator from interpreting the CBA applies to arbitrations "under

this Article" to argue that the prohibition applies only in arbitrations arising from a deadlock of the Board of Trustees on matters in connection with the administration of the fund or the plan, which was the only type of arbitration specified under Article IX of the original Trust Agreement. *See* Dkt. 29 at 5 n.5, 19-20. The Pension Fund's argument that the "no interpretation" limitation is inapplicable to other types of arbitrations under the Trust Agreement misconstrues the amendments to that agreement. Article IX, which contains section 9.04, is entitled "Arbitration." Trust Agreement at PDF p. 19. While it is true that at the inception of the Trust Agreement, the only arbitration provision related a deadlock of the Board of Trustees (*id.* § 9.01), Article IV to the Trust Agreement was later amended to also provide for arbitration of disputes over the amount and collection of delinquent contributions. *Id.* at PDF pp. 25-26. The amendments to Article IV did not state that the arbitrator was permitted to interpret the CBA. Nor did they specify any modifications to the provisions regarding arbitration contained in Article IX. In fact, the 1998 amendment to Article IV specifically incorporated a provision from Article IX of the original Trust Agreement. *Id.* at PDF p. 26. Moreover, both amendments containing changes to Article IV included language stating that except as amended, all terms and provisions of the original Trust Agreement remained in full force and effect. *Id.* at PDF pp. 27, 40. In light of this history, the limitation on the prohibition of arbitrator interpretations of the CBA in section 9.04 to arbitrations "under this Article" does not mean that the arbitrator in an arbitration under Article IV (as amended) was empowered to interpret the CBA. This conclusion is reinforced by the provision in the CBA specifying that the arbitration procedure set forth in the CBA is the "sole method" for resolving "any dispute between the parties over the interpretation, application or claimed violation of any specific provision" of the CBA. *See* CBA Article 12 § 1 (Grievance Procedure).

The Pension Fund also argues that RMC's theory that the arbitrator cannot interpret the CBA "makes no sense where trust fund contributions are concerned, and it is a clear misreading of the terms of the Trust Agreement." Dkt. 29 at 16. According to the Pension Fund, the CBA creates RMC's obligation to pay pension contributions, and the Trust Agreement and ERISA give the Pension Fund the authority to collect delinquent contributions. *Id.* at 16-18. The Pension Fund argues that "because [RMC] raised the defense that contributions for the two … employees

12

in question were no required under the CBA … Arbitrator Riker was required to, and indeed authorized to answer the question of whether Steve Keith and/or Kevin Keith were per diem employees within the exemption specified in Article I, § 1 of the CBA to determine Regional's pension obligations." *Id.* at 17-18. Although the Pension Fund criticizes the scenario in which the arbitrator of a dispute under the Trust Agreement is not authorized to interpret the CBA, that is the way RMC, the Pension Fund, and the Union structured the Trust Agreement and CBA. The Trust Agreement authorizes the Pension Fund to "demand and enforce the prompt payment of contributions to the Fund." Trust Agreement § 4.03. The arbitrator relied heavily on this language in defending his right to interpret the CBA to "enforce" prompt payment in the arbitration, which took place under section 4.04. *See* Award at 12-13. However, Section 2.06 of the Trust Agreement limits liability to "payments required by the [CBA]." Trust Agreement § 2.06; *see also id.* § 2.01 (pension trust shall consist of "all contributions required by the [CBA]"), § 4.01 ("Contributions to the Fund shall be due as provided in the applicable [CBAs] obligating the participating Employer to make contributions …"). Accordingly, the arbitrator is empowered only to enforce the prompt payment of contributions required under the CBA; he is not empowered to interpret the CBA to determine whether contributions are required. The CBA provides an exclusive grievance procedure for any dispute between the parties to the CBA (*i.e.*, RMC and the Union) over the interpretation, application, or clarification of the CBA. CBA Article 12 § 1 (Grievance Procedure). A dispute such as this one over whether RMC was required to make pension payments on behalf of particular employees could properly have been raised using the grievance procedure set forth in the CBA. If in that grievance procedure the disputed employees were found to be entitled to pension payments, then the Pension Fund could have sought arbitration under the Trust Agreement to determine or enforce the amount due. *See* Trust Agreement § 4.04 (as amended). There is no evidence that RMC and the Union ceded the ability to determine who was eligible for pension contributions to an arbitrator selected by RMC and the Pension Fund under the Trust Agreement.

The Pension Fund also emphasizes the arbitrator's finding that RMC had waived its right to challenge the arbitrator's authority to conduct the arbitration. Dkt. 29 at 22; *see also* Award at

13

13. As RMC explains, however, it does not challenge the arbitrator's authority to hold an arbitration hearing or determine whether RMC owed pension contributions to eligible participants. Dkt. 9 at 19-20. Instead, RMC challenges the arbitrator's authority to make findings as to whether the two employees at issue were members of the bargaining unit that were eligible for pension contributions under the CBA. *Id.* at 20.[4] The arbitrator's waiver finding does not insulate the Award from being vacated on the grounds that the arbitrator exceeded his authority by interpreting the CBA.

Accordingly, for the reasons discussed, the arbitrator exceeded his authority, and the Award must be vacated rather than confirmed. *See Aspic Eng'g*, 268 F. Supp.3d at 1059.

### c) Kelmar Testimony

RMC argues that the arbitrator also exceeded his authority by considering testimony from Pension Fund witness Jerry Kalmar, a Trustee for the Pension Fund. Dkt. 9 at 18-19. In the Award, the arbitrator cited Mr. Kalmar's testimony several times to support his interpretation of the CBA. *See, e.g.,* Award at 14 ("Kalmar testified that Article 1, § 1 [of the CBA] applied to per diem employees who work 90 days or more for the employer" and that "the Trust Fund has never interpreted the CBA as not applying to per diem employees"); *id.* at 15 ("Jerry Kalmar testified that employees who work more than 90 days performing the work of Stationary Engineers are considered members of the bargaining unit"). According to RMC, although the Trust Agreement expressly authorizes trustees "to interpret and construe all terms of this Trust [Agreement] and any Plan created pursuant to the authority granted to the Board of Trustees of this Trust … the Trust Agreement is silent about a Trustee's ability to interpret outside agreements." Dkt. 9 at 19. RMC has failed to demonstrate that the arbitrator exceeded his authority by considering Mr. Kalmar's testimony. However, as discussed above, the arbitrator did exceed his authority by interpreting the CBA.

---

[4] RMC states that at the arbitration it raised this issue regarding the arbitrator's authority, and the Pension Fund agrees the issue was raised. Dkt. 9 at 8; Dkt. 10 ¶ 4; Dkt. 29 at 1. Although the Pension Fund criticizes RMC for not raising the issue in "written objections or position statements" before the hearing (Dkt. 29 at 7), the Pension Fund has not shown that RMW waived the issue. Moreover, the 2018 amendment to Article IV § 4.04(iv) of the Trust Agreement states that no briefs would be filed. *See* Trust Agreement at PDF p. 39.

## 2. Public Policy

RMC argues that the Award raises public policy concerns because the arbitrator interpreted the CBA, which is between the RMC and the Union and to which the Trust Fund is not a party, to make his own determination about whether per diem employees are members of the Union and award pension contributions to non-bargaining unit employees. Dkt. 34 at 10-11. According to RMC, this result runs counter to the National Labor Relations Act ("NLRA"), "a complex body of law and regulation controlling how [RMC] and [the] Union were able to select and determine which employees were members of the Union and which were not." *Id.* The Court does not reach this public policy argument because, for the reasons explained above, it concludes that the Award must be set aside on the grounds that the arbitrator exceeded his authority.

## II. CONCLUSION

For the foregoing reasons, the Court concludes that the arbitrator exceeded his authority and, as a result, the Award must be vacated. Accordingly, RMC's motion to vacate the arbitration award is **GRANTED** and the Pension Fund's cross-motion to confirm the arbitration award is **DENIED**. The Court will hold a Case Management Conference on **July 12, 2022 at 9:30 a.m.** to discuss whether there are any remaining issues in this case. A Joint Case Management Statement is due by **July 5, 2022**.

**SO ORDERED.**

Dated: June 15, 2022

SUSAN VAN KEULEN
United States Magistrate Judge

15