Allison V. Saunders (SBN 220010)
FORD & HARRISON LLP
350 S. Grand Ave., Suite 2300
Los Angeles, CA 90071
Telephone:   213-237-2400
Email:  asaunders@fordharrison.com

Patricia G. Griffith (Georgia SBN 311928)
(Admitted *Pro Hac Vice*)
FORD & HARRISON LLP
271  17th Street, NW, Suite 1900
Atlanta, GA 30363-6202
Telephone:   404-888-3800
Email:  pgriffith@fordharrison.com

Attorneys for Petitioner
SAN JOSE HEALTHCARE SYSTEM, LP d/b/a
REGIONAL MEDICAL CENTER OF SAN JOSE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT

### SAN JOSE DIVISION

| | |
|---|---|
| SAN JOSE HEALTHCARE SYSTEM, LP d/b/a REGIONAL MEDICAL CENTER OF SAN JOSE,<br><br>Petitioner,<br><br>v.<br><br>STATIONARY ENGINEERS LOCAL 39 PENSION TRUST FUND,<br><br>Respondent. | Case No.  5:21-cv-09974-SVK<br><br>[Assigned to the Hon. Susan van Keulen]<br><br>**DECLARATION OF PATRICIA G. GRIFFITH IN SUPPORT OF PETITIONER'S FED. R. CIV. P. 54 MOTION FOR ATTORNEYS' FEES**<br><br>Hearing date:      August 23, 2022<br>Time:                   10:00 a.m.<br><br>Petition Filed:  December 23, 2021<br>Judgment Entered:  June 23, 2022 |

FORD & HARRISON LLP
ATTORNEYS AT LAW
OAKLAND

DECLARATION OF PATRICIA G. GRIFFITH IN SUPPORT OF PETITIONER'S FED. R. CIV. P. 54 MOTION FOR ATTORNEYS' FEES; 5:21-CV-09974-SVK

1

**<u>DECLARATION OF PATRICIA G. GRIFFITH</u>**

2

I, Patricia G. Griffith, declare as follows:

3

1.      I am an attorney at law licensed to practice in the State of Georgia and admitted to

4

practice *Pro Hac Vice* in this matter before the United States District Court for the Northern District

5

of California.  I am a partner in the law firm of Ford & Harrison LLP, attorneys of record for

6

Petitioner San Jose Healthcare System, LP d/b/a Regional Medical Center of San Jose ("Petitioner")

7

in the above-entitled matter.

8

2.      I submit this declaration pursuant to C*iv. L.R.* 54-5 in support of Petitioner's

9

Application for Fees Pursuant to *Fed. R. Civ. P.* 54.

10

3.      Counsel for the parties met and conferred for the purpose of attempting to resolve

11

any disputes with respect to this application for attorneys' fees on July 7, 2022.  Unfortunately,

12

resolution of disputes was not possible.

13

4.      The following attorneys rendered services for this matter:

14

a.      Patricia G. Griffith, Esq.;

15

b.      Henry F. Warnock, Esq.;

16

c.      Matthew D. Grabell, Esq.;

17

d.      Nancy Van der Veer Holt, Esq.

18

e.      Cullan E. Jones, Esq.;

19

f.      David R. Anderson, Esq.;

20

g.      Melissa M. Castillo, Esq.;

21

h.      Timothy L. Reed, Esq.;

22

i.      Justin L. Clark, Esq.;

23

j.      Stefan F. Black, Esq.; and

24

k.      Patrick M. Corley, Esq.

25

5.      Additionally, Shannon M. Stout, a paralegal with the law firm of Ford & Harrison,

26

performed service hours for this matter.

27

6.      My customary hourly charge is $630.00/hour.  My qualifications are as follows: I

28

hold a B.A., *summa cum laude*, and J.D., *with honors*, from the University of Georgia.  I served as

FORD & HARRISON LLP
ATTORNEYS AT LAW
OAKLAND

- 2 -

DECLARATION OF PATRICIA G. GRIFFITH IN
SUPPORT OF PETITIONER'S FED. R. CIV. P. 54 MOTION
FOR ATTORNEYS' FEES; 5:21-CV-09974-SVK

law clerk to Hon. Thomas A. Clark, U.S. Court of Appeals for the Eleventh Circuit.  I have forty (40) years of experience as an attorney and have earned the following Honors & Awards: (a) The College of Labor and Employment Lawyers, Fellow; (b) 500 Leading U.S. Corporate Employment Lawyers, *LawDragon* (2020, 2021); (c) *The Best Lawyers in America* – Labor Law, Employment Law, and Labor and Employment Litigation; (d) *Chambers USA: America's Leading Lawyers for Business*, Band 1 Labor & Employment; (e) Top 50 Female Lawyers in Georgia and "Super Lawyers" by *Super Lawyers* magazine; (f) "Super Lawyers – Corporate Counsel Edition," by *Super Lawyers* magazine; (g) "Georgia's Legal Elite," by *Georgia Trend* magazine; (h) One of 40 female "Legal Eagles" by *Atlanta Woman* magazine; (i) Top Ranked, *Chambers USA* 2021; (j) One of the "Most Powerful and Influential Women" by the Georgia Diversity Council; and (k) AV Preeminent Peer Review Rated by Martindale-Hubbel.

7.      Mr. Warnock is a partner in the law firm of Ford & Harrison and his customary hourly charge is $510.00/hour.  Mr. Warnock's holds a B.S., *magna cum laude*, from Vanderbilt University and a J.D., *cum laude*, from the University of Georgia.  Mr. Warnock has thirteen (13) years of experience as an attorney and has earned the following Honors & Awards: "Georgia Rising Stars," *Super Lawyers* Magazine (2017-2022).

8.      Mr. Grabell is counsel in the law firm of Ford & Harrison and his customary hourly charge is $415.00/hour.  Mr. Grabell holds a B.A, *magna cum laude*, from DePaul University and a J.D., *magna cum laude*, from Loyola University Chicago School of Law.  Mr. Grabell has nine (9) years of experience as an attorney and has earned the following Honors & Awards: *Best Lawyers in America: Ones to Watch* – Labor and Employment Law – Management and Litigation – Labor and Employment (2022).

9.      Ms. Holt is a partner in the law firm of Ford & Harrison and her customary hourly charge is $520.00/hour.  Ms. Holt holds a B.A. from Smith College and J.D., *with honors*, from University of Connecticut School of Law.  Ms. Holt has sixteen (16) years of experience as an attorney.

10.      Mr. Jones is counsel in the law firm of Ford & Harrison and his customary hourly charge is $415.00/hour.  Mr. Jones holds a B.A., *cum laude*, from the University of Florida and a

FORD & HARRISON LLP
ATTORNEYS AT LAW
OAKLAND

- 3 -

DECLARATION OF PATRICIA G. GRIFFITH IN
SUPPORT OF PETITIONER'S FED. R. CIV. P. 54 MOTION
FOR ATTORNEYS' FEES; 5:21-CV-09974-SVK

J.D. from Florida State University College of Law.  Mr. Jones has eleven (11) years of experience as an attorney and has earned the following Honors & Awards: *Best Lawyers in America: Ones to Watch* – Labor and Employment Law – Management (2022).

11. Mr. Anderson is counsel in the law firm of Ford & Harrison and his customary hourly charge is $415.00/hour.  Mr. Anderson holds a B.A., *magna cum laude*, from Millikin University, and a J.D., *with honors*, from Emory University School of Law and has earned the following Honors & Awards: *Best Lawyers in America: Ones to Watch* – Labor and Employment Law – Management and Litigation – Labor and Employment (2021-2022).

12. Ms. Castillo is an associate in the law firm of Ford & Harrison and her customary hourly charge is $240.00/hour.  Ms. Castillo holds a B.A., *magna cum laude*, from Florida International University, and a J.D. from University of Florida College of Law.  Ms. Castillo has two (2) years of experience as an attorney.

13. Mr. Reed was formerly the managing partner of Ford & Harrison's Oakland, California office and hourly charge was $485.00/hour.  Mr. Reed holds a B.A. from the University of San Francisco and a J.D. from UCLA School of Law.  Mr. Reed has fourteen (14) years of experience as an attorney and has earned the following Honors & Awards: (a) National Bar Association 40 Under 40 – Best Advocate (2020); (b) Profiles in Diversity Journal – Black Leaders Worth Watching (2021); and (c) Wiley W. Manuel Award for *Pro Bono* Legal Services.

14. Mr. Clark is counsel in the law firm of Ford & Harrison and his customary hourly charge is $405.00/hour.  Mr. Clark holds a B.A. from the University of California, Santa Cruz and a J.D., *cum laude*, from the University of San Diego School of Law.  Mr. Clark has seven (7) years of experience as an attorney and has earned the following Honors & Awards: ("Northern California Rising Stars," *Super Lawyers* magazine (2022).

15. Mr. Black was formerly the managing partner of Ford & Harrison's Los Angeles office and his customary hourly charge was $366/hour. Mr. Black holds a B.A., *summa cum laude*, from James Madison University, and a J.D., *magna cum laude*, from George Mason University – Antonin Scalia Law School.  At the time he performed service hours in this matter, Mr. Black had twelve (12) years of experience as an attorney.

FORD & HARRISON
LLP
ATTORNEYS AT LAW
OAKLAND

- 4 -

DECLARATION OF PATRICIA G. GRIFFITH IN
SUPPORT OF PETITIONER'S FED. R. CIV. P. 54 MOTION
FOR ATTORNEYS' FEES; 5:21-CV-09974-SVK

16.     Mr. Corley was formerly an associate in the law firm of Ford & Harrison and his customary hourly charge was $257.00/hour.  Mr. Corley holds a B.A. from the University of Notre Dame and a J.D., *with honors*, from Emory University School of Law.  At the time he performed service hours in this matter, Mr. Corley had two (2) years of experience as an attorney.

17.     Ms. Stout is an experienced paralegal and has a customary hourly charge of $240.00/hour and she has four (4) years of experience as a paralegal with Ford & Harrison.

18.     Ford & Harrison maintains attorney time records through contemporaneous entry of service hours performed for clients for specific matters.  A specific billing client-matter number was created for this matter and attorneys' service hours for this matter were billed to this client-matter number.  Ford & Harrison uses the Aderant timekeeping database to manage all service hours performed by attorneys and paralegals.

19.     I performed 104.3 service hours in this matter at the rate of $541.00/hour.  My service hours included preparation for and appearances at multiple arbitration proceedings, research regarding pertinent legal issues, analysis of relevant documents, regular communication with my clients, regular communication with opposing counsel, drafting and revision of papers submitted to this Court, analysis of papers submitted to this Court by the Pension Fund, and preparation and appearance for oral argument.

20.     Mr. Warnock performed 48.4 service hours in this matter at the rate of $345/hour.  Mr. Warnock's service hours included preparation for and appearances at multiple arbitration proceedings, regular communications with our clients, analysis of relevant documents, regular communications with opposing counsel, analysis of papers submitted by the Pension Fund, and research regarding pertinent legal issues.

21.     Mr. Grabell performed 18.1 service hours in this matter at the rate of $283/hour.  Mr. Grabell's service hours included analysis of relevant documents and research of pertinent legal issues.

22.     Ms. Holt performed 0.8 service hours in this matter at the rate of $350/hour.  Ms. Holt's service hours included analysis of relevant documents and preparation of arbitration strategy.

FORD & HARRISON LLP
ATTORNEYS AT LAW
OAKLAND

- 5 -

DECLARATION OF PATRICIA G. GRIFFITH IN
SUPPORT OF PETITIONER'S FED. R. CIV. P. 54 MOTION
FOR ATTORNEYS' FEES; 5:21-CV-09974-SVK

23.     Mr. Jones performed 53.3 service hours in this matter at the rate of $301/hour.  Mr. Jones's service hours included analysis of relevant documents, research of pertinent legal issues, drafting and revision of papers submitted to this Court, and analysis of papers submitted to this Court by the Pension Fund.

24.     Mr. Anderson performed 34.9 service hours in this matter at the rate of $283/hour. Mr. Anderson's service hours included analysis of relevant documents, research of pertinent legal issues, drafting and revision of papers submitted to this Court, and analysis of papers submitted to this Court by the Pension Fund.

25.     Ms. Castillo performed 7.6 service hours in this matter at the rate of $260/hour.  Ms. Castillo's service hours included research of pertinent legal issues.

26.     Mr. Reed performed 19 service hours in this matter at the rate of $409/hour.  Mr. Reed's service hours included drafting and revision of papers submitted to this Court, analysis of papers submitted to this Court by the Pension Fund, included analysis of relevant documents, and research of pertinent legal issues.

27.     Mr. Clark performed 1.8 service hours in this matter at the rate of $326/hour.  Mr. Clark's service hours included drafting and revision of papers submitted to this Court and research or pertinent legal issues.

28.     Mr. Black performed 13.9 service hours in this matter at the rate of $366/hour.  Mr. Black's service hours included regular communication with our clients, regular communication with opposing counsel, analysis of relevant documents, and research of pertinent legal issues.

29.     Mr. Corley performed 2.4 service hours in this matter at the rate of $257/hour.  Mr. Corley's service hours included research of pertinent legal issues.

30.     Ms. Stout performed 2.1 service hours in this matter at the rate of $232/hour.  Mr. Stout's service hours included assistance in the drafting and preparation of papers submitted to this Court.

31.     The total amount of attorneys' fees incurred by Petitioner in this particular matter is $133,928.670. Of that, $59,292.90 was for time associated with preparing for and attending the

FORD & HARRISON
LLP
ATTORNEYS AT LAW
OAKLAND

- 6 -

DECLARATION OF PATRICIA G. GRIFFITH IN
SUPPORT OF PETITIONER'S FED. R. CIV. P. 54 MOTION
FOR ATTORNEYS' FEES; 5:21-CV-09974-SVK

1    arbitration hearing itself. The remainder was incurred in the court proceedings relating to the

2    Arbitration Award.

3        32.    I further make this Declaration to submit into evidence the following evidence, each

4    item of which is a true and correct copy of its original.

5        Exhibit A        Stationary Engineers Local 39 Pension Trust Fund
6                         Agreement and Declaration of Trust

7        Exhibit B        Opinion and Award of Arbitrator William E. Riker

8        Exhibit C        Correspondence, dated November 7, 2016 from Regional
                          Medical Center to Pension Fund

9        Exhibit D        Emails, dated July 13, 2020 to November 16, 2020, between
10                        Counsel for the Parties

11       Exhibit E        Collective Bargaining Agreements between Regional
                          Medical Center and International Union of Operating
12                        Engineers, Stationary Engineers, Local 39 AFL-CIO
                          ("Union"), for the period of November 1, 2009 to October 31,
13                        2013 and November 1, 2013 to October 31, 2018

14       Exhibit F        Emails and Correspondence, dated September 15, 2016 to
                          February 21, 2019, between Regional Medical Center to
15                        Pension Fund

16       Exhibit G        Email, date October 19, 2018, from Union to Regional
                          Medical Center

17       Exhibit H        Regional Medical Center's Collective Bargaining Proposal,
18                        dated October 29, 2018

19       Exhibit I        Union and Regional Medical Center's Respective Collective
                          Bargaining Proposal, dated October 30, 2018

20       Exhibit J        Collective Bargaining Agreement between Regional Medical
                          Center and Union, for the period of December 29, 2020 to
21                        September 30, 2023

22       Exhibit K        2020 Form 5500 for the Pension Fund, filed with the Internal
                          Revenue Service on or about September 13, 2021

23       Exhibit L        Audit Report of Lindquist LLP

24

25    ///

26    ///

27    ///

28    ///

Ford & Harrison
LLP
Attorneys At Law
Oakland

- 7 -

DECLARATION OF PATRICIA G. GRIFFITH IN
SUPPORT OF PETITIONER'S FED. R. CIV. P. 54 MOTION
FOR ATTORNEYS' FEES; 5:21-CV-09974-SVK

1    I declare under penalty perjury under the laws of the United States and State of California

2   that the foregoing is true and correct and that this declaration was executed on the 7th day of July,

3   2022 in Atlanta, Georgia.

4

5

_____

6                                    PATRICIA G. GRIFFITH

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FORD & HARRISON
LLP
ATTORNEYS AT LAW
OAKLAND

- 8 -

DECLARATION OF PATRICIA G. GRIFFITH IN
SUPPORT OF PETITIONER'S FED. R. CIV. P. 54 MOTION
FOR ATTORNEYS' FEES; 5:21-CV-09974-SVK

# EXHIBIT A

COPY


# STATIONARY ENGINEERS LOCAL 39

# PENSION TRUST FUND
## AGREEMENT AND DECLARATION OF TRUST

**(As Amended 1975)**

RECEIVED

FEB 08 2007

W R & R

STATIONARY ENGINEERS, LOCAL 39

Pension Trust Fund
--------------------

# T A B L E   O F   C O N T E N T S

|  |  | page |
|---|---|---|
| PARTIES TO AGREEMENT ............................... | | 1 |
| RECITALS TO AGREEMENT .............................. | | 1 |

**ARTICLE I   Definitions**

| 1.01 | Trust Fund ................................. | 1 |
| 1.02 | Trustees ................................... | 2 |
| 1.03 | Union Trustees............................. | 2 |
| 1.04 | Employer Trustees ......................... | 2 |
| 1.05 | Union ..................................... | 2 |
| 1.06 | Employer.................................. | 2 |
| 1.07 | Employee .................................. | 2 |
| 1.08 | Employer Contributions .................... | 2 |
| 1.09 | Insurer ................................... | 2 |
| 1.10 | Policy .................................... | 2 |
| 1.11 | Agreement and Declaration of Trust .............. | 2 |
| 1.12 | Pension Agreement ......................... | 2 |
| 1.13 | Beneficiary ............................... | 2 |
| 1.14 | Injury Date ............................... | 2 |
| 1.15 | Plan ...................................... | 2 |
| 1.16 | ERISA ..................................... | 3 |
| 1.17 | Collective bargaining agreement ................ | 3 |

**ARTICLE II   Trust Fund**

| 2.01 | Establishment of Fund ..................... | 3 |
| 2.02 | Principal Office of Fund .................. | 3 |
| 2.03 | No Right to Contributions ................. | 3 |
| 2.04 | Rights of Parties ......................... | 3 |
| 2.05 | Non-Assignability of Rights ............... | 4 |
| 2.06 | Limitation of Liability of Contributors ........ | 4 |
| 2.07 | Non-Liability for Debts ................... | 4 |

**ARTICLE III    Trustees**                                                      page

3.01        Designation of Trustees ............................ 4
3.02        Acceptance of Office by Trustee ................. 5
3.03        Tenure of Office of Trustees .................... 5
3.04        Notice of Resignation by Trustee ............... 5
3.05        Replacement of Union Trustee ................... 5
3.06        Replacement of Employer Trustee ................ 5
3.07        Equal Number of Trustees ....................... 5
3.08        Successor Trustees ............................. 5
3.09        Removal of Union Trustees ...................... 5
3.10        Removal of Employer Trustees ................... 6
3.11        Trustees Serve Without Compensation ............ 6


**ARTICLE IV    Contributions to the Fund**

4.01        Manner of Contributions, Place of Contributions,
            Due Date ....................................... 6
4.02        Delinquent Contributions - Liquidated Damages ... 6
4.03        Suit for Collection - Attorney Fees ............ 7


**ARTICLE V    General Provisions Concerning the Plan**

5.01        Plan for Benefit of Employees .................... 7
5.02        Union Acts as Collective Bargaining Representative 7
5.03        Employers Act for Individual Employers .......... 8


**ARTICLE VI    Functions and Powers of the Board of Trustees**

6.01        Power to Control and Manage Assets, Appoint
            Fiduciaries and Managers ....................... 8
6.02(a)     Power to Collect Contributions ................. 8
6.02(b)     Power to Enter into Contracts .................. 9
6.02(c)     Power to Accumulate Reserve Funds .............. 9
6.02(d)     Power to Establish Funding Policy .............. 9
6.02(e)     Power to Employ Administrative Personnel ....... 9
6.02(f)     Power to Pay Expenses of Fund .................. 9
6.02(g)     Power to Compromise, Settle and Release Claims .. 9
6.02(h)     Power to Invest and Reinvest Assets ............ 9
6.02(i)     Reports and Summaries .......................... 9
6.02(j)     Power to Maintain Bank Accounts ................ 10
6.02(k)     Power to Adopt Rules and Regulations and
            Eligibility Requirements ....................... 10
6.02(l)     Power to Enter into Reciprocal Agreements ...... 10
6.03        Procurement of Fidelity Bonds .................. 10
6.04        Maintain Records, Request Audit of Employers' Records,
            Duty of Employers to Submit to Audit ........... 10
6.05        Annual Audit of Fund ........................... 11

**ARTICLE VII    Procedure of Board of Trustees**                                      page

7.01        Time of Regular and Special Meetings ............       11
7.02        Appointment of Secretary  .........................       11
7.03        Quorum for Transaction of Business ...............       11
7.04        Place of Meetings  .................................       12
7.05        Board Action in Writing Without Meeting ..........       12


**ARTICLE VIII   General Provisions Applicable to Trustees**

8.01        Efficacy of Instruments Executed by Trustees .....       12
8.02        Duties, Responsibilities, Liabilities of Trustees.       12
8.03        Liabilities of Trustees in Performance of Duties..       12
8.04        Liabilities of Signatories to Agreement or Plan...       13
8.05        Reimbursement of Trustee Expenses  ...............       13
8.06        Surrender of Trust Property Upon Resignation or Removal  13


**ARTICLE IX   Arbitration**

9.01        Action in Event of Deadlock ......................       13
9.02        Appointment of Umpire  ...........................       13
9.03        Expenses of Arbitration ..........................       13
9.04        Matters Subject to Arbitration  ..................       14


**ARTICLE X   General Provisions**

10.01       Duty to File Claims Against Board of Trustees ....       14
10.02       Manner of Notice .................................       14
10.03       Parties Bound by Agreement .......................       14
10.04       Law Applicable to Agreement ......................       14
10.05       Action in Event of Illegality of Agreement or
            any of its Terms .................................       15
10.06       Place of Payment and Venue of Actions  ...........       15


**ARTICLE XI   Special Powers of the Board of Trustees**

11.01       Power to Coordinate Activities with any Other Trust
            Fund .............................................       15
11.02       Right of any Affiliated Union to Become Party to
            Trust Agreement  .................................       15
11.03       Right of any Individual Employer to Become Party to
            Trust Agreement ..................................       15
11.04       Acceptance of Persons Seeking Admission as Parties
            to Agreement  ....................................       15

**ARTICLE XII** <u>Amendment and Termination</u>

| | | |
|---|---|---|
| 12.01 | Amendment and Modification of Agreement ............ | 16 |
| 12.02 | Term of Agreement .................................. | 16 |
| 12.03 | Termination of Agreement ........................... | 16 |
| 12.04 | Disposition of Fund Upon Termination of Trust ...... | 16 |
| 12.05 | Final Audit and Report Upon Termination ............ | 16 |
| 12.06 | Reallocation of Funds Held Under Contracts ......... | 16 |
| 12.07 | Prohibition Against Reversion of any Trust Assets to Employer ....................................... | 16 |

**SCHEDULE A**

| | |
|---|---|
| Signatory Parties .................................. | 16 |
| Acceptance of Office by Trustees ................... | 16 |
| Appointment of New Trustee ......................... | 17 |

STATIONARY ENGINEERS LOCAL 39

PENSION TRUST FUND

AGREEMENT AND DECLARATION OF TRUST

(As Amended 1975)

This Agreement and Declaration of Trust made and entered into this 1st day of _____June_____, 19**55** by and between the undersigned Union Trustees and Employer Trustees, who together with the successor Trustees and additional Trustees designated in the manner hereinafter provided, are hereinafter collectively referred to as Trustees, is amended as follows:

## WITNESSETH

Whereas, Stationary Engineers Local No. 39 located in the State of California and affiliated Operating and Stationary Engineers Local Unions located in California, Washington, Oregon and Nevada now has, and will have in the future, in effect with certain Employers agreements requiring the said Employers to make payments into a Trust Fund for the purpose of establishing and maintaining pensions, death benefits, and termination benefits for Employees and their beneficiaries.

Whereas, to effect the aforesaid purpose it is desired to establish and maintain a Trust Fund which will conform to the requirements of the Labor Management Relations Act of 1947, as amended, and qualify as a "qualified and exempt trust" under the provisions of Internal Revenue Code Section 401 and 501(a), as amended, and any other provisions applicable thereto.

Whereas, the Employers and the Unions have agreed that this Trust Agreement shall be and is amended, modified and restated to conform with all of the requirements of the Employee Retirement Income Security Act of 1974 and of any valid regulations issued pursuant to said Act;

Now, therefore, in consideration of the premises and in order to establish and to provide for the continuance of the aforesaid Pension Trust Fund, to be hereafter known and designated as the Trust Fund, it is agreed as follows:

## ARTICLE I - Definitions

Unless a different meaning is plainly required by the context the words and phrases used herein shall have the meaning as shown below:

1.01 Trust Fund shall mean the Pension Trust Fund established in accordance with the provisions hereinafter set forth of the Stationary Engineers Local No. 39 and affiliated Local Unions of the Operating and Stationary Engineers located in California, Washington, Oregon and Nevada.

1.02 Trustees shall mean any qualified person who is designated in accordance with the provisions hereinafter set forth and who thereafter accepts the office and agrees to serve.

1.03 Union Trustee shall means any Trustee designated by the Union in accordance with the provisions hereinafter set forth.

1.04 Employer Trustee shall mean any Trustee designated by the Employers in accordance with the provisions hereinafter set forth.

1.05 Union shall mean Stationary Engineers Local No. 39 and affiliated Local Unions of the Operating and Stationary Engineers located in California, Washington, Oregon and Nevada.

1.06 Employer shall means any individual, association, partnership, or corporation which has a Pension Plan in effect and has agreed in writing to be bound by the terms of this Agreement and Declaration of Trust.

1.07 Employee shall be any person on whose account an Employer is making Employer Contributions to the Trust Fund, or for whom an Employer did make such contributions and who qualified for benefits to be provided by the Trust Fund.

1.08 Employer contributions shall mean any payments made by an Employer for the benefit of an Employee to the Trust Fund.

1.09 Insurer shall mean any legal reserve life insurance company licensed to do business in the State of California.

1.10 Policy shall mean any life insurance of annuity contract issued by an Insurer.

1.11 Agreement and Declaration of Trust shall mean this completed instrument and any amendments and modifications hereto.

1.12 Pension agreement shall mean any agreement made by any Employer providing for Employer contributions to the Trust Fund.

1.13 Beneficiary shall mean any person entitled to receive payment upon the death of an Employee.

1.14 Entry date shall mean June 1, 1955.

1.15 Plan shall mean the Pension Plan of the Stationary Engineers Local No. 39 and affiliated Local Unions of the Operating and Stationary Engineers located in California, Washington, Oregon and Nevada as described in 1.01 which shall provide pensions, death, and termination benefits to such employees as are eligible according to the terms set forth by the Trustees based on Employer contributions and actuarial analysis. The Trustees shall have sole power in determining these benefits.

1.16    The term "ERISA" means the Employee Retirement Income
        Security Act of 1974 and any valid regulation issued
        pursuant thereto.

1.17    The term "Collective Bargaining Agreement" includes
        (a)  the Agreements between Stationary Engineers
        Local 39 and any other Local Unions and Employers or
        Employer Associations which require contributions to
        the Stationary Engineers Pension Fund, (b) any
        predecessor Collective Bargaining Agreements which
        require contributions to the Stationary Engineers
        Pension Fund, (c) any other Collective Bargaining
        Agreement between the Unions and the signatory
        Employers which provide that such Employer make
        contributions to the Stationary Engineers Pension
        Fund or any predecessory Fund or Plan, and (d) any
        modification, amendment, extension or renewal of
        any of said Agreements or any substitutes for or
        successor to any such Agreement, which provides for
        contributions to the Stationary Engineers Pension
        Fund as herein provided.

## ARTICLE II

### TRUST FUND

2.01    There is hereby created the Stationary Engineers
Local 39 Pension Trust which shall consist of all contributions
required by the Collective Bargaining Agreements to be made
for the establishment and maintenance of the Plan, and all
interest, income and other returns thereon of any kind whatso-
ever, and any other property received or held by reason of
or pursuant to this Trust, specifically including any money,
accounts or other assets transferred to the Fund by a predeces-
sor Fund.

2.02    The Fund shall have its principal office in the
City and County of San Francisco or at such other location in
the San Francisco Bay Area as may from time to time be
designated by the Board of Trustees.

2.03    No Employee shall be entitled to receive any part
of the contributions made or required to be made to the Fund
in lieu of the benefits provided by the Plan.

2.04    Neither the Employer, any Signatory Association,
any Individual Employer, the Unions, or any Local Union, any
Employee or beneficiary under the Plan nor any other person
shall have any right, title or interest in or to the Fund
other than as specifically provided in this Trust Agreement
or in the Plan.  Neither the Fund nor any contributions to
the Fund shall be in any manner liable for or subject to
the debts, contracts, or liabilities of any of the Employers,
any Signatory Association , any Individual Employer, any of
the Unions, any Local Union, or any Employee or beneficiary.
No portion of the Fund shall revert to or be recoverable by
the Employers, any Signatory Association, any Individual
Employer, the Unions or any Local Union, except for such
contributions, if any, as may be returned to an individual
Employer within one year of the payment thereof as having
been paid erroneously in excess of his obligation under a
Collective Bargaining Agreement or this Trust Agreement or
as may otherwise be permitted by ERISA.

2.05  Each Employee or beneficiary under the Plan is hereby restrained from selling, transferring, anticipating, assigning, alienating, hypothecating or otherwise disposing of his right or interest under the Plan, and the Board of Trustees shall not recognize or be required to recognize any such sale, transfer, anticipation, assignment, alienation, hypothecation or other disposition.  Any such right or interest shall not be subject in any manner to voluntary transfer or transfer by operation of law or otherwise, and shall be exempt from the claims of creditors or other claimants and from all orders, decreees, garnishments, executions or other legal or equitable process or proceeding to the fullest extent permissible by law; provided, however, that the Board of Trustees shall have authority to continue, maintain and from time to time modify or revoke, in whole or in part, a policy and procedure for the recognition of payment, from the vacation account affected thereby, of any order, decree, warrant, garnishment, execution or other legal or equitable process for the enforcement of any liability to any governmental agency, or in connection with any domestic relations or child support proceeding, to such extent as the Board in the exercise of its sole discretion determines is for the best interests of all participatns and beneficiaries of the Plan.

2.06  Neither the Employers nor any Signatory Association, nor any officer, agent, employee or committee member of the Employers shall be liable to make contributions to the Fund or be under any other liability to the Fund or with respect to the Plan except to the extent that he or it may be an Individual Employer required to make contributions to the Fund with respect to his or its own individual or joint venture operation, or to the extent he may incur liability as a Trustee as hereinafter provided.  The liability of any Individual Employer to the Fund or with respect to the Plan shall be limited to the payments required by the Collective Bargaining Agreement with respect to his or its individual or joint venture operations, and in no event shall he or it be liable or responsible for any portion of the contributions due from other Individual Employers with respect to the operations of such Individual Employers.  The basis on which payments are made to the Fund shall be as specified in the Collective Bargaining Agreements and in this Trust Agreement and the Individual Employers shall not be required to make any further payments or contributions to the cost of the operation of the Fund or of the Plan, except as may be provided in such Agreements.

2.07  Neither the Employer, any Signatory Association, any Individual Employer, the Unions, any Local Union, nor any Employee shall be liable or responsible for the debts, liabilities or obligations of the Fund or the Trustees.

## ARTICLE III - Trustees

3.01  The Trustees acting under this Agreement and Declaration of Trust, who shall be the Trustees of the Trust Fund, shall be not less than two.  One half to be Union Trustees and one half to be Employer Trustees.  The Employers and the Unions expressly designate the Trustees jointly as named fiduciaries, who shall have exclusive authority and discretion acting as the Board of Trustees as herein provided to control and manage the operation and administration of the

Fund and the Plan. Each of the current Trustees expressly
accepts designation as a fiduciary and as Trustee by written
acceptance and signature of this Trust Agreement and assumes
the duties, responsibilities and obligations of the
Trustees as created and established by this Trust Agreement
and under applicable law. Any Trustee named hereafter shall
do likewise by signing the Trust Agreement or a written
acceptance thereof, in a form approved by and filed with
the Board of Trustees.

3.02  A Trustee named or referred to in the foregoing
section, who shall be a natural person, upon signing this
Agreement and Declaration of Trust, or upon written acceptance
filed with the other Trustees in the case of any successor
or additional Trustee, shall be deemed to accept the Trust
created and established by this Agreement and Declaration of
Trust and consent to act as Trustee and agree to administer
the Trust Fund as provided herein.

3.03  Each Trustee shall continue to serve until his
death, incapacity, resignation or removal as provided herein.

3.04  A Trustee may resign and remain fully discharged
from all future duty or responsibility hereunder by giving
a thirty-day notice in writing to the remaining Trustees.
The notice shall state the date the resignation shall take
effect and such resignation shall take effect on said date
unless a successor Trustee shall have been appointed at an
earlier date in which event such resignation shall take
effect as of the date of the appointment of the successor.

3.05  In the event a Union Trustee shall die, resign,
be removed or become incapacitated, a successor Union Trustee
shall be immediately designated by the remaining Union Trustee.
Upon filing a notice in writing with the remaining Trustees
of the acceptance of the Trusteeship by the designated successor
Trustee, such designation shall be effective.

3.06  In the event an Employer Trustee shall die,
resign, be removed or become incapacitated, a successor
Employer Trustee shall be immediately designated by the
remaining Employer Trustees. Upon filing a notice in writing
with the remaining Trustees of the acceptance of the Trusteeship
by the designated successor Trustee, such designation shall be
effective.

3.07  It is the intention hereof that the Trust Fund
shall at all times be administered by an equal number of Union
Trustees and Employer Trustees but in the event of a vacancy
or vacancies, until the designation of a successsor Trustee
or Trustees as hereinabove provided, the remaining Trustees
shall have the power to act.

3.08  Any successor Trustee shall, immediately upon his
acceptance of the Trusteeship in writing filed with the Trustees,
become vested with all the property, rights, powers and duties
of a Trustee hereunder with the like effect as if he had been
originally named as a Trustee. The insurance company and all
of the persons connected with the administration of the Trust
Fund shall be immediately notified.

3.09  Any Union Trustee may be removed at any time by a
notice in writing from the Secretary of the Union sent to the
acting Chairman of the Trustees at their regular place of meeting.

Any Trustee so removed shall be fully discharged from all future responsibilities or duties herein.

3.10 Any Employer Trustee may be removed at any time by a notice in writing from the majority of Employer Trustees directed to the Chairman of the Trustees at their regular place of meeting. Any Trustee so removed shall be fully discharged from all future responsibilities or duties herein.

3.11 The Trustees shall serve without compensation from the Trust Fund.

## ARTICLE IV

### CONTRIBUTIONS TO THE FUND

4.01 Contributions to the Fund shall be due as provided in the applicable Collective Bargaining Agreements obligating the participating Employer to make contributions to the Stationary Engineers Pension Fund, and shall be payable in San Francisco, California or at such other location as may from time to time be designated by the Trustees, in regular monthly installments subject to the provisions of the applicable Collective Bargaining Agreement. Each monthly contribution shall be made by check payable to the order of the Fund and transmitted to such bank in the City and County of San Francisco or such location as may otherwise be designated by the Trustees in a manner as the Board of Trustees may from time to time direct. Each monthly contribution shall be accompanied by a report in a form prescribed by the Board. The acceptance and cashing of any of said checks, and the disposition of the monies covered thereby in accordance with this Agreement, shall not release or discharge the Individual Employer from his or its obligations under the Collective Bargaining Agreement for hours worked or paid for under said Agreement for which no contribution has actually been received by the Fund, notwith-standing any statement, restriction or qualification appearing on the check or any attachment thereto. The Board of Trustees established by this Trust Agreement shall have the right, title and interest in and to all contributions in the accounts maintained by any Predecessor Plan or due and payable to any Predecessor Fund subject only to the rights of Employees and their beneficiaries as provided in this Trust Agreement and shall have the right to collect, assess, process and continue in effect all of the contributions, liquidated damages and other sums due and payable to any Predecessor Fund.

4.02 Each contribution to the Fund shall be made promptly, in such installments and at such times as the Board of Trustees shall from time to time direct. The parties recognize and acknowledge that the regular and prompt payment of amounts due by Employers to the Fund is essential to the maintenance in effect of the Pension Fund, and that it would be extemely difficult, if not impracticable, to fix the actual expenses and damage to the Fund and to the Pension Plan which will result from the failure of any Employer to make such monthly payments in full within the time provided. Therefore, it is agreed that the amount of damage to the Fund and the Pension Plan resulting from any such failure shall be, by way of liquida.ed damages, and not as a penalty, the sum of Twenty Dollars ($20.00) for such failure to pay in full within the time provided or 10% of the amount due and unpaid, whichever is the greater, which

amount shall become due and payable to the Fund in San
Francisco or at such other place as designated by the Trustees
upon the day immediately following the date upon which the
Employer became delinquent and shall be added to and become
a part of said amount due and unpaid and the whole thereof
shall bear interest at the rate of 7% per annum until paid.
Such contributions, as thus increased, shall be the payments
specified in this Trust Agreement and the Plan pursuant
to ERISA as required to be made to the Fund.

4.03  The Board of Trustees shall have the right,
authority and duty, in the name of the Fund or otherwise,
as in its discretion may be deemed necessary or desirable,
to demand and enforce the prompt payment of contributions
to the Fund, including payments due to delinquencies as
provided in Section 2 of this Article, without being limited
or restricted by an grievance or arbitration procedures
provided in a Collective Bargaining Agreement.  If any
Individual Employer defaults in the making of any such con-
tributions or payments and if the Board consults legal counsel
with respect thereto, or files any suit or claim with respect
thereto, there shall be added to the obligation of the
Individual Employer who is in default, reasonable attorneys
fees, court costs and all other reasonable expenses incurred
in connection with such suit or claim, including any and all
appellate proceedings therein.  Effective upon any such
default or delinquency, the Employees, individually and
collectively, assign to the Board for collection purposes,
all of their rights, title and interest in and to said
contributions and other payments, and confer upon and grant
to the Board all rights of action, lien rights, preferences,
priorities or other security or rights they may have in
connection with or relating to such contributions and payments,
including the right and authority to file claims in bankruptcy,
liens and any and all other kinds of claims, demands or actions.
No provision of this Section or any other Section of this
Agreement shall interfere with or qualify the right of the
Unions and their representatives to enforce compliance with
the terms and provisions of any of the Collective Bargaining
Agreements or to assist in the processing of claims before the
Labor Commissioner or any other claims for the payment of sums
due the Plan.

## ARTICLE V

### GENERAL PROVISIONS CONCERNING THE PLAN

5.01  The Plan is established for the benefit of the
Employees and their eligible dependents.  The restrictions
imposed by the Plan upon the use and enjoyment by the Employees
of the monies contributed by the Individual Employers are for
the purpose of accomplishing this objective, and are voluntarily
assumed and agreed to by the Employees for this purpose.

5.02  In the establishment and maintenance of the Plan,
and in the execution of this Agreement, the Unions act for and
on behalf of the Employees and as their collective bargaining
representatives and agents, and every agreement or act of the
Unions in connection with the establishment, maintenance and
operation of the Plan shall be deemed to be and is the agree-
ment or act of the individual Employees, or individual employee,
concerned or affected by such agreement or action.

5.03  In the establishment and maintenance of the Plan, and in the execution of this Agreement, the Employers act for and on behalf of the Individual Employers who, at the time of the execution of this Agreement are, or during the term thereof become members of any of the Employers, and for and on behalf of any other Individual Employers who have heretofore agreed, or during the term thereof, agreed to comply with the wages, hours and working conditions of the Collective Bargaining Agreement.  Every Agreement or act of the Employers in connection with the establishment, maintenance and operation of the Plan shall be deemed to be and is the Agreement or act of the Individual Employers, or Individual Employer, concerned or affected by such Agreement or action.

## ARTICLE VI

### FUNCTIONS AND POWERS OF THE BOARD OF TRUSTEES

6.01  The Board of Trustees acting jointly shall have the power to control and manage the assets, operation and administration of the Fund and the Plan as a fiduciary and shall exercise such authority with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent Board acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims; provided, however, that the Board may (a) appoint an investment manager or managers (as defined in ERISA) to manage (including the power to acquire and dispose of) any assets of the Fund, (b) enter into an agreement allocating among Trustees such specific responsibilities, obligations, or duties as the Board shall determine, after receiving and considering the written reports and recommendations of the investment manager, if any, and the qualified public accountant engaged by the Fund, may be properly so allocated, (c) designate pursuant to the same procedure persons other than named fiduciaries to carry out fiduciary responsibilities (other than Trustee responsibilities) under this Trust Agreement or the Plan, (d) employ one or more persons to render advice with regard to any responsibility the Board has under this Trust Agreement or Plan or (e) do any one or more of the foregoing.  Any person or entity so appointed, designated or employed shall act solely in the interests of the participants and beneficiaries of the Fund and Plan.

6.02  Without limitation of the provisions of Section 1 of this Article, the Board of Trustees shall have power as follows:

(A)  The Board of Trustees shall have the power to claim, demand, collect, receive, sue for and hold all payments of money due this Fund by any Employer.

If any Employer defaults in the payment of any payments due the Fund, in addition to the amount due and the liquidated damages provided for in Section 2 of Article IV, there shall be added to the obligation of the Employer who is in default all reasonable expenses incurred by the Fund in collection of the same including but not limited to reasonable attorneys fees and accountants fees, costs of attachment bond and court costs.

(B)   The Board of Trustees shall have the power to enter into contracts or procure insurance policies necessary to place in effect and maintain a Pension Plan.  Any such contracts shall be executed in the name of the Fund, or the Board of Trustees and any such policy shall be procured in the name of the Fund or the Board of Trustees.

(C)   To establish and accumulate reserve funds.

(D)   To establish and maintain a funding policy for the Plan and benefits provided for thereunder; and to designate and appoint an independent qualified public accountant who shall assist the Board of Trustees in establishing and reviewing at least annually the funding policy consistent with the Plan objectives and the applicable provisions of law and the basis upon which payments are made and to be made pursuant to the Plan and the applicable law.

(E)   To employ such executive, consultant, administrative, clerical, secretarial, accounting and legal personnel and other employees and assistants, as may be necessary in connection with the administration of the Fund and the Pension Plan and to pay or cause to be paid out of the Fund, the compensation and necessary expenses of such personnel and assistants and the cost of office space, furnishings and supplies and other expenses of administration.  The accounting personnel employed pursuant to this paragraph (E) shall include an independent  qualified public accountant, engaged on behalf of all Plan participants as required by ERISA.

(F)   To incur and pay out of the Fund any expense reasonably incident to the administration of the Fund or the Pension Plan.

(G)   To compromise, settle, or release claims or demands in favor of or against the Fund on such terms and conditions as the Board of Trustees may deem desirable; provided, however, that no such compromise, settlement or release of any claim or demand shall in any way compromise, settle or release any Employer from any liability incurred by any or all of them by reason of any breach of any Collective Bargaining Agreement.

(H)   If no investment manager is designated and appointed by the Board of Trustees, to invest and reinvest or cause to be invested or reinvested the assets of the Fund in accordance with applicable laws, than the Trustees or any person delegated by them may make such investments without restrictions in accordance with all applicable laws.  Investments may be made with a bank or other fiduciary to the fullest extent permitted by law.  No indicia or ownership shall be maintained outside the jurisdiction of the district courts of the United States except to the extent permitted by law.

(I)   To prepare or cause to be prepared such reports, descriptions, summaries and other information as are or may be required by law or as the Board of Trustees in its discretion deems necessary or advisable and to file and furnish such reports, descriptions, summaries and information to participants and their

beneficiaries, the Unions, the Employers, Signatory Associations, the Trustees or other persons or entities, including government agencies, as required by law.

(J)  To maintain or cause to be maintained such bank account or bank accounts as may be necessary or advisable in the administration of the Fund or the Plan, and to designate the person or persons authorized to sign checks and withdrawal orders on any such accounts.

(K)  To from time to time adopt rules and regulations for the administration of the Pension Plan and the Fund, including the establishment of requirements for eligibility to participate in the benefits of the Pension Plan and the Fund, provided that the detailed regulations under which an employee becomes and remains an eligible employee shall be set forth in writing.

(L)  To enter into exchange eligibility agreements with Trustees of other Pension Trust Funds affiliated with the International Union of Operating Engineers and pension payments may be remitted to which ever Trust is appropriate under the terms of any such exchange eligibility agreement.

6.03  The Trustees shall have the power to procure fidelity bonds required by law, faithful performance and any other appropriate bonds and other insurance covering claims against the Fund based upon conduct of any Trustee, Trust employee, or agent, or anyone providing services to the Trust. Such insurance shall provide for recourse against any person for whose conduct the Trust may be liable, in accordance with the Employee Retirement Income Security Act of 1974. Nothing herein shall be construed to prohibit any Trustee or other person in a fiduciary relationship under the Trust from purchasing insurance to cover liability for his own account, or a Union or Employer from purchasing insurance to cover liability of one or more persons who serve in a fiduciary capacity under the Trust.

6.04  The Board of Trustees shall maintain suitable and adequate records of and for the administration of the Fund and the Plan.  The Board may require the Employers, any Signatory Association, any Individual Employer, the Union, any Employee or any other beneficiary under the Plan to submit to it any information, data, reports or documents reasonably relevent to and suitable for the purposes of such administration; provided, however, that the Union, shall not be required to submit lists of membership.  The parties agree that they will use their best efforts to secure compliance with any reasonable request of the Board for any such information, data, report or documents.  Upon request in writing from the Board, any Individual Employer shall permit a certified public accountant selected by the Board to enter upon the premises of such Individual Employer during business hours, at a reasonable time or times, and to examine and copy such books, records, papers or reports of such Individual Employer as may be necessary to determine whether the Individual Employer is making full and prompt payment of all sums required to be paid by him or it to the Fund.

In addition to the foregoing, each Individual Employer, upon request of an authorized representative of the Union, the

Employers, or the Fund, shall permit auditors designated by the Fund to review any and all records relevant to the enforcement of the provisions of the Collective Bargaining Agreements or this Trust Agreement.  Such review shall be permitted not less than ten (10) working days after demand.

If an audit discloses a violation or default in contributions to the Fund, the Board of Trustees shall be and is authorized to determine the formula which shall be applied to compute appropriate contributions due to the Fund.  The Individual Employer shall be required to comply with such formula and make payments to the Fund immediately upon being advised of the amount due.

The cost of any audit shall be borne by the Individual Employer if a shortage disclosed by the audit as to all Funds provided for in the Collective Bargaining Agreements exceeds $1,000.00 and is not the result of clerical error.

The Union and the Employers shall have the right to receive and utilize any information derived from an audit.

6.05  The books of account and records of the Board of Trustees, including the books of account and records pertaining to the Fund, shall be audited at least once each year by an independent qualified public accountant engaged by the Board on behalf of all Plan participants who shall conduct such an examination of any financial statements of the Fund and Plan, and of other books and records of the Fund and Plan, as is required by ERISA.  A statement of the results of the annual audit shall be available for inspection by interested persons at the principal office of the Fund and at such other suitable place as the Board may designate from time to time.

## ARTICLE VII

### PROCEDURE OF BOARD OF TRUSTEES

7.01  The Board of Trustees shall determine the time and place of its regular periodic meetings.  Either the Chairman or the Secretary, or any three (3) members of the Board of Trustees, may call a special meeting of the Board of Trustees by giving written notice to all other Trustees of the time and place of such meeting at least five days before the date set for the meeting.  Any such notice of special meeting shall be sufficient if sent by ordinary mail or by wire addressed to the Trustee at his address as shown in the records of the Board of Trustees.  Any meeting at which all Trustees are present, or concerning which all Trustees have waived notice in writing shall be a valid meeting without the giving of any notice.

7.02  The Board shall appoint a Secretary who shall keep minutes or records of all meetings, proceedings, and acts of the Board.  Such minutes need not be verbatim.

7.03  To constitute a quorum at any regular or special meeting of the Board of Trustees, there must be present at least two Employer appointed Trustees and two Union appointed Trustees; a quorum will consist of two Employer and two Employee Trustees when a meeting notice is forwarded in writing to each Trustee not less than 15 days prior to the next meeting date, and that such notice contain an agenda of all matters which are to be considered and that such meeting be restricted to consideration

only of the matters contained in the agenda. A quorum being present all matters coming before the Board of Trustees for consideration, shall be decided by a majority vote of the Trustees present and eligible to vote, provided that the number of Trustees eligible to vote shall be governed by the lesser number of Employer or Union appointed Trustees present so that the total number of votes cast by the Employer appointed Trustees may not exceed the total number of votes cast by Union appointed Trustees and vice versa.

7.04  All meetings of the Board of Trustees shall be held at the principal office of the Fund unless another place is designated from time to time by the Board of Trustees.

7.05  Upon any matter which may properly come before the Board of Trustees, the Board of Trustees may act in writing without a meeting, provided such action has the affirmative concurrence in writing of two (2) Employer appointed Trustees and two (2) Union appointed Trustees, provided, however, that a copy of such writing shall be forthwith mailed to each non-participating Trustee.

## ARTICLE VIII

### GENERAL PROVISIONS APPLICABLE TO TRUSTEES

8.01  Every instrument executed by the Board of Trustees or by its direction shall be conclusive in favor of every person who relies on it, that (a)  at the time of the delivery of the instrument this Trust Agreement was in full force and effect, (b) the instrument was executed in accordance with the terms and conditions of this Agreement, and (c) the Board of Trustees was duly authorized to execute the instrument or direct its execution.

8.02  The duties, responsibilities, liabilities and disabilities of any Trustee under this Agreement shall be determined solely by the express provisions of this Agreement and no further duties, responsibilities, liabilities or disabilities shall be implied or imposed.

8.03

A.  Each of the Trustees shall be protected in acting upon any paper or document believed by him to be genuine and to have been made, executed or delivered by the proper parties purporting to have made, executed, or delivered the same, and shall be protected in relying and acting upon the opinion of legal counsel in connection with any matter pertaining to administration or execution of this Trust, subject to the applicable standard of judgment and care as set forth in the Employee Retirement Income Security Act of 1974.

B.  The Trustees may rely upon an instrument in writing purporting to have been signed by, or upon telegrams purporting to have been transmitted by a majority of the Trustees, as conclusive evidence of the fact that a majority of the Trustees have duly taken the action stated to have been taken in such instrument or telegram, subject to the applicable standard of judgment and care, as set forth in the Employee Retirement Income Security Act of 1974.

C.  No Trustee shall be personally responsible for any liability or debts of the Fund contracted by the Trustees, or for the nonfulfillment of contracts, subject to the provisions of the Employee Retirement Security Act of 1974 which prescribe

the fiduciary responsibilities of Trustees. Nothing in this Trust Agreement or in any plan or contract entered into hereunder shall be construed to broaden the personal liability of any Trustee or any other person in the position of a fiduciary under this Trust beyond the scope of liability applicable to fiduciaries as provided in the Employee Retirement Income Security Act of 1974.

8.04  Neither the Employers, any Signatory Association, the Individual Employers, the Unions nor any of the Trustees shall be responsible for:

A.  The validity of this Trust Agreement or the Plan.

B.  Any delay occasioned by any restriction  or provision in this Trust Agreement, the Plan, the rules and regulations of the Board issued hereunder, any contract entered into in the course of the administration; provide, however, that this clause shall not excuse any violation of any of the Collective Bargaining Agreements.

8.05  Each Trustee shall be reimbursed out of the Fund in a reasonable amount for the expense of attendance at each meeting of the Board of Trustees and for any other reasonable expense incurred in the performance of his duties as a Trustee.

8.06  Any Trustee who resigns or is removed from office shall forthwith turn over to the Chairman or Secretary of the Board of Trustees at the principal office of the Fund any and all records, books, documents, monies, and other properties in his possession or under his control which belong to the Fund or which were received by him in his capacity as such Trustee.

## ARTICLE IX

### ARBITRATION

9.01  In the event that the Trustees deadlock on any matter arising in connection with the administration of the Fund or the Plan, they shall agree upon a neutral person to serve as an impartial umpire to decide the dispute.  The Employer Trustees and the Employee Trustees may, by mutual agreement, select an equal number of representatives from their respective Trustee groups to sit with the umpire to constitute a Board of Arbitration. If such is done, the decision of a majority of this Board shall be final and binding upon the Trustees and the parties to and beneficiaries of this Trust Agreement and of the Plan.  Otherwise, the decision of the impartial arbitrator or umpire shall be final and binding upon the Trustees, the parties to and beneficiaries of this Trust Agreement and the Pension Plan.  The decision of the Board of Arbitration or the impartial umpire, as the case may be, shall be produced in writing.

9.02  If no agreement for an impartial umpire is reached within 10 days or within such further time as the Trustees may allow for such purpose by mutual agreement, such umpire shall, upon petition by either the Employee Trustees or the Employer Trustees, be appointed by the United States District Court for the Northern District of California.

9.03  The reasonable expenses of any such arbitration, including any necessary court proceedings to secure the appointment of an umpire or the enforcement of the arbitration award,

(excluding the fees and expenses of witnesses called by the parties and the cost of attorneys other than Fund attorneys selected pursuant to this Agreement) shall be a proper charge against the Fund. No expense shall be deemed reasonable under this Section unless and until approved by the Board of Trustees.

9.04 No matter in connection with the interpretation or enforcement of any Collective Bargaining Agreement shall be subject to arbitration under this Article. No matter which is subject to arbitration under this Article shall be subject to the grievance procedure of any other arbitration procedure provided in any of the Collective Bargaining Agreements.

## ARTICLE X

### GENERAL PROVISIONS

10.01 In the event the Board of Trustees procure a policy or policies of insurance or enter into a contract or contracts providing for benefits, no Employee or other beneficiary shall have any right to claim benefits under the Pension Plan, except as specified in such policy or policies, or contract or contracts. No Employee, or other beneficiary or person shall have any right or claim to benefits under the Plan other than as specified in the Plan. Any and every claim or right asserted under the Plan or against the Fund, regardless of the basis asserted for the claim and regardless of when the act or omission upon which the claim is based occurred, shall be resolved by the Board of Trustees under and pursuant to the Plan and its decision with regard to the claim or right shall be final and binding upon all persons affected by the decision. The Board of Trustees shall establish a procedure for the presentation, consideration and determination of any such claim or right, which procedure shall comply with ERISA. No action may be brought for benefits under the Plan or to enforce any right or claim under the Plan or against the Fund until after the claim for benefits or other claim has been submitted to and determined by the Board in accordance with the procedure thus established and thereafter the only action which may be brought is one to enforce the decision of the Board or to clarify the rights of the claimant under such decision. Neither the Employers, any Signatory Association, any Individual Employer, the Unions, nor any of the Trustees shall be liable for the failure or omission for any reasons to pay any benefits under the Plan.

10.02 Any notice required to be given under the terms of this Agreement shall be deemed to have been duly given if delivered personally to the person to be notified in writing, or if mailed in a sealed envelope, postage prepaid, to such person at his last known address as shown in the records of the Fund, or is sent by wire to such person at said last known address.

10.03 This Agreement shall be binding upon and inure to the benefit of all Employers and the heirs, executors, administrators, successors, purchasers and assigns of the Employers, and the Employees and beneficiaries, the Union and the Trustees.

10.04 All question pertaining to this Agreement, the Fund or the Pension Plan, and their validity, administration and construction, shall be determined in accordance with the laws of the State of California and with any pertinent laws of the United States.

10.05  If any provision of this Trust Agreement, the Pension Plan, the rules and regulations made pursuant thereto, or any step in the administration of the Fund or the Pension Plan is held to be illegal or invalid for any reason, such illegality or invalidity shall not affect the remaining portions of the Agreement, the Plan or the rules and regulations, unless such illegality or invalidity prevents accomplishment of the objectives and purposes of the Agreement and the Plan.  In the event of any such holding, the Trustees will immediately remedy any such defects.

10.06  Any payment required by a decision of the Board shall be due and payable in the City and County of San Francisco and any action or proceeding to enforce or clarify such decision shall be brought in a court of competent jurisdiction in that City and County.  Any action or proceeding affecting the Fund, the Plan or the Trust hereby established shall be brought solely against the Fund as an entity, and solely by or on behalf of the claimant in the claims procedure established pursuant to Section 3 of this Article, and neither the Employers nor any Signatory Association or Individual Employer, the Unions, any Employee, any beneficiary or other person shall be entitled to notice of any such action or proceeding or to service of process therein.  Any final judgment entered in any such action or proceeding shall be binding upon all of the above-mentioned parties so long as such judgment does not attempt or purport to impose any personal liability upon or against any party not joined or not served in any such action or proceeding.

## ARTICLE XI

### SPECIAL POWERS OF THE BOARD OF TRUSTEES

11.01  The Board of Trustees may, by unanimous vote, coordinate its activities in the administration of the Fund and the Pension Plan with the administrative activities of the Board of Trustees of other trust funds and Pension Plans established or to be established for Operating Engineers in California to such extent as may be necessary or desirable to minimize costs, eliminate unnecessary bookkeeping and other expenses for the Employer and avoid or eliminate duplicating Employer contributions or insurance coverage with relation to the same Employee, and may for such purposes by agreement between the Board of Trustees and other board or boards of trustees transfer to and accept from such other board or boards of trustees money or credits in such amount or amounts, under such conditions as it may from time to time be determined by agreement with such other board or boards of trustees.

11.02  Any affiliated Union may become a Union hereunder by executing a written agreement accepting both this Agreement and Declaration of Trust and the Union Trustees hereto,and meeting any other requirements established by the Trustees.

11.03  Any Employer shall become an Employer hereunder by executing a written Pension Agreement providing for Employer contributions to the Trust Fund and accepting both this Agreement and the Declaration of Trust and Employer Trustees hereof and meeting any other requirements established by the Trustees.

11.04  The admission of any affiliated Union as a Union hereunder or any Employer as an Employer hereunder shall become effective upon acceptance by the Trustees of such affiliated Union or Employer as the case may be.

25

# ARTICLE XII

## AMENDMENT AND TERMINATION

**12.01**  The provisions of this Trust Agreement may be amended or modified at any time, and from time to time, by the Trustees.

**12.02**  In no event shall the Trust established by this Agreement continue for a longer period than is permitted by law.

**12.03**  This Agreement and Declaration of Trust shall remain in effect until termination by action of the Trustees.

**12.04**  The Trustees shall in the event of termination pay to the Insurer the balance, if any, of the assets of the Trust Fund for application under the policies.

**12.05**  The Trustees shall in the event of termination arrange for a final audit and report of their transactions and accounts for the purpose of terminating their Trusteeship.

**12.06**  The Trustees shall in the event of termination make any changes permitted under the policies which they deem necessary or desirable for the purpose of reallocating any funds held under the insurance contract and including funds held for retired Employees.

**12.07**  At no time, whether during or after the term of this trust, shall any part of said Trust Fund revert to or be recoverable by an Employer or be used for or diverted to any purpose other than for the exclusive use of persons entitled to benefits under this Agreement and Declaration of Trust and Pension Plan.  This is an irrevocable trust.

This Trust Agreement, as amended, is hereby executed on this **30th** day of December, 1975.

EMPLOYER TRUSTEES                    EMPLOYEE TRUSTEES

_____              _____

_____              _____

_____              _____

The undersigned hereby accept office as Trustees appointed pursuant to the aforesaid Agreement and agree to act under and be subject to all of the terms and conditions of said Agreement. The undersigned hereby declare that they hold the Fund created by said Agreement in trust for the uses and purposes set forth in said Agreement.

DATED: **12-30-75**

EMPLOYER TRUSTEES                    EMPLOYEE TRUSTEES

_____              _____

_____              _____

_____              _____

On February 26, 1976, the resignation of Employer Trustee, Bernard
Dahlin was accepted and at the next regularly scheduled Trustees meeting
(July 21, 1976) Irving Baldwin was appointed as Employer Trustee.



## AMENDMENT NO. 1 TO THE TRUST AGREEMENT
## ESTABLISHING THE STATIONARY ENGINEERS LOCAL 39
## PENSION TRUST FUND

Pursuant to Article XII, Section 12.01 of the Trust Agreement establishing said Trust, the Board of Trustees hereby adopt this Amendment No. 1 to the Agreement and Declaration of Trust Establishing the Stationary Engineers Local 39 Pension Trust Fund, as amended 1975, as follows:

Article VI. (Functions and Powers of the Board of Trustees) is hereby amended by adding the following Section 6.06 to said Article:

Section 6.06 - The Trustees shall have the full and complete discretionary authority and power to determine eligibility for participants and benefits and to interpret and construe all terms of this Trust and any Plan created pursuant to the authority granted to the Board of Trustees of this Trust.

In all other respects, the provisions of the Agreement and Declaration of Trust of the Stationary Engineers Local 39 Pension Trust Fund (as amended 1975) shall remain in full force and effect.

Adopted this 28th day of August, 1996, effective January 1, 1996.

 

# AMENDMENT TO THE TRUST AGREEMENT

## FOR THE PENSION FUND OF STATIONARY ENGINEERS LOCAL 39

This Amendment to the Trust Agreement of the Pension Fund of Stationary Engineers Local 39 is hereby made this 14th day of _____ February _____, 1998, effective January 1, 1998.

### RECITALS:

1.    An Agreement and Declaration of Trust (hereinafter called "Trust Agreement") executed on June 1, 1955, established and created the Pension Fund of Stationary Engineers Local 39. Said Trust Agreement was amended and restated by the Trustees on December 30, 1975.

2.    Said Trust Agreement provides in Article XII, Section 12.01, as amended on December 30, 1975, as follows:

> The provisions of this Trust Agreement may be amended or modified at any time ... by the Trustees ...

3.    It is the desire of the Trustees to amend said Trust Agreement.

NOW, THEREFORE, the Trust Agreement for the Pension Fund of Stationary Engineers Local 39 is amended as follows:

1.    Article IV is amended by adding Section 4.04 thereto as follows:

> 4.04. The Trustees have the power, by written regulation duly communicated to all employers, to adopt procedures for binding expedited arbitration or other methods for impartial determination of the amount of any delinquent contributions and the collection thereof and all such regulations shall be binding on all Employers hereunder.

> The Trustees, in their sole discretion and pursuant to said regulations, may refer any claim for delinquent Employer Contributions to final and binding expedited arbitration as follows:

010

(i)     An Employer shall first receive a ten-day written notice of claimed delinquency.  If the delinquency is not cured during such period, the Employer shall be notified either by personal service or certified mail of the Trustees' referral of the claim to arbitration, and such notice shall contain the date, time, and place set for the arbitration hearing.  If, after such notice, any Employer fails to appear or proceed, or show sufficient cause, in the opinion of the arbitrator, why the arbitration should not proceed, the arbitrator shall be and is hereby empowered to enter a default award against said Employer, which award shall include all costs and fees incurred by the Fund in collection, including the fees of the arbitrator, as set forth in Article IX, Section 9.03 of this Agreement.

(ii)     The arbitrator for each case referred to arbitration shall be assigned from a permanent panel of not less than three arbitrators to be appointed by the Trustees.  Arbitrators shall be associated with or approved by the American Arbitration Association.  The initial arbitration panel shall be Gerald McKay, William Riker and Thomas Angelo.  If any of said arbitrators resigns or withdraws from the panel, his/her successor shall be appointed by the Trustees.

(iii)     Cases to be heard shall be assigned to the first available arbitrator next in order of rotation on the panel.  An employer whose case has been referred to arbitration may disqualify the arbitrator originally assigned to his case by written notice to the Fund within 10 days of receipt of notice of the referral to arbitration.  Upon such a challenge, the arbitration next on the panel shall be assigned the case and no further challenges shall be permitted.

(iv)     All such arbitrations shall be conducted pursuant to the California Arbitration Act (CCP §1280 et seq.).  The arbitrations shall be conducted in an expedited manner and no transcripts shall be prepared or briefs filed.  The arbitrator's award shall be in writing and shall issue no later than ten days following the close of the hearing.

(v)     If the claim for delinquent Employer Contributions is upheld in whole, the arbitration award shall provide for payment by the Employer of all collection costs, including but not limited to, liquidated damages as allowed by the Employee Retirement Income Security Act of 1974, as amended, interest, attorneys' fees, collection costs, and the arbitrator's fees; and if upheld in part, the award may provide for payment of such additional amounts.

4.     This Amendment may be executed in counterpart.

5.     In all other respects, the provisions of the Agreement and Declaration of Trust of the Stationary Engineers Local 39 Pension Fund shall remain in full force and effect.

IN WITNESS WHEREOF, the undersigned Trustees of the Pension Fund of Stationary Engineers Local 39 have executed this Amendment the date first above written.

**EMPLOYER TRUSTEES**                  **UNION TRUSTEES**

_____            _____

_____            _____

1/107127

**AMENDMENT NO. 3**
**TO THE**
**IUOE STATIONARY ENGINEERS LOCAL 39 PENSION TRUST**

Pursuant to Article 12 of the IUOE Stationary Engineers Local 39 Pension Trust the Board of Trustees hereby amends the Trust effective October 1, 2004, as follows:

The fourth paragraph of Article 6.04 shall be deleted, and in its place shall be inserted the following:

"The cost of any audit shall be born by the Individual Employer if a shortage disclosed by the audit exceeds 5% of the total amount due and owing for the period audited and is not the result of clerical error."

Dated this _____ day of _____, 2003.

**IUOE STATIONARY ENGINEERS LOCAL 39 PENSION PLAN**

By: _____     By: _____
    Chairman                        Co-Chairman

0101

## RESOLUTION OF STATIONARY ENGINEERS
## LOCAL 39 PENSION TRUST FUND

WHEREAS, the Board of Trustees of Stationary Engineers Local 39 Pension Trust Fund (hereafter "Board") have voted at the recommendation of the Investment Consultant to terminate the custodial, money management and security lending services agreements with Amalgamated Bank;

WHEREAS, the Board has reviewed the custodial services provided by other financial instutions, as recommended by the Investment Consultant;

RESOLVED, at the recommendation of the Investment Consultant, the Board has selected Bank of New York and its affiliate BNY Asset Management to provide custodial, asset management and security lending services, pending final legal approval.

FURTHER RESOLVED, at the recommendation of the Investment Consultant, the Board has selected BNY Asset Management to manage a Russell Mid Cap Growth index, pending final legal approval.

FURTHER RESOLVED, the Board of Trustees delegates their power to execute documents on behalf of the Board to the Pension Administrator in order to establish necessary accounts with Bank of New York.

RESOLVED, December 26, 2005.

PAUL BENSI

JERRY KALMAR

LYLE SETTER

BART FLORENCE

# AMENDMENT NO. 5 TO THE
## TRUST AGREEMENT ESTABLISHING THE STATIONARY ENGINEERS
## LOCAL 39 PENSION TRUST FUND

Pursuant to Article XII, Section 12.01 of the Trust Agreement establishing said Trust, the Board of Trustees hereby adopts this Amendment No. 5 to the Agreement and Declaration of Trust establishing the Stationary Engineers Local 39 Pension Trust Fund, as amended 1975, as follows:

A.  Effective October 1, 2007, Article I, Section 1.08 is amended as follows:

   1.08   Employer contributions shall mean any payments made by an Employer for the benefit of an Employee to the Trust Fund. All contributions, including unpaid Employer contributions, are vested assets of the Trust Fund that vest prior to actual transfer from Employer to the Fund.

B.  Effective for contributions due on or after October 1, 2007, the phrase "shall bear interest at the rate of 7% per annum until paid" at the end of the third sentence in Article IV, Section 4.02 is deleted and replaced with the phrase "shall bear interest at the rate of 10% per annum until paid".

C.  Effective October 1, 2007, the following sentences are added to the end of the first paragraph of Article VI, Section 6.04:

   The Individual Employer shall produce for examination and copying such books, records, papers or reports at its premises within the working jurisdiction of the applicable Collective Bargaining Agreement. The Individual Employer shall be liable for the expenses related to performing an audit outside of the working jurisdiction of the applicable Collective Bargaining Agreement, including travel expenses and other expenses.

D.  Effective for audits completed on or after January 1, 2007, the following sentences are added to the end of the third paragraph of Article VI, Section 6.04:

   If improper payments are discovered through an audit, the Board of Trustees may, in its discretion, take the following actions: (1) provide credit as to any and all improper contributions taking into account the following, but not limited to, whether said contributions resulted in an award of benefits; and/or (2) receive from the Employer any losses, damages or financial detriment to the Fund resulting from the employer's improper payment. The Board may reduce any such credit by 10% to compensate the Fund for the time and expense of researching and processing requests for credits.

1

E.     Except as herein expressly amended or modified, all of the terms and provisions of the Agreement and Declaration of Trust of the Stationary Engineers Local 39 Pension Trust Fund (as amended 1975) are reaffirmed and are continued in full force and effect.

Executed this _____ day of _____ 2007.


**BOARD OF TRUSTEES OF THE STATIONARY ENGINEERS LOCAL 39 PENSION TRUST FUND**

By: Chairman

By: Co-Chairman

1/462562

## AMENDMENT NO. 6 TO THE
## TRUST AGREEMENT ESTABLISHING THE STATIONARY ENGINEERS
## LOCAL 39 PENSION TRUST FUND

Pursuant to Article XII, Section 12.01 of the Trust Agreement establishing said Trust, the Board of Trustees hereby adopts this Amendment No. 6 to the Agreement and Declaration of Trust establishing the Stationary Engineers Local 39 Pension Trust Fund, as amended 1975, as follows:

A.  Effective July 12, 2012, Article IV is amended by amending the first three paragraphs of Section 4.04 thereto as follows:

> Section 4.04.  The Trustees have the power, by written regulation duly communicated to all employers, to adopt procedures for binding expedited arbitration or other methods for impartial determination of an Employer's compliance with Article VI, Section 6.04 and/or the amount of any delinquent Employer Contributions and the collection thereof and all such regulations shall be binding on all Employers hereunder.

> The Trustees, in their sole discretion and pursuant to said regulations, may refer any claim for delinquent Employer Contributions and/or an Employer's compliance with Article VI, Section 6.04 to final and binding expedited arbitration as follows:

> (i)  An Employer shall first receive a ten-day written notice of claimed delinquency and/or failure to comply with Article VI, Section 6.04. If the delinquency and/or failure to comply with the obligations set forth in Article VI, Section 6.04 is not cured during such period, the Employer shall be notified either by personal service or certified mail of the Trustees' referral of the claim to arbitration, and such notice shall contain the date, time, and place set for the arbitration bearing. If, after such notice, any Employer fails to appear or proceed, or show sufficient cause, in the opinion of the arbitrator, why the arbitration should not proceed, the arbitrator shall be and is hereby empowered to enter a default award against said Employer, which award shall include all costs and fees incurred by the Fund in collection; including the fees of the arbitrator, as set forth in Article VI, Section 6.04 of this Agreement.

B.  Effective July 12, 2012, the following sentences are added to the end of the first paragraph of Article VI, Section 6.04:

> The decision as to whether any information, data, reports or documents are reasonably relevant to and suitable for the purposes of the administration of the Fund and the Plan and/or whether any books, records, papers or reports are necessary to determine whether the Individual Employer is making full

and prompt payment of all sums required to be paid by him or it to the Fund shall be made by the Board of Trustees or its certified public accountant, and such decision shall be binding on the Individual Employer. Additionally, if it becomes necessary for the Trust Fund to consult legal counsel to compel an Employer to furnish to, or permit the examination and copying of any books, records, papers, reports, data, documents or information by, the Trust Fund, the Employer shall reimburse the Trust Fund for all reasonable attorneys' fees and costs incurred by the Trust Fund in connection therewith, whether or not legal proceedings were instituted and whether or not such examination discloses that the Employer has failed to make appropriate or timely Employer Contributions to the Trust Fund.

C.     Except as herein expressly amended or modified, all of the terms and provisions of the Agreement and Declaration of Trust of the Stationary Engineers Local 39 Pension Trust Fund (as amended 1975) reaffirmed and are continued in full force and effect.

Executed this 12th day of July 2012.

**BOARD OF TRUSTEES OF THE STATIONARY ENGINEERS LOCAL 39 PENSION TRUST FUND**

1/675185

Amendment 6 to the Trust Agreement Establishing Stationary Engineers Local 39 Pension Trust Fund

## AMENDMENT NO. 7 TO THE
## TRUST AGREEMENT ESTABLISHING THE STATIONARY ENGINEERS
## LOCAL 39 PENSION TRUST FUND

Pursuant to Article XII, Section 12.01 of the Trust Agreement establishing said Trust, the Board of Trustees hereby adopts this Amendment No. 7 to the Agreement and Declaration of Trust establishing the Stationary Engineers Local 39 Pension Trust Fund, as amended 1975, as follows:

A.   Effective October 24, 2013, the first sentence of Article VII, section 7.03 is amended as follows:

> 7.03.  To constitute a quorum at any regular or special meeting of the Board of Trustees, there must be present at least one Employer appointed Trustee and one Union appointed Trustee; a quorum will consist of one Employer Trustee and one Employee Trustee when a meeting notice is forwarded in writing to each Trustee not less than 5 days prior to the next meeting date and that such notice contain an agenda of all matters which are to be considered and that such meeting be restricted to consideration only of the matters contained in the agenda.

B.   Effective October 24, 2013, Article VII, section 7.05 is amended as follows:

> 7.05.  Upon any matter which may properly come before the Board of Trustees, the Board of Trustees may act in writing without a meeting, provided such action has the concurrence of the Trustees.

Except as herein expressly amended or modified, all of the terms and provisions of the Agreement and Declaration of Trust of the Stationary Engineers Local 39 Pension Trust Fund (as amended 1975) reaffirmed and are continued in full force and effect.

IN WITNESS WHEREOF, this Amendment No. 7 has been duly adopted at a meeting of the Board of Trustees held on October 24, 2013 and executed this 24th day of October 2013.

**BOARD OF TRUSTEES OF THE STATIONARY ENGINEERS LOCAL 39 PENSION TRUST FUND**

1/726206

---

**AMENDMENT NO. 8 TO THE**
**TRUST AGREEMENT ESTABLISHING THE STATIONARY ENGINEERS**
**LOCAL 39 PENSION TRUST FUND**

Pursuant to Article XII, Section 12.01 of the Trust Agreement establishing said Trust, the Board of Trustees hereby adopts this Amendment No. 8 to the Agreement and Declaration of Trust establishing the Stationary Engineers Local 39 Pension Trust Fund, as amended 1975, as follows:

A.      Effective March 12, 2015, Article I, Section 1.04 is amended as follows:

        Employer Trustee shall mean any Trustee designated by the Employer Trustees in accordance with the provisions hereinafter set forth.

B.      Effective March 12, 2015, Article III, Section 3.01 is amended as follows:

        The Fund shall be administered by a Board of Trustees which shall consist of not less than two Trustees with one half to be Union Trustees and one half to be Employer Trustees. The Fund shall at all times be administered by an equal number of Employer Trustees and Union Trustees with not more than three Employer Trustees and not more than three Union Trustees. The Trustees representing the Employers shall be appointed by an instrument in writing by the Employer Trustees. The Trustees representing the Union shall be appointed by the Union by an instrument in writing signed by the Business Manager of the Union. The Employers and the Union expressly designate the Trustees jointly as named fiduciaries, who shall have exclusive authority and discretion acting as the Board of Trustees as herein provided to control and manage the operation and administration of the Fund and Plan. Each of the current Trustees expressly accepts designation as a fiduciary and as Trustee by written acceptance and signature of this Trust Agreement and assumes the duties, responsibilities and obligations of the Trustees as created and established by this Trust Agreement and under applicable law. Any Trustee named hereafter shall do likewise by signing the Trust Agreement or a written acceptance thereof, in a form approved by and filed with the Board of Trustees.

C.      Effective March 12, 2015, the first sentence of Article III, Section 3.05 is amended as follows:

        In the event a Union Trustee shall die, resign, be removed or become incapacitated, a successor Union Trustee shall be appointed forthwith by an instrument in writing signed by the Business Manager of the Union.

D.      Effective March 12, 2015, the first sentence of Article III, Section 3.06 is amended as follows:

>       In the event an Employer Trustee shall die, resign, be removed or become incapacitated, a successor Employer Trustee shall be appointed forthwith by an instrument in writing signed by the remaining Employer Trustees.

E.      Effective March 12, 2015, the first sentence of Article III, Section 3.09 is amended as follows:

>       Any Union Trustee may be removed at any time, for any reason, by a notice in writing signed by the Business Manager of the Union and directed to the Chairman of the Board of Trustees.

F.      Effective March 12, 2015, the first sentence of Article III, Section 3.10 is amended as follows:

>       Any Employer Trustee may be removed at any time, for any reason, by a writing signed by the other Employer Trustees and served on the Trustee and Chairman of the Board of Trustees.

Except as herein expressly amended or modified, all of the terms and provisions of the Agreement and Declaration of Trust of the Stationary Engineers Local 39 Pension Trust Fund (as amended 1975) reaffirmed and are continued in full force and effect.

In WITNESS WHEREOF, this Amendment No. 8 has been duly adopted at a meeting of the Board of Trustees held on March 12, 2015 and executed on this 12th day of March 2015.

**BOARD OF TRUSTEES OF THE STATIONARY ENGINEERS LOCAL 39 PENSION TRUST FUND**

1\791855

---

## AMENDMENT NO. 9 TO THE
## TRUST AGREEMENT ESTABLISHING THE STATIONARY ENGINEERS
## LOCAL 39 PENSION TRUST FUND

Pursuant to Article XII, Section 12.01 of the Trust Agreement establishing said Trust, the Board of Trustees hereby adopts this Amendment No. 9 to the Agreement and Declaration of Trust establishing the Stationary Engineers Local 39 Pension Trust Fund, as amended 1975, as follows:

A.      Effective for contributions due on or after May 1, 2017, the end of the third sentence of Article IV, Section 4.02 is amended as follows:

The phrase "shall bear interest at the rate of 10% per annum until paid" is deleted and replaced with the phrase "shall bear interest at the rate of 10% per annum, compounded monthly, until paid".

Except as herein expressly amended or modified, all of the terms and provisions of the Agreement and Declaration of Trust of the Stationary Engineers Local 39 Pension Trust Fund (as amended 1975) reaffirmed and are continued in full force and effect.

IN WITNESS WHEREOF, this Amendment No. 9 has been duly adopted at a meeting of the Board of Trustees held on March 9, 2017, and executed this 9th day of March, 2017.

**BOARD OF TRUSTEES OF THE STATIONARY ENGINEERS LOCAL 39 PENSION TRUST FUND**

1\896205

## AMENDMENT NO. 10 TO THE
## TRUST AGREEMENT ESTABLISHING THE STATIONARY ENGINEERS
## LOCAL 39 PENSION TRUST FUND

Pursuant to Article XII, Section 12.01 of the Trust Agreement establishing said Trust, the Board of Trustees hereby adopts this Amendment No. 10 to the Agreement and Declaration of Trust establishing the Stationary Engineers Local 39 Pension Trust Fund, as amended 1975, as follows:

A.     Effective January 1, 2018, Article VI, Section 6.04 is amended in its entirety as follows:

     6.04   The Board of Trustees shall maintain suitable and adequate records of and for the administration of the Fund and the Plan. The Board may require the Employer, any Signatory Association, any Individual Employer, the Union, any Employee or any other beneficiary under the Plan to submit to it any information, data, reports or documents reasonably relevant to and suitable for the purposes of such administration; provided, however, that the Union shall not be required to submit lists of membership. The parties agree that they will use their best efforts to secure compliance with any reasonable request of the Board for any such information, data, report or documents. Upon request in writing from the Board, any Individual Employer shall permit a certified public accountant selected by the Board to enter upon the premises of such Individual Employer during business hours, at a reasonable time or times, and to examine and copy such books, records, papers or reports of such Individual Employer as may be necessary to determine whether the Individual Employer is making full and prompt payment of all sums required to be paid by him or it to the Fund. The Individual Employer shall produce for examination and copying such books, records, papers or reports at its premises within the working jurisdiction of the applicable Collective Bargaining Agreement. The Individual Employer shall be liable for the expenses related to performing an audit outside of the working jurisdiction of the applicable Collective Bargaining Agreement, including travel expenses and other expenses. The decision as to whether any information, data, reports or documents are reasonably relevant to and suitable for the purposes of the administration of the Fund and the Plan and/or whether any books, records, papers or reports are necessary to determine whether the Individual Employer is making full and prompt payment of all sums required to be paid by him or it to the Fund shall be made by the Board of Trustees or its certified public accountant, and such decision shall be binding on the Individual Employer. Additionally, if it becomes necessary for the Trust Fund to consult legal counsel to compel an Employer to furnish to, or permit the examination and copying of any books, records, papers, reports, data, documents or information by, the Trust Fund, the Employer shall reimburse the Trust Fund for all reasonable attorneys' fees and costs incurred by the Trust Fund in connection therewith, whether or not legal proceedings were instituted and whether or not such examination discloses that the Employer has failed to make appropriate or timely Employer Contributions to the Trust Fund.

In addition to the foregoing, each Individual Employer, upon request of an authorized representative of the Union, the Employers, or the Fund, shall permit auditors designated by the Fund to review any and all records relevant to the enforcement of the provisions of the Collective Bargaining Agreements or this Trust Agreement. This includes, but is not limited to, Employer's records relating to the Trust Fund's right to payment for contributions required by the Individual Employer and records relating to any request for a refund and/or credit of any improper payment allegedly made by the Individual Employer, regardless of whether the improper payment was initially discovered by the Individual Employer or the Trust Funds. Such review shall be permitted not less than ten (10) working days after demand.

If an audit discloses a violation or default in contributions to the Fund, the Board of Trustees shall be and is authorized to determine the formula which shall be applied to compute appropriate Contributions due to the Fund. The Individual Employer shall be required to comply with such formula and make payments to the Fund immediately upon being advised of the amount due. If improper payments are discovered through an audit conducted by the Trust Fund and its Accountants or a self audit conducted by the Employer, the Board of Trustees may, in its discretion, take the following actions: (1) provide credit as to any and all improper contributions taking into account the following, but not limited to, whether said contributions resulted in an award of benefits; and/or (2) receive from the Employer any losses, damages or financial detriment to the Fund resulting from the employer's improper payment. For improper payments discovered through an audit conducted by the Trust Funds and its Accountants, the Board may reduce any such credit by 10% to compensate the Fund for the time and expense of researching and processing requests for credits. To the extent that the Employer discovers an improper payment by way of a self audit, the Trust Fund is entitled to its attorneys' fees and costs, including audit costs, associated with its review of the Employer's records in connection with any request for a refund and/or credit of improper payments allegedly made by the Employer.

The cost of any audit shall be born by the Individual Employer if a shortage disclosed by the audit exceeds 5% of the total amount due and owing for the period audited and is not the result of clerical error.

The Union and the Employers shall be have the right to receive and utilize any information derived from an audit.

B. Effective January 1, 2018, Article IV, Section 4.04(iv) is amended in its entirety as follows:

(iv). Except as otherwise provided in this Trust Agreement, all such arbitrations shall be conducted pursuant to the California Arbitration Act (CCP Section 1280 et seq.). The arbitrations shall be conducted in an expedited manner and no transcripts shall be prepared or briefs filed. No pre-arbitration discovery shall be allowed except: (a) a deposition may be taken to preserve the

testimony of a witness who will be unavailable for the arbitration proceeding provided said deposition has been approved by the arbitrator upon a sufficient showing of the witness's unavailability by the party seeking said deposition; and (b) subpoenas may be issued by the arbitrator to third parties for their appearance at the arbitration proceeding and production of documents at the arbitration proceeding. The arbitrator's award shall be in writing and shall issue no later than ten days following the close of the hearing.  The arbitrator shall retain jurisdiction over the award in order to resolve disputes with respect to computing the remedy.  Judgment of the Court shall be entered upon an award made by the arbitrator pursuant to an expedited arbitration conducted under the procedures required by this Trust Agreement.

Except as herein expressly amended or modified, all of the terms and provisions of the Agreement and Declaration of Trust of the Stationary Engineers Local 39 Pension Trust Fund (as amended 1975) reaffirmed and are continued in full force and effect.

IN WITNESS WHEREOF, this Amendment No. 10 has been duly adopted at a meeting of the Board of Trustees held on October 18, 2017, and executed this 18th day of October, 2017.

## BOARD OF TRUSTEES OF THE STATIONARY ENGINEERS LOCAL 39 PENSION TRUST FUND

I\936536

# EXHIBIT B

## William E. Riker
ARBITRATOR

# IN ARBITRATION PROCEEDINGS
# PURSUANT TO THE RULES OF THE STATIONARY ENGINEERS LOCAL
# 39 PENSION TRUST FUND

| | |
|---|---|
| In the Matter of a Controversy, ) | |
| ) | |
| Between, ) | |
| ) | |
| STATIONARY ENGINEERS LOCAL 39 ) | William E. Riker |
| PENSION TRUST FUND, ) | |
| ) | |
| v. ) | |
| ) | |
| SAN JOSE HEALTHCARE SYSTEM, LP dba ) | Zoom Video Communications |
| REGIONAL MEDICAL CENTER OF SAN ) | June 24, 2021 |
| JOSE; HCA, INC., parent company ) | |
| ) | |
| Re: Payroll Compliance Delinquencies for Period ) | |
| February 1, 2010 through October 31, 2013; ) | |
| and Demand for Documents for Payroll ) | |
| Compliance Testing for Period January 1, ) | |
| 2015 to December 31, 2019          ) | |

This arbitration arises pursuant to the applicable provisions of the Trust Agreement

governing the Stationary Engineers Local 39 Pension Trust Fund ("Trust Fund"). The Board of

Trustees of the Trust Fund referred the matters in dispute to arbitration. The arbitration was held

on June 24, 2021 with the parties appearing virtually. At the beginning of the arbitration,

Regional Medical Center ("Employer") asserted that the arbitrator does not have the authority to

hear the dispute or determine who is subject to the contribution obligation. The Employer's

position is that the question of who the Employer owes contributions for is one that must be

determined by way of the grievance procedure under the collective bargaining agreement

("CBA"). As discussed below, the Arbitrator is authorized to hear relevant evidence and issue a

ruling as to the Trust Fund's claim of monies owed to the Trust Fund by the Employer and issue

a ruling regarding payroll compliance testing.

## APPEARANCES

### ON BEHALF OF THE TRUST FUND

Linda Baldwin Jones
Roberta D. Perkins
Weinberg, Roger & Rosenfeld
1375 55th Street
Emeryville, CA  94608

### ON BEHALF OF THE EMPLOYER

Patricia Griffith
Harvey Warnock
FordHarrison LLP
271 17th Street NW, Suite 1900
Atlanta, GA  30363

## ISSUES

1.      Does the Employer owe the Trust Fund unpaid contributions, liquidated damages and interest covering the audit period February 1, 2010 to October 31, 2013, plus attorney's fees, all costs, including testing fees and Arbitrator fees, pursuant to the Employer's obligation to make timely contributions under the Collective Bargaining Agreement and the Trust Agreement? If so, how much does the Employer owe?

2.      Does the Employer owe the Trust Fund the documents requested by the Trust Fund and its Auditors for the audit period January 1, 2015 to December 31, 2019, plus attorneys' fees, all costs, including testing fees and Arbitrator fees, pursuant to the Collective Bargaining Agreement and Trust Agreements.  If so, what documents must the Employer produce?

## STIPULATIONS

1.      The Employer received timely notice of the date, time, and place set for the arbitration hearing.

2.      The Employer was signatory to the Collective Bargaining Agreement with Stationary Engineers Local 39 for the period November 1, 2013 to October 31, 2018, and for the period November 1, 2009 to October 31, 2013.

3

# EXHIBITS

The following documents were presented during the hearing and received in evidence:

## JOINT EXHIBITS

| | |
|---|---|
| Joint 4 | Collective Bargaining Agreement Between Good Samaritan Hospital and Regional Medical Center of San Jose and International Union of Operating Engineers, Stationary Engineers, Local 39 AFL-CIO, for period November 1, 2013 to October 31, 2018 |
| Joint 5 | Collective Bargaining Agreement Between Good Samaritan Hospital and Regional Medical Center of San Jose and International Union of Operating Engineers, Stationary Engineers, Local 39 AFL-CIO, for period November 1, 2009 to October 31, 2013 |

## TRUST FUND EXHIBITS

| | |
|---|---|
| Fund Exhibit 1 | Trust Fund's Amended Notice of Arbitration, dated December 15, 2020 |
| Fund Exhibit 2 | Trust Fund's Amended Notice of Arbitration, dated October 14, 2020 |
| Fund Exhibit 3 | Trust Fund's Notice of Arbitration, dated March 29, 2019 |
| Fund Exhibit 6 | Letters from Trust Fund's Attorney to Employer Re Demand for Amounts Due and Owing |
| Fund Exhibit 7 | Letters from Trust Fund's Attorney to Employer Re Demand for Documents |
| Fund Exhibit 8 | Summary of Discrepancies Updated through June 24, 2021 |
| Fund Exhibit 9 | Letter from Auditor to Employer, dated October 29, 2013 |
| Fund Exhibit 10 | Letter from Auditor to Employer dated September 12, 2016 attaching Final Report (June 5, 2017) |
| Fund Exhibit 11 | Email from Employer to Auditor, dated September 20, 2016 |
| Fund Exhibit 12 | Email from Auditor to Employer, dated June 2, 2017 |
| Fund Exhibit 13 | Letter from Employer to Trust Fund, dated November 7, 2016 |
| Fund Exhibit 14 | Contribution Summary Report from the Trust Fund |
| Fund Exhibit 15 | Trust Fund's Delinquency Procedures |
| Fund Exhibit 16 | Auditor's Testing Fees |
| Fund Exhibit 17 | Declaration of Linda Baldwin Jones |

## EMPLOYER EXHIBITS

| | |
|---|---|
| Employer Exhibit 1 | Letter from Auditor to Employer dated September 12, 2016 attaching Final Report (June 5, 2017) |
| Employer Exhibit 2 | Employer's Internal Email, dated September 15, 2016 |
| Employer Exhibit 3 | Email from Employer to Auditor, dated September 20, 2016 |
| Employer Exhibit 4 | Email from Auditor to Employer, dated September 21, 2016 |
| Employer Exhibit 5 | Employer's Summary of Discrepancies |
| Employer Exhibit 6 | Check from Employer dated November 3, 2016, payment for Employer agreed Discrepancies |
| Employer Exhibit 7 | Letter from Employer to Fund Office dated November 7, 2016 |
| Employer Exhibit 8 | Email from Auditor to Employer, dated June 2, 2017 |
| Employer Exhibit 9A | Trust Fund Letter to Employer dated June 16, 2017 |
| Employer Exhibit 10 | Letter from Trust Fund's Attorney to Employer dated February 20, 2018 |
| Employer Exhibit 11 | Email from Employer to Trust Fund's Attorney, dated February 22, 2018 |
| Employer Exhibit 12 | Letter from Trust Fund's Attorney to Employer dated May 10, 2018 |
| Employer Exhibit 13 | Letter from Trust Fund's Attorney to Employer dated February 21, 2019 |
| Employer Exhibit 14 | Email from Employer to Trust Fund's Attorney, dated February 21, 2019 |
| Employer Exhibit 15 | Letter from Trust Fund's Attorney to Employer Re Demand for Amounts Due and Owing, dated March 4, 2019 |
| Employer Exhibit 16 | Offer Letter from Employer to Hung "Henry" Ho, dated February 19, 2008 |
| Employer Exhibit 17 | Offer Letter from Employer to James Noonan, dated May 13, 2005 |

| Employer Exhibit 18 | Collective Bargaining Agreement By and Between Good Samaritan Hospital and Regional Medical Center of San Jose and the International Union of Operating Engineers, Stationary Engineers, Local 39 AFL-CIO, for period December 29, 2020 to September 30, 2023 |
| Employer Exhibit 19A | Email from Local 39 to Employer's Attorney, dated October 19, 2018 |
| Employer Exhibit 19B | Local 39's Proposal Re Article 1 |
| Employer Exhibit 20 | 2018 Contract Negotiations Re Hospital Proposal, dated October 29, 2018 (Session 4) |
| Employer Exhibit 21 | NO EXHIBIT |
| Employer Exhibit 22 | Local 39's Proposal Re Article 1 at 4 pm |
| Employer Exhibit 23 | 2018 Contract Negotiations Re Hospital Proposal, dated October 20, 2018 (Session 2) |
| Employer Exhibit 24 | Local 39 Proposals |
| Employer Exhibit 25 | Local 39 Email re dues check-off authorization |

### RELEVANT PENSION PLAN LANGUAGE

**Stationary Engineers Pension Trust Fund and Agreement of Trust:**

Art. 1, § 1.07:

Employee shall be any person on whose account an Employer is making Employer Contributions to the Trust Fund, or for whom an Employer did make such contributions and who qualified for benefits to be provided by the Trust Fund.'

Art. IV § 4.02:

Each contribution to the Fund shall be made promptly, in such installments and at such times as the Board of Trustees shall from time to time direct. The parties recognize and acknowledge that the regular and prompt payment of amounts due by Employers to the Fund is essential to the maintenance in effect of the Pension Fund, and that it would be extremely difficult, if not impracticable, to fix the actual expenses and damage to the Fund and to the Pension Plan which will result from the failure of any Employer to make such monthly payments in full within the time provided.  Therefore, it is agreed that the amount of damage to the

Fund and the Pension Plan resulting from any such failure shall be, by way of liquidated damages, and not as a penalty, the sum of $20 for such failure to pay in full within the time provided or 10% of the amount due and unpaid, whichever is greater, which amount shall become due and payable to the Fund in San Francisco or at such other place as designated by the Trustees upon the day immediately following the date upon which the Employer became delinquent and shall be added to and become a part of said amount due and unpaid and the whole thereof shall bear interest at the rate of 7% per annum until paid. Such contributions, as thus increased, shall be the payments to ERISA as required to be made to the Fund.

Art. IV § 4.02 (Amendment No. 9):

Effective for contributions due on or after May 1, 2017, the end of the third sentence of Article IV, Section 4.02 is amended as follows: The phrase "shall bear interest at the rate of 10% per annum until paid" is deleted and replaced with the phrase "shall bear interest at the rate of 10% per annum, compounded monthly, until paid."

Art. VI, § 6.04 (Amendment No. 10):

The Board of Trustees shall maintain suitable and adequate records of and for the administration of the Fund and the Plan.  The Board may require the Employers, any Signatory Association, any Individual Employer ... to submit to it any information, data, reports, or documents reasonably relevant to and suitable for the purposes of such administration; .... Upon request in writing from the Board, any Individual Employer shall permit a certified public accountant selected by the Board to enter upon the premises of such Individual Employer during business hours, at a reasonable time or times, and to examine and copy such books, records, papers or reports of such Individual Employer as may be necessary to determine whether the Individual Employer is making full and prompt payment of all sums required to be paid by him or it to the Fund.  ...  The decision as to whether any information, data, reports or documents are reasonably relevant to and suitable for the purposes of the administration of the Fund and the Plan and/or whether any books, records, papers or reports are necessary to determine whether the Individual Employer is making full and prompt payment of all sums required to be paid by him or it to the Fund shall be made by the Board of Trustees or its certified public accountant, and such decision shall be binding on the Individual Employer. Additionally, if it becomes necessary for the Trust Fund to consult legal counsel to compel an Employer to furnish to, or permit the examination and copying of any books, records, papers, reports, data, documents or information by, the Trust Fund, the Employer shall reimburse the Trust Fund for all reasonable attorneys' fees and costs incurred by the Trust Fund in connection therewith, whether or not legal proceedings were instituted and whether or not such examination discloses

that the Employer has failed to make appropriate or timely Employer Contributions to the Trust Fund.

In addition to the foregoing, each Individual Employer, upon request of an authorized representative of the Union, the Employers, or the Fund, shall permit auditors designated by the Fund to review any and all records relevant to the enforcement of the provisions of the Collective Bargaining Agreements or this Trust Agreement. This includes, but is not limited to, Employer's records relating to the Trust Fund's right to payment for contributions required by the Individual Employer .... Such review shall be permitted not less than ten (10) working days after the demand.

## Expedited Arbitration Provisions

Art. IV, § 4.04 (Amendment No. 6):

The Trustees have the power, by written regulation duly communicated to all employers, to adopt procedures for binding expedited arbitration or other methods for impartial determination of an Employer's compliance with Article VI, Section 6.04 and/or the amount of any delinquent Employer Contributions and the collection thereof and all such regulations shall be binding on all Employers hereunder.

The Trustees, in their sole discretion and pursuant to said regulations, may refer any claim for delinquent Employer Contributions and/or an Employer's compliance with Article VI, Section 6.04 to final and binding expedited arbitration as follows:

(i) An Employer shall first receive a ten-day written notice of claimed delinquency and/or failure to comply with Article VI, Section 6.04. If the delinquency and/or failure to comply with the obligations set forth in Article VI, Section 6.04 is not cured during such period, the Employer shall be notified either by personal service or certified mail of the Trustees' referral of the claim to arbitration, and such notice shall contain the date, time, and place set for the arbitration bearing. If, after such notice, any Employer fails to appear or proceed, or show sufficient cause, in the opinion of the arbitrator, why the arbitration should not proceed, the arbitrator shall be and is hereby empowered to enter a default award against said Employer, which award shall include all costs and fees incurred by the Fund in collection; including the fees of the arbitrator, as set forth in Article VI, Section 6.04 of this Agreement.

Article IV, § 4.04(ii)-(v) (Amendment February 14, 1998):

(ii) The arbitrator for each case referred to arbitration shall be assigned from a permanent panel of not less than three arbitrators

to be appointed by the Trustees. Arbitrators shall be associated with or approved by the American Arbitration Association. The initial arbitration panel shall be Gerald McKay, William Riker and Thomas Angelo. If any of said arbitrators resigns or withdraws from the panel, his/her successor shall be appointed by the Trustees.

(iii) Cases to be heard shall be assigned to the first available arbitrator next in order of rotation on the panel. An employer whose case has been referred to arbitration may disqualify the arbitrator originally assigned to his case by written notice to the Fund within 10 days of receipt of notice of the referral to arbitration. Upon such a challenge, the arbitration next on the panel shall be assigned the case and no further challenges shall be permitted.

(iv) All such arbitrations shall be conducted pursuant to the California Arbitration Act (CCP §1280 et seq.). The arbitrations shall be conducted in an expedited manner and no transcripts shall be prepared or briefs filed. The arbitrator's award shall be in writing and shall issue no later than ten days following the close of the bearing.

(v) If the claim for delinquent Employer contributions is upheld in whole, the arbitration award shall provide for payment by the Employer of all collection costs, including but not limited to, liquidated damages as allowed by the Employee Retirement Income Security Act of 1974, as amended, interest, attorneys' fees, collection costs, and the arbitrator's fee; and if upheld in part, the award may provide for payment of such additional amounts.

## RELEVANT COLLECTIVE BARGAINING AGREEMENT LANGUAGE

The issues involve the CBAs in effect from November 1, 2013 to October 31, 2018 (Joint Ex. 4) and November 1, 2009 to October 31, 2013 (Joint Ex. 5). There is no change in the language in the relevant provisions cited below.

Art. I, § 1:

This Agreement covers all full-time and part-time employees employed by the Employer in the classifications listed in Article III, excluding all other employees, guards and supervisors, under the National Labor Relations Act. The Employer recognizes the Union as the sole collective bargaining agent for such employees.

Specifically excluded are all per diem and casual employees, including temporary help, i.e., employees hired for a period of time not to exceed ninety (90) calendar days. Further, the scope of recognition granted in this Article shall have no application in any other corporation or facility the Employer has an interest in or opens, even if said corporation or new facility employs Engineers.

Art. 7, § 6:

In lieu of participation in the HCA Savings & Retirement Program and the HCA Employee Stock Option Plan, the Employer agrees to contribute into the Stationary Engineers Local 39 Pension Trust Fund, at its respective office in San Francisco, California, or such other designated place of payment, the following amounts for all straight-time hours worked or paid for:

Effective the first pay period beginning subsequent to 11/01/09 - $5.45/hour
Effective the first pay period beginning subsequent to 11/01/10 - $5.70/hour
Effective the first pay period beginning subsequent to 11/01/11 - $5.95/hour
Effective the first pay period beginning subsequent to 11/01/12 - $6.20/hour[1]

The above contribution shall be made on or before the tenth (10th) day of each month, for pension benefits, programs and plans, as now specified, and as may be hereinafter specified by said Trustees. The Employer agrees to accept, assume and be bound by all of the obligations imposed on individual employers by that certain Trust Agreement referred to for convenience as the Stationary Engineers Local 39 Pension Trust Agreement (a copy of which has been delivered to the Employer and receipt of which is expressly acknowledged) and any amendments, modifications, changes or mergers with respect to said Trust Agreement made by the parties thereto.

The undersigned further agrees that he or it does irrevocably designate and appoint the employers mentioned in said Pension Trust as his or its attorneys-in-fact for the selection, removal, and substitution of Trustees as provided for in said Trust Agreement and as may be hereinafter provided by or pursuant to said Trust Agreements.

In the event that the individual Employer herein fails to pay the amounts of Trust Fund contributions due and owing for the period in which they are due and owing, the individual Employer shall pay in addition to the amounts due as contributions, such additional liquidated damages and/or attorneys' fees as are set forth in the Trust Agreement to which the individual Employer is bound.

---

[1]   The contribution rates changed in the 2013 to 2018 CBA, the remainder of the section was not changed.

## RELEVANT FACTS

### A.   DELINQUENT CONTRIBUTIONS

The Employer was selected for payroll compliance testing by the Trust Fund pursuant to the Trust Fund's usual procedure of auditing contributing employers every four years. The testing period was from February 1, 2010 to October 31, 2013. The Trust Fund's auditor provided adequate notice, and the Employer provided the documentation necessary to complete the audit. The audit, which became final on June 5, 2017, revealed contributions were owed for five (5) employees. (Fund Ex. 10).

On or around November 6, 2016, the Employer paid amounts due for two employees and made a partial payment of the amount due for the third employee, Steve Keith, but did not make any interest payment. (Fund Ex. 8; Employer Ex. 7). The Employer sent the payment to the Trust Fund's third party administrator, BeneSys, but the payment information was not forwarded to the auditor until the parties were preparing for arbitration in October 2020. (Testimony of Melissa Farley). The only contributions now at issue are those for Kevin Keith and Steve Keith.

Taking into account the partial payment, the Trust Fund's auditor calculated that $5,947 was due for delinquent contributions for hours worked by Kevin Keith and Steve Keith. Interest calculated through June 24, 2021 for the delinquent contributions was $8,573.25. Because the Employer did not pay interest with its partial payment, interest on the amounts due for the three employees continued to run. As of June 24, 2021, the accrued interest was $1,117.45, bringing the total interest sought by the Trust Fund to $9,690.70. Liquidated damages in the amount of $594.70 were assessed. The total amount sought by the Trust Fund for delinquent contributions is $16,232.90. (Trust Fund Ex. 8).[2]

The Employer disputes that contributions are owed for the hours worked by Kevin Keith (900.7) and for at least 94.4 hours for Steve Keith.[3] The Employer contends that both Kevin

---

[2]   Trust Fund Exhibit 8 contains a typographical error. The Trust Fund's auditor, Melissa Farley testified that the amount of interest due on the partial payment is $1,117.95, not $1,117.45 as reflected in the summary of discrepancies.

[3]   Contributions for Steve Keith were based on a total of 190.4 hours worked. The Employer agreed that for at least 96 of those hours, Steve Keith was an employee for whom contributions were due.

Keith and Steve Keith worked as per diem employees and that no contributions were due or owing because per diem employees are exempt pursuant to Article I, § 1 of the CBA.

The Trust Fund contends that per diem employees are only exempt from the CBA and the obligation to contribute to the Trust Fund if they work 90 days or less. If a per diem employee works more than 90 days, contributions are due and owing from the first day of employment. The evidence shows that both Kevin Keith and Steve Keith were, at one time, employees of the Employer and that the Employer made contributions to the Trust Fund based on the hours each of them worked. (Testimony of M. Farley). The Employer does not dispute that Kevin Keith and Steve Keith were employees at one point in time.

**B.   AUDIT DOCUMENT REQUEST**

The Employer was selected for payroll compliance testing by the Trust Fund pursuant to the Trust Fund's usual procedure of auditing contributing employers every four years. The testing period was from January 1, 2015 to December 31, 2019. The auditor provided adequate notice of the documents needed to conduct the audit. The Employer refused to provide the auditor with a master list of all employees showing employee job title, department identification and hire and termination dates. The Trust Fund's auditor testified that the Employer provided this type of information during prior audits and that such information is needed to complete the testing and to verify that nobody on the list is performing covered work. (Testimony on M. Farley).

The Employer argues that the Trust Fund is not entitled to a master list of all employees and that the request is overly broad and not warranted. In closing argument, the Employer indicated that it would be willing to compromise on the document request.

<u>**DISCUSSION AND OPINION**</u>

The Arbitrator has reviewed all of the evidence, which consists of the testimony of witnesses presented by the Trust Fund and the Employer, the exhibits listed above, and the closing argument of the parties. For the reasons discussed below, the Arbitrator finds that based on a preponderance of the evidence, the Trust Fund has established its claim for unpaid

contributions, liquidated damages, and interest for the audit period February 1, 2010 to October 31, 2013, and its claim for documents for the audit period January 1, 2015 to December 31, 2019.

## A.    ARBITRATOR'S RIGHT TO HEAR AND DETERMINE DISPUTES

The first matter to be addressed is the validity of this Arbitrator's right to hear and determine this matter.  The Employer argues that whether or not it had an obligation to contribute for Kevin Keith and Steve Keith is a question that arises under the CBA, not under the Trust Agreement, and that this Arbitrator cannot determine who is an employee for whom contributions must be made under the CBA.  The Employer argues that a grievance should have been filed by the Union to determine whether Kevin Keith and Steve Keith were employees for whom contributions were owed.  Because the Union did not file a grievance, the Employer's position is that the arbitration is improper.

The Arbitrator finds that the Trust Fund has an independent right and obligation, separate from the Union, to conduct an audit, review the Employer's records, and issue a report with the Trust Fund's findings.

Under § 4.04(i) of the Trust Agreement, the Trust Fund has the right to enforce a demand for the production of documents necessary to conduct payroll compliance testing.  Section 4.03 of the Trust Agreement grants the Trust Fund the right to enforce the contribution obligation:

> The Board of Trustees shall have the right, authority and duty, in the name of the Fund or otherwise as in its discretion may be deemed necessary or desirable, to demand and enforce the prompt payment of contributions to the Fund, including payments due to delinquencies as provided in Section 2 of this Article, without being limited or restricted by a grievance or arbitration procedures provided in a Collective Bargaining Agreement.

Under the Trust Agreement the Trust Fund is not subject to the grievance procedures of a CBA, and has the right to proceed with an action to collect delinquent contributions.  Here the Trust Fund is attempting to collect delinquent contributions and obtain documents necessary to complete the payroll compliance testing.  The Employer is signatory to both the 2009 to 2013 and the 2013 to 2018 CBAs.  Both of those CBAs clearly bind the Employer to the terms of the

Trust Agreement and all amendments to the Trust Agreement: "The Employer agrees to accept, assume and be bound by all of the obligations imposed on individual employers by that certain Trust Agreement referred to for convenience as the Stationary Engineers Local 39 Pension Trust Agreement ...." (Jt. Exs. 4, 5, Art. 7, § 6). By virtue of its signatory status, the Employer is bound to Trust Agreement and must comply with all provisions of the Agreement. The Employer cannot escape its obligations under the Trust Agreement by raising the grievance procedures provided under the CBA. If the Employer genuinely believed this matter was controlled by the CBA grievance procedures, it could have filed a grievance at the same time it disputed the audit findings with respect to Kevin Keith and Steve Keith, or when the Trust Fund's position that contributions were due for both based on the 90 day language in Art. 1 § 1 of the CBA. The Employer did not file such a grievance and has waived the right to do so.

To the extent that this matter requires the Arbitrator to review and interpret provisions of a CBA to determine whether there is an obligation to contribute, the Arbitrator has the power and authority to do so under the terms of the Trust Agreement.

In addition, under the February 14, 1998 Amendment to the Pension Plan, which established the Trust Fund's expedited arbitration procedures, the Employer had the option to disqualify the Arbitrator by providing "written notice to the Fund within 10 days of receipt of notice of the referral to arbitration." (Trust Agreement, Art. IV, § 4.04(iii).) The Trust Fund first provided notice of arbitration in March 2019. Subsequent notices were sent in July, October and December 2020. (Fund Ex. 1). The Employer did not present any evidence that it exercised its right to disqualify this Arbitrator, nor did it challenge the appropriateness of the hearing in response to any of the notices. The Employer has waived its right to challenge the Arbitrator's authority to conduct this proceeding. The Arbitrator has the right and authority to determine the dispute as to monies owed and the outstanding documents, both of which stem from payroll audits authorized under the Trust Agreement.

14

## B. DELINQUENT CONTRIBUTIONS

Having decided the question of whether this Arbitrator can determine the issues, I turn to the question of whether the Employer owes contributions for Kevin Keith and Steve Keith for hours worked while they were per diem employees.

The question of whether contributions are owed turns on the interpretation of Article I, § 1 of the CBA. The Employer argues that Article I, § 1 does not apply to per diem employees, and that all per diem Stationary Engineers are exempt from the CBA, without regard to the 90 day language. The Employer relies on its own interpretation for this position. Employer witnesses Samuel Romano and John Francheschi both testified that during the course of negotiations for the current CBA, Local 39 representative Chris Kalmar made statements to the effect that the CBA did not apply to per diem employees.

Trust Fund witness Jerry Kalmar, has served as a Trustee since 1990 and is currently a Trustee. Kalmar testified that Article I, § 1 applied to per diem employees who work 90 days or more for the Employer. Kalmar explained that if a per diem employee performs Stationary Engineer work, but does not do so for more than 90 days, no contributions are owed. But, if a per diem employee works 90 or more days, contributions are owed from the first day of employment. Kalmar testified that the Trust Fund has never interpreted the CBA as not applying to per diem employees.

Kalmar also served as the Business Manager for Local 39 from 2000 until 2018. Kalmar testified that the Union has never interpreted the CBA as not applying to per diem employees.

A CBA's written terms are to be given their "ordinary meaning" and read in context of the entire agreement. *Klamath Water Users Protective Assn. v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 2000). Article I, § 1 of the CBA is not ambiguous. It clearly states that "per diem and casual employees, including temporary help, i.e., employees hired for a period of time not to exceed ninety (90) calendar days" are excluded from the CBA. Within the context of the CBA as a whole, this exclusion can only be interpreted to mean that per diem employees hired to work as Stationary Engineers for a period not to exceed 90 days are excluded from the CBA. The interpretation suggested by the Employer that per diem employees are not ever covered by the

CBA would do away with the need for a CBA—the Employer could simply hire all Stationary Engineers as per diem employees. Such a conclusion is inconsistent with having a CBA in the first place. The plain language of Article I, § 1 does not support the Employer's interpretation.

Article I, § 1 further clearly specifies that the CBA "covers all full-time and part-time employees employed by the Employer in the classifications listed in Article III." Jerry Kalmar testified that employees who work more than 90 days performing the work of Stationary Engineers are considered members of the bargaining unit. When employees are defined by job classification they are covered by the CBA; the contribution obligation applies to those employees regardless of union membership. See *Pierce Co. Hotel Employees & Restaurant Employees Health Trust v. Elks Lodge, B.P.O.E. No 1450*, 827 F.2d 1324, 1327 (9th Cir. 1987); *Trustees of S. Cal. IBEW-NECA Pension Tr. Fund v. Flores*, 519 F.3d 1045, 1047 (9th Cir. 2008) ("When a collective bargaining agreement defines covered employees by job classification, it generally cover all employees within those classifications, regardless of union membership. *Teamster's Local 348 Health & Welfare Fund v. Kohn Beverage Co.*, 749 F.2d 315, 318 (6th Cir. 1984)." Thus, when a per diem Stationary Engineer works more than 90 days, that employee is no longer exempt from the provisions of the CBA, and is instead considered a member of the bargaining unit covered by the CBA. This supports the Trust Fund's position that contributions are due and owing for Kevin Keith and Steve Keith.

The Employer presented testimony to the effect that during the negotiations for the current CBA, Chris Kalmar, one of the negotiators for Stationary Engineers Local 39, made statements to the effect that the CBA did not apply to per diem employees. Chris Kalmar did not testify at the hearing. The Trust Fund presented evidence that neither the Trust Fund nor the Union has ever interpreted the CBA as not applying to per diem employees.

The testimony regarding the statements claimed to have been made by Chris Kalmar does not assist in resolving this dispute. The question of whether contributions are due for work performed by Kevin Keith and Steve Keith arises under the CBA in effect for the period of November 1, 2009 to October 31, 2013. (Joint Exhibit 5). While I make no finding as to

whether or not Chris Kalmar made the statements in question, such statements, assuming they were made, are not relevant to determining the Employer's obligations under the CBA in effect between 2009 and 2013. Moreover, Chris Kalmar's statements were made as a representative of the Union, and are not binding on the Trust Fund. *Central States Se & Sw Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559 (1985); *Operating Engineers Pension Trust v. Cecil Backhoe Service*, 795 F.2d 1501, 1507 (9th Cir. 1986); *Waggoner v. Dallaire*, 649 F.2d 1362, 1368 (9th Cir. 1981).

Based on the evidence presented at the hearing, I find that Kevin Keith and Steve Keith were per diem employees who worked more than 90 days, and contributions in the amount of $5,947.00 are due and owing. Under Article IV, § 4.02 of the Trust Agreement, the Trust Fund is entitled to recover interest in the amount of $8,573.25 on the unpaid contributions. Under § 4.04(v), the Trust Fund is entitled to recover liquidated damages in the amount of $594.70. (Trust Fund Exs. 8, 10).

The Trust Fund sought to recover $1,117.95 in interest that continued to run on the partial payment made by the Employer on November 6, 2016. The Employer presented evidence that it requested the Trust Fund provide it with the amount of interest due and that it would be willing to pay that interest. (Employer Ex. 7). For reasons that were not explained, the Trust Fund did not respond to the Employer's request. While the Trust Fund did not respond to the Employer's request, the Trust Agreement, to which the Employer is bound, requires the payment of 10% interest on unpaid contributions. (See Trust Agreement, Art. IV, § 4.02, Amendment No. 9, unpaid contributions "shall bear interest at the rate of 10% per annum, compounded monthly, until paid.")

## C.   DOCUMENT REQUEST

There is no dispute that the auditor notified the Employer of the documents that were needed for to conduct the audit for the time period of January 1, 2015 to December 31, 2019. (Trust Fund Ex. 9). Similarly, there is no dispute that the Employer did not provide and as of the date of the hearing had not provided a list of all employees with job titles, department

identification and the dates of hire and termination, or alternatively quarterly State tax returns. The Trust Fund's auditor testified these documents are needed for the auditor to close out the audit. The auditor testified the information was needed to verify that no employees performed covered work during the testing period. The auditor agreed the employee list could be provided in a redacted format and that it would be retained by the auditor in a safe and secure fashion.

The Employer argued the request for information regarding all employees was overly broad and not needed for purposes of the audit.

As specified in the Trust Agreement, the Trust Fund and its auditors determine what documents are needed for to conduct an audit, and the Employer is obligated to comply with the auditor's document request. Trust Agreement Art. VI, § 6.04 (Amendment No. 10). The Employer is therefore ordered to provide the requested documents to the Trust Fund's auditor within five (5) calendar days of the date of this decision.

## DECISION

For the foregoing reasons, the Employer is found to be liable for the unpaid contributions due and owing for the hours worked by Kevin Keith and Steve Keith, plus liquidated damages and interest, legal fees, and all costs incurred in the collection efforts, including the Arbitrator's fee.

The Employer is further found to have failed to produce the documents and records necessary to complete payroll compliance testing for the period of January 1, 2015 to December 31, 2019.

///

///

///

///

///

///

///

<u>**AWARD**</u>

The Employer is ordered to pay the Trust Fund as follows:

| | | |
|---|---|---|
| Unpaid contributions | $ | 5,947.00 |
| Interest through June 24, 2021 | $ | 8,573.25 |
| Interest on partial payment | $ | 1,117.95 |
| Liquidated Damages | $ | 594.70 |
| Audit Fees for 2/1/2010 – 10/31/2013 audit | $ | 6,986.00 |
| Audit Fees for 1/1/2015 – 12/31/2019 audit | $ | 6,776.70 |
| Attorneys' Fees | $ | 37,349.76 |
| Arbitrator's Fees | $ | 2,800.00 |
| Veritext Fees | $ | 1,457.50 |
| TOTAL | **$71,602.86** | |

The Employer is also ordered to provide a list of all employees with job titles, department identification and the dates of hire and termination, or alternatively quarterly State tax returns for the audit period to the Trust Fund's auditor within five (5) calendar days of the date of this decision.

**IT IS SO ORDERED.**

Date: _____     _____

# EXHIBIT C

Batch: 2015  Seq: 1  Remittance #: 1432-0001  Remittance Name: REGIONAL MEDICAL CENTER OF SJ  Check#: 27800550  Amount: $807.35    Image 3 of 5



# REGIONAL
## MEDICAL CENTER

November 7, 2016

Stationary Engineer Local 39
P O Box 4286
Hayward, CA 94540-4286

RE: Stationary Engineers Local 39 Trust Fund testing results with erroneous Findings

On September 12, 2016, a letter was sent to Regional Medical Center of San Jose from Lindquist LLP that included some inaccurate Findings resulting from some errors in their interpretation of the collective bargaining agreement between the Hospital and IUOE Local 39.  On September 20, 2016, the Hospital informed Lindquist of the errors and the fact that some of the Findings were inaccurate. In our communication we asked Lindquist to forward our response to the Fund but we are uncertain if they have or have not. Consequently, and in the interests of resolving this matter, we are including herewith payment in the amount of $807.35 for the Findings that we agree with from the Audit as outlined in the attached spreadsheet.

We were unable to determine the interest rate calculation methodology applicable to the Findings that we agreed with so we ask that you please let us know what that amount would be and we will follow with a check in that amount. We look forward to receipt that information so that we can close this matter out.

Regards,

Michelle Skipper
Vice President, Human Resources
Regional Medical Center

CC:
Samuel I Romano, JD, Corporate Director of Employee and Labor Relations
Melissa Farley, Lindquist LLP

225 North Jackson Avenue
San Jose, CA 95116-1691
408.259.5000

# EXHIBIT D



**From:** Roberta Perkins [mailto:RPerkins@unioncounsel.net]
**Sent:** Monday, November 16, 2020 8:50 PM
**To:** 'werarb@att.net' ; Patricia Griffith
**Cc:** Linda Baldwin Jones ; 'Roe-Aydelott Teresa' ; Joanna Y. Son
**Subject:** RE: Stationary Engineers Local 39 Pension Fund v RMC San Jose [IWOV-WSACTIVELLP.FID1953279]

Hello – As indicated in my November 12 email, we are not available on January 7, 2021 for this hearing. We are available on January 12, 13, 14, 19 and 21, 2021. Please advise if any of these dates work for you, and if not, propose some alternate dates. The hearing will be held in our Emeryville office.

Roberta

Roberta Perkins
Weinberg Roger and Rosenfeld
Telephone: 510.337.1001, ext. 187
Fax: 510.337.1023
rperkins@unioncounsel.net

**PLEASE NOTE, our Alameda office is moving. Effective November 23, 2020, our new address will be 1375 55th Street, Emeryville, California 94608. Phone number will remain the same.**

**From:** werarb@att.net [mailto:werarb@att.net]
**Sent:** Wednesday, November 11, 2020 2:14 PM
**To:** 'Patricia Griffith'
**Cc:** Linda Baldwin Jones; 'Roe-Aydelott Teresa'; Roberta Perkins; Joanna Y. Son
**Subject:** RE: Stationary Engineers Local 39 Pension Fund v RMC San Jose [IWOV-WSACTIVELLP.FID1953279]

I repeat, that day is fine with me. Please lock it in.

William E. Riker Arbitrator

**From:** Patricia Griffith <PGriffith@fordharrison.com>
**Sent:** Wednesday, November 11, 2020 12:59 PM
**To:** werarb@att.net
**Cc:** 'Linda Baldwin Jones' <LBJones@unioncounsel.net>; 'Roe-Aydelott Teresa' <Teresa.Roe@hospitallaborlaw.com>; 'Roberta Perkins' <RPerkins@unioncounsel.net>; 'Joanna Y. Son' <JSon@unioncounsel.net>
**Subject:** RE: Stationary Engineers Local 39 Pension Fund v RMC San Jose [IWOV-WSACTIVELLP.FID1953279]

How about Jan 7?

**From:** werarb@att.net [mailto:werarb@att.net]
**Sent:** Wednesday, November 4, 2020 6:51 PM

**To:** Patricia Griffith <PGriffith@fordharrison.com>
**Cc:** 'Linda Baldwin Jones' <LBJones@unioncounsel.net>; 'Roe-Aydelott Teresa' <Teresa.Roe@hospitallaborlaw.com>;
'Roberta Perkins' <RPerkins@unioncounsel.net>; 'Joanna Y. Son' <JSon@unioncounsel.net>
**Subject:** RE: Stationary Engineers Local 39 Pension Fund v RMC San Jose [IWOV-WSACTIVELLP.FID1953279]

I recognize these are trying times. Please BOTH parties set a date for late December or the first week in January and let
us get the case heard.
Based on the particular facts in this crazy time I will postpone the hearing for the fourth and last time and not charge a
cancellation fee.

William E. Riker

**From:** Patricia Griffith <PGriffith@fordharrison.com>
**Sent:** Wednesday, November 4, 2020 3:02 PM
**To:** werarb@att.net
**Cc:** 'Linda Baldwin Jones' <LBJones@unioncounsel.net>; 'Roe-Aydelott Teresa' <Teresa.Roe@hospitallaborlaw.com>;
'Roberta Perkins' <RPerkins@unioncounsel.net>; 'Joanna Y. Son' <JSon@unioncounsel.net>
**Subject:** RE: Stationary Engineers Local 39 Pension Fund v RMC San Jose [IWOV-WSACTIVELLP.FID1953279]

As previously stated, due to emergency circumstances outside its control, the Hospital cannot attend the
hearing tomorrow. Counsel for the Hospital has tested positive for a deadly virus surging across the country.
One of the Hospital's witnesses has now been required to quarantine as result of being in contact with said
counsel. A short delay does not prejudice the Plan, but not providing for such severely prejudices the Hospital.
The delay is only until the individuals are medically able and cleared to travel and appear at the hearing.
Although the Plan limits the scope of the arbitrator's authority, *any* award issued without the Hospital's
participation (which has now been rendered impossible) will be deemed an abuse of discretion and contested as
such, while reserving all other rights.
Thank you.

**Patricia G. Griffith** - *Attorney at Law*

**FordHarrison LLP - Ius Laboris USA | Global HR Lawyers**
271 - 17th Street, NW, Suite 1900 | Atlanta, GA 30363
PGriffith@fordharrison.com | P: 404-888-3831

LTC4 Certified Legal Professional | *FHPromise* | Subscribe

**From:** werarb@att.net [mailto:werarb@att.net]
**Sent:** Wednesday, November 4, 2020 10:06 AM
**To:** Patricia Griffith <PGriffith@fordharrison.com>
**Cc:** 'Linda Baldwin Jones' <LBJones@unioncounsel.net>; 'Roe-Aydelott Teresa' <Teresa.Roe@hospitallaborlaw.com>;
'Roberta Perkins' <RPerkins@unioncounsel.net>; 'Joanna Y. Son' <JSon@unioncounsel.net>
**Subject:** RE: Stationary Engineers Local 39 Pension Fund v RMC San Jose [IWOV-WSACTIVELLP.FID1953279]

Dear Parties, I have again reviewed the request to continue the hearing scheduled for November 5 and decided we are going forward on November 5. I suggest the lawyers should have the bargaining parties review the process they have agreed to follow and sit and work out their issues outside the presence of the arbitrator.

William E. Riker, Arbitrator

---

**From:** Patricia Griffith <PGriffith@fordharrison.com>
**Sent:** Tuesday, November 3, 2020 5:40 PM
**To:** werarb@att.net
**Cc:** Linda Baldwin Jones <LBJones@unioncounsel.net>; Roe-Aydelott Teresa <Teresa.Roe@hospitallaborlaw.com>; Roberta Perkins <RPerkins@unioncounsel.net>; Joanna Y. Son <JSon@unioncounsel.net>
**Subject:** Re: Stationary Engineers Local 39 Pension Fund v RMC San Jose [IWOV-WSACTIVELLP.FID1953279]

There is no way another attorney can get up to speed on this case in two days without serious prejudice to the employer. Moreover, there is no harm to the fund by a short delay until I can travel. Any damages, which the hospital denies, are set. This is an abuse by the Union and the Fund and frankly immoral.

Sent from my iPhone

> On Nov 3, 2020, at 7:56 PM, "werarb@att.net" <werarb@att.net> wrote:
>
>
> Dear Parties, I have reviewed the communication from both Counsels and the request from Ms. Griffith to reschedule the hearing sometime in December because of her illness and the request from Ms. Baldwin Jones to
> not delay the hearing since it had already been delayed more than twice .
> While recognizing a legitimate concern to delay because of one of the lawyers on the part of Employer law firms Counsel's illness, I believe it is in the best interest of all parties to go forward and I am sure the firm
> representing the Employer has several competent lawyers that can represent their client. Therefore, after review, it is my ruling we will go forward and hold the hearing and give all parties the opportunity to present there
> evidence relating to the merits.
>
> Date: Thursday- November 5th, 2020
> Time: 10:00 A.M.
> Location: 1001 Marina Village Parkway, Suite 200
> Alameda, CA. 94501
> I look forward working with all parties to receive the evidence in this matter
>
>
> William E. Riker, Arbitrator
>
> ---
>
> **From:** Linda Baldwin Jones <LBJones@unioncounsel.net>
> **Sent:** Tuesday, November 3, 2020 4:13 PM
> **To:** werarb@att.net
> **Cc:** Roe-Aydelott Teresa <Teresa.Roe@hospitallaborlaw.com>; 'Patricia Griffith' <PGriffith@fordharrison.com>; Roberta Perkins <RPerkins@unioncounsel.net>; Joanna Y. Son <JSon@unioncounsel.net>
> **Subject:** RE: Re:Stationary Engineers Local 39 Pension Fund v RMC San Jose [IWOV-WSACTIVELLP.FID1953279]

Dear Arbitrator Riker,

Stationary Engineers Local 39 Pension Trust Fund opposes any cancellation of the November 5, 2020 arbitration hearing. There have been **three** continuances of the arbitration hearing in this case . The calendaring of this matter has been outstanding for over a year and the Pension Trust Fund opposes any further delay. If one attorney at Ford Harrison is not available, Employer's counsel employs numerous other attorneys. Additionally, the Employer's **third** request for a continuance is contrary to your email of October 14, 2019. In said email, you informed the Parties that it is your "practice is to allow each of the parties the right to one continuance".

The Pension Fund requested one continuance of the hearing set last October 2019, which was granted.

As set forth below, the Employer submitted **two** requests for a continuance, which were granted.
- Continuance Request by Employer: The Employer, at the last minute, requested its **first** continuance of the hearing set for March 2020. Said request was granted and the new arbitration hearing date was set for October 29, 2020.
- Continuance Request by Employer: The Employer submitted its **second** request for a continuance of the October 29, 2020 hearing. The Employer's second request for a continuance was granted. The Parties subsequently agreed to have the arbitration hearing on November 5, 2020 and the Employer on September 9, 2020 confirmed its availability for the November 5, 2020 hearing date.

Now, the Employer has submitted its **third** request for a continuance two days before the hearing.
- Continuance Request by Employer: The Employer, again at the last minute, is requesting a **third** continuance of the arbitration when the Employer has had ample notice of the November 5, 2020 hearing date.

**In light of the foregoing, the Pension Trust Fund hereby requests that you deny the Employer's third request for a continuance.** Our office and the Pension Trust Fund's witnesses are ready to move forward with the arbitration hearing on November 5, 2020 on the date agreed to by the Employer.

Thank you.

Regards,
Linda Baldwin Jones

Weinberg,
Roger &
Rosenfeld

*A Professional Corporation*
1001 Marina Village Parkway, Suite 200
Alameda, California 94501-1091
Tel: 510.337.1001
Fax: 510.337.1023
email: <<mailto:lbjones@unioncounsel.net>>

*This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in or attached*

*to the message. If you have received the message in error, please advise the sender by reply e-mail to*
<lbjones@unioncounsel.net> *and delete the message.*

---

**From:** Patricia Griffith [mailto:PGriffith@fordharrison.com]
**Sent:** Tuesday, November 3, 2020 6:29 AM
**To:** werarb@att.net
**Cc:** Linda Baldwin Jones; Roe-Aydelott Teresa
**Subject:** FW: Re:Stationary Engineers Local 39 Pension Fund v RMC San Jose [IWOV-WSACTIVELLP.FID1953279]
**Importance:** High

I write to inform you that, as counsel for the Hospital, I have received notice of a positive COVID test and will not be able to attend the hearing on Thursday. I hope to be healthy enough and in good standing to travel by December. Please provide some dates beginning in December for this hearing to be held. I apologize for any inconvenience but it is out of my control – this virus really spares no one. Thank you.

**From:** werarb@att.net <werarb@att.net>
**Sent:** Monday, October 12, 2020 7:26 PM
**To:** 'Linda Baldwin Jones' < LBJones@unioncounsel.net>; Roe-Aydelott Teresa <Teresa.Roe@hospitallaborlaw.com>
**Cc:** 'Joanna Y. Son' <JSon@unioncounsel.net>; 'Roberta Perkins' <RPerkins@unioncounsel.net>
**Subject:** {EXTERNAL} RE: Re:Stationary Engineers Local 39 Pension Fund v RMC San Jose

Dear parties, this will confirm I will hold the hearing in the above matter on November 5th. As noted it will be held at the Weinberg office in Alameda . Please advise if the parties want the arbitrator to arrange for a court reporter.


William E. Riker, Arbitrator

**From:** Linda Baldwin Jones <LBJones@unioncounsel.net>
**Sent:** Friday, October 9, 2020 11:59 AM
**To:** werarb@att.net; 'Roe-Aydelott Teresa' <Teresa.Roe@hospitallaborlaw.com>
**Cc:** Joanna Y. Son <JSon@unioncounsel.net>; Roberta Perkins <RPerkins@unioncounsel.net>
**Subject:** RE: Re:Stationary Engineers Local 39 Pension Fund v RMC San Jose

Dear Arbitrator Riker and Ms. Roe-Aydelott,

As it turns out, we will still be in our Alameda Office on November 5th as our move to our Emeryville Office has been pushed out.

We have reserved a conference room in our Alameda Office for the November 5th arbitration hearing that will commence at 10:00 a.m.

Thank you.

Regards,
Linda Baldwin Jones

Weinberg,
Roger &

Rosenfeld

*A Professional Corporation*
1001 Marina Village Parkway, Suite 200
Alameda, California 94501-1091
Tel: 510.337.1001
Fax: 510.337.1023
email: <<mailto:lbjones@unioncounsel.net>>

*This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in or attached to the message. If you have received the message in error, please advise the sender by reply e-mail to* <lbjones@unioncounsel.net> *and delete the message.*

---

**From:** Roe-Aydelott Teresa [mailto:Teresa.Roe@hospitallaborlaw.com]
**Sent:** Friday, September 11, 2020 4:54 AM
**To:** werarb@att.net; Linda Baldwin Jones
**Cc:** Joanna Y. Son
**Subject:** Re:Stationary Engineers Local 39 Pension Fund v RMC San Jose

Dear Arbitrator Riker:

Due to personal health concerns, at least one of our witnesses will need to appear via video.

*Teresa Roe-Aydelott*
*Paralegal to Attorney Kevin Smith, Brett Ruzzo and Mike Bishop*
*615/344-2537 (o)*
*877/471-5012 (f)*

---

> **From:** werarb@att.net <werarb@att.net>
> **Sent:** Wednesday, September 9, 2020 12:43 PM
> **To:** Roe-Aydelott Teresa <Teresa.Roe@hospitallaborlaw.com>; 'Linda Baldwin Jones'
> <LBJones@unioncounsel.net>
> **Cc:** 'Joanna Y. Son' <JSon@unioncounsel.net>
> **Subject:** {EXTERNAL} RE: Re:Stationary Engineers Local 39 Pension Fund v RMC San Jose
>
> I am not an experience zoom person so Let us proceed and hold the hearing with "safe"
> distancing as scheduled.
>
> William E. Riker, arbitrator

---

> **From:** Roe-Aydelott Teresa <Teresa.Roe@hospitallaborlaw.com>
> **Sent:** Wednesday, September 9, 2020 8:03 AM
> **To:** werarb@att.net; 'Linda Baldwin Jones' <LBJones@unioncounsel.net>
> **Cc:** 'Joanna Y. Son' <JSon@unioncounsel.net>
> **Subject:** Re: Re:Stationary Engineers Local 39 Pension Fund v RMC San Jose
>
> Dear Arbitrator Riker:

The Employer is unavailable on November 12. However, the Employer is available for the above-referenced hearing to be set for November 5, 2020. Due to the current pandemic and personal health issues of our main witness, we request this hearing be done via Zoom (which will also address the lengthy travel time between the parties and the other issues as to appropriate location). Thank you.

*Teresa Roe-Aydelott*
*Paralegal to Attorney Kevin Smith, Brett Ruzzo and Mike Bishop*
*615/344-2537 (o)*
*877/471-5012 (f)*

---

**From:** werarb@att.net <werarb@att.net>
**Sent:** Wednesday, September 2, 2020 10:30 AM
**To:** Roe-Aydelott Teresa <Teresa.Roe@hospitallaborlaw.com>; 'Linda Baldwin Jones' <LBJones@unioncounsel.net>
**Cc:** 'Joanna Y. Son' <JSon@unioncounsel.net>
**Subject:** {EXTERNAL} RE: Re:Stationary Engineers Local 39 Pension Fund v RMC San Jose

Please do so, but we will set the case as listed and anticipate it is convenient for your client!

WER

---

**From:** Roe-Aydelott Teresa <Teresa.Roe@hospitallaborlaw.com>
**Sent:** Wednesday, September 2, 2020 7:56 AM
**To:** werarb@att.net; 'Linda Baldwin Jones' <LBJones@unioncounsel.net>
**Cc:** 'Joanna Y. Son' <JSon@unioncounsel.net>
**Subject:** Re: Re:Stationary Engineers Local 39 Pension Fund v RMC San Jose

Dear Arbitrator Riker:

On behalf of the Employer, I respectfully request time to confirm that our attorney and witnesses are available on November 12.

*Teresa Roe-Aydelott*
*Paralegal to Attorney Kevin Smith, Brett Ruzzo and Mike Bishop*
*615/344-2537 (o)*
*877/471-5012 (f)*

---

**From:** werarb@att.net <werarb@att.net>
**Sent:** Wednesday, September 2, 2020 9:16 AM
**To:** 'Linda Baldwin Jones' <LBJones@unioncounsel.net>; Roe-Aydelott Teresa <Teresa.Roe@hospitallaborlaw.com>
**Cc:** 'Joanna Y. Son' <JSon@unioncounsel.net>

**Subject:** {EXTERNAL} RE: Stationary Engineers Local 39 Pension Fund v RMC San Jose

To all, let us schedule Thursday, November 12 with a 10:00 a.m. start time.

William E. Riker, Arbitrator

**From:** Linda Baldwin Jones <LBJones@unioncounsel.net>
**Sent:** Tuesday, September 1, 2020 6:13 PM
**To:** 'werarb@att.net' <werarb@att.net>; 'Roe-Aydelott Teresa'
<Teresa.Roe@hospitallaborlaw.com>
**Cc:** Joanna Y. Son <JSon@unioncounsel.net>
**Subject:** RE: Stationary Engineers Local 39 Pension Fund v RMC San Jose

Dear Arbitrator Riker and Ms. Roe-Aydelott,

The Pension Fund witnesses are available on either November 5th or 12th. Please confirm your availability for one of the alternative dates so that we can calendar the new hearing date. Thank you.

Regards,
Linda Baldwin Jones

Weinberg,
Roger &
Rosenfeld

*A Professional Corporation*
1001 Marina Village Parkway, Suite 200
Alameda, California 94501-1091
Tel: 510.337.1001
Fax: 510.337.1023
email: <<mailto:lbjones@unioncounsel.net>>

*This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in or attached to the message. If you have received the message in error, please advise the sender by reply e-mail to <lbjones@unioncounsel.net> and delete the message.*

**From:** Roe-Aydelott Teresa [mailto:Teresa.Roe@hospitallaborlaw.com]
**Sent:** Monday, August 3, 2020 10:35 AM
**To:** Linda Baldwin Jones; 'werarb@att.net'
**Cc:** Joanna Y. Son
**Subject:** Re:Stationary Engineers Local 39 Pension Fund v RMC San Jose

Dear Ms. Jones:

Thank you for letting us know. We will release those dates. Please let us know as soon as you have alternative dates so that we can ensure our witnesses and counsel are also available at that time.

*Teresa Roe-Aydelott*

*Paralegal to Attorney Kevin Smith, Brett Ruzzo and
Mike Bishop
615/344-2537 (o)
877/471-5012 (f)*

**From:** Linda Baldwin Jones <LBJones@unioncounsel.net>
**Sent:** Friday, July 31, 2020 5:25 PM
**To:** 'werarb@att.net' <werarb@att.net>; Roe-Aydelott Teresa
<Teresa.Roe@hospitallabarlaw.com>
**Cc:** Joanna Y. Son <JSon@unioncounsel.net>
**Subject:** {EXTERNAL} RE: Stationary Engineers Local 39 Pension Fund v
RMC San Jose

Dear Arbitrator Riker and Ms. Roe-Aydelott,

The Pension Fund's witnesses <u>are not</u> available on either October
21st or October 22nd.

After I have determined proposed dates that work on my calendar
and for the Pension Fund's witnesses, I will have Joanna Son, my
secretary, circulate them so that we can calendar the new hearing
date.

Regards,
Linda Baldwin Jones

Weinberg,
Roger &
Rosenfeld

*A Professional Corporation*
1001 Marina Village Parkway, Suite 200
Alameda, California 94501-1091
Tel: 510.337.1000
Fax: 510.337.1023
email: <<mailto:lbjones@unioncounsel.net>>

*This message contains information which may be confidential and privileged. Unless you
are the addressee (or authorized to receive for the addressee), you may not use, copy or
disclose to anyone the message or any information contained in or attached to the
message. If you have received the message in error, please advise the sender by reply e-
mail to <lbjones@unioncounsel.net> and delete the message.*

**From:** Linda Baldwin Jones
**Sent:** Wednesday, July 22, 2020 3:28 PM
**To:** 'werarb@att.net'; 'Roe-Aydelott Teresa'
**Cc:** Joanna Y. Son
**Subject:** RE: Stationary Engineers Local 39 Pension Fund v RMC San
Jose

Dear Arbitrator Riker and Ms. Roe-Aydelott,

I am waiting to hear back from the Pension Fund's witnesses as to their availability on the proposed dates, some of whom I will not hear back from until next week as they are out of the office this week. I will respond next week as the availability of the Pension Fund's witnesses.

As previously explained in the attached email, dated October 13, 2019, the Pension Trust Agreement expressly provides that arbitrations shall be conducted in an expedited manner and that no transcripts shall be prepared or briefs filed. As such, a court reporter is not allowed at this hearing.

With respect to the location, the Pension Fund is opposed to moving the location from our Emeryville office. This issue was previously raised by counsel for Regional Medical Center and Arbitrator Riker denied the request to change the venue. *See* the attached emails from Arbitrator Riker. Per my October 13, 2019 email:

> … the Pension Fund objects to any change in the location of the arbitration hearing (our Alameda office). I am raising this issue as I received an email Friday afternoon from Stefan Black, Counsel for Regional Medical Center, requesting to move the location of the arbitration to a "neutral location (e.g., a court reporter's office or a hotel meeting space, etc)". The Pension Fund's governing Trust Agreement clearly provides the Trustees the authority to determine the location of the arbitration hearing and the Pension Fund is not amenable to another hearing location. The Pension Fund does not believe that the hearing of this matter at the offices of the Fund's legal counsel would in any way prejudice or affect the proceedings. Furthermore, the use of our Alameda office is intended to decrease the costs of proceedings, which is one of the primary benefits and objectives of arbitration in lieu of litigation, and is also convenient for the Pension Funds' witnesses. Lastly, the Trust Agreement expressly provides that arbitrations shall be conduced in an expedited manner and that no transcripts shall be prepared or briefs filed.

Additionally, the Pension Fund objects to having the hearing in San Jose as it places an undue travel burden on the Pension Funds' witness, which would require a commute in some cases, in excess of five hours. Our Emeryville office (as is our Alameda office) is a five minute taxi cab away from a BART station.

Regards,
Linda Baldwin Jones

Weinberg,
Roger &
Rosenfeld

*A Professional Corporation*
1001 Marina Village Parkway, Suite 200
Alameda, California 94501-1091
Tel: 510.337.1001
Fax: 510.337.1023
email: <<mailto:lbjones@unioncounsel.net>>

*This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in or attached to the message. If you have received the message in error, please advise the sender by reply e-mail to <lbjones@unioncounsel.net> and delete the message.*

---

**From:** werarb@att.net [mailto:werarb@att.net]
**Sent:** Wednesday, July 22, 2020 8:00 AM
**To:** 'Roe-Aydelott Teresa'; Linda Baldwin Jones
**Cc:** Joanna Y. Son
**Subject:** RE: Stationary Engineers Local 39 Pension Fund v RMC San Jose

OK. Let's set the hearing date to be heard on Wednesday, October 21 with the hearing to commence at 10:00 a.m.
Unless I hear to the contrary by both parties we will hold the hearing at the Weinberg's office in Emeryville. Secondly, if a reporter is utilized please make the
arrangements for one to be present.

William E. Riker, Arbitrator

---

**From:** Roe-Aydelott Teresa <Teresa.Roe@hospitallaborlaw.com>
**Sent:** Wednesday, July 22, 2020 6:18 AM
**To:** werarb@att.net; 'Linda Baldwin Jones'
<LBJones@unioncounsel.net>
**Cc:** 'Joanna Y. Son' <JSon@unioncounsel.net>
**Subject:** Re:Stationary Engineers Local 39 Pension Fund v RMC San Jose

Dear Arbitrator Riker,

The Employer has no preference between October 21 and 22. I am unfamiliar with BART, so I will work with the Employer about possible locations in San Jose that has nearby BART service.

*Teresa Roe-Aydelott*
*Paralegal to Attorney Kevin Smith, Brett Ruzzo*
*and Mike Bishop*
*615/344-2537 (o)*

*877/471-5012 (f)*

---

**From:** werarb@att.net <werarb@att.net>
**Sent:** Wednesday, July 15, 2020 10:19 AM
**To:** Roe-Aydelott Teresa <Teresa.Roe@hospitallaborlaw.com>; 'Linda Baldwin Jones' <LBJones@unioncounsel.net>
**Cc:** 'Joanna Y. Son' <JSon@unioncounsel.net>
**Subject:** {EXTERNAL} RE: Stationary Engineers Local 39 Pension Fund v RMC San Jose

I have no problem holding the hearing on either October 21 or 22, the parties can determine which day works better for both sides. Secondly, I think we should find a location that works best for the witnesses but again I leave that decision to both parties. However, It would be great if you folks select a location where I can take BART.

William E. Riker. Arbitrator

---

**From:** Roe-Aydelott Teresa <Teresa.Roe@hospitallaborlaw.com>
**Sent:** Wednesday, July 15, 2020 7:44 AM
**To:** werarb@att.net; 'Linda Baldwin Jones' <LBJones@unioncounsel.net>
**Cc:** 'Joanna Y. Son' <JSon@unioncounsel.net>
**Subject:** Re:Stationary Engineers Local 39 Pension Fund v RMC San Jose

Dear Arbitrator Riker:

Good cause dictates that the hearing be moved. Counsel for the hospital, Stefan Black, has just resigned (effective this week) to take another position at another company. Thus, the hospital had to seek new counsel. It has promptly done so, but the new attorney is not available on October 29 but is available on Oct 21-22 (which are *earlier* dates). Thank you for your consideration. We also request that the hearing be held at a neutral location.

*Teresa Roe-Aydelott*
*Paralegal to Attorney Kevin Smith, Brett Ruzzo and Mike Bishop*
*615/344-2537 (o)*
*877/471-5012 (f)*

---

**From:** werarb@att.net <werarb@att.net>
**Sent:** Tuesday, July 14, 2020 10:50 PM
**To:** 'Linda Baldwin Jones' <LBJones@unioncounsel.net>
**Cc:** Roe-Aydelott Teresa <Teresa.Roe@hospitallaborlaw.com>; 'Joanna

Y. Son' <JSon@unioncounsel.net>
**Subject:** {EXTERNAL} RE: Stationary Engineers Local 39 Pension Fund v RMC San Jose

Dear Parties, I have considered the positions of both parties and believe that Ms. Baldwin Jones is correct that there should be no further delay on bringing the matter to a full and fair hearing. Therefore we will proceed to hold the arbitration on October 29 as scheduled. It will be heard at the law firm's new address in Emeryville.
The hearing will commence at 10:00 a.m.

William E. Riker, Arbitrator

---

**From:** Linda Baldwin Jones <LBJones@unioncounsel.net>
**Sent:** Tuesday, July 14, 2020 8:10 PM
**To:** 'werarb@att.net' <werarb@att.net>
**Cc:** 'Roe-Aydelott Teresa' <Teresa.Roe@hospitallaborlaw.com>; Joanna Y. Son <JSon@unioncounsel.net>
**Subject:** RE: Stationary Engineers Local 39 Pension Fund v RMC San Jose

Arbitrator Riker,
I am contacting you regarding the Employer's second request for a continuance. Stationary Engineers Local 39 Pension Trust Fund objects to rescheduling the hearing date as there is no good cause to do so.

The Employer has been given approximately four months notice of the new arbitration hearing date. Per the attached email, you informed the Parties on July 1st that the hearing would move forward on October 29, 2020. On July 2, 2020, Stationary Engineers Local 39 Pension Fund sent the Employer the attached Amended Notice of Arbitration. Prior to notifying the Parties of the new arbitration hearing date, the Employer, through its counsel, failed to respond and cooperate in scheduling the date. Additionally, the Employer's second request for a continuance is contrary to your email of October 14, 2019. In said attached email, you informed the Parties that it is your "practice is to allow each of the parties the right to one continuance". In this case, each side has already been granted one continuance. For the foregoing reasons, Stationary Engineers Local 39 Pension Trust Fund requests that you set the hearing date for October 29, 2020 as set forth in the attached Amended Notice of Arbitration.

Regards,
Linda Baldwin Jones

Weinberg,
Roger &
Rosenfeld

*A Professional Corporation*

13

1001 Marina Village Parkway, Suite 200
Alameda, California 94501-1091
Tel: 510.337.1001
Fax: 510.337.1023
email: <<mailto:lbjones@unioncounsel.net>>

*This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in or attached to the message. If you have received the message in error, please advise the sender by reply e-mail to <lbjones@unioncounsel.net> and delete the message.*

---

**From:** werarb@att.net [mailto:werarb@att.net]
**Sent:** Monday, July 13, 2020 7:43 AM
**To:** 'Roe-Aydelott Teresa'; Linda Baldwin Jones
**Cc:** Linda Baldwin Jones
**Subject:** RE: Stationary Engineers Local 39 Pension Fund v RMC San Jose

Dear parties this case has been extended a couple of times. I will grant one further extension but expect the parties to reach an agreement on a new firm date within three weeks either side of October 29.
Please move this case so we can all close the matter before the end of December..

William E. Riker, Arbitrator

---

**From:** Roe-Aydelott Teresa <Teresa.Roe@hospitallaborlaw.com>
**Sent:** Monday, July 13, 2020 5:14 AM
**To:** Werarb@att.net; lbjones@unioncounsel.net
**Subject:** Stationary Engineers Local 39 Pension Fund v RMC San Jose

Dear Arbitrator Riker,

It is my understanding that the above-referenced matter is set for an October 29, 2020 hearing. Due to a scheduling conflict, the Hospital is unavailable on that day. We respectfully request that new dates be provided for this hearing. Thank you.

*Teresa Roe-Aydelott*
*Paralegal to Attorney Kevin Smith, Brett Ruzzo and Mike Bishop*
*615/344-2537 (o)*
*877/471-5012 (f)*

*ATTORNEY WORK PRODUCT - PRIVILEGED & CONFIDENTIAL*

The information contained in this message from Ford & Harrison LLP and any attachments are privileged and confidential and intended only for the named recipient(s). If you have received this message in error, you are prohibited from reviewing, copying, distributing or using the information. Please contact the sender immediately by return email and delete the original

message and attachments. In the absence of an executed engagement letter or fee contract, no attorney client relationship is established by this communication.

# EXHIBIT E

# Collective Bargaining Agreement

## By and Between

## Good Samaritan Hospital & Regional Medical Center of San Jose

## And

## The International Union of Operating Engineers, Stationary Engineers, Local 39 AFL-CIO



## November 1, 2009 – October 31, 2013

# Table of Contents

AGREEMENT ................................................................................................................. 1

ARTICLE 1 ................................................................................................................. 1
Section 1   Recognition .............................................................................................. 1
Section 2   Union Membership ................................................................................... 1
Section 3   Operation .................................................................................................. 2

ARTICLE 2 ................................................................................................................. 2
Section 1   Stationary Engineer ................................................................................. 2
Section 2   Utility Engineer ........................................................................................ 2
Section 3   Biomedical Equipment Technician ......................................................... 2
Section 4   Lead Classifications ................................................................................ 3
Section 5   Apprentices .............................................................................................. 3

ARTICLE 3 ................................................................................................................. 3
Section 1   Wage Rates ............................................................................................... 3
Section 2   Apprentice Engineer Rate of Pay ........................................................... 4
Section 3   Shift Differentials ..................................................................................... 4

ARTICLE 4 ................................................................................................................. 5
Section 2   Call Back Pay ........................................................................................... 6
Section 3   Stand-By Pay ............................................................................................ 6
Section 4   Time Records ............................................................................................ 6

ARTICLE 5 ................................................................................................................. 7
Section 1   Visits By Union Representative ............................................................... 7
Section 2   Uniforms ................................................................................................... 7
Section 3   Seniority .................................................................................................... 7
Section 4   Bulletin Boards ........................................................................................ 9

ARTICLE 6 ................................................................................................................. 9
Section 1   Paid Time Off (PTO) ................................................................................. 9
Section 2   Accrual of PTO .......................................................................................... 9
Section 3   USE OF PTO .............................................................................................. 10
Section 4   Redemption of PTO .................................................................................. 11
Section 5   Extended Sick Leave Account ................................................................. 11
Section 6   Integration of Benefits ............................................................................ 12

ARTICLE 7 ................................................................................................................. 12
Section 1   Health Insurance/Dental Plan ................................................................. 12
Section 2   Long Term Disability Plan ....................................................................... 16
Section 3   Life Insurance ........................................................................................... 16
Section 4   CorePlus Benefits ..................................................................................... 16
Section 5   Health Care and Day Care Spending Accounts ..................................... 16
Section 6   Pension Plan .............................................................................................. 17

# Table of Contents (Cont'd)

Section 7   Bereavement Leave ................................................................. 17
Section 8   Jury Duty ................................................................................. 18
Section 9   Retiree Health Benefits .......................................................... 18

ARTICLE 8 ................................................................................................. 19
Section 1   Management Rights ................................................................. 19

ARTICLE 9 ................................................................................................. 19
Section 1   Promotion of Amicable Relationships ..................................... 19

ARTICLE 10 ............................................................................................... 20
Section 1   Shop Stewards ........................................................................ 20

ARTICLE 11 ............................................................................................... 20
Section 1   Probationary Period ................................................................ 20

ARTICLE 12 ............................................................................................... 20
Section 1   Grievance Procedure .............................................................. 20
Section 2   Discharge Grievance .............................................................. 21
Section 3   Time Limits .............................................................................. 21

ARTICLE 13 ............................................................................................... 21
Section 1   Strikes and Lockouts .............................................................. 21

ARTICLE 14 ............................................................................................... 22
Section 1   Shift Assignment Changes ...................................................... 22

ARTICLE 15 ............................................................................................... 22
Section 1   Non-Discrimination .................................................................. 22

ARTICLE 16 ............................................................................................... 22
    Section 1   Employer's Contribution to Stationary Engineers Apprentice and
                Journeyperson Educational Fund ............................................ 22
Section 2   Certification/Educational Achievement Bonus ....................... 23

ARTICLE 17 ............................................................................................... 23
Section 1   Tools Of The Trade ................................................................. 23

ARTICLE 18 ............................................................................................... 23
Section 1   No Pyramiding ......................................................................... 23

ARTICLE 19 ............................................................................................... 23
Section 1   Waiver ..................................................................................... 23
ARTICLE 20 ............................................................................................... 24
Section 1   Term of Agreement .................................................................. 24

# AGREEMENT

This Agreement, entered into by and between **"The Good Samaritan Hospital, L.P. D/B/A Good Samaritan Hospital and San Jose Healthcare System, L.P. D/B/A Regional Medical Center of San Jose"** hereinafter collectively referred to as the "Employer" or "Hospital", and the **International Union Of Operating Engineers, Stationary Local 39, AFL-CIO**, hereinafter referred to as the "Union".

# ARTICLE 1

## Section 1    Recognition

This Agreement covers all full-time and part-time employees employed by the Employer in the classifications listed in Article III, excluding all other employees, guards and supervisors, under the National Labor Relations Act. The Employer recognizes the Union as the sole collective bargaining agent for such employees.

Specifically excluded are all per diem and casual employees, including temporary help, i.e., employees hired for a period of time not to exceed ninety (90) calendar days. Further, the scope of recognition granted in this Article shall have no application in any other corporation or facility the Employer has an interest in or opens, even if said corporation or new facility employs Engineers.

It is understood and recognized that Good Samaritan Hospital includes the Mission Oaks facility.

## Section 2    Union Membership

Membership in good standing in the Union shall be a condition of employment. For the purpose of this Section, tender of the initiation fee on or immediately following the thirtieth (30th) day of employment, and tender of periodic dues uniformly required as a condition of retaining membership, shall constitute good standing in the Union. When the Union advises an Engineer in writing that he or she is delinquent in the tender of the initiation fee or Union dues as above required, a copy of the notice shall be sent to the Human Resources Department of the Hospital in order that the Hospital is aware of the delinquency. When new or additional employees are needed in the Engineers' classification listed, the Employer shall, at the same time he notifies any other labor source, notify the Union of the number and classification of employees needed. The Hospital shall be the sole judge of the fitness of any applicant. The Hospital shall notify the Union of the employment of any Engineer within ten (10) days, giving his name, address and date of hire.

## Section 3    Operation

When a boiler is in operation or a central air conditioning unit is in operation, a Stationary Engineer shall be on watch in the plant, or facility, if required by law.

# ARTICLE 2

## Section 1    Stationary Engineer

Responsibilities of the Stationary Engineer include, but are not limited to, the following: the proper operation of all the machinery and/or equipment under his/her area of responsibility; making necessary repairs to machinery and/or equipment, as well as necessary adjustments to maintain the proper operation of the equipment; and maintaining good Engineering practices.

The Stationary Engineer shall be responsible for the cleanup of all areas such as maintenance shop, boiler room, mechanical room, and any and all areas where equipment and machinery exists that he/she normally maintains. He/she will also clean any debris left, either as a result of his/her work or as a result of malfunctions of equipment and/or piping and plumbing whenever and wherever he/she is performing duties in any section of the Hospital. He/she will also be required to clean and replace all tools and gear used by him/her in the performance of his/her duties. He/she will not, however, be required to perform janitorial duties normally coming under the jurisdiction of the housekeeping department.

## Section 2    Utility Engineer

The Utility Engineer may be required to perform nontechnical and nonskilled labor including, but not limited to, such duties as minor household repairs which may include the use of hand held battery powered tools, gardening, sign making, light bulb replacement, chasing parts, materials and tools for journeymen, unplugging toilets, changing room filters, changing washers in faucets, and assisting journeymen when they need additional labor with tasks such as lifting a motor into place, holding one end of a piece of pipe, job site cleanup, shop cleanup, boiler room cleanup, sanding room cleanup, etc. The pay rate for the Utility Engineer classification shall be 55% of the Stationary Engineer's hourly rate of pay.

## Section 3    Biomedical Equipment Technician

The Technician shall spend the majority of his/her time performing safety inspections of and repairing, replacing, installing, adjusting, troubleshooting, and maintaining biomedical and electronic equipment and other equipment under their jurisdiction.

## Section 4    Lead Classifications

The Employer may establish "Lead" positions based upon the Employer's needs provided that the classification will receive at least ten percent (10%) more than the classification that a Stationary Engineer receives for his/her basic straight time hourly rate.

The Lead Engineer or the Lead Biomedical Technician shall perform the duties normally performed by the Stationary Engineer or the Biomedical Equipment Technician and plan, schedule, assign, inspect and coordinate the work of Stationary Engineers or Biomedical Equipment Technicians, as appropriate under his/her jurisdiction.

The Lead will, order materials and supplies, maintain records, assist in the training and evaluating of personnel, and coordinate work with outside vendors, as directed by management. The Lead classification is to be considered as a "working foreman" and as such does not have final authority to hire, fire, or discipline personnel in his/her area of responsibility but may be required to assist by evaluating the work of employees, recommending discipline when warranted, and administering the Employer's work rules and policies as directed by Management.

The Lead may, after consultation with management, suspend personnel in his/her area of responsibility pending investigation.

## Section 5    Apprentices

(a)    If the Employer chooses to utilize Apprentices, the ratio of Apprentices to Engineers will be in keeping with any applicable statutory requirements. In the event the Hospital joins the existing Stationary Engineers Apprenticeship Program, the Employer at its option may have representation on the Joint Apprenticeship Committee.

(b)    The Employer may employ apprentices at a ratio of one (1) apprentice for every five (5) engineers, including the Lead Engineer.


# ARTICLE 3

## Section 1    Wage Rates

Effective with the first pay period beginning subsequent to the indicated dates, the wage scale for bargaining unit employees will be as follows:

| Effective Dates: | 11/01/09 | 11/01/10 | 11/01/11 | 11/01/12 |
|---|---|---|---|---|
| Lead Engineer | $ 43.86 | $ 44.74 | $ 46.54 | $ 48.41 |
| Lead Biomedical Technician | 43.86 | 44.74 | 46.54 | 48.41 |
| Stationary Engineer | 39.85 | 40.65 | 42.29 | 43.99 |
| Biomedical Equipment Technician | 39.85 | 40.65 | 42.29 | 43.99 |
| Utility Person | 21.81 | 22.25 | 23.15 | 24.08 |

Notwithstanding the foregoing, pursuant to Article II, Section 4, the Employer retains the discretion to increase the lead classification rates of pay above those set out immediately above.

## Section 2    Apprentice Engineer Rate of Pay

Apprentice Engineers, who may be employed, shall receive no less than the following percentage of the Stationary Engineer's wages:

| 1st 12 Months | 65% |
|---|---|
| 3rd 6 Months | 70% |
| 4th 6 Months | 75% |
| 5th 6 Months | 80% |
| 6th 6 Months | 85% |
| 7th 6 Months | 90% |
| 8th 6 Months | 95% |

## Section 3    Shift Differentials

### A.    P.M. Shift Differential

A differential of $1.00 per hour shall be paid on top of an Engineer's straight time hourly rate when scheduled and performing work on the PM shift, defined as any shift starting between the hours of 12:00 noon and 6:59 p.m.

### B.    Night Shift Differential

A differential of $1.20 per hour shall be paid on top of an Engineer's straight time hourly rate when scheduled and performing work on the night shift, defined as any shift starting between the hours of 7:00 p.m. and 2:59 a.m.

### C.    Relief Shift Differential

A differential of $1.06 per hour shall be paid on top of an Engineer's straight time hourly rate when scheduled and performing work on the relief shift, defined as an Employer mandated work schedule containing two (2) or more (off-shifts) (i.e., shifts other than the shift on which the Employee is normally assigned) during

the same one-week period. For purposes of this section, a one-week period will be defined as any consecutive seven (7) day period beginning on Sunday at 12:01 a.m., and ending on the following Saturday at 12:00 midnight. Relief shift differential shall not be paid if the combination work schedule defined above is for the convenience of the Employee, rather than the Employer.

## ARTICLE 4

**Section 1    Hours Of Work And Overtime**

Except in case of relief work, part-time employment and emergencies, five (5) full consecutive days of eight (8) consecutive hours, exclusive of meal periods as provided below, shall constitute a week's work and all Engineers shall be allowed two (2) consecutive days off each week. All time worked in excess of eight (8) hours in any one (1) day, or forty (40) hours in any one (1) week shall be paid at the rate of time and one-half (1-1/2) the base straight time hourly rate for the classification; provided, however, the employee may mutually agree in writing with the Employer to work back-to-back workweeks. Work over twelve (12) hours in any one day will be paid at two (2) times the base straight time hourly rate for the classification.

Notwithstanding the language of the previous paragraph, if an employee voluntarily accepts an alternative staffing schedule consisting of ten (10) or twelve (12) hour shifts, there shall be no daily overtime premium paid on any given day unless the employee works in excess of his regularly scheduled hours for that day. For purposes of this paragraph, time worked in excess of ten (10) hours in any one (1) day shall be paid (to an Engineer working an alternative staffing schedule of ten (10) hour shifts) at the rate of time and one-half (1-1/2) the base straight time hourly rate for the classification. Work over twelve (12) hours in any one day will be paid in accordance with the foregoing paragraph.

Subject to the provisions of the following paragraph, an Engineer shall have a thirty (30) minute lunch period on the Engineer's own time not more than five (5) hours after the start of the Engineer's shift.

An Engineer working a straight boiler room, straight relief boiler room shift, or working alone on the shift, shall work a shift of eight (8) hours within a period of eight (8) hours which shift shall include an on-duty meal period in the plant. In the event that an Engineer is working an alternative staffing schedule as defined in this Article and is working a straight boiler room shift or a relief boiler room shift, then that Engineer shall work the designated shift (e.g., 10 hours) within the same number of designated hours (e.g., 10 hours), which shift shall include an on-duty meal period in the plant.

No Engineer employed by the Employer as of October 16, 1988 shall be required to take a part-time position of less than 40 hours a week, and part-time positions, if any, shall be created only if additional positions are established or through attrition, for example, employee discharge or resignation.

An effort will be made to offer overtime equally depending on the skills of the individual and the requirements of the job.

An Engineer required to work more than seven (7) consecutive days (consisting of complete shifts, and not to include call back hours) without a day off shall be compensated thereafter at time and one-half (1-1/2) the Engineer's basic straight-time hourly rate for each day worked or portion thereof until granted a day off. This provision may be waived on the request of an individual Engineer and with the agreement of the Hospital. The Hospital reserves the right to require any Engineer who has worked seven (7) consecutive days to take a day off.

## Section 2    Call Back Pay

An employee who has completed his/her regular shift and leaves the Hospital and is called back to work, or an employee who has been called to work on his/her scheduled day off, shall receive a minimum of four (4) hours pay at the straight time and for all time actually worked within said four (4) hour period he/she shall receive an additional one-half (1/2) time of the straight time hourly rate. This Section does not apply when employees are required to return to the Hospital for pre-scheduled departmental meetings or pre-scheduled in-service training.

## Section 3    Stand-By Pay

Employees who are required to be on stand-by or who are required to answer a paging device after their normal shift or their days off, shall receive half time pay (1/2) at the straight time hourly rate for all hours that they are requested to be on stand-by. Stand-by pay is not paid for hours worked.

Responsibility for carrying a paging device ("beeper") while on stand-by will be rotated among those employees able to perform the work.

## Section 4    Time Records

Employees requesting a copy shall be provided on a timely basis at the conclusion of the pay period, copies of time records submitted to payroll by the Employer.

# ARTICLE 5

**Section 1      Visits By Union Representative**

The Business Representative of the Union shall be permitted to enter the Hospital at any time the Hospital is in operation to see that the provisions of this Agreement are being observed after first having reported to Management. The Representative may meet with bargaining unit employees in non-patient care areas, and such visits shall not interfere with the work of any bargaining unit employee.

**Section 2      Uniforms**

If uniforms of a special type are required, they will be furnished by the Employer. Any such uniforms that are required by the Hospital may be: (a) provided by a contracted uniform service; or (b) furnished directly to the employees or, at the Hospital's option, purchased by employees from an approved vendor, with the cost pre-approved and reimbursed by the Hospital. If uniforms are furnished by the Hospital or purchased by employees as set forth above, then the Hospital will provide or reimburse for three (3) complete uniforms and one pair of coveralls to replace the uniforms previously furnished by a uniform service. Replacement uniforms and coveralls will be provided or reimbursed as reasonably needed. The employee is required to maintain uniforms and coveralls in good condition, request replacements as needed, and wear the uniform or coveralls, if appropriate, at all times while on duty.

**Section 3      Seniority**

**A.      Layoff and Recall**

Where ability and qualifications are equal, layoff and recall will be based on length of bargaining unit service, provided the employees remaining on the job are able to perform all the required job functions satisfactorily.

Bargaining unit employees who volunteer for a layoff resulting from the need for involuntary layoff, and employees who are laid off pursuant to the provisions of this Article, shall be paid the following severance benefits:

| Continuous Employment | Weeks of Base Pay |
| --- | --- |
| Less than two (2) years | One (1) week |
| Two (2) to five (5) years | Two (2) weeks |
| Six (6) to ten (10) years | Three (3) weeks |
| Eleven (11) to fifteen (15) years | Four (4) weeks |
| Sixteen (16) to twenty (20) years | Five (5) weeks |
| Twenty-one (21) to twenty-five (25) years | Six (6) weeks |
| Twenty-six (26) or more years | Seven (7) weeks |

In addition, the Employer will continue to provide insurance coverages in effect at the time of the layoff at the same cost that was in effect immediately prior to the layoff (except to the extent the cost of such coverages increases during the severance period) to employees who have been laid off or volunteered to be laid off for the same period as the severance pay. Severance benefits are paid out over the severance period on the same basis as though the employee worked during the period of the severance. All severance entitlement and payments will cease seven (7) days from the mailing of a written communication (sent by certified mail) of available employment. For purposes of this section, the term "layoff" refers to a reduction-in-force affecting the bargaining unit, and not to the termination of employment pursuant to the sale of the Hospital to a third party.

It is the responsibility of the individual employee to update the Human Resources Department in writing with current address and phone numbers for recall purposes. A recalled employee must accept recall within seventy-two (72) hours and return to work at the Hospital within fourteen (14) days of a written communication of available employment. If an employee does not accept recall within seventy-two (72) hours, the employee will be considered voluntarily resigned. If the Hospital is unable to reach an employee on layoff within seventy-two (72) hours, the Hospital will offer recall to the next employee on the list, but the employee that the Hospital was unable to reach will remain on the recall list for future vacancies. Upon recall from layoff status, Engineers will be entitled to restoration of seniority and placement at the same salary step in effect at the time of layoff.

**B.    Job Vacancies**

If there is a legitimate job vacancy, the job will be bid for on a seniority basis and where ability and qualifications, including past performance, are equal, the employee with the most bargaining unit seniority shall fill the vacancy.

**C.    Definitions**

For purposes of implementing layoff and recall provisions and bidding, and for purposes of granting unpaid leaves of absence, the employee's seniority will be defined as his/her unbroken length of service in the Engineer's bargaining unit at his/her hospital.

For purposes of determining employee's entitlement to benefits provided under the contract (PTO accrual, health/dental and life insurance) his/her seniority will be determined based upon the length of service with the Employer (including qualified previous service with Good Samaritan Health System or Alexian Brothers Hospital) as a regular full-time employee or a regular part-time employee. A regular full-time employee is an employee who is regularly scheduled to work from thirty-two (32) to forty (40) hours weekly. A regular part-time employee is an employee who is regularly scheduled to work at least twenty (20) hours weekly.

Part-time employees may work full-time when covering for absences and for vacation relief.

## D.    TERMINATION OF SENIORITY

An employee's seniority shall be nullified and the individual's employment terminated if any of the following occur:

a.  Discharge for just cause;
b.  Voluntary resignation;
c.  Employees who experience a one-year or more absence due to layoff;
d.  If recalled from layoff, an employee fails to respond within seventy-two (72) hours, or report for work within a reasonable time;
e.  Retirement;
f.  Failure to report for work at the end of an authorized leave of absence;
g.  Accepts other employment during a leave of absence.

## Section 4    Bulletin Boards

The Union shall have the privilege of suitable space on a bulletin board for the posting of notices of official Union business.

Copies of the posting shall be furnished to the Employer's Director of Labor/Employee Relations.

# ARTICLE 6

## Section 1    Paid Time Off (PTO)

The Paid Time Off (PTO) Plan provides employees with a bi-weekly accrual of hours to be used as Paid Time Off (PTO) during periods of short-term illness, family emergencies, personal business and leisure. The plan also provides a separate bi-weekly accrual for Extended Sick Leave (ESL) for periods of illness or injury for which they receive either State Disability or Worker's Compensation benefit payments.

## Section 2    Accrual of PTO

**A.**    PTO plan days begin accruing on the first day of employment. Full-time employees accrue on the basis of recorded employment status and the length of service. Part-time employees accrue on the basis of hours paid (excluding overtime premium), not to exceed 80 hours per pay period and their length of service.

**B.**    Accrual schedules are as follows:

| Length of Service | PTO Hours Accrual/Pay Period | Total PTO Days/Year | Extended Sick Leave Accrual/Pay Period |
|---|---|---|---|
| First 2 Years | 8.0 | 26 | 1.85 |
| 3 & 4 Years | 10.2 | 33 | 1.85 |
| 5 Years | 11.1 | 36 | 1.85 |
| 6 Years | 11.4 | 37 | 1.85 |
| 7 Years | 11.7 | 38 | 1.85 |
| 8 Years | 12.0 | 39 | 1.85 |
| 9 Years | 12.3 | 40 | 1.85 |
| 10+ Years | 12.6 | 41 | 1.85 |

**C.** A maximum of 456 hours may be accrued in the PTO bank (319 for part-time employees).

**D.** A maximum of 999 hours may be accrued in the ESL bank (699 hours for part-time employees).

## Section 3 USE OF PTO

**A.** PTO days (or hours) may be used for vacation, holidays, short-term illness, family emergencies, religious observances, preventive health or dental care, personal business or other excused elective absences (except educational leave, jury duty, and bereavement leave, which are paid in addition to PTO days).

**B.** PTO is paid at the unit member's straight-time rate.

C. PTO begins accruing on the date of employment and may be used as it is earned.

**D.** With the exception of emergency or illness, PTO must be scheduled ahead of time with approval by the Department Head.

**E.** Employees with over one year of service must use a minimum of 20 PTO days per year. This amount is pro-rated for regular part-time employees based upon status.

**F.** Other than exceptions noted above, PTO will be used for all time off except that which is required to temporarily reduce staff levels due to decreased work load, i.e., drop days. Such hours may be unpaid or PTO at the employee's option.

**G.** All accrued PTO Plan (ESL and PTO) hours must be used first as part of a leave of absence granted an employee.

**H.** Employees who fail to report emergency absences to their supervisor at least one hour prior to the start of their shift are subject to denial of their PTO for that absence.

## Section 4     Redemption of PTO

**A.** Upon termination or transfer to a non-benefit position, 100% of the employee's PTO balance will be paid. The rate at which such hours are paid will be at the employee's current straight-time hourly rate.

**B.** PTO hours may not be used to extend employment beyond the last day actually worked.

**C.** Employees may choose to cash out up to eighty (80) hours of PTO in increments of eight (8) hours twice during any calendar year, so long as they do not reduce their PTO accrual below eighty (80) hours. PTO hours not used or converted to cash will continue to accumulate within the maximum accrual limits.

**D.** PTO time which is voluntarily converted to cash will be paid at 90% of the employee's straight base hourly rate in effect preceding their most recent anniversary date. Employees wishing to convert PTO to cash must submit a signed and approved PTO request form (a copy is available in the Human Resources Department) to the Payroll Department.

**E.** When an employee reduces his/her employment status, he/she must reduce his/her PTO balance to at least the prorated accrual maximum. The employee may choose to reduce their PTO balance beyond the prorated maximum while maintaining the regular minimum balance. PTO cashed out in conjunction with a reduction in employment status will be paid at 100% of the employee's base hourly rate.

## Section 5     Extended Sick Leave Account

**A.** In addition to PTO, the unit member also earns six extended Sick Leave days per year. ESL hours may be used for absences due to illness or injury which exceed seven consecutive calendar days (for a single illness/injury). Any scheduled workdays within the seven consecutive calendar days are charged against the PTO account.

**B.**    All available benefits paid under the PTO program will be coordinated with the State Disability Insurance or Workers' Compensation in order to maintain the employee's normal earnings during absences which qualify for these coverages. The Employer reserves the right to require reasonable proof of illness by a physician. After all the hours in the ESL account are exhausted, the hours in the PTO account will be utilized.

**C.**    ESL days may not be converted to PTO days or cashed in. The ESL account is zeroed out when the employee terminates or retires.

**Section 6    Integration of Benefits**

The Employer shall provide for the integration of PTO with Workers' Compensation and Disability Insurance programs. The unit member shall provide the Employer with the date necessary to integrate these benefits and shall file any necessary application for benefits in connection therewith. The Employer shall pay PTO in the amount necessary to supplement the income from State Disability Insurance or Workers' Compensation the extent of the unit member's regular pay rate, and will charge the unit member's sick leave balance with the supplement amount paid.

# ARTICLE 7

**Section 1    Health Insurance/Dental Plan**

For purposes of group insurance participation purposes only (and not for purposes of vacation, sick leave or holiday accrual), employees working a regular schedule of at least sixty-four (64) hours per bi-weekly pay period will be considered "regular full-time", and employees working a regular schedule of at least forty (40), but less than sixty-four (64), hours per bi-weekly pay period will be considered "regular part-time".

Effective January 1, 2007, regular full-time employees (as defined above) and regular part-time employees (as defined above) will be eligible to participate in the Employer's Health and Dental insurance programs as provided below not later than the first of the month following completion of two (2) calendar months of service.

From November 1, 2006 through December 31, 2006, employees will continue to receive the same benefits at the same costs that were provided from January 1, 2006 through October 31, 2006.

## A.     Health Insurance

1. **Health Plans Offered.** All covered Hospitals will continue to offer participation in the HMO Plan (or an equivalent plan), the PPO Plan with a $200 Deductible, and the PPO Plan with a $750 Deductible.

2. **Dependent Children Coverage.** An eligible employee's dependent children will be eligible for coverage until age 19. Dependent children enrolled as students in an accredited school (as defined in the plans) will remain eligible for enrollment to age twenty-five (25).

3. **PPO Plans.** There shall be no obligation to bargain over changes in the PPO Plans and such changes, as well as issues relating to administration of the Plans, shall not be subject to the grievance and arbitration procedures of this Agreement. The Hospitals agree that if any changes are made in the PPO Plans which reduce the overall benefits provided by the Plans, or in the event that there are changes in the coverage options offered for the plans, the Hospitals will notify the Union of such changes. Upon written request received within thirty (30) days of such notification by the individual designated by the hospitals to receive such notice, the hospitals will bargain with the Union concerning the effects of such changes on bargaining unit employees.

4. **Costs.** Costs for coverage under the various plans will be as set forth below effective January 1, 2007.

| | HMO | PPO $200 Deductible | PPO $750 Deductible |
|---|---|---|---|
| **Full-Time** | Employee Cost Per Pay Period | Employee Cost Per Pay Period | Employee Cost Per Pay Period |
| **Employees** | | | |
| Employee Only | $0 | $15.91 | $12.55 |
| Employee Plus 1 | $0 | $49.31 | $46.53 |
| Employee Plus 2 | $0 | $61.66 | $58.16 |
| Employee Plus 3+ | $0 | $76.12 | $67.50 |
| | | | |

| | Employee Cost Per Pay Period | Employee Cost Per Pay Period | Employee Cost Per Pay Period |
|---|---|---|---|
| **Part-Time** | | | |
| **Employees** | | | |
| Employee Only | $11.91 | $78.46 | $78.45 |
| Employee Plus 1 | $31.07 | $168.72 | $167.96 |
| Employee Plus 2 | $40.57 | $210.91 | $209.96 |
| Employee Plus 3+ | $50.90 | $245.06 | $241.69 |

**NOTE:** Above medical options require the selection of one of following prescription drug plans:

| | Prescription Design 5/10/25 | Prescription Design 10/20/35 | Prescription Design 15/30/45 |
|---|---|---|---|
| **Full-Time** **Employees** | Employee Cost Per Pay Period | Employee Cost Per Pay Period | Employee Cost Per Pay Period |
| Employee Only | $3.82 | $3.44 | $3.10 |
| Employee Plus 1 | $11.92 | $10.74 | $9.62 |
| Employee Plus 2 | $14.92 | $13.44 | $12.05 |
| Employee Plus 3+ | $18.41 | $16.59 | $14.87 |
| | | | |

| **Part-Time** **Employees** | Employee Cost Per Pay Period | Employee Cost Per Pay Period | Employee Cost Per Pay Period |
|---|---|---|---|
| Employee Only | $18.97 | $17.11 | $15.33 |
| Employee Plus 1 | $40.79 | $36.76 | $32.94 |
| Employee Plus 2 | $51.03 | $45.96 | $41.18 |
| Employee Plus 3+ | $59.27 | $53.41 | $47.85 |

5. **Change in Costs.** Through the term of this Agreement, the Hospitals will continue to pay the same percentage of the costs (based on premiums or premium equivalents) for coverage under the PPO Plans and of the costs (based on premiums or premium equivalents) of the HMO (or equivalent) for regular part-time employees with less than three years of service.

6. **No Cost for HMO.** The HMO Plan (or an equivalent plan) will be provided at no cost to regular full-time employees and to regular part-time employees with three (3) years of service.

7. **Open Enrollment.** There will be an annual open enrollment period during which employees may elect to change coverage. Employees may change coverage in the course of the plan year only when precipitated by (and within thirty-one [31] days of) a "family status change" as defined in Section 125 of the Internal Revenue Service Code.

8. **Payment In-Lieu-of-Coverage.** Full-time employees who choose not to participate in the health insurance coverage and who provide the hospital with proof of individual coverage under another insurance plan will receive Fifteen Dollars ($15.00) in additional wages each pay period.

B. **Dental Insurance**

1. **Dental Plans Offered.** The Hospitals will continue to offer the Delta Dental Premier Plan, the MetLife Preferred Dentist Program (PDP), and the Cigna Dental Maintenance Plan (DMO) (or an equivalent plan) to each regular full-time and regular part-time employee through the term of this agreement. No changes shall be made in the coverage under the MetLife Dental Preferred Dentist Program or the Delta Dental Premier plan, except by mutual agreement of the parties or as imposed by the Plan Provider.

2. **Costs.** The cost of such coverages will be as set forth below effective January 1, 2007.

|  | Cigna DMO | Met Life PDP | Delta Premier |
|---|---|---|---|
| Full-time | Cost per Pay Period | Cost per Pay Period | Cost per Pay Period |
| Individual | $0 | $2.80 | $3.62 |
| Individual + 1 | $0 | $7.30 | $8.15 |
| Individual + 2 | $0 | $10.19 | $11.56 |
| Individual + 3 | $0 | $14.14 | $14.78 |

|  | Cigna DMO | Met Life PDP | Delta Premier |
|---|---|---|---|
| Part-time | Cost per Pay Period | Cost per Pay Period | Cost per Pay Period |
| Individual | $3.80 | $7.03 | $9.17 |
| Individual + 1 | $7.76 | $14.88 | $23.79 |
| Individual + 2 | $11.04 | $20.84 | $33.58 |
| Individual + 3 | $13.18 | $27.32 | $37.29 |

3. **Changes in Costs.** Through the term of this Agreement, the Hospitals will continue to pay the same percentage of the costs (based on premiums or premium equivalents) for coverage under the Met Life PDP and the Delta Premier Plan and of the costs (based on premiums or premium equivalents) of the Cigna DMO (or equivalent) for regular part-time employees with less than three (3) years of service.

4. **No Cost for Cigna DMO Plan.** The Cigna DMO Plan (or an equivalent plan) will be provided at no cost to regular full-time employees and to regular part-time employees with three (3) years of service.

5. **Payment in Lieu of Coverage.** Full-time employees choosing not to participate in Dental Insurance will receive Two Dollars ($2.00) additional wages each pay period.

C. **Vision**

1. **VSP.** The Hospitals will continue to provide the existing Vision Service Plan (VSP) (or equivalent plan) through the term of this Agreement.

2. **Costs.** The costs of coverages under the Vision Service Plan will be as set forth below effective January 1, 2007.

|  | Vision Service Plan |
|---|---|
|  | Cost per Pay Period |
| Individual | $3.40 |
| Individual + 1 | $7.43 |
| Individual + 2 | $7.43 |
| Individual + 3 | $7.43 |

3. **Changes in Costs.** Through the term of this Agreement, the Hospitals will continue to pay the same percentage of the costs (based on premiums or premium equivalents) for coverage under the Vision Care Plan (or equivalent) for regular part-time employees with less than three (3) years of service.

4. **No Cost for Vision Care Plan.** The Vision Care Plan (or an equivalent plan) will be provided at no cost to regular full-time employees and to regular part-time employees with three (3) years of service.

## Section 2     Long Term Disability Plan

The Hospitals shall continue to make the HCA Long Term Disability Plan available for purchase through payroll deduction for eligible full-time employees, on the same basis as the Plan is offered to non-bargaining unit employees, according to the terms of the Plan.

## Section 3     Life Insurance

The Hospitals shall continue to provide eligible regular full-time and regular part-time employees with life insurance coverage and Accidental Death and Dismemberment (AD&D) insurance coverage in an amount equal to the employee's basic annual earnings, rounded to the next highest $1,000.00 (not to exceed $15,000 for part-time employees).

## Section 4     CorePlus Benefits

The Hospitals shall continue to offer participation in the CorePlus benefits to regular full-time and regular part-time employees at the time of hire on the same basis as participation is offered to non-bargaining unit employees. The parties understand that, given the national nature of these plans, the Hospitals have no duty to bargain with the Union over any aspect of the plans, including plan administration, changes in the plans, or elimination of the plans.

## Section 5     Health Care and Day Care Spending Accounts

Regular full-time and regular part-time employees will be eligible to participate in the HCA Health Care Spending Account Program and the HCA Day Care Spending Account Program, on the same basis as non-bargaining unit employees. There shall be no obligation to bargain over changes in these Programs or over issues relating to administration of these Programs and the Programs and their elements shall not be subject to the grievance and arbitration procedures of this Agreement.

## Section 6    Pension Plan

In lieu of participation in the HCA Savings & Retirement Program and the HCA Employee Stock Option Plan, the Employer agrees to contribute into the Stationary Engineers Local 39 Pension Trust Fund, at its respective office in San Francisco, California, or such other designated place of payment, the following amounts for all straight-time hours worked or paid for:

- – Effective the first pay period beginning subsequent to 11/01/09 - $5.45/hour
- – Effective the first pay period beginning subsequent to 11/01/10 - $5.70/hour
- – Effective the first pay period beginning subsequent to 11/01/11 - $5.95/hour
- – Effective the first pay period beginning subsequent to 11/01/12 - $6.20/hour

The above contribution shall be made on or before the tenth (10th) day of each month, for pension benefits, programs and plans, as now specified, and as may be hereinafter specified by said Trustees. The Employer agrees to accept, assume and be bound by all of the obligations imposed on individual employers by that certain Trust Agreement referred to for convenience as the Stationary Engineers Local 39 Pension Trust Agreement (a copy of which has been delivered to the Employer and receipt of which is expressly acknowledged) and any amendments, modifications, changes or mergers with respect to said Trust Agreement made by the parties thereto.

The undersigned further agrees that he or it does irrevocably designate and appoint the employers mentioned in said Pension Trust as his or its attorneys-in-fact for the selection, removal, and substitution of Trustees as provided for in said Trust Agreement and as may be hereinafter provided by or pursuant to said Trust Agreements.

In the event that the individual Employer herein fails to pay the amounts of Trust Fund contributions due and owing for the period in which they are due and owing, the individual Employer shall pay in addition to the amounts due as contributions, such additional liquidated damages and/or attorneys' fees as are set forth in the Trust Agreement to which the individual Employer is bound.

## Section 7    Bereavement Leave

A leave with pay, not to exceed three (3) working days, shall be granted in the event of death to a member of the immediate family (defined as parents, step-parents, spouse, children, step-children, grandparents, grandchildren, brothers, sisters, parents-in-law, sons-in-law or daughters-in-law). Up to three (3) additional days without pay may be granted by the Employer for good cause.

## Section 8    Jury Duty

An Engineer who reports for jury duty will receive his/her normal straight-time earnings. Proof of jury service shall be furnished to the Employer by the Engineer.
As a condition of receiving this pay, the Engineer must produce, within three (3) calendar days a receipt of the same, a voucher from the Jury Commissioner that the Engineer has served. In the event the Engineer is released with four (4) or more hours of his/her shift remaining, he/she shall be obligated to contact the Hospital and advise it of his/her availability for work. Subject to the above, employees called to jury service shall not be scheduled to work their normal shift on that day(s). The maximum number of days for which an Engineer may be reimbursed for jury service in any one (1) calendar year is thirty (30).

## Section 9    Retiree Health Benefits

**A. Retirement on or after 1/1/04.** Employees who retire on or after ratification of this agreement, will be eligible for retiree health insurance coverage through the term of this agreement, on the following basis. Premiums may be adjusted from time to time on the same basis that C.O.B.R.A. benefits are adjusted for employees.

**B. Eligibility.** Employees who are not Medicare eligible, who retire at or after age 55 with ten (10) years of continuous service in a regular full-time or regular part-time position immediately preceding retirement. Eligibility for this benefit ends when the employee becomes eligible for Medicare.

**C. Benefit.** Continue individual HMO coverage under Retiree Health HMO with benefits equivalent to the HMO for active employees, with the following adjustments:

1. In-Patient Hospital Co-Pay = $500/admission
2. Out-Patient Hospital Co-Pay = $250
3. Office Visit Co-Pay = $15 (Primary Care Physician)/$25 (Specialty Care Physician)
4. Pharmacy Co-Pay = Retail (30 day supply) - $10 Generic/$20 Brand Name; Mail Order (90 day supply) - $25 Generic/$55 Brand Name.

**D. Cost for Coverage.**

| Years of unbroken service in Full-time or Part-time position immediately preceding retirement | Percentage of Total Cost (based on premiums or premium equivalents) of Coverage Paid by Employee |
| --- | --- |
| 10 | 100% |
| 15 | 75% |
| 20 | 50% |
| 25 | 25% |

# ARTICLE 8

## Section 1    Management Rights

Except as expressly and specifically limited and restricted by a written provision of this Agreement, the Hospital has and shall retain the full right of management and the direction of the facility and its operations. Thus, the Hospital reserves and retains, solely and exclusively, all of the rights, privileges and prerogatives which it would have in the absence of this Agreement, regardless of the frequency or infrequency with which such rights have been exercised in the past, except to the extent that such rights, privileges and prerogatives are specifically and clearly abridged by express provisions of this Agreement. Such rights of management include, among other things, but are not limited to: The right of the Hospital in its sole discretion, to plan, direct, control, increase, decrease, or diminish staffing in whole or in part; to change methods, to introduce new methods, techniques, and/or machines, to change or discontinue any procedure used; to hire, transfer, discharge for just cause as defined elsewhere in this Agreement, or to relieve engineers for lack of work, to add to or reduce the number of shifts, the work schedule and/or the number of overtime hours to be worked; and to determine the number of employees that it shall employ at any one time and the qualifications necessary for any of the jobs it shall have; to subcontract work for economic reasons, in its discretion to rescind, or change reasonable Hospital work rules and regulations, or policies, so long as such rules are not inconsistent with an express provision of this Agreement. It is further agreed that there is no duty to bargain over the exercise of the rights specified herein and that such rights may not be impaired by an arbitrator or arbitration even though the parties may agree to arbitrate the issue involved as provided hereinafter.

# ARTICLE 9

## Section 1    Promotion of Amicable Relationships

The Union pledges itself to promote the mutual interests of the Employer and Employee and to continue the amicable relationship between Employer and Employee, to observe all rules and regulations and discipline such of their members as may be guilty of unbecoming conduct; to uphold the rights of the Employer through the procedural channels of the Union and to use the organization's good offices on behalf of Employer and Employee in every honorable way.

# ARTICLE 10

**Section 1    Shop Stewards**

For the purpose of representation of its members, the Union shall be entitled to Shop Stewards who shall restrict their activities to receiving questions and complaints from Members and, after first meeting with management to attempt resolution within the Department, report to the Business Representative. Stewards will perform their duties on behalf of the Union on their non-working time, unless prior management consent is obtained or unless the steward's participation is requested by management.

# ARTICLE 11

**Section 1    Probationary Period**

The probationary period for newly-hired Engineers shall be three (3) months of employment. An Engineer terminated during this period shall have no recourse to either grievance and/or arbitration procedure. The Hospital may extend the probationary period up to an additional thirty (30) calendar days with notification to the Union. Upon completion of the probationary period, the Engineer's seniority shall be computed as of the date of most recent hire.

# ARTICLE 12

**Section 1    Grievance Procedure**

The purpose of the Article is to provide the sole method for the settlement of any dispute between the parties over the interpretation, application or claimed violation of any specific provisions of this Agreement.

**Step 1 -** An employee with a grievance shall discuss the matter with the employee's Immediate Supervisor within fourteen (14) days (all references to days in this Article refer to calendar days) of the day in which it arises or becomes known to the employee. The Supervisor shall reply within ten (10) days after presentation. However, if the grievance is not resolved in this manner, the grievance shall be handled in accordance with the procedure set forth below. If the Supervisor does not respond within the time limits, the grievant may appeal to the next level.

**Step 2 -** If the grievance is not resolved within ten (10) days after the presentation of the grievance at Step 1, the grievance shall be presented in writing to the Director of Human Resources, or his/her designee for the Hospital within twenty (20) days from the date it was presented at Step 1.

**Step 3 -** If the grievance is not resolved within ten (10) days of presentation at Step 2, either party may, in writing, request arbitration within twenty (20) days from the date it was presented at Step 2 and the parties shall attempt to mutually agree to an arbitrator. In the event the parties are unable to agree on an arbitrator within five (5) days, either may request, with a copy to the Director of Human Resources, that the Federal Mediation and Conciliation Service submit a panel of seven arbitrators having hospital arbitration experience. Either party may reject one panel in its entirety. Each party shall alternately strike one (1) name until an arbitrator is selected. To determine which party strikes the first name, the parties shall flip a coin. The arbitrator shall promptly conduct a hearing on the grievance.

The arbitrator shall have no power to:

(1) add to or subtract from, or modify any of the terms of this Agreement;
(2) to establish or change any wage scale or any other compensation formula;
(3) hear or decide any dispute as to the numbers or classifications of employees needed, at any given time;
(4) arbitrate any matter after this Agreement has expired other than matters which arose prior to the time of expiration of the Agreement.

All grievances must be presented at the proper steps in accordance with the time limitations herein and unless such grievances are so presented, the right to file such grievance shall be waived. Any grievance not appealed to the next succeeding step within the time limits specified will be considered withdrawn and not eligible for further appeal.

Each party shall bear its own costs and expenses in connection with all steps of this procedure except that the fees of the arbitrator shall be paid one-half (1/2) by the aggrieved party and one-half (1/2) by the other party.

## Section 2    Discharge Grievance

In the event the grievance concerns discharge of an employee, the grievance must be presented to the Employer within five (5) working days following the discharge.

## Section 3    Time Limits

The time limits contained herein may be waived by mutual written agreement by the parties.

## ARTICLE 13

## Section 1    Strikes and Lockouts

There shall be no strikes (including organizational or sympathy strikes) or lockouts during the term of this Agreement. Violations of this Article shall not be subject to the

grievance and arbitration provisions of this Agreement.

# ARTICLE 14

## Section 1    Shift Assignment Changes

All regularly assigned shift assignment changes shall be posted seven (7) days in advance of said change. In the event said shift assignment changes are not posted seven (7) days in advance, the first shift worked shall then be paid at the rate of one and one-half (1 1/2) times the straight time hourly rate of pay. There shall be no premium pay for the employee returning to his/her previously assigned shift.

All Engineers assigned to work eight (8) hour shifts shall be given fifteen (15) hours off between scheduled shifts, except where a change becomes necessary due to the failure of an Engineer employee (or Engineer employees) to report to work for any reason, and except for employees who are assigned to perform weekly tests on the Hospital's power generating equipment. This time off requirement may be reduced to eleven (11) hours in the event that an Engineer works an alternative work schedule of ten (10) or twelve (12) hours.

Subject to the exceptions specified in the preceding paragraph, all hours worked within those specified rest periods shall be paid at the rate of time and one-half (1 1/2).

# ARTICLE 15

## Section 1    Non-Discrimination

There shall be no unlawful discrimination by either party to this Agreement. The Employer retains the right to make accommodation decisions necessary to comply with federal law, including the Americans with Disabilities Act (ADA) and such will not be interpreted as a violation of this Agreement.

# ARTICLE 16

## Section 1    Employer's Contribution to Stationary Engineers Apprentice and Journeyperson Educational Fund

The Employer agrees to pay into the Stationary Engineers' Apprentice and Journeymen's Educational Fund the sum of two hundred Dollars ($200.00) per year per full-time employee covered under the terms of this Agreement on the payroll of the employing Hospital for each year during the month of January.

**Section 2      Certification/Educational Achievement Bonus**

Commencing with the effective date of this Agreement, employees covered by this Agreement will be eligible for a certification/educational bonus of One Hundred Twenty Five Dollars ($125) upon successful completion of an Employer approved journeyman level class sponsored by the International Union of Operating Engineers, Stationary Local 39, AFL-CIO and/or San Jose City College.

Maximum three (3) classes or Three Hundred Seventy Five Dollars ($375) per calendar year,

OR a bonus of Two Hundred Fifty Dollars ($250) per calendar year upon attainment of certification in Biomedical Equipment, Clinical Laboratory Equipment, or Radiological Equipment by the Association for Advancement of Medical Instrumentation. Certificated Biomedical Equipment Technicians may apply for a bonus of One Hundred Twenty Five Dollars ($125) upon successful renewal of their certification.

# ARTICLE 17

**Section 1      Tools Of The Trade**

Hand tools belonging to the employee, considered necessary to perform his/her duties as an Engineer, that have been broken or damaged on the job will be repaired or replaced with tools of equal quality by the Employer.

# ARTICLE 18

**Section 1      No Pyramiding**

Notwithstanding any provisions herein set forth, there shall be no pyramiding of overtime on overtime, nor shall overtime be required to be paid in addition to specific premium pay except as to differentials and holidays.

# ARTICLE 19

**Section 1      Waiver**

It is agreed that during the negotiations leading to the execution of this Agreement, the parties have had full opportunity to submit all items appropriate to collective bargaining, and that the parties expressly waive the right to submit any additional item for negotiations during the term of this Agreement, whether or not such item

is referred to or covered in this Agreement, or whether the item was or was not discussed in the course of the negotiations leading to the execution of this Agreement; and that this Agreement incorporates their full and complete understanding, superseding and invalidating all previous commitments of any kind, oral or written, past practice, existing conditions, and all prior employee and Union rights and benefits not specifically incorporated herein. The specific provisions of this Agreement are the sole source of any right which the Union or any member of the bargaining unit may charge the Employer has violated in raising a grievance.

## ARTICLE 20

**Section 1     Term of Agreement**

This Agreement shall be effective November 1, 2009, and shall continue in effect without change, addition or amendment through October 31, 2013. This Agreement shall automatically be renewed and extended from year to year thereafter unless either party serves notice in writing on the other party at least ninety (90) days prior to the expiration date of this Agreement, or any subsequent anniversary date of same if this Agreement is automatically renewed or extended in accordance with this Article, of its intention to terminate or amend this Agreement.

Dated this 1st day of November, 2009, at San Jose, California.

| Good Samaritan Hospital & Regional Medical Centers of San Jose | International Union of Operating Engineers, Stationary Engineers, Local 39 |
|---|---|
| _____ | _____ |
| Samuel I. Romano, J.D., San Jose Market Director of Employee & Labor Relations | Jerry Kalmar, Business Manager |
| | _____ |
| | Madison Bland, President |
| | _____ |
| | Jeff Ajlouny, Business Representative |

# Collective Bargaining Agreement

## By and Between

## Good Samaritan Hospital & Regional Medical Center of San Jose

## And

## The International Union of Operating Engineers, Stationary Engineers, Local 39 AFL-CIO



## November 1, 2013 – October 31, 2018

# Table of Contents

**ARTICLE 1** ......................................................................................................... 1

SECTION 1  RECOGNITION ............................................................................... 1
SECTION 2     UNION MEMBERSHIP ................................................................ 1
SECTION 3  PAYROLL DEDUCTION OF UNION DUES (PRD) ......................... 2
SECTION 4  OPERATION ................................................................................... 2

**ARTICLE 2** ......................................................................................................... 2

SECTION 1     STATIONARY ENGINEER ........................................................... 2
SECTION 2  UTILITY ENGINEER ....................................................................... 2
SECTION 3  BIOMEDICAL EQUIPMENT TECHNICIAN ...................................... 3
SECTION 4  LEAD CLASSIFICATIONS ............................................................... 3
SECTION 5  APPRENTICES................................................................................ 3

**ARTICLE 3** ......................................................................................................... 4

SECTION 1     WAGE RATES ............................................................................. 4
SECTION 2  APPRENTICE ENGINEER RATE OF PAY ........................................ 4
SECTION 3  SHIFT DIFFERENTIALS .................................................................. 4

**ARTICLE 4** ......................................................................................................... 5

SECTION 2     CALL BACK PAY .......................................................................... 6
SECTION 3     STAND-BY PAY ........................................................................... 6
SECTION 4  TIME RECORDS ............................................................................. 7

**ARTICLE 5** ......................................................................................................... 7

SECTION 1     VISITS BY UNION REPRESENTATIVE ......................................... 7
SECTION 2  UNIFORMS .................................................................................... 7
SECTION 3  SENIORITY..................................................................................... 7
SECTION 4     BULLETIN BOARDS ..................................................................... 9

**ARTICLE 6** ......................................................................................................... 9

SECTION 1     PAID TIME OFF (PTO) ................................................................ 9
SECTION 2     ACCRUAL OF PTO ...................................................................... 10
SECTION 3 USE OF PTO................................................................................... 10
SECTION 4  REDEMPTION OF PTO .................................................................. 11
SECTION 5  EXTENDED SICK LEAVE ACCOUNT ............................................... 12
SECTION 6  INTEGRATION OF BENEFITS......................................................... 12

**ARTICLE 7** ......................................................................................................... 12

SECTION 1  HEALTH INSURANCE/DENTAL PLAN ............................................ 12
SECTION 2  LONG TERM DISABILITY PLAN ..................................................... 16
SECTION 3  LIFE INSURANCE ........................................................................... 16
SECTION 4  COREPLUS BENEFITS ................................................................... 17
SECTION 5  HEALTH CARE AND DAY CARE SPENDING ACCOUNTS................. 17
SECTION 6  PENSION PLAN ............................................................................. 17

Section 7 Bereavement Leave ................................................................... 18
Section 8 Jury Duty ................................................................................. 18
Section 9 Retiree Health Benefits ......................................................... 18

**ARTICLE 8** ................................................................................................. **19**

Section 1 Management Rights ................................................................ 19

**ARTICLE 9** ................................................................................................. **20**

Section 1 Promotion of Amicable Relationships ................................... 20

**ARTICLE 10** ............................................................................................... **20**

Section 1 Shop Stewards ........................................................................ 20

**ARTICLE 11** ............................................................................................... **20**

Section 1 Probationary Period ............................................................... 20

**ARTICLE 12** ............................................................................................... **20**

Section 1 Grievance Procedure .............................................................. 20
Section 2 Discharge Grievance .............................................................. 21
Section 3 Time Limits ............................................................................ 22

**ARTICLE 13** ............................................................................................... **22**

Section 1 Strikes and Lockouts ............................................................. 22

**ARTICLE 14** ............................................................................................... **22**

Section 1 Shift Assignment Changes ..................................................... 22

**ARTICLE 15** ............................................................................................... **22**

Section 1 Employer's Contribution to Stationary Engineers Apprentice and Journeyperson
Educational Fund ..................................................................................... 22
Section 2 Certification/Educational Achievement Bonus ..................... 23

**ARTICLE 16** ............................................................................................... **23**

Section 1 Tools Of The Trade ................................................................ 23

**ARTICLE 17** ............................................................................................... **23**

Section 1 No Pyramiding ....................................................................... 23

**ARTICLE 18** ............................................................................................... **23**

Section 1 Waiver .................................................................................... 23

**ARTICLE 19** ............................................................................................... **24**

Section 1 Term of Agreement ................................................................ 24

# AGREEMENT

This Agreement, entered into by and between **"The Good Samaritan Hospital, L.P. D/B/A Good Samaritan Hospital and San Jose Healthcare System, L.P. D/B/A Regional Medical Center of San Jose"** hereinafter collectively referred to as the "Employer" or "Hospital", and the **International Union Of Operating Engineers, Stationary Local 39, AFL-CIO**, hereinafter referred to as the "Union".

## ARTICLE 1

### Section 1     Recognition

This Agreement covers all full-time and part-time employees employed by the Employer in the classifications listed in Article III, excluding all other employees, guards and supervisors, under the National Labor Relations Act. The Employer recognizes the Union as the sole collective bargaining agent for such employees.

Specifically excluded are all per diem and casual employees, including temporary help, i.e., employees hired for a period of time not to exceed ninety (90) calendar days. Further, the scope of recognition granted in this Article shall have no application in any other corporation or facility the Employer has an interest in or opens, even if said corporation or new facility employs Engineers.

It is understood and recognized that Good Samaritan Hospital includes the Mission Oaks facility.

### Section 2     Union Membership

Membership in good standing in the Union shall be a condition of employment. For the purpose of this Section, tender of the initiation fee on or immediately following the thirtieth (30th) day of employment, and tender of periodic dues uniformly required as a condition of retaining membership, shall constitute good standing in the Union. When the Union advises an Engineer in writing that he or she is delinquent in the tender of the initiation fee or Union dues as above required, a copy of the notice shall be sent to the Human Resources Department of the Hospital in order that the Hospital is aware of the delinquency. When new or additional employees are needed in the Engineers' classification listed, the Employer shall, at the same time he notifies any other labor source, notify the Union of the number and classification of employees needed. The Hospital shall be the sole judge of the fitness of any applicant. The Hospital shall notify the Union of the employment of any Engineer within ten (10) days, giving his name, address and date of hire.

**Section 3    Payroll Deduction of Union Dues (PRD)**

During the life of this Agreement, the Employer will deduct Union Dues, Initiation Fees and Assessments from the wages of each Member who voluntarily agrees to such deductions and who submits a Check-Off Authorization Form. Said written authorization may be revoked by the Member in accordance with the terms of the Check-Off Authorization. Monthly deductions will be made by the Employer and remitted to I.U.O.E., Stationary Engineers, Local No. 39, at 1620 North Market Blvd., Sacramento, California 95834.

The Union shall indemnify the Employer and hold it harmless against any and all suits, claims, demands and liabilities that shall arise out of, or by reason of, any action that shall be taken by the Member in connection with said deduction of dues.

**Section 4    Operation**

When a boiler is in operation or a central air conditioning unit is in operation, a Stationary Engineer shall be on watch in the plant, or facility, if required by law.

**ARTICLE 2**

**Section 1    Stationary Engineer**

Responsibilities of the Stationary Engineer include, but are not limited to, the following: the proper operation of all the machinery and/or equipment under his/her area of responsibility; making necessary repairs to machinery and/or equipment, as well as necessary adjustments to maintain the proper operation of the equipment; and maintaining good Engineering practices.

The Stationary Engineer shall be responsible for the cleanup of all areas such as maintenance shop, boiler room, mechanical room, and any and all areas where equipment and machinery exists that he/she normally maintains. He/she will also clean any debris left, either as a result of his/her work or as a result of malfunctions of equipment and/or piping and plumbing whenever and wherever he/she is performing duties in any section of the Hospital. He/she will also be required to clean and replace all tools and gear used by him/her in the performance of his/her duties. He/she will not, however, be required to perform janitorial duties normally coming under the jurisdiction of the housekeeping department.

**Section 2    Utility Engineer**

The Utility Engineer may be required to perform nontechnical and nonskilled labor including, but not limited to, such duties as minor household repairs which may include the use of hand held battery powered tools, gardening, sign making, light bulb replacement, chasing parts, materials and tools for journeymen, unplugging toilets, changing room filters, changing washers in faucets, and assisting

journeymen when they need additional labor with tasks such as lifting a motor into place, holding one end of a piece of pipe, job site cleanup, shop cleanup, boiler room cleanup, sanding room cleanup, etc. The pay rate for the Utility Engineer classification shall be 55% of the Stationary Engineer's hourly rate of pay.

## Section 3    Biomedical Equipment Technician

The Technician shall spend the majority of his/her time performing safety inspections of and repairing, replacing, installing, adjusting, troubleshooting, and maintaining biomedical and electronic equipment and other equipment under their jurisdiction.

## Section 4    Lead Classifications

The Employer may establish "Lead" positions based upon the Employer's needs provided that the classification will receive at least ten percent (10%) more than the classification that a Stationary Engineer receives for his/her basic straight time hourly rate.

The Lead Engineer or the Lead Biomedical Technician shall perform the duties normally performed by the Stationary Engineer or the Biomedical Equipment Technician and plan, schedule, assign, inspect and coordinate the work of Stationary Engineers or Biomedical Equipment Technicians, as appropriate under his/her jurisdiction.

The Lead will, order materials and supplies, maintain records, assist in the training and evaluating of personnel, and coordinate work with outside vendors, as directed by management. The Lead classification is to be considered as a "working foreman" and as such does not have final authority to hire, fire, or discipline personnel in his/her area of responsibility but may be required to assist by evaluating the work of employees, recommending discipline when warranted, and administering the Employer's work rules and policies as directed by Management.

The Lead may, after consultation with management, suspend personnel in his/her area of responsibility pending investigation.

## Section 5    Apprentices

(a)    If the Employer chooses to utilize Apprentices, the ratio of Apprentices to Engineers will be in keeping with any applicable statutory requirements. In the event the Hospital joins the existing Stationary Engineers Apprenticeship Program, the Employer at its option may have representation on the Joint Apprenticeship Committee.

(b)    The Employer may employ apprentices at a ratio of one (1) apprentice for every five (5) engineers, including the Lead Engineer.

# ARTICLE 3

## Section 1   Wage Rates

Effective with the first pay period beginning subsequent to the indicated dates, the wage scale for bargaining unit employees will be as follows:

| Effective Dates | 11/01/13 | 11/01/14 | 11/01/15 | 11/01/16 | 11/01/17 |
|---|---|---|---|---|---|
| Lead Engineer* | $ 49.87 | $ 51.37 | $ 52.92 | $ 54.78 | $ 56.71 |
| Lead Biomedical Technician* | 49.87 | 51.37 | 52.92 | 54.78 | 56.71 |
| Stationary Engineer* | 45.31 | 46.68 | 48.09 | 49.78 | 51.53 |
| Biomedical Equipment Technician* | 45.31 | 46.68 | 48.09 | 49.78 | 51.53 |
| Utility Person* | 24.81 | 25.56 | 26.33 | 27.26 | 28.22 |

\* These rates reflect the agreed-upon percentage increases in base hourly wage year-over-year less a flat twenty-five-cent ($0.25) portion to be moved into pension.

Notwithstanding the foregoing, pursuant to Article II, Section 4, the Employer retains the discretion to increase the lead classification rates of pay above those set out immediately above.

## Section 2   Apprentice Engineer Rate of Pay

Apprentice Engineers, who may be employed, shall receive no less than the following percentage of the Stationary Engineer's wages:

| 1st 12 Months | 65% |
|---|---|
| 3rd 6 Months | 70% |
| 4th 6 Months | 75% |
| 5th 6 Months | 80% |
| 6th 6 Months | 85% |
| 7th 6 Months | 90% |
| 8th 6 Months | 95% |

## Section 3   Shift Differentials

## A.   P.M. Shift Differential

A differential of $1.00 per hour shall be paid on top of an Engineer's straight time hourly rate when scheduled and performing work on the PM shift, defined as any shift starting between the hours of 12:00 noon and 6:59 p.m.

**B.     Night Shift Differential**

A differential of $1.20 per hour shall be paid on top of an Engineer's straight time hourly rate when scheduled and performing work on the night shift, defined as any shift starting between the hours of 7:00 p.m. and 2:59 a.m.

**C.     Relief Shift Differential**

A differential of $1.06 per hour shall be paid on top of an Engineer's straight time hourly rate when scheduled and performing work on the relief shift, defined as an Employer mandated work schedule containing two (2) or more (off-shifts) (i.e., shifts other than the shift on which the Employee is normally assigned) during the same one-week period. For purposes of this section, a one-week period will be defined as any consecutive seven (7) day period beginning on Sunday at 12:01 a.m., and ending on the following Saturday at 12:00 midnight. Relief shift differential shall not be paid if the combination work schedule defined above is for the convenience of the Employee, rather than the Employer.

## ARTICLE 4

**Section 1     Hours Of Work And Overtime**

Except in case of relief work, part-time employment and emergencies, five (5) full consecutive days of eight (8) consecutive hours, exclusive of meal periods as provided below, shall constitute a week's work and all Engineers shall be allowed two (2) consecutive days off each week. All time worked in excess of eight (8) hours in any one (1) day, or forty (40) hours in any one (1) week shall be paid at the rate of time and one-half (1-1/2) the base straight time hourly rate for the classification; provided, however, the employee may mutually agree in writing with the Employer to work back-to-back workweeks. Work over twelve (12) hours in any one day will be paid at two (2) times the base straight time hourly rate for the classification.

Notwithstanding the language of the previous paragraph, if an employee voluntarily accepts an alternative staffing schedule consisting of ten (10) or twelve (12) hour shifts, there shall be no daily overtime premium paid on any given day unless the employee works in excess of his regularly scheduled hours for that day. For purposes of this paragraph, time worked in excess of ten (10) hours in any one (1) day shall be paid (to an Engineer working an alternative staffing schedule of ten (10) hour shifts) at the rate of time and one-half (1-1/2) the base straight time hourly rate for the classification. Work over twelve (12) hours in any one day will be paid in accordance with the foregoing paragraph.

Subject to the provisions of the following paragraph, an Engineer shall have a thirty (30) minute lunch period on the Engineer's own time not more than five (5) hours after the start of the Engineer's shift.

An Engineer working a straight boiler room, straight relief boiler room shift, or working alone on the shift, shall work a shift of eight (8) hours within a period of eight (8) hours which shift shall include an on-duty meal period in the plant. In the event that an Engineer is working an alternative staffing schedule as defined in this Article and is working a straight boiler room shift or a relief boiler room shift, then that Engineer shall work the designated shift (e.g., 10 hours) within the same number of designated hours (e.g., 10 hours), which shift shall include an on-duty meal period in the plant.

No Engineer employed by the Employer as of October 16, 1988 shall be required to take a part-time position of less than 40 hours a week, and part-time positions, if any, shall be created only if additional positions are established or through attrition, for example, employee discharge or resignation.

An effort will be made to offer overtime equally depending on the skills of the individual and the requirements of the job.

An Engineer required to work more than seven (7) consecutive days (consisting of complete shifts, and not to include call back hours) without a day off shall be compensated thereafter at time and one-half (1-1/2) the Engineer's basic straight-time hourly rate for each day worked or portion thereof until granted a day off. This provision may be waived on the request of an individual Engineer and with the agreement of the Hospital. The Hospital reserves the right to require any Engineer who has worked seven (7) consecutive days to take a day off.

## Section 2    Call Back Pay

An employee who has completed his/her regular shift and leaves the Hospital and is called back to work, or an employee who has been called to work on his/her scheduled day off, shall receive a minimum of four (4) hours pay at the straight time and for all time actually worked within said four (4) hour period he/she shall receive an additional one-half (1/2) time of the straight time hourly rate. This Section does not apply when employees are required to return to the Hospital for pre-scheduled departmental meetings or pre-scheduled in-service training.

## Section 3    Stand-By Pay

Employees who are required to be on stand-by or who are required to answer a paging device after their normal shift or their days off, shall receive half time pay (1/2) at the straight time hourly rate for all hours that they are requested to be on stand-by. Stand-by pay is not paid for hours worked.

Responsibility for carrying a paging device ("beeper") while on stand-by will be rotated among those employees able to perform the work.

**Section 4     Time Records**

Employees requesting a copy shall be provided on a timely basis at the conclusion of the pay period, copies of time records submitted to payroll by the Employer.

## ARTICLE 5

**Section 1     Visits By Union Representative**

The Business Representative of the Union shall be permitted to enter the Hospital at any time the Hospital is in operation to see that the provisions of this Agreement are being observed after first having reported to Management. The Representative may meet with bargaining unit employees in non-patient care areas, and such visits shall not interfere with the work of any bargaining unit employee.

**Section 2     Uniforms**

If uniforms of a special type are required, they will be furnished by the Employer. Any such uniforms that are required by the Hospital may be: (a) provided by a contracted uniform service; or (b) furnished directly to the employees or, at the Hospital's option, purchased by employees from an approved vendor, with the cost pre-approved and reimbursed by the Hospital. If uniforms are furnished by the Hospital or purchased by employees as set forth above, then the Hospital will provide or reimburse for three (3) complete uniforms and one pair of coveralls to replace the uniforms previously furnished by a uniform service. Replacement uniforms and coveralls will be provided or reimbursed as reasonably needed. The employee is required to maintain uniforms and coveralls in good condition, request replacements as needed, and wear the uniform or coveralls, if appropriate, at all times while on duty.

**Section 3     Seniority**

**A.     Layoff and Recall**

Where ability and qualifications are equal, layoff and recall will be based on length of bargaining unit service, provided the employees remaining on the job are able to perform all the required job functions satisfactorily.

Bargaining unit employees who volunteer for a layoff resulting from the need for involuntary layoff, and employees who are laid off pursuant to the provisions of this Article, shall be paid the following severance benefits:

| Continuous Employment | Weeks of Base Pay |
|---|---|
| Less than two (2) years | One (1) week |
| Two (2) to five (5) years | Two (2) weeks |
| Six (6) to ten (10) years | Three (3) weeks |
| Eleven (11) to fifteen (15) years | Four (4) weeks |
| Sixteen (16) to twenty (20) years | Five (5) weeks |
| Twenty-one (21) to twenty-five (25) years | Six (6) weeks |
| Twenty-six (26) or more years | Seven (7) weeks |

In addition, the Employer will continue to provide insurance coverages in effect at the time of the layoff at the same cost that was in effect immediately prior to the layoff (except to the extent the cost of such coverages increases during the severance period) to employees who have been laid off or volunteered to be laid off for the same period as the severance pay. Severance benefits are paid out over the severance period on the same basis as though the employee worked during the period of the severance. All severance entitlement and payments will cease seven (7) days from the mailing of a written communication (sent by certified mail) of available employment. For purposes of this section, the term "layoff" refers to a reduction-in-force affecting the bargaining unit, and not to the termination of employment pursuant to the sale of the Hospital to a third party.

It is the responsibility of the individual employee to update the Human Resources Department in writing with current address and phone numbers for recall purposes. A recalled employee must accept recall within seventy-two (72) hours and return to work at the Hospital within fourteen (14) days of a written communication of available employment. If an employee does not accept recall within seventy-two (72) hours, the employee will be considered voluntarily resigned. If the Hospital is unable to reach an employee on layoff within seventy-two (72) hours, the Hospital will offer recall to the next employee on the list, but the employee that the Hospital was unable to reach will remain on the recall list for future vacancies. Upon recall from layoff status, Engineers will be entitled to restoration of seniority and placement at the same salary step in effect at the time of layoff.

**B.    Job Vacancies**

If there is a legitimate job vacancy, the job will be bid for on a seniority basis and where ability and qualifications, including past performance, are equal, the employee with the most bargaining unit seniority shall fill the vacancy.

**C.    Definitions**

For purposes of implementing layoff and recall provisions and bidding, and for purposes of granting unpaid leaves of absence, the employee's seniority will be defined as his/her unbroken length of service in the Engineer's bargaining unit at his/her hospital.

For purposes of determining employee's entitlement to benefits provided under the contract (PTO accrual, health/dental and life insurance) his/her seniority will be determined based upon the length of service with the Employer (including qualified previous service with Good Samaritan Health System or Alexian Brothers Hospital) as a regular full-time employee or a regular part-time employee. A regular full-time employee is an employee who is regularly scheduled to work from thirty-two (32) to forty (40) hours weekly. A regular part-time employee is an employee who is regularly scheduled to work at least twenty (20) hours weekly.

Part-time employees may work full-time when covering for absences and for vacation relief.

## D.    TERMINATION OF SENIORITY

An employee's seniority shall be nullified and the individual's employment terminated if any of the following occur:

a.  Discharge for just cause;
b.  Voluntary resignation;
c.  Employees who experience a one-year or more absence due to layoff;
d.  If recalled from layoff, an employee fails to respond within seventy-two (72) hours, or report for work within a reasonable time;
e.  Retirement;
f.   Failure to report for work at the end of an authorized leave of absence;
g.  Accepts other employment during a leave of absence.

## Section 4    Bulletin Boards

The Union shall have the privilege of suitable space on a bulletin board for the posting of notices of official Union business.

Copies of the posting shall be furnished to the Employer's Director of Labor/Employee Relations.

## ARTICLE 6

## Section 1    Paid Time Off (PTO)

The Paid Time Off (PTO) Plan provides employees with a bi-weekly accrual of hours to be used as Paid Time Off (PTO) during periods of short-term illness, family emergencies, personal business and leisure. The plan also provides a separate bi-weekly accrual for Extended Sick Leave (ESL) for periods of illness or injury for which they receive either State Disability or Worker's Compensation benefit payments.

**Section 2    Accrual of PTO**

**A.**    PTO plan days begin accruing on the first day of employment. Full-time employees accrue on the basis of recorded employment status and the length of service. Part-time employees accrue on the basis of hours paid (excluding overtime premium), not to exceed 80 hours per pay period and their length of service.

**B.**    Accrual schedules are as follows:

| Length of Service | PTO Hours Accrual/Pay Period | Total PTO Days/Year | Extended Sick Leave Accrual/Pay Period |
|---|---|---|---|
| First 2 Years | 8.0 | 26 | 1.85 |
| 3 & 4 Years | 10.2 | 33 | 1.85 |
| 5 Years | 11.1 | 36 | 1.85 |
| 6 Years | 11.4 | 37 | 1.85 |
| 7 Years | 11.7 | 38 | 1.85 |
| 8 Years | 12.0 | 39 | 1.85 |
| 9 Years | 12.3 | 40 | 1.85 |
| 10+ Years | 12.6 | 41 | 1.85 |

**C.**    A maximum of 456 hours may be accrued in the PTO bank (319 for part-time employees).

**D.**    A maximum of 999 hours may be accrued in the ESL bank (699 hours for part-time employees).

**Section 3 USE OF PTO**

**A.**    PTO days (or hours) may be used for vacation, holidays, short-term illness, family emergencies, religious observances, preventive health or dental care, personal business or other excused elective absences (except educational leave, jury duty, and bereavement leave, which are paid in addition to PTO days).

**B.**    PTO is paid at the unit member's straight-time rate.

**C.**    PTO begins accruing on the date of employment and may be used as it is earned.

**D.**   With the exception of emergency or illness, PTO must be scheduled ahead of time with approval by the Department Head.

**E.**   Employees with over one year of service must use a minimum of 20 PTO days per year. This amount is pro-rated for regular part-time employees based upon status.

**F.**   Other than exceptions noted above, PTO will be used for all time off except that which is required to temporarily reduce staff levels due to decreased work load, i.e., drop days. Such hours may be unpaid or PTO at the employee's option.

**G.**   All accrued PTO Plan (ESL and PTO) hours must be used first as part of a leave of absence granted an employee.

**H.**   Employees who fail to report emergency absences to their supervisor at least one hour prior to the start of their shift are subject to denial of their PTO for that absence.

**Section 4    Redemption of PTO**

**A.**   Upon termination or transfer to a non-benefit position, 100% of the employee's PTO balance will be paid. The rate at which such hours are paid will be at the employee's current straight-time hourly rate.

**B.**   PTO hours may not be used to extend employment beyond the last day actually worked.

**C.**   Employees may choose to cash out up to eighty (80) hours of PTO in increments of eight (8) hours twice during any calendar year, so long as they do not reduce their PTO accrual below eighty (80) hours. PTO hours not used or converted to cash will continue to accumulate within the maximum accrual limits.

**D.**   PTO time which is voluntarily converted to cash will be paid at 90% of the employee's straight base hourly rate in effect preceding their most recent anniversary date. Employees wishing to convert PTO to cash must submit a signed and approved PTO request form (a copy is available in the Human Resources Department) to the Payroll Department.

**E.**   When an employee reduces his/her employment status, he/she must reduce his/her PTO balance to at least the prorated accrual maximum. The employee may choose to reduce their PTO balance beyond the prorated maximum while maintaining the regular minimum balance. PTO cashed out in conjunction with a reduction in employment status will be paid at 100% of the employee's base hourly rate.

**Section 5     Extended Sick Leave Account**

**A.**    In addition to PTO, the unit member also earns six extended Sick Leave days per year. ESL hours may be used for absences due to illness or injury which exceed seven consecutive calendar days (for a single illness/injury). Any scheduled workdays within the seven consecutive calendar days are charged against the PTO account.

**B.**    All available benefits paid under the PTO program will be coordinated with the State Disability Insurance or Workers' Compensation in order to maintain the employee's normal earnings during absences which qualify for these coverages. The Employer reserves the right to require reasonable proof of illness by a physician. After all the hours in the ESL account are exhausted, the hours in the PTO account will be utilized.

**C.**    ESL days may not be converted to PTO days or cashed in. The ESL account is zeroed out when the employee terminates or retires.

**Section 6     Integration of Benefits**

The Employer shall provide for the integration of PTO with Workers' Compensation and Disability Insurance programs. The unit member shall provide the Employer with the date necessary to integrate these benefits and shall file any necessary application for benefits in connection therewith. The Employer shall pay PTO in the amount necessary to supplement the income from State Disability Insurance or Workers' Compensation the extent of the unit member's regular pay rate, and will charge the unit member's sick leave balance with the supplement amount paid.

## ARTICLE 7

**Section 1     Health Insurance/Dental Plan**

For purposes of group insurance participation purposes only (and not for purposes of vacation, sick leave or holiday accrual), employees working a regular schedule of at least sixty-four (64) hours per bi-weekly pay period will be considered "regular full-time", and employees working a regular schedule of at least forty (40), but less than sixty-four (64), hours per bi-weekly pay period will be considered "regular part-time".

Effective January 1, 2007, regular full-time employees (as defined above) and regular part-time employees (as defined above) will be eligible to participate in the Employer's Health and Dental insurance programs as provided below not later than the first of the month following completion of two (2) calendar months of service.

From November 1, 2006 through December 31, 2006, employees will continue to receive the same benefits at the same costs that were provided from January 1, 2006 through October 31, 2006.

## A.   Health Insurance

1. **Health Plans Offered.** All covered Hospitals will continue to offer participation in the HMO Plan (or an equivalent plan), the PPO Plan with a $200 Deductible, and the PPO Plan with a $750 Deductible.

2. **Dependent Children Coverage.** An eligible employee's dependent children will be eligible for coverage until age 19. Dependent children enrolled as students in an accredited school (as defined in the plans) will remain eligible for enrollment to age twenty-five (25).

3. **PPO Plans.** There shall be no obligation to bargain over changes in the PPO Plans and such changes, as well as issues relating to administration of the Plans, shall not be subject to the grievance and arbitration procedures of this Agreement. The Hospitals agree that if any changes are made in the PPO Plans which reduce the overall benefits provided by the Plans, or in the event that there are changes in the coverage options offered for the plans, the Hospitals will notify the Union of such changes. Upon written request received within thirty (30) days of such notification by the individual designated by the hospitals to receive such notice, the hospitals will bargain with the Union concerning the effects of such changes on bargaining unit employees.

4. **Costs.** Costs for coverage under the various plans will be as set forth below effective January 1, 2014.

| Full-Time Employees and Part-Time Employees with 3 or more years of service. | HMO |
|---|---|
| | Cost Per Pay Period |
| EE Only | $0.00 |
| EE Plus One Dependent | $0.00 |
| EE Plus 2 Dependents | $0.00 |
| EE Plus 3 or more Dependents | $0.00 |

| Part-Time Employees with less than 3 years of service. | HMO |
|---|---|
| | Cost Per Pay Period |
| EE Only | $18.06 |
| EE Plus One Dependent | $46.98 |
| EE Plus 2 Dependents | $68.16 |
| EE Plus 3 or more Dependents | $77.93 |

Employees working a regular schedule of sixty-four (64) or more hours per bi-weekly period will be considered "full-time" for purposes of insurance participation only.

| Full-Time Employees | HCA – PPO $750 DEDUCTIBLE (BY RX PLAN) | HCA - PPO $200 DEDUCTIBLE (BY RX PLAN) |
|---|---|---|
| | Employee Cost Per Pay Period | Employee Cost Per Pay Period |
| Employee Only | (15/30/45) $27.71 (10/20/35) $28.20 (5/10/25) $28.78 | (15/30/45) $32.68 (10/20/35) $33.17 (5/10/25) $33.75 |
| Employee Plus One Dependent | (15/30/45) $99.06 (10/20/35) $100.72 (5/10/25) $102.52 | (15/30/45) $101.42 (10/20/35) $103.08 (5/10/25) $104.88 |
| Employee Plus 2 Dependents | (15/30/45) $123.85 (10/20/35) $125.92 (5/10/25) $128.19 | (15/30/45) $126.84 (10/20/35) $128.91 (5/10/25) $131.18 |
| Employee Plus 3 or more Dependents | (15/30/45) $145.56 (10/20/35)$148.11 (5/10/25) $150.89 | (15/30/45) $156.61 (10/20/35) $159.16 (5/10/25) $161.94 |

| Part-Time Employees | HCA - PPO $750 DEDUCTIBLE (BY RX PLAN) | HCA - PPO $200 DEDUCTIBLE (BY RX PLAN) |
|---|---|---|
| | Employee Cost Per Pay Period | Employee Cost Per Pay Period |
| Employee Only | (15/30/45) $165.28 (10/20/35) $167.89 (5/10/25) $170.76 | (15/30/45) $161.47 (10/20/35) $164.08 (5/10/25) $166.95 |
| Employee Plus One Dependent | (15/30/45) $354.12 (10/20/35) $359.75 (5/10/25) $365.92 | (15/30/45) $347.18 (10/20/35) $352.81 (5/10/25) $358.98 |
| Employee Plus 2 Dependents | (15/30/45) $442.68 (10/20/35) $449.70 (5/10/25) $457.53 | (15/30/45) $433.99 (10/20/35) $441.01 (5/10/25) $448.84 |
| Employee Plus 3 or more Dependents | (15/30/45) $510.49 (10/20/35) $518.69 (5/10/25) $527.71 | (15/20/35) $504.26 (10/20/35) $512.46 (5/10/25) $521.48 |

5. **Cost for HMO.** Through December 31, 2015, the Hospital's HMO option (currently, United Healthcare), shall be provided at no cost to full-time employees and their dependents and to part-time employees with 3 consecutive years of service in a full-time or part-time position. On January 1, 2016, such cost shall be 50% of the Cost Per Pay Period for part-time employees with less than 3 consecutive years of service. Any increase in such costs through the life of this Agreement shall be capped at and not exceed 25% of the 2014 cost for coverage.

6. **Open Enrollment.** There will be an annual open enrollment period during which employees may elect to change coverage. Employees may change coverage in the course of the plan year only when precipitated by (and within thirty-one [31] days of) a "family status change" as defined in Section 125 of the Internal Revenue Service Code.

7. **Payment In-Lieu-of-Coverage.** Full-time employees who choose not to participate in the health insurance coverage and who provide the hospital with proof of individual coverage under another insurance plan will receive Fifteen Dollars ($15.00) in additional wages each pay period.

## B. Dental Insurance

1. **Dental Plans Offered.** The Hospitals will continue to offer the Delta Dental Premier Plan, the MetLife Preferred Dentist Program (PDP), and the Cigna Dental Maintenance Plan (DMO) (or an equivalent plan) to each regular full-time and regular part-time employee through the term of this agreement. No changes shall be made in the coverage under the MetLife Dental Preferred Dentist Program or the Delta Dental Premier plan, except by mutual agreement of the parties or as imposed by the Plan Provider.

2. **Costs.** The cost of such coverages will be as set forth below effective January 1, 2014.

| | Cigna DMO | Met Life PDP | Delta Premier |
|---|---|---|---|
| Full-time | Cost per Pay Period | Cost per Pay Period | Cost per Pay Period |
| Individual | $0 | $2.93 | $3.79 |
| Individual + 1 | $0 | $7.67 | $8.57 |
| Individual + 2 | $0 | $10.74 | $12.17 |
| Individual + 3 | $0 | $14.89 | $15.57 |

| | Cigna DMO | Met Life PDP | Delta Premier |
|---|---|---|---|
| Part-time | Cost per Pay Period | Cost per Pay Period | Cost per Pay Period |
| Individual | $5.49 | $7.39 | $9.66 |
| Individual + 1 | $11.24 | $15.67 | $25.06 |
| Individual + 2 | $16.00 | $21.96 | $35.38 |
| Individual + 3 | $19.13 | $28.80 | $39.29 |

3. **Cost for Cigna DMO Plan.** Through December 31, 2015, the Hospital's Cigna DMO Plan option (currently, Healthnet), shall be provided at no cost to full-time employees and their dependents and to part-time employees with 3 consecutive years of service in a full-time or part-time position. On January 1, 2016, such cost shall be 50% of the Cost Per Pay Period for part-time employees with less than 3 consecutive years of service. Any increase in such costs through the life of this Agreement shall be capped at and not exceed 25% of the 2014 cost for coverage.

4. **Payment in Lieu of Coverage.** Full-time employees choosing not to participate in Dental Insurance will receive Two Dollars ($2.00) additional wages each pay period.

**C.    Vision**

1. **VSP.** The Hospitals will continue to provide the existing Vision Service Plan (VSP) (or equivalent plan) through the term of this Agreement.

2. **Costs.** The costs of coverages under the Vision Service Plan will be as set forth below effective January 1, 2014.

| | Vision Service Plan |
|---|---|
| | Cost per Pay Period |
| Individual | $3.30 |
| Individual + 1 | $7.22 |
| Individual + 2 | $7.22 |
| Individual + 3 | $7.22 |

3. **Cost for Vision Care Plan.** Through December 31, 2015, the Hospital's VSP vision option shall be provided at no cost to full-time Employees and their dependents and to part-time Employees with 3 consecutive years of service in a full-time or part-time position. On January 1, 2016, such cost shall be 50% of the Cost Per Pay Period for part-time Employees with less than 3 consecutive years of service as set forth below. Any increase in such costs shall be capped at and not exceed 25% of the 2014 cost for coverage.

**Section 2    Long Term Disability Plan**

The Hospitals shall continue to make the HCA Long Term Disability Plan available for purchase through payroll deduction for eligible full-time employees, on the same basis as the Plan is offered to non-bargaining unit employees, according to the terms of the Plan.

**Section 3    Life Insurance**

The Hospitals shall continue to provide eligible regular full-time and regular part-time employees with life insurance coverage and Accidental Death and Dismemberment (AD&D) insurance coverage in an amount equal to the employee's basic annual earnings, rounded to the next highest $1,000.00 (not to exceed $15,000 for part-time employees).

**Section 4    CorePlus Benefits**

The Hospitals shall continue to offer participation in the CorePlus benefits to regular full-time and regular part-time employees at the time of hire on the same basis as participation is offered to non-bargaining unit employees. The parties understand that, given the national nature of these plans, the Hospitals have no duty to bargain with the Union over any aspect of the plans, including plan administration, changes in the plans, or elimination of the plans.

**Section 5    Health Care and Day Care Spending Accounts**

Regular full-time and regular part-time employees will be eligible to participate in the HCA Health Care Spending Account Program and the HCA Day Care Spending Account Program, on the same basis as non-bargaining unit employees. There shall be no obligation to bargain over changes in these Programs or over issues relating to administration of these Programs and the Programs and their elements shall not be subject to the grievance and arbitration procedures of this Agreement.

**Section 6    Pension Plan**

In lieu of participation in the HCA Savings & Retirement Program and the HCA Employee Stock Option Plan, the Employer agrees to contribute into the Stationary Engineers Local 39 Pension Trust Fund, at its respective office in San Francisco, California, or such other designated place of payment, the following amounts for all straight-time hours worked or paid for:

- Effective the first pay period beginning subsequent to 11/01/13 - $6.45/hour
- Effective the first pay period beginning subsequent to 11/01/14 - $6.70/hour
- Effective the first pay period beginning subsequent to 11/01/15 - $6.95/hour
- Effective the first pay period beginning subsequent to 11/01/16 - $7.20/hour
- Effective the first pay period beginning subsequent to 11/01/17 - $7.45/hour

The above contribution shall be made on or before the tenth (10th) day of each month, for pension benefits, programs and plans, as now specified, and as may be hereinafter specified by said Trustees. The Employer agrees to accept, assume and be bound by all of the obligations imposed on individual employers by that certain Trust Agreement referred to for convenience as the Stationary Engineers Local 39 Pension Trust Agreement (a copy of which has been delivered to the Employer and receipt of which is expressly acknowledged) and any amendments, modifications, changes or mergers with respect to said Trust Agreement made by the parties thereto.

The undersigned further agrees that he or it does irrevocably designate and appoint the employers mentioned in said Pension Trust as his or its attorneys-in-fact for the selection, removal, and substitution of Trustees as provided for in said Trust Agreement and as may be hereinafter provided by or pursuant to said Trust Agreements.

In the event that the individual Employer herein fails to pay the amounts of Trust Fund contributions due and owing for the period in which they are due and owing, the individual Employer shall pay in addition to the amounts due as contributions, such additional liquidated damages and/or attorneys' fees as are set forth in the Trust Agreement to which the individual Employer is bound.

### Section 7    Bereavement Leave

A leave with pay, not to exceed three (3) working days, shall be granted in the event of death to a member of the immediate family (defined as parents, step-parents, spouse, children, step-children, grandparents, grandchildren, brothers, sisters, parents-in-law, sons-in-law or daughters-in-law). Up to three (3) additional days without pay may be granted by the Employer for good cause.

### Section 8    Jury Duty

An Engineer who reports for jury duty will receive his/her normal straight-time earnings. Proof of jury service shall be furnished to the Employer by the Engineer.
As a condition of receiving this pay, the Engineer must produce, within three (3) calendar days a receipt of the same, a voucher from the Jury Commissioner that the Engineer has served. In the event the Engineer is released with four (4) or more hours of his/her shift remaining, he/she shall be obligated to contact the Hospital and advise it of his/her availability for work. Subject to the above, employees called to jury service shall not be scheduled to work their normal shift on that day(s). The maximum number of days for which an Engineer may be reimbursed for jury service in any one (1) calendar year is thirty (30).

### Section 9    Retiree Health Benefits

    **A. Retirement on or after 1/1/04.** Employees who retire on or after ratification of this agreement, will be eligible for retiree health insurance coverage through the term of this agreement, on the following basis. Premiums may be adjusted from time to time on the same basis that C.O.B.R.A. benefits are adjusted for employees.

    **B. Eligibility.** Employees who are not Medicare eligible, who retire at or after age 55 with ten (10) years of continuous service in a regular full-time or regular part-time position immediately preceding retirement. Eligibility for this benefit ends when the employee becomes eligible for Medicare.

    **C. Benefit.** Continue individual HMO coverage under Retiree Health HMO with benefits equivalent to the HMO for active employees, with the following adjustments:

1. In-Patient Hospital Co-Pay = $500/admission
2. Out-Patient Hospital Co-Pay = $250

3. Office Visit Co-Pay = $15 (Primary Care Physician)/$25 (Specialty Care Physician)
4. Pharmacy Co-Pay = Retail (30 day supply) - $10 Generic/$20 Brand Name; Mail Order (90 day supply) - $25 Generic/$55 Brand Name.

**D. Cost for Coverage.**

| Years of unbroken service in Full-time or Part-time position immediately preceding retirement | Percentage of Total Cost (based on premiums or premium equivalents) of Coverage Paid by Employee |
| --- | --- |
| 10 | 100% |
| 15 | 75% |
| 20 | 50% |
| 25 | 25% |

## ARTICLE 8

**Section 1    Management Rights**

Except as expressly and specifically limited and restricted by a written provision of this Agreement, the Hospital has and shall retain the full right of management and the direction of the facility and its operations. Thus, the Hospital reserves and retains, solely and exclusively, all of the rights, privileges and prerogatives which it would have in the absence of this Agreement, regardless of the frequency or infrequency with which such rights have been exercised in the past, except to the extent that such rights, privileges and prerogatives are specifically and clearly abridged by express provisions of this Agreement. Such rights of management include, among other things, but are not limited to: The right of the Hospital in its sole discretion, to plan, direct, control, increase, decrease, or diminish staffing in whole or in part; to change methods, to introduce new methods, techniques, and/or machines, to change or discontinue any procedure used; to hire, transfer, discharge for just cause as defined elsewhere in this Agreement, or to relieve engineers for lack of work, to add to or reduce the number of shifts, the work schedule and/or the number of overtime hours to be worked; and to determine the number of employees that it shall employ at any one time and the qualifications necessary for any of the jobs it shall have; to subcontract work for economic reasons, in its discretion to rescind, or change reasonable Hospital work rules and regulations, or policies, so long as such rules are not inconsistent with an express provision of this Agreement. It is further agreed that there is no duty to bargain over the exercise of the rights specified herein and that such rights may not be impaired by an arbitrator or arbitration even though the parties may agree to arbitrate the issue involved as provided hereinafter.

## ARTICLE 9

**Section 1     Promotion of Amicable Relationships**

The Union pledges itself to promote the mutual interests of the Employer and Employee and to continue the amicable relationship between Employer and Employee, to observe all rules and regulations and discipline such of their members as may be guilty of unbecoming conduct; to uphold the rights of the Employer through the procedural channels of the Union and to use the organization's good offices on behalf of Employer and Employee in every honorable way.

## ARTICLE 10

**Section 1     Shop Stewards**

For the purpose of representation of its members, the Union shall be entitled to Shop Stewards who shall restrict their activities to receiving questions and complaints from Members and report to the Business Representative. Stewards will perform their duties on behalf of the Union on their non-working time, unless prior management consent is obtained or unless the steward's participation is requested by management.

## ARTICLE 11

**Section 1     Probationary Period**

The probationary period for newly-hired Engineers shall be three (3) months of employment. An Engineer terminated during this period shall have no recourse to either grievance and/or arbitration procedure. The Hospital may extend the probationary period up to an additional thirty (30) calendar days with notification to the Union. Upon completion of the probationary period, the Engineer's seniority shall be computed as of the date of most recent hire.

## ARTICLE 12

**Section 1     Grievance Procedure**

The purpose of the Article is to provide the sole method for the settlement of any dispute between the parties over the interpretation, application or claimed violation of any specific provisions of this Agreement.

  **Step 1 -** An employee with a grievance shall discuss the matter with the employee's Immediate Supervisor within fourteen (14) days (all references to days in this Article refer to calendar days) of the day in which it arises or becomes known to the employee. The Supervisor shall reply within ten (10) days after presentation. However, if the grievance is not resolved in this manner, the grievance shall be

handled in accordance with the procedure set forth below. If the Supervisor does not respond within the time limits, the grievant may appeal to the next level.

**Step 2 -** If the grievance is not resolved within ten (10) days after the presentation of the grievance at Step 1, the grievance shall be presented in writing to the Director of Human Resources, or his/her designee for the Hospital within twenty (20) days from the date it was presented at Step 1.

**Step 3 -** If the grievance is not resolved within ten (10) days of presentation at Step 2, either party may, in writing, request arbitration within twenty (20) days from the date it was presented at Step 2 and the parties shall attempt to mutually agree to an arbitrator. In the event the parties are unable to agree on an arbitrator within five (5) days, either may request, with a copy to the Director of Human Resources, that the Federal Mediation and Conciliation Service submit a panel of seven arbitrators having hospital arbitration experience. Either party may reject one panel in its entirety. Each party shall alternately strike one (1) name until an arbitrator is selected. To determine which party strikes the first name, the parties shall flip a coin. The arbitrator shall promptly conduct a hearing on the grievance.

The arbitrator shall have no power to:

(1) add to or subtract from, or modify any of the terms of this Agreement;
(2) to establish or change any wage scale or any other compensation formula;
(3) hear or decide any dispute as to the numbers or classifications of employees needed, at any given time;
(4) arbitrate any matter after this Agreement has expired other than matters which arose prior to the time of expiration of the Agreement.

All grievances must be presented at the proper steps in accordance with the time limitations herein and unless such grievances are so presented, the right to file such grievance shall be waived. Any grievance not appealed to the next succeeding step within the time limits specified will be considered withdrawn and not eligible for further appeal.

Each party shall bear its own costs and expenses in connection with all steps of this procedure except that the fees of the arbitrator shall be paid one-half (1/2) by the aggrieved party and one-half (1/2) by the other party.

**Section 2    Discharge Grievance**

In the event the grievance concerns discharge of an employee, the grievance must be presented to the Employer within five (5) working days following the discharge.

**Section 3    Time Limits**

The time limits contained herein may be waived by mutual written agreement by the parties.

## ARTICLE 13

**Section 1    Strikes and Lockouts**

There shall be no strikes (including organizational or sympathy strikes) or lockouts during the term of this Agreement. Violations of this Article shall not be subject to the grievance and arbitration provisions of this Agreement.

## ARTICLE 14

**Section 1    Shift Assignment Changes**

All regularly assigned shift assignment changes shall be posted seven (7) days in advance of said change. In the event said shift assignment changes are not posted seven (7) days in advance, the first shift worked shall then be paid at the rate of one and one-half (1 1/2) times the straight time hourly rate of pay. There shall be no premium pay for the employee returning to his/her previously assigned shift.

All Engineers assigned to work eight (8) hour shifts shall be given fifteen (15) hours off between scheduled shifts, except where a change becomes necessary due to the failure of an Engineer employee (or Engineer employees) to report to work for any reason, and except for employees who are assigned to perform weekly tests on the Hospital's power generating equipment. This time off requirement may be reduced to eleven (11) hours in the event that an Engineer works an alternative work schedule of ten (10) or twelve (12) hours.

Subject to the exceptions specified in the preceding paragraph, all hours worked within those specified rest periods shall be paid at the rate of time and one-half (1 1/2).

## ARTICLE 15

**Section 1    Employer's Contribution to Stationary Engineers Apprentice and Journeyperson Educational Fund**

The Employer agrees to pay into the Stationary Engineers' Apprentice and Journeymen's Educational Fund the sum of two hundred Dollars ($200.00) per year per full-time employee covered under the terms of this Agreement on the payroll of the employing Hospital for each year during the month of January.

**Section 2   Certification/Educational Achievement Bonus**

Commencing with the effective date of this Agreement, employees covered by this Agreement will be eligible for a certification/educational bonus of One Hundred Twenty Five Dollars ($125) upon successful completion of an Employer approved journeyman level class sponsored by the International Union of Operating Engineers, Stationary Local 39, AFL-CIO and/or San Jose City College.

> Maximum three (3) classes or Three Hundred Seventy Five Dollars ($375) per calendar year,

> OR a bonus of Two Hundred Fifty Dollars ($250) per calendar year upon attainment of certification in Biomedical Equipment, Clinical Laboratory Equipment, or Radiological Equipment by the Association for Advancement of Medical Instrumentation. Certificated Biomedical Equipment Technicians may apply for a bonus of One Hundred Twenty Five Dollars ($125) upon successful renewal of their certification.

## ARTICLE 16

**Section 1   Tools Of The Trade**

Hand tools belonging to the employee, considered necessary to perform his/her duties as an Engineer, that have been broken or damaged on the job will be repaired or replaced with tools of equal quality by the Employer.

## ARTICLE 17

**Section 1   No Pyramiding**

Notwithstanding any provisions herein set forth, there shall be no pyramiding of overtime on overtime, nor shall overtime be required to be paid in addition to specific premium pay except as to differentials and holidays.

## ARTICLE 18

**Section 1   Waiver**

It is agreed that during the negotiations leading to the execution of this Agreement, the parties have had full opportunity to submit all items appropriate to collective bargaining, and that the parties expressly waive the right to submit any additional item for negotiations during the term of this Agreement, whether or not such item is referred to or covered in this Agreement, or whether the item was or was not discussed in the course of the negotiations leading to the execution of this Agreement; and that this Agreement incorporates their full and complete understanding, superseding and invalidating all previous commitments of any kind, oral or written, past practice, existing conditions, and all prior employee and Union rights and

benefits not specifically incorporated herein. The specific provisions of this Agreement are the sole source of any right which the Union or any member of the bargaining unit may charge the Employer has violated in raising a grievance.

## ARTICLE 19

**Section 1     Term of Agreement**

This Agreement shall be effective November 1, 2013, and shall continue in effect without change, addition or amendment through October 31, 2018. This Agreement shall automatically be renewed and extended from year to year thereafter unless either party serves notice in writing on the other party at least ninety (90) days prior to the expiration date of this Agreement, or any subsequent anniversary date of same if this Agreement is automatically renewed or extended in accordance with this Article, of its intention to terminate or amend this Agreement.

Dated this 1st day of November, 2013, at San Jose, California.

**Good Samaritan Hospital & Regional Medical Center of San Jose**

_____
Samuel I. Romano, J.D.
Director of Employee & Labor Relations –
Good Samaritan Hospital

_____
Michael T. Johnson, CEO – Regional
Medical Center of San Jose

_____9/23/2014_____
Date

**International Union of Operating Engineers, Stationary Engineers, Local 39**

_____
Jerry Kalmar, Business Manager

_____
Tony DeMarco, President

_____
Jeff Allouny, Business Representative

_____9. 30 -2014_____
Date

# EXHIBIT F

**From:** Fontaine Michelle
**Sent:** Thursday, September 15, 2016 8:12 AM
**To:** Skipper Michelle
**Cc:** Romano Samuel
**Subject:** STATIONARY ENGINEERS LOCAL 39 TRUST FUND EMPLOYER #1432-0001 LINDQUIST LLP
**Importance:** High

Good Afternoon

This is something that Wendy Ahrens used to handle.  I'm not sure exactly how to handle this but wanted to let you know that I did reviewed the attached  documents and I do not agree with two of their findings on these documents.    Please see my below.

**Burnley, Billy -**              This finding is correct.  This is an error on my part I did not report 26.25 hours.

**Ho, Hung -**              This finding is correct.  This is an error on my part I over reported 8 hours.

**Keith, Kevin -**              This finding is incorrect.  Kevin Keith's status changed to per diem effective 12/26/10.  Per Diem's are not covered under the Local 39 contract.

**Keith, Steve-**               This finding is partially correct.  This is an error on my part I did not report from 2/1/12 thru 3/17/12= 96.00 hours.  Employee then changed his status to per diem effective 3/18/12.  Per Diem's are not covered under the Local 39 contract.

**Noonan, James-**              This finding is correct.  This is an error on my part I did not report 8 hours.

Thank You

## Michelle Fontaine
HR Coordinator
Regional Medical Center
225 North Jackson Ave
San Jose, CA 95116
Phone: (408) 272-6496 / Fax: (408) 272-6489

Please consider the environment before printing this email.  This email and any files transmitted with it may contain **PRIVILEGED** or **CONFIDENTIAL** information and may be read or used only by the intended recipient. If you are not the intended recipient of the email or any of its attachments, please be advised that you have received this email in error and that any use, dissemination, distribution,

forwarding, printing, or coping of this email or any attached files is strictly prohibited. If you have received this email in error, please immediately purge it and all attachments and notify the sender by reply email or contact the sender at the number listed.

| From: | Romano Samuel |
| --- | --- |
| Sent: | Tuesday, September 20, 2016 1:51 PM |
| To: | mfarley@lindquistcpa.com |
| Cc: | Skipper Michelle; Fontaine Michelle |
| Subject: | Stationary Engineers Local 39 Trust Fund testing results with erroneous findings |

| Importance: | High |
| --- | --- |

| Tracking: | **Recipient** |
| --- | --- |
| | mfarley@lindquistcpa.com |
| | Skipper Michelle |
| | Fontaine Michelle |

Ms. Farley,

Thank you for taking my call today.

As discussed, I am writing on behalf of Regional Medical Center of San Jose to formally notify you that we are not in agreement with the findings in your 9/12/16 letter to Wendy Ahrens.

First of all, your findings are erroneously based on your assertion that the hours reported for the individuals listed in your report are based on subcontracting.

None of the employees that you list were in fact subcontractors; all were Hospital employees.

Your findings on Kevin Keith are wrong. Per diem employees are specifically excluded from the bargaining unit in the Local 39 CBA. Kevin Keith was a per diem employee during the period of time you list in your report and, therefore, his hours during that period of employment should not have been included, consequently the $5,385.32 you cite as an underpayment is incorrect. This finding should be reversed in its entirety.

Similarly, your findings on Steve Keith are partially incorrect. Again, per diem employees are specifically excluded from the bargaining unit in the Local 39 CBA. Steve Keith was a per diem effective 3/18/12, so his hours past that date should not have been included, consequently the amount you cite as an underpayment for this individual is incorrect. This finding should be corrected accordingly.

Article 1 of our CBA with Local 39 *clearly* specifically excludes all per diem employees from the bargaining unit. When we spoke, you erroneously stated that the language in the CBA only excluded per diems for a period of 90 days. That is inaccurate-the language you referenced regarding 90 days *clearly* refers to temporary employees and not per diems (or for that matter casual employees).

When we spoke you indicated that you needed to forward this to someone else and that individual would get back to me-please do so.

We look forward to getting this matter resolved and the incorrect findings adjusted accordingly.

Regards,

**Samuel I Romano, JD**

**Corporate Director of Employee & Labor Relations**

**HCA/Good Samaritan Hospital**

**2425 Samaritan Drive**

**San Jose, CA 95124**

**Direct: (408) 559-2426 Fax: (408) 559-2469**

**email: samuel.romano@hcahealthcare.com**

This email and any files transmitted with it may contain PRIVILEGED or CONFIDENTIAL information and may be read or used only by the intended recipient. If you are not the intended recipient of this email or any of its attachments, please be advised that you have received this email in error and that any use, dissemination, distribution, forwarding, printing or copying of this email or any attached files is strictly prohibited. If you have received this email in error, please immediately purge it and all attachments and notify the sender by reply email or contact the sender at the number listed above.



November 7, 2016

Stationary Engineer Local 39
P O Box 4286
Hayward, CA 94540-4286

RE: Stationary Engineers Local 39 Trust Fund testing results with erroneous Findings

On September 12, 2016, a letter was sent to Regional Medical Center of San Jose from Lindquist LLP that included some inaccurate Findings resulting from some errors in their interpretation of the collective bargaining agreement between the Hospital and IUOE Local 39.  On September 20, 2016, the Hospital informed Lindquist of the errors and the fact that some of the Findings were inaccurate. In our communication we asked Lindquist to forward our response to the Fund but we are uncertain if they have or have not. Consequently, and in the interests of resolving this matter, we are including herewith payment in the amount of $807.35 for the Findings that we agree with from the Audit as outlined in the attached spreadsheet.

We were unable to determine the interest rate calculation methodology applicable to the Findings that we agreed with so we ask that you please let us know what that amount would be and we will follow with a check in that amount. We look forward to receipt that information so that we can close this matter out.

Regards,

Michelle Skipper
Vice President, Human Resources
Regional Medical Center

CC:
Samuel I Romano, JD, Corporate Director of Employee and Labor Relations
Melissa Farley, Lindquist LLP

225 North Jackson Avenue
San Jose, CA 95116-1691
408.259.5000

**Franceschi John**

| | |
|---|---|
| **From:** | Franceschi John |
| **Sent:** | Thursday, February 22, 2018 5:36 PM |
| **To:** | 'LBJones@unioncounsel.net' |
| **Cc:** | Romano Samuel |
| **Subject:** | Stationary Engineers Local 39 Pension Trust Fund |

Dear Ms. Jones: I am in receipt of your correspondence dated February 20, 2018, addressed to my colleague, Samuel Romano. Sam is my Counterpart at Good Samaritan Hospital and has been assisting Regional Medical Center with their Labor Relations matters while my position was vacant. Please direct all future correspondence regarding Regional Medical Center to me.

I am stunned at your comment that "Regional Medical Center's position is not tenable in light of the unambiguous terms of the collective bargaining agreement." You are correct that the CBA is clear. You are not correct in your interpretation regarding Per Diem employees. Frankly, I am shocked that you work for a Union law firm and that I have to explain this to you.

The first paragraph of the Recognition section covers "all full-time and part-time employees". There is no dispute that full and part time employees are covered. The second paragraph deals with those employees who are specifically excluded, and Per Diem employees are specifically excluded along with causal employees. After the comma, it states "including temporary help, i.e., employees hired for a period of time not to exceed 90 calendar days." This does not mean that only per diem employees hired for less than 90 days are excluded. This means that ALL per diem, casual, AND temporary employees hired for less than 90 days are specifically excluded.

Unfortunately, this CBA does not define Per Diems. The obvious reason is because they are specifically excluded. In case you are not familiar with per diems, they do not hold regular shifts like the full time and part time employees that are covered by this CBA. Per Diems are only required to provide minimum availability over a 4 week schedule to maintain their per diem eligibility. The hospital has the exclusive right and discretion on how or when to schedule them. The hospital is not required to schedule per diems at all, and per diems often seek to work in excess of their minimum availability. If Per Diems were included in this CBA, you would see paragraphs describing their eligibility and minimum availability requirements.

When Per Diems are covered by a CBA, they are specifically mentioned in the Recognition section as being covered or included in the bargaining unit. For example, we have a CBA with the California Nurses Association that covers in the Recognition section all "regularly scheduled full-time, part-time and per diem Registered Nurses." Similarly, our CBA with SEIU-UHW covers "all full-time, part-time and per diem employees" in the listed classifications.

When they are listed in the specifically excluded section, as in this CBA, they are not part of the union. For example, we also have a CBA with the Engineers and Scientists of California, Local 20, IFPTE, which has the same exclusion language as in this CBA: "Specifically excluded however, are all per diem casuals, temporary help (i.e., employees hired for a period of time not to exceed 90 calendar days) and supervisory positions." That union clearly understands that per diem employees are not members of the union.

Per Diems are not temporary employees. This is an important distinction. Per Diems are also not regular full-time or part-time employees, who are sometimes referred to as "status", in reference to their FTE, or "core staff". In some unions, per diem employees are covered, and as a result, are eligible for benefits along with regular full and part time employees. You will note, if you look at Article 7, Health Insurance/Dental Plans, that only Full-Time and Part-Time employees are listed in the cost schedules for the various health and dental plans. This should be further evidence that Per Diems are not covered by this CBA and are specifically excluded.

I hope you understand because I can't make this any clearer.

Sincerely,

**John E. Franceschi**
Director of Labor and Employee Relations
HCA – Regional Medical Center
225 North Jackson Avenue, San Jose, CA 95116
Direct: (408) 272-6495
John.Franceschi@HCAHealthcare.com

**Franceschi John**

| | |
|---|---|
| **From:** | Franceschi John |
| **Sent:** | Thursday, February 21, 2019 4:50 PM |
| **To:** | 'Joanna Y. Son' |
| **Cc:** | Linda Baldwin Jones; Ryan Kadevari |
| **Subject:** | RE: Stationary Engineers Local 39 Pension Trust Fund/Regional Medical Center |
| **Attachments:** | Regional Medical Centers.pdf |

Ms. Son:  Thank you for your correspondence.  During collective bargaining with Regional Medical Center and Good Samaritan Hospital on October 29, 2018, Local 39 Business Representative Chris Kalmar admitted that per diem engineers are not in the union, and not covered by the CBA.   The Union sought to eliminate the use of per diems altogether because they are not in the union.  This is what I have been trying to explain to you all along.  The only flawed analysis is on your part.  I suggest you speak with your clients and stop bothering us.


John E. Franceschi
Director of Labor and Employee Relations
HCA – Regional Medical Center
225 North Jackson Avenue, San Jose, CA 95116
Direct: (408) 272-6495
John.Franceschi@HCAHealthcare.com


**From:** Joanna Y. Son <JSon@unioncounsel.net>
**Sent:** Thursday, February 21, 2019 4:08 PM
**To:** Franceschi John <John.Franceschi@HCAHealthcare.com>
**Cc:** Linda Baldwin Jones <LBJones@unioncounsel.net>; Ryan Kadevari <RKadevari@unioncounsel.net>
**Subject:** {EXTERNAL} Stationary Engineers Local 39 Pension Trust Fund/Regional Medical Center

Per Ms. Jones, attached is a letter regarding the above referenced matter.

Joanna Son,
Secretary to Linda Baldwin Jones
Weinberg, Roger & Rosenfeld
1001 Marina Village Parkway, Suite 200
Alameda, CA  94501
(510) 337-1001, Ext. 140

# EXHIBIT G

**Henry Warnock**

| | |
|---|---|
| **From:** | Chris Kalmar <ckalmar@local39.org> |
| **Sent:** | Friday, October 19, 2018 1:58 PM |
| **To:** | Henry Warnock |
| **Cc:** | Shane Mortensen |
| **Subject:** | Local 39 Proposals |
| **Attachments:** | GoodSam RegionalMC Proposals2018Tracked.pdf; ATT00001.htm |
| | |
| **Follow Up Flag:** | Flag for follow up |
| **Flag Status:** | Flagged |

Henry,

Attached are the Local 39 proposals, as you will see the strikeouts are in red and any added language is in blue. You can reach me via email or at my office at 415-861-1135 if you have any questions or concerns.

**IUOE, Stationary Engineers Local 39**
**and**
**Good Samaritan & Regional Medical Center**

**Union Proposal #_____**

## ARTICLE 1

**Section 1     Recognition**

This Agreement covers all full-time and part-time employees employed by the Employer in the classifications listed in Article III, excluding all other employees, guards and supervisors, under the National Labor Relations Act. The Employer recognizes the Union as the sole collective bargaining agent for such employees.

~~Specifically excluded are all per diem and casual employees, including temporary help, i.e., employees hired for a period of time not to exceed ninety (90) calendar days. Further,~~ ~~t~~The scope of recognition granted in this Article shall have no application in any other corporation or facility the Employer has an interest in or opens, even if said corporation or new facility employs Engineers.

It is understood and recognized that Good Samaritan Hospital includes the Mission Oaks facility.

**TENTATIVE AGREEMENT**

Employer                                             Union

_____     _____

_____     _____
Date                                                   Date

The Union reserves the right to alter, amend, modify, add to or subtract from the foregoing proposals as may be required during the course of negotiations.

2

# EXHIBIT H

**2018 CONTRACT NEGOTIATIONS**

**Good Samaritan Hospital & Regional Medical Center of San Jose and
The International Union of Operating Engineers, Stationary Engineers, Local 39 AFL-CIO**

Hospital proposal October 29, 2018 (Session 4)

(The Employers reserve the right to add to, withdraw, delete, or otherwise modify
these proposals throughout the collective bargaining process.)

1
2
3    1. Article 1 -- The Hospitals propose current contract language.

4    2. Article 2 – The Hospitals propose current contract language.

5    3. Article 3 – See Hospitals' proposal of October 29, 2018, Session 4.

6    4. Article 4 – The Hospitals propose current contract language.

7    5. Article 6 – The Hospitals propose current contract language.

8    6. Article 7 (New – Holiday) – The Hospitals reject the Union's proposal.

9
10
11

# EXHIBIT I

**IUOE, Stationary Engineers Local 39**
**and**
**Good Samaritan & Regional Medical Center**

4 pm

Union Proposal #_____

## ARTICLE 1

**Section 1    Recognition**

This Agreement covers all full-time and part-time employees employed by the Employer in the classifications listed in Article III, excluding all other employees, guards and supervisors, under the National Labor Relations Act. The Employer recognizes the Union as the sole collective bargaining agent for such employees.

~~Specifically excluded are all per diem and casual employees, including temporary help, i.e., employees hired for a period of time not to exceed ninety (90) calendar days. Further, t~~Specifically excluded are all per diem employees.  The scope of recognition granted in this Article shall have no application in any other corporation or facility the Employer has an interest in or opens, even if said corporation or new facility employs Engineers.

It is understood and recognized that Good Samaritan Hospital includes the Mission Oaks facility.

**TENTATIVE AGREEMENT**

Employer _____    Union _____

_____    _____
Date    Date

The Union reserves the right to alter, amend, modify, add to or subtract from the foregoing proposals as may be required during the course of negotiations.

3

2:05 pm

## 2018 CONTRACT NEGOTIATIONS

**Good Samaritan Hospital & Regional Medical Center of San Jose and**
**The International Union of Operating Engineers, Stationary Engineers, Local 39 AFL–CIO**

Hospital proposal October 30, 2018 (Session 2)

(The Employers reserve the right to add to, withdraw, delete, or otherwise modify
these proposals throughout the collective bargaining process.)

1
2
3    1. Article 1 – The Hospitals propose current contract language.

4    2. Article 2 – The Hospitals propose current contract language.

5    3. Article 3 – See Hospitals' proposal of October 30, 2018, Session 2.

6    4. Article 4 – The Hospitals propose current contract language.

7    5. Article 6 – The Hospitals propose current contract language.

8    6. Article 7 (New – Holiday) – The Hospitals reject the Union's proposal.

9    7. Article 7 – See Hospitals' proposal of October 30, 2018, Session 2.

10    8. Article 15 – See Hospitals' proposal of October 30, 2018, Session 2.

11
12
13

# EXHIBIT J

Collective Bargaining Agreement

By and Between

Good Samaritan Hospital &
Regional Medical Center of San Jose

and the

International Union of Operating Engineers,
Stationary Engineers, Local 39 AFL-CIO



December 29, 2020 – September 30, 2023

## Table of Contents

**ARTICLE 1** ........................................................................................................................ 1

   SECTION 1   RECOGNITION ................................................................................................ 1
   SECTION 2   UNION MEMBERSHIP ..................................................................................... 1
   SECTION 3   PAYROLL DEDUCTION OF UNION DUES (PRD) ............................................. 2
   SECTION 4   OPERATION .................................................................................................. 2

**ARTICLE 2** ........................................................................................................................ 2

   SECTION 1   STATIONARY ENGINEER ................................................................................ 2
   SECTION 2   UTILITY ENGINEER ....................................................................................... 2
   SECTION 3   BIOMEDICAL EQUIPMENT TECHNICIAN ......................................................... 3
   SECTION 4   LEAD CLASSIFICATIONS ................................................................................ 3
   SECTION 5   APPRENTICES ............................................................................................... 3

**ARTICLE 3** ........................................................................................................................ 4

   SECTION 1   WAGE RATES ............................................................................................... 4
   SECTION 2   APPRENTICE ENGINEER RATE OF PAY .......................................................... 4
   SECTION 3   SHIFT DIFFERENTIALS ................................................................................... 4

**ARTICLE 4** ........................................................................................................................ 5

   SECTION 2   CALL BACK PAY ........................................................................................... 6
   SECTION 3   STAND-BY PAY ............................................................................................ 6
   SECTION 4   TIME RECORDS ............................................................................................ 7

**ARTICLE 5** ........................................................................................................................ 7

   SECTION 1   VISITS BY UNION REPRESENTATIVE .............................................................. 7
   SECTION 2   UNIFORMS ................................................................................................... 7
   SECTION 3   SENIORITY ................................................................................................... 7
   SECTION 4   BULLETIN BOARDS ....................................................................................... 9

**ARTICLE 6** ........................................................................................................................ 9

   SECTION 1   PAID TIME OFF (PTO) .................................................................................. 9
   SECTION 2   ACCRUAL OF PTO ..................................................................................... 10
   SECTION 3   USE OF PTO .............................................................................................. 10
   SECTION 4   REDEMPTION OF PTO ................................................................................. 11
   SECTION 5   EXTENDED SICK LEAVE ACCOUNT .............................................................. 12
   SECTION 6   INTEGRATION OF BENEFITS ........................................................................ 12

**ARTICLE 7** ...................................................................................................................... 12

   SECTION 1   HOLIDAYS .................................................................................................. 12
   SECTION 2   HOLIDAY PAY ............................................................................................. 12

**ARTICLE 8** ...................................................................................................................... 13

   SECTION 1   HEALTH INSURANCE/DENTAL PLAN ............................................................ 13
   SECTION 2   LONG TERM DISABILITY PLAN .................................................................... 14
   SECTION 3   LIFE INSURANCE ........................................................................................ 14
   SECTION 4   COREPLUS BENEFITS .................................................................................. 14
   SECTION 5   HEALTH CARE AND DAY CARE SPENDING ACCOUNTS .................................. 14
   SECTION 6   PENSION PLAN .......................................................................................... 14
   SECTION 7   BEREAVEMENT LEAVE ................................................................................ 15
   SECTION 8   JURY DUTY ................................................................................................ 15
   SECTION 9   RETIREE HEALTH BENEFITS ........................................................................ 15

Good Samaritan Hospital & Regional Medical Center 2020-2023

**ARTICLE 9** ........................................................................................................................ **16**
   SECTION 1  MANAGEMENT RIGHTS .............................................................................................. 16

**ARTICLE 10** ...................................................................................................................... **16**
   SECTION 1  PROMOTION OF AMICABLE RELATIONSHIPS ...................................................................... 16

**ARTICLE 11** ...................................................................................................................... **17**
   SECTION 1  SHOP STEWARDS ................................................................................................... 17

**ARTICLE 12** ...................................................................................................................... **17**
   SECTION 1  PROBATIONARY PERIOD ............................................................................................ 17

**ARTICLE 13** ...................................................................................................................... **17**
   SECTION 1  GRIEVANCE PROCEDURE .......................................................................................... 17
   SECTION 2  DISCHARGE GRIEVANCE ........................................................................................... 18
   SECTION 3  TIME LIMITS ......................................................................................................... 18

**ARTICLE 14** ...................................................................................................................... **18**
   SECTION 1  STRIKES AND LOCKOUTS .......................................................................................... 18

**ARTICLE 15** ...................................................................................................................... **19**
   SECTION 1  SHIFT ASSIGNMENT CHANGES .................................................................................... 19

   ................................................................................................................................. **19**

**ARTICLE 16** ...................................................................................................................... **19**
   SECTION 1  CERTIFICATION/EDUCATIONAL ACHIEVEMENT BONUS ....................................................... 19

**ARTICLE 17** ...................................................................................................................... **20**
   SECTION 1  TOOLS OF THE TRADE ............................................................................................ 20

**ARTICLE 18** ...................................................................................................................... **20**
   SECTION 1  NO PYRAMIDING .................................................................................................... 20

**ARTICLE 19** ...................................................................................................................... **20**
   SECTION 1  WAIVER ............................................................................................................... 20

**ARTICLE 20** ...................................................................................................................... **20**
   SECTION 1  TERM OF AGREEMENT ............................................................................................. 20

# AGREEMENT

This Agreement, entered into by and between **"The Good Samaritan Hospital, L.P. D/B/A Good Samaritan Hospital and San Jose Healthcare System, L.P. D/B/A Regional Medical Center of San Jose"** hereinafter collectively referred to as the "Employer" or "Hospital", and the **International Union Of Operating Engineers, Stationary Local 39, AFL-CIO**, hereinafter referred to as the "Union".

## ARTICLE 1

### Section 1    Recognition

This Agreement covers all full-time and part-time employees employed by the Employer in the classifications listed in Article III, excluding all other employees, guards and supervisors, under the National Labor Relations Act. The Employer recognizes the Union as the sole collective bargaining agent for such employees.

Specifically excluded are all per diem and casual employees, including temporary help, i.e., employees hired for a period of time not to exceed ninety (90) calendar days. Further, the scope of recognition granted in this Article shall have no application in any other corporation or facility the Employer has an interest in or opens, even if said corporation or new facility employs Engineers.

It is understood and recognized that Good Samaritan Hospital includes the Mission Oaks facility.

### Section 2    Union Membership

Membership in good standing in the Union shall be a condition of employment. For the purpose of this Section, tender of the initiation fee on or immediately following the thirtieth (30th) day of employment, and tender of periodic dues uniformly required as a condition of retaining membership, shall constitute good standing in the Union. When the Union advises an Engineer in writing that he or she is delinquent in the tender of the initiation fee or Union dues as above required, a copy of the notice shall be sent to the Human Resources Department of the Hospital in order that the Hospital is aware of the delinquency. When new or additional employees are needed in the Engineers' classification listed, the Employer shall, at the same time he notifies any other labor source, notify the Union of the number and classification of employees needed. The Hospital shall be the sole judge of the fitness of any applicant. The Hospital shall notify the Union of the employment of any Engineer within ten (10) days, giving his name, address and date of hire.

**Section 3    Payroll Deduction of Union Dues (PRD)**

During the life of this Agreement, the Employer will deduct Union Dues, Initiation Fees and Assessments from the wages of each Member who voluntarily agrees to such deductions and who submits a Check-Off Authorization Form. Said written authorization may be revoked by the Member in accordance with the terms of the Check-Off Authorization. Monthly deductions will be made by the Employer and remitted to I.U.O.E., Stationary Engineers, Local No. 39, at 1620 North Market Blvd., Sacramento, California 95834.

The Union shall indemnify the Employer and hold it harmless against any and all suits, claims, demands and liabilities that shall arise out of, or by reason of, any action that shall be taken by the Member in connection with said deduction of dues.

**Section 4    Operation**

When a boiler is in operation or a central air conditioning unit is in operation, a Stationary Engineer shall be on watch in the plant, or facility, if required by law.

## ARTICLE 2

**Section 1    Stationary Engineer**

Responsibilities of the Stationary Engineer include, but are not limited to, the following: the proper operation of all the machinery and/or equipment under his/her area of responsibility; making necessary repairs to machinery and/or equipment, as well as necessary adjustments to maintain the proper operation of the equipment; and maintaining good Engineering practices.

The Stationary Engineer shall be responsible for the cleanup of all areas such as maintenance shop, boiler room, mechanical room, and any and all areas where equipment and machinery exists that he/she normally maintains. He/she will also clean any debris left, either as a result of his/her work or as a result of malfunctions of equipment and/or piping and plumbing whenever and wherever he/she is performing duties in any section of the Hospital. He/she will also be required to clean and replace all tools and gear used by him/her in the performance of his/her duties. He/she will not, however, be required to perform janitorial duties normally coming under the jurisdiction of the housekeeping department.

**Section 2    Utility Engineer**

The Utility Engineer may be required to perform nontechnical and nonskilled labor including, but not limited to, such duties as minor household repairs which may include the use of hand held battery powered tools, gardening, sign making, light bulb replacement, chasing parts, materials and tools for journeymen, unplugging toilets, changing room filters, changing washers in faucets, and assisting

journeymen when they need additional labor with tasks such as lifting a motor into place, holding one end of a piece of pipe, job site cleanup, shop cleanup, boiler room cleanup, sanding room cleanup, etc. The pay rate for the Utility Engineer classification shall be 55% of the Stationary Engineer's hourly rate of pay.

### Section 3  Biomedical Equipment Technician

The Technician shall spend the majority of his/her time performing safety inspections of and repairing, replacing, installing, adjusting, troubleshooting, and maintaining biomedical and electronic equipment and other equipment under their jurisdiction.

### Section 4  Lead Classifications

The Employer may establish "Lead" positions based upon the Employer's needs provided that the classification will receive at least ten percent (10%) more than the classification that a Stationary Engineer receives for his/her basic straight time hourly rate.

The Lead Engineer or the Lead Biomedical Technician shall perform the duties normally performed by the Stationary Engineer or the Biomedical Equipment Technician and plan, schedule, assign, inspect and coordinate the work of Stationary Engineers or Biomedical Equipment Technicians, as appropriate under his/her jurisdiction.

The Lead will, order materials and supplies, maintain records, assist in the training and evaluating of personnel, and coordinate work with outside vendors, as directed by management. The Lead classification is to be considered as a "working foreman" and as such does not have final authority to hire, fire, or discipline personnel in his/her area of responsibility but may be required to assist by evaluating the work of employees, recommending discipline when warranted, and administering the Employer's work rules and policies as directed by Management.

The Lead may, after consultation with management, suspend personnel in his/her area of responsibility pending investigation.

### Section 5  Apprentices

(a)    If the Employer chooses to utilize Apprentices, the ratio of Apprentices to Engineers will be in keeping with any applicable statutory requirements. In the event the Hospital joins the existing Stationary Engineers Apprenticeship Program, the Employer at its option may have representation on the Joint Apprenticeship Committee.

(b)    The Employer may employ apprentices at a ratio of one (1) apprentice for every five (5) engineers, including the Lead Engineer.

# ARTICLE 3

**Section 1     Wage Rates**

Effective with the first pay period beginning subsequent to the indicated dates, the wage scale for bargaining unit employees will be as follows:

| Effective Dates | First full pay period following ratification | 10/01/21 | 10/01/22 |
|---|---|---|---|
| Lead Engineer | $67.06 | $70.28 | $73.82 |
| Lead Biomedical Technician | 67.06 | 70.28 | 73.82 |
| Stationary Engineer | 60.96 | 63.89 | 67.11 |
| Biomedical Equipment Technician | 60.96 | 63.89 | 67.11 |
| Utility Person | 33.38 | 34.99 | 36.75 |

Notwithstanding the foregoing, pursuant to Article II, Section 4, the Employer retains the discretion to increase the lead classification rates of pay above those set out immediately above.

**Section 2     Apprentice Engineer Rate of Pay**

Apprentice Engineers, who may be employed, shall receive no less than the following percentage of the Stationary Engineer's wages:

| 1st 12 Months | 65% |
|---|---|
| 3rd 6 Months | 70% |
| 4th 6 Months | 75% |
| 5th 6 Months | 80% |
| 6th 6 Months | 85% |
| 7th 6 Months | 90% |
| 8th 6 Months | 95% |

**Section 3     Shift Differentials**

**A.     P.M. Shift Differential**

A differential of $1.00 per hour shall be paid on top of an Engineer's straight time hourly rate when scheduled and performing work on the PM shift, defined as any shift starting between the hours of 12:00 noon and 6:59 p.m.

**B.    Night Shift Differential**

A differential of $1.20 per hour shall be paid on top of an Engineer's straight time hourly rate when scheduled and performing work on the night shift, defined as any shift starting between the hours of 7:00 p.m. and 2:59 a.m.

**C.    Relief Shift Differential**

A differential of $1.06 per hour shall be paid on top of an Engineer's straight time hourly rate when scheduled and performing work on the relief shift, defined as an Employer mandated work schedule containing two (2) or more (off-shifts) (i.e., shifts other than the shift on which the Employee is normally assigned) during the same one-week period. For purposes of this section, a one-week period will be defined as any consecutive seven (7) day period beginning on Sunday at 12:01 a.m., and ending on the following Saturday at 12:00 midnight. Relief shift differential shall not be paid if the combination work schedule defined above is for the convenience of the Employee, rather than the Employer.

## ARTICLE 4

**Section 1    Hours Of Work And Overtime**

Except in case of relief work, part-time employment and emergencies, five (5) full consecutive days of eight (8) consecutive hours, exclusive of meal periods as provided below, shall constitute a week's work and all Engineers shall be allowed two (2) consecutive days off each week. All time worked in excess of eight (8) hours in any one (1) day, or forty (40) hours in any one (1) week shall be paid at the rate of time and one-half (1-1/2) the base straight time hourly rate for the classification; provided, however, the employee may mutually agree in writing with the Employer to work back-to-back workweeks. Work over twelve (12) hours in any one day will be paid at two (2) times the base straight time hourly rate for the classification.

Notwithstanding the language of the previous paragraph, if an employee voluntarily accepts an alternative staffing schedule consisting of ten (10) or twelve (12) hour shifts, there shall be no daily overtime premium paid on any given day unless the employee works in excess of his regularly scheduled hours for that day. For purposes of this paragraph, time worked in excess of ten (10) hours in any one (1) day shall be paid (to an Engineer working an alternative staffing schedule of ten (10) hour shifts) at the rate of time and one-half (1-1/2) the base straight time hourly rate for the classification. Work over twelve (12) hours in any one day will be paid in accordance with the foregoing paragraph.

Subject to the provisions of the following paragraph, an Engineer shall have a thirty (30) minute lunch period on the Engineer's own time not more than five (5) hours after the start of the Engineer's shift.

An Engineer working a straight boiler room, straight relief boiler room shift, or working alone on the shift, shall work a shift of eight (8) hours within a period of eight (8) hours which shift shall include an on-duty meal period in the plant. In the event that an Engineer is working an alternative staffing schedule as defined in this Article and is working a straight boiler room shift or a relief boiler room shift, then that Engineer shall work the designated shift (e.g., 10 hours) within the same number of designated hours (e.g., 10 hours), which shift shall include an on-duty meal period in the plant.

No Engineer employed by the Employer as of October 16, 1988 shall be required to take a part-time position of less than 40 hours a week, and part-time positions, if any, shall be created only if additional positions are established or through attrition, for example, employee discharge or resignation.

An effort will be made to offer overtime equally depending on the skills of the individual and the requirements of the job.

An Engineer required to work more than seven (7) consecutive days (consisting of complete shifts, and not to include call back hours) without a day off shall be compensated thereafter at time and one-half (1-1/2) the Engineer's basic straight-time hourly rate for each day worked or portion thereof until granted a day off. This provision may be waived on the request of an individual Engineer and with the agreement of the Hospital. The Hospital reserves the right to require any Engineer who has worked seven (7) consecutive days to take a day off.

**Section 2    Call Back Pay**

An employee who has completed his/her regular shift and leaves the Hospital and is called back to work, or an employee who has been called to work on his/her scheduled day off, shall receive a minimum of four (4) hours pay at the straight time and for all time actually worked within said four (4) hour period he/she shall receive an additional one-half (1/2) time of the straight time hourly rate. This Section does not apply when employees are required to return to the Hospital for pre-scheduled departmental meetings or pre-scheduled in-service training.

**Section 3    Stand-By Pay**

Employees who are required to be on stand-by or who are required to answer a paging device after their normal shift or their days off, shall receive half time pay (1/2) at the straight time hourly rate for all hours that they are requested to be on stand-by. Stand-by pay is not paid for hours worked.

Responsibility for carrying a paging device ("beeper") while on stand-by will be rotated among those employees able to perform the work.

**Section 4     Time Records**

Employees requesting a copy shall be provided on a timely basis at the conclusion of the pay period, copies of time records submitted to payroll by the Employer.

## ARTICLE 5

**Section 1     Visits By Union Representative**

The Business Representative of the Union shall be permitted to enter the Hospital at any time the Hospital is in operation to see that the provisions of this Agreement are being observed after first having reported to Management. The Representative may meet with bargaining unit employees in non-patient care areas, and such visits shall not interfere with the work of any bargaining unit employee.

**Section 2     Uniforms**

If uniforms of a special type are required, they will be furnished by the Employer. Any such uniforms that are required by the Hospital may be: (a) provided by a contracted uniform service; or (b) furnished directly to the employees or, at the Hospital's option, purchased by employees from an approved vendor, with the cost pre-approved and reimbursed by the Hospital. If uniforms are furnished by the Hospital or purchased by employees as set forth above, then the Hospital will provide or reimburse for three (3) complete uniforms and one pair of coveralls to replace the uniforms previously furnished by a uniform service. Replacement uniforms and coveralls will be provided or reimbursed as reasonably needed. The employee is required to maintain uniforms and coveralls in good condition, request replacements as needed, and wear the uniform or coveralls, if appropriate, at all times while on duty.

**Section 3     Seniority**

**A.     Layoff and Recall**

Where ability and qualifications are equal, layoff and recall will be based on length of bargaining unit service, provided the employees remaining on the job are able to perform all the required job functions satisfactorily.

Bargaining unit employees who volunteer for a layoff resulting from the need for involuntary layoff, and employees who are laid off pursuant to the provisions of this Article, shall be paid the following severance benefits:

| Continuous Employment | Weeks of Base Pay |
|---|---|
| Less than two (2) years | One (1) week |
| Two (2) to five (5) years | Two (2) weeks |
| Six (6) to ten (10) years | Three (3) weeks |
| Eleven (11) to fifteen (15) years | Four (4) weeks |
| Sixteen (16) to twenty (20) years | Five (5) weeks |
| Twenty-one (21) to twenty-five (25) years | Six (6) weeks |
| Twenty-six (26) or more years | Seven (7) weeks |

In addition, the Employer will continue to provide insurance coverages in effect at the time of the layoff at the same cost that was in effect immediately prior to the layoff (except to the extent the cost of such coverages increases during the severance period) to employees who have been laid off or volunteered to be laid off for the same period as the severance pay. Severance benefits are paid out over the severance period on the same basis as though the employee worked during the period of the severance. All severance entitlement and payments will cease seven (7) days from the mailing of a written communication (sent by certified mail) of available employment. For purposes of this section, the term "layoff" refers to a reduction-in-force affecting the bargaining unit, and not to the termination of employment pursuant to the sale of the Hospital to a third party.

It is the responsibility of the individual employee to update the Human Resources Department in writing with current address and phone numbers for recall purposes. A recalled employee must accept recall within seventy-two (72) hours and return to work at the Hospital within fourteen (14) days of a written communication of available employment. If an employee does not accept recall within seventy-two (72) hours, the employee will be considered voluntarily resigned. If the Hospital is unable to reach an employee on layoff within seventy-two (72) hours, the Hospital will offer recall to the next employee on the list, but the employee that the Hospital was unable to reach will remain on the recall list for future vacancies. Upon recall from layoff status, Engineers will be entitled to restoration of seniority and placement at the same salary step in effect at the time of layoff.

**B.    Job Vacancies**

If there is a legitimate job vacancy, the job will be bid for on a seniority basis and where ability and qualifications, including past performance, are equal, the employee with the most bargaining unit seniority shall fill the vacancy.

**C.    Definitions**

For purposes of implementing layoff and recall provisions and bidding, and for purposes of granting unpaid leaves of absence, the employee's seniority will be defined as his/her unbroken length of service in the Engineer's bargaining unit at his/her hospital.

For purposes of determining employee's entitlement to benefits provided under the contract (PTO accrual, health/dental and life insurance) his/her seniority will be determined based upon the length of service with the Employer (including qualified previous service with Good Samaritan Health System or Alexian Brothers Hospital) as a regular full-time employee or a regular part-time employee. A regular full-time employee is an employee who is regularly scheduled to work from thirty-two (32) to forty (40) hours weekly. A regular part-time employee is an employee who is regularly scheduled to work at least twenty (20) hours weekly.

Part-time employees may work full-time when covering for absences and for vacation relief.

### D.   TERMINATION OF SENIORITY

An employee's seniority shall be nullified and the individual's employment terminated if any of the following occur:

   a. Discharge for just cause;
   b. Voluntary resignation;
   c. Employees who experience a one-year or more absence due to layoff;
   d. If recalled from layoff, an employee fails to respond within seventy-two (72) hours, or report for work within a reasonable time;
   e. Retirement;
   f. Failure to report for work at the end of an authorized leave of absence;
   g. Accepts other employment during a leave of absence.

### Section 4   Bulletin Boards

The Union shall have the privilege of suitable space on a bulletin board for the posting of notices of official Union business.

Copies of the posting shall be furnished to the Employer's Director of Labor/Employee Relations.

### ARTICLE 6

### Section 1   Paid Time Off (PTO)

The Paid Time Off (PTO) Plan provides employees with a bi-weekly accrual of hours to be used as Paid Time Off (PTO) during periods of short-term illness, family emergencies, personal business and leisure. The plan also provides a separate bi-weekly accrual for Extended Sick Leave (ESL) for periods of illness or injury for which they receive either State Disability or Worker's Compensation benefit payments.

**Section 2 Accrual of PTO**

**A.** PTO plan days begin accruing on the first day of employment. Full-time employees accrue on the basis of recorded employment status and the length of service. Part-time employees accrue on the basis of hours paid (excluding overtime premium), not to exceed 80 hours per pay period and their length of service.

**B.** Accrual schedules are as follows:

| Length of Service | PTO Hours Accrual/Pay Period | Total PTO Days/Year | Extended Sick Leave Accrual/Pay Period |
|---|---|---|---|
| First 2 Years | 8.0 | 26 | 1.85 |
| 3 & 4 Years | 10.2 | 33 | 1.85 |
| 5 Years | 11.1 | 36 | 1.85 |
| 6 Years | 11.4 | 37 | 1.85 |
| 7 Years | 11.7 | 38 | 1.85 |
| 8 Years | 12.0 | 39 | 1.85 |
| 9 Years | 12.3 | 40 | 1.85 |
| 10+ Years | 12.6 | 41 | 1.85 |

**C.** A maximum of 456 hours may be accrued in the PTO bank (319 for part-time employees).

**D.** A maximum of 999 hours may be accrued in the ESL bank (699 hours for part-time employees).

**Section 3 USE OF PTO**

**A.** PTO days (or hours) may be used for vacation, holidays, short-term illness, family emergencies, religious observances, preventive health or dental care, personal business or other excused elective absences (except educational leave, jury duty, and bereavement leave, which are paid in addition to PTO days).

**B.** PTO is paid at the unit member's straight-time rate.

**C.** PTO begins accruing on the date of employment and may be used as it is earned.

**D.**   With the exception of emergency or illness, PTO must be scheduled ahead of time with approval by the Department Head.

**E.**   Employees with over one year of service must use a minimum of 20 PTO days per year. This amount is pro-rated for regular part-time employees based upon status.

**F.**   Other than exceptions noted above, PTO will be used for all time off except that which is required to temporarily reduce staff levels due to decreased work load, i.e., drop days. Such hours may be unpaid or PTO at the employee's option.

**G.**   All accrued PTO Plan (ESL and PTO) hours must be used first as part of a leave of absence granted an employee.

**H.**   Employees who fail to report emergency absences to their supervisor at least one hour prior to the start of their shift are subject to denial of their PTO for that absence.

### Section 4   Redemption of PTO

**A.**   Upon termination or transfer to a non-benefit position, 100% of the employee's PTO balance will be paid. The rate at which such hours are paid will be at the employee's current straight-time hourly rate.

**B.**   PTO hours may not be used to extend employment beyond the last day actually worked.

**C.**   Employees may choose to cash out up to eighty (80) hours of PTO in increments of eight (8) hours twice during any calendar year, so long as they do not reduce their PTO accrual below eighty (80) hours. PTO hours not used or converted to cash will continue to accumulate within the maximum accrual limits.

**D.**   PTO time which is voluntarily converted to cash will be paid at 100% of the employee's straight base hourly rate in effect preceding their most recent anniversary date. Employees wishing to convert PTO to cash must submit a signed and approved PTO request form (a copy is available in the Human Resources Department) to the Payroll Department.

**E.**   When an employee reduces his/her employment status, he/she must reduce his/her PTO balance to at least the prorated accrual maximum. The employee may choose to reduce their PTO balance beyond the prorated maximum while maintaining the regular minimum balance. PTO cashed out in conjunction with a reduction in employment status will be paid at 100% of the employee's base hourly rate.

**Section 5    Extended Sick Leave Account**

**A.**    In addition to PTO, the unit member also earns six extended Sick Leave days per year. ESL hours may be used for absences due to illness or injury which exceed seven consecutive calendar days (for a single illness/injury). Any scheduled workdays within the seven consecutive calendar days are charged against the PTO account.

**B.**    All available benefits paid under the PTO program will be coordinated with the State Disability Insurance or Workers' Compensation in order to maintain the employee's normal earnings during absences which qualify for these coverages. The Employer reserves the right to require reasonable proof of illness by a physician. After all the hours in the ESL account are exhausted, the hours in the PTO account will be utilized.

**C.**    ESL days may not be converted to PTO days or cashed in. The ESL account is zeroed out when the employee terminates or retires.

**Section 6    Integration of Benefits**

The Employer shall provide for the integration of PTO with Workers' Compensation and Disability Insurance programs. The unit member shall provide the Employer with the date necessary to integrate these benefits and shall file any necessary application for benefits in connection therewith. The Employer shall pay PTO in the amount necessary to supplement the income from State Disability Insurance or Workers' Compensation the extent of the unit member's regular pay rate, and will charge the unit member's sick leave balance with the supplement amount paid.

## ARTICLE 7

**Section 1    Holidays**

The following holidays shall be recognized Holidays:

|  |  |
|---|---|
| New Year's Day | Independence Day |
| Martin Luther King Day | Labor Day |
| President's Day | Thanksgiving Day |
| Memorial Day | Christmas Day |

**Section 2    Holiday Pay**

An employee who works on a recognized Holiday shall be paid, in addition to their normal pay, a "holiday premium" of one-half (1/2) times their base hourly rate of pay for the actual hours worked on the Holiday.  Holiday pay begins at 12:01 a.m. on the day of the official holiday and ends at midnight on that day.

# ARTICLE 8

**Section 1     Health Insurance/Dental Plan**

For purposes of group insurance participation purposes only (and not for purposes of vacation, sick leave or holiday accrual), employees working a regular schedule of at least sixty-four (64) hours per bi-weekly pay period will be considered "regular full-time", and employees working a regular schedule of at least forty (40), but less than sixty-four (64), hours per bi-weekly pay period will be considered "regular part-time".

Regular full-time employees (as defined above) and regular part-time employees (as defined above) will be eligible to participate in the Employer's Health and Dental insurance programs as provided below not later than the first of the month following completion of two (2) calendar months of service.

**A.      Health Insurance**

The Hospital shall continue to offer participation in the Hospital's various health plans to regular full-time and regular part-time employees and will do so on the same basis, and under the same terms, plans and premium share, that participation is offered to employees represented by the California Nurses Association.  There shall be no obligation to bargain over changes in these plans or over issues relating to administration of these plans.  The Hospital shall notify the Union of changes to the plans upon request by the Union.

**B.      Dental Insurance**

The Hospital shall continue to offer participation in the Hospital's various dental plans to regular full-time and regular part-time employees and will do so on the same basis, and under the same terms, plans and premium share, that participation is offered to employees represented by the California Nurses Association.  There shall be no obligation to bargain over changes in these plans or over issues relating to administration of these plans.  The Hospital shall notify the Union of changes to the plans upon request by the Union.

**C.      Vision**

The Hospital shall continue to offer participation in the Hospital's vision plan to regular full-time and regular part-time employees and will do so on the same basis, and under the same terms, plans and premium share, that participation is offered to employees represented by the California Nurses Association.  There shall be no obligation to bargain over changes in these plans or over issues relating to administration of these plans.  The Hospital shall notify the Union of changes to the plans upon request by the Union.

**Section 2    Long Term Disability Plan**

The Hospitals shall continue to make the HCA Long Term Disability Plan available for purchase through payroll deduction for eligible full-time employees, on the same basis as the Plan is offered to non-bargaining unit employees, according to the terms of the Plan.

**Section 3    Life Insurance**

The Hospitals shall continue to provide eligible regular full-time and regular part-time employees with life insurance coverage and Accidental Death and Dismemberment (AD&D) insurance coverage in an amount equal to the employee's basic annual earnings, rounded to the next highest $1,000.00 (not to exceed $15,000 for part-time employees).

**Section 4    CorePlus Benefits**

The Hospitals shall continue to offer participation in the CorePlus benefits to regular full-time and regular part-time employees at the time of hire on the same basis as participation is offered to non-bargaining unit employees. The parties understand that, given the national nature of these plans, the Hospitals have no duty to bargain with the Union over any aspect of the plans, including plan administration, changes in the plans, or elimination of the plans.

**Section 5    Health Care and Day Care Spending Accounts**

Regular full-time and regular part-time employees will be eligible to participate in the HCA Health Care Spending Account Program and the HCA Day Care Spending Account Program, on the same basis as non-bargaining unit employees. There shall be no obligation to bargain over changes in these Programs or over issues relating to administration of these Programs and the Programs and their elements shall not be subject to the grievance and arbitration procedures of this Agreement.

**Section 6    Pension Plan**

In lieu of participation in the HCA Savings & Retirement Program and the HCA Employee Stock Option Plan, the Employer agrees to contribute into the Stationary Engineers Local 39 Pension Trust Fund, at its respective office in San Francisco, California, or such other designated place of payment, $7.45 per hour for all straight-time hours worked or paid.

The above contribution shall be made on or before the tenth (10th) day of each month, for pension benefits, programs and plans, as now specified, and as may be hereinafter specified by said Trustees. The Employer agrees to accept, assume and be bound by all of the obligations imposed on individual employers by that certain Trust Agreement referred to for convenience as the Stationary Engineers Local 39

Pension Trust Agreement (a copy of which has been delivered to the Employer and receipt of which is expressly acknowledged) and any amendments, modifications, changes or mergers with respect to said Trust Agreement made by the parties thereto.

The undersigned further agrees that he or it does irrevocably designate and appoint the employers mentioned in said Pension Trust as his or its attorneys-in-fact for the selection, removal, and substitution of Trustees as provided for in said Trust Agreement and as may be hereinafter provided by or pursuant to said Trust Agreements.

In the event that the individual Employer herein fails to pay the amounts of Trust Fund contributions due and owing for the period in which they are due and owing, the individual Employer shall pay in addition to the amounts due as contributions, such additional liquidated damages and/or attorneys' fees as are set forth in the Trust Agreement to which the individual Employer is bound.

### Section 7    Bereavement Leave

A leave with pay, not to exceed three (3) working days, shall be granted in the event of death to a member of the immediate family (defined as parents, step-parents, spouse, children, step-children, grandparents, grandchildren, brothers, sisters, parents-in-law, sons-in-law or daughters-in-law). Up to three (3) additional days without pay may be granted by the Employer for good cause.

### Section 8    Jury Duty

An Engineer who reports for jury duty will receive his/her normal straight-time earnings. Proof of jury service shall be furnished to the Employer by the Engineer. As a condition of receiving this pay, the Engineer must produce, within three (3) calendar days a receipt of the same, a voucher from the Jury Commissioner that the Engineer has served. In the event the Engineer is released with four (4) or more hours of his/her shift remaining, he/she shall be obligated to contact the Hospital and advise it of his/her availability for work. Subject to the above, employees called to jury service shall not be scheduled to work their normal shift on that day(s). The maximum number of days for which an Engineer may be reimbursed for jury service in any one (1) calendar year is thirty (30).

### Section 9    Retiree Health Benefits

A. **Retirement on or after 1/1/04.** Employees who retire on or after ratification of this agreement, will be eligible for retiree health insurance coverage through the term of this agreement, on the following basis. Premiums may be adjusted from time to time on the same basis that C.O.B.R.A. benefits are adjusted for employees.

---

**B. Eligibility.** Employees who are not Medicare eligible, who retire at or after age 55 with ten (10) years of continuous service in a regular full-time or regular part-time position immediately preceding retirement. Eligibility for this benefit ends when the employee becomes eligible for Medicare.

**C. Benefit.** The Hospital will provide retiree health benefits on the same basis, and under the same terms, plans and premium share, that participation is offered to employees represented by the California Nurses Association. There shall be no obligation to bargain over changes in these plans or over issues relating to administration of these plans.

## ARTICLE 9

### Section 1    Management Rights

Except as expressly and specifically limited and restricted by a written provision of this Agreement, the Hospital has and shall retain the full right of management and the direction of the facility and its operations. Thus, the Hospital reserves and retains, solely and exclusively, all of the rights, privileges and prerogatives which it would have in the absence of this Agreement, regardless of the frequency or infrequency with which such rights have been exercised in the past, except to the extent that such rights, privileges and prerogatives are specifically and clearly abridged by express provisions of this Agreement. Such rights of management include, among other things, but are not limited to: The right of the Hospital in its sole discretion, to plan, direct, control, increase, decrease, or diminish staffing in whole or in part; to change methods, to introduce new methods, techniques, and/or machines, to change or discontinue any procedure used; to hire, transfer, discharge for just cause as defined elsewhere in this Agreement, or to relieve engineers for lack of work, to add to or reduce the number of shifts, the work schedule and/or the number of overtime hours to be worked; and to determine the number of employees that it shall employ at any one time and the qualifications necessary for any of the jobs it shall have; to subcontract work for economic reasons, in its discretion to rescind, or change reasonable Hospital work rules and regulations, or policies, so long as such rules are not inconsistent with an express provision of this Agreement. It is further agreed that there is no duty to bargain over the exercise of the rights specified herein and that such rights may not be impaired by an arbitrator or arbitration even though the parties may agree to arbitrate the issue involved as provided hereinafter.

## ARTICLE 10

### Section 1    Promotion of Amicable Relationships

The Union pledges itself to promote the mutual interests of the Employer and Employee and to continue the amicable relationship between Employer and Employee, to observe all rules and regulations and discipline such of their members as may be guilty of unbecoming conduct; to uphold the rights of the Employer through the

procedural channels of the Union and to use the organization's good offices on behalf of Employer and Employee in every honorable way.

## ARTICLE 11

**Section 1    Shop Stewards**

For the purpose of representation of its members, the Union shall be entitled to Shop Stewards who shall restrict their activities to receiving questions and complaints from Members and report to the Business Representative. Stewards will perform their duties on behalf of the Union on their non-working time, unless prior management consent is obtained or unless the steward's participation is requested by management.

## ARTICLE 12

**Section 1    Probationary Period**

The probationary period for newly-hired Engineers shall be three (3) months of employment. An Engineer terminated during this period shall have no recourse to either grievance and/or arbitration procedure. The Hospital may extend the probationary period up to an additional thirty (30) calendar days with notification to the Union. Upon completion of the probationary period, the Engineer's seniority shall be computed as of the date of most recent hire.

## ARTICLE 13

**Section 1    Grievance Procedure**

The purpose of the Article is to provide the sole method for the settlement of any dispute between the parties over the interpretation, application or claimed violation of any specific provisions of this Agreement.

   **Step 1 -** An employee with a grievance shall discuss the matter with the employee's Immediate Supervisor within fourteen (14) days (all references to days in this Article refer to calendar days) of the day in which it arises or becomes known to the employee. The Supervisor shall reply within ten (10) days after presentation. However, if the grievance is not resolved in this manner, the grievance shall be handled in accordance with the procedure set forth below. If the Supervisor does not respond within the time limits, the grievant may appeal to the next level.

   **Step 2 -** If the grievance is not resolved within ten (10) days after the presentation of the grievance at Step 1, the grievance shall be presented in writing to the Director of Human Resources, or his/her designee for the Hospital within twenty (20) days from the date it was presented at Step 1.

**Step 3** - If the grievance is not resolved within ten (10) days of presentation at Step 2, either party may, in writing, request arbitration within twenty (20) days from the date it was presented at Step 2 and the parties shall attempt to mutually agree to an arbitrator. In the event the parties are unable to agree on an arbitrator within five (5) days, either may request, with a copy to the Director of Human Resources, that the Federal Mediation and Conciliation Service submit a panel of seven arbitrators having hospital arbitration experience. Either party may reject one panel in its entirety. Each party shall alternately strike one (1) name until an arbitrator is selected. To determine which party strikes the first name, the parties shall flip a coin. The arbitrator shall promptly conduct a hearing on the grievance.

The arbitrator shall have no power to:

(1) add to or subtract from, or modify any of the terms of this Agreement;
(2) to establish or change any wage scale or any other compensation formula;
(3) hear or decide any dispute as to the numbers or classifications of employees needed, at any given time;
(4) arbitrate any matter after this Agreement has expired other than matters which arose prior to the time of expiration of the Agreement.

All grievances must be presented at the proper steps in accordance with the time limitations herein and unless such grievances are so presented, the right to file such grievance shall be waived. Any grievance not appealed to the next succeeding step within the time limits specified will be considered withdrawn and not eligible for further appeal.

Each party shall bear its own costs and expenses in connection with all steps of this procedure except that the fees of the arbitrator shall be paid one-half (1/2) by the aggrieved party and one-half (1/2) by the other party.

## Section 2    Discharge Grievance

In the event the grievance concerns discharge of an employee, the grievance must be presented to the Employer within five (5) working days following the discharge.

## Section 3    Time Limits

The time limits contained herein may be waived by mutual written agreement by the parties.

## ARTICLE 14

## Section 1    Strikes and Lockouts

There shall be no strikes (including organizational or sympathy strikes) or lockouts during the term of this Agreement. Violations of this Article shall not be subject to the grievance and arbitration provisions of this Agreement.

## ARTICLE 15

**Section 1    Shift Assignment Changes**

All regularly assigned shift assignment changes shall be posted seven (7) days in advance of said change. In the event said shift assignment changes are not posted seven (7) days in advance, the first shift worked shall then be paid at the rate of one and one-half (1 1/2) times the straight time hourly rate of pay. There shall be no premium pay for the employee returning to his/her previously assigned shift.

All Engineers assigned to work eight (8) hour shifts shall be given fifteen (15) hours off between scheduled shifts, except where a change becomes necessary due to the failure of an Engineer employee (or Engineer employees) to report to work for any reason, and except for employees who are assigned to perform weekly tests on the Hospital's power generating equipment. This time off requirement may be reduced to eleven (11) hours in the event that an Engineer works an alternative work schedule of ten (10) or twelve (12) hours.

Subject to the exceptions specified in the preceding paragraph, all hours worked within those specified rest periods shall be paid at the rate of time and one-half (1 1/2).

## ARTICLE 16

**Section 1    Certification/Educational Achievement Bonus**

Commencing with the effective date of this Agreement, employees covered by this Agreement will be eligible for a certification/educational bonus of One Hundred Twenty Five Dollars ($125) upon successful completion of an Employer approved journeyman level class sponsored by the International Union of Operating Engineers, Stationary Local 39, AFL-CIO and/or San Jose City College.

Maximum three (3) classes or Three Hundred Seventy Five Dollars ($375) per calendar year,

OR a bonus of Two Hundred Fifty Dollars ($250) per calendar year upon attainment of certification in Biomedical Equipment, Clinical Laboratory Equipment, or Radiological Equipment by the Association for Advancement of Medical Instrumentation. Certificated Biomedical Equipment Technicians may apply for a bonus of One Hundred Twenty Five Dollars ($125) upon successful renewal of their certification.

# ARTICLE 17

**Section 1    Tools Of The Trade**

Hand tools belonging to the employee, considered necessary to perform his/her duties as an Engineer, that have been broken or damaged on the job will be repaired or replaced with tools of equal quality by the Employer.

# ARTICLE 18

**Section 1    No Pyramiding**

Notwithstanding any provisions herein set forth, there shall be no pyramiding of overtime on overtime, nor shall overtime be required to be paid in addition to specific premium pay except as to differentials and holidays.

# ARTICLE 19

**Section 1    Waiver**

It is agreed that during the negotiations leading to the execution of this Agreement, the parties have had full opportunity to submit all items appropriate to collective bargaining, and that the parties expressly waive the right to submit any additional item for negotiations during the term of this Agreement, whether or not such item is referred to or covered in this Agreement, or whether the item was or was not discussed in the course of the negotiations leading to the execution of this Agreement; and that this Agreement incorporates their full and complete understanding, superseding and invalidating all previous commitments of any kind, oral or written, past practice, existing conditions, and all prior employee and Union rights and benefits not specifically incorporated herein. The specific provisions of this Agreement are the sole source of any right which the Union or any member of the bargaining unit may charge the Employer has violated in raising a grievance.

# ARTICLE 20

**Section 1    Term of Agreement**

This Agreement shall be effective December 29, 2020, and shall continue in effect without change, addition or amendment through September 30, 2023. This Agreement shall automatically be renewed and extended from year to year thereafter unless either party serves notice in writing on the other party at least ninety (90) days prior to the expiration date of this Agreement, or any subsequent anniversary date of same if this Agreement is automatically renewed or extended in accordance with this Article, of its intention to terminate or amend this Agreement.

Dated this 29th day of December, 2020, at San Jose, California.

**Good Samaritan Hospital & Regional Medical Center of San Jose**

_____
Joseph DeSchryver, Chief Executive Officer – Good Samaritan Hospital

_____
Tomi Ryba, President and Chief Executive Officer – Regional Medical Center of San Jose

Date: _2.8.21_____

**International Union of Operating Engineers, Stationary Engineers, Local 39**

_____
Bart Florence, Business Manager

_____
Jeff Gladieux, President

_____
Shane Mortensen, District Representative

_____
Chris Kalmar, Business Representative

Date:_____

# EXHIBIT K

## Form 5500

Department of the Treasury
Internal Revenue Service

Department of Labor
Employee Benefits Security
Administration

Pension Benefit Guaranty Corporation

## Annual Return/Report of Employee Benefit Plan

This form is required to be filed for employee benefit plans under sections 104 and 4065 of the Employee Retirement Income Security Act of 1974 (ERISA) and sections 6057(b) and 6058(a) of the Internal Revenue Code (the Code).

▶ **Complete all entries in accordance with the instructions to the Form 5500.**

OMB Nos. 1210-0110
1210-0089

## 2020

**This Form is Open to Public Inspection**

| **Part I** | **Annual Report Identification Information** |
|---|---|

For calendar plan year 2020 or fiscal plan year beginning 01/01/2020 and ending 12/31/2020

**A** This return/report is for: [X] a multiemployer plan   [ ] a multiple-employer plan (Filers checking this box must attach a list of participating employer information in accordance with the form instructions.)

[ ] a single-employer plan   [ ] a DFE (specify) ____

**B** This return/report is: [ ] the first return/report   [ ] the final return/report

[ ] an amended return/report   [ ] a short plan year return/report (less than 12 months)

**C** If the plan is a collectively-bargained plan, check here. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ [X]

**D** Check box if filing under: [X] Form 5558   [ ] automatic extension   [ ] the DFVC program

[ ] special extension (enter description)

| **Part II** | **Basic Plan Information**—enter all requested information |
|---|---|

**1a** Name of plan

IUOE STATIONARY ENGINEERS LOCAL 39 PENSION PLAN

**1b** Three-digit plan number (PN) ▶ 001

**1c** Effective date of plan
06/01/1955

**2a** Plan sponsor's name (employer, if for a single-employer plan)
Mailing address (include room, apt., suite no. and street, or P.O. Box)
City or town, state or province, country, and ZIP or foreign postal code (if foreign, see instructions)

BOT OF IUOE STATIONARY ENGINEERS LOCAL 39 PENSION

7180 KOLL CENTER PARKWAY, SUITE 200
PLEASANTON, CA 94566-3184

**2b** Employer Identification Number (EIN)
94-6118939

**2c** Plan Sponsor's telephone number
925-208-9999

**2d** Business code (see instructions)
561210

**Caution: A penalty for the late or incomplete filing of this return/report will be assessed unless reasonable cause is established.**

Under penalties of perjury and other penalties set forth in the instructions, I declare that I have examined this return/report, including accompanying schedules, statements and attachments, as well as the electronic version of this return/report, and to the best of my knowledge and belief, it is true, correct, and complete.

| SIGN HERE | Filed with authorized/valid electronic signature. | 09/08/2021 | DANNY MURTAGH |
|---|---|---|---|
| | **Signature of plan administrator** | Date | Enter name of individual signing as plan administrator |
| SIGN HERE | Filed with authorized/valid electronic signature. | 09/13/2021 | BART FLORENCE |
| | **Signature of employer/plan sponsor** | Date | Enter name of individual signing as employer or plan sponsor |
| SIGN HERE | | | |
| | **Signature of DFE** | Date | Enter name of individual signing as DFE |

**For Paperwork Reduction Act Notice, see the Instructions for Form 5500.**

Form 5500 (2020)
v. 200204

Form 5500 (2020)                                                    Page **2**

| | | |
|---|---|---|
| **3a** Plan administrator's name and address ☒ Same as Plan Sponsor | | **3b** Administrator's EIN |
| | | **3c** Administrator's telephone number |

| | | |
|---|---|---|
| **4** If the name and/or EIN of the plan sponsor or the plan name has changed since the last return/report filed for this plan, enter the plan sponsor's name, EIN, the plan name and the plan number from the last return/report: | **4b** EIN | |
| **a** Sponsor's name | | |
| **c** Plan Name | **4d** PN | |

| | | |
|---|---|---|
| **5** Total number of participants at the beginning of the plan year | **5** | 9822 |
| **6** Number of participants as of the end of the plan year unless otherwise stated (welfare plans complete only lines **6a(1), 6a(2), 6b, 6c,** and **6d**). | | |
| **a(1)** Total number of active participants at the beginning of the plan year............. | **6a(1)** | 5263 |
| **a(2)** Total number of active participants at the end of the plan year ..................... | **6a(2)** | 5115 |
| **b** Retired or separated participants receiving benefits............................................................. | **6b** | 2951 |
| **c** Other retired or separated participants entitled to future benefits ................................... | **6c** | 1261 |
| **d** Subtotal. Add lines **6a(2), 6b,** and **6c**. | **6d** | 9327 |
| **e** Deceased participants whose beneficiaries are receiving or are entitled to receive benefits. ................. | **6e** | 571 |
| **f** Total.  Add lines **6d** and **6e**. | **6f** | 9898 |
| **g** Number of participants with account balances as of the end of the plan year (only defined contribution plans complete this item) ................................................. | **6g** | |
| **h** Number of participants who terminated employment during the plan year with accrued benefits that were less than 100% vested | **6h** | |
| **7** Enter the total number of employers obligated to contribute to the plan (only multiemployer plans complete this item)........ | **7** | 208 |

**8a** If the plan provides pension benefits, enter the applicable pension feature codes from the List of Plan Characteristics Codes in the instructions:

1B

**b** If the plan provides welfare benefits, enter the applicable welfare feature codes from the List of Plan Characteristics Codes in the instructions:

| **9a** Plan funding arrangement (check all that apply) | | **9b** Plan benefit arrangement (check all that apply) | |
|---|---|---|---|
| **(1)** ☐ Insurance | | **(1)** ☐ Insurance | |
| **(2)** ☐ Code section 412(e)(3) insurance contracts | | **(2)** ☐ Code section 412(e)(3) insurance contracts | |
| **(3)** ☒ Trust | | **(3)** ☒ Trust | |
| **(4)** ☐ General assets of the sponsor | | **(4)** ☐ General assets of the sponsor | |

**10** Check all applicable boxes in 10a and 10b to indicate which schedules are attached, and, where indicated, enter the number attached.  (See instructions)

**a Pension Schedules**                                               **b General Schedules**

| | | | | |
|---|---|---|---|---|
| **(1)** ☒ **R** (Retirement Plan Information) | | **(1)** ☒ | **H** (Financial Information) |
| | | **(2)** ☐ | **I** (Financial Information – Small Plan) |
| **(2)** ☒ **MB** (Multiemployer Defined Benefit Plan and Certain Money Purchase Plan Actuarial Information) - signed by the plan actuary | | **(3)** ☐ ___ | **A** (Insurance Information) |
| | | **(4)** ☒ | **C** (Service Provider Information) |
| | | **(5)** ☒ | **D** (DFE/Participating Plan Information) |
| **(3)** ☐ **SB** (Single-Employer Defined Benefit Plan Actuarial Information) - signed by the plan actuary | | **(6)** ☐ | **G** (Financial Transaction Schedules) |

Form 5500 (2020)                                                    Page **3**

| Part III | Form M-1 Compliance Information (to be completed by welfare benefit plans) |
|---|---|

**11a** If the plan provides welfare benefits, was the plan subject to the Form M-1 filing requirements during the plan year? (See instructions and 29 CFR 2520.101-2.) ..........................…….....… ☐ Yes  ☐ No

If "Yes" is checked, complete lines 11b and 11c.

**11b** Is the plan currently in compliance with the Form M-1 filing requirements? (See instructions and 29 CFR 2520.101-2.) ………... ☐ Yes  ☐ No

**11c** Enter the Receipt Confirmation Code for the 2020 Form M-1 annual report.  If the plan was not required to file the 2020 Form M-1 annual report, enter the Receipt Confirmation Code for the most recent Form M-1 that was required to be filed under the Form M-1 filing requirements. (Failure to enter a valid Receipt Confirmation Code will subject the Form 5500 filing to rejection as incomplete.)

Receipt Confirmation Code_____

| **SCHEDULE MB**<br>**(Form 5500)**<br><br>Department of the Treasury<br>Internal Revenue Service<br>Department of Labor<br>Employee Benefits Security Administration<br>Pension Benefit Guaranty Corporation | **Multiemployer Defined Benefit Plan and Certain Money Purchase Plan Actuarial Information**<br><br>This schedule is required to be filed under section 104 of the Employee Retirement Income Security Act of 1974 (ERISA) and section 6059 of the Internal Revenue Code (the Code).<br><br>▶ **File as an attachment to Form 5500 or 5500-SF.** | OMB No. 1210-0110<br><br>**2020**<br><br>**This Form is Open to Public Inspection** |

For calendar plan year 2020 or fiscal plan year beginning   01/01/2020                                                      and ending   12/31/2020

▶ **Round off amounts to nearest dollar.**

▶ **Caution:** A penalty of $1,000 will be assessed for late filing of this report unless reasonable cause is established.

| **A** Name of plan<br>IUOE STATIONARY ENGINEERS LOCAL 39 PENSION PLAN | **B** | Three-digit<br>plan number (PN)          ▶ | 001 |
|---|---|---|---|

| **C** Plan sponsor's name as shown on line 2a of Form 5500 or 5500-SF<br>BOT OF IUOE STATIONARY ENGINEERS LOCAL 39 PENSION | **D** Employer Identification Number (EIN)<br>94-6118939 |
|---|---|

**E** Type of plan:     **(1)** ☒ Multiemployer Defined Benefit     **(2)** ☐ Money Purchase (see instructions)

**1a** Enter the valuation date:          Month   01          Day   01          Year   2020

**b** Assets

| | | |
|---|---|---|
| (1) Current value of assets ................................................................ | **1b(1)** | 1401042110 |
| (2) Actuarial value of assets for funding standard account ........................... | **1b(2)** | 1375285213 |

**c** (1) Accrued liability for plan using immediate gain methods ........................................ | **1c(1)** | 1640586905

(2) Information for plans using spread gain methods:

| | | |
|---|---|---|
| **(a)** Unfunded liability for methods with bases ................................................. | **1c(2)(a)** | |
| **(b)** Accrued liability under entry age normal method ...................................... | **1c(2)(b)** | |
| **(c)** Normal cost under entry age normal method ............................................ | **1c(2)(c)** | |
| (3) Accrued liability under unit credit cost method ........................................... | **1c(3)** | 1640586905 |

**d** Information on current liabilities of the plan:

| | | |
|---|---|---|
| **(1)** Amount excluded from current liability attributable to pre-participation service (see instructions) ....... | **1d(1)** | |

**(2)** "RPA '94" information:

| | | |
|---|---|---|
| **(a)** Current liability ....................................................................... | **1d(2)(a)** | 3289022349 |
| **(b)** Expected increase in current liability due to benefits accruing during the plan year..................... | **1d(2)(b)** | 175107126 |
| **(c)** Expected release from "RPA '94" current liability for the plan year............................... | **1d(2)(c)** | 97996063 |
| **(3)** Expected plan disbursements for the plan year.......................................... | **1d(3)** | 100833982 |

**Statement by Enrolled Actuary**

To the best of my knowledge, the information supplied in this schedule and accompanying schedules, statements and attachments, if any, is complete and accurate. Each prescribed assumption was applied in accordance with applicable law and regulations. In my opinion, each other assumption is reasonable (taking into account the experience of the plan and reasonable expectations) and such other assumptions, in combination, offer my best estimate of anticipated experience under the plan.

| **SIGN HERE** | | 09/12/2021 |
|---|---|---|
| | Signature of actuary | Date |
| | JOSHUA A. C. DAVIS | 20-07397 |
| | Type or print name of actuary | Most recent enrollment number |
| | CHEIRON, INC. | 703-893-1456 |
| | Firm name | Telephone number (including area code) |
| | 101 SW MAIN STREET, SUITE 1602, PORTLAND, OR 97204 | |
| | Address of the firm | |

If the actuary has not fully reflected any regulation or ruling promulgated under the statute in completing this schedule, check the box and see instructions          ☐

**For Paperwork Reduction Act Notice, see the Instructions for Form 5500 or 5500-SF.**                                      **Schedule MB (Form 5500) 2020**<br>**v. 200204**

Schedule MB (Form 5500) 2020          Page **2 -** | 1 |

**2** Operational information as of beginning of this plan year:

**a** Current value of assets (see instructions)

| | 2a | 1401042110 |
|---|---|---|

**b** "RPA '94" current liability/participant count breakdown:

| | | (1) Number of participants | (2) Current liability |
|---|---|---|---|
| (1) | For retired participants and beneficiaries receiving payment ................................ | 3284 | 1239022723 |
| (2) | For terminated vested participants ......................................................... | 1336 | 228548668 |
| (3) | For active participants: | | |
| | (a) Non-vested benefits............................................................... | | 72935066 |
| | (b) Vested benefits.................................................................... | | 1748515892 |
| | (c) Total active...................................................................... | 5152 | 1821450958 |
| (4) | Total ............................................................................... | 9772 | 3289022349 |

**c** If the percentage resulting from dividing line 2a by line 2b(4), column (2), is less than 70%, enter such percentage

| | 2c | 42.60 % |
|---|---|---|

**3** Contributions made to the plan for the plan year by employer(s) and employees:

| (a) Date (MM-DD-YYYY) | (b) Amount paid by employer(s) | (c) Amount paid by employees | (a) Date (MM-DD-YYYY) | (b) Amount paid by employer(s) | c) Amount paid by employees |
|---|---|---|---|---|---|
| 07/01/2020 | 92741555 | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | **Totals ►** | **3(b)** 92741555 | **3(c)** |

**4** Information on plan status:

**a** Funded percentage for monitoring plan's status (line 1b(2) divided by line 1c(3)) ............................

| | 4a | 83.8 % |
|---|---|---|

**b** Enter code to indicate plan's status (see instructions for attachment of supporting evidence of plan's status). If entered code is "N," go to line 5

| | 4b | N |
|---|---|---|

**c** Is the plan making the scheduled progress under any applicable funding improvement or rehabilitation plan? ................ ☐ Yes ☐ No

**d** If the plan is in critical status or critical and declining status, were any benefits reduced (see instructions)? ................ ☐ Yes ☐ No

**e** If line d is "Yes," enter the reduction in liability resulting from the reduction in benefits (see instructions), measured as of the valuation date

| | 4e | |
|---|---|---|

**f** If the rehabilitation plan projects emergence from critical status or critical and declining status, enter the plan year in which it is projected to emerge.
If the rehabilitation plan is based on forestalling possible insolvency, enter the plan year in which insolvency is expected and check here ................................................................................................ ☐

| | 4f | |
|---|---|---|

**5** Actuarial cost method used as the basis for this plan year's funding standard account computations (check all that apply):

**a** ☐ Attained age normal    **b** ☐ Entry age normal    **c** ☒ Accrued benefit (unit credit)    **d** ☐ Aggregate

**e** ☐ Frozen initial liability    **f** ☐ Individual level premium    **g** ☐ Individual aggregate    **h** ☐ Shortfall

**i** ☐ Other (specify):

**j** If box h is checked, enter period of use of shortfall method ....................

| | 5j | |
|---|---|---|

**k** Has a change been made in funding method for this plan year?............................................................. ☐ Yes ☒ No

**l** If line k is "Yes," was the change made pursuant to Revenue Procedure 2000-40 or other automatic approval? ...................... ☐ Yes ☐ No

**m** If line k is "Yes," and line l is "No," enter the date (MM-DD-YYYY) of the ruling letter (individual or class) approving the change in funding method ...........................................................................

| | 5m | |
|---|---|---|

Schedule MB (Form 5500) 2020                                      Page **3** - 1

**6** Checklist of certain actuarial assumptions:

**a** Interest rate for "RPA '94" current liability ................................................................ | **6a** | 2.95 %

|  | Pre-retirement | Post-retirement |
|---|---|---|
| **b** Rates specified in insurance or annuity contracts ..................... | ☐ Yes ☐ No ☒ N/A | ☐ Yes ☐ No ☒ N/A |

**c** Mortality table code for valuation purposes:

| | | Pre-retirement | Post-retirement |
|---|---|---|---|
| **(1)** Males ................................. | **6c(1)** | A | A |
| **(2)** Females ............................. | **6c(2)** | A | A |
| **d** Valuation liability interest rate .......................... | **6d** | 7.70 % | 7.70 % |
| **e** Expense loading ...................... | **6e** | 2.7 % | ☐ N/A | % | ☒ N/A |
| **f** Salary scale ............................. | **6f** | % | ☐ N/A | | |

**g** Estimated investment return on actuarial value of assets for year ending on the valuation date ................ | **6g** | 6.5 %

**h** Estimated investment return on current value of assets for year ending on the valuation date ................... | **6h** | 16.2 %

**7** New amortization bases established in the current plan year:

| **(1)** Type of base | **(2)** Initial balance | **(3)** Amortization Charge/Credit |
|---|---|---|
| 1 | 21160508 | 2253550 |
| | | |
| | | |

**8** Miscellaneous information:

**a** If a waiver of a funding deficiency has been approved for this plan year, enter the date (MM-DD-YYYY) of the ruling letter granting the approval ...................................................... | **8a** | |

**b(1)** Is the plan required to provide a projection of expected benefit payments? (See the instructions.) If "Yes," attach a schedule ............................................................................................. | ☒ Yes ☐ No

**b(2)** Is the plan required to provide a Schedule of Active Participant Data? (See the instructions.) If "Yes," attach a schedule. ............................................................................................. | ☒ Yes ☐ No

**c** Are any of the plan's amortization bases operating under an extension of time under section 412(e) (as in effect prior to 2008) or section 431(d) of the Code? ......................................................... | ☒ Yes ☐ No

**d** If line c is "Yes," provide the following additional information:

**(1)** Was an extension granted automatic approval under section 431(d)(1) of the Code? ........................... | ☒ Yes ☐ No

**(2)** If line 8d(1) is "Yes," enter the number of years by which the amortization period was extended ........ | **8d(2)** | 5

**(3)** Was an extension approved by the Internal Revenue Service under section 412(e) (as in effect prior to 2008) or 431(d)(2) of the Code? ......................................................... | ☐ Yes ☒ No

**(4)** If line 8d(3) is "Yes," enter number of years by which the amortization period was extended (not including the number of years in line (2)) ....................... | **8d(4)** | |

**(5)** If line 8d(3) is "Yes," enter the date of the ruling letter approving the extension ..................... | **8d(5)** | |

**(6)** If line 8d(3) is "Yes," is the amortization base eligible for amortization using interest rates applicable under section 6621(b) of the Code for years beginning after 2007? ......................................................... | ☐ Yes ☐ No

**e** If box 5h is checked or line 8c is "Yes," enter the difference between the minimum required contribution for the year and the minimum that would have been required without using the shortfall method or extending the amortization base(s) ............................................ | **8e** | 41186212

**9** Funding standard account statement for this plan year:

**Charges to funding standard account:**

**a** Prior year funding deficiency, if any ..................................................................... | **9a** | 0

**b** Employer's normal cost for plan year as of valuation date ......................................... | **9b** | 66172593

**c** Amortization charges as of valuation date:

| | | Outstanding balance | |
|---|---|---|---|
| **(1)** All bases except funding waivers and certain bases for which the amortization period has been extended ........................... | **9c(1)** | 498038899 | 60738501 |
| **(2)** Funding waivers ....................................... | **9c(2)** | 0 | 0 |
| **(3)** Certain bases for which the amortization period has been extended ............................. | **9c(3)** | 0 | 0 |

**d** Interest as applicable on lines 9a, 9b, and 9c ........................................................ | **9d** | 9772154

**e** Total charges. Add lines 9a through 9d ................................................................ | **9e** | 136683248

Schedule MB (Form 5500) 2020                                                Page **4**

**Credits to funding standard account:**

| | | | |
|---|---|---|---|
| **f** | Prior year credit balance, if any .................................................................. | **9f** | 91410586 |
| **g** | Employer contributions. Total from column (b) of line 3 ................................. | **9g** | 92741555 |

| | | | Outstanding balance | |
|---|---|---|---|---|
| **h** | Amortization credits as of valuation date ............................ | **9h** | 141326621 | 24791372 |
| **i** | Interest as applicable to end of plan year on lines 9f, 9g, and 9h ................. | **9i** | | 12451892 |

| | | | |
|---|---|---|---|
| **j** | Full funding limitation (FFL) and credits: | | |

| | | | | |
|---|---|---|---|---|
| | **(1)** | ERISA FFL (accrued liability FFL) ...................................... | **9j(1)** | 455447006 |
| | **(2)** | "RPA '94" override (90% current liability FFL) ..................... | **9j(2)** | 1742482610 |
| | **(3)** | FFL credit .................................................................................... | **9j(3)** | 0 |
| **k** | **(1)** | Waived funding deficiency ........................................................... | **9k(1)** | 0 |
| | **(2)** | Other credits .............................................................................. | **9k(2)** | 0 |
| **l** | Total credits. Add lines 9f through 9i, 9j(3), 9k(1), and 9k(2) ..................... | **9l** | 221395405 |
| **m** | Credit balance: If line 9l is greater than line 9e, enter the difference .......... | **9m** | 84712157 |
| **n** | Funding deficiency: If line 9e is greater than line 9l, enter the difference...... | **9n** | |

| | | | |
|---|---|---|---|
| **9 o** | Current year's accumulated reconciliation account: | | |

| | | | | |
|---|---|---|---|---|
| | **(1)** | Due to waived funding deficiency accumulated prior to the 2020 plan year ..................... | **9o(1)** | 0 |
| | **(2)** | Due to amortization bases extended and amortized using the interest rate under section 6621(b) of the Code: | | |
| | | **(a)** Reconciliation outstanding balance as of valuation date ............................ | **9o(2)(a)** | 0 |
| | | **(b)** Reconciliation amount (line 9c(3) balance minus line 9o(2)(a)) ................. | **9o(2)(b)** | 0 |
| | **(3)** | Total as of valuation date ......................................................... | **9o(3)** | 0 |
| **10** | Contribution necessary to avoid an accumulated funding deficiency. (See instructions.) ............................ | **10** | |
| **11** | Has a change been made in the actuarial assumptions for the current plan year? If "Yes," see instructions................ | | ☒ Yes ☐ No |

| SCHEDULE C (Form 5500) | Service Provider Information | OMB No. 1210-0110 |
|---|---|---|

**SCHEDULE C**
**(Form 5500)**

Department of the Treasury
Internal Revenue Service

Department of Labor
Employee Benefits Security Administration

Pension Benefit Guaranty Corporation

**Service Provider Information**

This schedule is required to be filed under section 104 of the Employee Retirement Income Security Act of 1974 (ERISA).

▶ **File as an attachment to Form 5500.**

OMB No. 1210-0110

**2020**

**This Form is Open to Public Inspection.**

For calendar plan year 2020 or fiscal plan year beginning    01/01/2020                and ending    12/31/2020

**A** Name of plan

IUOE STATIONARY ENGINEERS LOCAL 39 PENSION PLAN

**B** Three-digit plan number (PN)    ▶    001

**C** Plan sponsor's name as shown on line 2a of Form 5500

BOT OF IUOE STATIONARY ENGINEERS LOCAL 39 PENSION

**D** Employer Identification Number (EIN)

94-6118939

| **Part I** | **Service Provider Information (see instructions)** |
|---|---|

You must complete this Part, in accordance with the instructions, to report the information required for **each person** who received, directly or indirectly, $5,000 or more in total compensation (i.e., money or anything else of monetary value) in connection with services rendered to the plan or the person's position with the plan during the plan year. If a person received **only** eligible indirect compensation for which the plan received the required disclosures, you are required to answer line 1 but are not required to include that person when completing the remainder of this Part.

**1  Information on Persons Receiving Only Eligible Indirect Compensation**

**a** Check "Yes" or "No" to indicate whether you are excluding a person from the remainder of this Part because they received only eligible indirect compensation for which the plan received the required disclosures (see instructions for definitions and conditions)................ ☒ Yes ☐ No

**b** If you answered line 1a "Yes," enter the name and EIN or address of each person providing the required disclosures for the service providers who received only eligible indirect compensation.  Complete as many entries as needed (see instructions).

**(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation

AFL-CIO HOUSING INVESTMENT TRUST

52-6220193

**(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation

CHEVY CHASE TRUST COMPANY

52-2037618

**(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation

THE VANGUARD GROUP

23-1945930

**(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation

PNC BANK, NATIONAL ASSOCIATION

22-1146430

**For Paperwork Reduction Act Notice, see the Instructions for Form 5500.**     **Schedule C (Form 5500) 2020**
**v. 200204**

**(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation

**(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation

**(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation

**(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation

**(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation

**(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation

**(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation

**(b)** Enter name and EIN or address of person who provided you disclosures on eligible indirect compensation

**2. Information on Other Service Providers Receiving Direct or Indirect Compensation.** Except for those persons for whom you answered "Yes" to line 1a above, complete as many entries as needed to list each person receiving, directly or indirectly, $5,000 or more in total compensation (i.e., money or anything else of value) in connection with services rendered to the plan or their position with the plan during the plan year. (See instructions).

**(a)** Enter name and EIN or address (see instructions)

GRAYSTONE CONSULTING

26-4310844

| (b) Service Code(s) | (c) Relationship to employer, employee organization, or person known to be a party-in-interest | (d) Enter direct compensation paid by the plan. If none, enter -0-. | (e) Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | (f) Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | (g) Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | (h) Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| 27 50 31 33 | NONE | 1233860 | Yes ☐ No ☒ | Yes ☐ No ☐ | | Yes ☐ No ☐ |

**(a)** Enter name and EIN or address (see instructions)

PRIVATE ADVISORS LLC

54-1886751

| (b) Service Code(s) | (c) Relationship to employer, employee organization, or person known to be a party-in-interest | (d) Enter direct compensation paid by the plan. If none, enter -0-. | (e) Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | (f) Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | (g) Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | (h) Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| 28 51 52 55 | NONE | 794106 | Yes ☒ No ☐ | Yes ☒ No ☐ | 0 | Yes ☐ No ☐ |

**(a)** Enter name and EIN or address (see instructions)

FOUNDRY PARTNERS

46-1184506

| (b) Service Code(s) | (c) Relationship to employer, employee organization, or person known to be a party-in-interest | (d) Enter direct compensation paid by the plan. If none, enter -0-. | (e) Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | (f) Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | (g) Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | (h) Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| 28 51 33 | NONE | 765882 | Yes ☐ No ☒ | Yes ☐ No ☐ | | Yes ☐ No ☐ |

Schedule C (Form 5500) 2020

Page **3 -** 2

**2. Information on Other Service Providers Receiving Direct or Indirect Compensation.** Except for those persons for whom you answered "Yes" to line 1a above, complete as many entries as needed to list each person receiving, directly or indirectly, $5,000 or more in total compensation (i.e., money or anything else of value) in connection with services rendered to the plan or their position with the plan during the plan year. (See instructions).

**(a)** Enter name and EIN or address (see instructions)

BENESYS

32-2383171

| **(b)** Service Code(s) | **(c)** Relationship to employer, employee organization, or person known to be a party-in-interest | **(d)** Enter direct compensation paid by the plan. If none, enter -0-. | **(e)** Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | **(f)** Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | **(g)** Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | **(h)** Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| 13 36 49 50 | NONE | 718052 | Yes ☐ No ☒ | Yes ☐ No ☐ | | Yes ☐ No ☐ |

**(a)** Enter name and EIN or address (see instructions)

POLEN CAPITAL INVESTMENT

26-0319356

| **(b)** Service Code(s) | **(c)** Relationship to employer, employee organization, or person known to be a party-in-interest | **(d)** Enter direct compensation paid by the plan. If none, enter -0-. | **(e)** Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | **(f)** Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | **(g)** Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | **(h)** Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| 28 50 | NONE | 596863 | Yes ☐ No ☒ | Yes ☐ No ☐ | | Yes ☐ No ☐ |

**(a)** Enter name and EIN or address (see instructions)

NEW TOWER TRUST COMPANY

30-0872552

| **(b)** Service Code(s) | **(c)** Relationship to employer, employee organization, or person known to be a party-in-interest | **(d)** Enter direct compensation paid by the plan. If none, enter -0-. | **(e)** Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | **(f)** Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | **(g)** Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | **(h)** Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| 28 51 | NONE | 458122 | Yes ☐ No ☒ | Yes ☐ No ☐ | | Yes ☐ No ☐ |

Schedule C (Form 5500) 2020 — Page **3** - 3

**2. Information on Other Service Providers Receiving Direct or Indirect Compensation.** Except for those persons for whom you answered "Yes" to line 1a above, complete as many entries as needed to list each person receiving, directly or indirectly, $5,000 or more in total compensation (i.e., money or anything else of value) in connection with services rendered to the plan or their position with the plan during the plan year. (See instructions).

**(a)** Enter name and EIN or address (see instructions)

MACKAY SHIELDS LLC

13-4080466

| **(b)** Service Code(s) | **(c)** Relationship to employer, employee organization, or person known to be a party-in-interest | **(d)** Enter direct compensation paid by the plan. If none, enter -0-. | **(e)** Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | **(f)** Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | **(g)** Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | **(h)** Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| 28 51 | NONE | 316994 | Yes ☐ No ☒ | Yes ☐ No ☐ | | Yes ☐ No ☐ |

**(a)** Enter name and EIN or address (see instructions)

WEINBERG, ROGER & ROSENFELD

94-2458080

| **(b)** Service Code(s) | **(c)** Relationship to employer, employee organization, or person known to be a party-in-interest | **(d)** Enter direct compensation paid by the plan. If none, enter -0-. | **(e)** Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | **(f)** Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | **(g)** Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | **(h)** Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| 29 50 | NONE | 292148 | Yes ☐ No ☒ | Yes ☐ No ☐ | | Yes ☐ No ☐ |

**(a)** Enter name and EIN or address (see instructions)

MCMORGAN AND COMPANY, LLC

94-1650768

| **(b)** Service Code(s) | **(c)** Relationship to employer, employee organization, or person known to be a party-in-interest | **(d)** Enter direct compensation paid by the plan. If none, enter -0-. | **(e)** Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | **(f)** Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | **(g)** Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | **(h)** Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| 28 51 | NONE | 282160 | Yes ☐ No ☒ | Yes ☐ No ☐ | | Yes ☐ No ☐ |

**2. Information on Other Service Providers Receiving Direct or Indirect Compensation.** Except for those persons for whom you answered "Yes" to line 1a above, complete as many entries as needed to list each person receiving, directly or indirectly, $5,000 or more in total compensation (i.e., money or anything else of value) in connection with services rendered to the plan or their position with the plan during the plan year. (See instructions).

**(a)** Enter name and EIN or address (see instructions)

LINDQUIST LLP

52-2385296

| (b) Service Code(s) | (c) Relationship to employer, employee organization, or person known to be a party-in-interest | (d) Enter direct compensation paid by the plan. If none, enter -0-. | (e) Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | (f) Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | (g) Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | (h) Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| 10 50 | NONE | 248346 | Yes ☐ No ☒ | Yes ☐ No ☐ | | Yes ☐ No ☐ |

**(a)** Enter name and EIN or address (see instructions)

NORTHERN TRUST INVESTMENT

36-1561860

| (b) Service Code(s) | (c) Relationship to employer, employee organization, or person known to be a party-in-interest | (d) Enter direct compensation paid by the plan. If none, enter -0-. | (e) Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | (f) Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | (g) Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | (h) Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| 19 28 52 50 | NONE | 240551 | Yes ☒ No ☐ | Yes ☒ No ☐ | 0 | Yes ☐ No ☐ |

**(a)** Enter name and EIN or address (see instructions)

FIERA CAPITAL MANAGEMENT

31-1198068

| (b) Service Code(s) | (c) Relationship to employer, employee organization, or person known to be a party-in-interest | (d) Enter direct compensation paid by the plan. If none, enter -0-. | (e) Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | (f) Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | (g) Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | (h) Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| 28 51 | NONE | 236933 | Yes ☒ No ☐ | Yes ☐ No ☒ | 0 | Yes ☐ No ☐ |

**2. Information on Other Service Providers Receiving Direct or Indirect Compensation.** Except for those persons for whom you answered "Yes" to line 1a above, complete as many entries as needed to list each person receiving, directly or indirectly, $5,000 or more in total compensation (i.e., money or anything else of value) in connection with services rendered to the plan or their position with the plan during the plan year. (See instructions).

**(a)** Enter name and EIN or address (see instructions)

CHEIRON

13-4215617

| **(b)** Service Code(s) | **(c)** Relationship to employer, employee organization, or person known to be a party-in-interest | **(d)** Enter direct compensation paid by the plan. If none, enter -0-. | **(e)** Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | **(f)** Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | **(g)** Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | **(h)** Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| 11 17 50 | NONE | 216046 | Yes ☐  No ☒ | Yes ☐  No ☐ | | Yes ☐  No ☐ |

**(a)** Enter name and EIN or address (see instructions)

WASHINGTON CAPITAL

91-1163419

| **(b)** Service Code(s) | **(c)** Relationship to employer, employee organization, or person known to be a party-in-interest | **(d)** Enter direct compensation paid by the plan. If none, enter -0-. | **(e)** Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | **(f)** Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | **(g)** Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | **(h)** Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| 28 51 | NONE | 187691 | Yes ☐  No ☒ | Yes ☐  No ☐ | | Yes ☐  No ☐ |

**(a)** Enter name and EIN or address (see instructions)

CLEARBRIDGE INVESTMENTS LLC

01-0846058

| **(b)** Service Code(s) | **(c)** Relationship to employer, employee organization, or person known to be a party-in-interest | **(d)** Enter direct compensation paid by the plan. If none, enter -0-. | **(e)** Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | **(f)** Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | **(g)** Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | **(h)** Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| 28 51 52 | NONE | 172641 | Yes ☒  No ☐ | Yes ☒  No ☐ | 0 | Yes ☐  No ☐ |

**2. Information on Other Service Providers Receiving Direct or Indirect Compensation.** Except for those persons for whom you answered "Yes" to line 1a above, complete as many entries as needed to list each person receiving, directly or indirectly, $5,000 or more in total compensation (i.e., money or anything else of value) in connection with services rendered to the plan or their position with the plan during the plan year. (See instructions).

**(a)** Enter name and EIN or address (see instructions)

CAMBIAR INVESTORS LLC

84-1596610

| (b) Service Code(s) | (c) Relationship to employer, employee organization, or person known to be a party-in-interest | (d) Enter direct compensation paid by the plan. If none, enter -0-. | (e) Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | (f) Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | (g) Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | (h) Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| 28 51 | NONE | 169253 | Yes ☐ No ☒ | Yes ☐ No ☐ | | Yes ☐ No ☐ |

**(a)** Enter name and EIN or address (see instructions)

ARISTOTLE CAPITAL MANAGEMENT, LLC

95-4833644

| (b) Service Code(s) | (c) Relationship to employer, employee organization, or person known to be a party-in-interest | (d) Enter direct compensation paid by the plan. If none, enter -0-. | (e) Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | (f) Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | (g) Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | (h) Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| 28 51 | NONE | 142007 | Yes ☐ No ☒ | Yes ☐ No ☐ | | Yes ☐ No ☐ |

**(a)** Enter name and EIN or address (see instructions)

ALLIED PRINTING COMPANY

13-4233321

| (b) Service Code(s) | (c) Relationship to employer, employee organization, or person known to be a party-in-interest | (d) Enter direct compensation paid by the plan. If none, enter -0-. | (e) Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | (f) Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | (g) Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | (h) Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| 36 50 49 | NONE | 54015 | Yes ☐ No ☒ | Yes ☐ No ☐ | | Yes ☐ No ☐ |

Schedule C (Form 5500) 2020                                    Page **3** - 7

**2. Information on Other Service Providers Receiving Direct or Indirect Compensation.** Except for those persons for whom you answered "Yes" to line 1a above, complete as many entries as needed to list each person receiving, directly or indirectly, $5,000 or more in total compensation (i.e., money or anything else of value) in connection with services rendered to the plan or their position with the plan during the plan year. (See instructions).

**(a)** Enter name and EIN or address (see instructions)

INVESCO INTERNATIONAL GROWTH TRUST

20-2583937

| **(b)** Service Code(s) | **(c)** Relationship to employer, employee organization, or person known to be a party-in-interest | **(d)** Enter direct compensation paid by the plan. If none, enter -0-. | **(e)** Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | **(f)** Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | **(g)** Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | **(h)** Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| 28 51 | NONE | 45912 | Yes ☐ No ☒ | Yes ☐ No ☐ | | Yes ☐ No ☐ |

**(a)** Enter name and EIN or address (see instructions)

GOLDMAN SACHS ASSET MANAGEMENT, LP

13-3575636

| **(b)** Service Code(s) | **(c)** Relationship to employer, employee organization, or person known to be a party-in-interest | **(d)** Enter direct compensation paid by the plan. If none, enter -0-. | **(e)** Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | **(f)** Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | **(g)** Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | **(h)** Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| 28 52 56 | NONE | 39745 | Yes ☒ No ☐ | Yes ☒ No ☐ | 0 | Yes ☐ No ☐ |

**(a)** Enter name and EIN or address (see instructions)

GRAND FLOW

94-3211239

| **(b)** Service Code(s) | **(c)** Relationship to employer, employee organization, or person known to be a party-in-interest | **(d)** Enter direct compensation paid by the plan. If none, enter -0-. | **(e)** Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | **(f)** Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | **(g)** Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | **(h)** Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| 36 50 | NONE | 21213 | Yes ☐ No ☒ | Yes ☐ No ☐ | | Yes ☐ No ☐ |

**2. Information on Other Service Providers Receiving Direct or Indirect Compensation.** Except for those persons for whom you answered "Yes" to line 1a above, complete as many entries as needed to list each person receiving, directly or indirectly, $5,000 or more in total compensation (i.e., money or anything else of value) in connection with services rendered to the plan or their position with the plan during the plan year. (See instructions).

**(a)** Enter name and EIN or address (see instructions)

INTERNATIONAL TRADING INC.　　　1416 SHERMAN AVENUE
EVANSTON, IL 60201

| (b) Service Code(s) | (c) Relationship to employer, employee organization, or person known to be a party-in-interest | (d) Enter direct compensation paid by the plan. If none, enter -0-. | (e) Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | (f) Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | (g) Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | (h) Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| 33 50 | NONE | 20270 | Yes ☐ No ☒ | Yes ☐ No ☐ | | Yes ☐ No ☐ |

**(a)** Enter name and EIN or address (see instructions)

SEGAL SELECT INSURANCE SERVICES

46-0619194

| (b) Service Code(s) | (c) Relationship to employer, employee organization, or person known to be a party-in-interest | (d) Enter direct compensation paid by the plan. If none, enter -0-. | (e) Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | (f) Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | (g) Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | (h) Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| 53 | NONE | 0 | Yes ☒ No ☐ | Yes ☐ No ☒ | 15851 | Yes ☐ No ☒ |

**(a)** Enter name and EIN or address (see instructions)

CREDIT SUISSE SECURITIES USA LLC　　　11 MADISON AVE.
NEW YORK, NY 10010

| (b) Service Code(s) | (c) Relationship to employer, employee organization, or person known to be a party-in-interest | (d) Enter direct compensation paid by the plan. If none, enter -0-. | (e) Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | (f) Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | (g) Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | (h) Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| 33 50 | NONE | 13295 | Yes ☐ No ☒ | Yes ☐ No ☐ | | Yes ☐ No ☐ |

Schedule C (Form 5500) 2020

Page **3** - 9

**2. Information on Other Service Providers Receiving Direct or Indirect Compensation.** Except for those persons for whom you answered "Yes" to line 1a above, complete as many entries as needed to list each person receiving, directly or indirectly, $5,000 or more in total compensation (i.e., money or anything else of value) in connection with services rendered to the plan or their position with the plan during the plan year. (See instructions).

**(a)** Enter name and EIN or address (see instructions)

PROXY VOTE PLUS LLC

20-0509976

| (b) Service Code(s) | (c) Relationship to employer, employee organization, or person known to be a party-in-interest | (d) Enter direct compensation paid by the plan. If none, enter -0-. | (e) Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | (f) Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | (g) Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | (h) Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| 27 50 | NONE | 10000 | Yes ☐ No ☒ | Yes ☐ No ☐ | | Yes ☐ No ☐ |

**(a)** Enter name and EIN or address (see instructions)

BOFA SECURITIES, INC.

ONE BRYANT PARK
NEW YORK, NY 10036

| (b) Service Code(s) | (c) Relationship to employer, employee organization, or person known to be a party-in-interest | (d) Enter direct compensation paid by the plan. If none, enter -0-. | (e) Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | (f) Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | (g) Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | (h) Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| 33 50 | NONE | 9033 | Yes ☐ No ☒ | Yes ☐ No ☐ | | Yes ☐ No ☐ |

**(a)** Enter name and EIN or address (see instructions)

BARCLAYS BANK PLC

480 WASHINGTON BLVD.
JERSEY CITY, NJ 07310

| (b) Service Code(s) | (c) Relationship to employer, employee organization, or person known to be a party-in-interest | (d) Enter direct compensation paid by the plan. If none, enter -0-. | (e) Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | (f) Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | (g) Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | (h) Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| 33 50 | NONE | 8938 | Yes ☐ No ☒ | Yes ☐ No ☐ | | Yes ☐ No ☐ |

Schedule C (Form 5500) 2020                    Page **3** - 10

**2. Information on Other Service Providers Receiving Direct or Indirect Compensation.** Except for those persons for whom you answered "Yes" to line 1a above, complete as many entries as needed to list each person receiving, directly or indirectly, $5,000 or more in total compensation (i.e., money or anything else of value) in connection with services rendered to the plan or their position with the plan during the plan year. (See instructions).

**(a)** Enter name and EIN or address (see instructions)

FREMONT BANK

94-1707113

| (b) Service Code(s) | (c) Relationship to employer, employee organization, or person known to be a party-in-interest | (d) Enter direct compensation paid by the plan. If none, enter -0-. | (e) Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | (f) Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | (g) Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | (h) Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| 18 50 49 | NONE | 8168 | Yes ☐ No ☒ | Yes ☐ No ☐ | | Yes ☐ No ☐ |

**(a)** Enter name and EIN or address (see instructions)

CITIGROUP GLOBAL MARKETS                    444 FLOWER STREET, 3600
                                            LOS ANGELES, CA 90071

| (b) Service Code(s) | (c) Relationship to employer, employee organization, or person known to be a party-in-interest | (d) Enter direct compensation paid by the plan. If none, enter -0-. | (e) Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | (f) Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | (g) Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | (h) Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| 33 50 | NONE | 7482 | Yes ☐ No ☒ | Yes ☐ No ☐ | | Yes ☐ No ☐ |

**(a)** Enter name and EIN or address (see instructions)

GOLDMAN, SACHS & CO.                    200 WEST STREET
                                        NEW YORK, NY 10282

| (b) Service Code(s) | (c) Relationship to employer, employee organization, or person known to be a party-in-interest | (d) Enter direct compensation paid by the plan. If none, enter -0-. | (e) Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | (f) Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | (g) Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | (h) Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| 33 50 | NONE | 7389 | Yes ☐ No ☒ | Yes ☐ No ☐ | | Yes ☐ No ☐ |

Schedule C (Form 5500) 2020                                    Page **3** - 11

## 2. Information on Other Service Providers Receiving Direct or Indirect Compensation.

Except for those persons for whom you answered "Yes" to line 1a above, complete as many entries as needed to list each person receiving, directly or indirectly, $5,000 or more in total compensation (i.e., money or anything else of value) in connection with services rendered to the plan or their position with the plan during the plan year. (See instructions).

**(a)** Enter name and EIN or address (see instructions)

HSBC SECURITIES (USA), INC.                    452 FIFTH AVENUE
                                               NEW YORK, NY 10018

| (b) Service Code(s) | (c) Relationship to employer, employee organization, or person known to be a party-in-interest | (d) Enter direct compensation paid by the plan. If none, enter -0-. | (e) Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | (f) Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | (g) Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | (h) Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| 33 50 | NONE | 6237 | Yes ☐ No ☒ | Yes ☐ No ☐ | | Yes ☐ No ☐ |

**(a)** Enter name and EIN or address (see instructions)

| (b) Service Code(s) | (c) Relationship to employer, employee organization, or person known to be a party-in-interest | (d) Enter direct compensation paid by the plan. If none, enter -0-. | (e) Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | (f) Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | (g) Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | (h) Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| | | | Yes ☐ No ☐ | Yes ☐ No ☐ | | Yes ☐ No ☐ |

**(a)** Enter name and EIN or address (see instructions)

| (b) Service Code(s) | (c) Relationship to employer, employee organization, or person known to be a party-in-interest | (d) Enter direct compensation paid by the plan. If none, enter -0-. | (e) Did service provider receive indirect compensation? (sources other than plan or plan sponsor) | (f) Did indirect compensation include eligible indirect compensation, for which the plan received the required disclosures? | (g) Enter total indirect compensation received by service provider excluding eligible indirect compensation for which you answered "Yes" to element (f). If none, enter -0-. | (h) Did the service provider give you a formula instead of an amount or estimated amount? |
|---|---|---|---|---|---|---|
| | | | Yes ☐ No ☐ | Yes ☐ No ☐ | | Yes ☐ No ☐ |

Schedule C (Form 5500) 2020                                           Page **4 -** 1

| Part I | Service Provider Information (continued) |
|---|---|

**3.** If you reported on line 2 receipt of indirect compensation, other than eligible indirect compensation, by a service provider, and the service provider is a fiduciary or provides contract administrator, consulting, custodial, investment advisory, investment management, broker, or recordkeeping services, answer the following questions for (a) each source from whom the service provider received $1,000 or more in indirect compensation and (b) each source for whom the service provider gave you a formula used to determine the indirect compensation instead of an amount or estimated amount of the indirect compensation.  Complete as many entries as needed to report the required information for each source.

| **(a)** Enter service provider name as it appears on line 2 | **(b)** Service Codes (see instructions) | **(c)** Enter amount of indirect compensation |
|---|---|---|
| SEGAL SELECT INSURANCE SERVICES | 53 | 9644 |

| **(d)** Enter name and EIN (address) of source of indirect compensation | **(e)** Describe the indirect compensation, including any formula used to determine the service provider's eligibility for or the amount of the indirect compensation. |
|---|---|
| ULLICO CASUALTY GROUP<br><br>13-2988846 | COMMISSIONS RECEIVED ON INSURANCE POLICIES PLACED THROUGH SERVICE PROVIDER AND PAID BY THE RESPECTIVE INSURANCE COMPANIES |

| **(a)** Enter service provider name as it appears on line 2 | **(b)** Service Codes (see instructions) | **(c)** Enter amount of indirect compensation |
|---|---|---|
| SEGAL SELECT INSURANCE SERVICES | 53 | 4405 |

| **(d)** Enter name and EIN (address) of source of indirect compensation | **(e)** Describe the indirect compensation, including any formula used to determine the service provider's eligibility for or the amount of the indirect compensation. |
|---|---|
| RLI INSURANCE<br><br>37-0915434 | COMMISSIONS RECEIVED ON INSURANCE POLICIES PLACED THROUGH SERVICE PROVIDERAND PAID BY THE RESPECTIVE INSURANCE COMPANIES. |

| **(a)** Enter service provider name as it appears on line 2 | **(b)** Service Codes (see instructions) | **(c)** Enter amount of indirect compensation |
|---|---|---|
| SEGAL SELECT INSURANCE SERVICES | 53 | 1208 |

| **(d)** Enter name and EIN (address) of source of indirect compensation | **(e)** Describe the indirect compensation, including any formula used to determine the service provider's eligibility for or the amount of the indirect compensation. |
|---|---|
| HARTFORD FIRE INSURANCE<br><br>06-0383750 | COMMISSIONS RECEIVED ON INSURANCE POLICIES PLACED THROUGH SERVICE PROVIDER AND PAID BY THE RESPECTIVE INSURANCE COMPANY. |

Schedule C (Form 5500) 2020                                           Page **5** - 1

---

| **Part II** | **Service Providers Who Fail or Refuse to Provide Information** |
|---|---|

**4** Provide, to the extent possible, the following information for each service provider who failed or refused to provide the information necessary to complete this Schedule.

| **(a)** Enter name and EIN or address of service provider (see instructions) | **(b)** Nature of Service Code(s) | **(c)** Describe the information that the service provider failed or refused to provide |
|---|---|---|
| MACKAY SHIELDS LLC<br><br>13-4080466 | 28 51 | SERVICE PROVIDER FAILED TO PROVIDE INFORMATION REGARDING INDIRECT COMPENSATION, IF ANY. |

| **(a)** Enter name and EIN or address of service provider (see instructions) | **(b)** Nature of Service Code(s) | **(c)** Describe the information that the service provider failed or refused to provide |
|---|---|---|
|  |  |  |

| **(a)** Enter name and EIN or address of service provider (see instructions) | **(b)** Nature of Service Code(s) | **(c)** Describe the information that the service provider failed or refused to provide |
|---|---|---|
|  |  |  |

| **(a)** Enter name and EIN or address of service provider (see instructions) | **(b)** Nature of Service Code(s) | **(c)** Describe the information that the service provider failed or refused to provide |
|---|---|---|
|  |  |  |

| **(a)** Enter name and EIN or address of service provider (see instructions) | **(b)** Nature of Service Code(s) | **(c)** Describe the information that the service provider failed or refused to provide |
|---|---|---|
|  |  |  |

| **(a)** Enter name and EIN or address of service provider (see instructions) | **(b)** Nature of Service Code(s) | **(c)** Describe the information that the service provider failed or refused to provide |
|---|---|---|
|  |  |  |

Schedule C (Form 5500) 2020                                    Page **6 -** 1

| Part III | Termination Information on Accountants and Enrolled Actuaries (see instructions) |
|---|---|
| | (complete as many entries as needed) |

| **a** Name: | | **b** EIN: |
|---|---|---|
| **c** Position: | | |
| **d** Address: | | **e** Telephone: |

Explanation:

| **a** Name: | | **b** EIN: |
|---|---|---|
| **c** Position: | | |
| **d** Address: | | **e** Telephone: |

Explanation:

| **a** Name: | | **b** EIN: |
|---|---|---|
| **c** Position: | | |
| **d** Address: | | **e** Telephone: |

Explanation:

| **a** Name: | | **b** EIN: |
|---|---|---|
| **c** Position: | | |
| **d** Address: | | **e** Telephone: |

Explanation:

| **a** Name: | | **b** EIN: |
|---|---|---|
| **c** Position: | | |
| **d** Address: | | **e** Telephone: |

Explanation:

| **SCHEDULE D**<br>**(Form 5500)**<br><br>Department of the Treasury<br>Internal Revenue Service<br><br>Department of Labor<br>Employee Benefits Security Administration | **DFE/Participating Plan Information**<br><br>This schedule is required to be filed under section 104 of the Employee<br>Retirement Income Security Act of 1974 (ERISA).<br><br>▶ **File as an attachment to Form 5500.** | OMB No. 1210-0110<br><br>**2020**<br><br>**This Form is Open to Public**<br>**Inspection.** |
|---|---|---|

| For calendar plan year 2020 or fiscal plan year beginning  01/01/2020 | and ending  12/31/2020 |
|---|---|

| **A** Name of plan<br>IUOE STATIONARY ENGINEERS LOCAL 39 PENSION PLAN | **B**  Three-digit<br>plan number (PN)    ▶ | 001 |
|---|---|---|

| **C**  Plan or DFE sponsor's name as shown on line 2a of Form 5500<br>BOT OF IUOE STATIONARY ENGINEERS LOCAL 39 PENSION | **D**  Employer Identification Number (EIN)<br>94-6118939 |
|---|---|

| **Part I** | **Information on interests in MTIAs, CCTs, PSAs, and 103-12 IEs (to be completed by plans and DFEs)**<br>(Complete as many entries as needed to report all interests in DFEs) |
|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:    AFL-CIO BUILDING INVESTMENT TRUST

**b** Name of sponsor of entity listed in (a):    PNC BANK, NATIONAL ASSOCIATION

| **c** EIN-PN  52-6328901-001 | **d** Entity<br>code | C | **e** Dollar value of interest in MTIA, CCT, PSA, or<br>103-12 IE at end of year (see instructions) | 26543210 |
|---|---|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:    AFL-CIO EQUITY INDEX FUND

**b** Name of sponsor of entity listed in (a):    CHEVY CHASE TRUST COMPANY

| **c** EIN-PN  27-3350606-010 | **d** Entity<br>code | C | **e** Dollar value of interest in MTIA, CCT, PSA, or<br>103-12 IE at end of year (see instructions) | 95983434 |
|---|---|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:    INVESCO INTERNATIONAL GROWTH TRUST

**b** Name of sponsor of entity listed in (a):    INVESCO TRUST COMPANY

| **c** EIN-PN  32-6065438-001 | **d** Entity<br>code | C | **e** Dollar value of interest in MTIA, CCT, PSA, or<br>103-12 IE at end of year (see instructions) | 41646945 |
|---|---|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:    MULTI-EMPLOYER PROPERTY TRUST

**b** Name of sponsor of entity listed in (a):    NEW TOWER TRUST COMPANY

| **c** EIN-PN  52-6218800-001 | **d** Entity<br>code | C | **e** Dollar value of interest in MTIA, CCT, PSA, or<br>103-12 IE at end of year (see instructions) | 52883849 |
|---|---|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:    NT COLLECTIVE RUSSELL 1000 GROWTH

**b** Name of sponsor of entity listed in (a):    NORTHERN TRUST INVESTMENTS, INC

| **c** EIN-PN  45-6138589-099 | **d** Entity<br>code | C | **e** Dollar value of interest in MTIA, CCT, PSA, or<br>103-12 IE at end of year (see instructions) | 83081720 |
|---|---|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:    NT COLLECTIVE RUSSELL 1000 VALUE IN

**b** Name of sponsor of entity listed in (a):    NORTHERN TRUST INVESTMENTS, INC

| **c** EIN-PN  45-6138589-098 | **d** Entity<br>code | C | **e** Dollar value of interest in MTIA, CCT, PSA, or<br>103-12 IE at end of year (see instructions) | 116973719 |
|---|---|---|---|---|

**a** Name of MTIA, CCT, PSA, or 103-12 IE:    RUSSELL 2000 GROWTH

**b** Name of sponsor of entity listed in (a):    NORTHERN TRUST INVESTMENTS, INC

| **c** EIN-PN  45-6138589-120 | **d** Entity<br>code | C | **e** Dollar value of interest in MTIA, CCT, PSA, or<br>103-12 IE at end of year (see instructions) | 39657615 |
|---|---|---|---|---|

**For Paperwork Reduction Act Notice, see the Instructions for Form 5500.**          **Schedule D (Form 5500) 2020**<br>**v. 200204**

Schedule D (Form 5500) 2020                    Page **2** -  1

| **a** Name of MTIA, CCT, PSA, or 103-12 IE: | | NTG COLLECTIVE SHORT TERM | |
|---|---|---|---|
| **b** Name of sponsor of entity listed in (a): | | NORTHERN TRUST INVESTMENTS, INC | |
| **c** EIN-PN  45-6138589-084 | **d** Entity code  C | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) | 80521776 |

| **a** Name of MTIA, CCT, PSA, or 103-12 IE: | | T.ROWE PRICE INTL SMALL CAP EQUITY | |
|---|---|---|---|
| **b** Name of sponsor of entity listed in (a): | | T. ROWE TRUST COMPANY | |
| **c** EIN-PN  36-7612285-001 | **d** Entity code  C | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) | 50188148 |

| **a** Name of MTIA, CCT, PSA, or 103-12 IE: | | WASHINGTON CAPITAL JOINT MASTER TR | |
|---|---|---|---|
| **b** Name of sponsor of entity listed in (a): | | WASHINGTON CAPITAL MANAGEMENT INC | |
| **c** EIN-PN  91-1163419-001 | **d** Entity code  E | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) | 25850330 |

| **a** Name of MTIA, CCT, PSA, or 103-12 IE: | | | |
|---|---|---|---|
| **b** Name of sponsor of entity listed in (a): | | | |
| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) | |

| **a** Name of MTIA, CCT, PSA, or 103-12 IE: | | | |
|---|---|---|---|
| **b** Name of sponsor of entity listed in (a): | | | |
| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) | |

| **a** Name of MTIA, CCT, PSA, or 103-12 IE: | | | |
|---|---|---|---|
| **b** Name of sponsor of entity listed in (a): | | | |
| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) | |

| **a** Name of MTIA, CCT, PSA, or 103-12 IE: | | | |
|---|---|---|---|
| **b** Name of sponsor of entity listed in (a): | | | |
| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) | |

| **a** Name of MTIA, CCT, PSA, or 103-12 IE: | | | |
|---|---|---|---|
| **b** Name of sponsor of entity listed in (a): | | | |
| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) | |

| **a** Name of MTIA, CCT, PSA, or 103-12 IE: | | | |
|---|---|---|---|
| **b** Name of sponsor of entity listed in (a): | | | |
| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) | |

| **a** Name of MTIA, CCT, PSA, or 103-12 IE: | | | |
|---|---|---|---|
| **b** Name of sponsor of entity listed in (a): | | | |
| **c** EIN-PN | **d** Entity code | **e** Dollar value of interest in MTIA, CCT, PSA, or 103-12 IE at end of year (see instructions) | |

Schedule D (Form 5500) 2020                    Page **3 -** ☐ 1

| **Part II** | **Information on Participating Plans (to be completed by DFEs)** |
|---|---|
| | (Complete as many entries as needed to report all participating plans) |

**a** Plan name

| **b** Name of plan sponsor | **c** EIN-PN |
|---|---|

**a** Plan name

| **b** Name of plan sponsor | **c** EIN-PN |
|---|---|

**a** Plan name

| **b** Name of plan sponsor | **c** EIN-PN |
|---|---|

**a** Plan name

| **b** Name of plan sponsor | **c** EIN-PN |
|---|---|

**a** Plan name

| **b** Name of plan sponsor | **c** EIN-PN |
|---|---|

**a** Plan name

| **b** Name of plan sponsor | **c** EIN-PN |
|---|---|

**a** Plan name

| **b** Name of plan sponsor | **c** EIN-PN |
|---|---|

**a** Plan name

| **b** Name of plan sponsor | **c** EIN-PN |
|---|---|

**a** Plan name

| **b** Name of plan sponsor | **c** EIN-PN |
|---|---|

**a** Plan name

| **b** Name of plan sponsor | **c** EIN-PN |
|---|---|

**a** Plan name

| **b** Name of plan sponsor | **c** EIN-PN |
|---|---|

**a** Plan name

| **b** Name of plan sponsor | **c** EIN-PN |
|---|---|

| **SCHEDULE H**<br>**(Form 5500)**<br><br>Department of the Treasury<br>Internal Revenue Service<br><br>Department of Labor<br>Employee Benefits Security Administration<br><br>Pension Benefit Guaranty Corporation | **Financial Information**<br><br>This schedule is required to be filed under section 104 of the Employee Retirement Income Security Act of 1974 (ERISA), and section 6058(a) of the Internal Revenue Code (the Code).<br><br>▶ **File as an attachment to Form 5500.** | OMB No. 1210-0110<br><br>**2020**<br><br>**This Form is Open to Public Inspection** |

For calendar plan year 2020 or fiscal plan year beginning  01/01/2020 and ending  12/31/2020

| **A** Name of plan<br><br>IUOE STATIONARY ENGINEERS LOCAL 39 PENSION PLAN | **B** Three-digit<br>plan number (PN)  ▶  001 |
| **C** Plan sponsor's name as shown on line 2a of Form 5500<br><br>BOT OF IUOE STATIONARY ENGINEERS LOCAL 39 PENSION | **D** Employer Identification Number (EIN)<br>94-6118939 |

| **Part I** | **Asset and Liability Statement** |

**1** Current value of plan assets and liabilities at the beginning and end of the plan year. Combine the value of plan assets held in more than one trust. Report the value of the plan's interest in a commingled fund containing the assets of more than one plan on a line-by-line basis unless the value is reportable on lines 1c(9) through 1c(14). Do not enter the value of that portion of an insurance contract which guarantees, during this plan year, to pay a specific dollar benefit at a future date. **Round off amounts to the nearest dollar.** MTIAs, CCTs, PSAs, and 103-12 IEs do not complete lines 1b(1), 1b(2), 1c(8), 1g, 1h, and 1i. CCTs, PSAs, and 103-12 IEs also do not complete lines 1d and 1e. See instructions.

| **Assets** | | (a) Beginning of Year | (b) End of Year |
|---|---|---|---|
| **a** Total noninterest-bearing cash | **1a** | 3334253 | 2109340 |
| **b** Receivables (less allowance for doubtful accounts): | | | |
| (1) Employer contributions | **1b(1)** | 7821581 | 7540644 |
| (2) Participant contributions | **1b(2)** | | |
| (3) Other | **1b(3)** | 9480312 | 14498014 |
| **c** General investments: | | | |
| (1) Interest-bearing cash (include money market accounts & certificates of deposit) | **1c(1)** | 593442 | 18019834 |
| (2) U.S. Government securities | **1c(2)** | 101742089 | 58219067 |
| (3) Corporate debt instruments (other than employer securities): | | | |
| (A) Preferred | **1c(3)(A)** | 7779836 | 4331681 |
| (B) All other | **1c(3)(B)** | 112857990 | 121047911 |
| (4) Corporate stocks (other than employer securities): | | | |
| (A) Preferred | **1c(4)(A)** | 1342781 | 0 |
| (B) Common | **1c(4)(B)** | 360380002 | 479447650 |
| (5) Partnership/joint venture interests | **1c(5)** | 72831647 | 64767171 |
| (6) Real estate (other than employer real property) | **1c(6)** | 8976801 | 8980145 |
| (7) Loans (other than to participants) | **1c(7)** | | |
| (8) Participant loans | **1c(8)** | | |
| (9) Value of interest in common/collective trusts | **1c(9)** | 546076219 | 587480416 |
| (10) Value of interest in pooled separate accounts | **1c(10)** | | |
| (11) Value of interest in master trust investment accounts | **1c(11)** | | |
| (12) Value of interest in 103-12 investment entities | **1c(12)** | 24411575 | 25850330 |
| (13) Value of interest in registered investment companies (e.g., mutual funds) | **1c(13)** | 44102356 | 48213220 |
| (14) Value of funds held in insurance company general account (unallocated contracts) | **1c(14)** | | |
| (15) Other | **1c(15)** | 104594051 | 152908431 |

| | | **(a)** Beginning of Year | **(b)** End of Year |
|---|---|---|---|
| **1d** Employer-related investments: | | | |
| **(1)** Employer securities.................................................. | **1d(1)** | | |
| **(2)** Employer real property............................................ | **1d(2)** | | |
| **e** Buildings and other property used in plan operation ...................................... | **1e** | | |
| **f** Total assets (add all amounts in lines 1a through 1e) ................................. | **1f** | 1406324935 | 1593413854 |

## Liabilities

| | | | |
|---|---|---|---|
| **g** Benefit claims payable ........................................................ | **1g** | | |
| **h** Operating payables ............................................................. | **1h** | 429354 | 502098 |
| **i** Acquisition indebtedness....................................................... | **1i** | | |
| **j** Other liabilities................................................................... | **1j** | 4131429 | 4726228 |
| **k** Total liabilities (add all amounts in lines 1g through1j) ............................. | **1k** | 4560783 | 5228326 |

## Net Assets

| | | | |
|---|---|---|---|
| **l** Net assets (subtract line 1k from line 1f)................................................ | **1l** | 1401764152 | 1588185528 |

## Part II   Income and Expense Statement

**2** Plan income, expenses, and changes in net assets for the year. Include all income and expenses of the plan, including any trust(s) or separately maintained fund(s) and any payments/receipts to/from insurance carriers. Round off amounts to the nearest dollar. MTIAs, CCTs, PSAs, and 103-12 IEs do not complete lines 2a, 2b(1)(E), 2e, 2f, and 2g.

### Income

| | | **(a)** Amount | **(b)** Total |
|---|---|---|---|
| **a** Contributions: | | | |
| **(1)** Received or receivable in cash from: **(A)** Employers ............................ | **2a(1)(A)** | 94386288 | |
| **(B)** Participants .......................................................... | **2a(1)(B)** | | |
| **(C)** Others (including rollovers)........................................ | **2a(1)(C)** | 2652417 | |
| **(2)** Noncash contributions............................................................ | **2a(2)** | | |
| **(3)** Total contributions. Add lines **2a(1)(A)**, **(B)**, **(C)**, and line **2a(2)** ............ | **2a(3)** | | 97038705 |
| **b** Earnings on investments: | | | |
| **(1)** Interest: | | | |
| **(A)** Interest-bearing cash (including money market accounts and certificates of deposit)........................................................ | **2b(1)(A)** | | |
| **(B)** U.S. Government securities ......................................... | **2b(1)(B)** | 1297273 | |
| **(C)** Corporate debt instruments ........................................ | **2b(1)(C)** | 4230859 | |
| **(D)** Loans (other than to participants) ................................. | **2b(1)(D)** | | |
| **(E)** Participant loans ..................................................... | **2b(1)(E)** | | |
| **(F)** Other ................................................................. | **2b(1)(F)** | 1987703 | |
| **(G)** Total interest. Add lines **2b(1)(A)** through **(F)**............................. | **2b(1)(G)** | | 7515835 |
| **(2)** Dividends: **(A)** Preferred stock.............................................. | **2b(2)(A)** | 31548 | |
| **(B)** Common stock ..................................................... | **2b(2)(B)** | 7175249 | |
| **(C)** Registered investment company shares (e.g. mutual funds).......... | **2b(2)(C)** | 1144593 | |
| **(D)** Total dividends. Add lines **2b(2)(A)**, **(B)**, and **(C)** .................... | **2b(2)(D)** | | 8351390 |
| **(3)** Rents ................................................................................. | **2b(3)** | | |
| **(4)** Net gain (loss) on sale of assets: **(A)** Aggregate proceeds ................. | **2b(4)(A)** | 793161544 | |
| **(B)** Aggregate carrying amount (see instructions) ................... | **2b(4)(B)** | 756898476 | |
| **(C)** Subtract line **2b(4)(B)** from line **2b(4)(A)** and enter result ............ | **2b(4)(C)** | | 36263068 |
| **(5)** Unrealized appreciation (depreciation) of assets: **(A)** Real estate ................... | **2b(5)(A)** | -549526 | |
| **(B)** Other ........................................................................ | **2b(5)(B)** | 64110075 | |
| **(C)** Total unrealized appreciation of assets. Add lines **2b(5)(A)** and **(B)** ...................................... | **2b(5)(C)** | | 63560549 |

Page **3**

| | | (a) Amount | (b) Total |
|---|---|---|---|
| (6) Net investment gain (loss) from common/collective trusts...................... | 2b(6) | | 73851728 |
| (7) Net investment gain (loss) from pooled separate accounts ..................... | 2b(7) | | |
| (8) Net investment gain (loss) from master trust investment accounts ......... | 2b(8) | | |
| (9) Net investment gain (loss) from 103-12 investment entities ................... | 2b(9) | | 1438755 |
| (10) Net investment gain (loss) from registered investment companies (e.g., mutual funds)................................... | 2b(10) | | 3422331 |
| c  Other income .................................................................. | 2c | | 98836 |
| d  Total income. Add all **income** amounts in column (b) and enter total.................... | 2d | | 291541197 |

### Expenses

| | | (a) Amount | (b) Total |
|---|---|---|---|
| e  Benefit payment and payments to provide benefits: | | | |
| (1) Directly to participants or beneficiaries, including direct rollovers............ | 2e(1) | 97375810 | |
| (2) To insurance carriers for the provision of benefits ................................. | 2e(2) | | |
| (3) Other ................................................................................ | 2e(3) | | |
| (4) Total benefit payments. Add lines **2e(1)** through **(3)** ....................... | 2e(4) | | 97375810 |
| f  Corrective distributions (see instructions) ........................................... | 2f | | |
| g  Certain deemed distributions of participant loans (see instructions)............... | 2g | | |
| h  Interest expense........................................................................ | 2h | | |
| i  Administrative expenses:  (1) Professional fees ...................................... | 2i(1) | 756936 | |
| (2) Contract administrator fees ......................................................... | 2i(2) | 693036 | |
| (3) Investment advisory and management fees ...................................... | 2i(3) | 5778848 | |
| (4) Other ................................................................................ | 2i(4) | 515191 | |
| (5) Total administrative expenses. Add lines **2i(1)** through **(4)** ...................... | 2i(5) | | 7744011 |
| j  Total expenses. Add all **expense** amounts in column (b) and enter total....... | 2j | | 105119821 |

### Net Income and Reconciliation

| | | (a) Amount | (b) Total |
|---|---|---|---|
| k  Net income (loss). Subtract line **2j** from line **2d**.............................. | 2k | | 186421376 |
| l  Transfers of assets: | | | |
| (1) To this plan ........................................................................ | 2l(1) | | |
| (2) From this plan ..................................................................... | 2l(2) | | |

---

## Part III   Accountant's Opinion

**3**  Complete lines 3a through 3c if the opinion of an independent qualified public accountant is attached to this Form 5500. Complete line 3d if an opinion is not attached.

**a**  The attached opinion of an independent qualified public accountant for this plan is (see instructions):

   **(1)** ☒ Unmodified   **(2)** ☐ Qualified   **(3)** ☐ Disclaimer   **(4)** ☐ Adverse

**b**  Check the appropriate box(es) to indicate whether the IQPA performed an ERISA section 103(a)(3)(C) audit. Check both boxes (1) and (2) if the audit was performed pursuant to both 29 CFR 2520.103-8 and 29 CFR 2520.103-12(d). Check box (3) if pursuant to neither.

   **(1)** ☐ DOL Regulation 2520.103-8  **(2)** ☐ DOL Regulation 2520.103-12(d)  **(3)** ☐ neither DOL Regulation 2520.103-8 nor DOL Regulation 2520.103-12(d).

**c**  Enter the name and EIN of the accountant (or accounting firm) below:

   **(1)** Name:  LINDQUIST LLP                               **(2)** EIN:  52-2385296

**d**  The opinion of an independent qualified public accountant is **not attached** because:

   **(1)** ☐ This form is filed for a CCT, PSA, or MTIA.   **(2)** ☐ It will be attached to the next Form 5500 pursuant to 29 CFR 2520.104-50.

---

## Part IV   Compliance Questions

**4**  CCTs and PSAs do not complete Part IV. MTIAs, 103-12 IEs, and GIAs do not complete lines 4a, 4e, 4f, 4g, 4h, 4k, 4m, 4n, or 5. 103-12 IEs also do not complete lines 4j and 4l. MTIAs also do not complete line 4l.

During the plan year:

| | | Yes | No | Amount |
|---|---|---|---|---|
| a  Was there a failure to transmit to the plan any participant contributions within the time period described in 29 CFR 2510.3-102? Continue to answer "Yes" for any prior year failures until fully corrected. (See instructions and DOL's Voluntary Fiduciary Correction Program.) .................. | 4a | | X | |

Schedule H (Form 5500) 2020                                      Page **4-** 1

| | | Yes | No | Amount |
|---|---|---|---|---|
| **b** | Were any loans by the plan or fixed income obligations due the plan in default as of the close of the plan year or classified during the year as uncollectible? Disregard participant loans secured by participant's account balance. (Attach Schedule G (Form 5500) Part I if "Yes" is checked.) .................................................................. **4b** | | X | |
| **c** | Were any leases to which the plan was a party in default or classified during the year as uncollectible? (Attach Schedule G (Form 5500) Part II if "Yes" is checked.) ........................... **4c** | | X | |
| **d** | Were there any nonexempt transactions with any party-in-interest? (Do not include transactions reported on line 4a. Attach Schedule G (Form 5500) Part III if "Yes" is checked.) .................................................................. **4d** | | X | |
| **e** | Was this plan covered by a fidelity bond?.................................................................. **4e** | X | | 5000000 |
| **f** | Did the plan have a loss, whether or not reimbursed by the plan's fidelity bond, that was caused by fraud or dishonesty? ........................................................ **4f** | | X | |
| **g** | Did the plan hold any assets whose current value was neither readily determinable on an established market nor set by an independent third party appraiser? ...................... **4g** | X | | 855279515 |
| **h** | Did the plan receive any noncash contributions whose value was neither readily determinable on an established market nor set by an independent third party appraiser? .................. **4h** | | X | |
| **i** | Did the plan have assets held for investment? (Attach schedule(s) of assets if "Yes" is checked, and see instructions for format requirements.)............................... **4i** | X | | |
| **j** | Were any plan transactions or series of transactions in excess of 5% of the current value of plan assets? (Attach schedule of transactions if "Yes" is checked and see instructions for format requirements.)............................... **4j** | X | | |
| **k** | Were all the plan assets either distributed to participants or beneficiaries, transferred to another plan, or brought under the control of the PBGC? ........................... **4k** | | X | |
| **l** | Has the plan failed to provide any benefit when due under the plan? ............................... **4l** | | X | |
| **m** | If this is an individual account plan, was there a blackout period? (See instructions and 29 CFR 2520.101-3.) ...................................... **4m** | | | |
| **n** | If 4m was answered "Yes," check the "Yes" box if you either provided the required notice or one of the exceptions to providing the notice applied under 29 CFR 2520.101-3............. **4n** | | | |

**5a** Has a resolution to terminate the plan been adopted during the plan year or any prior plan year?........ ☐ Yes ☒ No
If "Yes," enter the amount of any plan assets that reverted to the employer this year _____ .

**5b** If, during this plan year, any assets or liabilities were transferred from this plan to another plan(s), identify the plan(s) to which assets or liabilities were transferred. (See instructions.)

| **5b(1)** Name of plan(s) | **5b(2)** EIN(s) | **5b(3)** PN(s) |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

**5c** Was the plan a defined benefit plan covered under the PBGC insurance program at any time during this plan year? (See ERISA section 4021 and instructions.) ............................................................................................ ☒ Yes ☐ No ☐ Not determined
If "Yes" is checked, enter the My PAA confirmation number from the PBGC premium filing for this plan year 4315434 _____ .

| **SCHEDULE R** (Form 5500) | **Retirement Plan Information** | OMB No. 1210-0110 |
|---|---|---|
| Department of the Treasury Internal Revenue Service | This schedule is required to be filed under sections 104 and 4065 of the Employee Retirement Income Security Act of 1974 (ERISA) and section 6058(a) of the Internal Revenue Code (the Code). | **2020** |
| Department of Labor Employee Benefits Security Administration | ▶ **File as an attachment to Form 5500.** | **This Form is Open to Public Inspection.** |
| Pension Benefit Guaranty Corporation | | |

For calendar plan year 2020 or fiscal plan year beginning  01/01/2020          and ending          12/31/2020

| **A** Name of plan<br>IUOE STATIONARY ENGINEERS LOCAL 39 PENSION PLAN | **B** Three-digit plan number (PN) ▶ | 001 |
|---|---|---|

| **C** Plan sponsor's name as shown on line 2a of Form 5500<br>BOT OF IUOE STATIONARY ENGINEERS LOCAL 39 PENSION | **D** Employer Identification Number (EIN)<br>94-6118939 |
|---|---|

| **Part I** | **Distributions** |
|---|---|

All references to distributions relate only to payments of benefits during the plan year.

**1** Total value of distributions paid in property other than in cash or the forms of property specified in the instructions…………………………………………………………………………………………………… | **1** |

**2** Enter the EIN(s) of payor(s) who paid benefits on behalf of the plan to participants or beneficiaries during the year (if more than two, enter EINs of the two payors who paid the greatest dollar amounts of benefits):

EIN(s): _____          _____

**Profit-sharing plans, ESOPs, and stock bonus plans, skip line 3.**

**3** Number of participants (living or deceased) whose benefits were distributed in a single sum, during the plan year……………………………………………………………………………………………………… | **3** | 4 |

| **Part II** | **Funding Information** (If the plan is not subject to the minimum funding requirements of section 412 of the Internal Revenue Code or ERISA section 302, skip this Part.) |
|---|---|

**4** Is the plan administrator making an election under Code section 412(d)(2) or ERISA section 302(d)(2)? ...................... ☐ Yes ☒ No ☐ N/A

**If the plan is a defined benefit plan, go to line 8.**

**5** If a waiver of the minimum funding standard for a prior year is being amortized in this plan year, see instructions and enter the date of the ruling letter granting the waiver. **Date:** Month _____ Day _____ Year _____

**If you completed line 5, complete lines 3, 9, and 10 of Schedule MB and do not complete the remainder of this schedule.**

**6 a** Enter the minimum required contribution for this plan year (include any prior year accumulated funding deficiency not waived) ........................ | **6a** |

**b** Enter the amount contributed by the employer to the plan for this plan year ................................ | **6b** |

**c** Subtract the amount in line 6b from the amount in line 6a. Enter the result (enter a minus sign to the left of a negative amount) ........................ | **6c** |

**If you completed line 6c, skip lines 8 and 9.**

**7** Will the minimum funding amount reported on line 6c be met by the funding deadline?....................................... ☐ Yes ☐ No ☐ N/A

**8** If a change in actuarial cost method was made for this plan year pursuant to a revenue procedure or other authority providing automatic approval for the change or a class ruling letter, does the plan sponsor or plan administrator agree with the change? ........................ ☐ Yes ☐ No ☒ N/A

| **Part III** | **Amendments** |
|---|---|

**9** If this is a defined benefit pension plan, were any amendments adopted during this plan year that increased or decreased the value of benefits? If yes, check the appropriate box. If no, check the "No" box................................................................ ☐ Increase ☐ Decrease ☐ Both ☒ No

| **Part IV** | **ESOPs** (see instructions). If this is not a plan described under section 409(a) or 4975(e)(7) of the Internal Revenue Code, skip this Part. |
|---|---|

**10** Were unallocated employer securities or proceeds from the sale of unallocated securities used to repay any exempt loan? ............ ☐ Yes ☐ No

**11 a** Does the ESOP hold any preferred stock? ............................................................................................. ☐ Yes ☐ No

**b** If the ESOP has an outstanding exempt loan with the employer as lender, is such loan part of a "back-to-back" loan? (See instructions for definition of "back-to-back" loan.) ........................ ☐ Yes ☐ No

**12** Does the ESOP hold any stock that is not readily tradable on an established securities market?......................................... ☐ Yes ☐ No

**For Paperwork Reduction Act Notice, see the Instructions for Form 5500.**          **Schedule R (Form 5500) 2020**
                                                                                              **v. 200204**

| **Part V** | **Additional Information for Multiemployer Defined Benefit Pension Plans** |
|---|---|

**13** Enter the following information for each employer that contributed more than 5% of total contributions to the plan during the plan year (measured in dollars). See instructions. *Complete as many entries as needed to report all applicable employers.*

**a** Name of contributing employer  KAISER PERMANENTE

**b** EIN  94-1105628    **c** Dollar amount contributed by employer    13416187

**d** Date collective bargaining agreement expires *(If employer contributes under more than one collective bargaining agreement, check box ☐ and see instructions regarding required attachment. Otherwise, enter the applicable date.)*   Month _09_   Day _17_   Year _2021_

**e** Contribution rate information *(If more than one rate applies, check this box ☐ and see instructions regarding required attachment.  Otherwise, complete lines 13e(1) and 13e(2).)*
(1)   Contribution rate (in dollars and cents)  9.28
(2)   Base unit measure: ☒ Hourly   ☐ Weekly   ☐ Unit of production   ☐ Other (specify):

**a** Name of contributing employer  ABLE ENGINEERING SERVICES

**b** EIN  94-3226677    **c** Dollar amount contributed by employer    26735973

**d** Date collective bargaining agreement expires *(If employer contributes under more than one collective bargaining agreement, check box ☒ and see instructions regarding required attachment. Otherwise, enter the applicable date.)*   Month _____   Day _____   Year _____

**e** Contribution rate information *(If more than one rate applies, check this box ☒ and see instructions regarding required attachment.  Otherwise, complete lines 13e(1) and 13e(2).)*
(1)   Contribution rate (in dollars and cents) _____
(2)   Base unit measure: ☐ Hourly   ☐ Weekly   ☐ Unit of production   ☐ Other (specify): _____

**a** Name of contributing employer

**b** EIN    **c** Dollar amount contributed by employer

**d** Date collective bargaining agreement expires *(If employer contributes under more than one collective bargaining agreement, check box ☐ and see instructions regarding required attachment. Otherwise, enter the applicable date.)*   Month _____   Day _____   Year _____

**e** Contribution rate information *(If more than one rate applies, check this box ☐ and see instructions regarding required attachment.  Otherwise, complete lines 13e(1) and 13e(2).)*
(1)   Contribution rate (in dollars and cents) _____
(2)   Base unit measure: ☐ Hourly   ☐ Weekly   ☐ Unit of production   ☐ Other (specify): _____

**a** Name of contributing employer

**b** EIN    **c** Dollar amount contributed by employer

**d** Date collective bargaining agreement expires *(If employer contributes under more than one collective bargaining agreement, check box ☐ and see instructions regarding required attachment. Otherwise, enter the applicable date.)*   Month _____   Day _____   Year _____

**e** Contribution rate information *(If more than one rate applies, check this box ☐ and see instructions regarding required attachment.  Otherwise, complete lines 13e(1) and 13e(2).)*
(1)   Contribution rate (in dollars and cents) _____
(2)   Base unit measure: ☐ Hourly   ☐ Weekly   ☐ Unit of production   ☐ Other (specify): _____

**a** Name of contributing employer

**b** EIN    **c** Dollar amount contributed by employer

**d** Date collective bargaining agreement expires *(If employer contributes under more than one collective bargaining agreement, check box ☐ and see instructions regarding required attachment. Otherwise, enter the applicable date.)*   Month _____   Day _____   Year _____

**e** Contribution rate information *(If more than one rate applies, check this box ☐ and see instructions regarding required attachment.  Otherwise, complete lines 13e(1) and 13e(2).)*
(1)   Contribution rate (in dollars and cents) _____
(2)   Base unit measure: ☐ Hourly   ☐ Weekly   ☐ Unit of production   ☐ Other (specify): _____

**a** Name of contributing employer

**b** EIN    **c** Dollar amount contributed by employer

**d** Date collective bargaining agreement expires *(If employer contributes under more than one collective bargaining agreement, check box ☐ and see instructions regarding required attachment. Otherwise, enter the applicable date.)*   Month _____   Day _____   Year _____

**e** Contribution rate information *(If more than one rate applies, check this box ☐ and see instructions regarding required attachment.  Otherwise, complete lines 13e(1) and 13e(2).)*
(1)   Contribution rate (in dollars and cents) _____
(2)   Base unit measure: ☐ Hourly   ☐ Weekly   ☐ Unit of production   ☐ Other (specify): _____

Schedule R (Form 5500) 2020          Page **3**

| | | |
|---|---|---|
| **14** Enter the number of deferred vested and retired participants (inactive participants), as of the beginning of the plan year, whose contributing employer is no longer making contributions to the plan for: | | |
| **a** The current plan year. Check the box to indicate the counting method used to determine the number of inactive participants: ☒ last contributing employer ☐ alternative ☐ reasonable approximation (see instructions for required attachment)................................................................................. | **14a** | 767 |
| **b** The plan year immediately preceding the current plan year. ☐ Check the box if the number reported is a change from what was previously reported (see instructions for required attachment)............................ | **14b** | 714 |
| **c** The second preceding plan year. ☐ Check the box if the number reported is a change from what was previously reported (see instructions for required attachment)................................................... | **14c** | 696 |
| **15** Enter the ratio of the number of participants under the plan on whose behalf no employer had an obligation to make an employer contribution during the current plan year to: | | |
| **a** The corresponding number for the plan year immediately preceding the current plan year............................ | **15a** | 1.23 |
| **b** The corresponding number for the second preceding plan year ................................................... | **15b** | 1.22 |
| **16** Information with respect to any employers who withdrew from the plan during the preceding plan year: | | |
| **a** Enter the number of employers who withdrew during the preceding plan year ................................. | **16a** | 1 |
| **b** If line 16a is greater than 0, enter the aggregate amount of withdrawal liability assessed or estimated to be assessed against such withdrawn employers................................................................... | **16b** | 15936 |

**17** If assets and liabilities from another plan have been transferred to or merged with this plan during the plan year, check box and see instructions regarding supplemental information to be included as an attachment. ........................................................................................................................ ☐

| **Part VI** | **Additional Information for Single-Employer and Multiemployer Defined Benefit Pension Plans** |
|---|---|

**18** If any liabilities to participants or their beneficiaries under the plan as of the end of the plan year consist (in whole or in part) of liabilities to such participants and beneficiaries under two or more pension plans as of immediately before such plan year, check box and see instructions regarding supplemental information to be included as an attachment..................................................................................................................................... ☐

**19** If the total number of participants is 1,000 or more, complete lines (a) through (c)
    **a** Enter the percentage of plan assets held as:
       Stock: __60.5 %   Investment-Grade Debt: __13.4 %   High-Yield Debt: __2.6 %   Real Estate: __10.2 %   Other: __13.3 %
    **b** Provide the average duration of the combined investment-grade and high-yield debt:
       ☐ 0-3 years   ☒ 3-6 years   ☐ 6-9 years   ☐ 9-12 years   ☐ 12-15 years   ☐ 15-18 years   ☐ 18-21 years   ☐ 21 years or more
    **c** What duration measure was used to calculate line 19(b)?
       ☒ Effective duration   ☐ Macaulay duration   ☐ Modified duration   ☐ Other (specify):

**20 PBGC missed contribution reporting requirements.** If this is a multiemployer plan or a single-employer plan that is not covered by PBGC, skip line 20.
    **a** Is the amount of unpaid minimum required contributions for all years from Schedule SB (Form 5500) line 40 greater than zero? ☐ Yes ☒ No
    **b** If line 20a is "Yes," has PBGC been notified as required by ERISA sections 4043(c)(5) and/or 303(k)(4)? Check the applicable box:
       ☐ Yes.
       ☐ No. Reporting was waived under 29 CFR 4043.25(c)(2) because contributions equal to or exceeding the unpaid minimum required contribution were made by the 30th day after the due date.
       ☐ No. The 30-day period referenced in 29 CFR 4043.25(c)(2) has not yet ended, and the sponsor intends to make a contribution equal to or exceeding the unpaid minimum required contribution by the 30th day after the due date.
       ☐ No. Other. Provide explanation_____

**IUOE STATIONARY ENGINEERS LOCAL 39
PENSION PLAN**

FINANCIAL STATEMENTS

DECEMBER 31, 2020

**IUOE STATIONARY ENGINEERS LOCAL 39 PENSION PLAN**

FINANCIAL STATEMENTS WITH ADDITIONAL INFORMATION
DECEMBER 31, 2020 AND 2019

CONTENTS

Independent Auditors' Report.................................................................................................... 1

Statements of Net Assets Available for Benefits.................................................................... 3

Statements of Changes in Net Assets Available for Benefits.... ………… ………………………… …...... 4

Notes to Financial Statements………………………………………………………...…… .… 5

Additional Information

    Independent Auditors' Report on Additional Information.………… …………...…………...…… …... 20

    Schedules of Administrative Expenses…..………………………………...…… ……...…………... 21

    Schedule H - Financial Schedules (IRS Form 5500)



---

## INDEPENDENT AUDITORS' REPORT

---

To the Participants and Trustees of
IUOE Stationary Engineers Local 39 Pension Plan

REPORT ON THE FINANCIAL STATEMENTS

We have audited the accompanying financial statements of IUOE Stationary Engineers Local 39 Pension Plan (the Plan), which comprise the statements of net assets available for benefits as of December 31, 2020 and 2019; the related statements of changes in net assets available for benefits for the years then ended; and the related notes to the financial statements.

MANAGEMENT'S RESPONSIBILITY FOR THE FINANCIAL STATEMENTS

Management is responsible for the preparation and fair presentation of these financial statements in accordance with accounting principles generally accepted in the United States of America, which includes the design, implementation and maintenance of internal control relevant to the preparation and fair presentation of financial statements that are free from material misstatement, whether due to fraud or error.

AUDITORS' RESPONSIBILITY

Our responsibility is to express an opinion on these financial statements based on our audits. We conducted our audits in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audits to obtain reasonable assurance about whether the financial statements are free from material misstatement.

An audit involves performing procedures to obtain audit evidence about the amounts and disclosures in the financial statements. The procedures selected depend on the auditors' judgment, including the assessment of the risks of material misstatement of the financial statements, whether due to fraud or error. In making those risk assessments, the auditors consider internal control relevant to the Plan's preparation and fair presentation of the financial statements in order to design audit procedures that are appropriate in the

To the Participants and Trustees of

IUOE Stationary Engineers Local 39 Pension Plan

Page two

circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Plan's internal control. Accordingly, we express no such opinion. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluating the overall presentation of the financial statements.

We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

OPINION

In our opinion, the financial statements referred to above present fairly, in all material respects, information regarding IUOE Stationary Engineers Local 39 Pension Plan's net assets available for benefits as of December 31, 2020, and changes therein for the year then ended and its financial status as of December 31, 2019, and changes therein for the year then ended in accordance with accounting principles generally accepted in the United States of America.

*Lindquist LP*

July 15, 2021

**IUOE STATIONARY ENGINEERS LOCAL 39 PENSION PLAN**

STATEMENTS OF NET ASSETS AVAILABLE FOR BENEFITS
DECEMBER 31, 2020 AND 2019

| | 2020 | 2019 |
|---|---|---|
| **ASSETS** | | |
| INVESTMENTS - at fair value | | |
| Corporate bonds | $   125,379,592 | $   120,637,826 |
| U.S. Treasury notes | 43,464,496 | 75,461,645 |
| U.S. Government Agency obligations | 14,754,571 | 26,280,444 |
| Equity securities | 479,447,650 | 361,722,783 |
| Limited liability companies | 54,354,342 | 53,482,245 |
| Common/collective trusts | 587,480,416 | 546,076,219 |
| 103-12 investment entity | 25,850,330 | 24,411,575 |
| AFL-CIO Housing Investment Trust | 24,273,167 | 22,856,813 |
| Hedge funds | 36,708,222 | 29,951,381 |
| Limited partnerships | 64,767,171 | 72,831,647 |
| Other private equity | 61,845,867 | 21,160,425 |
| Real estate investment trusts | 8,980,145 | 8,976,801 |
| Exchange-traded funds | 23,940,053 | 21,245,543 |
| Cash equivalents | 18,019,834 | 593,442 |
| Total investments | 1,569,265,856 | 1,385,688,789 |
| RECEIVABLES | | |
| Employer contributions | 7,540,644 | 7,821,581 |
| Accrued interest and dividends | 1,266,182 | 1,705,101 |
| Due from broker for securities sold | 3,524,618 | 254,602 |
| Withdrawal liability receivable | 2,354,275 | 722,042 |
| Total receivables | 14,685,719 | 10,503,326 |
| PREPAID BENEFITS | 7,352,939 | 6,798,567 |
| CASH | 2,109,340 | 3,334,253 |
| Total assets | 1,593,413,854 | 1,406,324,935 |
| **LIABILITIES AND NET ASSETS** | | |
| LIABILITIES | | |
| Accounts payable | 502,098 | 429,354 |
| Due to related plans | 713,692 | 399,458 |
| Due to broker for securities purchased | 4,012,536 | 3,731,971 |
| Total liabilities | 5,228,326 | 4,560,783 |
| NET ASSETS AVAILABLE FOR BENEFITS | $   1,588,185,528 | $1,401,764,152 |

See accompanying notes to financial statements.

## IUOE STATIONARY ENGINEERS LOCAL 39 PENSION PLAN

STATEMENTS OF CHANGES IN NET ASSETS AVAILABLE FOR BENEFITS
YEARS ENDED DECEMBER 31, 2020 AND 2019

|  | 2020 | 2019 |
|---|---|---|
| **ADDITIONS** | | |
| Investment income | | |
| Net appreciation in fair value of investments | $ 178,121,176 | $ 183,292,859 |
| Interest and dividends | 16,282,480 | 17,253,034 |
| Class-action settlement income | 98,836 | 40,580 |
| | 194,502,492 | 200,586,473 |
| Less investment expenses | (5,778,848) | (5,239,587) |
| Investment income - net | 188,723,644 | 195,346,886 |
| Employer contributions | 92,681,747 | 92,367,232 |
| Rollover contributions | 2,652,417 | 1,329,744 |
| Withdrawal liability income | 1,704,541 | 399,215 |
| Total additions | 285,762,349 | 289,443,077 |
| | | |
| **DEDUCTIONS** | | |
| Pension benefits | 97,375,810 | 89,735,634 |
| Withdrawal liability expense | - | 1,540,332 |
| Administrative expenses | 1,965,163 | 1,809,023 |
| Total deductions | 99,340,973 | 93,084,989 |
| | | |
| NET CHANGE | 186,421,376 | 196,358,088 |
| | | |
| NET ASSETS AVAILABLE FOR BENEFITS | | |
| Beginning of year | 1,401,764,152 | 1,205,406,064 |
| End of year | $ 1,588,185,528 | $ 1,401,764,152 |

See accompanying notes to financial statements.

## IUOE STATIONARY ENGINEERS LOCAL 39 PENSION PLAN

NOTES TO FINANCIAL STATEMENTS
DECEMBER 31, 2020 AND 2019

**NOTE 1.        SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES**

**Method of Accounting** - The accompanying financial statements are prepared using the accrual basis of accounting in accordance with accounting principles generally accepted in the United States of America.

**Investment Valuation, Transactions and Income Recognition** -

*General* - Investments are carried at fair value, which is determined, presented and disclosed in accordance with Financial Accounting Standards Board Accounting Standards Codification (FASB ASC) 820, *Fair Value Measurements and Disclosures*. Under FASB ASC 820, fair value is defined as the price that would be received to sell an asset or paid to transfer a liability (i.e., the "exit price") in an orderly transaction between market participants at the measurement date.

FASB ASC 820 establishes a fair value hierarchy for inputs used in measuring fair value that maximizes the use of observable inputs and minimizes the use of unobservable inputs by requiring that the most observable inputs be used when available. Observable inputs are those that market participants would use in pricing the asset or liability based on market data obtained from sources independent of the Plan. Unobservable inputs reflect the Plan's assumptions about inputs that market participants would use in pricing the investments developed based on the best information available in the circumstances. The fair value hierarchy is categorized into three levels, based on the inputs, as follows:

> Level 1 - Valuations based on quoted prices in active markets for identical assets or liabilities that the Plan has the ability to access.

> Level 2 - Valuations based on quoted prices in markets that are not active, quoted prices for similar investments in active markets or model-based valuations for which all significant assumptions are observable and can be corroborated by observable market data.

> Level 3 - Valuations based on unobservable inputs that are supported by little or no market activity and are significant to the overall fair value measurement. Values are determined using proprietary pricing models, discounted cash flow models that include the investment entities' own judgments and estimations, or some other pricing method using unobservable inputs.

**NOTE 1.        SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES (CONT'D)**

*Inputs and Valuation Methods* - In determining fair value, FASB ASC 820 allows various valuation approaches. The specific methods used for each of the Plan's investment classes are presented below.

*Investments with quoted market prices:* Where available, quoted market prices are used to value the Plan's investments (Level 1).

*Corporate bonds* and *U.S. Government Agency obligations:* The fair value of corporate bonds and U.S. Government Agency obligations is generally determined based on a model that uses inputs such as interest-rate yield curves, cross-currency-basis index spreads or country credit-spreads, which are similar to the valued bond in terms of issuer, maturity and seniority (Level 2).

*Limited liability companies, common/collective trusts, a 103-12 investment entity, AFL-CIO Housing Investment Trust, hedge funds, and other private equity:* The fair value of the investments in these categories has been estimated using the net asset value per share of the investments. The net asset value is being used as a practical expedient to estimate fair value.

*Limited partnerships:* The Plan invests in limited partnerships based on the terms of the respective subscription agreements. The fair value of the limited partnerships is based on the Plan's ownership interest in the partners' capital as determined by the general partner of each of the limited partnerships. The net asset value is being used as a practical expedient to estimate fair value.

*Options contracts*: Options contracts that are publicly traded in active markets are valued at closing prices as of the last business day of the year (Level 1). Other options are valued at their fair value, as determined in good faith in accordance with the procedures adopted by the investment manager. Such procedures include obtaining quotes from pricing agents and utilizing pricing models based on available market data (Level 2). The Plan sold option contracts during 2020 and 2019; however, the Plan did not have open contracts as of December 31, 2020 and December 31, 2019.

*Valuation Methods, Consistency* - The valuation techniques used in the accompanying financial statements have been consistently applied.

*Transactions and Income Recognition* - Purchases and sales of securities are recorded on a trade-date basis. Interest income is recorded on the accrual basis. Dividends are recorded on the ex-dividend date. Net appreciation includes the Plan's gains and losses on investments bought and sold as well as held during the year.

**NOTE 1.         SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES (CONT'D)**

**Employer Contributions Receivable** - Employer contributions due and not paid prior to the year-end are recorded as employer contributions receivable. Contributions due as a result of payroll audits have been recorded net of an allowance equal to the amount due because collectability is uncertain. Therefore, delinquent contributions are recorded when received.

**Rollover Contributions** - Rollover contributions represent transfers of the participant's account balance from the IUOE Stationary Engineers Local 39 Annuity Plan. Under the Pension Enhancement Option, participants may elect such transfers for the purpose of providing additional monthly retirement income from IUOE Stationary Engineers Local 39 Pension Plan (the Plan).

**Withdrawal Liability Income, Expense and Receivable** - Withdrawal liability income is recognized when the withdrawal liability amount has been assessed and agreed to by the employer. An allowance for uncollectible accounts is deemed unnecessary. The withdrawal liability expense represents abatements and other adjustments to amounts previously assessed.

**Actuarial Present Value of Accumulated Plan Benefits** - Accumulated Plan benefits are those future periodic payments, including lump-sum distributions, that are attributable under the Plan's provisions to the service that employees have rendered. Accumulated Plan benefits include benefits expected to be paid to (a) retired or terminated employees or their beneficiaries, (b) beneficiaries of employees who have died, and (c) present employees or their beneficiaries.

**Estimates** - The preparation of financial statements in conformity with generally accepted accounting principles requires management to make estimates and assumptions that affect certain reported amounts and disclosures in the financial statements. Actual results could differ from those estimates.

**Risks and Uncertainties** - The actuarial present value of accumulated Plan benefits is calculated based on certain assumptions pertaining to interest rates, participant demographics and other assumptions, all of which are subject to change. Due to the inherent uncertainty of the assumption process, it is at least reasonably possible that changes in these assumptions in the near term would be material to the disclosure to the financial statements of the actuarial present value of accumulated Plan benefits.

The Plan invests in corporate bonds, U.S. Treasury notes, U.S. Government Agency obligations, equity securities, limited liability companies, common/collective trusts, a 103-12 investment entity, an AFL-CIO Housing Investment Trust, hedge funds, limited partnerships, real estate investment trusts, options contracts, and exchange-traded funds. Such investments are exposed to various risks, such as interest rate,

**NOTE 1.**      **SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES (CONT'D)**

market and credit. Due to the level of risk associated with certain investments and the level of uncertainty with respect to changes in the value of investments, it is at least reasonably possible that changes in the values of investment securities will occur in the near term that could materially affect the amounts reported in the statements of net assets available for benefits and the statements of changes in net assets available for benefits.

**NOTE 2.**      **DESCRIPTION OF THE PLAN**

The Plan was established during 1955 as a result of collective bargaining agreements between the union and various employers to provide retirement, death and disability benefits for eligible participants. The Plan is financed by employer contributions, as specified in the collective bargaining agreements. Substantially all employers are located in Northern California and are signatory to collective bargaining agreements with Local 39. The Plan is a multiemployer defined benefit pension plan and is subject to the provisions of the Employee Retirement Income Security Act of 1974 (ERISA), as amended.

Pension and death benefits are dependent upon the type of retirement for which a participant is eligible and the number of years of service with which the participant is credited. Benefits include regular pension benefits, early retirement pension benefits, disability pension benefits, and other pre-retirement death and joint-and-survivor benefits.

Under current provisions of the Plan, a participant becomes vested after accumulating five years of vesting service or 60 months of credited future service, including 500 hours of work after January 1, 1991. One year of vesting service is earned for each Plan year in which a participant has 1,000 or more hours of work. Contributions for hours worked from July 1, 2008, through June 30, 2009, did not earn pension credits. For hours worked after June 2009 and forward, the multiplier for calculating pension benefits changed from $3.50 per month for each $100 of contributions received to $2.25 per month for each $100 of contributions.

The Plan provides a pension enhancement option for participants. With this option, the Plan may accept transfers (rollovers) from the IUOE Stationary Engineers Local 39 Annuity Plan for the purpose of providing additional monthly retirement income from this Plan. The amount of the additional monthly benefit is calculated using the rate of 5.5% and the RP-2000 Combined Healthy Blue Collar Mortality Tables. Participants should refer to the Summary Plan Description for more complete information.

In 2010, the Plan was certified to be in critical status based on estimated financial information provided as of December 31, 2009, and using the liabilities disclosed in the 2008 actuarial valuation projected forward to December 31, 2009.

## NOTE 3.        PENSION PROTECTION ACT OF 2006

Effective August 1, 2010, the Plan's Board of Trustees approved a rehabilitation plan to improve the funding status. Under the rehabilitation plan, three-fourths (75%) of employer contributions (the "coupled contribution") will be considered in calculating benefits under the terms of the Plan and one-fourth (25%) of employer contributions (the "uncoupled contribution") will be used to improve the funded status of the Plan based on the contribution rate effective in 2010. In the event of contribution rate increases, the portion of contributions received attributable to the rate increase will also be considered in calculating benefits. The objective of the rehabilitation plan is for the Plan to cease to be in critical status by the end of the rehabilitation period (10 years from the start of the rehabilitation plan) and to demonstrate there will be no minimum funding deficiency for the nine years following emergence from critical status. The Plan emerged from critical status with the actuarial certification under the Pension Protection Act filed on March 31, 2011. In June 2014, the Plan was amended to clarify that the uncoupled·contribution will remain in place until the Plan is otherwise amended.

The Plan was certified to be in safe status based on: The actuarial certifications filed on March 23, 2020; estimated financial information provided as of December 31, 2019; and using the liabilities disclosed in the January 1, 2019, actuarial valuations projected forward to January 1, 2020.

## NOTE 4.        PRIORITIES UPON TERMINATION

It is the intent of the Trustees to continue the Plan in full force and effect; however, the right to discontinue the Plan is reserved to the Trustees. Termination shall not permit any part of the Plan assets to be used for, or diverted to, purposes other than the exclusive benefit of the pensioners, beneficiaries and participants. In the event of termination, the net assets of the Plan will be allocated to pay benefits in priorities as prescribed by ERISA and its related regulations. Whether or not a particular participant will receive full benefits should the Plan terminate at some future time will depend on the sufficiency of the Plan's net assets at that time and the priority of those benefits.

In addition, certain benefits under the Plan are insured by the Pension Benefit Guaranty Corporation (the PBGC) if the Plan terminates. Generally, the PBGC guarantees most vested normal-age retirement benefits, early retirement benefits, and certain disability and survivor's pensions. The PBGC does not guarantee all types of benefits, and the amount of any individual participant's benefit protection is subject to certain limitations, particularly with respect to benefit increases as a result of Plan amendments in effect for less than five years. Some benefits may be fully or partially provided, while other benefits may not be provided at all.

**NOTE 5.      TAX STATUS**

The Plan obtained its latest determination letter, dated June 17, 2015, in which the Internal Revenue Service stated that the Plan, as then designed, was in compliance with the applicable requirements under Section 401(a) of the Internal Revenue Code and was, therefore, exempt from federal income taxes under the provisions of Section 501(a). The Plan's administrator has analyzed the tax positions taken by the Plan and has concluded that, as of December 31, 2020, there are no uncertain positions taken, or expected to be taken, that would require recognition of a liability or disclosure in the financial statements. The Plan is subject to routine audits by the taxing jurisdictions; however, there are currently no audits for any tax periods in progress. The Plan's administrator believes the Plan is no longer subject to income tax examinations for the fiscal years prior to 2017.

**NOTE 6.      ACTUARIAL INFORMATION**

Actuarial valuation of the Plan was made by Cheiron as of December 31, 2019. Information in the report included the following:

| | |
|---|---:|
| Actuarial present value of accumulated Plan benefits | |
| Vested benefits | |
| Participants currently receiving payments | $ 781,908,137 |
| Other participants | 831,405,487 |
| Total vested benefits | 1,613,313,624 |
| Non-vested benefits | 51,882,085 |
| Total actuarial present value of | |
| accumulated Plan benefits | $ 1,665,195,709 |

**NOTE 6.      ACTUARIAL INFORMATION (CONT'D)**

As reported by Cheiron, the changes in the present value of accumulated Plan benefits for the year ended December 31, 2019, were as follows:

| | |
|---|---:|
| Actuarial present value of accumulated Plan benefits at beginning of year | $ 1,568,292,971 |
| Increase (decrease) during the year attributable to: | |
| Benefits accumulated, net experience gain or loss and changes in data | 64,765,715 |
| Interest | 121,872,657 |
| Benefits paid | (89,735,634) |
| Net increase | 96,902,738 |
| Actuarial present value of accumulated Plan benefits at end of year | $ 1,665,195,709 |

The computations of the actuarial present value of accumulated Plan benefits were made as of January 1, 2020. Had the valuations been made as of December 31, 2019, there would be no material differences. However, amendments were adopted on January 1, 2020.

The actuarial valuation was made using the unit-credit cost method. Some of the more significant actuarial assumptions used in the December 31, 2019, valuations were:

| | |
|---|---|
| Life expectancy of participants: | 125% of the RP-2014 Blue Collar Mortality and projected with 25% of the Ultimate Scale MP-2014 rates. |
| Retirement age assumptions: | Rate of retirement (assuming eligibility) - ranging from 5% at age 55 to 100% at age 70. It is assumed that all current active employees will retire from active status, and not inactive status, in regard to accrued benefits. Vested terminated participants are assumed to retire at age 65. |
| Investment rate of return: | 7.70%, compounded annually. |
| Asset valuation: | The value of assets is based on recognizing investment gains/ losses at the rate of 20% per Plan year, except for 2008 investment losses, which are recognized at a rate of 10% per Plan year due to PRA 2010 Funding Relief. The actuarial value of assets (AVA) is the market value minus unrecognized gains/losses. The unrecognized gains/losses for each Plan year are equal to the actual return on assets minus the expected return on assets. The AVA is adjusted, if necessary, to remain between 80% and 120% of the market value. |
| Administrative expenses: | $1,750,000 annually and increasing by 2% per year. |

**NOTE 6.    ACTUARIAL INFORMATION (CONT'D)**

The above actuarial assumptions are based on the presumption that the Plan will continue. Were the Plan to terminate, different actuarial assumptions and other factors might be applicable in determining actuarial results. Pension benefits in excess of the present assets of the Plan are dependent upon contributions received under collective bargaining agreements with employers and income from investments.

Because information on the accumulated Plan benefits at December 31, 2020, and the changes therein for the year then ended are not included above, these financial statements do not purport to present a complete presentation of the financial status of the Plan as of December 31, 2020, and the changes in its financial status for the year then ended, but only present the net assets available for benefits and the changes therein as of and for the year ended December 31, 2020. The complete financial status is presented as of December 31, 2019.

**NOTE 7.    FUNDING POLICY**

The participating employers contribute such amounts as are specified in the collective bargaining agreements. The Plan's actuary has advised that the minimum funding requirements of ERISA are currently being met as of December 31, 2019.

**NOTE 8.    WITHDRAWAL LIABILITY**

The Plan complies with the provisions of the Multiemployer Pension Plan Amendment Act of 1980 (MPPAA), which requires imposition of withdrawal liability on a contributing employer that partially or totally withdraws from the Plan. Under the provisions of MPPAA, a portion of the Plan's unfunded vested liability would be allocated to a withdrawing employer. The Plan's actuary has advised the Plan that, as of December 31, 2020 and 2019, the Plan has an estimated unfunded vested liability of $181,972,000 and $156,990,000, respectively.

During the years ended December 31, 2020 and 2019, the withdrawal liability assessed to employers totaled approximately $1,705,000 and $399,000, respectively. During the year ended December 31, 2019, previously assessed withdrawal liability amounts were adjusted down by approximately $1,540,000 and this amount is reflected in withdrawal liability expense. The withdrawal liability receivable as of December 31, 2020 and 2019, totaled approximately $2,354,000 and $722,000, respectively.

**NOTE 9.**     **INVESTMENTS AT FAIR VALUE HIERARCHY**

Assets measured at fair value on a recurring basis, based on their fair value hierarchy at December 31, 2020 and 2019, are as follows:

| | December 31, 2020 | Fair Value Measurements at Reporting Date Using: | |
|---|---|---|---|
| | | Quoted Prices in Active Markets for Identical Assets (Level 1) | Significant Other Observable Inputs (Level 2) |
| Assets in the fair value hierarchy | | | |
| Corporate bonds | $  125,379,592 | $           - | $  125,379,592 |
| U.S. Treasury notes | 43,464,496 | 43,464,496 | - |
| U.S. Government Agency obligations | 14,754,571 | - | 14,754,571 |
| Equity securities | 479,447,650 | 479,447,650 | - |
| Real estate investment trust | 8,980,145 | 8,980,145 | - |
| Exchange-traded funds | 23,940,053 | 23,940,053 | - |
| Cash equivalents | 18,019,834 | 18,019,834 | - |
| Total assets in the fair value heirarchy | 713,986,341 | $  573,852,178 | $  140,134,163 |
| Investments measured at net asset value | | | |
| Limited liability companies | 54,354,342 | | |
| Common/collective trusts | 587,480,416 | | |
| 103-12 investment entity | 25,850,330 | | |
| AFL-CIO Housing Investment Trust | 24,273,167 | | |
| Hedge funds | 36,708,222 | | |
| Limited partnerships | 64,767,171 | | |
| Other private equity | 61,845,867 | | |
| Total investments measured at net asset value | 855,279,515 | | |
| Total investments at fair value | $ 1,569,265,856 | | |

NOTE 9.        INVESTMENTS AT FAIR VALUE HIERARCHY (CONT'D)

| | December 31, 2019 | Fair Value Measurements at Reporting Date Using: | |
| --- | --- | --- | --- |
| | | Quoted Prices in Active Markets for Identical Assets (Level 1) | Significant Other Observable Inputs (Level 2) |
| Assets in the fair value hierarchy | | | |
| Corporate bonds | $ 120,637,826 | $ - | $ 120,637,826 |
| U.S. Treasury notes | 75,461,645 | 75,461,645 | - |
| U.S. Government Agency obligations | 26,280,444 | - | 26,280,444 |
| Equity securities | 361,722,783 | 361,722,783 | - |
| Real estate investment trust | 8,976,801 | 8,976,801 | - |
| Exchange-traded funds | 21,245,543 | 21,245,543 | - |
| Cash equivalents | 593,442 | 593,442 | - |
| Total assets in the fair value heirarchy | 614,918,484 | $ 468,000,214 | $ 146,918,270 |
| Investments measured at net asset value | | | |
| Limited liability companies | 53,482,245 | | |
| Common/collective trusts | 546,076,219 | | |
| 103-12 investment entity | 24,411,575 | | |
| AFL-CIO Housing Investment Trust | 22,856,813 | | |
| Hedge funds | 29,951,381 | | |
| Limited partnerships | 72,831,647 | | |
| Other private equity | 21,160,425 | | |
| Total investments measured at net asset value | 770,770,305 | | |
| Total investments at fair value | $ 1,385,688,789 | | |

**NOTE 10.        INVESTMENTS IN CERTAIN ENTITIES THAT CALCULATE NET ASSET VALUE**

The guidance provided by FASB ASU 2009-12, *Investments in Certain Entities that Calculate Net Asset Value Per Share (or its Equivalent),* permits entities to use net asset value (NAV) per share (or its equivalent), as a practical expedient, to measure fair value when the investment does not have a readily determinable fair value and the net asset value is calculated in a manner consistent with investment company accounting.

Investments valued based on net asset value as of December 31, 2020 and 2019, are as follows:

| Investment Type | Fair Value as of December 31, 2020 | 2019 | | Unfunded Commitments as of December 31, 2020 | 2019 | Redemption Frequency (if currently eligible) | Redemption Notice Period |
|---|---|---|---|---|---|---|---|
| Common/collective trusts | | | | | | | |
| Real estate | $ 79,427,059 | $ 79,798,234 | {a} | $ - | $ - | Annually | 1–365 days |
| Equity index funds | 146,171,581 | 84,418,047 | {a} | - | - | Daily | 1–30 days |
| Short term | 320,234,830 | 334,168,363 | {a} | - | - | Daily | 1 day |
| International growth | 41,646,946 | 47,691,574 | {a} | - | - | Daily | 1 day |
| Total common/collective trusts | 587,480,416 | 546,076,218 | | - | - | | |
| 103-12 investment entity | | | | | | | |
| Real estate | 25,850,330 | 24,411,575 | {a} | - | - | Monthly | 15 days |
| Limited liability companies | | | | | | | |
| Real estate | 54,354,342 | 53,482,245 | {b} | - | - | Daily | 90 days |
| Hedge equity fund | 36,708,222 | 29,951,381 | {c} | - | - | Quarterly | 65 days |
| Limited partnerships | | | | | | | |
| High-yield fund | 41,442,200 | 48,655,231 | {d} | - | - | Monthly | 30 days |
| Venture capital, domestic and international buyouts | 3,144,756 | 6,305,593 | {e} | 4,583,579 | 4,583,710 | N/A | N/A |
| Private equity | 20,180,215 | 17,870,823 | {f} | 5,908,122 | 7,256,215 | N/A | N/A |
| Total limited partnerships | 64,767,171 | 72,831,647 | | 10,491,701 | 11,839,925 | | |
| Other private equity | | | | | | | |
| Capital appreciation | 61,845,867 | 21,160,426 | {g} | - | - | Bi-Annually | 95 days |
| AFL-CIO Housing Investment Trust | 24,273,167 | 22,856,813 | {h} | - | - | Monthly | 15 days |
| Total | $ 855,279,515 | $ 770,770,305 | | $ 10,491,701 | $ 11,839,925 | | |

{a}    This investment is a direct filing entity with the Department of Labor; therefore, information regarding the investment's strategy is not disclosed.

{b}    This category comprises the Plan's investment in the Madison Core Property Fund LLC. The investment's objectives are preservation of capital of the investors, production of current income, appreciation of assets, and diversification of risk. Because the fund invests primarily in real estate investments, which are generally less liquid than other investments, redemption requests may be deferred in order to consider the best alternatives available to fund redemption requests. If a redemption request is unredeemed after twelve months, the fund is required to put a program of sale in place sufficient to generate proceeds in an amount required to fully redeem the units requested for redemption.

**NOTE 10.       INVESTMENTS IN CERTAIN ENTITIES THAT CALCULATE NET ASSET VALUE
             (CONT'D)**

{c}    This category comprises the Plan's investments in the Private Advisors Hedged Equity Fund (the
       Private Advisors Fund). The Private Advisors Fund invests all of its assets through a master-feeder
       structure in the Master Fund, an investment company that has the same investment objectives as the
       Private Advisors Fund. The Private Advisors Fund's objective is to seek long-term capital
       appreciation above historical equity returns, over full market cycle, with volatility that is lower than
       that of the equity market and returns that demonstrate a low correlation to both the equity and fixed-
       income markets. A shareholder may make an initial redemption of all or a portion of its shares as of
       the last business day of the fiscal quarter ending on or immediately after the end of the twelfth month
       following the date on which the shares were purchased.

{d}    This category comprises the Plan's investment in the MacKay Shields High-Yield Active Core Fund
       LP (the MacKay Fund). The MacKay Fund's objective is to outperform the Merrill Lynch High-Yield
       Master II Index by selectively investing in a diversified portfolio of fixed- and floating-rate notes and
       bonds offering relatively attractive current market yields after adjusting for pertinent risks. A limited
       partner, upon no fewer than a 30-day notice, may elect to redeem all or a portion of its interests in the
       MacKay Fund as of the last day of any calendar month. Under certain circumstances, including the
       inability to liquidate investment positions, the general partner may delay the redemption request.

{e}    This category comprises the Plan's investment in the INVESCO Partnership Fund V, LP (the
       INVESCO Fund). The INVESCO Fund was organized to invest in the INVESCO U.S. Venture
       Partnership Fund V, L.P. (IVP5), INVESCO U.S. Buyout Partnership Fund V, L.P. (IUS5), and
       INVESCO International Partnership Fund V, L.P. (INUS5), all Delaware limited partnerships. IVP5
       was organized to invest in other collective investment funds investing in alternative assets, including
       primarily U.S. funds that focus on both early- and later-stage venture capital investments. IUS5 was
       organized to invest in other collective investment funds that invest in alternative assets, including
       investments primarily focusing on small, mid-size and large domestic buyout transactions. INUS5
       was organized to invest in other collective investment funds that invest in alternative assets, including
       investments primarily focusing on non-U.S. buyouts, expansion capital, turnaround, mezzanine and
       distressed investment partnerships. It is the intent of the INVESCO Fund to remain in existence
       through December 2019, at which time the partnership will be dissolved and the partners' capital, net
       of any obligations or earnings, will be returned. The partnership has not been extended and is
       currently winding down in accordance with the partnership agreement.

NOTE 10.    INVESTMENTS IN CERTAIN ENTITIES THAT CALCULATE NET ASSET VALUE (CONT'D)

{f}    This category comprises the Plan's investment in the Ironwood Institutional Ltd., an investment incorporated as a Cayman Islands Exempted Company registered under the Cayman Islands Mutual Funds Law. The fund's investment objective is capital appreciation with limited variability of returns. The fund attempts to obtain this objective by investing substantially all of its assets in Ironwood Partners LP, which has the same investment objective as the fund.

{g}    This category comprises the Plan's investment in the Goldman Sachs Private Equity Partners X - Manager Fund, LP (the Goldman Sachs Fund) and the Private Advisors Small Company Fund LP (the Private Advisors Small Co. Fund). The Goldman Sachs Fund is a direct filing entity with the Department of Labor; therefore, information regarding the investment's strategy is not disclosed. The Goldman Sachs Fund commenced operations on April 9, 2008, and will continue in existence until the later to occur of (i) December 31, 2018, or (ii) one year after the date by which all of the Goldman Sachs Fund's Portfolio Investments have been liquidated and the Goldman Sachs Fund's obligations (including, without limitation, contingent obligations) have terminated. The Goldman Sachs Fund may also be dissolved earlier as requested by the General Partner, or its term may be extended by the General Partner with the approval by a majority in interest of the limited partners in accordance with the Amended and Restated Agreement of Limited Partnership.

This category also includes the Private Advisors Small Co. Fund. The investment objective of the Private Advisors Small Co. Fund is to invest with fund managers who utilize a variety of private equity strategies within the small company market. The Private Advisors Small Co. Fund defines the small company market as private equity fund managers based in North America primarily focused on growth equity, buyout and distressed/turnaround strategies with fund sizes typically below $750 million and an emphasis on fund sizes below $500 million. The term of the Private Advisors Small Co. Fund commenced in December 2013 and shall continue for twelve years after the final closing date, subject to the general partner's right to extend, in its sole discretion, the term of the partnership for (i) three additional consecutive one-year periods in order to provide for the orderly disposition of partnership investments, and (ii) thereafter, for further one-year periods of time as necessary.

**NOTE 10.**     **INVESTMENTS IN CERTAIN ENTITIES THAT CALCULATE NET ASSET VALUE (CONT'D)**

{h}     This category comprises the Plan's investment in the AFL-CIO Housing Investment Trust (the HIT). Participation in the HIT is limited to eligible labor organizations and to pension, welfare and retirement plans that have beneficiaries who are represented by labor organizations. The investment objective of the HIT is to generate competitive risk-adjusted total rates of return by investing in fixed-income investments, primarily multifamily and single-family mortgage-backed securities and mortgage-backed obligations. Investees can redeem their investments on a monthly basis and are paid their pro-rata share of undistributed net income accrued through the end of the month in which they are redeemed. Investees cannot sell or transfer units to anyone other than the HIT.

**NOTE 11.**     **FINANCIAL INSTRUMENTS**

As part of the total investment strategy, and to meet the primary objectives established by the Trustees, the Plan's investment managers may utilize derivative financial instruments. Risk associated with derivatives vary widely, but generally may be categorized as market risk, credit risk and interest rate risk. Market risk is defined as that risk associated with fluctuations in market price. Credit risk is defined as that risk associated with an entity not paying. Interest rate risk is defined as risk associated with changes in general interest rates or yield curves that could adversely affect the fair value of an investment.

Some of the Plan's investment managers enter into options contracts. The Plan uses options for hedging purposes and not on a speculative basis, but the use of these instruments would be considered trading securities for purposes of reporting.

An option is a contract that grants the right, but not the obligation, to exercise a specific purchase or sales transaction at a stated exercise price. The Plan enters into options contracts solely for the purpose of hedging its existing portfolio securities or securities the Plan intends to purchase against fluctuations in fair value caused by changes in prevailing interest rates or as a substitute for cash securities permitted under relative account guidelines.

The Plan held options contracts during 2020 and 2019; the Plan did not have open contracts as of December 31, 2020 and 2019.

**NOTE 12.       RELATED ORGANIZATIONS**

Members of the Plan's Board of Trustees are also members of the Boards of Trustees of the IUOE Stationary Engineers Local 39 Health and Welfare Plan and the Annuity Plan.

Employer contributions to the IUOE Stationary Engineers Local 39 Pension, Annuity, and Health and Welfare plans are paid by employers with a single monthly check. Employer contributions are then allocated based on information received and are transferred to the respective plans. As of December 31, 2020, the amounts due to the IUOE Stationary Engineers Local 39 Health and Welfare Plan and to the Annuity Plan for contributions received but not yet transferred totaled approximately $131,000 and $21,900, respectively. As of December 31, 2019, the amounts due to the Stationary Engineers Local 39 Health and Welfare Plan and to the Annuity Plan were approximately $153,000 and $13,300, respectively. In addition, as of December 31, 2020 and 2019, the Plan held approximately $561,000 and $268,000, respectively, which has not yet been allocated.

**NOTE 13.       SUBSEQUENT EVENTS**

Subsequent to December 31, 2020, the coronavirus pandemic (COVID-19) continued in the United States, causing major concerns both for health and safety of individuals as well as economic and business operations of companies and organizations. Impacts of COVID-19 are not fully known at this time nor can they be projected with any certainty. Some impacts from COVID-19 to the employers and industry in which the Plan's participants work, in the near term and foreseeable future, may include business and production disruptions, volatility in the equity and debt markets, reduced revenue and cash flows, and other economic outcomes.

The participants of the Plan are primarily employed in maintaining office buildings, hospitals, hotels and governmental buildings in Northern California. Although the maintenance of these buildings is considered an essential business sector, many of those employers may face significant economic hardships as a result of COVID-19. To the extent that the employment of the Plan's participants is negatively impacted by COVID-19 economic events, the Plan may experience negative economic events in turn through reduction of work hours and related contribution revenues. A reasonable estimate of the impact or potential impact of COVID-19 on the Plan as of the date of the financial statements cannot be made.

Subsequent events were evaluated through the date on which the financial statements were available to be issued. This date is approximately the same as the independent auditors' report date.

ADDITIONAL INFORMATION



**LINDQUIST CPA**
LEADERSHIP + QUALITY

## INDEPENDENT AUDITORS' REPORT ON ADDITIONAL INFORMATION

To the Participants and Trustees of
IUOE Stationary Engineers Local 39 Pension Plan

We have audited the financial statements of IUOE Stationary Engineers Local 39 Pension Plan (the Plan) as of and for the years ended December 31, 2020 and 2019, and have issued our report thereon dated July 15, 2021, which contained an unmodified opinion on those financial statements. Our audits were performed for the purpose of forming an opinion on the financial statements taken as a whole. The accompanying information, which appears on page 21 and Schedule H - Financial Schedules (IRS Form 5500), is presented for the purpose of additional analysis and is not a required part of the basic financial statements. The Schedule H - Financial Schedules (IRS Form 5500) provide supplementary information required by the Department of Labor's Rules and Regulations for Reporting and Disclosure under the Employee Retirement Income Security Act of 1974. Such information is the responsibility of management and was derived from, and relates directly to, the underlying accounting and other records used to prepare the financial statements. The information has been subjected to the auditing procedures applied in the audits of the financial statements and certain additional procedures, including comparing and reconciling such information directly to the underlying accounting and other records used to prepare the financial statements or to the financial statements themselves, and other additional procedures in accordance with auditing standards generally accepted in the United States of America. In our opinion, the information is fairly stated, in all material respects, in relation to the financial statements taken as a whole.

*Lindquist LP*

July 15, 2021

**IUOE STATIONARY ENGINEERS LOCAL 39 PENSION PLAN**

SCHEDULES OF ADMINISTRATIVE EXPENSES
YEARS ENDED DECEMBER 31, 2020 AND 2019

|  | 2020 | 2019 |
|---|---|---|
| Plan administration | $ 693,036 | $ 668,052 |
| Audit and payroll compliance testing fees | 248,346 | 213,643 |
| Consulting and actuarial fees | 216,046 | 168,576 |
| Insurance expense | 393,720 | 364,195 |
| Legal fees | 292,148 | 307,845 |
| Other | 11,008 | 11,559 |
| Printing and office expenses | 110,463 | 56,913 |
| Trustee meetings | 396 | 18,240 |
| Total | $ 1,965,163 | $ 1,809,023 |

**Attachments to 2020 Schedule MB (Form 5500)**
**I.U.O.E. Stationary Engineers Local 39 Pension Plan**
**EIN 94-6118939, Plan 001**

**Schedule MB, line 6 – Summary of Plan Provisions**

**1. Effective Date**

Adopted June 1, 1955, as amended through January 1, 2019.

**2. Plan Year**

The plan year is the calendar year.

**3. Participation**

Participation in the Plan is immediate upon the first day of employment.

**4. Definition of Vesting Service**

A Participant who has at least 1,000 hours in a plan year shall receive one year of vesting service.

**5. Definition of Credited Service**

*Credited Service*
Credited service is the total of credited past service plus credited future service.

*Credited Past Service*
A participant receives one year of credited past service for each year of employment that precedes the Employer's Effective Date.

If the Effective Date is prior to or on June 1, 1955, the participant will receive no more than fifteen years credited past service.

*Credited Future Service*
A participant shall receive credited future service for each month after the Effective Date in which the participant has 40 or more hours of work.

The Plan provides rules for the crediting and loss of Credited Service as well as reinstatement of prior service.

**6. Normal Retirement Date**

The normal retirement date is the first day of the month coincident with or following the later of date the participant has attained age 65 and their 5th anniversary of participation. Monthly benefits commence on the later of the normal retirement date and the first day of the month following the date application for benefits is made.



**Attachments to 2020 Schedule MB (Form 5500)**
**I.U.O.E. Stationary Engineers Local 39 Pension Plan**
**EIN 94-6118939, Plan 001**

**Schedule MB, line 6 – Summary of Plan Provisions**

7. **Regular Retirement Benefit**

   *Eligibility*
   A participant is entitled to a regular pension at the earlier of:
   - Normal retirement age, or
   - Attained age 65 and has at least 31 months of credited future service, or
   - For benefits earned through December 31, 2010, has attained age 60 and has at least 60 months of credited future service and has at least 500 hours of covered employment in the plan year immediately preceding the annuity start date or in the plan year of the annuity start date and for benefits earned from January 1, 2011 and thereafter, has attained age 60 and has at least 60 months of credited future service and has at least 2,080 hours of covered employment during the 24 months immediately preceding the annuity start date.

   *Amount*
   The monthly benefit is equal to the sum of the following:

   a. $3.00 per month for each year of credited past service
   b. 3.50% of plan contributions to the Plan (2.25% if participant is inactive) due to employment through June 30, 2008
   c. 2.25% of plan contributions to the Plan due to employment after June 30, 2009
   d. The following bonuses:

      - 1/3 increase in accrued benefits earned from June 1, 1955 to December 31, 1978, plus
      - 1/10 increase in accrued benefits earned from June 1, 1955 to December 31, 1984, plus
      - 1/10 increase in accrued benefits earned from June 1, 1955 to December 31, 1987 (excluding the increases above), plus
      - 8% increase of accrued benefits earned from June 1, 1955 to December 31, 1989 (including the increases above), plus
      - 3.25% increase of accrued benefits earned from June 1, 1955 to December 31, 1995 (excluding the increases above).

   No pension accruals are earned for Contributions to the Plan due to employment for the period July 1, 2008 through June 30, 2009.

   For benefit accruals on and after August 1, 2010, the 2.25% of plan contributions will apply to 75% of the contribution rate in effect on that date plus 100% of any future contribution rate increases.

   The Plan also provides for rollover contributions from qualified defined contributions, which are converted to actuarially equivalent benefits and added to the Normal Retirement Benefit.

8. **Early Retirement Benefit**

   *Eligibility*
   A participant who had at least 2,080 hours of work in the 24 months prior to retirement may retire on the first day of any month coincident with or following his 55th birthday and



**Attachments to 2020 Schedule MB (Form 5500)**
**I.U.O.E. Stationary Engineers Local 39 Pension Plan**
**EIN 94-6118939, Plan 001**

**Schedule MB, line 6 – Summary of Plan Provisions**

completion of 20 years of Credited Future Service. Monthly benefits will begin on the date of early retirement.

*Amount*
The monthly benefit is equal to the normal retirement benefit, reduced by:

- 9% for each year the participant is less than age 60 for Credited Service earned prior to July 1, 2008,
- 6% for each year the participant is less than age 65 for Credited Service earned after June 30, 2008.

**9. Rule of 70 Early Retirement Benefit**

*Eligibility*
A participant who had at least 2,080 hours of work in the 24 months prior to retirement and at least 500 hours of work in the Plan year immediately preceding or during the year of the annuity start date, may retire on the first day of any month coincident with or following his 55th birthday and completion of 15 years of Credited Future Service. Monthly benefits will begin on the date of early retirement.

*Amount*
The monthly benefit is equal to the normal retirement benefit, reduced by 9% for each year the participant is less than age 60 for Credited Service earned prior to July 1, 2008.

The Rule of 70 Early Retirement does not apply to benefits earned after June 30, 2008.

**10. Disability Benefit**

*Eligibility*
A participant who has at least 10 years of Credited Future Service and has worked 500 hours in the 36 months preceding the date of disability.

*Amount*
The monthly benefit is equal to the accrued normal retirement benefit.

**11. Vesting Upon Termination of Employment**

*Eligibility*
A participant who has at least five years of credited future service or five years of vesting service.

*Amount*
The monthly benefit commencing at the normal retirement date is equal to the accrued normal retirement benefit based on the plan provisions in effect as of the date of termination of employment.

**12. Death Benefit**

*Eligibility*
A participant who has at least five years of Credited Future Service or five years of vesting service.



**Attachments to 2020 Schedule MB (Form 5500)**
**I.U.O.E. Stationary Engineers Local 39 Pension Plan**
**EIN 94-6118939, Plan 001**

**Schedule MB, line 6 – Summary of Plan Provisions**

*Amount*
The monthly benefit payable to the surviving spouse of a retired participant is equal to 50% of the accrued normal retirement benefit, reduced to reflect the joint and survivor coverage, unless rejected by the participant. If the spouse predeceases the participant, the monthly benefit is subsequently increased to the unreduced amount payable if joint and survivor coverage had been rejected.

If the participant dies prior to retirement, the monthly benefit payable to the surviving spouse is 50% of the accrued retirement benefit had the participant retired and elected joint and survivor coverage the day before he died. If the participant dies prior to retirement eligibility, the spouse's benefit is deferred to the earliest date the participant would have been eligible to retire.

**13. Additional Lump Sum Death Benefit**

*Eligibility*
A participant who has at least 31 months of plan participation and at least 500 hours of work in the plan year before death.

*Amount*
For retired participants, $4,500 reduced by total benefits paid to the participant prior to his death.

If the participant dies prior to retirement, and the spouse's benefit had been waived, the additional lump sum benefit is equal to total contributions made on behalf of the employee up to a maximum of $4,500.

**14. Contributions**

*Employee*
None.

*Employer*
The contributing employer pays the amount specified in the collective bargaining agreement for each hour worked by the covered employee.

**15. Form of Pension Benefits**

Pension benefits are payable for the life of the participant and cease at death (except for any remaining death benefit equivalent to the total contributions made on behalf of the participant less benefits received), see Death Benefit for exceptions.

A married participant who does not elect otherwise will be deemed to have elected benefits under the Joint and 50% Survivor option whereby his original pension will be reduced and payable for his remaining lifetime and, upon his death, 50% of the reduced amount will be payable to his spouse for her remaining lifetime.

**16. Changes to Plan Provisions since Last Valuation**

None.



**IUOE Stationary Engineers Local 39 Pension Plan**

**EIN:   94-6118939**                                                    **Plan Number: 001**

**FYE:   December 31, 2020**

**Schedule of Assets Held for Investment Purposes, Form 5500, Schedule H, Line 4i**

| (a) | (b) Identity of issue, borrower, lessor, or similar party | (c) Description of investment including maturity date, rate of interest, collateral, par or maturity date | (d) Cost | (e) Current value |
|---|---|---|---|---|
| | AFL - CIO Building Investment Trust | Building Investment Trust | 12,015,160 | 26,543,210 |
| | New Tower | New Tower Common Collective Fund | 37,515,395 | 52,883,849 |
| | Chevy Chase Trust | Equity Index Fund | 45,905,057 | 95,983,434 |
| | BNY Mellon | Housing Investment Trust (Other NAV Investment) | 23,301,886 | 24,273,167 |
| | MacKay Shields LLC | MacKay Shields High Yield Active Core Fund Limited Parternship | 15,412,841 | 41,442,200 |
| | Goldman Sachs | Goldman Sachs Private Equity Partners X Manager Fund, L.P | 835,104 | 4,406,052 |
| | McMorgan Co. | Madison Core Property Fund LLC | 34,068,040 | 54,354,342 |
| | Private Advisors | Private Advisors Hedge Equity Funds, Ltd. Series 0113 | 19,114,328 | 36,708,222 |
| | Private Advisors | Private Advisors Small Company Fund LP | 4,076,822 | 8,119,529 |
| | Private Advisors | Private Advisors Small Company Fund LP 7 LP | 5,973,501 | 7,654,634 |
| | Invesco | Invesco International Growth Trust I | 26,003,860 | 41,646,945 |
| | Invesco | Invesco Parternship Fund V, L.P | 1,127,734 | 3,144,756 |
| | Morgan Stanley | Cash Equivalents | 18,019,834 | 18,019,834 |
| | T.Rowe | T. Rowe Price International Small Cap Equity Trust | 30,000,000 | 50,188,148 |
| | Washington Capital | Washington Capital Real Estate Equity Fund | 20,000,521 | 25,850,330 |
| | Ironwood Institutional LTD | Ironwood Institutional LTD Limited Partnership | 56,160,426 | 61,845,867 |
| | See Attached | See Attached | 765,296,292 | 1,016,201,337 |
| **Total** | | | 1,114,826,801 | 1,569,265,856 |

**Portfolio Statement**

31 DEC 2020

◆ Asset Summary

| Country | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total | Market value incl. accruals | % |
|---|---|---|---|---|---|---|---|---|
| *Equities* | | | | | | | | |
| **Common stock** | | | | | | | | |
| Austria - USD | 0.00 | 1,091,520.00 | 922,737.60 | 168,782.40 | 0.00 | 168,782.40 | 1,091,520.00 | 0.107% |
| Canada - USD | 0.00 | 7,701,409.30 | 6,239,296.90 | 1,462,112.40 | 0.00 | 1,462,112.40 | 7,701,409.30 | 0.757% |
| China - USD | 0.00 | 848,294.37 | 485,639.13 | 362,655.24 | 0.00 | 362,655.24 | 848,294.37 | 0.083% |
| France - USD | 21,590.29 | 7,925,129.48 | 6,701,283.47 | 1,223,846.01 | 0.00 | 1,223,846.01 | 7,946,719.77 | 0.781% |
| Greece - USD | 0.00 | 608,783.44 | 343,272.67 | 265,510.77 | 0.00 | 265,510.77 | 608,783.44 | 0.060% |
| Hong Kong - USD | 0.00 | 1,994,678.00 | 1,578,313.96 | 416,364.04 | 0.00 | 416,364.04 | 1,994,678.00 | 0.196% |
| Israel - USD | 0.00 | 419,546.25 | 344,866.59 | 74,679.66 | 0.00 | 74,679.66 | 419,546.25 | 0.041% |
| Japan - USD | 0.00 | 14,705,872.21 | 11,118,663.74 | 3,587,208.47 | 0.00 | 3,587,208.47 | 14,705,872.21 | 1.446% |
| Netherlands - USD | 0.00 | 8,380,075.87 | 6,537,155.02 | 1,842,920.85 | 0.00 | 1,842,920.85 | 8,380,075.87 | 0.824% |
| Peru - USD | 0.00 | 2,172,772.94 | 1,505,721.03 | 667,051.91 | 0.00 | 667,051.91 | 2,172,772.94 | 0.214% |
| Singapore - USD | 0.00 | 1,521,000.00 | 1,257,604.00 | 263,396.00 | 0.00 | 263,396.00 | 1,521,000.00 | 0.150% |
| Sweden - USD | 0.00 | 1,746,600.00 | 1,529,908.00 | 216,692.00 | 0.00 | 216,692.00 | 1,746,600.00 | 0.172% |
| Switzerland - USD | 0.00 | 4,686,661.00 | 4,279,151.18 | 407,509.82 | 0.00 | 407,509.82 | 4,686,661.00 | 0.461% |
| United Kingdom - USD | 0.00 | 14,846,387.40 | 13,827,685.35 | 1,018,702.05 | 0.00 | 1,018,702.05 | 14,846,387.40 | 1.460% |
| United States - USD | 371,288.14 | 419,779,064.74 | 307,724,977.63 | 112,054,087.11 | 0.00 | 112,054,087.11 | 420,150,352.88 | 41.314% |
| **Total common stock** | **392,878.43** | **488,427,795.00** | **364,396,276.27** | **124,031,518.73** | **0.00** | **124,031,518.73** | **488,820,673.43** | **48.066%** |
| **Funds - common stock** | | | | | | | | |
| United States - USD | 0.00 | 239,713,053.40 | 127,178,182.49 | 112,534,870.91 | 0.00 | 112,534,870.91 | 239,713,053.40 | 23.571% |
| **Total funds - common stock** | **0.00** | **239,713,053.40** | **127,178,182.49** | **112,534,870.91** | **0.00** | **112,534,870.91** | **239,713,053.40** | **23.571%** |
| **Funds - equities etf** | | | | | | | | |
| Emerging Markets Region - USD | 0.00 | 23,940,052.50 | 19,093,715.88 | 4,846,336.62 | 0.00 | 4,846,336.62 | 23,940,052.50 | 2.354% |
| **Total funds - equities etf** | **0.00** | **23,940,052.50** | **19,093,715.88** | **4,846,336.62** | **0.00** | **4,846,336.62** | **23,940,052.50** | **2.354%** |
| **Total equities** | **392,878.43** | **752,080,900.90** | **510,668,174.64** | **241,412,726.26** | **0.00** | **241,412,726.26** | **752,473,779.33** | **73.991%** |

**Northern Trust**

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*

**31 DEC 2020**

## ◆ Asset Summary

| Country | Accrued income/expense | Market value | Cost | Unrealized gain/loss — Market | Translation | Total | Market value incl. accruals | % |
|---|---|---|---|---|---|---|---|---|
| *Fixed Income* | | | | | | | | |
| **Government bonds** | | | | | | | | |
| Mexico - USD | 2,172.61 | 814,080.00 | 795,000.00 | 19,080.00 | 0.00 | 19,080.00 | 816,252.61 | 0.080% |
| United States - USD | 35,872.94 | 36,769,471.09 | 36,378,347.54 | 391,123.55 | 0.00 | 391,123.55 | 36,805,344.03 | 3.619% |
| **Total government bonds** | **38,045.55** | **37,583,551.09** | **37,173,347.54** | **410,203.55** | **0.00** | **410,203.55** | **37,621,596.64** | **3.699%** |
| **Corporate bonds** | | | | | | | | |
| Belgium - USD | 9,767.45 | 588,743.89 | 496,360.24 | 92,383.65 | 0.00 | 92,383.65 | 598,511.34 | 0.059% |
| Brazil - USD | 13,461.61 | 842,211.57 | 729,500.00 | 112,711.57 | 0.00 | 112,711.57 | 855,673.18 | 0.084% |
| Canada - USD | 5,349.98 | 1,219,239.11 | 1,174,667.50 | 44,571.61 | 0.00 | 44,571.61 | 1,224,589.09 | 0.120% |
| Chile - USD | 2,540.41 | 362,096.57 | 334,484.10 | 27,612.47 | 0.00 | 27,612.47 | 364,636.98 | 0.036% |
| China - USD | 9,662.96 | 824,140.35 | 796,078.22 | 28,062.13 | 0.00 | 28,062.13 | 833,803.31 | 0.082% |
| France - USD | 6,892.16 | 723,985.88 | 665,802.35 | 58,183.53 | 0.00 | 58,183.53 | 730,878.04 | 0.072% |
| Germany - USD | 873.60 | 806,218.64 | 798,704.00 | 7,514.64 | 0.00 | 7,514.64 | 807,092.24 | 0.079% |
| Hong Kong - USD | 6,616.23 | 364,734.50 | 323,891.75 | 40,842.75 | 0.00 | 40,842.75 | 371,350.73 | 0.037% |
| Ireland - USD | 7,765.69 | 729,061.62 | 714,149.15 | 14,912.47 | 0.00 | 14,912.47 | 736,827.31 | 0.072% |
| Italy - USD | 3,448.95 | 345,001.03 | 334,991.55 | 10,009.48 | 0.00 | 10,009.48 | 348,449.98 | 0.034% |
| Japan - USD | 13,374.94 | 1,125,569.61 | 1,052,438.55 | 73,131.06 | 0.00 | 73,131.06 | 1,138,944.55 | 0.112% |
| Macau - USD | 963.70 | 678,301.70 | 607,438.00 | 70,863.70 | 0.00 | 70,863.70 | 679,265.40 | 0.067% |
| Mexico - USD | 18,105.36 | 1,869,982.56 | 1,714,230.60 | 155,751.96 | 0.00 | 155,751.96 | 1,888,087.92 | 0.186% |
| Netherlands - USD | 1,698.75 | 381,036.56 | 349,516.25 | 31,520.31 | 0.00 | 31,520.31 | 382,735.31 | 0.038% |
| Peru - USD | 2,195.83 | 332,839.12 | 313,875.00 | 18,964.12 | 0.00 | 18,964.12 | 335,034.95 | 0.033% |
| Russian Federation - USD | 4,047.31 | 232,333.50 | 198,940.00 | 33,393.50 | 0.00 | 33,393.50 | 236,380.81 | 0.023% |
| Singapore - USD | 5,232.49 | 695,740.80 | 688,495.80 | 7,245.00 | 0.00 | 7,245.00 | 700,973.29 | 0.069% |
| Switzerland - USD | 5,841.98 | 825,917.08 | 791,047.60 | 34,869.48 | 0.00 | 34,869.48 | 831,759.06 | 0.082% |
| United Kingdom - USD | 33,888.75 | 4,392,295.69 | 4,103,616.25 | 288,679.44 | 0.00 | 288,679.44 | 4,426,184.44 | 0.435% |

# Northern Trust

# Portfolio Statement

**31 DEC 2020**

◆ ## Asset Summary

| Country | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Unrealized gain/loss Translation | Unrealized gain/loss Total | Market value incl. accruals | % |
|---|---|---|---|---|---|---|---|---|

### *Fixed Income*

**Corporate bonds**

| Country | Accrued income/expense | Market value | Cost | Market | Translation | Total | Market value incl. accruals | % |
|---|---|---|---|---|---|---|---|---|
| United States - USD | 591,583.92 | 82,432,720.89 | 76,576,716.07 | 5,856,004.82 | 0.00 | 5,856,004.82 | 83,024,304.81 | 8.164% |
| **Total corporate bonds** | **743,312.07** | **99,772,170.67** | **92,764,942.98** | **7,007,227.69** | **0.00** | **7,007,227.69** | **100,515,482.74** | **9.884%** |

**Government mortgage backed securities**

| Country | Accrued income/expense | Market value | Cost | Market | Translation | Total | Market value incl. accruals | % |
|---|---|---|---|---|---|---|---|---|
| United States - USD | 36,298.91 | 14,754,571.18 | 14,173,024.12 | 581,547.06 | 0.00 | 581,547.06 | 14,790,870.09 | 1.454% |
| **Total government mortgage backed securities** | **36,298.91** | **14,754,571.18** | **14,173,024.12** | **581,547.06** | **0.00** | **581,547.06** | **14,790,870.09** | **1.454%** |

**Commercial mortgage-backed**

| Country | Accrued income/expense | Market value | Cost | Market | Translation | Total | Market value incl. accruals | % |
|---|---|---|---|---|---|---|---|---|
| United States - USD | 29,273.84 | 13,186,335.54 | 12,636,713.90 | 549,621.64 | 0.00 | 549,621.64 | 13,215,609.38 | 1.299% |
| **Total commercial mortgage-backed** | **29,273.84** | **13,186,335.54** | **12,636,713.90** | **549,621.64** | **0.00** | **549,621.64** | **13,215,609.38** | **1.299%** |

**Asset backed securities**

| Country | Accrued income/expense | Market value | Cost | Market | Translation | Total | Market value incl. accruals | % |
|---|---|---|---|---|---|---|---|---|
| United States - USD | 8,997.35 | 10,732,028.64 | 10,345,993.30 | 386,035.34 | 0.00 | 386,035.34 | 10,741,025.99 | 1.056% |
| **Total asset backed securities** | **8,997.35** | **10,732,028.64** | **10,345,993.30** | **386,035.34** | **0.00** | **386,035.34** | **10,741,025.99** | **1.056%** |

**Non-government backed c.m.o.s**

| Country | Accrued income/expense | Market value | Cost | Market | Translation | Total | Market value incl. accruals | % |
|---|---|---|---|---|---|---|---|---|
| United States - USD | 1,759.69 | 1,689,057.35 | 1,670,695.31 | 18,362.04 | 0.00 | 18,362.04 | 1,690,817.04 | 0.166% |
| **Total non-government backed c.m.o.s** | **1,759.69** | **1,689,057.35** | **1,670,695.31** | **18,362.04** | **0.00** | **18,362.04** | **1,690,817.04** | **0.166%** |

**Index linked government bonds**

| Country | Accrued income/expense | Market value | Cost | Market | Translation | Total | Market value incl. accruals | % |
|---|---|---|---|---|---|---|---|---|
| United States - USD | 10,667.93 | 3,791,115.07 | 3,251,948.01 | 539,167.06 | 0.00 | 539,167.06 | 3,801,783.00 | 0.374% |
| **Total index linked government bonds** | **10,667.93** | **3,791,115.07** | **3,251,948.01** | **539,167.06** | **0.00** | **539,167.06** | **3,801,783.00** | **0.374%** |
| **Total fixed income** | **868,355.34** | **181,508,829.54** | **172,016,665.16** | **9,492,164.38** | **0.00** | **9,492,164.38** | **182,377,184.88** | **17.933%** |

# Northern Trust

# *Portfolio Statement*

**31 DEC 2020**

◆ ## Asset Summary

| Country | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total | Market value incl. accruals | % |
|---|---|---|---|---|---|---|---|---|
| *Cash and Cash Equivalents* | | | | | | | | |
| **Short term bills and notes** | | | | | | | | |
| United States - USD | 0.00 | 2,089,830.19 | 2,089,676.05 | 154.14 | 0.00 | 154.14 | 2,089,830.19 | 0.205% |
| **Total short term bills and notes** | **0.00** | **2,089,830.19** | **2,089,676.05** | **154.14** | **0.00** | **154.14** | **2,089,830.19** | **0.205%** |
| **Funds - short term investment** | | | | | | | | |
| Funds - Short Term Investment | 4,948.83 | 80,521,776.13 | 80,521,776.13 | 0.00 | 0.00 | 0.00 | 80,526,724.96 | 7.918% |
| **Total funds - short term investment** | **4,948.83** | **80,521,776.13** | **80,521,776.13** | **0.00** | **0.00** | **0.00** | **80,526,724.96** | **7.918%** |
| **Total cash and cash equivalents** | **4,948.83** | **82,611,606.32** | **82,611,452.18** | **154.14** | **0.00** | **154.14** | **82,616,555.15** | **8.124%** |
| *Adjustments To Cash* | | | | | | | | |
| **Pending trade purchases** | | | | | | | | |
| Pending trade purchases | 0.00 | - 4,012,535.72 | - 4,012,535.72 | 0.00 | 0.00 | 0.00 | -4,012,535.72 | - 0.395% |
| **Total pending trade purchases** | **0.00** | **- 4,012,535.72** | **- 4,012,535.72** | **0.00** | **0.00** | **0.00** | **-4,012,535.72** | **- 0.395%** |
| **Pending trade sales** | | | | | | | | |
| Pending trade sales | 0.00 | 3,524,618.37 | 3,524,618.37 | 0.00 | 0.00 | 0.00 | 3,524,618.37 | 0.347% |
| **Total pending trade sales** | **0.00** | **3,524,618.37** | **3,524,618.37** | **0.00** | **0.00** | **0.00** | **3,524,618.37** | **0.347%** |
| **Total adjustments to cash** | **0.00** | **- 487,917.35** | **- 487,917.35** | **0.00** | **0.00** | **0.00** | **-487,917.35** | **- 0.048%** |
| **Total Unrealized Gains** | | | | | | **257,197,507.42** | | |
| **Total Unrealized Losses** | | | | | | **- 6,292,462.64** | | |
| **Total** | **1,266,182.60** | **1,015,713,419.41** | **764,808,374.63** | **250,905,044.78** | **0.00** | **250,905,044.78** | **1,016,979,602.01** | **100.000%** |

**Total Cost incl. Accruals**              766,074,557.23

# Northern Trust

# *Portfolio Statement*

**31 DEC 2020**

◆ ## Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss<br>Market | Translation | Total |
|---|---|---|---|---|---|---|---|

## *Equities*

**Common stock**

**Austria -  USD**

ERSTE GROUP BANK AG EFF 8/11/08   CUSIP: 296036304

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 72,000.00 | 15.1600000 | 0.00 | 1,091,520.00 | 922,737.60 | 168,782.40 | 0.00 | 168,782.40 |

| Total USD | | 0.00 | 1,091,520.00 | 922,737.60 | 168,782.40 | 0.00 | 168,782.40 |
|---|---|---|---|---|---|---|---|

| Total Austria | | 0.00 | 1,091,520.00 | 922,737.60 | 168,782.40 | 0.00 | 168,782.40 |
|---|---|---|---|---|---|---|---|

**Canada -  USD**

BAUSCH HEALTH COMP COM NPV   CUSIP: 071734107

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 64,695.00 | 20.8000000 | 0.00 | 1,345,656.00 | 1,361,922.71 | - 16,266.71 | 0.00 | - 16,266.71 |

BROOKFIELD ASSET MGMT INC VOTING SHS CL A VOTING SHS CL A   CUSIP: 112585104
BAM

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 61,300.00 | 41.2700000 | 0.00 | 2,529,851.00 | 2,008,610.97 | 521,240.03 | 0.00 | 521,240.03 |

CAMECO CORP COM   CUSIP: 13321L108

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 62,900.00 | 13.4000000 | 0.00 | 842,860.00 | 679,426.93 | 163,433.07 | 0.00 | 163,433.07 |

MAGNA INTERNATIONAL INC COMMON STOCK   CUSIP: 559222401
MGA

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 30,300.00 | 70.8000000 | 0.00 | 2,145,240.00 | 1,385,185.71 | 760,054.29 | 0.00 | 760,054.29 |

# Northern Trust

## *Portfolio Statement*

**31 DEC 2020**

### ◆ Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Equities*

**Common stock**

RITCHIE BROS AUCTIONEERS INC COM   CUSIP: 767744105

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 7,036.00 | 69.5500000 | 0.00 | 489,353.80 | 530,580.54 | - 41,226.74 | 0.00 | - 41,226.74 |

SIERRA WIRELESS INC COM STK   CUSIP: 826516106

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 23,850.00 | 14.6100000 | 0.00 | 348,448.50 | 273,570.04 | 74,878.46 | 0.00 | 74,878.46 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total USD | | 0.00 | 7,701,409.30 | 6,239,296.90 | 1,462,112.40 | 0.00 | 1,462,112.40 |
| Total Canada | | 0.00 | 7,701,409.30 | 6,239,296.90 | 1,462,112.40 | 0.00 | 1,462,112.40 |

**China -  USD**

ADR BEIGENE LTD SPONSORED ADR   CUSIP: 07725L102

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3,283.00 | 258.3900000 | 0.00 | 848,294.37 | 485,639.13 | 362,655.24 | 0.00 | 362,655.24 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total USD | | 0.00 | 848,294.37 | 485,639.13 | 362,655.24 | 0.00 | 362,655.24 |
| Total China | | 0.00 | 848,294.37 | 485,639.13 | 362,655.24 | 0.00 | 362,655.24 |

## Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*

**31 DEC 2020**

## ◆ Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Equities*

**Common stock**

**France -  USD**

ADR DASSAULT SYS S A SPONSORED ADR   CUSIP: 237545108
DASTY

| 11,066.00 | 203.6700000 | 0.00 | 2,253,812.22 | 1,975,410.84 | 278,401.38 | 0.00 | 278,401.38 |

ADR LVMH MOET HENNESSY LOUIS VUITTON ADR   CUSIP: 502441306
LVMUY

| 18,700.00 | 124.7300000 | 0.00 | 2,332,451.00 | 1,720,181.95 | 612,269.05 | 0.00 | 612,269.05 |

ADR SAFRAN ADR   CUSIP: 786584102
SAFRY

| 56,000.00 | 35.4600000 | 0.00 | 1,985,760.00 | 1,431,272.97 | 554,487.03 | 0.00 | 554,487.03 |

TOTAL SE SPON ADS EA        REP 1 ORD SHS   CUSIP: 89151E109
TOT

| 32,286.00 | 41.9100000 | 21,590.29 | 1,353,106.26 | 1,574,417.71 | - 221,311.45 | 0.00 | - 221,311.45 |

| Total USD | | 21,590.29 | 7,925,129.48 | 6,701,283.47 | 1,223,846.01 | 0.00 | 1,223,846.01 |

| Total France | | 21,590.29 | 7,925,129.48 | 6,701,283.47 | 1,223,846.01 | 0.00 | 1,223,846.01 |

**Greece -  USD**

DANAOS CORP COM USD0.01(POST REV SPLT)   CUSIP: Y1968P121

| 28,408.00 | 21.4300000 | 0.00 | 608,783.44 | 343,272.67 | 265,510.77 | 0.00 | 265,510.77 |

# Northern Trust

# *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

◆ ## Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss<br>Market | Translation | Total |
|---|---|---|---|---|---|---|---|

## *Equities*

**Common stock**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total USD | | 0.00 | 608,783.44 | 343,272.67 | 265,510.77 | 0.00 | 265,510.77 |
| Total Greece | | 0.00 | 608,783.44 | 343,272.67 | 265,510.77 | 0.00 | 265,510.77 |
| **Hong Kong -  USD** | | | | | | | |
| ADR AIA GROUP LTD SPONSORED ADR   CUSIP: 001317205<br>AAGIY | | | | | | | |
| 40,600.00 | 49.1300000 | 0.00 | 1,994,678.00 | 1,578,313.96 | 416,364.04 | 0.00 | 416,364.04 |
| Total USD | | 0.00 | 1,994,678.00 | 1,578,313.96 | 416,364.04 | 0.00 | 416,364.04 |
| Total Hong Kong | | 0.00 | 1,994,678.00 | 1,578,313.96 | 416,364.04 | 0.00 | 416,364.04 |
| **Israel -  USD** | | | | | | | |
| SILICOM LTD COM STK   CUSIP: M84116108 | | | | | | | |
| 10,025.00 | 41.8500000 | 0.00 | 419,546.25 | 344,866.59 | 74,679.66 | 0.00 | 74,679.66 |
| Total USD | | 0.00 | 419,546.25 | 344,866.59 | 74,679.66 | 0.00 | 74,679.66 |
| Total Israel | | 0.00 | 419,546.25 | 344,866.59 | 74,679.66 | 0.00 | 74,679.66 |

# Northern Trust

## Portfolio Statement

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

## ◆ Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Equities*

**Common stock**

**Japan -  USD**

ADR KDDI CORP ADR   CUSIP: 48667L106
KDDIY

| | 117,500.00 | 14.8400000 | 0.00 | 1,743,700.00 | 1,818,042.25 | - 74,342.25 | 0.00 | - 74,342.25 |
|---|---|---|---|---|---|---|---|---|

ADR KUBOTA CORP   CUSIP: 501173207
KUBTY

| | 18,000.00 | 110.3400000 | 0.00 | 1,986,120.00 | 1,316,471.40 | 669,648.60 | 0.00 | 669,648.60 |
|---|---|---|---|---|---|---|---|---|

ADR NIDEC CORP SPONSORED ADR   CUSIP: 654090109
NJDCY

| | 90,870.00 | 31.7000000 | 0.00 | 2,880,579.00 | 1,516,411.30 | 1,364,167.70 | 0.00 | 1,364,167.70 |
|---|---|---|---|---|---|---|---|---|

ADR SONY CORP AMERN SH NEW   CUSIP: 835699307
SNE

| | 31,100.00 | 101.1000000 | 0.00 | 3,144,210.00 | 2,024,595.93 | 1,119,614.07 | 0.00 | 1,119,614.07 |
|---|---|---|---|---|---|---|---|---|

FANUC CORPORATION   CUSIP: 307305102
FANUY

| | 91,809.00 | 24.6900000 | 0.00 | 2,266,764.21 | 1,826,521.69 | 440,242.52 | 0.00 | 440,242.52 |
|---|---|---|---|---|---|---|---|---|

MAURI GROUP CO LTD ADR   CUSIP: 573814308

| | 35,800.00 | 34.7000000 | 0.00 | 1,242,260.00 | 1,190,783.18 | 51,476.82 | 0.00 | 51,476.82 |
|---|---|---|---|---|---|---|---|---|

OTSUKA HLDGS CO LTD ADR   CUSIP: 689164101

| | 67,300.00 | 21.4300000 | 0.00 | 1,442,239.00 | 1,425,837.99 | 16,401.01 | 0.00 | 16,401.01 |
|---|---|---|---|---|---|---|---|---|

**Northern Trust**

# *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

## ◆ Asset Detail - Base Currency

Page 12 of 1,860

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Equities*

**Common stock**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total USD | 0.00 | | 14,705,872.21 | 11,118,663.74 | 3,587,208.47 | 0.00 | 3,587,208.47 |
| Total Japan | 0.00 | | 14,705,872.21 | 11,118,663.74 | 3,587,208.47 | 0.00 | 3,587,208.47 |

**Netherlands - USD**

ADR AKZO NOBEL N V SPONSORED ADR NEW   CUSIP: 010199503

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 57,000.00 | 36.0600000 | 0.00 | 2,055,420.00 | 1,580,778.53 | 474,641.47 | 0.00 | 474,641.47 |

ADR ARGENX SE SPONSORED ADS   CUSIP: 04016X101

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 2,339.00 | 294.0900000 | 0.00 | 687,876.51 | 337,378.46 | 350,498.05 | 0.00 | 350,498.05 |

ADR HEINEKEN N V SPONSORED ADR LEVEL 1   CUSIP: 423012301
HEINY

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 36,900.00 | 55.8400000 | 0.00 | 2,060,496.00 | 1,802,214.45 | 258,281.55 | 0.00 | 258,281.55 |

ADR ING GROEP N V SPONSORED ADR   CUSIP: 456837103
ING

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 203,594.00 | 9.4400000 | 0.00 | 1,921,927.36 | 1,533,530.54 | 388,396.82 | 0.00 | 388,396.82 |

COCA-COLA EUROPEAN PARTNERS PLC ORD   GBP0.01   CUSIP: G25839104

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 33,200.00 | 49.8300000 | 0.00 | 1,654,356.00 | 1,283,253.04 | 371,102.96 | 0.00 | 371,102.96 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total USD | 0.00 | | 8,380,075.87 | 6,537,155.02 | 1,842,920.85 | 0.00 | 1,842,920.85 |

# Northern Trust

# *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

◆ ## Asset Detail - Base Currency

Page 13 of 1,860

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss<br>Market | Translation | Total |
|---|---|---|---|---|---|---|---|

## *Equities*

**Common stock**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total Netherlands | | 0.00 | 8,380,075.87 | 6,537,155.02 | 1,842,920.85 | 0.00 | 1,842,920.85 |
| **Peru -  USD** | | | | | | | |
| CREDICORP LTD COM STK   CUSIP: G2519Y108<br>BAP | | | | | | | |
| 13,247.00 | 164.0200000 | 0.00 | 2,172,772.94 | 1,505,721.03 | 667,051.91 | 0.00 | 667,051.91 |
| Total USD | | 0.00 | 2,172,772.94 | 1,505,721.03 | 667,051.91 | 0.00 | 667,051.91 |
| Total Peru | | 0.00 | 2,172,772.94 | 1,505,721.03 | 667,051.91 | 0.00 | 667,051.91 |
| **Singapore -  USD** | | | | | | | |
| ADR DBS GROUP HLDGS LTD SPONSORED ADR   CUSIP: 23304Y100<br>DBSDY | | | | | | | |
| 20,000.00 | 76.0500000 | 0.00 | 1,521,000.00 | 1,257,604.00 | 263,396.00 | 0.00 | 263,396.00 |
| Total USD | | 0.00 | 1,521,000.00 | 1,257,604.00 | 263,396.00 | 0.00 | 263,396.00 |
| Total Singapore | | 0.00 | 1,521,000.00 | 1,257,604.00 | 263,396.00 | 0.00 | 263,396.00 |

# Northern Trust

## *Portfolio Statement*

**31 DEC 2020**

◆ ## Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Equities*

**Common stock**

**Sweden - USD**

| GDR ASSA ABLOY AB ADR   CUSIP: 045387107 ASAZY | | | | | | | |
|---|---|---|---|---|---|---|---|
| 142,000.00 | 12.3000000 | 0.00 | 1,746,600.00 | 1,529,908.00 | 216,692.00 | 0.00 | 216,692.00 |
| Total USD | | 0.00 | 1,746,600.00 | 1,529,908.00 | 216,692.00 | 0.00 | 216,692.00 |
| Total Sweden | | 0.00 | 1,746,600.00 | 1,529,908.00 | 216,692.00 | 0.00 | 216,692.00 |

**Switzerland - USD**

| ADR NOVARTIS AG   CUSIP: 66987V109 NVS | | | | | | | |
|---|---|---|---|---|---|---|---|
| 16,700.00 | 94.4300000 | 0.00 | 1,576,981.00 | 1,340,941.08 | 236,039.92 | 0.00 | 236,039.92 |
| ALCON AG COM USD0.04 WI   CUSIP: H01301128 | | | | | | | |
| 27,000.00 | 65.9800000 | 0.00 | 1,781,460.00 | 1,531,823.40 | 249,636.60 | 0.00 | 249,636.60 |
| UBS GROUP AG  COMMON STOCK   CUSIP: H42097107 UBS | | | | | | | |
| 94,000.00 | 14.1300000 | 0.00 | 1,328,220.00 | 1,406,386.70 | - 78,166.70 | 0.00 | - 78,166.70 |
| Total USD | | 0.00 | 4,686,661.00 | 4,279,151.18 | 407,509.82 | 0.00 | 407,509.82 |

# Northern Trust

# *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

◆ ## Asset Detail - Base Currency

Page 15 of 1,860

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

## *Equities*

### Common stock

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total Switzerland | | 0.00 | 4,686,661.00 | 4,279,151.18 | 407,509.82 | 0.00 | 407,509.82 |
| **United Kingdom -  USD** | | | | | | | |
| ADR ASHTEAD GROUP PLC ADR   CUSIP: 045055100 ASHTY | | | | | | | |
| 13,000.00 | 189.5000000 | 0.00 | 2,463,500.00 | 1,745,998.80 | 717,501.20 | 0.00 | 717,501.20 |
| ADR CLOSE BROS GROUP PLC ADR   CUSIP: 189062102 | | | | | | | |
| 32,900.00 | 39.5900000 | 0.00 | 1,302,511.00 | 959,640.36 | 342,870.64 | 0.00 | 342,870.64 |
| ADR COMPASS GROUP PLC SPON ADR EACH REP 1 ORD SHS (POST SPLT)   CUSIP: 20449X401 | | | | | | | |
| 82,800.00 | 18.7300000 | 0.00 | 1,550,844.00 | 1,195,580.38 | 355,263.62 | 0.00 | 355,263.62 |
| ADR RECKITT BENCKISER GROUP PLC       SPONSORED ADR   CUSIP: 756255204 RBGLY | | | | | | | |
| 81,900.00 | 18.1200000 | 0.00 | 1,484,028.00 | 1,621,095.84 | - 137,067.84 | 0.00 | - 137,067.84 |
| ADR RENTOKIL GROUP PLC SPONSORED ADR   CUSIP: 760125104 | | | | | | | |
| 55,400.00 | 35.6000000 | 0.00 | 1,972,240.00 | 1,894,840.66 | 77,399.34 | 0.00 | 77,399.34 |
| ADR ROYAL DUTCH SHELL PLC SPONSORED ADR REPSTG B SHS   CUSIP: 780259107 RDS--B | | | | | | | |
| 59,825.00 | 33.6100000 | 0.00 | 2,010,718.25 | 2,696,750.23 | - 686,031.98 | 0.00 | - 686,031.98 |

# Northern Trust

## *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

### ◆ Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss<br>Market | Translation | Total |
|---|---|---|---|---|---|---|---|

## *Equities*

**Common stock**

ADR UNILEVER PLC SPONSORED ADR NEW    CUSIP: 904767704
UL

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 30,000.00 | 60.3600000 | 0.00 | 1,810,800.00 | 1,831,800.00 | - 21,000.00 | 0.00 | - 21,000.00 |

EXPERIAN PLC    CUSIP: 30215C101
EXPGY

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 46,140.00 | 37.9600000 | 0.00 | 1,751,474.40 | 1,635,893.70 | 115,580.70 | 0.00 | 115,580.70 |

GLOBAL SHIP LEASE INC    CUSIP: Y27183600

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 42,075.00 | 11.8900000 | 0.00 | 500,271.75 | 246,085.38 | 254,186.37 | 0.00 | 254,186.37 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total USD | | 0.00 | 14,846,387.40 | 13,827,685.35 | 1,018,702.05 | 0.00 | 1,018,702.05 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total United Kingdom | | 0.00 | 14,846,387.40 | 13,827,685.35 | 1,018,702.05 | 0.00 | 1,018,702.05 |

**United States -  USD**

#REORG LF CAP ACQUI STOCK MERGER LANDSEA 2N16AL3 01-08-2021    CUSIP: 50200K108

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 68,725.00 | 10.6200000 | 0.00 | 729,859.50 | 727,803.78 | 2,055.72 | 0.00 | 2,055.72 |

#REORG/WPX STOCK MERGER DEVON 2276844 01-07-2021    CUSIP: 98212B103

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 62,885.00 | 8.1500000 | 0.00 | 512,512.75 | 689,007.72 | - 176,494.97 | 0.00 | - 176,494.97 |

**Northern Trust**

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*

**31 DEC 2020**

◆ ## Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

## *Equities*

### Common stock

**ABBOTT LAB COM   CUSIP: 002824100**
ABT

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 68,067.00 | 109.4900000 | 0.00 | 7,452,655.83 | 5,496,788.35 | 1,955,867.48 | 0.00 | 1,955,867.48 |

**ACC CLAIMS HLDGS LLC   CUSIP: 00084K104**

| | | | * | | | | |
|---|---|---|---|---|---|---|---|
| 61,920.00 | 0.0098750 | 0.00 | 611.46 | 0.00 | 611.46 | 0.00 | 611.46 |

* Market Value based on prices received from an external manager or other client-directed pricing source

**ACCELERON PHARMA INC COM   CUSIP: 00434H108**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 8,701.00 | 127.9400000 | 0.00 | 1,113,205.94 | 826,166.53 | 287,039.41 | 0.00 | 287,039.41 |

**ACCENTURE PLC SHS CL A NEW   CUSIP: G1151C101**
ACN

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 35,373.00 | 261.2100000 | 0.00 | 9,239,781.33 | 5,777,252.05 | 3,462,529.28 | 0.00 | 3,462,529.28 |

**ACI WORLDWIDE INC COM STK   CUSIP: 004498101**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 21,418.00 | 38.4300000 | 0.00 | 823,093.74 | 515,504.51 | 307,589.23 | 0.00 | 307,589.23 |

**ADOBE SYS INC COM   CUSIP: 00724F101**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 19,619.00 | 500.1200000 | 0.00 | 9,811,854.28 | 5,190,636.60 | 4,621,217.68 | 0.00 | 4,621,217.68 |

**ADR SYMRISE AG ADR   CUSIP: 87155N109**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 53,168.00 | 33.2650000 | 0.00 | 1,768,633.52 | 1,614,249.60 | 154,383.92 | 0.00 | 154,383.92 |

# Northern Trust

## *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

## ◆ Asset Detail - Base Currency

Page 18 of 1,860

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

## *Equities*

### Common stock

ADTRAN INC COM   CUSIP: 00738A106

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 27,800.00 | 14.7700000 | 0.00 | 410,606.00 | 304,497.76 | 106,108.24 | 0.00 | 106,108.24 |

ADVANCED ENERGY INDS INC COM   CUSIP: 007973100

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 6,476.00 | 96.9700000 | 0.00 | 627,977.72 | 226,429.52 | 401,548.20 | 0.00 | 401,548.20 |

AEGION CORP 10   CUSIP: 00770F104

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 28,625.00 | 18.9900000 | 0.00 | 543,588.75 | 485,550.63 | 58,038.12 | 0.00 | 58,038.12 |

AES CORP COM   CUSIP: 00130H105

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 127,525.00 | 23.5000000 | 0.00 | 2,996,837.50 | 2,040,769.57 | 956,067.93 | 0.00 | 956,067.93 |

AGCO CORP COM   CUSIP: 001084102
AGCO

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 15,000.00 | 103.0900000 | 0.00 | 1,546,350.00 | 1,151,624.69 | 394,725.31 | 0.00 | 394,725.31 |

ALASKA AIR GROUP INC COM   CUSIP: 011659109
ALK

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 27,187.00 | 52.0000000 | 0.00 | 1,413,724.00 | 1,049,789.96 | 363,934.04 | 0.00 | 363,934.04 |

ALIGN TECHNOLOGY INC COM   CUSIP: 016255101

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 8,075.00 | 534.3800000 | 0.00 | 4,315,118.50 | 2,272,311.28 | 2,042,807.22 | 0.00 | 2,042,807.22 |

**Northern Trust**

*Generated by Northern Trust from periodic data on 22 Jan 21*

## *Portfolio Statement*

**31 DEC 2020**

◆ ## Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Equities*

**Common stock**

ALLY FINL INC COM    CUSIP: 02005N100

| | 54,950.00 | 35.6600000 | 0.00 | 1,959,517.00 | 1,558,724.80 | 400,792.20 | 0.00 | 400,792.20 |
|---|---|---|---|---|---|---|---|---|

ALPHA & OMEGA SEMICONDUCTOR LTD COM STK    CUSIP: G6331P104

| | 30,125.00 | 23.6400000 | 0.00 | 712,155.00 | 404,557.39 | 307,597.61 | 0.00 | 307,597.61 |
|---|---|---|---|---|---|---|---|---|

ALPHABET INC CAP STK USD0.001 CL C    CUSIP: 02079K107

| | 5,507.00 | 1,751.8800000 | 0.00 | 9,647,603.16 | 6,410,271.88 | 3,237,331.28 | 0.00 | 3,237,331.28 |
|---|---|---|---|---|---|---|---|---|

ALPHABET INC CAPITAL STOCK USD0.001 CL A    CUSIP: 02079K305
GOOGL

| | 3,264.00 | 1,752.6400000 | 0.00 | 5,720,616.96 | 4,503,455.68 | 1,217,161.28 | 0.00 | 1,217,161.28 |
|---|---|---|---|---|---|---|---|---|

ALTA EQUIP GROUP INC COM    CUSIP: 02128L106

| | 71,775.00 | 9.8800000 | 0.00 | 709,137.00 | 530,158.34 | 178,978.66 | 0.00 | 178,978.66 |
|---|---|---|---|---|---|---|---|---|

ALTRIA GROUP INC COM    CUSIP: 02209S103
MO

| | 54,350.00 | 41.0000000 | 46,741.00 | 2,228,350.00 | 2,532,156.72 | - 303,806.72 | 0.00 | - 303,806.72 |
|---|---|---|---|---|---|---|---|---|

AMDOCS ORD GBP0.01    CUSIP: G02602103

| | 19,047.00 | 70.9300000 | 6,237.89 | 1,351,003.71 | 1,054,934.78 | 296,068.93 | 0.00 | 296,068.93 |
|---|---|---|---|---|---|---|---|---|

# Northern Trust

# *Portfolio Statement*

**31 DEC 2020**

## ◆ Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss<br>Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Equities*

**Common stock**

AMER FINL GROUP INC OH COM STK   CUSIP: 025932104

| | 15,137.00 | 87.6200000 | 0.00 | 1,326,303.94 | 1,200,710.60 | 125,593.34 | 0.00 | 125,593.34 |

AMERICAN HOMES 4 RENT COMMON STOCK   CUSIP: 02665T306

| | 40,940.00 | 30.0000000 | 2,047.00 | 1,228,200.00 | 1,160,907.77 | 67,292.23 | 0.00 | 67,292.23 |

AMERICAN PUB ED INC COM STK   CUSIP: 02913V103

| | 12,600.00 | 30.4800000 | 0.00 | 384,048.00 | 358,470.31 | 25,577.69 | 0.00 | 25,577.69 |

AMERIPRISE FINL INC COM   CUSIP: 03076C106
AMP

| | 12,550.00 | 194.3300000 | 0.00 | 2,438,841.50 | 1,449,220.64 | 989,620.86 | 0.00 | 989,620.86 |

ANIKA THERAPEUTICS INC COM STK   CUSIP: 035255108

| | 11,200.00 | 45.2600000 | 0.00 | 506,912.00 | 400,914.07 | 105,997.93 | 0.00 | 105,997.93 |

ANTHEM INC COM   CUSIP: 036752103
ANTM

| | 7,375.00 | 321.0900000 | 0.00 | 2,368,038.75 | 1,990,025.28 | 378,013.47 | 0.00 | 378,013.47 |

ARCH CAPITAL GROUP COM STK   CUSIP: G0450A105
ACGL

| | 36,520.00 | 36.0700000 | 0.00 | 1,317,276.40 | 1,047,096.58 | 270,179.82 | 0.00 | 270,179.82 |

**Northern Trust**

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*

**31 DEC 2020**

## ◆ Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Equities*

**Common stock**

ARISTA NETWORKS INC COM   CUSIP: 040413106
ANET

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3,404.00 | 290.5700000 | 0.00 | 989,100.28 | 850,859.76 | 138,240.52 | 0.00 | 138,240.52 |

ARROWHEAD PHARMACEUTICALS INC COM   CUSIP: 04280A100

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 24,195.00 | 76.7300000 | 0.00 | 1,856,482.35 | 392,311.00 | 1,464,171.35 | 0.00 | 1,464,171.35 |

ARTESIAN RES CORP CL A CL A   CUSIP: 043113208

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 9,565.00 | 37.0800000 | 0.00 | 354,670.20 | 344,059.70 | 10,610.50 | 0.00 | 10,610.50 |

ATMOS ENERGY CORP COM   CUSIP: 049560105

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 12,466.00 | 95.4300000 | 0.00 | 1,189,630.38 | 1,089,361.64 | 100,268.74 | 0.00 | 100,268.74 |

ATRICURE INC COM STK   CUSIP: 04963C209

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 15,813.00 | 55.6700000 | 0.00 | 880,309.71 | 740,067.06 | 140,242.65 | 0.00 | 140,242.65 |

AUTODESK INC COM   CUSIP: 052769106

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 21,180.00 | 305.3400000 | 0.00 | 6,467,101.20 | 3,521,841.64 | 2,945,259.56 | 0.00 | 2,945,259.56 |

AXIS CAPITAL HOLDINGS LTD COM USD0.0125   CUSIP: G0692U109

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 24,271.00 | 50.3900000 | 10,193.82 | 1,223,015.69 | 1,130,837.23 | 92,178.46 | 0.00 | 92,178.46 |

# Northern Trust

# *Portfolio Statement*

**31 DEC 2020**

## ◆ Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Equities*

**Common stock**

AXT INC COM   CUSIP: 00246W103

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 48,725.00 | 9.5700000 | 0.00 | 466,298.25 | 275,786.92 | 190,511.33 | 0.00 | 190,511.33 |

BANC CALIF INC COM   CUSIP: 05990K106

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 42,325.00 | 14.7100000 | 2,539.50 | 622,600.75 | 533,602.72 | 88,998.03 | 0.00 | 88,998.03 |

BANK COMM HLDGS COM STK   CUSIP: 06424J103

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 24,725.00 | 9.9000000 | 1,483.50 | 244,777.50 | 179,395.07 | 65,382.43 | 0.00 | 65,382.43 |

BANK NEW YORK MELLON CORP COM STK   CUSIP: 064058100

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 71,075.00 | 42.4400000 | 0.00 | 3,016,423.00 | 2,665,697.15 | 350,725.85 | 0.00 | 350,725.85 |

BAR HBR BANKSHARES COM   CUSIP: 066849100

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 16,725.00 | 22.5900000 | 0.00 | 377,817.75 | 357,281.23 | 20,536.52 | 0.00 | 20,536.52 |

BARRETT BUSINESS SVCS INC COM   CUSIP: 068463108

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 14,525.00 | 68.2100000 | 0.00 | 990,750.25 | 812,205.96 | 178,544.29 | 0.00 | 178,544.29 |

BASSETT FURNITURE INDS INC COM STK   CUSIP: 070203104

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 40,550.00 | 20.0800000 | 0.00 | 814,244.00 | 366,569.06 | 447,674.94 | 0.00 | 447,674.94 |

# Northern Trust

# *Portfolio Statement*

**31 DEC 2020**

## ◆ Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Equities*

**Common stock**

BEAZER HOMES USA INC COM NEW COM NEW   CUSIP: 07556Q881

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 48,975.00 | 15.1500000 | 0.00 | 741,971.25 | 656,000.55 | 85,970.70 | 0.00 | 85,970.70 |

BED BATH & BEYOND INC COM   CUSIP: 075896100

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 63,597.00 | 17.7600000 | 0.00 | 1,129,482.72 | 1,235,257.25 | - 105,774.53 | 0.00 | - 105,774.53 |

BERRY CORPORATION   CUSIP: 08579X101

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 73,080.00 | 3.6800000 | 0.00 | 268,934.40 | 467,029.29 | - 198,094.89 | 0.00 | - 198,094.89 |

BERRY GLOBAL GROUP INC          COM USD0.01   CUSIP: 08579W103

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 23,031.00 | 56.1900000 | 0.00 | 1,294,111.89 | 955,160.37 | 338,951.52 | 0.00 | 338,951.52 |

BEST BUY INC COM STK   CUSIP: 086516101

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 16,975.00 | 99.7900000 | 9,336.25 | 1,693,935.25 | 1,615,709.72 | 78,225.53 | 0.00 | 78,225.53 |

BIOMARIN PHARMACEUTICAL INC COM ISIN   CH0008107010   CUSIP: 09061G101

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 14,570.00 | 87.6900000 | 0.00 | 1,277,643.30 | 1,156,387.79 | 121,255.51 | 0.00 | 121,255.51 |

BLACKLINE INC COM   CUSIP: 09239B109

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5,127.00 | 133.3800000 | 0.00 | 683,839.26 | 302,957.50 | 380,881.76 | 0.00 | 380,881.76 |

# Northern Trust

## *Portfolio Statement*

**31 DEC 2020**

◆ Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Equities*

**Common stock**

BLUEBIRD BIO INC COM   CUSIP: 09609G100

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 7,855.00 | 43.2700000 | 0.00 | 339,885.85 | 876,340.74 | - 536,454.89 | 0.00 | - 536,454.89 |

BONANZA CREEK ENERGY INC COM NEW COM NEW   CUSIP: 097793400

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 25,200.00 | 19.3300000 | 0.00 | 487,116.00 | 471,377.28 | 15,738.72 | 0.00 | 15,738.72 |

BRIDGEWATER BANCSHARES INC COM   CUSIP: 108621103

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 20,875.00 | 12.4900000 | 0.00 | 260,728.75 | 224,229.90 | 36,498.85 | 0.00 | 36,498.85 |

BRISTOL MYERS SQUIBB CO COM   CUSIP: 110122108
BMY

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 51,625.00 | 62.0300000 | 25,296.25 | 3,202,298.75 | 3,233,588.79 | - 31,290.04 | 0.00 | - 31,290.04 |

BRUKER CORP   CUSIP: 116794108

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 22,705.00 | 54.1300000 | 0.00 | 1,229,021.65 | 808,246.52 | 420,775.13 | 0.00 | 420,775.13 |

BURLINGTON STORES INC COM   CUSIP: 122017106

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5,232.00 | 261.5500000 | 0.00 | 1,368,429.60 | 1,014,130.52 | 354,299.08 | 0.00 | 354,299.08 |

CARDINAL HLTH INC   CUSIP: 14149Y108

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 9,514.00 | 53.5600000 | 4,622.85 | 509,569.84 | 455,064.13 | 54,505.71 | 0.00 | 54,505.71 |

**Northern Trust**

## *Portfolio Statement*

**31 DEC 2020**

Account number **SELPTA**
Account Name **STATIONARY ENGINEERS L39ALL**

◆ Asset Detail - Base Currency

Page 25 of 1,860

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss<br>Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Equities*

**Common stock**

CARMAX INC COM   CUSIP: 143130102

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 9,939.00 | 94.4600000 | 0.00 | 938,837.94 | 870,258.84 | 68,579.10 | 0.00 | 68,579.10 |

CARNIVAL CORP COM PAIRED   CUSIP: 143658300
CCL

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 30,000.00 | 21.6600000 | 0.00 | 649,800.00 | 483,069.00 | 166,731.00 | 0.00 | 166,731.00 |

CATERPILLAR INC COM   CUSIP: 149123101
CAT

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 15,325.00 | 182.0200000 | 0.00 | 2,789,456.50 | 2,175,051.88 | 614,404.62 | 0.00 | 614,404.62 |

CECO ENVIRONMENTAL CORP COM   CUSIP: 125141101

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 58,550.00 | 6.9600000 | 0.00 | 407,508.00 | 415,180.68 | - 7,672.68 | 0.00 | - 7,672.68 |

CENTURY CASINOS INC COM   CUSIP: 156492100

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 101,375.00 | 6.3900000 | 0.00 | 647,786.25 | 575,309.76 | 72,476.49 | 0.00 | 72,476.49 |

CERENCE INC COM   CUSIP: 156727109

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 15,500.00 | 100.4800000 | 0.00 | 1,557,440.00 | 347,046.17 | 1,210,393.83 | 0.00 | 1,210,393.83 |

CHAMPIONX CORPORATION COM USD0.01 WI   CUSIP: 15872M104

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 58,073.00 | 15.3000000 | 0.00 | 888,516.90 | 1,036,396.19 | - 147,879.29 | 0.00 | - 147,879.29 |

**Northern Trust**

*Generated by Northern Trust from periodic data on 22 Jan 21*

## *Portfolio Statement*

**31 DEC 2020**

## ◆ Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Equities*

**Common stock**

CHARLES RIV LABORATORIES INTL INC COM   CUSIP: 159864107
CRL

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3,676.00 | 249.8600000 | 0.00 | 918,485.36 | 375,479.81 | 543,005.55 | 0.00 | 543,005.55 |

CHURCHILL DOWNS INC COM   CUSIP: 171484108

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3,664.00 | 194.7900000 | 2,279.00 | 713,710.56 | 332,492.38 | 381,218.18 | 0.00 | 381,218.18 |

CITI TRENDS INC COM ORD USD1   CUSIP: 17306X102

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 19,775.00 | 49.6800000 | 0.00 | 982,422.00 | 361,994.10 | 620,427.90 | 0.00 | 620,427.90 |

CITIGROUP INC COM NEW COM NEW   CUSIP: 172967424

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 45,425.00 | 61.6600000 | 0.00 | 2,800,905.50 | 2,602,580.47 | 198,325.03 | 0.00 | 198,325.03 |

CITIZENS FINL GROUP INC COM   CUSIP: 174610105
CFG

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 83,984.00 | 35.7600000 | 0.00 | 3,003,267.84 | 2,422,814.78 | 580,453.06 | 0.00 | 580,453.06 |

COGENT COMMUNICATIONS HLDGS INC   CUSIP: 19239V302

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3,203.00 | 59.8700000 | 0.00 | 191,763.61 | 263,340.41 | - 71,576.80 | 0.00 | - 71,576.80 |

COGNEX CORP COM   CUSIP: 192422103

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 12,330.00 | 80.2850000 | 0.00 | 989,914.05 | 598,462.65 | 391,451.40 | 0.00 | 391,451.40 |

## Northern Trust

# *Portfolio Statement*

**31 DEC 2020**

## ◆ Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

## *Equities*

**Common stock**

COLUMBUS MCKINNON CORP N Y COM   CUSIP: 199333105

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 14,965.00 | 38.4400000 | 0.00 | 575,254.60 | 409,419.43 | 165,835.17 | 0.00 | 165,835.17 |

COMPUTER PROGRAMS & SYS INC COM   CUSIP: 205306103

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 29,500.00 | 26.8400000 | 0.00 | 791,780.00 | 716,026.31 | 75,753.69 | 0.00 | 75,753.69 |

COMTECH TELECOMMUNICATIONS CORP COM NEW COM NEW   CUSIP: 205826209
CMTL

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 33,600.00 | 20.6900000 | 0.00 | 695,184.00 | 630,694.33 | 64,489.67 | 0.00 | 64,489.67 |

CONTRA BM TECHNOLOGIES RR   CUSIP: 232CNT014

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 7,455.00 | 2.5342780 | 0.00 | 18,893.04 | 106,979.25 | - 88,086.21 | 0.00 | - 88,086.21 |

COVENANT LOGISTICS GROUP INC CL A   CUSIP: 22284P105

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 45,150.00 | 14.8100000 | 0.00 | 668,671.50 | 590,010.64 | 78,660.86 | 0.00 | 78,660.86 |

COWEN INC COM USD0.01 CL A   CUSIP: 223622606

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 30,575.00 | 25.9990000 | 0.00 | 794,644.25 | 410,733.77 | 383,910.48 | 0.00 | 383,910.48 |

CRA INTL INC COM   CUSIP: 12618T105

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 16,040.00 | 50.9300000 | 0.00 | 816,917.20 | 549,572.28 | 267,344.92 | 0.00 | 267,344.92 |

**Northern Trust**

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

## ◆ Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss<br>Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Equities*

**Common stock**

CULP INC COM   CUSIP: 230215105

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 38,425.00 | 15.8700000 | 0.00 | 609,804.75 | 393,234.01 | 216,570.74 | 0.00 | 216,570.74 |

CUSTOMERS BANCORP INC COM   CUSIP: 23204G100
CUBI

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 48,450.00 | 18.1800000 | 0.00 | 880,821.00 | 752,075.97 | 128,745.03 | 0.00 | 128,745.03 |

CVS HEALTH CORP COM   CUSIP: 126650100
CVS

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 29,900.00 | 68.3000000 | 0.00 | 2,042,170.00 | 2,112,683.50 | - 70,513.50 | 0.00 | - 70,513.50 |

D R HORTON INC COM   CUSIP: 23331A109
DHI

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 34,100.00 | 68.9200000 | 0.00 | 2,350,172.00 | 1,948,029.71 | 402,142.29 | 0.00 | 402,142.29 |

DELTA AIR LINES INC DEL COM NEW COM NEW   CUSIP: 247361702
DAL

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 30,100.00 | 40.2100000 | 0.00 | 1,210,321.00 | 1,614,456.54 | - 404,135.54 | 0.00 | - 404,135.54 |

DHI GROUP INC COM   CUSIP: 23331S100

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 49,450.00 | 2.2200000 | 0.00 | 109,779.00 | 144,131.48 | - 34,352.48 | 0.00 | - 34,352.48 |

DICKS SPORTING GOODS INC OC-COM  OC-COM   CUSIP: 253393102

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 15,061.00 | 56.2100000 | 0.00 | 846,578.81 | 508,337.41 | 338,241.40 | 0.00 | 338,241.40 |

**Northern Trust**

# *Portfolio Statement*
**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

## ◆ Asset Detail - Base Currency

Page 29 of 1,860

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss<br>Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Equities*

#### Common stock

DIME CMNTY BANCSHARES INC COM   CUSIP: 253922108

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 39,450.00 | 15.7700000 | 0.00 | 622,126.50 | 599,977.53 | 22,148.97 | 0.00 | 22,148.97 |

DOLBY LABORATORIES INC CL A COM STK   CUSIP: 25659T107

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 13,299.00 | 97.1300000 | 0.00 | 1,291,731.87 | 682,480.46 | 609,251.41 | 0.00 | 609,251.41 |

DOLLAR GEN CORP NEW COM   CUSIP: 256677105

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 20,051.00 | 210.3000000 | 0.00 | 4,216,725.30 | 2,359,717.22 | 1,857,008.08 | 0.00 | 1,857,008.08 |

EAGLE PHARMACEUTICALS INC COM   CUSIP: 269796108

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 12,320.00 | 46.5700000 | 0.00 | 573,742.40 | 625,362.30 | - 51,619.90 | 0.00 | - 51,619.90 |

EAST WEST BANCORP INC COM   CUSIP: 27579R104
EWBC

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 28,125.00 | 50.7100000 | 0.00 | 1,426,218.75 | 1,046,213.44 | 380,005.31 | 0.00 | 380,005.31 |

EMCOR GROUP INC COM   CUSIP: 29084Q100

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 10,734.00 | 91.4600000 | 0.00 | 981,731.64 | 662,887.55 | 318,844.09 | 0.00 | 318,844.09 |

ENTEGRIS INC COM   CUSIP: 29362U104

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 15,941.00 | 96.1000000 | 0.00 | 1,531,930.10 | 290,963.30 | 1,240,966.80 | 0.00 | 1,240,966.80 |

# Northern Trust

# *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

◆ ## Asset Detail - Base Currency

Page 30 of 1,860

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|
| **Equities** | | | | | | | |
| **Common stock** | | | | | | | |
| ENTRAVISION COMMUNICATIONS CORP CL A CL A   CUSIP: 29382R107 | | | | | | | |
| 152,900.00 | 2.7500000 | 0.00 | 420,475.00 | 369,860.58 | 50,614.42 | 0.00 | 50,614.42 |
| ENVESTNET INC COM STK   CUSIP: 29404K106 | | | | | | | |
| 9,182.00 | 82.2900000 | 0.00 | 755,586.78 | 519,952.03 | 235,634.75 | 0.00 | 235,634.75 |
| EOG RESOURCES INC COM   CUSIP: 26875P101 | | | | | | | |
| 32,645.00 | 49.8700000 | 0.00 | 1,628,006.15 | 1,612,589.33 | 15,416.82 | 0.00 | 15,416.82 |
| ESSA BANCORP INC COM STK   CUSIP: 29667D104 | | | | | | | |
| 21,625.00 | 15.0000000 | 0.00 | 324,375.00 | 269,637.87 | 54,737.13 | 0.00 | 54,737.13 |
| ESSENTIAL UTILS INC COM   CUSIP: 29670G102 | | | | | | | |
| 26,095.00 | 47.2900000 | 0.00 | 1,234,032.55 | 864,847.33 | 369,185.22 | 0.00 | 369,185.22 |
| ETSY INC COM   CUSIP: 29786A106 | | | | | | | |
| 16,699.00 | 177.9100000 | 0.00 | 2,970,919.09 | 764,648.62 | 2,206,270.47 | 0.00 | 2,206,270.47 |
| EURONET WORLDWIDE INC COM   CUSIP: 298736109 EEFT | | | | | | | |
| 8,782.00 | 144.9200000 | 0.00 | 1,272,687.44 | 678,614.72 | 594,072.72 | 0.00 | 594,072.72 |

# Northern Trust

**Portfolio Statement**

31 DEC 2020

◆ **Asset Detail - Base Currency**

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### Equities

**Common stock**

EVERBRIDGE INC COM   CUSIP: 29978A104

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5,108.00 | 149.0700000 | 0.00 | 761,449.56 | 494,087.66 | 267,361.90 | 0.00 | 267,361.90 |

EVOLUTION PETE CORP COM STK   CUSIP: 30049A107

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 91,250.00 | 2.8500000 | 0.00 | 260,062.50 | 458,652.89 | - 198,590.39 | 0.00 | - 198,590.39 |

EXACT SCIENCES CORP COM   CUSIP: 30063P105

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 6,145.00 | 132.4900000 | 0.00 | 814,151.05 | 455,951.01 | 358,200.04 | 0.00 | 358,200.04 |

EXELIXIS INC COM STK   CUSIP: 30161Q104

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 110,524.00 | 20.0700000 | 0.00 | 2,218,216.68 | 2,401,511.32 | - 183,294.64 | 0.00 | - 183,294.64 |

EXPEDITORS INTL WASH INC COM   CUSIP: 302130109

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 11,557.00 | 95.1100000 | 0.00 | 1,099,186.27 | 602,898.16 | 496,288.11 | 0.00 | 496,288.11 |

FACEBOOK INC  COM USD0.000006 CL 'A'   CUSIP: 30303M102 FB

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 41,695.00 | 273.1600000 | 0.00 | 11,389,406.20 | 6,499,072.94 | 4,890,333.26 | 0.00 | 4,890,333.26 |

FEDERAL AGRIC MTG CORP CL C   CUSIP: 313148306

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 7,400.00 | 74.2500000 | 0.00 | 549,450.00 | 485,947.43 | 63,502.57 | 0.00 | 63,502.57 |

**Northern Trust**

# *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

## ◆ Asset Detail - Base Currency

Page 32 of 1,860

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Equities*

**Common stock**

FIBROGEN INC COM   CUSIP: 31572Q808

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 12,080.00 | 37.0900000 | 0.00 | 448,047.20 | 556,430.38 | - 108,383.18 | 0.00 | - 108,383.18 |

FIDELITY NATL FINL INC NEW FORMERLY    FIDELITY COMMON STOCK   CUSIP: 31620R303

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 29,604.00 | 39.0900000 | 0.00 | 1,157,220.36 | 935,088.79 | 222,131.57 | 0.00 | 222,131.57 |

FINANCIAL INSTNS INC COM   CUSIP: 317585404

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 24,870.00 | 22.5000000 | 6,466.20 | 559,575.00 | 515,984.73 | 43,590.27 | 0.00 | 43,590.27 |

FIRST BANCORP INC ME COM   CUSIP: 31866P102

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 11,975.00 | 25.4000000 | 0.00 | 304,165.00 | 237,861.19 | 66,303.81 | 0.00 | 66,303.81 |

FIRST FINL CORP IND COM   CUSIP: 320218100

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 16,600.00 | 38.8500000 | 0.00 | 644,910.00 | 553,634.44 | 91,275.56 | 0.00 | 91,275.56 |

FIRST HORIZON              CORPORATION COM   CUSIP: 320517105

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 101,667.00 | 12.7600000 | 15,250.05 | 1,297,270.92 | 1,093,155.24 | 204,115.68 | 0.00 | 204,115.68 |

FIRST INTERNET BANCORP COM STK   CUSIP: 320557101

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 31,845.00 | 28.7400000 | 2,046.00 | 915,225.30 | 660,166.35 | 255,058.95 | 0.00 | 255,058.95 |

# Northern Trust

# *Portfolio Statement*
**31 DEC 2020**

## ◆ Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss |||
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Equities*

**Common stock**

FIVE STAR SR LIVING INC FORMERLY FIVE   STAR QUALITY CARE INC COM NEW COM NEW   CUSIP: 33832D205

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 62,100.00 | 6.9000000 | 0.00 | 428,490.00 | 267,373.50 | 161,116.50 | 0.00 | 161,116.50 |

FORTINET INC COM   CUSIP: 34959E109
FTNT

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 8,277.00 | 148.5300000 | 0.00 | 1,229,382.81 | 360,195.63 | 869,187.18 | 0.00 | 869,187.18 |

FORTUNE BRANDS HOME & SEC INC COM   CUSIP: 34964C106

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5,862.00 | 85.7200000 | 0.00 | 502,490.64 | 383,924.66 | 118,565.98 | 0.00 | 118,565.98 |

GARTNER INC COM   CUSIP: 366651107

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 21,312.00 | 160.1900000 | 0.00 | 3,413,969.28 | 2,814,920.39 | 599,048.89 | 0.00 | 599,048.89 |

GENESCO INC COM   CUSIP: 371532102

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 24,800.00 | 30.0900000 | 0.00 | 746,232.00 | 622,514.30 | 123,717.70 | 0.00 | 123,717.70 |

GLADSTONE COML CORP COM STK   CUSIP: 376536108

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 41,700.00 | 18.0000000 | 0.00 | 750,600.00 | 790,403.74 | - 39,803.74 | 0.00 | - 39,803.74 |

GLATFELTER CORP COM   CUSIP: 377320106

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 41,500.00 | 16.3800000 | 5,602.50 | 679,770.00 | 657,925.17 | 21,844.83 | 0.00 | 21,844.83 |

# Northern Trust

## *Portfolio Statement*

**31 DEC 2020**

◆ Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Equities*

**Common stock**

GLOBAL MED REIT INC COM NEW COM NEW   CUSIP: 37954A204

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 60,975.00 | 13.0600000 | 12,195.00 | 796,333.50 | 669,447.69 | 126,885.81 | 0.00 | 126,885.81 |

GODADDY INC CL A CL A   CUSIP: 380237107

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 15,888.00 | 82.9500000 | 0.00 | 1,317,909.60 | 1,196,048.49 | 121,861.11 | 0.00 | 121,861.11 |

GOLDMAN SACHS GROUP INC COM   CUSIP: 38141G104
GS

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 12,650.00 | 263.7100000 | 0.00 | 3,335,931.50 | 2,486,799.82 | 849,131.68 | 0.00 | 849,131.68 |

GRACO INC COM   CUSIP: 384109104

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 11,343.00 | 72.3500000 | 0.00 | 820,666.05 | 490,484.34 | 330,181.71 | 0.00 | 330,181.71 |

GRAHAM CORP COM STK   CUSIP: 384556106

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 31,830.00 | 15.1800000 | 0.00 | 483,179.40 | 540,691.59 | - 57,512.19 | 0.00 | - 57,512.19 |

GREAT LAKES DREDGE & DOCK CORP NEW COM   CUSIP: 390607109

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 52,725.00 | 13.1700000 | 0.00 | 694,388.25 | 478,333.57 | 216,054.68 | 0.00 | 216,054.68 |

GREENHILL & CO INC COM   CUSIP: 395259104

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 45,325.00 | 12.1400000 | 0.00 | 550,245.50 | 671,731.10 | - 121,485.60 | 0.00 | - 121,485.60 |

**Northern Trust**

**Portfolio Statement**

31 DEC 2020

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

◆ Asset Detail - Base Currency

Page 35 of 1,860

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

*Equities*

**Common stock**

GUARDANT HEALTH INC COM   CUSIP: 40131M109

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5,995.00 | 128.8800000 | 0.00 | 772,635.60 | 420,222.70 | 352,412.90 | 0.00 | 352,412.90 |

GUIDEWIRE SOFTWARE INC COM USD0.0001   CUSIP: 40171V100

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5,938.00 | 128.7300000 | 0.00 | 764,398.74 | 351,562.13 | 412,836.61 | 0.00 | 412,836.61 |

HANGER INC COM   CUSIP: 41043F208

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 37,900.00 | 21.9990000 | 0.00 | 833,421.00 | 672,502.86 | 160,918.14 | 0.00 | 160,918.14 |

HANMI FINL CORP COM NEW COM NEW   CUSIP: 410495204

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 46,200.00 | 11.3400000 | 0.00 | 523,908.00 | 641,589.77 | - 117,681.77 | 0.00 | - 117,681.77 |

HAYNES INTL INC COM NEW COM NEW   CUSIP: 420877201

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 14,200.00 | 23.8400000 | 0.00 | 338,528.00 | 406,336.03 | - 67,808.03 | 0.00 | - 67,808.03 |

HCI GROUP INC COM NPV   CUSIP: 40416E103

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5,315.00 | 52.3000000 | 0.00 | 277,974.50 | 220,494.61 | 57,479.89 | 0.00 | 57,479.89 |

HERITAGE INS HLDGS INC COM   CUSIP: 42727J102
HRTG

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 19,525.00 | 10.1300000 | 1,171.50 | 197,788.25 | 274,462.76 | - 76,674.51 | 0.00 | - 76,674.51 |

**Northern Trust**

*Generated by Northern Trust from periodic data on 22 Jan 21*

## *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

◆ ## Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss<br>Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Equities*

**Common stock**

HERSHA HOSPITALITY TR PRIORITY SHS BEN  INT CL A NEW PRTY SHS BEN INT CL A NEW  CUSIP: 427825500

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 31,750.00 | 7.8900000 | 0.00 | 250,507.50 | 385,113.54 | - 134,606.04 | 0.00 | - 134,606.04 |

HOMESTREET INC INC   CUSIP: 43785V102

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 27,650.00 | 33.7500000 | 0.00 | 933,187.50 | 696,227.75 | 236,959.75 | 0.00 | 236,959.75 |

HOMETRUST BANCSHARES INC COM   CUSIP: 437872104

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 22,225.00 | 19.3100000 | 0.00 | 429,164.75 | 353,693.32 | 75,471.43 | 0.00 | 75,471.43 |

HOOKER FURNITURE CORP COM   CUSIP: 439038100

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 10,475.00 | 32.2500000 | 0.00 | 337,818.75 | 242,232.26 | 95,586.49 | 0.00 | 95,586.49 |

HORIZON BANCORP INC/IN COM   CUSIP: 440407104

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 40,250.00 | 15.8600000 | 0.00 | 638,365.00 | 443,752.24 | 194,612.76 | 0.00 | 194,612.76 |

HOWARD BANCORP INC COM   CUSIP: 442496105

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 18,500.00 | 11.8100000 | 0.00 | 218,485.00 | 248,561.02 | - 30,076.02 | 0.00 | - 30,076.02 |

HP INC COM   CUSIP: 40434L105

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 123,350.00 | 24.5900000 | 23,905.23 | 3,033,176.50 | 2,418,947.47 | 614,229.03 | 0.00 | 614,229.03 |

# Northern Trust

# *Portfolio Statement*

**31 DEC 2020**

## ◆ Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Equities*

**Common stock**

HUBBELL INC COM   CUSIP: 443510607
HUBB

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 7,114.00 | 156.7900000 | 0.00 | 1,115,404.06 | 796,730.56 | 318,673.50 | 0.00 | 318,673.50 |

HUNTINGTON INGALLS INDS INC COM   CUSIP: 446413106
HII

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 7,211.00 | 170.4800000 | 0.00 | 1,229,331.28 | 1,343,955.21 | - 114,623.93 | 0.00 | - 114,623.93 |

HYATT HOTELS CORP COM CL A COM CL A   CUSIP: 448579102

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 15,688.00 | 74.2500000 | 0.00 | 1,164,834.00 | 879,960.24 | 284,873.76 | 0.00 | 284,873.76 |

IDT CORP CL B NEW CL B NEW   CUSIP: 448947507

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 72,590.00 | 12.3600000 | 0.00 | 897,212.40 | 520,505.59 | 376,706.81 | 0.00 | 376,706.81 |

ILLUMINA INC COM   CUSIP: 452327109

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 8,386.00 | 370.0000000 | 0.00 | 3,102,820.00 | 2,522,624.86 | 580,195.14 | 0.00 | 580,195.14 |

IMAX CORP COM   CUSIP: 45245E109

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 43,300.00 | 18.0200000 | 0.00 | 780,266.00 | 475,558.42 | 304,707.58 | 0.00 | 304,707.58 |

INARI MED INC COM   CUSIP: 45332Y109

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 6,458.00 | 87.2900000 | 0.00 | 563,718.82 | 432,315.31 | 131,403.51 | 0.00 | 131,403.51 |

**Northern Trust**

# *Portfolio Statement*

**31 DEC 2020**

## ◆ Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

## *Equities*

### Common stock

INDEPENDENT BK CORPORATION   CUSIP: 453838609

| 35,750.00 | 18.4700000 | 0.00 | 660,302.50 | 496,348.32 | 163,954.18 | 0.00 | 163,954.18 |

INSPERITY INC COM   CUSIP: 45778Q107

| 9,645.00 | 81.4200000 | 0.00 | 785,295.90 | 886,291.74 | - 100,995.84 | 0.00 | - 100,995.84 |

INTERNATIONAL SEAWAYS INC INTERNATIONAL SEAWAYS INC COMMON STOCK   CUSIP: Y41053102

| 11,335.00 | 16.3300000 | 0.00 | 185,100.55 | 246,982.05 | - 61,881.50 | 0.00 | - 61,881.50 |

INTUITIVE SURGICAL INC COM NEW STK   CUSIP: 46120E602

| 3,621.00 | 818.1000000 | 0.00 | 2,962,340.10 | 2,650,963.79 | 311,376.31 | 0.00 | 311,376.31 |

IRADIMED CORP COM   CUSIP: 46266A109

| 14,825.00 | 22.8000000 | 0.00 | 338,010.00 | 335,523.20 | 2,486.80 | 0.00 | 2,486.80 |

IRHYTHM TECHNOLOGIES INC COM   CUSIP: 450056106

| 7,309.00 | 237.2100000 | 0.00 | 1,733,767.89 | 529,028.91 | 1,204,738.98 | 0.00 | 1,204,738.98 |

JABIL INC COM USD0.001   CUSIP: 466313103

| 26,275.00 | 42.5300000 | 0.00 | 1,117,475.75 | 917,776.99 | 199,698.76 | 0.00 | 199,698.76 |

# Northern Trust

## *Portfolio Statement*
**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

◆ ## Asset Detail - Base Currency

Page 39 of 1,860

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss<br>Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Equities*

**Common stock**

JACK HENRY & ASSOC INC COM   CUSIP: 426281101

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4,956.00 | 161.9900000 | 0.00 | 802,822.44 | 670,172.20 | 132,650.24 | 0.00 | 132,650.24 |

JOHNSON CTLS INTL PLC COM USD0.01   CUSIP: G51502105

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 46,075.00 | 46.5900000 | 11,979.50 | 2,146,634.25 | 1,773,253.55 | 373,380.70 | 0.00 | 373,380.70 |

JPMORGAN CHASE & CO COM   CUSIP: 46625H100
JPM

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 37,850.00 | 127.0700000 | 0.00 | 4,809,599.50 | 2,874,207.03 | 1,935,392.47 | 0.00 | 1,935,392.47 |

KELLY SERVICES INC CL A COM   CUSIP: 488152208

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 24,300.00 | 20.5700000 | 0.00 | 499,851.00 | 345,028.07 | 154,822.93 | 0.00 | 154,822.93 |

KIMBALL ELECTRONICS INC COM   CUSIP: 49428J109

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 39,100.00 | 15.9900000 | 0.00 | 625,209.00 | 636,155.40 | - 10,946.40 | 0.00 | - 10,946.40 |

KIMBERLY-CLARK CORP COM   CUSIP: 494368103
KMB

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 0.00 | 134.8300000 | 8,105.25 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

KINDER MORGAN INC DEL COM   CUSIP: 49456B101
KMI

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 92,350.00 | 13.6700000 | 0.00 | 1,262,424.50 | 1,237,392.77 | 25,031.73 | 0.00 | 25,031.73 |

**Northern Trust**

*Generated by Northern Trust from periodic data on 22 Jan 21*

## *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

◆ Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss<br>Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Equities*

**Common stock**

KNIGHT-SWIFT  TRANSN HLDGS INC CL A CLASSA COMMON STOCK USD0.01   CUSIP: 499049104

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 27,403.00 | 41.8200000 | 0.00 | 1,145,993.46 | 977,772.35 | 168,221.11 | 0.00 | 168,221.11 |

KRATON CORPORATION   CUSIP: 50077C106

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 8,825.00 | 27.7900000 | 0.00 | 245,246.75 | 160,084.20 | 85,162.55 | 0.00 | 85,162.55 |

KROGER CO COM   CUSIP: 501044101
KR

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 69,975.00 | 31.7600000 | 0.00 | 2,222,406.00 | 1,925,481.07 | 296,924.93 | 0.00 | 296,924.93 |

KS CY SOUTHN   CUSIP: 485170302
KSU

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4,475.00 | 204.1300000 | 1,969.00 | 913,481.75 | 515,556.38 | 397,925.37 | 0.00 | 397,925.37 |

LAKELAND BANCORP INC COM   CUSIP: 511637100

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 52,275.00 | 12.7000000 | 0.00 | 663,892.50 | 611,803.60 | 52,088.90 | 0.00 | 52,088.90 |

LAM RESH CORP COM   CUSIP: 512807108
LRCX

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5,500.00 | 472.2700000 | 8,580.00 | 2,597,485.00 | 1,272,436.10 | 1,325,048.90 | 0.00 | 1,325,048.90 |

LAMB WESTON HLDGS INC COM USD5   CUSIP: 513272104
LW

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 16,215.00 | 78.7400000 | 0.00 | 1,276,769.10 | 1,034,660.88 | 242,108.22 | 0.00 | 242,108.22 |

**Northern Trust**

# *Portfolio Statement*

**31 DEC 2020**

## ◆ Asset Detail - Base Currency

Page 41 of 1,860

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Equities*

**Common stock**

LEAR CORP COM NEW COM NEW    CUSIP: 521865204

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 10,200.00 | 159.0300000 | 0.00 | 1,622,106.00 | 1,430,222.71 | 191,883.29 | 0.00 | 191,883.29 |

LEIDOS HLDGS INC COM    CUSIP: 525327102

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 12,978.00 | 105.1200000 | 0.00 | 1,364,247.36 | 845,737.69 | 518,509.67 | 0.00 | 518,509.67 |

LIBERTY MEDIA CORPORATION COM USD0.01 SER C FORMULA    CUSIP: 531229854

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 12,828.00 | 42.6000000 | 0.00 | 546,472.80 | 455,165.96 | 91,306.84 | 0.00 | 91,306.84 |

LINCOLN ELEC HLDGS INC COM    CUSIP: 533900106

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 10,087.00 | 116.2500000 | 5,144.37 | 1,172,613.75 | 881,752.92 | 290,860.83 | 0.00 | 290,860.83 |

LITHIA MTRS INC CL A CL A    CUSIP: 536797103

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1,858.00 | 292.6700000 | 0.00 | 543,780.86 | 497,648.95 | 46,131.91 | 0.00 | 46,131.91 |

LIVE NATION ENTERTAINMENT INC    CUSIP: 538034109

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 11,464.00 | 73.4800000 | 0.00 | 842,374.72 | 473,178.83 | 369,195.89 | 0.00 | 369,195.89 |

LUMENTUM HLDGS INC COM    CUSIP: 55024U109

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 14,768.00 | 94.8000000 | 0.00 | 1,400,006.40 | 1,048,151.42 | 351,854.98 | 0.00 | 351,854.98 |

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*

**31 DEC 2020**

## ◆ Asset Detail - Base Currency

Page 42 of 1,860

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Equities*

**Common stock**

LUTHER BURBANK CORP COM   CUSIP: 550550107

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 30,125.00 | 9.8000000 | 0.00 | 295,225.00 | 318,087.09 | - 22,862.09 | 0.00 | - 22,862.09 |

LYONDELLBASELL IND N V COM USD0.01 CL   'A'   CUSIP: N53745100

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 26,450.00 | 91.6600000 | 0.00 | 2,424,407.00 | 2,287,239.75 | 137,167.25 | 0.00 | 137,167.25 |

MASTERCARD INC CL A   CUSIP: 57636Q104
MA

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 18,957.00 | 356.9400000 | 0.00 | 6,766,511.58 | 4,223,075.58 | 2,543,436.00 | 0.00 | 2,543,436.00 |

MATRIX SVC CO COM   CUSIP: 576853105
MTRX

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 44,025.00 | 11.0200000 | 0.00 | 485,155.50 | 539,252.59 | - 54,097.09 | 0.00 | - 54,097.09 |

MAXIMUS INC COM   CUSIP: 577933104

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 16,429.00 | 73.1900000 | 0.00 | 1,202,438.51 | 933,976.86 | 268,461.65 | 0.00 | 268,461.65 |

MEDTRONIC PLC COMMON STOCK        STOCK   CUSIP: G5960L103
MDT

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 19,625.00 | 117.1400000 | 11,382.50 | 2,298,872.50 | 2,207,264.30 | 91,608.20 | 0.00 | 91,608.20 |

MICROSOFT CORP COM   CUSIP: 594918104
MSFT

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 49,617.00 | 222.4200000 | 0.00 | 11,035,813.14 | 5,849,361.51 | 5,186,451.63 | 0.00 | 5,186,451.63 |

# Northern Trust

# *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

◆ ## Asset Detail - Base Currency

Page 43 of 1,860

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

## *Equities*

### Common stock

MID-AMER  APT CMNTYS INC COM   CUSIP: 59522J103

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 9,850.00 | 126.6900000 | 0.00 | 1,247,896.50 | 1,223,103.79 | 24,792.71 | 0.00 | 24,792.71 |

MISTRAS GROUP INC COM   CUSIP: 60649T107

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 51,725.00 | 7.7600000 | 0.00 | 401,386.00 | 356,256.13 | 45,129.87 | 0.00 | 45,129.87 |

MOHAWK INDS INC COM   CUSIP: 608190104

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 7,778.00 | 140.9500000 | 0.00 | 1,096,309.10 | 662,921.27 | 433,387.83 | 0.00 | 433,387.83 |

MOLINA HEALTHCARE INC COM   CUSIP: 60855R100
MOH

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5,257.00 | 212.6800000 | 0.00 | 1,118,058.76 | 719,698.91 | 398,359.85 | 0.00 | 398,359.85 |

MOSAIC CO/THE   CUSIP: 61945C103
MOS

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 42,931.00 | 23.0100000 | 0.00 | 987,842.31 | 799,579.63 | 188,262.68 | 0.00 | 188,262.68 |

MOTORCAR PTS & ACCESSORIES INC COM   CUSIP: 620071100

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 24,475.00 | 19.6200000 | 0.00 | 480,199.50 | 514,866.37 | - 34,666.87 | 0.00 | - 34,666.87 |

MSCI INC COMMON   CUSIP: 55354G100

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 6,305.00 | 446.5300000 | 0.00 | 2,815,371.65 | 1,425,122.20 | 1,390,249.45 | 0.00 | 1,390,249.45 |

# **Northern Trust**

# *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

## ◆ Asset Detail - Base Currency

Page 44 of 1,860

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Market | Translation | Total |
|---|---|---|---|---|---|---|---|
| | | | | | | Unrealized gain/loss | |

### *Equities*

**Common stock**

MYERS INDS INC COM   CUSIP: 628464109

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 21,050.00 | 20.7800000 | 0.00 | 437,419.00 | 398,823.66 | 38,595.34 | 0.00 | 38,595.34 |

NAPCO SECURITY TECHNOLOGIES INC   CUSIP: 630402105

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 26,550.00 | 26.2200000 | 0.00 | 696,141.00 | 690,300.00 | 5,841.00 | 0.00 | 5,841.00 |

NATIONAL RETAIL PPTYS INC COM STK   CUSIP: 637417106

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 30,800.00 | 40.9200000 | 0.00 | 1,260,336.00 | 1,095,321.77 | 165,014.23 | 0.00 | 165,014.23 |

NATURAL GAS SVCS GROUP INC COM   CUSIP: 63886Q109

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 42,900.00 | 9.4800000 | 0.00 | 406,692.00 | 430,194.25 | - 23,502.25 | 0.00 | - 23,502.25 |

NEUROCRINE BIOSCIENCES INC COM   CUSIP: 64125C109

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 9,153.00 | 95.8500000 | 0.00 | 877,315.05 | 986,147.27 | - 108,832.22 | 0.00 | - 108,832.22 |

NEW YORK TIMES CO CL A ISIN        #US6501111073   CUSIP: 650111107

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 22,278.00 | 51.7700000 | 0.00 | 1,153,332.06 | 734,314.60 | 419,017.46 | 0.00 | 419,017.46 |

NIKE INC CL B   CUSIP: 654106103
NKE

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 23,268.00 | 141.4700000 | 0.00 | 3,291,723.96 | 1,864,928.09 | 1,426,795.87 | 0.00 | 1,426,795.87 |

# Northern Trust

## *Portfolio Statement*

**31 DEC 2020**

◆ ## Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Equities*

**Common stock**

NORDSON CORP COM   CUSIP: 655663102

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5,206.00 | 200.9500000 | 2,030.34 | 1,046,145.70 | 438,922.83 | 607,222.87 | 0.00 | 607,222.87 |

NORTHEAST BK LEWISTON ME COM   CUSIP: 66405S100

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 11,775.00 | 22.5200000 | 0.00 | 265,173.00 | 221,630.51 | 43,542.49 | 0.00 | 43,542.49 |

NORTHWEST PIPE CO COM   CUSIP: 667746101

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 20,950.00 | 28.3000000 | 0.00 | 592,885.00 | 433,012.01 | 159,872.99 | 0.00 | 159,872.99 |

NOVOCURE LTD COM USD0.00   CUSIP: G6674U108

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 7,202.00 | 173.0400000 | 0.00 | 1,246,234.08 | 602,265.47 | 643,968.61 | 0.00 | 643,968.61 |

NOW INC COM   CUSIP: 67011P100
DNOW

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 37,050.00 | 7.1800000 | 0.00 | 266,019.00 | 250,779.99 | 15,239.01 | 0.00 | 15,239.01 |

NVE CORP COM NEW COM NEW   CUSIP: 629445206

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 8,250.00 | 56.1800000 | 0.00 | 463,485.00 | 429,620.80 | 33,864.20 | 0.00 | 33,864.20 |

OKTA INC CL A CL A   CUSIP: 679295105

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5,510.00 | 254.2600000 | 0.00 | 1,400,972.60 | 650,898.97 | 750,073.63 | 0.00 | 750,073.63 |

**Northern Trust**

*Generated by Northern Trust from periodic data on 22 Jan 21*

## *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

◆ Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss<br>Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Equities*

**Common stock**

OLYMPIC STL INC COM   CUSIP: 68162K106

| | 23,550.00 | 13.3300000 | 0.00 | 313,921.50 | 282,445.07 | 31,476.43 | 0.00 | 31,476.43 |

ON SEMICONDUCTOR CORP COM   CUSIP: 682189105
ONNN

| | 44,155.00 | 32.7300000 | 0.00 | 1,445,193.15 | 667,947.74 | 777,245.41 | 0.00 | 777,245.41 |

ORACLE CORP COM   CUSIP: 68389X105
ORCL

| | 42,725.00 | 64.6900000 | 0.00 | 2,763,880.25 | 2,545,312.89 | 218,567.36 | 0.00 | 218,567.36 |

ORION GROUP HLDGS INC FORMERLY ORION   MARINE GROUP INC TO 05/20/2016 COM STK   CUSIP: 68628V308

| | 140,650.00 | 4.9600000 | 0.00 | 697,624.00 | 593,540.01 | 104,083.99 | 0.00 | 104,083.99 |

PACKAGING CORP AMER COM ISIN       US6951561090   CUSIP: 695156109

| | 16,650.00 | 137.9100000 | 16,650.00 | 2,296,201.50 | 1,859,104.62 | 437,096.88 | 0.00 | 437,096.88 |

PAYCOM SOFTWARE INC COM   CUSIP: 70432V102

| | 2,283.00 | 452.2500000 | 0.00 | 1,032,486.75 | 535,592.89 | 496,893.86 | 0.00 | 496,893.86 |

PAYPAL HLDGS INC COM   CUSIP: 70450Y103
PYPL

| | 25,891.00 | 234.2000000 | 0.00 | 6,063,672.20 | 2,348,092.70 | 3,715,579.50 | 0.00 | 3,715,579.50 |

# Northern Trust

## *Portfolio Statement*

**31 DEC 2020**

◆ Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Equities*

**Common stock**

PCTEL INC   CUSIP: 69325Q105

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 63,175.00 | 6.5700000 | 0.00 | 415,059.75 | 376,224.62 | 38,835.13 | 0.00 | 38,835.13 |

PEOPLES BANCORP INC COM STK   CUSIP: 709789101

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 27,175.00 | 27.0900000 | 0.00 | 736,170.75 | 620,964.02 | 115,206.73 | 0.00 | 115,206.73 |

PEOPLES UTD FINL INC COM   CUSIP: 712704105

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 103,600.00 | 12.9300000 | 0.00 | 1,339,548.00 | 1,368,474.36 | - 28,926.36 | 0.00 | - 28,926.36 |

PERFORMANCE FOOD GROUP CO COM   CUSIP: 71377A103

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 11,967.00 | 47.6100000 | 0.00 | 569,748.87 | 328,488.17 | 241,260.70 | 0.00 | 241,260.70 |

PFIZER INC COM   CUSIP: 717081103
PFE

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 64,195.00 | 36.8100000 | 0.00 | 2,363,017.95 | 2,338,048.64 | 24,969.31 | 0.00 | 24,969.31 |

PLYMOUTH INDL REIT INC COM   CUSIP: 729640102

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 33,360.00 | 15.0000000 | 6,672.00 | 500,400.00 | 501,783.36 | - 1,383.36 | 0.00 | - 1,383.36 |

POWER INTEGRATIONS INC COM   CUSIP: 739276103

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 11,430.00 | 81.8600000 | 0.00 | 935,659.80 | 350,155.93 | 585,503.87 | 0.00 | 585,503.87 |

**Northern Trust**

# *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

◆ ## Asset Detail - Base Currency

Page 48 of 1,860

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Equities*

**Common stock**

| PPL CORP COM ISIN US69351T1060   CUSIP: 69351T106 PPL | | | | | | | |
|---|---|---|---|---|---|---|---|
| 95,175.00 | 28.2000000 | 47,455.25 | 2,683,935.00 | 2,818,821.46 | - 134,886.46 | 0.00 | - 134,886.46 |

| PREMIER FINL CORP   CUSIP: 74052F108 | | | | | | | |
|---|---|---|---|---|---|---|---|
| 37,000.00 | 23.0000000 | 0.00 | 851,000.00 | 887,321.42 | - 36,321.42 | 0.00 | - 36,321.42 |

| PRUDENTIAL FINL INC COM   CUSIP: 744320102 PRU | | | | | | | |
|---|---|---|---|---|---|---|---|
| 38,150.00 | 78.0700000 | 0.00 | 2,978,370.50 | 2,995,371.38 | - 17,000.88 | 0.00 | - 17,000.88 |

| PVH CORP COM USD1   CUSIP: 693656100 | | | | | | | |
|---|---|---|---|---|---|---|---|
| 13,273.00 | 93.8900000 | 0.00 | 1,246,201.97 | 662,226.90 | 583,975.07 | 0.00 | 583,975.07 |

| QORVO INC COM   CUSIP: 74736K101 QRVO | | | | | | | |
|---|---|---|---|---|---|---|---|
| 8,359.00 | 166.2700000 | 0.00 | 1,389,850.93 | 645,416.53 | 744,434.40 | 0.00 | 744,434.40 |

| QUALYS INC COM USD0.001   CUSIP: 74758T303 | | | | | | | |
|---|---|---|---|---|---|---|---|
| 9,123.00 | 121.8700000 | 0.00 | 1,111,820.01 | 781,578.84 | 330,241.17 | 0.00 | 330,241.17 |

| RAMACO RES INC COM   CUSIP: 75134P303 | | | | | | | |
|---|---|---|---|---|---|---|---|
| 60,050.00 | 2.8800000 | 0.00 | 172,944.00 | 274,179.42 | - 101,235.42 | 0.00 | - 101,235.42 |

# Northern Trust

# *Portfolio Statement*
**31 DEC 2020**

## ◆ Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Equities*

**Common stock**

RED ROBIN GOURMET BURGERS INC COM   CUSIP: 75689M101

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 23,475.00 | 19.2300000 | 0.00 | 451,424.25 | 364,312.78 | 87,111.47 | 0.00 | 87,111.47 |

REGENERON PHARMACEUTICALS INC COM   CUSIP: 75886F107

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 6,879.00 | 483.1100000 | 0.00 | 3,323,313.69 | 2,814,783.49 | 508,530.20 | 0.00 | 508,530.20 |

REINSURANCE GROUP AMER INC COM NEW STK   CUSIP: 759351604
RGA

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 18,782.00 | 115.9000000 | 0.00 | 2,176,833.80 | 1,862,746.12 | 314,087.68 | 0.00 | 314,087.68 |

REVOLVE GROUP INC CL A CL A   CUSIP: 76156B107

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 25,073.00 | 31.1700000 | 0.00 | 781,525.41 | 776,759.03 | 4,766.38 | 0.00 | 4,766.38 |

ROBERT HALF INTL INC COM   CUSIP: 770323103
RHI

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 19,245.00 | 62.4800000 | 0.00 | 1,202,427.60 | 916,258.35 | 286,169.25 | 0.00 | 286,169.25 |

SALESFORCE COM INC COM STK   CUSIP: 79466L302
CRM

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 24,501.00 | 222.5300000 | 0.00 | 5,452,207.53 | 3,926,359.87 | 1,525,847.66 | 0.00 | 1,525,847.66 |

SEAWORLD ENTMT INC COM   CUSIP: 81282V100

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 26,898.00 | 31.5900000 | 0.00 | 849,707.82 | 652,251.15 | 197,456.67 | 0.00 | 197,456.67 |

# Northern Trust

# *Portfolio Statement*

**31 DEC 2020**

## ◆ Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Equities*

**Common stock**

SELECT INTERIOR CONCEPTS INC COM USD0.01CLASS A    CUSIP: 816120307

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 109,025.00 | 7.1500000 | 0.00 | 779,528.75 | 507,838.07 | 271,690.68 | 0.00 | 271,690.68 |

SEMTECH CORP COM    CUSIP: 816850101
SMTC

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 10,144.00 | 72.0900000 | 0.00 | 731,280.96 | 518,473.13 | 212,807.83 | 0.00 | 212,807.83 |

SERVICENOW INC COM USD0.001    CUSIP: 81762P102

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 11,377.00 | 550.4300000 | 0.00 | 6,262,242.11 | 3,200,554.77 | 3,061,687.34 | 0.00 | 3,061,687.34 |

SHOCKWAVE MED INC COM    CUSIP: 82489T104

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3,357.00 | 103.7200000 | 0.00 | 348,188.04 | 327,028.87 | 21,159.17 | 0.00 | 21,159.17 |

SHOE CARNIVAL INC COM    CUSIP: 824889109

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 20,350.00 | 39.1800000 | 0.00 | 797,313.00 | 584,653.40 | 212,659.60 | 0.00 | 212,659.60 |

SHYFT GROUP INC COM    CUSIP: 825698103

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 18,675.00 | 28.3800000 | 0.00 | 529,996.50 | 375,056.05 | 154,940.45 | 0.00 | 154,940.45 |

SIERRA BANCORP COM STK    CUSIP: 82620P102

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 29,800.00 | 23.9200000 | 0.00 | 712,816.00 | 582,154.52 | 130,661.48 | 0.00 | 130,661.48 |

# Northern Trust

## *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

◆ Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss<br>Market | Translation | Total |
|---|---|---|---|---|---|---|---|
| *Equities* | | | | | | | |
| **Common stock** | | | | | | | |
| SIGNATURE BK NY N Y COM    CUSIP: 82669G104 | | | | | | | |
| 5,938.00 | 135.2900000 | 0.00 | 803,352.02 | 715,664.39 | 87,687.63 | 0.00 | 87,687.63 |
| SMART GLOBAL HOLDINGS INC COMN STOCK    CUSIP: G8232Y101 | | | | | | | |
| 12,825.00 | 37.6300000 | 0.00 | 482,604.75 | 348,077.52 | 134,527.23 | 0.00 | 134,527.23 |
| SMARTFINANCIAL INC COM NEW COM NEW    CUSIP: 83190L208 | | | | | | | |
| 33,200.00 | 18.1400000 | 0.00 | 602,248.00 | 633,755.24 | - 31,507.24 | 0.00 | - 31,507.24 |
| SMITH A O CORP COM    CUSIP: 831865209 | | | | | | | |
| 37,659.00 | 54.8200000 | 0.00 | 2,064,466.38 | 1,775,065.74 | 289,400.64 | 0.00 | 289,400.64 |
| SMUCKER J M CO COM NEW<br>SJM    CUSIP: 832696405 | | | | | | | |
| 12,650.00 | 115.6000000 | 0.00 | 1,462,340.00 | 1,442,442.86 | 19,897.14 | 0.00 | 19,897.14 |
| SOUTHERN NATL BANCORP VA INC COM    CUSIP: 843395104 | | | | | | | |
| 62,200.00 | 12.1100000 | 0.00 | 753,242.00 | 786,954.46 | - 33,712.46 | 0.00 | - 33,712.46 |
| SPARTANNASH CO COM NPV    CUSIP: 847215100 | | | | | | | |
| 18,300.00 | 17.4100000 | 0.00 | 318,603.00 | 374,356.91 | - 55,753.91 | 0.00 | - 55,753.91 |

**Northern Trust**

## *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

◆ ## Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Equities*

**Common stock**

SPOK HLDGS INC COM   CUSIP: 84863T106

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 51,850.00 | 11.1300000 | 0.00 | 577,090.50 | 658,895.78 | - 81,805.28 | 0.00 | - 81,805.28 |

STANLEY BLACK & DECKER INC COM   CUSIP: 854502101

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 11,700.00 | 178.5600000 | 0.00 | 2,089,152.00 | 2,085,149.49 | 4,002.51 | 0.00 | 4,002.51 |

STARBUCKS CORP COM   CUSIP: 855244109

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 45,829.00 | 106.9800000 | 0.00 | 4,902,786.42 | 2,852,492.97 | 2,050,293.45 | 0.00 | 2,050,293.45 |

STEEL DYNAMICS INC COM   CUSIP: 858119100
STLD

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 37,850.00 | 36.8700000 | 9,462.50 | 1,395,529.50 | 995,608.06 | 399,921.44 | 0.00 | 399,921.44 |

STERIS PLC ORD USD0.001   CUSIP: G8473T100

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4,566.00 | 189.5400000 | 0.00 | 865,439.64 | 543,129.10 | 322,310.54 | 0.00 | 322,310.54 |

STERLING CONSTR INC COM   CUSIP: 859241101

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 39,250.00 | 18.6100000 | 0.00 | 730,442.50 | 353,217.72 | 377,224.78 | 0.00 | 377,224.78 |

SYNCHRONY FINL COM   CUSIP: 87165B103

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 84,831.00 | 34.7100000 | 0.00 | 2,944,484.01 | 1,889,188.58 | 1,055,295.43 | 0.00 | 1,055,295.43 |

# Northern Trust

*Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

◆ Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss<br>Market | Translation | Total |
|---|---|---|---|---|---|---|---|

## *Equities*

### Common stock

TARGET CORP COM STK   CUSIP: 87612E106

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 17,375.00 | 176.5300000 | 0.00 | 3,067,208.75 | 1,502,980.33 | 1,564,228.42 | 0.00 | 1,564,228.42 |

TERRITORIAL BANCORP INC COM STK   CUSIP: 88145X108

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 16,875.00 | 24.0300000 | 0.00 | 405,506.25 | 419,269.50 | - 13,763.25 | 0.00 | - 13,763.25 |

TOPBUILD CORP COM   CUSIP: 89055F103

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3,713.00 | 184.0800000 | 0.00 | 683,489.04 | 600,026.00 | 83,463.04 | 0.00 | 83,463.04 |

TORO CO COM   CUSIP: 891092108

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 12,238.00 | 94.8400000 | 3,212.47 | 1,160,651.92 | 761,816.09 | 398,835.83 | 0.00 | 398,835.83 |

TRACTOR SUPPLY CO COM   CUSIP: 892356106
TSCO

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 8,797.00 | 140.5800000 | 0.00 | 1,236,682.26 | 648,581.43 | 588,100.83 | 0.00 | 588,100.83 |

TUTOR PERINI CORP COM   CUSIP: 901109108

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 32,675.00 | 12.9500000 | 0.00 | 423,141.25 | 459,977.66 | - 36,836.41 | 0.00 | - 36,836.41 |

TYSON FOODS INC CL A COM (DELAWARE)   CUSIP: 902494103
TSN

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 22,525.00 | 64.4400000 | 0.00 | 1,451,511.00 | 1,568,716.99 | - 117,205.99 | 0.00 | - 117,205.99 |

**Northern Trust**

# *Portfolio Statement*

**31 DEC 2020**

## ◆ Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Equities*

**Common stock**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ULTA BEAUTY INC   COM STK USD0.01   CUSIP: 90384S303 ULTA | | | | | | | |
| 4,284.00 | 287.1600000 | 0.00 | 1,230,193.44 | 808,552.29 | 421,641.15 | 0.00 | 421,641.15 |
| UNITED RENTALS INC COM   CUSIP: 911363109 | | | | | | | |
| 7,525.00 | 231.9100000 | 0.00 | 1,745,122.75 | 1,025,341.70 | 719,781.05 | 0.00 | 719,781.05 |
| UNITEDHEALTH GROUP INC COM   CUSIP: 91324P102 UNH | | | | | | | |
| 11,988.00 | 350.6800000 | 0.00 | 4,203,951.84 | 3,835,862.69 | 368,089.15 | 0.00 | 368,089.15 |
| UNITIL CORP COM   CUSIP: 913259107 UTL | | | | | | | |
| 14,275.00 | 44.2700000 | 0.00 | 631,954.25 | 691,019.54 | - 59,065.29 | 0.00 | - 59,065.29 |
| UNIVERSAL ELECTRS INC COM   CUSIP: 913483103 | | | | | | | |
| 14,975.00 | 52.4600000 | 0.00 | 785,588.50 | 580,715.24 | 204,873.26 | 0.00 | 204,873.26 |
| UNIVERSAL STAINLESS & ALLOY PRODS INC   COM   CUSIP: 913837100 | | | | | | | |
| 23,425.00 | 7.4800000 | 0.00 | 175,219.00 | 273,868.60 | - 98,649.60 | 0.00 | - 98,649.60 |
| UNVL DISPLAY CORP COM   CUSIP: 91347P105 | | | | | | | |
| 3,593.00 | 229.8000000 | 0.00 | 825,671.40 | 522,993.87 | 302,677.53 | 0.00 | 302,677.53 |

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*
**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

◆ Asset Detail - Base Currency

Page 55 of 1,860

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

## *Equities*

### Common stock

UNVL HEALTH SERVICES INC CL B COM   CUSIP: 913903100

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 10,050.00 | 137.5000000 | 0.00 | 1,381,875.00 | 1,353,944.27 | 27,930.73 | 0.00 | 27,930.73 |

VERACYTE INC COM   CUSIP: 92337F107

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 13,587.00 | 48.9400000 | 0.00 | 664,947.78 | 300,201.45 | 364,746.33 | 0.00 | 364,746.33 |

VERIZON COMMUNICATIONS COM   CUSIP: 92343V104
VZ

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 71,550.00 | 58.7500000 | 0.00 | 4,203,562.50 | 3,906,822.73 | 296,739.77 | 0.00 | 296,739.77 |

VIACOMCBS INC NPV CLASS B   CUSIP: 92556H206

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 40,875.00 | 37.2600000 | 13,398.00 | 1,523,002.50 | 1,359,718.51 | 163,283.99 | 0.00 | 163,283.99 |

VICI PPTYS INC COM   CUSIP: 925652109

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 47,989.00 | 25.5000000 | 15,836.37 | 1,223,719.50 | 980,240.97 | 243,478.53 | 0.00 | 243,478.53 |

VIKING THERAPEUTICS INC COM   CUSIP: 92686J106

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 21,968.00 | 5.6300000 | 0.00 | 123,679.84 | 293,330.30 | - 169,650.46 | 0.00 | - 169,650.46 |

VISA INC COM CL A STK   CUSIP: 92826C839
V

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 31,413.00 | 218.7300000 | 0.00 | 6,870,965.49 | 4,543,900.58 | 2,327,064.91 | 0.00 | 2,327,064.91 |

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*

**31 DEC 2020**

## ◆ Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Equities*

**Common stock**

VISHAY PRECISION GROUP INC COM   CUSIP: 92835K103

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 16,550.00 | 31.4800000 | 0.00 | 520,994.00 | 428,587.44 | 92,406.56 | 0.00 | 92,406.56 |

W P CAREY INC COM   CUSIP: 92936U109

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 24,400.00 | 70.5800000 | 21,626.05 | 1,722,152.00 | 1,551,685.34 | 170,466.66 | 0.00 | 170,466.66 |

WABASH NATL CORP COM   CUSIP: 929566107

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 33,900.00 | 17.2300000 | 0.00 | 584,097.00 | 372,917.06 | 211,179.94 | 0.00 | 211,179.94 |

WASHINGTON TR BANCORP INC COM   CUSIP: 940610108

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 14,625.00 | 44.8000000 | 7,605.00 | 655,200.00 | 564,625.34 | 90,574.66 | 0.00 | 90,574.66 |

WATERSTONE FINL INC MD COM   CUSIP: 94188P101

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 35,275.00 | 18.8200000 | 0.00 | 663,875.50 | 600,564.34 | 63,311.16 | 0.00 | 63,311.16 |

ZENDESK INC COM   CUSIP: 98936J101

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5,774.00 | 143.1200000 | 0.00 | 826,374.88 | 435,269.40 | 391,105.48 | 0.00 | 391,105.48 |

ZIMMER BIOMET HLDGS INC COM   CUSIP: 98956P102
ZMH

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 11,525.00 | 154.0900000 | 2,766.00 | 1,775,887.25 | 1,548,386.22 | 227,501.03 | 0.00 | 227,501.03 |

# Northern Trust

## *Portfolio Statement*

31 DEC 2020

◆ ## Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Equities*

**Common stock**

ZOETIS INC COM USD0.01 CL 'A'   CUSIP: 98978V103

|  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|
| 38,030.00 | 165.5000000 | 0.00 | 6,293,965.00 | 3,617,930.49 | 2,676,034.51 | 0.00 | 2,676,034.51 |

ZYNGA INC   CUSIP: 98986T108

|  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|
| 99,285.00 | 9.8700000 | 0.00 | 979,942.95 | 583,525.51 | 396,417.44 | 0.00 | 396,417.44 |

| Total USD |  | 371,288.14 | 419,779,064.74 | 307,724,977.63 | 112,054,087.11 | 0.00 | 112,054,087.11 |
|---|---|---|---|---|---|---|---|

| Total United States |  | 371,288.14 | 419,779,064.74 | 307,724,977.63 | 112,054,087.11 | 0.00 | 112,054,087.11 |
|---|---|---|---|---|---|---|---|

**Total Common Stock**

| 10,265,679.00 |  | 392,878.43 | 488,427,795.00 | 364,396,276.27 | 124,031,518.73 | 0.00 | 124,031,518.73 |
|---|---|---|---|---|---|---|---|

**Funds - common stock**

**United States -  USD**

MFB NT COLLECTIVE RUSSELL 1000 GROWTH INDEX FUND - NON LENDING   CUSIP: 193999117

|  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|
| 108,629.40 | 764.8180000 | 0.00 | 83,081,720.45 | 28,308,792.72 | 54,772,927.73 | 0.00 | 54,772,927.73 |

MFB NT COLLECTIVE RUSSELL 1000 VALUE INDEX FUND - NON LENDING   CUSIP: 193999109

|  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|
| 270,754.32 | 432.0290000 | 0.00 | 116,973,718.12 | 84,042,132.88 | 32,931,585.24 | 0.00 | 32,931,585.24 |

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*

**31 DEC 2020**

## ◆ Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Equities*

**Funds - common stock**

NT COLLECTIVE RUSSELL 2000 GROWTH INDEX FUND - NON LENDING   CUSIP: 669499A96

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 73,818.69 | 537.2300000 | 0.00 | 39,657,614.83 | 14,827,256.89 | 24,830,357.94 | 0.00 | 24,830,357.94 |
| Total USD | | 0.00 | 239,713,053.40 | 127,178,182.49 | 112,534,870.91 | 0.00 | 112,534,870.91 |
| Total United States | | 0.00 | 239,713,053.40 | 127,178,182.49 | 112,534,870.91 | 0.00 | 112,534,870.91 |
| **Total Funds -  Common Stock** | | | | | | | |
| **453,202.41** | | **0.00** | **239,713,053.40** | **127,178,182.49** | **112,534,870.91** | **0.00** | **112,534,870.91** |

**Funds - equities etf**

**Emerging Markets Region -  USD**

MFC VANGUARD INTL EQUITY INDEX FDS FTSE EMERGING MKTS ETF   CUSIP: 922042858
VWO

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 477,750.00 | 50.1100000 | 0.00 | 23,940,052.50 | 19,093,715.88 | 4,846,336.62 | 0.00 | 4,846,336.62 |
| Total USD | | 0.00 | 23,940,052.50 | 19,093,715.88 | 4,846,336.62 | 0.00 | 4,846,336.62 |
| Total Emerging Markets Region | | 0.00 | 23,940,052.50 | 19,093,715.88 | 4,846,336.62 | 0.00 | 4,846,336.62 |

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

## ◆ Asset Detail - Base Currency

Page 59 of 1,860

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Equities*

**Funds - equities etf**

**Total Funds -  Equities ETF**

| 477,750.00 | | 0.00 | 23,940,052.50 | 19,093,715.88 | 4,846,336.62 | 0.00 | 4,846,336.62 |

**Total Equities**

| 11,196,631.41 | | 392,878.43 | 752,080,900.90 | 510,668,174.64 | 241,412,726.26 | 0.00 | 241,412,726.26 |

### *Fixed Income*

**Government bonds**

**Mexico -  USD**

UNITED MEXICAN STS BDS 2.659% DUE      05-24-2031/11-24-2020   REG   CUSIP: 91087BAM2

| 795,000.00 | 102.4000000 | 2,172.61 | 814,080.00 | 795,000.00 | 19,080.00 | 0.00 | 19,080.00 |

Issue Date: 24 Nov 20  Rate: 2.659% Call Date: 24 Feb 31 Call Price: 100.00 Yield to Maturity: 2.396% Maturity Date: 24 May 31

**Total USD**

| | | 2,172.61 | 814,080.00 | 795,000.00 | 19,080.00 | 0.00 | 19,080.00 |

**Total Mexico**

| | | 2,172.61 | 814,080.00 | 795,000.00 | 19,080.00 | 0.00 | 19,080.00 |

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*

**31 DEC 2020**

## ◆ Asset Detail - Base Currency

Page 60 of 1,860

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Fixed Income*

**Government bonds**

**United States -  USD**

UNITED STATES OF AMER TREAS BONDS DTD   02/15/2015 2.5% DUE 02-15-2045   REG   CUSIP: 912810RK6

| 350,000.00 | 119.2539060 | 3,305.02 | 417,388.67 | 377,808.59 | 39,580.08 | 0.00 | 39,580.08 |
|---|---|---|---|---|---|---|---|

Issue Date: 15 Feb 15  Rate: 2.5% Yield to Maturity: 1.541% Maturity Date: 15 Feb 45

UNITED STATES OF AMER TREAS NOTES DTD   10/31/2020 .25% 10-31-2025    CUSIP: 91282CAT8

| 8,510,000.00 | 99.5703120 | 3,643.77 | 8,473,433.55 | 8,453,480.30 | 19,953.25 | 0.00 | 19,953.25 |
|---|---|---|---|---|---|---|---|

Issue Date: 31 Oct 20  Rate: 0.25% Yield to Maturity: 0.339% Maturity Date: 31 Oct 25

UNITED STATES TREAS BDS DTD 11/15/2020  1.375% 11-15-2040    CUSIP: 912810ST6

| 650,000.00 | 98.8750000 | 1,160.39 | 642,687.50 | 647,349.22 | - 4,661.72 | 0.00 | - 4,661.72 |
|---|---|---|---|---|---|---|---|

Issue Date: 15 Nov 20  Rate: 1.375% Yield to Maturity: 1.44% Maturity Date: 15 Nov 40

UNITED STATES TREAS BDS DTD 11/15/2020  1.625% 11-15-2050    CUSIP: 912810SS8

| 3,425,000.00 | 99.6250000 | 7,263.79 | 3,412,156.25 | 3,408,537.68 | 3,618.57 | 0.00 | 3,618.57 |
|---|---|---|---|---|---|---|---|

Issue Date: 15 Nov 20  Rate: 1.625% Yield to Maturity: 1.64% Maturity Date: 15 Nov 50

UNITED STATES TREAS BDS 4.375%          DUE 11-15-2039   CUSIP: 912810QD3

| 1,505,000.00 | 151.2265620 | 8,548.77 | 2,275,959.76 | 1,972,310.69 | 303,649.07 | 0.00 | 303,649.07 |
|---|---|---|---|---|---|---|---|

Issue Date: 15 Nov 09  Rate: 4.375% Yield to Maturity: 1.304% Maturity Date: 15 Nov 39

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# Portfolio Statement

**31 DEC 2020**

◆ ## Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Fixed Income*

**Government bonds**

| UNITED STS TREAS NTS | .5% 10-31-2027 | CUSIP: 91282CAU5 | | | | | |
|---|---|---|---|---|---|---|---|
| 5,645,000.00 | 99.2187500 | 4,908.70 | 5,600,898.44 | 5,593,661.73 | 7,236.71 | 0.00 | 7,236.71 |

Issue Date: 31 Oct 20  Rate: 0.5% Yield to Maturity: 0.617% Maturity Date: 31 Oct 27

| UNITED STS TREAS NTS DTD | .875% 11-15-2030 | CUSIP: 91282CAV3 | | | | | |
|---|---|---|---|---|---|---|---|
| 1,870,000.00 | 99.6718750 | 2,106.95 | 1,863,864.07 | 1,871,647.66 | - 7,783.59 | 0.00 | - 7,783.59 |

Issue Date: 15 Nov 20  Rate: 0.875% Yield to Maturity: 0.909% Maturity Date: 15 Nov 30

| UNITED STS TREAS NTS UNITED STS TREAS   NTS .125% 10-15-2023 | CUSIP: 91282CAP6 | | | | | | |
|---|---|---|---|---|---|---|---|
| 7,660,000.00 | 99.9296880 | 2,033.23 | 7,654,614.10 | 7,647,117.04 | 7,497.06 | 0.00 | 7,497.06 |

Issue Date: 15 Oct 20  Rate: 0.125% Yield to Maturity: 0.15% Maturity Date: 15 Oct 23

| US TREAS BDS 4.375 DUE 05-15-2040   REG   CUSIP: 912810QH4 | | | | | | | |
|---|---|---|---|---|---|---|---|
| 285,000.00 | 151.7656250 | 1,618.87 | 432,532.03 | 414,382.28 | 18,149.75 | 0.00 | 18,149.75 |

Issue Date: 15 May 10  Rate: 4.375% Yield to Maturity: 1.333% Maturity Date: 15 May 40

| WI TREASURY SEC .125% 10-31-2022   CUSIP: 91282CAR2 | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5,995,000.00 | 100.0156250 | 1,283.45 | 5,995,936.72 | 5,992,052.35 | 3,884.37 | 0.00 | 3,884.37 |

Issue Date: 31 Oct 20  Rate: 0.125% Yield to Maturity: 0.116% Maturity Date: 31 Oct 22

| Total USD | | 35,872.94 | 36,769,471.09 | 36,378,347.54 | 391,123.55 | 0.00 | 391,123.55 |
|---|---|---|---|---|---|---|---|

# Northern Trust

## *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

◆ ## Asset Detail - Base Currency

Page 62 of 1,860

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss<br>Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Fixed Income*

**Government bonds**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total United States | | 35,872.94 | 36,769,471.09 | 36,378,347.54 | 391,123.55 | 0.00 | 391,123.55 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Total Government Bonds** | | | | | | | |
| **36,690,000.00** | | **38,045.55** | **37,583,551.09** | **37,173,347.54** | **410,203.55** | **0.00** | **410,203.55** |

**Corporate bonds**

**Belgium -  USD**

ANHEUSER BUSCH INBEV WORLDWIDE INC 4.15% 01-23-2025      CUSIP: 03523TBX5

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 170,000.00 | 113.8689970 | 3,096.35 | 193,577.30 | 170,810.00 | 22,767.30 | 0.00 | 22,767.30 |

Issue Date: 23 Jan 19  Rate: 4.15% Call Date: 23 Dec 24 Call Price: 100.00 Yield to Maturity: 0.681% Maturity Date: 23 Jan 25

ANHEUSER-BUSCH  INBEV WORLDWIDE INC 4.75% 01-23-2029      CUSIP: 035240AQ3

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 320,000.00 | 123.4895590 | 6,671.10 | 395,166.59 | 325,550.24 | 69,616.35 | 0.00 | 69,616.35 |

Issue Date: 23 Jan 19  Rate: 4.75% Call Date: 23 Oct 28 Call Price: 100.00 Yield to Maturity: 1.628% Maturity Date: 23 Jan 29

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total USD | | 9,767.45 | 588,743.89 | 496,360.24 | 92,383.65 | 0.00 | 92,383.65 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total Belgium | | 9,767.45 | 588,743.89 | 496,360.24 | 92,383.65 | 0.00 | 92,383.65 |

# Northern Trust

# *Portfolio Statement*

31 DEC 2020

## ◆ Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

## *Fixed Income*

### Corporate bonds

### Brazil - USD

VALE OVERSEAS LTD FIXED 3.75% DUE    07-08-2030    CUSIP: 91911TAQ6

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 160,000.00 | 111.2510000 | 2,883.33 | 178,001.60 | 160,720.00 | 17,281.60 | 0.00 | 17,281.60 |

Issue Date: 8 Jul 20  Rate: 3.75% Call Date:  8 Apr 30 Call Price: 100.00 Yield to Maturity: 2.419% Maturity Date:  8 Jul 30

VALE OVERSEAS LTD 6.25% DUE 08-10-2026    CUSIP: 91911TAP8

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 395,000.00 | 124.0000000 | 9,669.26 | 489,800.00 | 431,426.25 | 58,373.75 | 0.00 | 58,373.75 |

Issue Date: 10 Aug 16  Rate: 6.25% Yield to Maturity: 1.739% Maturity Date: 10 Aug 26

VALE OVERSEAS LTD 6.875% DUE 11-21-2036    CUSIP: 91911TAH6

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 119,000.00 | 146.5630000 | 909.02 | 174,409.97 | 137,353.75 | 37,056.22 | 0.00 | 37,056.22 |

Issue Date: 21 Nov 06  Rate: 6.875% Yield to Maturity: 3.132% Maturity Date: 21 Nov 36

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total USD | | 13,461.61 | 842,211.57 | 729,500.00 | 112,711.57 | 0.00 | 112,711.57 |
| Total Brazil | | 13,461.61 | 842,211.57 | 729,500.00 | 112,711.57 | 0.00 | 112,711.57 |

### Canada - USD

BANK MONTREAL MEDIUM TERM SR NTS    1.85% 05-01-2025    CUSIP: 06367WB85

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 475,000.00 | 104.9826380 | 1,464.57 | 498,667.53 | 475,821.60 | 22,845.93 | 0.00 | 22,845.93 |

Issue Date: 27 Apr 20  Rate: 1.85% Yield to Maturity: 0.681% Maturity Date:  1 May 25

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*

**31 DEC 2020**

◆ ## Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Fixed Income*

**Corporate bonds**

BANK NOVA SCOTIA B C 1.3% DUE 06-11-2025BEO    CUSIP: 064159VL7

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 390,000.00 | 102.6052590 | 281.66 | 400,160.51 | 389,134.20 | 11,026.31 | 0.00 | 11,026.31 |

Issue Date: 11 Jun 20  Rate: 1.3% Yield to Maturity: 0.703% Maturity Date: 11 Jun 25

PVTPL ALIMENTATION COUCHE-TARD  INC SR NT2.7% DUE 07-26-2022/07-26-2017    BEO    CUSIP: 01626PAJ5

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 310,000.00 | 103.3584100 | 3,603.75 | 320,411.07 | 309,711.70 | 10,699.37 | 0.00 | 10,699.37 |

Issue Date: 26 Jul 17  Rate: 2.7% Call Date: 26 Jun 22 Call Price: 100.00 Yield to Maturity: 0.548% Maturity Date: 26 Jul 22

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total USD | | 5,349.98 | 1,219,239.11 | 1,174,667.50 | 44,571.61 | 0.00 | 44,571.61 |
| Total Canada | | 5,349.98 | 1,219,239.11 | 1,174,667.50 | 44,571.61 | 0.00 | 44,571.61 |

**Chile -  USD**

CORPORACION NACIONAL DEL COBRE DE 3.0% 144A 09-30-2029    CUSIP: 21987BAZ1

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 335,000.00 | 108.0885270 | 2,540.41 | 362,096.57 | 334,484.10 | 27,612.47 | 0.00 | 27,612.47 |

Issue Date: 30 Sep 19  Rate: 3% Call Date: 30 Jun 29 Call Price: 100.00 Yield to Maturity: 1.987% Maturity Date: 30 Sep 29

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total USD | | 2,540.41 | 362,096.57 | 334,484.10 | 27,612.47 | 0.00 | 27,612.47 |
| Total Chile | | 2,540.41 | 362,096.57 | 334,484.10 | 27,612.47 | 0.00 | 27,612.47 |

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*
**31 DEC 2020**

◆ ## Asset Detail - Base Currency

Page 65 of 1,860

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|
| *Fixed Income* | | | | | | | |
| **Corporate bonds** | | | | | | | |
| **China -  USD** | | | | | | | |
| CNOOC FINANCE 2013 LTD CORP 2.875%      09-30-2029     CUSIP: 12625GAF1 | | | | | | | |
| 370,000.00 | 104.0450000 | 2,688.91 | 384,966.50 | 368,929.12 | 16,037.38 | 0.00 | 16,037.38 |
| Issue Date: 30 Sep 19  Rate: 2.875% Yield to Maturity: 2.36% Maturity Date: 30 Sep 29 | | | | | | | |
| WEIBO CORP 3.375% 08/07/2030 3.375%      07-08-2030     CUSIP: 948596AE1 | | | | | | | |
| 430,000.00 | 102.1334530 | 6,974.05 | 439,173.85 | 427,149.10 | 12,024.75 | 0.00 | 12,024.75 |
| Issue Date:  8 Jul 20  Rate: 3.375% Call Date:  8 Apr 30 Call Price: 100.00 Yield to Maturity: 3.114% Maturity Date:  8 Jul 30 | | | | | | | |
| Total USD | | 9,662.96 | 824,140.35 | 796,078.22 | 28,062.13 | 0.00 | 28,062.13 |
| Total China | | 9,662.96 | 824,140.35 | 796,078.22 | 28,062.13 | 0.00 | 28,062.13 |
| **France -  USD** | | | | | | | |
| BNP PARIBAS SR NON FLTG RT 3.052% DUE   01-13-2031     CUSIP: 09659W2K9 | | | | | | | |
| 440,000.00 | 109.1227940 | 6,266.76 | 480,140.29 | 440,802.35 | 39,337.94 | 0.00 | 39,337.94 |
| Issue Date: 13 Jan 20  Rate: 3.052% Call Date: 13 Jan 30 Call Price: 100.00 Yield to Maturity: 2.041% Maturity Date: 13 Jan 31 | | | | | | | |
| TOTAL CAP INTL 3.127% DUE 05-29-2050  REG   CUSIP: 89153VAV1 | | | | | | | |
| 225,000.00 | 108.3758160 | 625.40 | 243,845.59 | 225,000.00 | 18,845.59 | 0.00 | 18,845.59 |
| Issue Date: 29 May 20  Rate: 3.127% Call Date: 29 Nov 49 Call Price: 100.00 Yield to Maturity: 2.711% Maturity Date: 29 May 50 | | | | | | | |

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

## ◆ Asset Detail - Base Currency

Page 66 of 1,860

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss |  |  |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Fixed Income*

**Corporate bonds**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total USD | | 6,892.16 | 723,985.88 | 665,802.35 | 58,183.53 | 0.00 | 58,183.53 |
| Total France | | 6,892.16 | 723,985.88 | 665,802.35 | 58,183.53 | 0.00 | 58,183.53 |
| **Germany - USD** | | | | | | | |
| PVTPL VOLKSWAGEN GROUP AMER FIN LLC | .875% DUE 11-22-2023  BEO   CUSIP: 928668BJ0 | | | | | | |
| 400,000.00 | 100.5633380 | 359.72 | 402,253.36 | 399,400.00 | 2,853.36 | 0.00 | 2,853.36 |

Issue Date: 24 Nov 20  Rate: 0.875% Yield to Maturity: 0.678% Maturity Date: 22 Nov 23

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| PVTPL VOLKSWAGEN GROUP AMER FIN LLC | 1.25% DUE 11-24-2025/11-24-2020   BEO   CUSIP: 928668BL5 | | | | | | |
| 400,000.00 | 100.9913200 | 513.88 | 403,965.28 | 399,304.00 | 4,661.28 | 0.00 | 4,661.28 |

Issue Date: 24 Nov 20  Rate: 1.25% Call Date: 24 Oct 25 Call Price: 100.00 Yield to Maturity: 1.041% Maturity Date: 24 Nov 25

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total USD | | 873.60 | 806,218.64 | 798,704.00 | 7,514.64 | 0.00 | 7,514.64 |
| Total Germany | | 873.60 | 806,218.64 | 798,704.00 | 7,514.64 | 0.00 | 7,514.64 |

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*

**31 DEC 2020**

◆ ## Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss<br>Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Fixed Income*

**Corporate bonds**

**Hong Kong -  USD**

SANDS CHINA LTD FIXED 5.125% DUE     08-08-2025     CUSIP: 80007RAF2

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 325,000.00 | 112.2260000 | 6,616.23 | 364,734.50 | 323,891.75 | 40,842.75 | 0.00 | 40,842.75 |

Issue Date:  9 Aug 18  Rate: 5.125% Call Date:  8 Jun 25 Call Price: 100.00 Yield to Maturity: 2.309% Maturity Date:  8 Aug 25

| Total USD | | 6,616.23 | 364,734.50 | 323,891.75 | 40,842.75 | 0.00 | 40,842.75 |
|---|---|---|---|---|---|---|---|

| Total Hong Kong | | 6,616.23 | 364,734.50 | 323,891.75 | 40,842.75 | 0.00 | 40,842.75 |
|---|---|---|---|---|---|---|---|

**Ireland -  USD**

AVOLON HLDGS FDG 2.875% DUE 02-15-2025     CUSIP: 05401AAH4

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 715,000.00 | 101.9666600 | 7,765.69 | 729,061.62 | 714,149.15 | 14,912.47 | 0.00 | 14,912.47 |

Issue Date: 14 Jan 20  Rate: 2.875% Call Date: 15 Jan 25 Call Price: 100.00 Yield to Maturity: 2.371% Maturity Date: 15 Feb 25

| Total USD | | 7,765.69 | 729,061.62 | 714,149.15 | 14,912.47 | 0.00 | 14,912.47 |
|---|---|---|---|---|---|---|---|

| Total Ireland | | 7,765.69 | 729,061.62 | 714,149.15 | 14,912.47 | 0.00 | 14,912.47 |
|---|---|---|---|---|---|---|---|

# Northern Trust

# *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

◆ ## Asset Detail - Base Currency

Page 68 of 1,860

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Fixed Income*

**Corporate bonds**

**Italy -  USD**

CNH INDL CAP LLC 4.375% DUE 04-05-2022    CUSIP: 12592BAH7

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 330,000.00 | 104.5457670 | 3,448.95 | 345,001.03 | 334,991.55 | 10,009.48 | 0.00 | 10,009.48 |

Issue Date: 10 Apr 17  Rate: 4.375% Yield to Maturity: 0.746% Maturity Date:  5 Apr 22

| Total USD | | 3,448.95 | 345,001.03 | 334,991.55 | 10,009.48 | 0.00 | 10,009.48 |
|---|---|---|---|---|---|---|---|

| Total Italy | | 3,448.95 | 345,001.03 | 334,991.55 | 10,009.48 | 0.00 | 10,009.48 |
|---|---|---|---|---|---|---|---|

**Japan -  USD**

PVTPL NIPPON LIFE INSURANCE BDS 144A    3.4% DUE 01-23-2050/01-23-2030    BEO   CUSIP: 654579AG6

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 250,000.00 | 108.5000000 | 3,730.55 | 271,250.00 | 250,643.50 | 20,606.50 | 0.00 | 20,606.50 |

Issue Date: 23 Jan 20  Rate: 3.4% Call Date: 23 Jan 30 Call Price: 100.00 Yield to Maturity: 2.961% Maturity Date: 23 Jan 50

PVTPL PANASONIC CORP SR NT 2.67%        DUE 07-19-2024  BEO   CUSIP: 69832AAB2

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 800,000.00 | 106.7899510 | 9,644.39 | 854,319.61 | 801,795.05 | 52,524.56 | 0.00 | 52,524.56 |

Issue Date: 19 Jul 19  Rate: 2.679% Call Date: 19 Jun 24 Call Price: 100.00 Yield to Maturity: 0.737% Maturity Date: 19 Jul 24

| Total USD | | 13,374.94 | 1,125,569.61 | 1,052,438.55 | 73,131.06 | 0.00 | 73,131.06 |
|---|---|---|---|---|---|---|---|

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

◆ ## Asset Detail - Base Currency

Page 69 of 1,860

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Fixed Income*

**Corporate bonds**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total Japan | | 13,374.94 | 1,125,569.61 | 1,052,438.55 | 73,131.06 | 0.00 | 73,131.06 |
| **Macau -  USD** | | | | | | | |
| SANDS CHINA LTD 4.375% 06-18-2030    CUSIP: 80007RAG0 | | | | | | | |
| 610,000.00 | 111.1970000 | 963.70 | 678,301.70 | 607,438.00 | 70,863.70 | 0.00 | 70,863.70 |

Issue Date:  4 Jun 20  Rate: 4.375% Call Date: 18 Mar 30 Call Price: 100.00 Yield to Maturity: 3.006% Maturity Date: 18 Jun 30

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total USD | | 963.70 | 678,301.70 | 607,438.00 | 70,863.70 | 0.00 | 70,863.70 |
| Total Macau | | 963.70 | 678,301.70 | 607,438.00 | 70,863.70 | 0.00 | 70,863.70 |
| **Mexico -  USD** | | | | | | | |
| COCA-COLA  FEMSA S A B DE C V 2.75%      01-22-2030    CUSIP: 191241AH1 | | | | | | | |
| 735,000.00 | 107.5540280 | 8,927.18 | 790,522.11 | 729,698.20 | 60,823.91 | 0.00 | 60,823.91 |

Issue Date: 22 Jan 20  Rate: 2.75% Call Date: 22 Oct 29 Call Price: 100.00 Yield to Maturity: 1.84% Maturity Date: 22 Jan 30

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| COCA-COLA  FEMSA S 1.85% DUE 09-01-2032    CUSIP: 191241AJ7 | | | | | | | |
| 185,000.00 | 100.1250000 | 1,140.83 | 185,231.25 | 184,267.40 | 963.85 | 0.00 | 963.85 |

Issue Date:  1 Sep 20  Rate: 1.85% Call Date:  1 Jun 32 Call Price: 100.00 Yield to Maturity: 1.838% Maturity Date:  1 Sep 32

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

## *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

◆ ## Asset Detail - Base Currency

Page 70 of 1,860

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Fixed Income*

**Corporate bonds**

PVPTL MEXICHEM SAB DE CV 4.0% DUE        10-04-2027/10-04-2017    CUSIP: 59284BAF5

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 580,000.00 | 110.6000000 | 5,606.66 | 641,480.00 | 580,265.00 | 61,215.00 | 0.00 | 61,215.00 |

Issue Date:  4 Oct 17  Rate: 4% Call Date:  4 Jul 27 Call Price: 100.00 Yield to Maturity: 2.297% Maturity Date:  4 Oct 27

PVTPL BANCO SANTANDER MEX S A INSTITUCION D SR NT 144A 5.375% 04-17-2025    CUSIP: 05969BAD5

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 220,000.00 | 114.8860000 | 2,430.69 | 252,749.20 | 220,000.00 | 32,749.20 | 0.00 | 32,749.20 |

Issue Date: 17 Apr 20  Rate: 5.375% Yield to Maturity: 1.76% Maturity Date: 17 Apr 25

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total USD | | 18,105.36 | 1,869,982.56 | 1,714,230.60 | 155,751.96 | 0.00 | 155,751.96 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total Mexico | | 18,105.36 | 1,869,982.56 | 1,714,230.60 | 155,751.96 | 0.00 | 155,751.96 |

**Netherlands -  USD**

PVTPL NXP B V/NXP FDG LLC/NXP USA INC  2.7% DUE 05-01-2025/05-01-2020    BEO  CUSIP: 62954HAE8

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 185,000.00 | 107.6300000 | 832.50 | 199,115.50 | 184,844.60 | 14,270.90 | 0.00 | 14,270.90 |

Issue Date:  1 May 20  Rate: 2.7% Call Date:  1 Apr 25 Call Price: 100.00 Yield to Maturity: 0.9% Maturity Date:  1 May 25

PVTPL NXP B V/NXP FDG LLC/NXP USA INC  3.15% DUE 05-01-2027/05-01-2020    BEO  CUSIP: 62954HAC2

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 165,000.00 | 110.2551900 | 866.25 | 181,921.06 | 164,671.65 | 17,249.41 | 0.00 | 17,249.41 |

Issue Date:  1 May 20  Rate: 3.15% Call Date:  1 Mar 27 Call Price: 100.00 Yield to Maturity: 1.449% Maturity Date:  1 May 27

# Northern Trust

## *Portfolio Statement*

31 DEC 2020

◆ Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Fixed Income*

**Corporate bonds**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total USD | | 1,698.75 | 381,036.56 | 349,516.25 | 31,520.31 | 0.00 | 31,520.31 |
| | | | | | | | |
| Total Netherlands | | 1,698.75 | 381,036.56 | 349,516.25 | 31,520.31 | 0.00 | 31,520.31 |
| **Peru -  USD** | | | | | | | |
| SOUTHERN COPPER CORP DEL RT 3.875%    DUE 04-23-2025    CUSIP: 84265VAH8 | | | | | | | |
| 300,000.00 | 110.9463730 | 2,195.83 | 332,839.12 | 313,875.00 | 18,964.12 | 0.00 | 18,964.12 |
| Issue Date: 23 Apr 15  Rate: 3.875% Yield to Maturity: 1.258% Maturity Date: 23 Apr 25 | | | | | | | |
| | | | | | | | |
| Total USD | | 2,195.83 | 332,839.12 | 313,875.00 | 18,964.12 | 0.00 | 18,964.12 |
| | | | | | | | |
| Total Peru | | 2,195.83 | 332,839.12 | 313,875.00 | 18,964.12 | 0.00 | 18,964.12 |
| **Russian Federation -  USD** | | | | | | | |
| PVTPL GAZ CAP SA LUXEMBOURG LN PARTN NT 144A 4.95 DUE 02-06-2028   BEO   CUSIP: 368266AT9 | | | | | | | |
| 203,000.00 | 114.4500000 | 4,047.31 | 232,333.50 | 198,940.00 | 33,393.50 | 0.00 | 33,393.50 |
| Issue Date:  6 Feb 13  Rate: 4.95% Yield to Maturity: 2.698% Maturity Date:  6 Feb 28 | | | | | | | |
| | | | | | | | |
| Total USD | | 4,047.31 | 232,333.50 | 198,940.00 | 33,393.50 | 0.00 | 33,393.50 |

## Northern Trust

## Portfolio Statement

**31 DEC 2020**

### ◆ Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Fixed Income*

**Corporate bonds**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total Russian Federation | | 4,047.31 | 232,333.50 | 198,940.00 | 33,393.50 | 0.00 | 33,393.50 |
| **Singapore -  USD** | | | | | | | |
| PVTPL BOC AVIATION PTE LTD GLOBAL MEDIUMTERM 2.625 DUE 09-17-2030/06-17-2030   BEOCUSIP: 09681LAS9 | | | | | | | |
| 690,000.00 | 100.8320000 | 5,232.49 | 695,740.80 | 688,495.80 | 7,245.00 | 0.00 | 7,245.00 |
| Issue Date: 17 Sep 20  Rate: 2.625% Call Date: 17 Jun 30 Call Price: 100.00 Yield to Maturity: 2.527% Maturity Date: 17 Sep 30 | | | | | | | |
| Total USD | | 5,232.49 | 695,740.80 | 688,495.80 | 7,245.00 | 0.00 | 7,245.00 |
| Total Singapore | | 5,232.49 | 695,740.80 | 688,495.80 | 7,245.00 | 0.00 | 7,245.00 |
| **Switzerland -  USD** | | | | | | | |
| CR SUISSE AG NEW 2.8% DUE 04-08-2022    CUSIP: 22550L2B6 | | | | | | | |
| 270,000.00 | 103.2351450 | 1,722.00 | 278,734.89 | 269,989.20 | 8,745.69 | 0.00 | 8,745.69 |
| Issue Date:  9 Apr 20  Rate: 2.8% Yield to Maturity: 0.245% Maturity Date:  8 Apr 22 | | | | | | | |
| CR SUISSE GROUP AG FLTG RT 2.593% DUE    09-11-2025    CUSIP: 225401AM0 | | | | | | | |
| 520,000.00 | 105.2273440 | 4,119.98 | 547,182.19 | 521,058.40 | 26,123.79 | 0.00 | 26,123.79 |
| Issue Date: 11 Sep 19  Rate: 2.593% Call Date: 11 Sep 24 Call Price: 100.00 Yield to Maturity: 1.437% Maturity Date: 11 Sep 25 | | | | | | | |

## Northern Trust

## *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

◆ ## Asset Detail - Base Currency

Page 73 of 1,860

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Fixed Income*

**Corporate bonds**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total USD | | 5,841.98 | 825,917.08 | 791,047.60 | 34,869.48 | 0.00 | 34,869.48 |
| | | | | | | | |
| Total Switzerland | | 5,841.98 | 825,917.08 | 791,047.60 | 34,869.48 | 0.00 | 34,869.48 |
| **United Kingdom -  USD** | | | | | | | |
| B A T CAP CORP FIXED 3.734% DUE     09-25-2040     CUSIP: 05526DBT1 | | | | | | | |
| 170,000.00 | 104.3040480 | 1,692.74 | 177,316.88 | 172,714.55 | 4,602.33 | 0.00 | 4,602.33 |

Issue Date: 25 Sep 20  Rate: 3.734% Call Date: 25 Mar 40 Call Price: 100.00 Yield to Maturity: 3.431% Maturity Date: 25 Sep 40

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| BARCLAYS BK PLC FIXED 1.7% DUE     05-12-2022     CUSIP: 06739GCR8 | | | | | | | |
| 385,000.00 | 101.7685150 | 890.84 | 391,808.78 | 384,684.30 | 7,124.48 | 0.00 | 7,124.48 |

Issue Date: 12 May 20  Rate: 1.7% Call Date: 12 Apr 22 Call Price: 100.00 Yield to Maturity: 0.398% Maturity Date: 12 May 22

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| BARCLAYS PLC 4.61%     02-15-2023     CUSIP: 06738EBE4 | | | | | | | |
| 495,000.00 | 104.3934200 | 8,620.69 | 516,747.43 | 496,991.25 | 19,756.18 | 0.00 | 19,756.18 |

Issue Date: 15 Nov 18  Rate: 4.61% Call Date: 15 Feb 22 Call Price: 100.00 Yield to Maturity: 2.471% Maturity Date: 15 Feb 23

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| BP CAP MKTS P L C 4.875% DUE 12-31-2049     CUSIP: 05565QDV7 | | | | | | | |
| 355,000.00 | 111.5700000 | 432.65 | 396,073.50 | 355,000.00 | 41,073.50 | 0.00 | 41,073.50 |

Issue Date: 22 Jun 20  Rate: 4.875% Call Date: 22 Mar 30 Call Price: 100.00 Yield to Maturity: 4.193% Maturity Date: 31 Dec 49

## Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*

31 DEC 2020

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

◆ ## Asset Detail - Base Currency

Page 74 of 1,860

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss<br>Market | Translation | Total |
|---|---|---|---|---|---|---|---|

## *Fixed Income*

### Corporate bonds

HSBC HLDGS PLC FIXED 3.973%         05-22-2030    CUSIP: 404280CC1

| | 190,000.00 | 115.4750060 | 796.80 | 219,402.51 | 190,000.00 | 29,402.51 | 0.00 | 29,402.51 |

Issue Date: 22 May 19  Rate: 3.973% Call Date: 22 May 29 Call Price: 100.00 Yield to Maturity: 2.144% Maturity Date: 22 May 30

LLOYDS BKG GROUP 4.05% DUE 08-16-2023    CUSIP: 539439AS8

| | 630,000.00 | 109.2777730 | 9,568.12 | 688,449.97 | 644,894.90 | 43,555.07 | 0.00 | 43,555.07 |

Issue Date: 16 Aug 18  Rate: 4.05% Yield to Maturity: 0.488% Maturity Date: 16 Aug 23

PVPTL SKY LTD 3.75% 09-16-2024    CUSIP: 111013AL2

| | 265,000.00 | 111.3290110 | 2,898.43 | 295,021.88 | 270,344.90 | 24,676.98 | 0.00 | 24,676.98 |

Issue Date: 16 Sep 14  Rate: 3.75% Yield to Maturity: 0.652% Maturity Date: 16 Sep 24

PVTPL BAE SYS PLC 3.0% DUE         09-15-2050    CUSIP: 05523RAE7

| | 95,000.00 | 104.3421390 | 839.16 | 99,125.03 | 93,610.15 | 5,514.88 | 0.00 | 5,514.88 |

Issue Date: 15 Sep 20  Rate: 3% Call Date: 15 Mar 50 Call Price: 100.00 Yield to Maturity: 2.784% Maturity Date: 15 Sep 50

PVTPL CK HUTCHISON INTL 17 II LTD BNDS 3.25% DUE 09-29-2027    CUSIP: 12563XAC5

| | 215,000.00 | 110.2011600 | 1,785.69 | 236,932.49 | 214,000.25 | 22,932.24 | 0.00 | 22,932.24 |

Issue Date: 29 Sep 17  Rate: 3.25% Yield to Maturity: 1.645% Maturity Date: 29 Sep 27

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

## *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

### ◆ Asset Detail - Base Currency

Page 75 of 1,860

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

#### *Fixed Income*

**Corporate bonds**

ROYAL BK SCOTLAND FIXED 2.359% DUE     05-22-2024     CUSIP: 780097BN0

| 570,000.00 | 104.0540460 | 1,456.68 | 593,108.06 | 570,000.00 | 23,108.06 | 0.00 | 23,108.06 |

Issue Date: 22 May 20  Rate: 2.359% Call Date: 22 May 23 Call Price: 100.00 Yield to Maturity: 1.137% Maturity Date: 22 May 24

ROYAL BK SCOTLAND 3.073% DUE 05-22-2028     CUSIP: 780097BP5

| 325,000.00 | 108.5371270 | 1,081.95 | 352,745.66 | 325,000.00 | 27,745.66 | 0.00 | 27,745.66 |

Issue Date: 22 May 20  Rate: 3.073% Call Date: 22 May 27 Call Price: 100.00 Yield to Maturity: 1.832% Maturity Date: 22 May 28

UNILEVER CAP CORP 2% DUE 07-28-2026     CUSIP: 904764AU1

| 190,000.00 | 106.6431530 | 1,615.00 | 202,621.99 | 186,992.30 | 15,629.69 | 0.00 | 15,629.69 |

Issue Date: 28 Jul 16  Rate: 2% Yield to Maturity: 0.78% Maturity Date: 28 Jul 26

VODAFONE GROUP PLC 4.25% DUE     09-17-2050  REG   CUSIP: 92857WBU3

| 180,000.00 | 123.8563920 | 2,210.00 | 222,941.51 | 199,383.65 | 23,557.86 | 0.00 | 23,557.86 |

Issue Date: 17 Sep 19  Rate: 4.25% Yield to Maturity: 3.026% Maturity Date: 17 Sep 50

| Total USD | | 33,888.75 | 4,392,295.69 | 4,103,616.25 | 288,679.44 | 0.00 | 288,679.44 |

| Total United Kingdom | | 33,888.75 | 4,392,295.69 | 4,103,616.25 | 288,679.44 | 0.00 | 288,679.44 |

# Northern Trust

# *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

## ◆ Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss<br>Market | Translation | Total |
|---|---|---|---|---|---|---|---|

## *Fixed Income*

### Corporate bonds

### United States -  USD

ABBOTT LABS 3.4% DUE 11-30-2023    CUSIP: 002824BE9

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 260,000.00 | 108.4284950 | 761.22 | 281,914.09 | 261,235.45 | 20,678.64 | 0.00 | 20,678.64 |

Issue Date: 22 Nov 16  Rate: 3.4% Call Date: 30 Sep 23 Call Price: 100.00 Yield to Maturity: 0.483% Maturity Date: 30 Nov 23

ABBVIE INC 3.2%          08-21-2029    CUSIP: 00287YBX6

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 210,000.00 | 112.0695610 | 746.66 | 235,346.08 | 233,650.93 | 1,695.15 | 0.00 | 1,695.15 |

Issue Date: 21 May 20  Rate: 3.2% Call Date: 21 Aug 29 Call Price: 100.00 Yield to Maturity: 1.729% Maturity Date: 21 Nov 29

ABBVIE INC 4.25% DUE 11-21-2049  REG  CUSIP: 00287YCB3

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 285,000.00 | 125.3821160 | 1,345.83 | 357,339.03 | 349,273.68 | 8,065.35 | 0.00 | 8,065.35 |

Issue Date: 21 May 20  Rate: 4.25% Call Date: 21 May 49 Call Price: 100.00 Yield to Maturity: 2.939% Maturity Date: 21 Nov 49

ACE INA HLDGS INC 2.875% DUE 11-03-2022    CUSIP: 00440EAU1

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 440,000.00 | 104.2415940 | 2,038.05 | 458,663.01 | 440,811.40 | 17,851.61 | 0.00 | 17,851.61 |

Issue Date:  3 Nov 15  Rate: 2.875% Call Date:  3 Sep 22 Call Price: 100.00 Yield to Maturity: 0.553% Maturity Date:  3 Nov 22

ADOBE INC FIXED 2.15% DUE 02-01-2027    CUSIP: 00724PAC3

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 350,000.00 | 107.3065780 | 3,135.41 | 375,573.02 | 349,772.50 | 25,800.52 | 0.00 | 25,800.52 |

Issue Date:  3 Feb 20  Rate: 2.15% Call Date:  1 Dec 26 Call Price: 100.00 Yield to Maturity: 0.912% Maturity Date:  1 Feb 27

# Northern Trust

# *Portfolio Statement*

**31 DEC 2020**

◆ ## Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Fixed Income*

**Corporate bonds**

AIG GLOBAL FDG SR 3.35% DUE 06-25-2021    CUSIP: 00138CAG3

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 230,000.00 | 101.4634250 | 128.41 | 233,365.88 | 229,986.20 | 3,379.68 | 0.00 | 3,379.68 |

Issue Date: 27 Jun 18  Rate: 3.35% Yield to Maturity: 0.318% Maturity Date: 25 Jun 21

AIR LEASE CORP 2.625% DUE 07-01-2022    CUSIP: 00912XAW4

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 155,000.00 | 102.5732520 | 2,034.37 | 158,988.54 | 154,367.30 | 4,621.24 | 0.00 | 4,621.24 |

Issue Date: 12 Jun 17  Rate: 2.625% Call Date:  1 Jun 22 Call Price: 100.00 Yield to Maturity: 0.894% Maturity Date:  1 Jul 22

AIR LEASE CORP 2.75% 01-15-2023    CUSIP: 00912XAX2

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 75,000.00 | 103.3673980 | 951.04 | 77,525.55 | 74,284.50 | 3,241.05 | 0.00 | 3,241.05 |

Issue Date: 20 Nov 17  Rate: 2.75% Call Date: 15 Dec 22 Call Price: 100.00 Yield to Maturity: 1.075% Maturity Date: 15 Jan 23

AIR LEASE CORP 3.25% DUE 03-01-2025    CUSIP: 00912XBA1

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 195,000.00 | 107.0692780 | 2,112.49 | 208,785.09 | 192,498.15 | 16,286.94 | 0.00 | 16,286.94 |

Issue Date: 16 Jan 18  Rate: 3.25% Call Date:  1 Jan 25 Call Price: 100.00 Yield to Maturity: 1.493% Maturity Date:  1 Mar 25

ALEXANDRIA REAL 3.375% DUE 08-15-2031    CUSIP: 015271AR0

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 275,000.00 | 114.4219400 | 3,506.25 | 314,660.34 | 284,971.70 | 29,688.64 | 0.00 | 29,688.64 |

Issue Date: 15 Jul 19  Rate: 3.375% Call Date: 15 May 31 Call Price: 100.00 Yield to Maturity: 1.871% Maturity Date: 15 Aug 31

# Northern Trust

# Portfolio Statement

**31 DEC 2020**

## ◆ Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Fixed Income*

#### Corporate bonds

ALLY FINL INC 3.05% DUE 06-05-2023    CUSIP: 02005NBK5

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 705,000.00 | 105.4400690 | 1,552.95 | 743,352.49 | 700,057.95 | 43,294.54 | 0.00 | 43,294.54 |

Issue Date:  3 Jun 20  Rate: 3.05% Call Date:  6 May 23 Call Price: 100.00 Yield to Maturity: 0.783% Maturity Date:  5 Jun 23

ALLY FINL INC 8% DUE 11-01-2031    CUSIP: 36186CBY8

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 555,000.00 | 146.7869960 | 7,399.98 | 814,667.83 | 732,587.37 | 82,080.46 | 0.00 | 82,080.46 |

Issue Date: 31 Dec 08  Rate: 8% Yield to Maturity: 2.928% Maturity Date:  1 Nov 31

ALTRIA GROUP INC 4.8% DUE 02-14-2029    CUSIP: 02209SBD4

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 510,000.00 | 119.8096740 | 9,315.99 | 611,029.34 | 518,627.20 | 92,402.14 | 0.00 | 92,402.14 |

Issue Date: 14 Feb 19  Rate: 4.8% Call Date: 14 Nov 28 Call Price: 100.00 Yield to Maturity: 2.13% Maturity Date: 14 Feb 29

AMAZON COM INC FIXED 2.8% DUE 08-22-2024    CUSIP: 023135AZ9

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 345,000.00 | 108.2186110 | 3,461.49 | 373,354.21 | 331,053.38 | 42,300.83 | 0.00 | 42,300.83 |

Issue Date: 22 Feb 18  Rate: 2.8% Call Date: 22 Jun 24 Call Price: 100.00 Yield to Maturity: 0.518% Maturity Date: 22 Aug 24

AMERICAN AIRLS 2017-1 CL AA PASS THRU TR3.65% DUE 08-15-2030    CUSIP: 023761AA7

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 149,174.93 | 100.7964100 | 2,056.95 | 150,362.97 | 149,174.93 | 1,188.04 | 0.00 | 1,188.04 |

Issue Date: 13 Jan 17  Rate: 3.65% Yield to Maturity: 3.475% Maturity Date: 15 Aug 30

# Northern Trust

# *Portfolio Statement*

**31 DEC 2020**

◆ ## Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss |||
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Fixed Income*

**Corporate bonds**

AMERN HONDA FIN CORP MED TERM NTS       TRANCHE # TR 83 1.2% 07-08-2025     CUSIP: 02665WDL2

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 280,000.00 | 102.3352520 | 1,614.66 | 286,538.71 | 279,932.80 | 6,605.91 | 0.00 | 6,605.91 |

Issue Date: 8 Jul 20  Rate: 1.2% Yield to Maturity: 0.674% Maturity Date:  8 Jul 25

AMERN INTL GROUP 4.2% DUE 04-01-2028     CUSIP: 026874DK0

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 315,000.00 | 118.7127100 | 3,307.50 | 373,945.04 | 317,356.00 | 56,589.04 | 0.00 | 56,589.04 |

Issue Date: 26 Mar 18  Rate: 4.2% Call Date:  1 Jan 28 Call Price: 100.00 Yield to Maturity: 1.469% Maturity Date:  1 Apr 28

APPLE INC 1.65% DUE 05-11-2030     CUSIP: 037833DU1

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 270,000.00 | 102.9918150 | 618.75 | 278,077.90 | 268,099.20 | 9,978.70 | 0.00 | 9,978.70 |

Issue Date: 11 May 20  Rate: 1.65% Call Date: 11 Feb 30 Call Price: 100.00 Yield to Maturity: 1.309% Maturity Date: 11 May 30

APPLE INC 3.35% DUE 02-09-2027     CUSIP: 037833CJ7

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 235,000.00 | 114.0775570 | 3,105.26 | 268,082.26 | 236,630.30 | 31,451.96 | 0.00 | 31,451.96 |

Issue Date:  9 Feb 17  Rate: 3.35% Call Date:  9 Nov 26 Call Price: 100.00 Yield to Maturity: 0.969% Maturity Date:  9 Feb 27

APPLE INC 3% DUE 02-09-2024     CUSIP: 037833CG3

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 435,000.00 | 107.5758660 | 5,147.49 | 467,955.02 | 439,358.70 | 28,596.32 | 0.00 | 28,596.32 |

Issue Date:  9 Feb 17  Rate: 3% Call Date:  9 Dec 23 Call Price: 100.00 Yield to Maturity: 0.537% Maturity Date:  9 Feb 24

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

◆ ## Asset Detail - Base Currency

Page 80 of 1,860

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss |||
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Fixed Income*

#### Corporate bonds

ARIZONA PUB SVC CO NT 3.35% 05-15-2050    CUSIP: 040555DB7

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 200,000.00 | 116.1194290 | 856.11 | 232,238.86 | 199,062.00 | 33,176.86 | 0.00 | 33,176.86 |

Issue Date: 22 May 20  Rate: 3.35% Call Date: 15 Nov 49 Call Price: 100.00 Yield to Maturity: 2.565% Maturity Date: 15 May 50

AT&T INC 3.85% DUE 06-01-2060    CUSIP: 00206RKB7

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 205,000.00 | 104.8231760 | 657.70 | 214,887.51 | 227,158.45 | - 12,270.94 | 0.00 | - 12,270.94 |

Issue Date: 28 May 20  Rate: 3.85% Call Date: 1 Dec 59 Call Price: 100.00 Yield to Maturity: 3.619% Maturity Date: 1 Jun 60

ATMOS ENERGY CORP 3.0% DUE        06-15-2027    CUSIP: 049560AN5

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 300,000.00 | 110.6533090 | 399.99 | 331,959.93 | 299,175.00 | 32,784.93 | 0.00 | 32,784.93 |

Issue Date:  8 Jun 17  Rate: 3% Call Date: 15 Mar 27 Call Price: 100.00 Yield to Maturity: 1.275% Maturity Date: 15 Jun 27

AUTONATION INC FIXED 4.75% DUE        06-01-2030    CUSIP: 05329WAQ5

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 280,000.00 | 120.3334130 | 1,108.33 | 336,933.56 | 330,828.70 | 6,104.86 | 0.00 | 6,104.86 |

Issue Date: 22 May 20  Rate: 4.75% Call Date: 1 Mar 30 Call Price: 100.00 Yield to Maturity: 2.332% Maturity Date: 1 Jun 30

AXA EQUITABLE FIXED 3.9% DUE 04-20-2023    CUSIP: 054561AC9

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 535,000.00 | 107.5884230 | 4,115.04 | 575,598.06 | 527,902.69 | 47,695.37 | 0.00 | 47,695.37 |

Issue Date: 20 Oct 18  Rate: 3.9% Call Date: 20 Mar 23 Call Price: 100.00 Yield to Maturity: 0.577% Maturity Date: 20 Apr 23

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*

**31 DEC 2020**

◆ ## Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Fixed Income*

#### Corporate bonds

AXA EQUITABLE HLDGS INC FIXED 5%      04-20-2048  BEO   CUSIP: 054561AM7

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 190,000.00 | 131.7152260 | 1,873.61 | 250,258.93 | 178,571.45 | 71,687.48 | 0.00 | 71,687.48 |

Issue Date: 20 Oct 18  Rate: 5% Call Date: 20 Oct 47 Call Price: 100.00 Yield to Maturity: 3.24% Maturity Date: 20 Apr 48

BALT GAS & ELEC CO 2.4% DUE 08-15-2026     CUSIP: 059165EG1

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 375,000.00 | 108.2000460 | 3,400.00 | 405,750.17 | 352,233.75 | 53,516.42 | 0.00 | 53,516.42 |

Issue Date: 18 Aug 16  Rate: 2.4% Call Date: 15 May 26 Call Price: 100.00 Yield to Maturity: 0.9% Maturity Date: 15 Aug 26

BANK AMER CORP FIXED 2.496% DUE      02-13-2031    CUSIP: 06051GHZ5

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 355,000.00 | 106.2066750 | 3,396.64 | 377,033.70 | 355,000.00 | 22,033.70 | 0.00 | 22,033.70 |

Issue Date: 13 Feb 20  Rate: 2.496% Call Date: 13 Feb 30 Call Price: 100.00 Yield to Maturity: 1.821% Maturity Date: 13 Feb 31

BANK AMER CORP FIXED 3.824% 01-20-2028     CUSIP: 06051GGF0

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 265,000.00 | 114.8589750 | 4,531.97 | 304,376.28 | 273,421.70 | 30,954.58 | 0.00 | 30,954.58 |

Issue Date: 20 Jan 17  Rate: 3.824% Call Date: 20 Jan 27 Call Price: 100.00 Yield to Maturity: 1.588% Maturity Date: 20 Jan 28

BANK AMER CORP 3.194% 07-23-2030     CUSIP: 06051GHV4

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 520,000.00 | 112.0689880 | 7,289.41 | 582,758.73 | 521,531.10 | 61,227.63 | 0.00 | 61,227.63 |

Issue Date: 23 Jul 19  Rate: 3.194% Call Date: 23 Jul 29 Call Price: 100.00 Yield to Maturity: 1.813% Maturity Date: 23 Jul 30

# Northern Trust

## *Portfolio Statement*

**31 DEC 2020**

◆ Asset Detail - Base Currency

Page 82 of 1,860

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Fixed Income*

**Corporate bonds**

| BANK AMER CORP 3.499% | 05-17-2022 | CUSIP: 06051GHH5 | | | | | |
|---|---|---|---|---|---|---|---|
| 630,000.00 | 101.1849390 | 2,694.22 | 637,465.11 | 630,201.90 | 7,263.21 | 0.00 | 7,263.21 |

Issue Date: 17 May 18  Rate: 3.499% Call Date: 17 May 21 Call Price: 100.00 Yield to Maturity: 2.616% Maturity Date: 17 May 22

| BANK AMER CORP 4.25% DUE 10-22-2026 | | CUSIP: 06051GFL8 | | | | | |
|---|---|---|---|---|---|---|---|
| 365,000.00 | 117.2967460 | 2,973.22 | 428,133.12 | 382,739.00 | 45,394.12 | 0.00 | 45,394.12 |

Issue Date: 22 Oct 14  Rate: 4.25% Yield to Maturity: 1.161% Maturity Date: 22 Oct 26

| BANK OF AMERICA CORP 3.004% | 12-20-2023 | CUSIP: 06051GHC6 | | | | | |
|---|---|---|---|---|---|---|---|
| 201,000.00 | 105.2510000 | 184.49 | 211,554.51 | 196,644.16 | 14,910.35 | 0.00 | 14,910.35 |

Issue Date: 20 Dec 17  Rate: 3.004% Call Date: 20 Dec 22 Call Price: 100.00 Yield to Maturity: 1.194% Maturity Date: 20 Dec 23

| BANK OF AMERICA CORPORATION 2.676% DUE  06-19-2041/06-19-2020    REG  CUSIP: 06051GJE0 | | | | | | | |
|---|---|---|---|---|---|---|---|
| 365,000.00 | 104.1896550 | 325.58 | 380,292.24 | 378,395.50 | 1,896.74 | 0.00 | 1,896.74 |

Issue Date: 19 Jun 20  Rate: 2.676% Call Date: 19 Jun 40 Call Price: 100.00 Yield to Maturity: 2.415% Maturity Date: 19 Jun 41

| BAXTER INTL INC 1.7% DUE 08-15-2021 | | CUSIP: 071813BR9 | | | | | |
|---|---|---|---|---|---|---|---|
| 550,000.00 | 100.7006720 | 3,532.22 | 553,853.70 | 549,422.50 | 4,431.20 | 0.00 | 4,431.20 |

Issue Date: 15 Aug 16  Rate: 1.7% Call Date: 15 Jul 21 Call Price: 100.00 Yield to Maturity: 0.571% Maturity Date: 15 Aug 21

**Northern Trust**

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*

**31 DEC 2020**

◆ ## Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Fixed Income*

#### Corporate bonds

BB&T BRH BKG & TR FIXED 2.636% DUE     09-17-2029     CUSIP: 07330MAC1

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 565,000.00 | 105.8139060 | 4,302.53 | 597,848.57 | 565,000.00 | 32,848.57 | 0.00 | 32,848.57 |

Issue Date: 16 Sep 19  Rate: 2.636% Call Date: 17 Sep 24 Call Price: 100.00 Yield to Maturity: 1.908% Maturity Date: 17 Sep 29

BB&T CORP SR MEDIUM TERM NTS BOOK 3.75%  12-06-2023     CUSIP: 05531FBF9

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 280,000.00 | 109.8556490 | 729.16 | 307,595.82 | 283,592.30 | 24,003.52 | 0.00 | 24,003.52 |

Issue Date:  6 Dec 18  Rate: 3.75% Call Date:  6 Nov 23 Call Price: 100.00 Yield to Maturity: 0.365% Maturity Date:  6 Dec 23

BB&T CORP SR 2.75% DUE 04-01-2022     CUSIP: 05531FAX1

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 760,000.00 | 102.8974980 | 5,225.00 | 782,020.98 | 758,578.80 | 23,442.18 | 0.00 | 23,442.18 |

Issue Date: 21 Mar 17  Rate: 2.75% Call Date:  1 Mar 22 Call Price: 100.00 Yield to Maturity: 0.423% Maturity Date:  1 Apr 22

BECTON DICKINSON & 4.669% DUE 06-06-2047     CUSIP: 075887BX6

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 190,000.00 | 131.3057560 | 616.04 | 249,480.94 | 218,157.90 | 31,323.04 | 0.00 | 31,323.04 |

Issue Date:  6 Jun 17  Rate: 4.669% Call Date:  6 Dec 46 Call Price: 100.00 Yield to Maturity: 2.954% Maturity Date:  6 Jun 47

BIOGEN INC CORP 3.15% 05-01-2050     CUSIP: 09062XAG8

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 70,000.00 | 103.6928870 | 367.50 | 72,585.02 | 69,569.67 | 3,015.35 | 0.00 | 3,015.35 |

Issue Date: 30 Apr 20  Rate: 3.15% Call Date:  1 Nov 49 Call Price: 100.00 Yield to Maturity: 2.96% Maturity Date:  1 May 50

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

◆ ## Asset Detail - Base Currency

Page 84 of 1,860

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss<br>Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Fixed Income*

**Corporate bonds**

BIOGEN INC 3.625% DUE 09-15-2022    CUSIP: 09062XAE3

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 635,000.00 | 105.4244850 | 6,777.74 | 669,445.48 | 634,492.00 | 34,953.48 | 0.00 | 34,953.48 |

Issue Date: 15 Sep 15  Rate: 3.625% Yield to Maturity: 0.429% Maturity Date: 15 Sep 22

BP CAP MKTS AMER INC 3.0% DUE 02-24-2050    CUSIP: 10373QBG4

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 85,000.00 | 102.6731020 | 899.58 | 87,272.14 | 83,592.40 | 3,679.74 | 0.00 | 3,679.74 |

Issue Date: 24 Feb 20  Rate: 3% Call Date: 24 Aug 49 Call Price: 100.00 Yield to Maturity: 2.864% Maturity Date: 24 Feb 50

BRISTOL MYERS FIXED 3.875% DUE          08-15-2025    CUSIP: 110122DC9

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 290,000.00 | 114.0790960 | 4,245.27 | 330,829.38 | 332,030.02 | - 1,200.64 | 0.00 | - 1,200.64 |

Issue Date: 15 Feb 20  Rate: 3.875% Call Date: 15 May 25 Call Price: 100.00 Yield to Maturity: 0.768% Maturity Date: 15 Aug 25

BRISTOL MYERS SQUIBB CO CORP 5.0%          08-15-2045    CUSIP: 110122DJ4

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 125,000.00 | 144.6382640 | 2,361.11 | 180,797.83 | 181,928.24 | - 1,130.41 | 0.00 | - 1,130.41 |

Issue Date: 15 Feb 20  Rate: 5% Call Date: 15 Feb 45 Call Price: 100.00 Yield to Maturity: 2.548% Maturity Date: 15 Aug 45

BROADCOM INC 2.25% DUE 11-15-2023  REG  CUSIP: 11135FAV3

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 220,000.00 | 104.4384390 | 632.50 | 229,764.57 | 228,826.32 | 938.25 | 0.00 | 938.25 |

Issue Date:  8 May 20  Rate: 2.25% Call Date: 15 Oct 23 Call Price: 100.00 Yield to Maturity: 0.686% Maturity Date: 15 Nov 23

## Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

## ◆ Asset Detail - Base Currency

Page 85 of 1,860

| Description/Asset ID | | | | | Unrealized gain/loss | | |
| Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Fixed Income*

#### Corporate bonds

BROADCOM INC 3.125% DUE       10-15-2022    CUSIP: 11135FAX9

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 290,000.00 | 104.6574240 | 1,913.19 | 303,506.53 | 302,813.10 | 693.43 | 0.00 | 693.43 |

Issue Date: 15 Apr 20  Rate: 3.125% Yield to Maturity: 0.506% Maturity Date: 15 Oct 22

BROADRIDGE FINL 2.9% DUE 12-01-2029    CUSIP: 11133TAD5

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 730,000.00 | 109.5379750 | 1,764.16 | 799,627.22 | 729,242.55 | 70,384.67 | 0.00 | 70,384.67 |

Issue Date:  9 Dec 19  Rate: 2.9% Call Date:  1 Sep 29 Call Price: 100.00 Yield to Maturity: 1.74% Maturity Date:  1 Dec 29

BURL NORTHN SANTA 3.9% DUE 08-01-2046    CUSIP: 12189LAZ4

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 70,000.00 | 127.7858150 | 1,137.50 | 89,450.07 | 70,739.28 | 18,710.79 | 0.00 | 18,710.79 |

Issue Date: 16 May 16  Rate: 3.9% Call Date:  1 Feb 46 Call Price: 100.00 Yield to Maturity: 2.434% Maturity Date:  1 Aug 46

CARRIER GLOBAL CORP 2.493%       02-15-2027    CUSIP: 14448CAP9

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 455,000.00 | 107.9038680 | 4,285.19 | 490,962.60 | 484,236.63 | 6,725.97 | 0.00 | 6,725.97 |

Issue Date: 15 Aug 20  Rate: 2.493% Call Date: 15 Dec 26 Call Price: 100.00 Yield to Maturity: 1.152% Maturity Date: 15 Feb 27

CHEVRON PHILLIPS 3.4% DUE 12-01-2026    CUSIP: 166754AP6

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 460,000.00 | 112.4046880 | 1,303.32 | 517,061.56 | 462,528.60 | 54,532.96 | 0.00 | 54,532.96 |

Issue Date: 22 Nov 16  Rate: 3.4% Call Date:  1 Sep 26 Call Price: 100.00 Yield to Maturity: 1.22% Maturity Date:  1 Dec 26

# Northern Trust

*Portfolio Statement*

31 DEC 2020

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

◆ Asset Detail - Base Currency

Page 86 of 1,860

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Fixed Income*

**Corporate bonds**

CINTAS CORP NO 2 3.7% DUE 04-01-2027    CUSIP: 17252MAN0

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 125,000.00 | 115.2182620 | 1,156.25 | 144,022.83 | 124,520.00 | 19,502.83 | 0.00 | 19,502.83 |

Issue Date: 14 Mar 17  Rate: 3.7% Call Date:  1 Jan 27 Call Price: 100.00 Yield to Maturity: 1.167% Maturity Date:  1 Apr 27

CISCO SYS INC 2.5% DUE 09-20-2026    CUSIP: 17275RBL5

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 345,000.00 | 109.8884800 | 2,419.79 | 379,115.26 | 334,135.95 | 44,979.31 | 0.00 | 44,979.31 |

Issue Date: 20 Sep 16  Rate: 2.5% Call Date: 20 Jun 26 Call Price: 100.00 Yield to Maturity: 0.731% Maturity Date: 20 Sep 26

CITIBANK N A 3.4% 07-23-2021    CUSIP: 17325FAQ1

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 375,000.00 | 101.4729180 | 5,595.83 | 380,523.44 | 374,587.50 | 5,935.94 | 0.00 | 5,935.94 |

Issue Date: 23 Jul 18  Rate: 3.4% Call Date: 23 Jun 21 Call Price: 100.00 Yield to Maturity: 0.765% Maturity Date: 23 Jul 21

CITIGROUP INC FLTG RT .776% DUE        10-30-2024    CUSIP: 172967MT5

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 425,000.00 | 100.6487210 | 558.82 | 427,757.06 | 425,000.00 | 2,757.06 | 0.00 | 2,757.06 |

Issue Date: 30 Oct 20  Rate: 0.776% Call Date: 30 Oct 23 Call Price: 100.00 Yield to Maturity: 0.604% Maturity Date: 30 Oct 24

CITIGROUP INC FLTG RT 1.678% DUE        05-15-2024    CUSIP: 172967MR9

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 190,000.00 | 103.0110960 | 407.38 | 195,721.08 | 190,000.00 | 5,721.08 | 0.00 | 5,721.08 |

Issue Date: 14 May 20  Rate: 1.678% Call Date: 15 May 23 Call Price: 100.00 Yield to Maturity: 0.771% Maturity Date: 15 May 24

**Northern Trust**

*Generated by Northern Trust from periodic data on 22 Jan 21*

## Portfolio Statement

**31 DEC 2020**

◆ ## Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### Fixed Income

**Corporate bonds**

CITIGROUP INC SR NT 3.352%        04-24-2025    CUSIP: 172967MF5

| 340,000.00 | 108.7175860 | 2,121.07 | 369,639.79 | 343,518.85 | 26,120.94 | 0.00 | 26,120.94 |

Issue Date: 24 Apr 19  Rate: 3.352% Call Date: 24 Apr 24 Call Price: 100.00 Yield to Maturity: 1.268% Maturity Date: 24 Apr 25

CITIGROUP INC 3.7% DUE 01-12-2026    CUSIP: 172967KG5

| 330,000.00 | 113.6358030 | 5,731.91 | 374,998.15 | 339,201.00 | 35,797.15 | 0.00 | 35,797.15 |

Issue Date: 12 Jan 16  Rate: 3.7% Yield to Maturity: 0.92% Maturity Date: 12 Jan 26

CITIGROUP INC 4.05% DUE 07-30-2022    CUSIP: 172967GK1

| 505,000.00 | 105.7494140 | 8,578.68 | 534,034.54 | 522,537.46 | 11,497.08 | 0.00 | 11,497.08 |

Issue Date:  8 Feb 13  Rate: 4.05% Yield to Maturity: 0.397% Maturity Date: 30 Jul 22

CITIGROUP INC 4.45% DUE 09-29-2027    CUSIP: 172967KA8

| 300,000.00 | 118.2138180 | 3,411.66 | 354,641.45 | 330,834.00 | 23,807.45 | 0.00 | 23,807.45 |

Issue Date: 29 Sep 15  Rate: 4.45% Yield to Maturity: 1.591% Maturity Date: 29 Sep 27

CITIGROUP INC 4.6% DUE 03-09-2026    CUSIP: 172967KJ9

| 405,000.00 | 117.1887890 | 5,795.99 | 474,614.60 | 432,669.60 | 41,945.00 | 0.00 | 41,945.00 |

Issue Date:  9 Mar 16  Rate: 4.6% Yield to Maturity: 1.175% Maturity Date:  9 Mar 26

## Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*

**31 DEC 2020**

## ◆ Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Fixed Income*

**Corporate bonds**

CITIZENS FINANCIAL GROUP INC NT PVTPL   2.638% 09-30-2032  USD   CUSIP: 174610AV7

| 535,000.00 | 105.3544080 | 3,567.52 | 563,646.08 | 533,480.60 | 30,165.48 | 0.00 | 30,165.48 |

Issue Date: 30 Sep 20  Rate: 2.638%  Call Date:  2 Jul 32  Call Price: 100.00  Yield to Maturity: 2.12%  Maturity Date: 30 Sep 32

CITIZENS FINL 2.375% DUE 07-28-2021    CUSIP: 174610AN5

| 295,000.00 | 100.9834020 | 2,977.65 | 297,901.04 | 294,846.60 | 3,054.44 | 0.00 | 3,054.44 |

Issue Date: 28 Jul 16  Rate: 2.375%  Call Date: 28 Jun 21  Call Price: 100.00  Yield to Maturity: 0.658%  Maturity Date: 28 Jul 21

CNH INDL CAP LLC 4.875% DUE 04-01-2021    CUSIP: 12592BAF1

| 340,000.00 | 100.9785190 | 4,143.75 | 343,326.97 | 351,290.40 | - 7,963.43 | 0.00 | - 7,963.43 |

Issue Date: 17 Mar 16  Rate: 4.875%  Yield to Maturity: 0.943%  Maturity Date:  1 Apr 21

COCA COLA CO 3.375% DUE 03-25-2027    CUSIP: 191216CR9

| 270,000.00 | 114.6943350 | 2,430.00 | 309,674.70 | 269,948.70 | 39,726.00 | 0.00 | 39,726.00 |

Issue Date: 25 Mar 20  Rate: 3.375%  Call Date: 25 Jan 27  Call Price: 100.00  Yield to Maturity: 0.942%  Maturity Date: 25 Mar 27

COMCAST CORP NEW 2.65% DUE 02-01-2030    CUSIP: 20030NDA6

| 390,000.00 | 109.3982610 | 4,306.25 | 426,653.22 | 389,418.90 | 37,234.32 | 0.00 | 37,234.32 |

Issue Date:  5 Nov 19  Rate: 2.65%  Call Date:  1 Nov 29  Call Price: 100.00  Yield to Maturity: 1.537%  Maturity Date:  1 Feb 30

# Northern Trust

# *Portfolio Statement*

**31 DEC 2020**

## ◆ Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Fixed Income*

**Corporate bonds**

COMCAST CORP NEW 4.25% DUE 10-15-2030    CUSIP: 20030NCU3

| 135,000.00 | 123.1347360 | 1,211.24 | 166,231.89 | 139,071.23 | 27,160.66 | 0.00 | 27,160.66 |

Issue Date:  5 Oct 18  Rate: 4.25% Call Date: 15 Jul 30 Call Price: 100.00 Yield to Maturity: 1.677% Maturity Date: 15 Oct 30

COMCAST CORP 4.7% 10-15-2048    CUSIP: 20030NCM1

| 165,000.00 | 139.7134730 | 1,637.16 | 230,527.23 | 196,670.25 | 33,856.98 | 0.00 | 33,856.98 |

Issue Date:  5 Oct 18  Rate: 4.7% Call Date: 15 Apr 48 Call Price: 100.00 Yield to Maturity: 2.667% Maturity Date: 15 Oct 48

CONSTELLATION 3.7% DUE 12-06-2026    CUSIP: 21036PAQ1

| 195,000.00 | 114.4431850 | 501.04 | 223,164.21 | 198,116.45 | 25,047.76 | 0.00 | 25,047.76 |

Issue Date:  6 Dec 16  Rate: 3.7% Call Date:  6 Sep 26 Call Price: 100.00 Yield to Maturity: 1.171% Maturity Date:  6 Dec 26

CONSTELLATION 4.5% DUE 05-09-2047    CUSIP: 21036PAT5

| 180,000.00 | 126.2126410 | 1,170.00 | 227,182.75 | 184,590.90 | 42,591.85 | 0.00 | 42,591.85 |

Issue Date:  9 May 17  Rate: 4.5% Call Date:  9 Nov 46 Call Price: 100.00 Yield to Maturity: 3.046% Maturity Date:  9 May 47

CONSTELLATION 4.75% DUE 11-15-2024    CUSIP: 21036PAN8

| 340,000.00 | 114.8177040 | 2,063.61 | 390,380.19 | 367,721.85 | 22,658.34 | 0.00 | 22,658.34 |

Issue Date:  3 Nov 14  Rate: 4.75% Yield to Maturity: 0.851% Maturity Date: 15 Nov 24

# Northern Trust

# *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

◆ ## Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss<br>Market | Translation | Total |
|---|---|---|---|---|---|---|---|

## *Fixed Income*

### Corporate bonds

CROWN CASTLE INTL 5.25% DUE 01-15-2023    CUSIP: 228227BD5

| 390,000.00 | 109.4253350 | 9,441.24 | 426,758.81 | 421,355.40 | 5,403.41 | 0.00 | 5,403.41 |

Issue Date: 15 Oct 12  Rate: 5.25% Yield to Maturity: 0.592% Maturity Date: 15 Jan 23

CROWN CASTLE 3.72% DUE 07-15-2043    CUSIP: 22822RBF6

| 690,000.00 | 104.7478300 | 1,140.79 | 722,760.03 | 691,891.00 | 30,869.03 | 0.00 | 30,869.03 |

Issue Date: 11 Jul 18  Rate: 3.72% Call Date: 15 Jul 22 Call Price: 100.00 Yield to Maturity: 1.803% Maturity Date: 15 Jul 43

CUMMINS INC 1.5% DUE 09-01-2030    CUSIP: 231021AT3

| 610,000.00 | 100.5068800 | 3,227.91 | 613,091.97 | 607,743.00 | 5,348.97 | 0.00 | 5,348.97 |

Issue Date: 24 Aug 20  Rate: 1.5% Call Date:  1 Jun 30 Call Price: 100.00 Yield to Maturity: 1.443% Maturity Date:  1 Sep 30

CVS HEALTH CORP 1.75% DUE 08-21-2030    CUSIP: 126650DN7

| 310,000.00 | 100.5823210 | 1,959.02 | 311,805.20 | 309,491.60 | 2,313.60 | 0.00 | 2,313.60 |

Issue Date: 21 Aug 20  Rate: 1.75% Call Date: 21 May 30 Call Price: 100.00 Yield to Maturity: 1.684% Maturity Date: 21 Aug 30

CVS HEALTH CORP 3.7% DUE 03-09-2023    CUSIP: 126650CV0

| 73,000.00 | 106.9817920 | 840.31 | 78,096.71 | 72,345.92 | 5,750.79 | 0.00 | 5,750.79 |

Issue Date:  9 Mar 18  Rate: 3.7% Call Date:  9 Feb 23 Call Price: 100.00 Yield to Maturity: 0.489% Maturity Date:  9 Mar 23

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*
**31 DEC 2020**

◆ ## Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss<br>Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Fixed Income*

**Corporate bonds**

CVS HEALTH CORP 4.78% DUE 03-25-2038    CUSIP: 126650CY4

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 120,000.00 | 126.6980650 | 1,529.60 | 152,037.68 | 122,084.90 | 29,952.78 | 0.00 | 29,952.78 |

Issue Date:  9 Mar 18  Rate: 4.78% Call Date: 25 Sep 37 Call Price: 100.00 Yield to Maturity: 2.813% Maturity Date: 25 Mar 38

CVS HEALTH CORP 5.05% DUE 03-25-2048    CUSIP: 126650CZ1

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 120,000.00 | 135.5278460 | 1,616.00 | 162,633.42 | 124,460.65 | 38,172.77 | 0.00 | 38,172.77 |

Issue Date:  9 Mar 18  Rate: 5.05% Call Date: 25 Sep 47 Call Price: 100.00 Yield to Maturity: 3.106% Maturity Date: 25 Mar 48

CYRUSONE LP / 2.9% DUE 11-15-2024    CUSIP: 23283PAQ7

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 660,000.00 | 106.7610000 | 2,445.66 | 704,622.60 | 659,907.90 | 44,714.70 | 0.00 | 44,714.70 |

Issue Date:  5 Dec 19  Rate: 2.9% Call Date: 15 Oct 24 Call Price: 100.00 Yield to Maturity: 1.111% Maturity Date: 15 Nov 24

D R HORTON INC SR NT 4.375 09-15-2022    CUSIP: 23331ABE8

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 335,000.00 | 105.4675620 | 4,315.45 | 353,316.33 | 355,402.30 | - 2,085.97 | 0.00 | - 2,085.97 |

Issue Date: 14 Sep 12  Rate: 4.375% Call Date: 15 Jun 22 Call Price: 100.00 Yield to Maturity: 1.128% Maturity Date: 15 Sep 22

DARDEN RESTAURANTS 3.85% DUE 05-01-2027    CUSIP: 237194AL9

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 160,000.00 | 109.6394690 | 1,026.66 | 175,423.15 | 162,334.05 | 13,089.10 | 0.00 | 13,089.10 |

Issue Date: 18 Apr 17  Rate: 3.85% Call Date:  1 Feb 27 Call Price: 100.00 Yield to Maturity: 2.21% Maturity Date:  1 May 27

**Northern Trust**

# *Portfolio Statement*

**31 DEC 2020**

## ◆ Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss<br>Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Fixed Income*

### Corporate bonds

DEERE JOHN CAP CORP MEDIUM TERM 3.65% 10-12-2023   REG   CUSIP: 24422EUM9

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 280,000.00 | 109.1722850 | 2,242.71 | 305,682.40 | 281,588.30 | 24,094.10 | 0.00 | 24,094.10 |

Issue Date: 12 Oct 18  Rate: 3.65% Yield to Maturity: 0.333% Maturity Date: 12 Oct 23

DELL INTL L L C / 4% DUE 07-15-2024    CUSIP: 24703DAY7

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 400,000.00 | 110.2626780 | 7,377.77 | 441,050.71 | 398,236.00 | 42,814.71 | 0.00 | 42,814.71 |

Issue Date: 20 Mar 19  Rate: 4% Call Date: 15 Jun 24 Call Price: 100.00 Yield to Maturity: 1.039% Maturity Date: 15 Jul 24

DIGITAL RLTY TR LP FIXED 3.7% 08-15-2027    CUSIP: 25389JAR7

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 250,000.00 | 114.9378030 | 3,494.44 | 287,344.51 | 250,130.57 | 37,213.94 | 0.00 | 37,213.94 |

Issue Date:  7 Aug 17  Rate: 3.7% Call Date: 15 May 27 Call Price: 100.00 Yield to Maturity: 1.335% Maturity Date: 15 Aug 27

DISNEY WALT CO 2% DUE 09-01-2029    CUSIP: 254687FL5

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 250,000.00 | 104.5158830 | 1,666.66 | 261,289.71 | 246,292.50 | 14,997.21 | 0.00 | 14,997.21 |

Issue Date:  6 Sep 19  Rate: 2% Call Date:  1 Jun 29 Call Price: 100.00 Yield to Maturity: 1.443% Maturity Date:  1 Sep 29

DOLLAR TREE INC 3.7% DUE 05-15-2023    CUSIP: 256746AF5

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 120,000.00 | 107.0455070 | 567.33 | 128,454.61 | 119,776.80 | 8,677.81 | 0.00 | 8,677.81 |

Issue Date: 19 Apr 18  Rate: 3.7% Call Date: 15 Apr 23 Call Price: 100.00 Yield to Maturity: 0.7% Maturity Date: 15 May 23

# Northern Trust

# *Portfolio Statement*

**31 DEC 2020**

## ◆ Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Fixed Income*

### Corporate bonds

DTE ELEC CO 3.75% DUE 08-15-2047     CUSIP: 23338VAG1

| 145,000.00 | 125.3260760 | 2,054.16 | 181,722.81 | 149,306.37 | 32,416.44 | 0.00 | 32,416.44 |

Issue Date: 9 Aug 17  Rate: 3.75% Call Date: 15 Feb 47 Call Price: 100.00 Yield to Maturity: 2.449% Maturity Date: 15 Aug 47

DUKE RLTY LTD 2.875% DUE 11-15-2029     CUSIP: 26441YBC0

| 215,000.00 | 110.5590110 | 789.81 | 237,701.87 | 215,503.40 | 22,198.47 | 0.00 | 22,198.47 |

Issue Date: 15 Nov 19  Rate: 2.875% Call Date: 15 Aug 29 Call Price: 100.00 Yield to Maturity: 1.593% Maturity Date: 15 Nov 29

ENTERGY LA LLC 4.0%  03-15-2033     CUSIP: 29364WBA5

| 155,000.00 | 124.4478160 | 1,825.55 | 192,894.11 | 158,916.45 | 33,977.66 | 0.00 | 33,977.66 |

Issue Date: 23 Mar 18  Rate: 4% Call Date: 15 Dec 32 Call Price: 100.00 Yield to Maturity: 1.764% Maturity Date: 15 Mar 33

ENTERPRISE PRODUCTS OPER L P 3.125% DUE 07-31-2029     CUSIP: 29379VBV4

| 380,000.00 | 110.8496240 | 4,980.90 | 421,228.58 | 381,407.66 | 39,820.92 | 0.00 | 39,820.92 |

Issue Date: 8 Jul 19  Rate: 3.125% Call Date: 30 Apr 29 Call Price: 100.00 Yield to Maturity: 1.757% Maturity Date: 31 Jul 29

EQUINIX INC 2.9%                11-18-2026     CUSIP: 29444UBD7

| 685,000.00 | 109.3667640 | 2,372.75 | 749,162.33 | 685,357.15 | 63,805.18 | 0.00 | 63,805.18 |

Issue Date: 18 Nov 19  Rate: 2.9% Call Date: 18 Sep 26 Call Price: 100.00 Yield to Maturity: 1.243% Maturity Date: 18 Nov 26

# Northern Trust

# Portfolio Statement

**31 DEC 2020**

◆ ## Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss<br>Market | Translation | Total |
|---|---|---|---|---|---|---|---|

## *Fixed Income*

### Corporate bonds

ESTEE LAUDER COS 2.35% DUE 08-15-2022    CUSIP: 29736RAE0

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 540,000.00 | 103.3279810 | 4,794.00 | 557,971.10 | 539,519.40 | 18,451.70 | 0.00 | 18,451.70 |

Issue Date:  2 Aug 12  Rate: 2.35% Yield to Maturity: 0.292% Maturity Date: 15 Aug 22

EVERGY KANS CENT 3.45% DUE 04-15-2050    CUSIP: 30036FAA9

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 215,000.00 | 117.7377800 | 1,565.91 | 253,136.23 | 214,120.65 | 39,015.58 | 0.00 | 39,015.58 |

Issue Date:  9 Apr 20  Rate: 3.45% Call Date: 15 Oct 49 Call Price: 100.00 Yield to Maturity: 2.582% Maturity Date: 15 Apr 50

EXPEDIA GROUP INC 3.25% DUE 02-15-2030    CUSIP: 30212PAR6

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 315,000.00 | 104.0741020 | 3,867.50 | 327,833.42 | 248,699.22 | 79,134.20 | 0.00 | 79,134.20 |

Issue Date: 15 Feb 20  Rate: 3.25% Call Date: 15 Nov 29 Call Price: 100.00 Yield to Maturity: 2.741% Maturity Date: 15 Feb 30

EXPEDIA INC FIXED 3.8% DUE 02-15-2028    CUSIP: 30212PAP0

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 585,000.00 | 107.4132960 | 8,398.00 | 628,367.78 | 540,846.47 | 87,521.31 | 0.00 | 87,521.31 |

Issue Date: 21 Sep 17  Rate: 3.8% Call Date: 15 Nov 27 Call Price: 100.00 Yield to Maturity: 2.65% Maturity Date: 15 Feb 28

EXXON MOBIL CORP 3.043% DUE 03-01-2026    CUSIP: 30231GAT9

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 340,000.00 | 110.7978420 | 3,448.73 | 376,712.66 | 353,848.20 | 22,864.46 | 0.00 | 22,864.46 |

Issue Date:  3 Mar 16  Rate: 3.043% Call Date:  1 Dec 25 Call Price: 100.00 Yield to Maturity: 0.899% Maturity Date:  1 Mar 26

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# Portfolio Statement

**31 DEC 2020**

Account number SELPTA<br>Account Name STATIONARY ENGINEERS L39ALL

◆ ## Asset Detail - Base Currency

Page 95 of 1,860

| Description/Asset ID | | | | | Unrealized gain/loss | | |
| Investment Mgr ID | Exchange rate/ | Accrued | | | | | |
| Shares/PAR value | Local market price | income/expense | Market value | Cost | Market | Translation | Total |
|---|---|---|---|---|---|---|---|

## *Fixed Income*

### Corporate bonds

FISERV INC 3.2% DUE 07-01-2026    CUSIP: 337738AT5

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 390,000.00 | 112.0180070 | 6,240.00 | 436,870.23 | 403,414.35 | 33,455.88 | 0.00 | 33,455.88 |

Issue Date: 24 Jun 19  Rate: 3.2% Call Date:  1 May 26 Call Price: 100.00 Yield to Maturity: 0.952% Maturity Date:  1 Jul 26

FL PWR & LT CO 2.75% DUE 06-01-2023    CUSIP: 341081FJ1

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 455,000.00 | 104.6320720 | 1,042.70 | 476,075.93 | 461,788.60 | 14,287.33 | 0.00 | 14,287.33 |

Issue Date:  5 Jun 13  Rate: 2.75% Call Date:  1 Dec 22 Call Price: 100.00 Yield to Maturity: 0.81% Maturity Date:  1 Jun 23

GEN MTRS FINL CO 3.7% DUE 05-09-2023    CUSIP: 37045XBK1

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 525,000.00 | 105.9915260 | 2,805.83 | 556,455.51 | 523,650.75 | 32,804.76 | 0.00 | 32,804.76 |

Issue Date:  9 May 16  Rate: 3.7% Call Date:  9 Mar 23 Call Price: 100.00 Yield to Maturity: 1.115% Maturity Date:  9 May 23

GENERAL ELEC CO FIXED 3.45% DUE          05-01-2027    CUSIP: 369604BV4

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 340,000.00 | 113.1045450 | 1,955.00 | 384,555.45 | 339,473.00 | 45,082.45 | 0.00 | 45,082.45 |

Issue Date: 22 Apr 20  Rate: 3.45% Call Date:  1 Mar 27 Call Price: 100.00 Yield to Maturity: 1.288% Maturity Date:  1 May 27

GENERAL ELEC CO 3.625% DUE 05-01-2030    REG  CUSIP: 369604BW2

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 165,000.00 | 114.2887040 | 996.87 | 188,576.36 | 164,737.65 | 23,838.71 | 0.00 | 23,838.71 |

Issue Date: 22 Apr 20  Rate: 3.625% Call Date:  1 Feb 30 Call Price: 100.00 Yield to Maturity: 1.943% Maturity Date:  1 May 30

# Northern Trust

## *Portfolio Statement*

31 DEC 2020

◆ Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Fixed Income*

#### Corporate bonds

GENERAL ELEC CO 4.25% DUE 05-01-2040     CUSIP: 369604BX0

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 55,000.00 | 118.2205650 | 389.58 | 65,021.31 | 54,844.90 | 10,176.41 | 0.00 | 10,176.41 |

Issue Date: 22 Apr 20  Rate: 4.25% Call Date:  1 Nov 39 Call Price: 100.00 Yield to Maturity: 3% Maturity Date:  1 May 40

GENERAL ELEC CO 4.35% DUE 05-01-2050   REG   CUSIP: 369604BY8

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 140,000.00 | 121.6148290 | 1,015.00 | 170,260.76 | 139,510.00 | 30,750.76 | 0.00 | 30,750.76 |

Issue Date: 22 Apr 20  Rate: 4.35% Call Date:  1 Nov 49 Call Price: 100.00 Yield to Maturity: 3.207% Maturity Date:  1 May 50

GENERAL MTRS CO 5.4% DUE 10-02-2023     CUSIP: 37045VAW0

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 305,000.00 | 111.9740000 | 4,071.75 | 341,520.70 | 304,682.80 | 36,837.90 | 0.00 | 36,837.90 |

Issue Date: 12 May 20  Rate: 5.4% Call Date:  2 Aug 23 Call Price: 100.00 Yield to Maturity: 0.98% Maturity Date:  2 Oct 23

GENERAL MTRS FINL CO INC 5.2% DUE       03-20-2023   REG   CUSIP: 37045XCW4

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 225,000.00 | 109.6489320 | 3,282.49 | 246,710.10 | 224,898.75 | 21,811.35 | 0.00 | 21,811.35 |

Issue Date: 15 May 20  Rate: 5.2% Yield to Maturity: 0.804% Maturity Date: 20 Mar 23

GLOBAL PMTS INC 2.65% DUE 02-15-2025     CUSIP: 37940XAA0

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 470,000.00 | 107.0884130 | 4,705.22 | 503,315.54 | 469,882.50 | 33,433.04 | 0.00 | 33,433.04 |

Issue Date: 14 Aug 19  Rate: 2.65% Call Date: 15 Jan 25 Call Price: 100.00 Yield to Maturity: 0.894% Maturity Date: 15 Feb 25

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*

**31 DEC 2020**

## ◆ Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Fixed Income*

### Corporate bonds

GOLDMAN SACHS GROUP INC SR NT FLTG     05-15-2026     CUSIP: 38141GXD1

| 230,000.00 | 101.9574060 | 408.79 | 234,502.03 | 230,000.00 | 4,502.03 | 0.00 | 4,502.03 |

Issue Date: 17 May 18  Rate: 1.391% Call Date: 15 May 25 Call Price: 100.00 Yield to Maturity: 1.074% Maturity Date: 15 May 26

GOLDMAN SACHS 3.5% DUE 01-23-2025     CUSIP: 38148LAC0

| 470,000.00 | 110.3659370 | 7,219.72 | 518,719.90 | 486,153.90 | 32,566.00 | 0.00 | 32,566.00 |

Issue Date: 23 Jan 15  Rate: 3.5% Call Date: 23 Oct 24 Call Price: 100.00 Yield to Maturity: 0.895% Maturity Date: 23 Jan 25

GOLDMAN SACHS 3.5% DUE 11-16-2026     CUSIP: 38145GAH3

| 285,000.00 | 112.2643280 | 1,246.87 | 319,953.33 | 287,635.10 | 32,318.23 | 0.00 | 32,318.23 |

Issue Date: 16 Nov 16  Rate: 3.5% Call Date: 16 Nov 25 Call Price: 100.00 Yield to Maturity: 1.323% Maturity Date: 16 Nov 26

GREAT PLAINS 4.85% DUE 06-01-2021     CUSIP: 391164AE0

| 540,000.00 | 100.6833960 | 2,182.50 | 543,690.34 | 547,171.20 | - 3,480.86 | 0.00 | - 3,480.86 |

Issue Date: 19 May 11  Rate: 4.85% Call Date:  1 Mar 21 Call Price: 100.00 Yield to Maturity: 3.18% Maturity Date:  1 Jun 21

HARRIS CORP DEL 4.4% DUE 06-15-2028     CUSIP: 413875AW5

| 545,000.00 | 119.9080260 | 1,065.77 | 653,498.74 | 551,617.40 | 101,881.34 | 0.00 | 101,881.34 |

Issue Date:  4 Jun 18  Rate: 4.4% Call Date: 15 Mar 28 Call Price: 100.00 Yield to Maturity: 1.56% Maturity Date: 15 Jun 28

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*

**31 DEC 2020**

◆ ## Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Fixed Income*

#### Corporate bonds

HLTH CARE SVC CORP 2.2% DUE 06-01-2030    CUSIP: 42218SAF5

| 705,000.00 | 104.6128760 | 1,292.49 | 737,520.78 | 702,172.95 | 35,347.83 | 0.00 | 35,347.83 |

Issue Date: 1 Jun 20  Rate: 2.2% Call Date: 1 Mar 30 Call Price: 100.00 Yield to Maturity: 1.668% Maturity Date: 1 Jun 30

HOME DEPOT INC 2.7% DUE 04-15-2030   REG   CUSIP: 437076CB6

| 455,000.00 | 111.6111220 | 2,593.50 | 507,830.61 | 452,456.55 | 55,374.06 | 0.00 | 55,374.06 |

Issue Date: 30 Mar 20  Rate: 2.7% Call Date: 15 Jan 30 Call Price: 100.00 Yield to Maturity: 1.364% Maturity Date: 15 Apr 30

HORMEL FOODS CORP 1.8% DUE 06-11-2030    CUSIP: 440452AF7

| 290,000.00 | 103.4241100 | 290.00 | 299,929.92 | 289,208.30 | 10,721.62 | 0.00 | 10,721.62 |

Issue Date: 11 Jun 20  Rate: 1.8% Call Date: 11 Mar 30 Call Price: 100.00 Yield to Maturity: 1.411% Maturity Date: 11 Jun 30

HOST HOTELS & 3.375% DUE 12-15-2029    CUSIP: 44107TAY2

| 465,000.00 | 102.8536230 | 697.50 | 478,269.35 | 462,724.30 | 15,545.05 | 0.00 | 15,545.05 |

Issue Date: 26 Sep 19  Rate: 3.375% Call Date: 16 Sep 29 Call Price: 100.00 Yield to Maturity: 3.009% Maturity Date: 15 Dec 29

HOST HOTELS & 4.5% DUE 02-01-2026    CUSIP: 44107TAW6

| 425,000.00 | 109.5768730 | 7,968.75 | 465,701.71 | 435,032.35 | 30,669.36 | 0.00 | 30,669.36 |

Issue Date: 14 Oct 15  Rate: 4.5% Call Date: 1 Nov 25 Call Price: 100.00 Yield to Maturity: 2.482% Maturity Date: 1 Feb 26

# Northern Trust

# *Portfolio Statement*

**31 DEC 2020**

## ◆ Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss<br>Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Fixed Income*

### **Corporate bonds**

HUNTINGTON 3.15% DUE 03-14-2021    CUSIP: 446150AJ3

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 368,000.00 | 100.3085290 | 3,445.40 | 369,135.39 | 367,275.04 | 1,860.35 | 0.00 | 1,860.35 |

Issue Date: 14 Mar 16  Rate: 3.15% Call Date: 14 Feb 21 Call Price: 100.00 Yield to Maturity: 1.614% Maturity Date: 14 Mar 21

HUNTSMAN INTL LLC 4.5%          05-01-2029    CUSIP: 44701QBE1

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 394,000.00 | 115.2166750 | 2,955.00 | 453,953.70 | 392,978.20 | 60,975.50 | 0.00 | 60,975.50 |

Issue Date: 13 Mar 19  Rate: 4.5% Call Date:  1 Feb 29 Call Price: 100.00 Yield to Maturity: 2.468% Maturity Date:  1 May 29

INTEL CORP FIXED 3.75% DUE 03-25-2027    CUSIP: 458140BQ2

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 140,000.00 | 115.8768530 | 1,400.00 | 162,227.59 | 139,727.00 | 22,500.59 | 0.00 | 22,500.59 |

Issue Date: 25 Mar 20  Rate: 3.75% Call Date: 25 Jan 27 Call Price: 100.00 Yield to Maturity: 1.106% Maturity Date: 25 Mar 27

INTERCONTINENTAL EXCHANGE INC 2.65%     09-15-2040    CUSIP: 45866FAP9

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 150,000.00 | 102.4558400 | 1,446.45 | 153,683.76 | 148,980.00 | 4,703.76 | 0.00 | 4,703.76 |

Issue Date: 20 Aug 20  Rate: 2.65% Call Date:  6 Aug 21 Call Price: 101.00 Yield to Maturity: 2.491% Maturity Date: 15 Sep 40

JETBLUE AWYS CORP FIXED 2.75% DUE      11-15-2033    CUSIP: 477143AH4

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 712,931.86 | 99.9324800 | 2,505.15 | 712,450.49 | 709,535.79 | 2,914.70 | 0.00 | 2,914.70 |

Issue Date: 12 Nov 19  Rate: 2.75% Yield to Maturity: 2.742% Maturity Date: 15 Nov 33

# **Northern Trust**

*Generated by Northern Trust from periodic data on 22 Jan 21*

# Portfolio Statement

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

## ◆ Asset Detail - Base Currency

Page 100 of 1,860

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Fixed Income*

#### Corporate bonds

JPMORGAN CHASE & CO NT FIXED/FLTG RATE  DUE 05-01-2028/10-25-2017   REG   CUSIP: 46647PAF3

| 325,000.00 | 114.1082400 | 1,885.54 | 370,851.78 | 331,102.78 | 39,749.00 | 0.00 | 39,749.00 |

Issue Date: 25 Apr 17  Rate: 3.54% Call Date:  1 May 27 Call Price: 100.00 Yield to Maturity: 1.501% Maturity Date:  1 May 28

JPMORGAN CHASE & CO 2.956% DUE          05-13-2031    CUSIP: 46647PBP0

| 305,000.00 | 109.6590990 | 1,202.09 | 334,460.25 | 305,000.00 | 29,460.25 | 0.00 | 29,460.25 |

Issue Date: 13 May 20  Rate: 2.956% Call Date: 13 May 25 Call Price: 100.00 Yield to Maturity: 1.923% Maturity Date: 13 May 31

JPMORGAN CHASE & CO 3.782% DUE          02-01-2028  BEO  CUSIP: 46625HRY8

| 90,000.00 | 114.9367460 | 1,418.24 | 103,443.07 | 92,674.80 | 10,768.27 | 0.00 | 10,768.27 |

Issue Date:  1 Feb 17  Rate: 3.782% Call Date:  1 Feb 27 Call Price: 100.00 Yield to Maturity: 1.547% Maturity Date:  1 Feb 28

JPMORGAN CHASE & CO 4.6% DUE 12-31-2049    CUSIP: 48128BAG6

| 338,000.00 | 103.2500000 | 6,391.95 | 348,985.00 | 319,257.50 | 29,727.50 | 0.00 | 29,727.50 |

Issue Date: 23 Jan 20  Rate: 4.6% Call Date:  1 Feb 25 Call Price: 100.00 Yield to Maturity: 4.403% Maturity Date: 31 Dec 49

JPMORGAN CHASE & FLTG RT 1.514% DUE       06-01-2024    CUSIP: 46647PBQ8

| 360,000.00 | 102.6694530 | 454.20 | 369,610.03 | 360,000.00 | 9,610.03 | 0.00 | 9,610.03 |

Issue Date: 27 May 20  Rate: 1.514% Call Date:  1 Jun 23 Call Price: 100.00 Yield to Maturity: 0.721% Maturity Date:  1 Jun 24

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

## ◆ Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss<br>Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Fixed Income*

### Corporate bonds

JPMORGAN CHASE & FLTG RT 2.182% DUE      06-01-2028      CUSIP: 46647PBR6

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 245,000.00 | 106.1477330 | 445.49 | 260,061.95 | 245,000.00 | 15,061.95 | 0.00 | 15,061.95 |

Issue Date: 27 May 20  Rate: 2.182% Call Date:  1 Jun 27 Call Price: 100.00 Yield to Maturity: 1.309% Maturity Date:  1 Jun 28

JPMORGAN CHASE & 3.25% DUE 09-23-2022      CUSIP: 46625HJE1

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 975,000.00 | 105.1709950 | 8,626.04 | 1,025,417.20 | 972,299.25 | 53,117.95 | 0.00 | 53,117.95 |

Issue Date: 24 Sep 12  Rate: 3.25% Yield to Maturity: 0.249% Maturity Date: 23 Sep 22

KAISER FNDTN HOSPS 3.266% DUE 11-01-2049      CUSIP: 48305QAE3

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 215,000.00 | 114.5491630 | 1,170.31 | 246,280.70 | 216,971.05 | 29,309.65 | 0.00 | 29,309.65 |

Issue Date: 31 Oct 19  Rate: 3.266% Call Date:  1 May 49 Call Price: 100.00 Yield to Maturity: 2.55% Maturity Date:  1 Nov 49

KINDER MORGAN INC DEL 2.0% DUE      02-15-2031      CUSIP: 49456BAR2

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 425,000.00 | 100.5335870 | 3,447.21 | 427,267.74 | 421,005.00 | 6,262.74 | 0.00 | 6,262.74 |

Issue Date:  5 Aug 20  Rate: 2% Call Date: 15 Nov 30 Call Price: 100.00 Yield to Maturity: 1.941% Maturity Date: 15 Feb 31

KING STREET FDG TR 3.75% DUE 06-01-2027      CUSIP: 053332AV4

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 150,000.00 | 114.8007720 | 468.75 | 172,201.16 | 152,396.20 | 19,804.96 | 0.00 | 19,804.96 |

Issue Date: 18 Apr 17  Rate: 3.75% Call Date:  1 Mar 27 Call Price: 100.00 Yield to Maturity: 1.335% Maturity Date:  1 Jun 27

# Northern Trust

# *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

## ◆ Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss<br>Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Fixed Income*

#### Corporate bonds

LABORATORY CORP AMER HLDGS 3.25%     09-01-2024     CUSIP: 50540RAT9

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 410,000.00 | 108.8404010 | 4,441.66 | 446,245.64 | 409,077.50 | 37,168.14 | 0.00 | 37,168.14 |

Issue Date: 22 Aug 17  Rate: 3.25% Call Date:  1 Jul 24 Call Price: 100.00 Yield to Maturity: 0.798% Maturity Date:  1 Sep 24

LABORATORY CORP AMER HLDGS 3.6%     09-01-2027     CUSIP: 50540RAU6

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 285,000.00 | 114.1557670 | 3,420.00 | 325,343.94 | 288,721.05 | 36,622.89 | 0.00 | 36,622.89 |

Issue Date: 22 Aug 17  Rate: 3.6% Call Date:  1 Jun 27 Call Price: 100.00 Yield to Maturity: 1.37% Maturity Date:  1 Sep 27

LAM RESH CORP 2.875% DUE 06-15-2050     CUSIP: 512807AW8

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 170,000.00 | 107.7523970 | 217.22 | 183,179.07 | 169,552.90 | 13,626.17 | 0.00 | 13,626.17 |

Issue Date:  5 May 20  Rate: 2.875% Call Date: 15 Dec 49 Call Price: 100.00 Yield to Maturity: 2.501% Maturity Date: 15 Jun 50

LAS VEGAS SANDS 3.5% DUE 08-18-2026     CUSIP: 517834AE7

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 245,000.00 | 107.0094240 | 3,167.98 | 262,173.09 | 246,212.55 | 15,960.54 | 0.00 | 15,960.54 |

Issue Date: 31 Jul 19  Rate: 3.5% Call Date: 18 Jun 26 Call Price: 100.00 Yield to Maturity: 2.17% Maturity Date: 18 Aug 26

LAS VEGAS SANDS 3.9% DUE 08-08-2029     CUSIP: 517834AF4

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 300,000.00 | 107.5442820 | 4,647.50 | 322,632.85 | 299,136.00 | 23,496.85 | 0.00 | 23,496.85 |

Issue Date: 31 Jul 19  Rate: 3.9% Call Date:  8 May 29 Call Price: 100.00 Yield to Maturity: 2.902% Maturity Date:  8 Aug 29

# Northern Trust

# *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

## ◆ Asset Detail - Base Currency

Page 103 of 1,860

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Fixed Income*

### Corporate bonds

LIBERTY MUT GROUP INC SR NT 144A 3.951% 10-15-2050    CUSIP: 53079EBJ2

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 210,000.00 | 119.7503190 | 1,751.61 | 251,475.67 | 213,162.03 | 38,313.64 | 0.00 | 38,313.64 |

Issue Date: 27 Sep 19  Rate: 3.951% Call Date: 15 Apr 50 Call Price: 100.00 Yield to Maturity: 2.949% Maturity Date: 15 Oct 50

MARATHON PETE CORP 4.5% DUE 05-01-2023    REG    CUSIP: 56585ABG6

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 355,000.00 | 108.5825530 | 2,662.50 | 385,468.07 | 354,790.55 | 30,677.52 | 0.00 | 30,677.52 |

Issue Date: 27 Apr 20  Rate: 4.5% Call Date:  1 Apr 23 Call Price: 100.00 Yield to Maturity: 0.78% Maturity Date:  1 May 23

MARATHON PETE CORP 4.7% DUE 05-01-2025    REG    CUSIP: 56585ABH4

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 390,000.00 | 114.5555220 | 3,054.99 | 446,766.54 | 389,239.50 | 57,527.04 | 0.00 | 57,527.04 |

Issue Date: 27 Apr 20  Rate: 4.7% Call Date:  1 Apr 25 Call Price: 100.00 Yield to Maturity: 1.239% Maturity Date:  1 May 25

MARATHON PETE CORP 5.125%            05-22-2019    CUSIP: 56585ABC5

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 200,000.00 | 119.1977780 | 455.55 | 238,395.56 | 219,014.93 | 19,380.63 | 0.00 | 19,380.63 |

Issue Date: 15 Dec 18  Rate: 5.125% Call Date: 15 Sep 26 Call Price: 100.00 Yield to Maturity: 1.719% Maturity Date: 15 Dec 26

MARATHON PETE CORP 6.5% DUE 03-01-2041    CUSIP: 56585AAF9

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 200,000.00 | 134.2600260 | 4,333.33 | 268,520.05 | 241,369.50 | 27,150.55 | 0.00 | 27,150.55 |

Issue Date:  1 Sep 11  Rate: 6.5% Call Date:  1 Sep 40 Call Price: 100.00 Yield to Maturity: 4.006% Maturity Date:  1 Mar 41

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

## *Portfolio Statement*

**31 DEC 2020**

◆ Asset Detail - Base Currency

| Description/Asset ID | | | | | Unrealized gain/loss | | |
| Investment Mgr ID | Exchange rate/ | Accrued | | | | | |
| Shares/PAR value | Local market price | income/expense | Market value | Cost | Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Fixed Income*

### Corporate bonds

MARKEL CORP 4.9% DUE 07-01-2022     CUSIP: 570535AK0

| 120,000.00 | 106.4092390 | 2,940.00 | 127,691.09 | 131,726.80 | - 4,035.71 | 0.00 | - 4,035.71 |

Issue Date:  2 Jul 12  Rate: 4.9% Yield to Maturity: 0.601% Maturity Date:  1 Jul 22

MARRIOTT INTL INC 2.3% DUE 01-15-2022     CUSIP: 571903AR4

| 800,000.00 | 101.3160730 | 8,484.43 | 810,528.58 | 797,664.40 | 12,864.18 | 0.00 | 12,864.18 |

Issue Date: 10 Jun 16  Rate: 2.3% Call Date: 15 Dec 21 Call Price: 100.00 Yield to Maturity: 1.023% Maturity Date: 15 Jan 22

MASTERCARD INC 3.85% DUE 03-26-2050   REG     CUSIP: 57636QAQ7

| 220,000.00 | 129.0716960 | 2,235.13 | 283,957.73 | 219,067.20 | 64,890.53 | 0.00 | 64,890.53 |

Issue Date: 26 Mar 20  Rate: 3.85% Call Date: 26 Sep 49 Call Price: 100.00 Yield to Maturity: 2.451% Maturity Date: 26 Mar 50

MCCORMICK & CO INC 3.15% 08-15-2024     CUSIP: 579780AM9

| 450,000.00 | 108.4086250 | 5,355.00 | 487,838.81 | 449,716.50 | 38,122.31 | 0.00 | 38,122.31 |

Issue Date: 11 Aug 17  Rate: 3.15% Call Date: 15 Jun 24 Call Price: 100.00 Yield to Maturity: 0.79% Maturity Date: 15 Aug 24

MCDONALDS CORP MEDIUM TERM NTS 3.7       DUE 02-15-2042     CUSIP: 58013MEN0

| 95,000.00 | 117.2751270 | 1,327.88 | 111,411.37 | 88,653.30 | 22,758.07 | 0.00 | 22,758.07 |

Issue Date:  7 Feb 12  Rate: 3.7% Yield to Maturity: 2.628% Maturity Date: 15 Feb 42

# Northern Trust

## *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

◆ Asset Detail - Base Currency

Page 105 of 1,860

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Fixed Income*

### Corporate bonds

MCDONALDS CORP 4.2% 04-01-2050    CUSIP: 58013MFR0

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 135,000.00 | 128.5587970 | 1,417.50 | 173,554.38 | 133,454.25 | 40,100.13 | 0.00 | 40,100.13 |

Issue Date: 27 Mar 20  Rate: 4.2% Call Date:  1 Oct 49 Call Price: 100.00 Yield to Maturity: 2.768% Maturity Date:  1 Apr 50

MICROSOFT CORP 2.375 DUE 05-01-2023    CUSIP: 594918AT1

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 445,000.00 | 104.5155870 | 1,761.45 | 465,094.36 | 443,504.80 | 21,589.56 | 0.00 | 21,589.56 |

Issue Date:  2 May 13  Rate: 2.375% Call Date:  1 Feb 23 Call Price: 100.00 Yield to Maturity: 0.428% Maturity Date:  1 May 23

MONDELEZ INTL 2.125% DUE 09-19-2022    CUSIP: 60920LAE4

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 350,000.00 | 102.8647100 | 2,107.29 | 360,026.49 | 349,909.00 | 10,117.49 | 0.00 | 10,117.49 |

Issue Date: 19 Sep 19  Rate: 2.125% Yield to Maturity: 0.448% Maturity Date: 19 Sep 22

MORGAN STANLEY .864% DUE 10-21-2025   BEO   CUSIP: 6174468R3

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 610,000.00 | 100.8218810 | 1,024.80 | 615,013.47 | 610,000.00 | 5,013.47 | 0.00 | 5,013.47 |

Issue Date: 21 Oct 20  Rate: 0.864% Call Date: 21 Apr 21 Call Price: 100.00 Yield to Maturity: 0.69% Maturity Date: 21 Oct 25

MORGAN STANLEY FORMERLY MORGAN STANLEY  3.591%  07-22-2028     CUSIP: 61744YAK4

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 145,000.00 | 114.1694940 | 2,299.73 | 165,545.77 | 147,249.10 | 18,296.67 | 0.00 | 18,296.67 |

Issue Date: 24 Jul 17  Rate: 3.591% Call Date: 22 Jul 27 Call Price: 100.00 Yield to Maturity: 1.593% Maturity Date: 22 Jul 28

**Northern Trust**

*Generated by Northern Trust from periodic data on 22 Jan 21*

## *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

◆ Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Fixed Income*

### Corporate bonds

MORGAN STANLEY 4.35 DUE 09-08-2026    CUSIP: 6174467Y9

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 175,000.00 | 117.8988250 | 2,389.47 | 206,322.94 | 184,208.15 | 22,114.79 | 0.00 | 22,114.79 |

Issue Date:  8 Sep 14  Rate: 4.35% Yield to Maturity: 1.094% Maturity Date:  8 Sep 26

MORGAN STANLEY 4% DUE 07-23-2025    CUSIP: 6174468C6

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 145,000.00 | 114.4371810 | 2,545.55 | 165,933.91 | 152,062.95 | 13,870.96 | 0.00 | 13,870.96 |

Issue Date: 23 Jul 15  Rate: 4% Yield to Maturity: 0.772% Maturity Date: 23 Jul 25

MORGAN STANLEY 5% DUE 11-24-2025    CUSIP: 6174467X1

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 345,000.00 | 119.5329390 | 1,772.91 | 412,388.64 | 371,692.20 | 40,696.44 | 0.00 | 40,696.44 |

Issue Date: 22 Nov 13  Rate: 5% Yield to Maturity: 0.912% Maturity Date: 24 Nov 25

MPLX LP 1.75% DUE 03-01-2026    CUSIP: 55336VBR0

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 340,000.00 | 103.4905360 | 2,198.19 | 351,867.82 | 339,269.00 | 12,598.82 | 0.00 | 12,598.82 |

Issue Date: 18 Aug 20  Rate: 1.75% Call Date:  1 Feb 26 Call Price: 100.00 Yield to Maturity: 1.054% Maturity Date:  1 Mar 26

MPLX LP 4.875% DUE 06-01-2025    CUSIP: 55336VAJ9

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 360,000.00 | 115.5069390 | 1,462.50 | 415,824.98 | 376,390.70 | 39,434.28 | 0.00 | 39,434.28 |

Issue Date:  1 Jun 16  Rate: 4.875% Call Date:  1 Mar 25 Call Price: 100.00 Yield to Maturity: 1.254% Maturity Date:  1 Jun 25

## Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

## Portfolio Statement

**31 DEC 2020**

◆ Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Fixed Income*

**Corporate bonds**

NISOURCE FIN CORP 3.49% 05-15-2027    CUSIP: 65473QBE2

| 295,000.00 | 113.3928280 | 1,315.53 | 334,508.84 | 294,952.80 | 39,556.04 | 0.00 | 39,556.04 |

Issue Date: 22 May 17  Rate: 3.49% Call Date: 15 Feb 27 Call Price: 100.00 Yield to Maturity: 1.293% Maturity Date: 15 May 27

NSTAR ELEC CO 3.2% DUE 05-15-2027    CUSIP: 67021CAM9

| 290,000.00 | 112.7458320 | 1,185.77 | 326,962.91 | 293,401.70 | 33,561.21 | 0.00 | 33,561.21 |

Issue Date: 15 May 17  Rate: 3.2% Call Date: 15 Feb 27 Call Price: 100.00 Yield to Maturity: 1.121% Maturity Date: 15 May 27

NVR INC 3.95 DUE 09-15-2022    CUSIP: 62944TAE5

| 290,000.00 | 105.1862350 | 3,372.86 | 305,040.08 | 304,062.60 | 977.48 | 0.00 | 977.48 |

Issue Date: 10 Sep 12  Rate: 3.95% Call Date: 15 Jun 22 Call Price: 100.00 Yield to Maturity: 0.879% Maturity Date: 15 Sep 22

NYU LANGONE HOSPS 3.38% DUE 07-01-2055    CUSIP: 62954RAA4

| 190,000.00 | 104.6380050 | 3,211.00 | 198,812.21 | 190,000.00 | 8,812.21 | 0.00 | 8,812.21 |

Issue Date:  4 Feb 20  Rate: 3.38% Call Date:  1 Jan 55 Call Price: 100.00 Yield to Maturity: 3.158% Maturity Date:  1 Jul 55

ORACLE CORP 2.5% BNDS 10-15-2022    CUSIP: 68389XAP0

| 280,000.00 | 103.9434350 | 1,477.77 | 291,041.62 | 275,014.25 | 16,027.37 | 0.00 | 16,027.37 |

Issue Date: 25 Oct 12  Rate: 2.5% Yield to Maturity: 0.288% Maturity Date: 15 Oct 22

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*

**31 DEC 2020**

◆ ## Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Fixed Income*

**Corporate bonds**

PAC GAS & ELEC CO FIXED 2.1% DUE     08-01-2027     CUSIP: 694308JF5

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 380,000.00 | 101.7620880 | 4,256.00 | 386,695.93 | 379,293.20 | 7,402.73 | 0.00 | 7,402.73 |

Issue Date: 19 Jun 20  Rate: 2.1% Call Date:  1 Jun 27 Call Price: 100.00 Yield to Maturity: 1.814% Maturity Date:  1 Aug 27

PAC GAS & ELEC CO 3.5% DUE 08-01-2050     CUSIP: 694308JJ7

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 195,000.00 | 99.3911070 | 3,640.00 | 193,812.66 | 193,769.55 | 43.11 | 0.00 | 43.11 |

Issue Date: 19 Jun 20  Rate: 3.5% Call Date:  1 Feb 50 Call Price: 100.00 Yield to Maturity: 3.533% Maturity Date:  1 Aug 50

PACIFICORP FIXED 3.3% DUE 03-15-2051     CUSIP: 695114CX4

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 250,000.00 | 114.7122080 | 2,429.16 | 286,780.52 | 247,940.00 | 38,840.52 | 0.00 | 38,840.52 |

Issue Date:  8 Apr 20  Rate: 3.3% Call Date: 15 Sep 50 Call Price: 100.00 Yield to Maturity: 2.594% Maturity Date: 15 Mar 51

PACIFICORP 2.7% DUE 09-15-2030     CUSIP: 695114CW6

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 300,000.00 | 109.9027050 | 2,385.00 | 329,708.12 | 299,460.00 | 30,248.12 | 0.00 | 30,248.12 |

Issue Date:  8 Apr 20  Rate: 2.7% Call Date: 15 Jun 30 Call Price: 100.00 Yield to Maturity: 1.594% Maturity Date: 15 Sep 30

PARKER-HANNIFIN  2.7% DUE 06-14-2024     CUSIP: 701094AM6

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 440,000.00 | 107.2494120 | 561.00 | 471,897.41 | 441,024.60 | 30,872.81 | 0.00 | 30,872.81 |

Issue Date: 14 Jun 19  Rate: 2.7% Call Date: 14 May 24 Call Price: 100.00 Yield to Maturity: 0.576% Maturity Date: 14 Jun 24

# **Northern Trust**

# *Portfolio Statement*

**31 DEC 2020**

## ◆ Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Fixed Income*

**Corporate bonds**

PAYPAL HLDGS INC 2.4% DUE 10-01-2024     CUSIP: 70450YAC7

| 220,000.00 | 106.8630760 | 1,320.00 | 235,098.77 | 219,865.80 | 15,232.97 | 0.00 | 15,232.97 |

Issue Date: 26 Sep 19  Rate: 2.4% Call Date:  1 Sep 24 Call Price: 100.00 Yield to Maturity: 0.548% Maturity Date:  1 Oct 24

PAYPAL HLDGS INC 2.65% DUE 10-01-2026     CUSIP: 70450YAD5

| 160,000.00 | 109.9200450 | 1,060.00 | 175,872.07 | 162,316.58 | 13,555.49 | 0.00 | 13,555.49 |

Issue Date: 26 Sep 19  Rate: 2.65% Call Date:  1 Aug 26 Call Price: 100.00 Yield to Maturity: 0.877% Maturity Date:  1 Oct 26

PEPSICO INC 2.0% 04-15-2021     CUSIP: 713448DX3

| 385,000.00 | 100.3605800 | 1,625.55 | 386,388.23 | 384,923.00 | 1,465.23 | 0.00 | 1,465.23 |

Issue Date: 10 Oct 17  Rate: 2% Call Date: 15 Mar 21 Call Price: 100.00 Yield to Maturity: 0.748% Maturity Date: 15 Apr 21

PEPSICO INC 2.25% DUE 03-19-2025     CUSIP: 713448EQ7

| 195,000.00 | 106.8187210 | 1,243.12 | 208,296.51 | 194,861.55 | 13,434.96 | 0.00 | 13,434.96 |

Issue Date: 19 Mar 20  Rate: 2.25% Call Date: 19 Feb 25 Call Price: 100.00 Yield to Maturity: 0.609% Maturity Date: 19 Mar 25

PEPSICO INC 3.625% DUE          03-19-2050     CUSIP: 713448EU8

| 100,000.00 | 126.8934030 | 1,027.08 | 126,893.40 | 99,474.00 | 27,419.40 | 0.00 | 27,419.40 |

Issue Date: 19 Mar 20  Rate: 3.625% Call Date: 19 Sep 49 Call Price: 100.00 Yield to Maturity: 2.347% Maturity Date: 19 Mar 50

# Northern Trust

## *Portfolio Statement*

31 DEC 2020

◆ Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Fixed Income*

### Corporate bonds

PHILLIPS 66 3.9% DUE 03-15-2028    CUSIP: 718546AR5

| 265,000.00 | 115.1483280 | 3,043.08 | 305,143.07 | 269,104.00 | 36,039.07 | 0.00 | 36,039.07 |

Issue Date: 1 Mar 18  Rate: 3.9% Call Date: 15 Dec 27 Call Price: 100.00 Yield to Maturity: 1.66% Maturity Date: 15 Mar 28

PLAINS ALL AMERN 3.85% DUE 10-15-2023    CUSIP: 72650RBD3

| 155,000.00 | 106.9220010 | 1,259.80 | 165,729.10 | 157,514.45 | 8,214.65 | 0.00 | 8,214.65 |

Issue Date: 15 Aug 13  Rate: 3.85% Call Date: 15 Jul 23 Call Price: 100.00 Yield to Maturity: 1.313% Maturity Date: 15 Oct 23

PNC FINL SVCS 2.55% DUE 01-22-2030    CUSIP: 693475AZ8

| 175,000.00 | 109.5564230 | 1,970.93 | 191,723.74 | 174,510.00 | 17,213.74 | 0.00 | 17,213.74 |

Issue Date: 22 Jan 20  Rate: 2.55% Call Date: 24 Oct 29 Call Price: 100.00 Yield to Maturity: 1.421% Maturity Date: 22 Jan 30

PPL ELEC UTILS CORP 3.95%         06-01-2047    CUSIP: 69351UAU7

| 190,000.00 | 124.5119280 | 625.41 | 236,572.66 | 194,938.03 | 41,634.63 | 0.00 | 41,634.63 |

Issue Date: 11 May 17  Rate: 3.95% Call Date: 1 Dec 46 Call Price: 100.00 Yield to Maturity: 2.653% Maturity Date: 1 Jun 47

PRECISION 3.25% DUE 06-15-2025    CUSIP: 740189AM7

| 420,000.00 | 110.4961750 | 606.66 | 464,083.94 | 419,143.20 | 44,940.74 | 0.00 | 44,940.74 |

Issue Date: 10 Jun 15  Rate: 3.25% Call Date: 15 Mar 25 Call Price: 100.00 Yield to Maturity: 0.844% Maturity Date: 15 Jun 25

# Northern Trust

## *Portfolio Statement*

**31 DEC 2020**

◆ Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Fixed Income*

**Corporate bonds**

PROCTER & GAMBLE .55% DUE 10-29-2025   CUSIP: 742718FL8

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 795,000.00 | 100.8848110 | 753.03 | 802,034.24 | 793,712.10 | 8,322.14 | 0.00 | 8,322.14 |

Issue Date: 29 Oct 20  Rate: 0.55% Yield to Maturity: 0.365% Maturity Date: 29 Oct 25

PVPTL DELTA AIR LINES/SKYMILES 4.75% DUE       10-20-2028   CUSIP: 830867AB3

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 105,000.00 | 109.1512340 | 1,357.70 | 114,608.80 | 105,000.00 | 9,608.80 | 0.00 | 9,608.80 |

Issue Date: 23 Sep 20  Rate: 4.75% Yield to Maturity: 3.168% Maturity Date: 20 Oct 28

PVTPL AMERICAN TOWER TR I 144A 3.07 DUE 03-15-2023   BEO   CUSIP: 03027WAJ1

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 640,000.00 | 101.9620500 | 873.23 | 652,557.12 | 625,120.00 | 27,437.12 | 0.00 | 27,437.12 |

Issue Date: 15 Mar 13  Rate: 3.07% Yield to Maturity: 2.155% Maturity Date: 15 Mar 48

PVTPL AT&T INC NT 3.5%       09-15-2053   CUSIP: 00206RMC3

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 246,000.00 | 100.1467690 | 2,463.41 | 246,361.05 | 246,561.03 | - 199.98 | 0.00 | - 199.98 |

Issue Date: 18 Sep 20  Rate: 3.5% Call Date: 15 Mar 53 Call Price: 100.00 Yield to Maturity: 3.492% Maturity Date: 15 Sep 53

PVTPL BERKSHIRE HATHAWAY ENERGY CO SR NT144A 1.65% DUE 05-15-2031   BEO   CUSIP: 084659BA8

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 290,000.00 | 99.9858800 | 824.08 | 289,959.05 | 289,217.00 | 742.05 | 0.00 | 742.05 |

Issue Date: 29 Oct 20  Rate: 1.65% Call Date: 15 Feb 31 Call Price: 100.00 Yield to Maturity: 1.651% Maturity Date: 15 May 31

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*

**31 DEC 2020**

## ◆ Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss |  |  |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Fixed Income*

**Corporate bonds**

PVTPL BERRY GLOBAL INC 1.57% DUE      01-15-2026/12-22-2020   BEO   CUSIP: 08576PAB7

| 275,000.00 | 100.9050000 | 107.93 | 277,488.75 | 274,906.50 | 2,582.25 | 0.00 | 2,582.25 |

Issue Date: 22 Dec 20  Rate: 1.57% Call Date: 15 Dec 25 Call Price: 100.00 Yield to Maturity: 1.383% Maturity Date: 15 Jan 26

PVTPL DELL INT LLC/EMC CORP 6.2% DUE     07-15-2030  BEO   CUSIP: 24703DBD2

| 200,000.00 | 129.9930250 | 5,717.77 | 259,986.05 | 199,634.00 | 60,352.05 | 0.00 | 60,352.05 |

Issue Date:  9 Apr 20  Rate: 6.2% Call Date: 15 Apr 30 Call Price: 100.00 Yield to Maturity: 2.625% Maturity Date: 15 Jul 30

PVTPL DELL INTL L L C/EMC CORP      4.9% 10-01-2026    CUSIP: 24703DAZ4

| 245,000.00 | 118.0837820 | 3,001.25 | 289,305.27 | 250,424.20 | 38,881.07 | 0.00 | 38,881.07 |

Issue Date: 20 Mar 19  Rate: 4.9% Call Date:  1 Aug 26 Call Price: 100.00 Yield to Maturity: 1.595% Maturity Date:  1 Oct 26

PVTPL DUQUESNE LIGHT HLDGS 3.616%       DUE 08-01-2027    CUSIP: 266233AG0

| 300,000.00 | 110.6188390 | 4,520.00 | 331,856.52 | 301,840.30 | 30,016.22 | 0.00 | 30,016.22 |

Issue Date: 24 Jul 17  Rate: 3.616% Call Date:  1 May 27 Call Price: 100.00 Yield to Maturity: 1.892% Maturity Date:  1 Aug 27

PVTPL EXPEDIA GROUP INC FORMERLY EXPEDIAINC SR NT 144A 3.6% 12-15-2023     CUSIP: 30212PAZ8

| 270,000.00 | 106.5704770 | 432.00 | 287,740.28 | 269,789.40 | 17,950.88 | 0.00 | 17,950.88 |

Issue Date: 14 Jul 20  Rate: 3.6% Call Date: 15 Nov 23 Call Price: 100.00 Yield to Maturity: 1.325% Maturity Date: 15 Dec 23

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

## ◆ Asset Detail - Base Currency

Page 113 of 1,860

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Fixed Income*

### **Corporate bonds**

PVTPL EXPEDIA GROUP INC FORMERLY EXPEDIAINC SR NT 144A 6.25 DUE 05-01-2025     CUSIP: 30212PAS4

| 115,000.00 | 115.9100590 | 1,197.91 | 133,296.57 | 115,000.00 | 18,296.57 | 0.00 | 18,296.57 |

Issue Date: 5 May 20  Rate: 6.25% Call Date: 1 Feb 25 Call Price: 100.00 Yield to Maturity: 2.364% Maturity Date: 1 May 25

PVTPL INFOR INC SR NT 144A 1.75% DUE     07-15-2025/06-05-2020    REG   CUSIP: 45674CAA1

| 240,000.00 | 103.8739600 | 2,403.33 | 249,297.50 | 239,716.80 | 9,580.70 | 0.00 | 9,580.70 |

Issue Date: 5 Jun 20  Rate: 1.75% Call Date: 15 Jun 25 Call Price: 100.00 Yield to Maturity: 0.877% Maturity Date: 15 Jul 25

PVTPL JACKSON NATL LIFE GLOBAL FDG SECD FLTG  06-11-2021    CUSIP: 46849LTA9

| 375,000.00 | 100.1931180 | 153.26 | 375,724.19 | 375,000.00 | 724.19 | 0.00 | 724.19 |

Issue Date: 11 Jun 18  Rate: 0.70063% Yield to Maturity: 0.295% Maturity Date: 11 Jun 21

PVTPL LEVEL 3 FING INC 3.4% DUE     03-01-2027    CUSIP: 527298BP7

| 250,000.00 | 108.8620000 | 2,833.33 | 272,155.00 | 251,329.45 | 20,825.55 | 0.00 | 20,825.55 |

Issue Date: 29 Nov 19  Rate: 3.4% Call Date: 1 Jan 27 Call Price: 100.00 Yield to Maturity: 1.871% Maturity Date: 1 Mar 27

PVTPL MASSMUTUAL GLOBAL FDG 2.35% DUE  01-14-2027  BEO   CUSIP: 57629WCQ1

| 340,000.00 | 106.6111450 | 3,706.47 | 362,477.89 | 339,258.80 | 23,219.09 | 0.00 | 23,219.09 |

Issue Date: 14 Jan 20  Rate: 2.35% Yield to Maturity: 1.21% Maturity Date: 14 Jan 27

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# Portfolio Statement
**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

◆ ## Asset Detail - Base Currency

Page 114 of 1,860

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Fixed Income*

**Corporate bonds**

PVTPL MILEAGE PLUS HLDGS LLC/MILEAGE    PLUS IN 6.5% DUE 06-20-2027    CUSIP: 599191AA1

| 510,000.00 | 107.5000000 | 1,012.90 | 548,250.00 | 507,886.10 | 40,363.90 | 0.00 | 40,363.90 |
|---|---|---|---|---|---|---|---|

Issue Date:  2 Jul 20  Rate: 6.5% Call Date: 30 Jun 23 Call Price: 103.25 Yield to Maturity: 4.464% Maturity Date: 20 Jun 27

PVTPL NESTLE HLDGS INC SR NT 144A 3.5%  DUE 09-24-2025/09-24-2018    BEO   CUSIP: 641062AE4

| 390,000.00 | 112.3049290 | 3,677.91 | 437,989.22 | 388,919.70 | 49,069.52 | 0.00 | 49,069.52 |
|---|---|---|---|---|---|---|---|

Issue Date: 24 Sep 18  Rate: 3.5% Call Date: 24 Jul 25 Call Price: 100.00 Yield to Maturity: 0.841% Maturity Date: 24 Sep 25

PVTPL NESTLE HLDGS INC 1.0% DUE        09-15-2027    CUSIP: 641062AS3

| 620,000.00 | 100.2194860 | 1,825.54 | 621,360.81 | 619,039.00 | 2,321.81 | 0.00 | 2,321.81 |
|---|---|---|---|---|---|---|---|

Issue Date: 15 Sep 20  Rate: 1% Call Date: 15 Jul 27 Call Price: 100.00 Yield to Maturity: 0.966% Maturity Date: 15 Sep 27

PVTPL NUTRITION & BIOSCIENCES INC 1.832%DUE 10-15-2027    CUSIP: 67079BAC4

| 315,000.00 | 103.0664530 | 1,683.14 | 324,659.33 | 314,996.85 | 9,662.48 | 0.00 | 9,662.48 |
|---|---|---|---|---|---|---|---|

Issue Date: 16 Sep 20  Rate: 1.832% Call Date: 15 Aug 27 Call Price: 100.00 Yield to Maturity: 1.357% Maturity Date: 15 Oct 27

PVTPL NUTRITION & BIOSCIENCES INC 2.3%  DUE 11-01-2030    CUSIP: 67079BAD2

| 245,000.00 | 103.0022140 | 1,643.54 | 252,355.42 | 244,995.10 | 7,360.32 | 0.00 | 7,360.32 |
|---|---|---|---|---|---|---|---|

Issue Date: 16 Sep 20  Rate: 2.3% Call Date:  1 Aug 30 Call Price: 100.00 Yield to Maturity: 1.962% Maturity Date:  1 Nov 30

# Northern Trust

# *Portfolio Statement*
**31 DEC 2020**

## ◆ Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Fixed Income*

#### Corporate bonds

PVTPL PEACHTREE CORNERS FDG TR 3.976%  DUE 02-15-2025  BEO   CUSIP: 70466WAA7

| 335,000.00 | 110.8817210 | 5,031.84 | 371,453.77 | 335,000.00 | 36,453.77 | 0.00 | 36,453.77 |

Issue Date: 17 Mar 15  Rate: 3.976% Yield to Maturity: 1.258% Maturity Date: 15 Feb 25

PVTPL SKYMILES IP LTD & DELTA AIR LINES INC 4.5% DUE 10-20-2025    CUSIP: 830867AA5

| 145,000.00 | 106.8859090 | 1,776.25 | 154,984.57 | 145,950.00 | 9,034.57 | 0.00 | 9,034.57 |

Issue Date: 23 Sep 20  Rate: 4.5% Yield to Maturity: 2.396% Maturity Date: 20 Oct 25

PVTPL SMITHFIELD FOODS INC FIXED 5.2%  04-01-2029  BEO  CUSIP: 832248BB3

| 430,000.00 | 119.0577460 | 5,590.00 | 511,948.31 | 431,829.00 | 80,119.31 | 0.00 | 80,119.31 |

Issue Date:  1 Apr 19  Rate: 5.2% Call Date:  1 Jan 29 Call Price: 100.00 Yield to Maturity: 2.616% Maturity Date:  1 Apr 29

PVTPL T-MOBILE  USA INC 4.5% DUE        04-15-2050    CUSIP: 87264AAY1

| 110,000.00 | 123.3385000 | 1,045.00 | 135,672.35 | 109,532.50 | 26,139.85 | 0.00 | 26,139.85 |

Issue Date:  9 Apr 20  Rate: 4.5% Call Date: 15 Oct 49 Call Price: 100.00 Yield to Maturity: 3.257% Maturity Date: 15 Apr 50

RELIANCE STD LIFE 2.5% DUE 10-30-2024    CUSIP: 75951AAL2

| 920,000.00 | 103.7193600 | 3,897.21 | 954,218.11 | 919,533.50 | 34,684.61 | 0.00 | 34,684.61 |

Issue Date: 30 Oct 19  Rate: 2.5% Yield to Maturity: 1.497% Maturity Date: 30 Oct 24

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

◆ ## Asset Detail - Base Currency

Page 116 of 1,860

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Fixed Income*

### Corporate bonds

SALESFORCE COM INC 3.25% BNDS        04-11-2023        CUSIP: 79466LAE4

| 400,000.00 | 106.5307620 | 2,888.88 | 426,123.05 | 399,760.00 | 26,363.05 | 0.00 | 26,363.05 |

Issue Date: 11 Apr 18  Rate: 3.25% Call Date: 11 Mar 23 Call Price: 100.00 Yield to Maturity: 0.368% Maturity Date: 11 Apr 23

SALESFORCE COM INC 3.7% DUE 04-11-2028        CUSIP: 79466LAF1

| 165,000.00 | 117.9918160 | 1,356.66 | 194,686.50 | 168,853.50 | 25,833.00 | 0.00 | 25,833.00 |

Issue Date: 11 Apr 18  Rate: 3.7% Call Date: 11 Jan 28 Call Price: 100.00 Yield to Maturity: 1.118% Maturity Date: 11 Apr 28

SAN DIEGO GAS & 3% DUE 08-15-2021        CUSIP: 797440BN3

| 545,000.00 | 101.6466370 | 6,176.66 | 553,974.17 | 558,379.75 | - 4,405.58 | 0.00 | - 4,405.58 |

Issue Date: 18 Aug 11  Rate: 3% Yield to Maturity: 0.349% Maturity Date: 15 Aug 21

SANTANDER HOLDINGS FIXED 30.7% DUE        03-28-2022        CUSIP: 80282KAT3

| 415,000.00 | 103.2669590 | 3,966.70 | 428,557.88 | 416,116.35 | 12,441.53 | 0.00 | 12,441.53 |

Issue Date: 28 Sep 17  Rate: 3.7% Call Date: 26 Feb 22 Call Price: 100.00 Yield to Maturity: 1.044% Maturity Date: 28 Mar 22

SOUTHERN CO 2.95% DUE 07-01-2023        CUSIP: 842587CU9

| 590,000.00 | 105.8963720 | 8,702.50 | 624,788.59 | 589,727.98 | 35,060.61 | 0.00 | 35,060.61 |

Issue Date: 24 May 16  Rate: 2.95% Call Date:  1 May 23 Call Price: 100.00 Yield to Maturity: 0.571% Maturity Date:  1 Jul 23

# Northern Trust

# Portfolio Statement

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

◆ ## Asset Detail - Base Currency

Page 117 of 1,860

| Description/Asset ID | | | | | | Unrealized gain/loss | |
| Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Fixed Income*

#### Corporate bonds

SPECTRA ENERGY 3.375% DUE 10-15-2026    CUSIP: 84756NAH2

| 250,000.00 | 112.1116370 | 1,781.25 | 280,279.09 | 252,344.90 | 27,934.19 | 0.00 | 27,934.19 |

Issue Date: 17 Oct 16  Rate: 3.375% Call Date: 15 Jul 26 Call Price: 100.00 Yield to Maturity: 1.202% Maturity Date: 15 Oct 26

SPRINT SPECTRUM CO 3.36% DUE 09-20-2021    CUSIP: 85208NAA8

| 175,312.50 | 100.9400000 | 179.98 | 176,960.44 | 175,407.43 | 1,553.01 | 0.00 | 1,553.01 |

Issue Date: 27 Oct 16  Rate: 3.35999% Yield to Maturity: 1.336% Maturity Date: 20 Mar 23

STARBUCKS CORP FIXED 4.45%        08-15-2049    CUSIP: 855244AU3

| 145,000.00 | 131.9152350 | 2,437.61 | 191,277.09 | 150,438.85 | 40,838.24 | 0.00 | 40,838.24 |

Issue Date: 13 May 19  Rate: 4.45% Call Date: 15 Feb 49 Call Price: 100.00 Yield to Maturity: 2.817% Maturity Date: 15 Aug 49

STARBUCKS CORP 2% DUE 03-12-2027    CUSIP: 855244AV1

| 390,000.00 | 106.1160110 | 2,361.66 | 413,852.44 | 388,404.90 | 25,447.54 | 0.00 | 25,447.54 |

Issue Date: 12 Mar 20  Rate: 2% Call Date: 12 Jan 27 Call Price: 100.00 Yield to Maturity: 0.98% Maturity Date: 12 Mar 27

SYSCO CORP 3.3% DUE 02-15-2050    CUSIP: 871829BJ5

| 115,000.00 | 104.5671800 | 1,433.66 | 120,252.26 | 114,782.65 | 5,469.61 | 0.00 | 5,469.61 |

Issue Date: 13 Feb 20  Rate: 3.3% Call Date: 15 Aug 49 Call Price: 100.00 Yield to Maturity: 3.061% Maturity Date: 15 Feb 50

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# Portfolio Statement

**31 DEC 2020**

◆ ## Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

## *Fixed Income*

### Corporate bonds

T-MOBILE  USA INC 3.75% DUE 04-15-2027     CUSIP: 87264ABC8

| 295,000.00 | 113.8800000 | 2,335.41 | 335,946.00 | 294,873.15 | 41,072.85 | 0.00 | 41,072.85 |

Issue Date: 9 Apr 20  Rate: 3.75% Call Date: 15 Feb 27 Call Price: 100.00 Yield to Maturity: 1.435% Maturity Date: 15 Apr 27

TIME WARNER CABLE 6.75% DUE 06-15-2039     CUSIP: 88732JAU2

| 385,000.00 | 142.3206600 | 1,155.00 | 547,934.54 | 464,141.95 | 83,792.59 | 0.00 | 83,792.59 |

Issue Date: 29 Jun 09  Rate: 6.75% Yield to Maturity: 3.593% Maturity Date: 15 Jun 39

TRUIST FINL CORP 4.95% DUE          12-29-2049     CUSIP: 89832QAE9

| 160,000.00 | 110.0010000 | 660.00 | 176,001.60 | 160,000.00 | 16,001.60 | 0.00 | 16,001.60 |

Issue Date: 1 Jun 20  Rate: 4.95% Call Date: 1 Sep 25 Call Price: 100.00 Yield to Maturity: 4.349% Maturity Date: 31 Dec 49

TYSON FOODS INC 4.5% DUE 06-15-2022     CUSIP: 902494AT0

| 520,000.00 | 104.8630250 | 1,040.00 | 545,287.73 | 582,249.20 | - 36,961.47 | 0.00 | - 36,961.47 |

Issue Date: 13 Jun 12  Rate: 4.5% Call Date: 15 Mar 22 Call Price: 100.00 Yield to Maturity: 1.121% Maturity Date: 15 Jun 22

UNITED AIRLS 2020-1A  PASS THRU TRS     5.875% 10-15-2027     CUSIP: 90931GAA7

| 350,000.00 | 108.0000000 | 3,598.42 | 378,000.00 | 350,212.50 | 27,787.50 | 0.00 | 27,787.50 |

Issue Date: 28 Oct 20  Rate: 5.875% Yield to Maturity: 3.614% Maturity Date: 15 Apr 29

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

## *Portfolio Statement*

**31 DEC 2020**

### ◆ Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

#### *Fixed Income*

**Corporate bonds**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| VALERO ENERGY CORP FIXED 4% DUE | 04-01-2029 | CUSIP: 91913YAW0 | | | | | |
| 220,000.00 | 112.5010630 | 2,200.00 | 247,502.34 | 222,730.90 | 24,771.44 | 0.00 | 24,771.44 |

Issue Date: 25 Mar 19  Rate: 4% Call Date:  1 Jan 29 Call Price: 100.00 Yield to Maturity: 2.325% Maturity Date:  1 Apr 29

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| VALERO ENERGY CORP NEW 2.85% DUE | 04-15-2025  REG | CUSIP: 91913YAY6 | | | | | |
| 370,000.00 | 106.5041510 | 2,226.16 | 394,065.36 | 391,323.10 | 2,742.26 | 0.00 | 2,742.26 |

Issue Date: 16 Apr 20  Rate: 2.85% Call Date: 15 Mar 25 Call Price: 100.00 Yield to Maturity: 1.286% Maturity Date: 15 Apr 25

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| VALERO ENERGY CORP 2.7% DUE 04-15-2023 | | CUSIP: 91913YAX8 | | | | | |
| 550,000.00 | 104.3612710 | 3,135.00 | 573,986.99 | 549,389.50 | 24,597.49 | 0.00 | 24,597.49 |

Issue Date: 16 Apr 20  Rate: 2.7% Yield to Maturity: 0.773% Maturity Date: 15 Apr 23

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| VALERO ENERGY CORP 3.4% DUE 09-15-2026 | | CUSIP: 91913YAU4 | | | | | |
| 670,000.00 | 109.6448520 | 6,707.44 | 734,620.51 | 665,886.20 | 68,734.31 | 0.00 | 68,734.31 |

Issue Date: 12 Sep 16  Rate: 3.4% Call Date: 15 Jun 26 Call Price: 100.00 Yield to Maturity: 1.623% Maturity Date: 15 Sep 26

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| VEREIT OPER 2.2% DUE 06-15-2028 | | CUSIP: 92340LAH2 | | | | | |
| 155,000.00 | 102.2532350 | 416.77 | 158,492.51 | 153,265.55 | 5,226.96 | 0.00 | 5,226.96 |

Issue Date: 17 Nov 20  Rate: 2.2% Call Date: 15 Apr 28 Call Price: 100.00 Yield to Maturity: 1.874% Maturity Date: 15 Jun 28

**Northern Trust**

# *Portfolio Statement*

**31 DEC 2020**

## ◆ Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Fixed Income*

### Corporate bonds

VERIZON COMMUNICATIONS DUE 05-15-2025    BEO    CUSIP: 92343VEP5

| 260,000.00 | 102.6850730 | 448.40 | 266,981.19 | 260,000.00 | 6,981.19 | 0.00 | 6,981.19 |

Issue Date: 15 May 18  Rate: 1.321% Call Date: 15 Mar 25 Call Price: 100.00 Yield to Maturity: 0.755% Maturity Date: 15 May 25

VERIZON 3% DUE 03-22-2027    CUSIP: 92343VFF6

| 180,000.00 | 110.9444410 | 1,485.00 | 199,699.99 | 179,910.00 | 19,789.99 | 0.00 | 19,789.99 |

Issue Date: 20 Mar 20  Rate: 3% Call Date: 22 Jan 27 Call Price: 100.00 Yield to Maturity: 1.171% Maturity Date: 22 Mar 27

VERIZON 4% DUE 03-22-2050    CUSIP: 92343VFD1

| 105,000.00 | 121.0056540 | 1,155.00 | 127,055.94 | 105,000.00 | 22,055.94 | 0.00 | 22,055.94 |

Issue Date: 20 Mar 20  Rate: 4% Call Date: 22 Sep 49 Call Price: 100.00 Yield to Maturity: 2.925% Maturity Date: 22 Mar 50

WACHOVIA BK NATL ASSN MTN SUB BKTRANCHE # SB 00007 5.85 DUE 02-01-2037  BEO    CUSIP: 92976GAG6

| 85,000.00 | 142.2627880 | 2,071.87 | 120,923.37 | 105,054.25 | 15,869.12 | 0.00 | 15,869.12 |

Issue Date: 29 Jan 07  Rate: 5.85% Yield to Maturity: 2.614% Maturity Date:  1 Feb 37

WAL-MART STORES 3.3 DUE 04-22-2024    CUSIP: 931142DP5

| 260,000.00 | 108.9886760 | 1,644.50 | 283,370.56 | 258,991.20 | 24,379.36 | 0.00 | 24,379.36 |

Issue Date: 22 Apr 14  Rate: 3.3% Call Date: 22 Jan 24 Call Price: 100.00 Yield to Maturity: 0.554% Maturity Date: 22 Apr 24

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

## Portfolio Statement

**31 DEC 2020**

◆ ## Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Fixed Income*

#### Corporate bonds

WASTE CONNECTIONS FIXED 4.25% DUE      12-01-2028      CUSIP: 941053AH3

| 520,000.00 | 119.0640820 | 1,841.66 | 619,133.23 | 535,581.45 | 83,551.78 | 0.00 | 83,551.78 |

Issue Date: 16 Nov 18  Rate: 4.25% Call Date:  1 Sep 28 Call Price: 100.00 Yield to Maturity: 1.669% Maturity Date:  1 Dec 28

WELLS FARGO & CO 2.406% DUE 10-30-2025      CUSIP: 95000U2H5

| 330,000.00 | 105.7370140 | 1,345.35 | 348,932.15 | 330,000.00 | 18,932.15 | 0.00 | 18,932.15 |

Issue Date: 31 Oct 19  Rate: 2.406% Call Date: 30 Oct 24 Call Price: 100.00 Yield to Maturity: 1.18% Maturity Date: 30 Oct 25

WELLS FARGO & CO 3% DUE 04-22-2026      CUSIP: 949746RW3

| 245,000.00 | 110.0597590 | 1,408.75 | 269,646.41 | 234,754.10 | 34,892.31 | 0.00 | 34,892.31 |

Issue Date: 22 Apr 16  Rate: 3% Yield to Maturity: 1.046% Maturity Date: 22 Apr 26

WILLIS N AMER INC 3.875% DUE 09-15-2049      CUSIP: 970648AK7

| 125,000.00 | 121.9304640 | 1,426.21 | 152,413.08 | 139,331.95 | 13,081.13 | 0.00 | 13,081.13 |

Issue Date: 10 Sep 19  Rate: 3.875% Call Date: 15 Mar 49 Call Price: 100.00 Yield to Maturity: 2.763% Maturity Date: 15 Sep 49

WILLIS NORTH AMERICA INC 2.95% DUE      09-15-2029      CUSIP: 970648AJ0

| 655,000.00 | 109.4117740 | 5,689.39 | 716,647.12 | 657,774.85 | 58,872.27 | 0.00 | 58,872.27 |

Issue Date: 10 Sep 19  Rate: 2.95% Call Date: 15 Jun 29 Call Price: 100.00 Yield to Maturity: 1.778% Maturity Date: 15 Sep 29

## Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

## *Portfolio Statement*

31 DEC 2020

◆ Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

## *Fixed Income*

### Corporate bonds

1ST HORIZON NATL FIXED 4% DUE 05-26-2025    CUSIP: 320517AD7

| 500,000.00 | 111.7185680 | 1,944.43 | 558,592.84 | 498,095.00 | 60,497.84 | 0.00 | 60,497.84 |

Issue Date: 26 May 20  Rate: 4% Call Date: 26 Apr 25 Call Price: 100.00 Yield to Maturity: 1.255% Maturity Date: 26 May 25

| Total USD | | 591,583.92 | 82,432,720.89 | 76,576,716.07 | 5,856,004.82 | 0.00 | 5,856,004.82 |

| Total United States | | 591,583.92 | 82,432,720.89 | 76,576,716.07 | 5,856,004.82 | 0.00 | 5,856,004.82 |

| **Total Corporate Bonds** | | | | | | | |
| **91,634,419.29** | | **743,312.07** | **99,772,170.67** | **92,764,942.98** | **7,007,227.69** | **0.00** | **7,007,227.69** |

### Government mortgage backed securities

**United States -  USD**

FEDERAL HOME LN MTG CORP POOL #G08854 5%12-01-2048  BEO   CUSIP: 3128MJ5Q9

| 140,284.70 | 110.5091940 | 584.51 | 155,027.49 | 147,057.82 | 7,969.67 | 0.00 | 7,969.67 |

Issue Date:  1 Nov 18  Rate: 5% Yield to Maturity: 2.255% Maturity Date:  1 Dec 48

FEDERAL HOME LN MTG CORP POOL #G61680 3%04-01-2047  BEO   CUSIP: 31335B2M7

| 76,538.01 | 105.0914950 | 191.34 | 80,434.94 | 72,723.07 | 7,711.87 | 0.00 | 7,711.87 |

Issue Date:  1 Oct 18  Rate: 3% Yield to Maturity: 1.471% Maturity Date:  1 Apr 47

## Northern Trust

# *Portfolio Statement*

**31 DEC 2020**

## ◆ Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

## *Fixed Income*

### Government mortgage backed securities

FEDERAL HOME LN MTG CORP POOL #G61682   5.5% 02-01-2040   BEO   CUSIP: 31335B2P0

| 46,406.39 | 117.5402220 | 212.69 | 54,546.17 | 49,894.15 | 4,652.02 | 0.00 | 4,652.02 |

Issue Date:  1 Oct 18  Rate: 5.5%  Yield to Maturity: 1.37%  Maturity Date:  1 Feb 40

FEDERAL HOME LN MTG CORP POOL #G61720   3.5% 01-01-2044   BEO   CUSIP: 31335B4D5

| 102,742.96 | 107.9039570 | 299.66 | 110,863.72 | 100,543.61 | 10,320.11 | 0.00 | 10,320.11 |

Issue Date:  1 Nov 18  Rate: 3.5%  Yield to Maturity: 1.385%  Maturity Date:  1 Jan 44

FEDERAL HOME LN MTG CORP POOL #G61722   3.5% 02-01-2048   BEO   CUSIP: 31335B4F0

| 186,192.57 | 106.0761180 | 543.06 | 197,505.85 | 181,803.15 | 15,702.70 | 0.00 | 15,702.70 |

Issue Date:  1 Nov 18  Rate: 3.5%  Yield to Maturity: 1.733%  Maturity Date:  1 Feb 48

FEDERAL HOME LN MTG CORP POOL #G61723   3.5% 01-01-2043   BEO   CUSIP: 31335B4G8

| 73,262.19 | 110.8612590 | 213.68 | 81,219.39 | 72,003.00 | 9,216.39 | 0.00 | 9,216.39 |

Issue Date:  1 Nov 18  Rate: 3.5%  Yield to Maturity: 0.624%  Maturity Date:  1 Jan 43

FEDERAL HOME LN MTG CORP POOL #G61724   3.5% 01-01-2045   BEO   CUSIP: 31335B4H6

| 93,195.03 | 110.3844010 | 271.81 | 102,872.78 | 91,403.95 | 11,468.83 | 0.00 | 11,468.83 |

Issue Date:  1 Nov 18  Rate: 3.5%  Yield to Maturity: 0.964%  Maturity Date:  1 Jan 45

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*

**31 DEC 2020**

## ◆ Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Fixed Income*

**Government mortgage backed securities**

FEDERAL HOME LN MTG CORP POOL #G61725  3.5% 03-01-2046  BEO   CUSIP: 31335B4J2

| 96,021.50 | 109.2662940 | 280.06 | 104,919.13 | 94,251.09 | 10,668.04 | 0.00 | 10,668.04 |

Issue Date:  1 Nov 18  Rate: 3.5% Yield to Maturity: 1.02% Maturity Date:  1 Mar 46

FEDERAL HOME LN MTG CORP POOL #G61726  3.5% 11-01-2045  BEO   CUSIP: 31335B4K9

| 89,327.47 | 108.6733720 | 260.53 | 97,075.17 | 87,568.85 | 9,506.32 | 0.00 | 9,506.32 |

Issue Date:  1 Nov 18  Rate: 3.5% Yield to Maturity: 1.275% Maturity Date:  1 Nov 45

FEDERAL HOME LN MTG CORP POOL #G61762  4%03-01-2045  BEO   CUSIP: 31335B5X0

| 63,446.85 | 110.0545100 | 211.48 | 69,826.12 | 64,130.89 | 5,695.23 | 0.00 | 5,695.23 |

Issue Date:  1 Nov 18  Rate: 4% Yield to Maturity: 1.689% Maturity Date:  1 Mar 45

FEDERAL HOME LN MTG CORP POOL #G61763  4%07-01-2044  BEO   CUSIP: 31335B5Y8

| 60,869.10 | 109.5712110 | 202.89 | 66,695.01 | 61,515.85 | 5,179.16 | 0.00 | 5,179.16 |

Issue Date:  1 Nov 18  Rate: 4% Yield to Maturity: 1.804% Maturity Date:  1 Jul 44

FEDERAL HOME LN MTG CORP POOL #G61764  4%12-01-2046  BEO   CUSIP: 31335B5Z5

| 174,359.09 | 108.6642730 | 581.19 | 189,466.04 | 175,176.39 | 14,289.65 | 0.00 | 14,289.65 |

Issue Date:  1 Nov 18  Rate: 4% Yield to Maturity: 1.929% Maturity Date:  1 Dec 46

**Northern Trust**

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*

**31 DEC 2020**

◆ ## Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Fixed Income*

### Government mortgage backed securities

FEDERAL HOME LN MTG CORP POOL #G61766  4%10-01-2048  BEO   CUSIP: 31335B6B7

| 77,982.65 | 109.5246120 | 259.94 | 85,410.19 | 78,299.46 | 7,110.73 | 0.00 | 7,110.73 |

Issue Date:  1 Nov 18  Rate: 4% Yield to Maturity: 1.433% Maturity Date:  1 Oct 48

FEDERAL HOME LN MTG CORP POOL #G61767  4.5% 08-01-2044  BEO   CUSIP: 31335B6C5

| 69,469.03 | 114.6854510 | 260.50 | 79,670.87 | 72,443.16 | 7,227.71 | 0.00 | 7,227.71 |

Issue Date:  1 Nov 18  Rate: 4.5% Yield to Maturity: 1.533% Maturity Date:  1 Aug 44

FEDERAL HOME LN MTG CORP POOL #G61768  4.5% 08-01-2047  BEO   CUSIP: 31335B6D3

| 66,422.07 | 113.1791250 | 249.08 | 75,175.92 | 69,172.37 | 6,003.55 | 0.00 | 6,003.55 |

Issue Date:  1 Nov 18  Rate: 4.5% Yield to Maturity: 1.824% Maturity Date:  1 Aug 47

FEDERAL HOME LN MTG CORP POOL #G61769  4.5% 12-01-2044  BEO   CUSIP: 31335B6E1

| 285,410.47 | 112.2035930 | 1,070.28 | 320,240.80 | 296,916.08 | 23,324.72 | 0.00 | 23,324.72 |

Issue Date:  1 Nov 18  Rate: 4.5% Yield to Maturity: 1.948% Maturity Date:  1 Dec 44

FEDERAL HOME LN MTG CORP POOL #G61770  4.5% 04-01-2046  BEO   CUSIP: 31335B6F8

| 33,233.72 | 112.2045930 | 124.62 | 37,289.76 | 34,552.67 | 2,737.09 | 0.00 | 2,737.09 |

Issue Date:  1 Nov 18  Rate: 4.5% Yield to Maturity: 1.934% Maturity Date:  1 Apr 46

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*

**31 DEC 2020**

## ◆ Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

## *Fixed Income*

### Government mortgage backed securities

FEDERAL HOME LN MTG CORP POOL #G61771  4.5% 07-01-2045  BEO   CUSIP: 31335B6G6

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 180,403.07 | 112.3968330 | 676.51 | 202,767.34 | 187,506.44 | 15,260.90 | 0.00 | 15,260.90 |

Issue Date:  1 Nov 18  Rate: 4.5% Yield to Maturity: 1.79% Maturity Date:  1 Jul 45

FEDERAL HOME LN MTG CORP POOL #G61772 5%11-01-2041  BEO   CUSIP: 31335B6H4

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 90,353.04 | 116.1206950 | 376.47 | 104,918.58 | 96,056.58 | 8,862.00 | 0.00 | 8,862.00 |

Issue Date:  1 Nov 18  Rate: 5% Yield to Maturity: 1.384% Maturity Date:  1 Nov 41

FEDERAL HOME LN MTG CORP POOL #QB-7147   2.5% DUE 01-01-2051   REG   CUSIP: 3133AD5G7

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 100,000.00 | 105.8348320 | 208.33 | 105,834.83 | 105,453.13 | 381.70 | 0.00 | 381.70 |

Issue Date:  1 Dec 20  Rate: 2.5% Yield to Maturity: 0.744% Maturity Date:  1 Jan 51

FEDERAL HOME LN MTG CORP SER 004993 CL D2% 09-25-2047    CUSIP: 3137FU5A8

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 450,000.00 | 103.4803600 | 749.99 | 465,661.62 | 465,978.52 | - 316.90 | 0.00 | - 316.90 |

Issue Date:  1 Jun 20  Rate: 2% Yield to Maturity: 0.6% Maturity Date: 25 Sep 47

FEDERAL HOME LN MTG SER 4776 CL QM 3.0% 06-15-2045    CUSIP: 3137F4R46

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 115,000.00 | 103.6322800 | 287.50 | 119,177.12 | 110,265.23 | 8,911.89 | 0.00 | 8,911.89 |

Issue Date:  1 Mar 18  Rate: 3% Yield to Maturity: 1.337% Maturity Date: 15 Jun 45

**Northern Trust**

*Generated by Northern Trust from periodic data on 22 Jan 21*

## *Portfolio Statement*

**31 DEC 2020**

◆ ## Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss<br>Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Fixed Income*

### Government mortgage backed securities

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOC 2%    10-01-2050    CUSIP: 3140KM4R8 | | | | | | | |
| 177,336.85 | 104.0662010 | 295.56 | 184,547.72 | 183,765.31 | 782.41 | 0.00 | 782.41 |

Issue Date:  1 Oct 20  Rate: 2% Yield to Maturity: 0.98% Maturity Date:  1 Oct 50

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOC 3.5%    3.5% 01-01-2050    CUSIP: 3133A1BY7 | | | | | | | |
| 238,335.20 | 105.5454570 | 695.14 | 251,551.98 | 252,300.16 | - 748.18 | 0.00 | - 748.18 |

Issue Date:  1 Jan 20  Rate: 3.5% Yield to Maturity: 1.647% Maturity Date:  1 Jan 50

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| FEDERAL NATL MTG ASSN GTD MTG POOL    #AL9859 3% 03-01-2047  BEO  CUSIP: 3138ER5V8 | | | | | | | |
| 146,108.91 | 104.9769820 | 365.27 | 153,380.72 | 139,282.88 | 14,097.84 | 0.00 | 14,097.84 |

Issue Date:  1 Feb 17  Rate: 3% Yield to Maturity: 1.456% Maturity Date:  1 Mar 47

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| FHLMC GOLD G61281 3.5% 01-01-2048    CUSIP: 31335BM60 | | | | | | | |
| 68,407.36 | 107.2140250 | 199.52 | 73,342.28 | 69,085.27 | 4,257.01 | 0.00 | 4,257.01 |

Issue Date:  1 Jan 18  Rate: 3.5% Yield to Maturity: 1.47% Maturity Date:  1 Jan 48

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| FHLMC GOLD POOL Q61081 4.5%    01-01-2049    CUSIP: 3132VMFX8 | | | | | | | |
| 251,649.49 | 110.7465520 | 943.68 | 278,693.13 | 271,624.17 | 7,068.96 | 0.00 | 7,068.96 |

Issue Date:  1 Jan 19  Rate: 4.5% Yield to Maturity: 1.709% Maturity Date:  1 Jan 49

## Northern Trust

# *Portfolio Statement*
**31 DEC 2020**

◆ ## Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

## *Fixed Income*

### Government mortgage backed securities

FHLMC GOLD POOL Q61349 4.0%          02-01-2049      CUSIP: 3132VMQB4

| 77,464.60 | 107.3600760 | 258.21 | 83,166.05 | 79,316.47 | 3,849.58 | 0.00 | 3,849.58 |

Issue Date:  1 Feb 19  Rate: 4% Yield to Maturity: 1.88% Maturity Date:  1 Feb 49

FHLMC GOLD U90490 4.0%          DUE 06-01-2042      CUSIP: 3132H3RK1

| 11,029.11 | 108.9718570 | 36.76 | 12,018.63 | 11,728.76 | 289.87 | 0.00 | 289.87 |

Issue Date:  1 Jun 12  Rate: 4% Yield to Maturity: 2.059% Maturity Date:  1 Jun 42

FHLMC MULTICLASS SER 004877 CL AT 3.5  11-15-2048   CUSIP: 3137FLX82

| 161,621.66 | 105.7567100 | 471.39 | 170,925.75 | 165,870.53 | 5,055.22 | 0.00 | 5,055.22 |

Issue Date:  1 Apr 19  Rate: 3.5% Yield to Maturity: 1.626% Maturity Date: 15 Nov 48

FHLMC MULTICLASS SER 004926 CL BP 3    10-25-2049   CUSIP: 3137FPLK9

| 475,000.00 | 106.3370600 | 1,187.50 | 505,101.04 | 494,399.42 | 10,701.62 | 0.00 | 10,701.62 |

Issue Date:  1 Oct 19  Rate: 3% Yield to Maturity: 1.339% Maturity Date: 25 Oct 49

FHLMC MULTICLASS SER 19-1 CL A1 3.5% FIXED  05-25-2029  REG   CUSIP: 35564CBB2

| 140,996.14 | 106.0295800 | 411.23 | 149,497.62 | 144,488.14 | 5,009.48 | 0.00 | 5,009.48 |

Issue Date:  1 May 19  Rate: 3.5% Yield to Maturity: 2.183% Maturity Date: 25 May 29

**Northern Trust**

*Portfolio Statement*

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

31 DEC 2020

## ◆ Asset Detail - Base Currency

Page 129 of 1,860

| Description/Asset ID | | | | | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| Investment Mgr ID | Exchange rate/ | Accrued | | | | | |
| Shares/PAR value | Local market price | income/expense | Market value | Cost | Market | Translation | Total |

### *Fixed Income*

**Government mortgage backed securities**

FHLMC MULTICLASS SER 4888 CL BA 3.5%    12-31-2040    CUSIP: 3137FM6K3

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 96,725.23 | 104.6281100 | 282.11 | 101,201.78 | 99,181.09 | 2,020.69 | 0.00 | 2,020.69 |

Issue Date:  1 May 19  Rate: 3.5% Yield to Maturity: 1.832% Maturity Date: 15 Sep 48

FHLMC MULTICLASS SER 4908 CL BD 3.0% DUE 12-31-2049  REG   CUSIP: 3137FNBV1

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 178,269.50 | 102.5960500 | 445.67 | 182,897.47 | 184,014.98 | - 1,117.51 | 0.00 | - 1,117.51 |

Issue Date:  1 Aug 19  Rate: 3% Yield to Maturity: 2.148% Maturity Date: 25 Apr 49

FHLMC POOL #QA1451 3.0% DUE 08-01-2049    CUSIP: 31334XTG4

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 125,577.43 | 104.9397510 | 313.94 | 131,780.64 | 131,964.23 | - 183.59 | 0.00 | - 183.59 |

Issue Date:  1 Jul 19  Rate: 3% Yield to Maturity: 1.345% Maturity Date:  1 Aug 49

FHLMC POOL #QN-4288  1.5% DUE 11-01-2035  REG   CUSIP: 3133GAXR2

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 169,129.02 | 102.7069290 | 211.41 | 173,707.22 | 173,581.87 | 125.35 | 0.00 | 125.35 |

Issue Date:  1 Nov 20  Rate: 1.5% Yield to Maturity: 0.713% Maturity Date:  1 Nov 35

FHLMC POOL #RA-3049  2.0%         07-01-2050    CUSIP: 3133KJL67

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 198,471.60 | 103.8884220 | 330.78 | 206,189.01 | 205,358.36 | 830.65 | 0.00 | 830.65 |

Issue Date:  1 Jun 20  Rate: 2% Yield to Maturity: 0.986% Maturity Date:  1 Jul 50

**Northern Trust**

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*

**31 DEC 2020**

◆ ## Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Fixed Income*

**Government mortgage backed securities**

FHLMC POOL #RA-3266  2.0%          08-01-2050    CUSIP: 3133KJTX0

| 276,837.01 | 104.6972840 | 461.39 | 289,840.83 | 286,072.12 | 3,768.71 | 0.00 | 3,768.71 |

Issue Date:  1 Jul 20  Rate: 2% Yield to Maturity: 0.666% Maturity Date:  1 Aug 50

FHLMC UMBS 30Y FIXED 2% 09-01-2050    CUSIP: 3133AAYK2

| 389,660.71 | 104.1704610 | 649.42 | 405,911.36 | 404,120.78 | 1,790.58 | 0.00 | 1,790.58 |

Issue Date:  1 Oct 20  Rate: 2% Yield to Maturity: 0.915% Maturity Date:  1 Sep 50

FNMA CONN AVE SECS SER 2016-C07  144A CL 2M-2  05-25-2029    CUSIP: 30711XEC4

| 384,439.02 | 104.1857200 | 192.13 | 400,530.56 | 394,634.14 | 5,896.42 | 0.00 | 5,896.42 |

Issue Date:  8 Dec 16  Rate: 4.498% Yield to Maturity: 2.217% Maturity Date: 25 May 29

FNMA POOL #AM8098 2.68% 05-01-2025  BEO  CUSIP: 3138L87L2

| 295,000.00 | 107.9217420 | 658.83 | 318,369.14 | 319,475.78 | - 1,106.64 | 0.00 | - 1,106.64 |

Issue Date:  1 May 15  Rate: 2.68% Yield to Maturity: 0.806% Maturity Date:  1 May 25

FNMA POOL #BF0209 3.5% 02-01-2042  BEO  CUSIP: 3140FXGT3

| 171,481.19 | 108.7534530 | 500.15 | 186,491.72 | 173,463.93 | 13,027.79 | 0.00 | 13,027.79 |

Issue Date:  1 Apr 18  Rate: 3.5% Yield to Maturity: 0.644% Maturity Date:  1 Feb 42

# Northern Trust

## *Portfolio Statement*

**31 DEC 2020**

◆ ## Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Fixed Income*

**Government mortgage backed securities**

FNMA POOL #BK9022 4% 10-01-2048   BEO   CUSIP: 3140HPAY3

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 244,773.40 | 107.6674210 | 815.91 | 263,541.21 | 255,482.25 | 8,058.96 | 0.00 | 8,058.96 |

Issue Date:  1 Oct 18  Rate: 4% Yield to Maturity: 1.829% Maturity Date:  1 Oct 48

FNMA POOL #BM1258 3.5% 03-01-2037   BEO   CUSIP: 3140J5MG1

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 68,795.18 | 110.9480800 | 200.65 | 76,326.93 | 70,106.60 | 6,220.33 | 0.00 | 6,220.33 |

Issue Date:  1 May 17  Rate: 3.5% Yield to Maturity: 0.305% Maturity Date:  1 Mar 37

FNMA POOL #BM3818 3% 05-01-2038   BEO   CUSIP: 3140J8G49

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 317,085.19 | 107.1430650 | 792.71 | 339,734.79 | 308,811.26 | 30,923.53 | 0.00 | 30,923.53 |

Issue Date:  1 Apr 18  Rate: 3% Yield to Maturity: 0.668% Maturity Date:  1 May 38

FNMA POOL #BM4329 4% 04-01-2038   BEO   CUSIP: 3140J8Y31

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 166,515.24 | 107.9424260 | 555.05 | 179,740.59 | 169,897.58 | 9,843.01 | 0.00 | 9,843.01 |

Issue Date:  1 Jul 18  Rate: 4% Yield to Maturity: 1.576% Maturity Date:  1 Apr 38

FNMA POOL #BM4331 4% 07-01-2038   BEO   CUSIP: 3140J8Y56

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 110,374.35 | 108.7975650 | 367.91 | 120,084.61 | 113,478.63 | 6,605.98 | 0.00 | 6,605.98 |

Issue Date:  1 Jul 18  Rate: 4% Yield to Maturity: 1.359% Maturity Date:  1 Jul 38

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

## Portfolio Statement
**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

### ◆ Asset Detail - Base Currency

Page 132 of 1,860

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

*Fixed Income*

**Government mortgage backed securities**

FNMA POOL #BM4480 3.5% 05-01-2043  BEO   CUSIP: 3140J86S7

| 188,184.93 | 108.7296310 | 548.87 | 204,612.78 | 188,376.06 | 16,236.72 | 0.00 | 16,236.72 |

Issue Date:  1 Sep 18  Rate: 3.5% Yield to Maturity: 1.013% Maturity Date:  1 May 43

FNMA POOL #BM4481 3.5% 07-01-2043  BEO   CUSIP: 3140J86T5

| 183,773.37 | 110.3488800 | 536.00 | 202,791.86 | 183,400.11 | 19,391.75 | 0.00 | 19,391.75 |

Issue Date:  1 Sep 18  Rate: 3.5% Yield to Maturity: 0.779% Maturity Date:  1 Jul 43

FNMA POOL #BM4482 4% 01-01-2043  BEO   CUSIP: 3140J86U2

| 109,565.66 | 109.6219520 | 365.21 | 120,108.02 | 111,534.41 | 8,573.61 | 0.00 | 8,573.61 |

Issue Date:  1 Sep 18  Rate: 4% Yield to Maturity: 1.933% Maturity Date:  1 Jan 43

FNMA POOL #BM4492 4% 08-01-2038  BEO   CUSIP: 3140J87E7

| 73,786.93 | 108.7386790 | 245.95 | 80,234.93 | 75,239.61 | 4,995.32 | 0.00 | 4,995.32 |

Issue Date:  1 Aug 18  Rate: 4% Yield to Maturity: 1.438% Maturity Date:  1 Aug 38

FNMA POOL #BM4551 4.5% 04-01-2041  BEO   CUSIP: 3140J9BV2

| 34,007.36 | 114.5865070 | 127.52 | 38,967.85 | 35,492.53 | 3,475.32 | 0.00 | 3,475.32 |

Issue Date:  1 Sep 18  Rate: 4.5% Yield to Maturity: 1.481% Maturity Date:  1 Apr 41

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*

**31 DEC 2020**

## ◆ Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Fixed Income*

**Government mortgage backed securities**

FNMA POOL #BM4599 4.5% 02-01-2041  BEO   CUSIP: 3140J9DD0

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 97,612.19 | 113.0335220 | 366.04 | 110,334.50 | 101,554.83 | 8,779.67 | 0.00 | 8,779.67 |

Issue Date:  1 Oct 18  Rate: 4.5% Yield to Maturity: 1.732% Maturity Date:  1 Feb 41

FNMA POOL #BM4600 4.5% 08-01-2042  BEO   CUSIP: 3140J9DE8

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 51,513.09 | 112.1719290 | 193.17 | 57,783.23 | 53,497.14 | 4,286.09 | 0.00 | 4,286.09 |

Issue Date:  1 Oct 18  Rate: 4.5% Yield to Maturity: 1.94% Maturity Date:  1 Aug 42

FNMA POOL #BM4608 4% 10-01-2038  BEO   CUSIP: 3140J9DN8

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 107,688.67 | 109.6604010 | 358.96 | 118,091.83 | 109,672.19 | 8,419.64 | 0.00 | 8,419.64 |

Issue Date:  1 Oct 18  Rate: 4% Yield to Maturity: 1.217% Maturity Date:  1 Oct 38

FNMA POOL #BM4699 4% 01-01-2046  BEO   CUSIP: 3140J9GH8

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 55,435.48 | 109.8996220 | 184.78 | 60,923.38 | 56,028.82 | 4,894.56 | 0.00 | 4,894.56 |

Issue Date:  1 Oct 18  Rate: 4% Yield to Maturity: 1.71% Maturity Date:  1 Jan 46

FNMA POOL #BM4748 3.5% 03-01-2046  BEO   CUSIP: 3140J9H20

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 144,634.25 | 108.2928240 | 421.84 | 156,628.51 | 142,170.95 | 14,457.56 | 0.00 | 14,457.56 |

Issue Date:  1 Oct 18  Rate: 3.5% Yield to Maturity: 1.275% Maturity Date:  1 Mar 46

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*

**31 DEC 2020**

## ◆ Asset Detail - Base Currency

Page 134 of 1,860

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Fixed Income*

#### Government mortgage backed securities

FNMA POOL #BM4798 5.5% 07-01-2041  BEO   CUSIP: 3140J9KL4

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 58,649.54 | 117.0845450 | 268.81 | 68,669.55 | 63,121.58 | 5,547.97 | 0.00 | 5,547.97 |

Issue Date:  1 Oct 18  Rate: 5.5% Yield to Maturity: 1.311% Maturity Date:  1 Jul 41

FNMA POOL #BM4803 3% 01-01-2045  BEO   CUSIP: 3140J9KR1

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 164,577.96 | 106.7990230 | 411.44 | 175,767.65 | 158,300.35 | 17,467.30 | 0.00 | 17,467.30 |

Issue Date:  1 Oct 18  Rate: 3% Yield to Maturity: 0.977% Maturity Date:  1 Jan 45

FNMA POOL #BM4806 3% 12-01-2047  BEO   CUSIP: 3140J9KU4

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 95,862.67 | 104.9501820 | 239.65 | 100,608.05 | 90,994.65 | 9,613.40 | 0.00 | 9,613.40 |

Issue Date:  1 Oct 18  Rate: 3% Yield to Maturity: 1.501% Maturity Date:  1 Dec 47

FNMA POOL #BM4818 3.5% 02-01-2043  BEO   CUSIP: 3140J9K83

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 73,285.08 | 110.8303660 | 213.74 | 81,222.12 | 72,495.00 | 8,727.12 | 0.00 | 8,727.12 |

Issue Date:  1 Oct 18  Rate: 3.5% Yield to Maturity: 0.694% Maturity Date:  1 Feb 43

FNMA POOL #BM4819 3.5% 12-01-2044  BEO   CUSIP: 3140J9K91

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 70,140.04 | 109.2353220 | 204.57 | 76,617.70 | 69,208.49 | 7,409.21 | 0.00 | 7,409.21 |

Issue Date:  1 Oct 18  Rate: 3.5% Yield to Maturity: 1.065% Maturity Date:  1 Dec 44

# Northern Trust

## *Portfolio Statement*

**31 DEC 2020**

◆ ## Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Fixed Income*

**Government mortgage backed securities**

FNMA POOL #BM4820 3.5% 11-01-2044  BEO   CUSIP: 3140J9LA7

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 88,674.98 | 108.6413390 | 258.63 | 96,337.69 | 87,469.56 | 8,868.13 | 0.00 | 8,868.13 |

Issue Date:  1 Oct 18  Rate: 3.5%  Yield to Maturity: 1.149% Maturity Date:  1 Nov 44

FNMA POOL #BM4853 4% 03-01-2046  BEO   CUSIP: 3140J9MB4

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 30,741.19 | 109.9071790 | 102.47 | 33,786.77 | 30,904.51 | 2,882.26 | 0.00 | 2,882.26 |

Issue Date:  1 Nov 18  Rate: 4%  Yield to Maturity: 1.634% Maturity Date:  1 Mar 46

FNMA POOL #BM4854 4.5% 08-01-2044  BEO   CUSIP: 3140J9MC2

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 229,235.80 | 112.1723280 | 859.63 | 257,139.13 | 236,972.50 | 20,166.63 | 0.00 | 20,166.63 |

Issue Date:  1 Nov 18  Rate: 4.5%  Yield to Maturity: 1.923% Maturity Date:  1 Aug 44

FNMA POOL #BM4910 4.5% 12-01-2043  BEO   CUSIP: 3140J9N49

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 73,986.66 | 112.0854170 | 277.44 | 82,928.26 | 76,677.33 | 6,250.93 | 0.00 | 6,250.93 |

Issue Date:  1 Nov 18  Rate: 4.5%  Yield to Maturity: 1.875% Maturity Date:  1 Dec 43

FNMA POOL #BM4911 5% 09-01-2041  BEO   CUSIP: 3140J9N56

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 27,706.18 | 116.0968770 | 115.44 | 32,166.01 | 29,212.72 | 2,953.29 | 0.00 | 2,953.29 |

Issue Date:  1 Nov 18  Rate: 5%  Yield to Maturity: 1.775% Maturity Date:  1 Sep 41

## Northern Trust

# *Portfolio Statement*

**31 DEC 2020**

◆ ## Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Fixed Income*

**Government mortgage backed securities**

FNMA POOL #BM4912 6% 07-01-2039  BEO  CUSIP: 3140J9N64

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 26,077.73 | 120.1137530 | 130.38 | 31,322.94 | 28,302.47 | 3,020.47 | 0.00 | 3,020.47 |

Issue Date:  1 Nov 18  Rate: 6% Yield to Maturity: 1.361% Maturity Date:  1 Jul 39

FNMA POOL #BO4609 3.0% DUE 11-01-2049    REG  CUSIP: 3140K0DP0

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 79,074.87 | 106.6002610 | 197.68 | 84,294.02 | 81,280.33 | 3,013.69 | 0.00 | 3,013.69 |

Issue Date:  1 Nov 19  Rate: 3% Yield to Maturity: 0.983% Maturity Date:  1 Nov 49

FNMA POOL #CA5424 3% 03-01-2050    CUSIP: 3140QDA20

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 149,189.57 | 104.9653560 | 372.97 | 156,597.36 | 157,033.68 | - 436.32 | 0.00 | - 436.32 |

Issue Date:  1 Feb 20  Rate: 3% Yield to Maturity: 1.376% Maturity Date:  1 Mar 50

FNMA POOL #FM3126 3% 04-01-2050  BEO  CUSIP: 3140X6PL9

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 265,979.49 | 105.0194080 | 664.94 | 279,330.09 | 281,107.07 | - 1,776.98 | 0.00 | - 1,776.98 |

Issue Date:  1 Apr 20  Rate: 3% Yield to Maturity: 1.353% Maturity Date:  1 Apr 50

FNMA POOL #FM3747 2.5% 08-01-2050  BEO  CUSIP: 3140X7EV7

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 81,784.13 | 105.7856750 | 170.37 | 86,515.89 | 86,400.47 | 115.42 | 0.00 | 115.42 |

Issue Date:  1 Jul 20  Rate: 2.5% Yield to Maturity: 0.715% Maturity Date:  1 Aug 50

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*

**31 DEC 2020**

## ◆ Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Fixed Income*

### Government mortgage backed securities

FNMA POOL #FM3963 2.5% 08-01-2050  BEO   CUSIP: 3140X7MM8

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 801,630.53 | 105.8575060 | 1,670.06 | 848,586.09 | 848,726.32 | - 140.23 | 0.00 | - 140.23 |

Issue Date:  1 Aug 20  Rate: 2.5%  Yield to Maturity: 0.912% Maturity Date:  1 Aug 50

FNMA POOL #FM4523 2% 10-01-2050  BEO   CUSIP: 3140X8AZ0

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 109,552.64 | 104.3235860 | 182.58 | 114,289.24 | 113,652.30 | 636.94 | 0.00 | 636.94 |

Issue Date:  1 Oct 20  Rate: 2%  Yield to Maturity: 0.968% Maturity Date:  1 Oct 50

FNMA POOL #FM4959 2% 12-01-2050  BEO   CUSIP: 3140X8QM2

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 189,717.62 | 103.8884220 | 316.18 | 197,094.65 | 197,306.33 | - 211.68 | 0.00 | - 211.68 |

Issue Date:  1 Nov 20  Rate: 2%  Yield to Maturity: 0.911% Maturity Date:  1 Dec 50

FNMA POOL #FM4966 2.5% 12-01-2050  BEO   CUSIP: 3140X8QU4

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 194,709.39 | 105.8903270 | 405.64 | 206,178.41 | 205,372.77 | 805.64 | 0.00 | 805.64 |

Issue Date:  1 Nov 20  Rate: 2.5%  Yield to Maturity: 0.933% Maturity Date:  1 Dec 50

FNMA POOL #889579 6% DUE 05-01-2038  REG   CUSIP: 31410KJY1

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 9,864.69 | 118.1406450 | 49.32 | 11,654.21 | 9,970.65 | 1,683.56 | 0.00 | 1,683.56 |

Issue Date:  1 May 08  Rate: 6%  Yield to Maturity: 1.88% Maturity Date:  1 May 38

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

## ◆ Asset Detail - Base Currency

Page 138 of 1,860

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss<br>Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Fixed Income*

### Government mortgage backed securities

FNMA POOL #933032 6% DUE 10-01-2037  REG   CUSIP: 31412SA96

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 13,974.04 | 111.0407870 | 69.87 | 15,516.88 | 13,912.88 | 1,604.00 | 0.00 | 1,604.00 |

Issue Date:  1 Oct 07  Rate: 6% Yield to Maturity: 3.341% Maturity Date:  1 Oct 37

FNMA POOL BN5890 4.0%          02-01-2049     CUSIP: 3140JNRL6

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 77,930.90 | 107.7052810 | 259.76 | 83,935.69 | 79,757.41 | 4,178.28 | 0.00 | 4,178.28 |

Issue Date:  1 Feb 19  Rate: 4% Yield to Maturity: 1.853% Maturity Date:  1 Feb 49

FNMA POOL# CA2937  4.0%  01-01-2049     CUSIP: 3140QAHP8

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 91,121.65 | 108.6316650 | 303.73 | 98,986.97 | 93,812.60 | 5,174.37 | 0.00 | 5,174.37 |

Issue Date:  1 Dec 18  Rate: 4% Yield to Maturity: 1.721% Maturity Date:  1 Jan 49

FNMA REMIC            SER-20-10  CL-DA  3.5% DUE 12-31-2049  BEO CUSIP: 3136B9BV8

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 660,766.23 | 110.2309600 | 1,927.22 | 728,368.96 | 702,270.61 | 26,098.35 | 0.00 | 26,098.35 |

Issue Date:  1 Feb 20  Rate: 3.5% Yield to Maturity: 0.449% Maturity Date: 25 Mar 60

FNMA SER 19-13  CLS PE 3.0%          03-25-2049     CUSIP: 3136B4GU6

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 171,125.01 | 106.7309600 | 427.81 | 182,643.37 | 170,062.17 | 12,581.20 | 0.00 | 12,581.20 |

Issue Date:  1 Mar 19  Rate: 3% Yield to Maturity: 1.259% Maturity Date: 25 Mar 49

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

## *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

◆ ## Asset Detail - Base Currency

Page 139 of 1,860

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Fixed Income*

#### Government mortgage backed securities

FNMA SR 2018-3  CL PA TRANCHE 00417  04-25-2046      CUSIP: 3136B0TJ5

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 177,757.74 | 103.5856000 | 444.39 | 184,131.42 | 174,992.16 | 9,139.26 | 0.00 | 9,139.26 |

Issue Date:  1 Jan 18  Rate: 3% Yield to Maturity: 1.355% Maturity Date: 25 Apr 46

FNMA 2.5% 08-01-2035    CUSIP: 3140QES52

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 213,554.87 | 104.3042870 | 444.90 | 222,746.88 | 225,233.65 | - 2,486.77 | 0.00 | - 2,486.77 |

Issue Date:  1 Aug 20  Rate: 2.5% Yield to Maturity: 1.052% Maturity Date:  1 Aug 35

FNMA 3.5% 03-25-2050    CUSIP: 3136B9AX5

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 329,416.77 | 104.8002700 | 960.79 | 345,229.67 | 346,299.38 | - 1,069.71 | 0.00 | - 1,069.71 |

Issue Date:  1 Feb 20  Rate: 3.5% Yield to Maturity: 1.86% Maturity Date: 25 Mar 50

FREDDIE MAC SER 4877 CL BE 3.5% 12-31-2040      CUSIP: 3137FLXB5

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 258,916.56 | 105.4273100 | 755.17 | 272,968.76 | 265,477.98 | 7,490.78 | 0.00 | 7,490.78 |

Issue Date:  1 Apr 19  Rate: 3.5% Yield to Maturity: 1.719% Maturity Date: 15 Nov 48

FREDDIE MAC 2.0% 01/11/2050 2%          11-01-2050    CUSIP: 3133ABWF3

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 184,598.63 | 103.8884220 | 307.66 | 191,776.60 | 191,492.24 | 284.36 | 0.00 | 284.36 |

Issue Date:  1 Oct 20  Rate: 2% Yield to Maturity: 1.129% Maturity Date:  1 Nov 50

**Northern Trust**

# *Portfolio Statement*

**31 DEC 2020**

◆ ## Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Market | Translation | Total |
|---|---|---|---|---|---|---|---|
| | | | | | | Unrealized gain/loss | |

## *Fixed Income*

### Government mortgage backed securities

FREDDIE MAC 2.0% 08/01/2050 2%        08-01-2050    CUSIP: 3133KJVV1

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 107,337.89 | 103.8884220 | 178.89 | 111,511.64 | 112,017.14 | - 505.50 | 0.00 | - 505.50 |

Issue Date:  1 Jul 20  Rate: 2% Yield to Maturity: 1.05% Maturity Date:  1 Aug 50

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total USD | | 36,298.91 | 14,754,571.18 | 14,173,024.12 | 581,547.06 | 0.00 | 581,547.06 |
| Total United States | | 36,298.91 | 14,754,571.18 | 14,173,024.12 | 581,547.06 | 0.00 | 581,547.06 |

**Total Government Mortgage Backed Securities**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **13,765,146.28** | | **36,298.91** | **14,754,571.18** | **14,173,024.12** | **581,547.06** | **0.00** | **581,547.06** |

### Commercial mortgage-backed

**United States -  USD**

BENCHMARK 2019-B12  3.1156% DUE        08-15-2052    CUSIP: 08162FAE3

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 269,000.00 | 112.7980900 | 698.41 | 303,426.86 | 277,069.25 | 26,357.61 | 0.00 | 26,357.61 |

Issue Date:  1 Aug 19  Rate: 3.1156% Yield to Maturity: 1.49% Maturity Date: 15 Aug 52

BENCHMARK 2020-B19  1.691% DUE 09-15-2053    CUSIP: 08162WAZ9

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 585,000.00 | 103.1907600 | 824.35 | 603,665.94 | 602,526.31 | 1,139.63 | 0.00 | 1,139.63 |

Issue Date:  1 Sep 20  Rate: 1.691% Yield to Maturity: 0.961% Maturity Date: 15 Sep 53

# Northern Trust

# *Portfolio Statement*

**31 DEC 2020**

## ◆ Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Fixed Income*

#### Commercial mortgage-backed

CMO BENCHMARK 2019-B12  MTG TR SER 2019-B12  CL A4 2.8589% FIXED 08-15-2052  REG   CUSIP: 08162FAD5

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 260,000.00 | 109.9419300 | 619.42 | 285,849.02 | 262,598.99 | 23,250.03 | 0.00 | 23,250.03 |

Issue Date:  1 Aug 19  Rate: 2.8589% Yield to Maturity: 1.568% Maturity Date: 15 Aug 52

CMO CSAIL 2015-C3  COML MTG TR SER 15-C3  CL A4 3.7182% DUE 08-15-2048  REG   CUSIP: 12635FAT1

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 160,000.00 | 111.2718700 | 495.76 | 178,034.99 | 174,669.14 | 3,365.85 | 0.00 | 3,365.85 |

Issue Date:  1 Aug 15  Rate: 3.7182% Yield to Maturity: 1.101% Maturity Date: 15 Aug 48

CMO GS MORTGAGE SECURITIES TRUST SR 19-GC40  CL A4 3.16% 07-10-2052    CUSIP: 36257HBP0

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 518,000.00 | 113.1320600 | 1,364.05 | 586,024.07 | 533,518.76 | 52,505.31 | 0.00 | 52,505.31 |

Issue Date:  1 Jul 19  Rate: 3.16% Yield to Maturity: 1.483% Maturity Date: 10 Jul 52

CMO GS MTG SECS SR 2019-GC42  CL A-4  2.741% 09-01-2052    CUSIP: 36257UAL1

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 305,000.00 | 111.6679000 | 762.61 | 340,587.10 | 314,147.56 | 26,439.54 | 0.00 | 26,439.54 |

Issue Date:  1 Sep 19  Rate: 3.0005% Yield to Maturity: 1.543% Maturity Date: 1 Sep 52

CMO J P MORGAN CHASE COML MTG SECS TR   2013-C16  CL A-4  4.1664% 12-15-2046    CUSIP: 46641BAD5

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 215,000.00 | 108.6033100 | 746.48 | 233,497.12 | 228,142.97 | 5,354.15 | 0.00 | 5,354.15 |

Issue Date:  1 Nov 13  Rate: 4.1664% Yield to Maturity: 0.923% Maturity Date: 15 Dec 46

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

## *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

◆ ## Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Fixed Income*

**Commercial mortgage-backed**

COML MTG BANK 2019-BNK21  0.000293% DUE 10-01-2052  REG   CUSIP: 06540BBD0

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 755,000.00 | 110.7054500 | 1,793.74 | 835,826.15 | 777,631.12 | 58,195.03 | 0.00 | 58,195.03 |

Issue Date:  1 Oct 19  Rate: 2.851% Yield to Maturity: 1.519% Maturity Date: 17 Oct 52

COMM 2014-CCRE20  CL A-3  3.326%3.326% DUE 11-10-2047    REG   CUSIP: 12592LBH4

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 855,000.00 | 106.6692400 | 2,369.76 | 912,022.00 | 908,871.68 | 3,150.32 | 0.00 | 3,150.32 |

Issue Date:  1 Oct 14  Rate: 3.32599% Yield to Maturity: 1.36% Maturity Date: 10 Nov 47

FREMF 2014-K38  MTG 4.4827% DUE          10-25-2023   CUSIP: 30292CAJ6

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 110,000.00 | 109.6009600 | 386.96 | 120,561.06 | 120,295.31 | 265.75 | 0.00 | 265.75 |

Issue Date:  1 Jun 14  Rate: 4.22148% Yield to Maturity: 1.212% Maturity Date: 25 Jun 47

GB TR 2020-FLIX  FLTG RT 1.2465% DUE          08-15-2037   CUSIP: 368306AA4

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 705,000.00 | 100.1360300 | 425.66 | 705,959.02 | 705,000.00 | 959.02 | 0.00 | 959.02 |

Issue Date: 17 Aug 20  Rate: 1.27863% Yield to Maturity: 1.192% Maturity Date: 15 Aug 37

MORGAN STANLEY BK AMER MERRILL LYNCH TR SER 2015-C23  CL A-3  3.451% 07-15-2050    CUSIP: 61690QAD1

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 116,728.40 | 108.8766600 | 335.69 | 127,089.98 | 124,552.85 | 2,537.13 | 0.00 | 2,537.13 |

Issue Date:  1 Jun 15  Rate: 3.451% Yield to Maturity: 1.265% Maturity Date: 15 Jul 50

## Northern Trust

# *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

## ◆ Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Fixed Income*

**Commercial mortgage-backed**

MORGAN STANLEY CAP 3.809% DUE 12-15-2048     CUSIP: 61691ABL6

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 240,000.00 | 111.8696200 | 761.80 | 268,487.09 | 265,612.50 | 2,874.59 | 0.00 | 2,874.59 |

Issue Date: 1 Dec 15  Rate: 3.809% Yield to Maturity: 1.261% Maturity Date: 15 Dec 48

PVTPL CMO BX TR 2018-BILT  COML MTG PASSTHRU CTF CL A FLTG RT 05-15-2030     CUSIP: 05606JAA3

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 410,000.00 | 97.9936600 | 185.67 | 401,774.01 | 383,448.44 | 18,325.57 | 0.00 | 18,325.57 |

Issue Date: 24 May 18  Rate: 0.959% Yield to Maturity: 1.481% Maturity Date: 15 May 30

PVTPL CMO BX TRUST SR 19-OC11  CL B  3.605%  12-09-2041     CUSIP: 05606FAG8

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 230,000.00 | 109.8020300 | 690.95 | 252,544.67 | 236,893.15 | 15,651.52 | 0.00 | 15,651.52 |

Issue Date: 1 Dec 19  Rate: 3.605% Yield to Maturity: 2.375% Maturity Date: 9 Dec 41

PVTPL CMO BX TRUST SR 19-0C11  CL C 3.856%  12-09-2041     CUSIP: 05606FAJ2

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 635,000.00 | 106.0585200 | 2,040.46 | 673,471.60 | 654,007.96 | 19,463.64 | 0.00 | 19,463.64 |

Issue Date: 1 Dec 19  Rate: 3.856% Yield to Maturity: 3.068% Maturity Date: 9 Dec 41

PVTPL CMO FREMF 2013-K27 MTG TR MULTI  MTG PASSTHRU CL B 3.6164 DUE 01-25-2046  CUSIP: 30291GAN9

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 105,000.00 | 104.9537800 | 305.86 | 110,201.47 | 110,176.17 | 25.30 | 0.00 | 25.30 |

Issue Date: 1 May 13  Rate: 3.49563% Yield to Maturity: 0.997% Maturity Date: 25 Jan 46

# Northern Trust

## *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

◆ Asset Detail - Base Currency

Page 144 of 1,860

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Fixed Income*

**Commercial mortgage-backed**

PVTPL CMO FREMF 2013-K35  MTG TR MLTIFAM MTG PASSTHRU CTF 144A CL B VAR 8-25-23    CUSIP: 30291VAE6

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 615,000.00 | 107.8137200 | 2,016.59 | 663,054.38 | 647,133.22 | 15,921.16 | 0.00 | 15,921.16 |

Issue Date:  1 Dec 13  Rate: 3.93483% Yield to Maturity: 0.923% Maturity Date: 25 Dec 46

PVTPL CMO FREMF 2014-K41  MTG TR FLTG    DUE 11-25-2047  BEO   CUSIP: 30287EAE0

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 355,000.00 | 109.7579500 | 1,171.65 | 389,640.72 | 378,342.37 | 11,298.35 | 0.00 | 11,298.35 |

Issue Date:  1 Dec 14  Rate: 3.96054% Yield to Maturity: 1.205% Maturity Date: 25 Nov 47

PVTPL CMO GS MTG SECS CORP SER 2019-B0CA  FLTG 144A 06-15-2038    CUSIP: 36256QAA5

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 715,000.00 | 99.2472900 | 458.84 | 709,618.13 | 715,000.00 | - 5,381.87 | 0.00 | - 5,381.87 |

Issue Date: 26 Jun 19  Rate: 1.359% Yield to Maturity: 3.006% Maturity Date: 15 Jun 38

PVTPL CMO HAWAII HOTEL SER 2019-MAUI  CL A FLTG 144A 05-15-2038    CUSIP: 41975AAA0

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 310,000.00 | 99.1222200 | 191.56 | 307,278.88 | 307,841.59 | - 562.71 | 0.00 | - 562.71 |

Issue Date: 24 May 19  Rate: 1.30863% Yield to Maturity: 1.57% Maturity Date: 15 May 38

PVTPL CMO HUDSON YDS 2019-30Y  MTG TR    3.228% DUE 06-10-2037  BEO   CUSIP: 44421GAA1

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 375,000.00 | 113.0922300 | 1,008.75 | 424,095.87 | 386,220.54 | 37,875.33 | 0.00 | 37,875.33 |

Issue Date:  1 Jul 19  Rate: 3.228% Yield to Maturity: 1.575% Maturity Date: 10 Jul 39

**Northern Trust**

*Generated by Northern Trust from periodic data on 22 Jan 21*

## *Portfolio Statement*

**31 DEC 2020**

◆ ## Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Fixed Income*

**Commercial mortgage-backed**

PVTPL CMO J P MORGAN MTG TR 2019-LTV1  CL A-4  VAR RT 06-25-2049    CUSIP: 46650PAD2

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 6,372.09 | 99.9386100 | 21.24 | 6,368.18 | 6,434.82 | - 66.64 | 0.00 | - 66.64 |

Issue Date:  1 Feb 19  Rate: 4% Yield to Maturity: 3.453% Maturity Date: 25 Jun 49

PVTPL CMO MANHATTAN WEST 2020-1MW  MTG TRSR 20-0MW  CL A 2.13% 09-10-2040    CUSIP: 563136AA8

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 695,000.00 | 104.9738300 | 1,233.62 | 729,568.12 | 715,810.84 | 13,757.28 | 0.00 | 13,757.28 |

Issue Date:  1 Aug 20  Rate: 2.13% Yield to Maturity: 1.343% Maturity Date: 10 Sep 39

PVTPL CMO ONE BRYANT PK TR SER 2019-0BP  CL A 2.51641% DUE 09-13-2049    CUSIP: 68236JAA9

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 675,000.00 | 106.9109100 | 1,415.47 | 721,648.65 | 675,000.00 | 46,648.65 | 0.00 | 46,648.65 |

Issue Date: 21 Aug 19  Rate: 2.51641% Yield to Maturity: 1.651% Maturity Date: 15 Sep 54

PVTPL CMO WELLS FARGO COML MTG SER 18-AUS  CL A FRN 07-17-2036  BEO   CUSIP: 94990EAA2

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 730,000.00 | 109.3090800 | 2,468.79 | 797,956.29 | 740,024.10 | 57,932.19 | 0.00 | 57,932.19 |

Issue Date:  1 Jul 18  Rate: 4.0583% Yield to Maturity: 2.712% Maturity Date: 17 Aug 36

PVTPL FREMF 2016-K54  MTG TR MULTIFAMILY MTG 144A CL B VAR 04-25-2048    CUSIP: 30288RAE0

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 185,000.00 | 110.8051000 | 624.46 | 204,989.44 | 185,000.00 | 19,989.44 | 0.00 | 19,989.44 |

Issue Date:  1 Apr 16  Rate: 4.05061% Yield to Maturity: 1.831% Maturity Date: 25 Apr 48

**Northern Trust**

# *Portfolio Statement*

31 DEC 2020

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

◆ Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

## *Fixed Income*

### Commercial mortgage-backed

PVTPL J P MORGAN CHASE SER 2018-A0N  CL A 4.1283% 07-05-2031    CUSIP: 46649XAA5

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 485,000.00 | 106.8950500 | 1,668.51 | 518,440.99 | 502,639.16 | 15,801.83 | 0.00 | 15,801.83 |

Issue Date:  1 Jun 18  Rate: 4.1283% Yield to Maturity: 1.315% Maturity Date:  5 Jul 31

WELLS FARGO COML FLTG RT 3.7487% DUE    06-15-2036    CUSIP: 94990DAA4

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 700,000.00 | 110.6648200 | 2,186.73 | 774,653.74 | 698,105.10 | 76,548.64 | 0.00 | 76,548.64 |

Issue Date:  1 Jul 18  Rate: 3.7487% Yield to Maturity: 2.227% Maturity Date: 15 Jun 36

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total USD | | 29,273.84 | 13,186,335.54 | 12,636,713.90 | 549,621.64 | 0.00 | 549,621.64 |
| Total United States | | 29,273.84 | 13,186,335.54 | 12,636,713.90 | 549,621.64 | 0.00 | 549,621.64 |
| **Total Commercial Mortgage-Backed** | | | | | | | |
| **12,320,100.49** | | **29,273.84** | **13,186,335.54** | **12,636,713.90** | **549,621.64** | **0.00** | **549,621.64** |

### Asset backed securities

#### United States -  USD

CAP 1 MULTI-ASSET  2.06% DUE 08-15-2028    CUSIP: 14041NFV8

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 285,000.00 | 106.9363600 | 260.93 | 304,768.63 | 284,924.22 | 19,844.41 | 0.00 | 19,844.41 |

Issue Date:  5 Sep 19  Rate: 2.06% Yield to Maturity: 0.797% Maturity Date: 15 Aug 28

# Northern Trust

## *Portfolio Statement*

**31 DEC 2020**

◆ Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Fixed Income*

**Asset backed securities**

CARMAX AUTO OWNER .77% DUE 03-16-2026    CUSIP: 14315FAE7

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 365,000.00 | 100.8366900 | 124.91 | 368,053.92 | 364,873.56 | 3,180.36 | 0.00 | 3,180.36 |

Issue Date: 22 Jul 20  Rate: 0.77% Yield to Maturity: 0.459% Maturity Date: 16 Mar 26

FORD CR FLOORPLAN MASTER OWNER TR SER 18-4  CL A 4.06% 11-15-2030  REG    CUSIP: 34528PAK2

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 450,000.00 | 117.8460900 | 811.99 | 530,307.41 | 454,162.47 | 76,144.94 | 0.00 | 76,144.94 |

Issue Date: 21 Dec 18  Rate: 4.06% Yield to Maturity: -0.37%  Maturity Date: 15 Nov 30

FORD CR FLOORPLAN 2.44% DUE 09-15-2026    CUSIP: 34528QHF4

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 195,000.00 | 106.8212000 | 211.45 | 208,301.34 | 179,339.07 | 28,962.27 | 0.00 | 28,962.27 |

Issue Date: 20 Sep 19  Rate: 2.44% Yield to Maturity: -1.03%  Maturity Date: 15 Sep 26

GM FINL CNSMR 1.49% DUE 12-16-2024    CUSIP: 36258VAD6

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 180,000.00 | 101.8309400 | 111.74 | 183,295.69 | 179,989.97 | 3,305.72 | 0.00 | 3,305.72 |

Issue Date: 22 Apr 20  Rate: 1.49% Yield to Maturity: 0.228% Maturity Date: 16 Dec 24

GMF FLOORPLAN 2.9% DUE 04-15-2026    CUSIP: 361886CD4

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 720,000.00 | 107.7775500 | 927.99 | 775,998.36 | 716,400.00 | 59,598.36 | 0.00 | 59,598.36 |

Issue Date: 22 May 19  Rate: 2.9% Yield to Maturity: 1.37% Maturity Date: 15 Apr 26

**Northern Trust**

# *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

◆ ## Asset Detail - Base Currency

Page 148 of 1,860

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

## *Fixed Income*

### Asset backed securities

NEW RESDNTL AP ADVANCE RECEIVABLES    1.0347% 12-16-2052    CUSIP: 64831JAA7

| 360,000.00 | 99.9952100 | 82.76 | 359,982.76 | 359,999.57 | - 16.81 | 0.00 | - 16.81 |

Issue Date: 23 Dec 20  Rate: 1.0347% Maturity Date: 16 Dec 52

PFS FING CORP 2020-E  PREM FIN AST BACKED1% 10-15-2025    CUSIP: 69335PDT9

| 475,000.00 | 100.7171600 | 211.10 | 478,406.51 | 475,291.85 | 3,114.66 | 0.00 | 3,114.66 |

Issue Date: 12 Aug 20  Rate: 1% Yield to Maturity: 0.846% Maturity Date: 15 Oct 25

PVTPL AVIS BUDGET RENT CAR FDG AESOP LLC    SER 18-2A  CLS A 4.0% 03-20-2025    CUSIP: 05377RDC5

| 270,000.00 | 108.3501500 | 1,229.99 | 292,545.41 | 288,794.53 | 3,750.88 | 0.00 | 3,750.88 |

Issue Date: 25 Oct 18  Rate: 4% Yield to Maturity: 1.174% Maturity Date: 20 Mar 25

PVTPL AVIS BUDGET RENT CAR FDG AESOP LLC SSR 19-3A  CL A 0.0% 03-20-2026    CUSIP: 05377RDQ4

| 680,000.00 | 104.2589900 | 490.35 | 708,961.13 | 687,942.19 | 21,018.94 | 0.00 | 21,018.94 |

Issue Date: 27 Aug 19  Rate: 2.36% Yield to Maturity: 1.269% Maturity Date: 20 Mar 26

PVTPL AVIS BUDGET RENT CAR FDG SER 19-2A  CL A 3.35%  09-22-2025    CUSIP: 05377RDL5

| 175,000.00 | 106.7716000 | 179.13 | 186,850.30 | 184,823.24 | 2,027.06 | 0.00 | 2,027.06 |

Issue Date: 23 Apr 19  Rate: 3.35% Yield to Maturity: 1.372% Maturity Date: 22 Sep 25

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*

**31 DEC 2020**

◆ Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss |||
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

## *Fixed Income*

### Asset backed securities

PVTPL CF HIPPOLYTA ISSUER LLC SER 20-1  CL A1  1.69% DUE 07-15-2060  BEO   CUSIP: 12530MAA3

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 606,030.57 | 101.8615100 | 455.19 | 617,311.89 | 608,056.35 | 9,255.54 | 0.00 | 9,255.54 |

Issue Date: 23 Jul 20  Rate: 1.69% Yield to Maturity: 1.267% Maturity Date: 15 Jul 60

PVTPL CF HIPPOLYTA ISSUER LLC SER 2020-1CL  A2 199.0% 07-15-2060    CUSIP: 12530MAB1

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 142,555.73 | 101.2768100 | 126.08 | 144,375.90 | 142,489.16 | 1,886.74 | 0.00 | 1,886.74 |

Issue Date: 23 Jul 20  Rate: 1.99% Yield to Maturity: 1.777% Maturity Date: 15 Jul 60

PVTPL FORD CR AUTO OWNER TR SRS 20-2   CL A1.06% DUE 04-15-2033    CUSIP: 34532JAA2

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 300,000.00 | 100.9588800 | 141.33 | 302,876.64 | 299,902.89 | 2,973.75 | 0.00 | 2,973.75 |

Issue Date:  9 Oct 20  Rate: 1.06% Yield to Maturity: 0.956% Maturity Date: 15 Apr 33

PVTPL FORD CR AUTO OWNER TR 2020-REV1   SER 20-1  CLS A 2.04% 08-15-2031    CUSIP: 34531NAA4

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 460,000.00 | 105.4186000 | 417.06 | 484,925.56 | 460,010.95 | 24,914.61 | 0.00 | 24,914.61 |

Issue Date: 14 Feb 20  Rate: 2.04% Yield to Maturity: 0.989% Maturity Date: 15 Aug 31

PVTPL GREATAMERICA LEASING RECEIVABLES FDG L LSER 20-1  CL A4 1.85% 02-16-2026    CUSIP: 39154TBD9

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1,100,000.00 | 103.4519300 | 904.43 | 1,137,971.23 | 1,097,835.49 | 40,135.74 | 0.00 | 40,135.74 |

Issue Date: 12 Feb 20  Rate: 1.85% Yield to Maturity: 0.531% Maturity Date: 16 Feb 26

**Northern Trust**

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*

**31 DEC 2020**

◆ Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss |  |  |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  | Market | Translation | Total |

## *Fixed Income*

### Asset backed securities

PVTPL HILTON GRAND VACATIONS TR 2019-A   TIMESHARE LN BACKED NT CL 07-25-2033    CUSIP: 43284HAA7

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 463,455.44 | 103.5291300 | 180.74 | 479,811.38 | 460,099.10 | 19,712.28 | 0.00 | 19,712.28 |

Issue Date: 13 Aug 19   Rate: 2.34% Yield to Maturity: 1.013% Maturity Date: 25 Jul 33

PVTPL MMAF EQUIP FIN LLC 2020-A   SR 20-A   CL A3 0.97%   04-09-2027    CUSIP: 60700MAC2

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 345,000.00 | 100.9704400 | 204.50 | 348,348.02 | 344,986.41 | 3,361.61 | 0.00 | 3,361.61 |

Issue Date: 17 Jun 20   Rate: 0.97% Yield to Maturity: 0.698% Maturity Date: 9 Apr 27

PVTPL MVW OWNER TRUST SER 19-2A   CL A 144A 2.22% DUE 10-20-2038   BEO   CUSIP: 55400DAA9

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 193,855.79 | 102.8617200 | 131.49 | 199,403.40 | 193,783.67 | 5,619.73 | 0.00 | 5,619.73 |

Issue Date: 10 Oct 19   Rate: 2.22% Yield to Maturity: 1.34% Maturity Date: 20 Oct 38

PVTPL NAVIENT PRIVATE ED REFI LN TR    2020-DA   CL A 1.69% DUE 05-15-2069    CUSIP: 63941HAA0

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 123,386.33 | 101.8942000 | 92.67 | 125,723.51 | 123,373.18 | 2,350.33 | 0.00 | 2,350.33 |

Issue Date: 11 Jun 20   Rate: 1.69% Yield to Maturity: 1.039% Maturity Date: 15 May 69

PVTPL PFS FING CORP SER 20-G   CL A .97%   02-15-2026    CUSIP: 69335PDX0

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 455,000.00 | 100.5251700 | 196.14 | 457,389.52 | 454,940.35 | 2,449.17 | 0.00 | 2,449.17 |

Issue Date: 21 Oct 20   Rate: 0.97% Yield to Maturity: 0.864% Maturity Date: 15 Feb 26

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

## Portfolio Statement

31 DEC 2020

◆ ## Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Fixed Income*

### Asset backed securities

PVTPL SANTANDER 2 SER 19-A  CLS A 2.51%  DUE 01-26-2032  BEO   CUSIP: 80286JAA3

| 315,000.00 | 106.3088300 | 109.80 | 334,872.81 | 314,958.51 | 19,914.30 | 0.00 | 19,914.30 |

Issue Date: 26 Nov 19  Rate: 2.51% Yield to Maturity: 0.932% Maturity Date: 26 Jan 32

PVTPL SIERRA TIMESHARE 2019-3  RECEIVABLES FDG SER 19-3A  CLS A 2.34% 07-15-2038   CUSIP: 82652NAA6

| 243,312.63 | 102.3529900 | 173.96 | 249,037.75 | 243,070.19 | 5,967.56 | 0.00 | 5,967.56 |

Issue Date: 23 Oct 19  Rate: 2.34% Yield to Maturity: 1.639% Maturity Date: 20 Aug 36

SIERRA TIMESHARE 2020-2  RECEIVABLES     VACATION TIMESHARE LN 1.33% 07-20-2037   CUSIP: 826525AA5

| 337,620.98 | 100.4669100 | 137.20 | 339,197.36 | 337,554.96 | 1,642.40 | 0.00 | 1,642.40 |

Issue Date: 13 Aug 20  Rate: 1.33% Yield to Maturity: 1.202% Maturity Date: 20 Jul 37

WORLD FINL NETWORK CR CARD SER 19-B  CL A 2.49% 04-15-2026  REG   CUSIP: 981464HC7

| 190,000.00 | 103.0549700 | 210.26 | 195,804.44 | 195,373.44 | 431.00 | 0.00 | 431.00 |

Issue Date: 26 Jun 19  Rate: 2.49% Yield to Maturity: 0.384% Maturity Date: 15 Apr 26

WORLD FINL NETWORK 2.21% DUE 07-15-2026    CUSIP: 981464HF0

| 890,000.00 | 103.0907600 | 874.16 | 917,507.77 | 893,017.98 | 24,489.79 | 0.00 | 24,489.79 |

Issue Date: 18 Sep 19  Rate: 2.21% Yield to Maturity: 0.391% Maturity Date: 15 Jul 26

| Total USD | | 8,997.35 | 10,732,028.64 | 10,345,993.30 | 386,035.34 | 0.00 | 386,035.34 |

## Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# *Portfolio Statement*

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

## ◆ Asset Detail - Base Currency

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

### *Fixed Income*

**Asset backed securities**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total United States | | 8,997.35 | 10,732,028.64 | 10,345,993.30 | 386,035.34 | 0.00 | 386,035.34 |
| | | | | | | | |
| **Total Asset Backed Securities** | | | | | | | |
| **10,320,217.47** | | **8,997.35** | **10,732,028.64** | **10,345,993.30** | **386,035.34** | **0.00** | **386,035.34** |

**Non-government backed c.m.o.s**

**United States -  USD**

CMO FHLMC CMO FHLMC DUE 10-25-2027  BEO  15-DNA1-  M3 DUE 10-25-2027  BEO   CUSIP: 3137G0EW5

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 501,447.04 | 102.5520000 | 192.10 | 514,243.97 | 506,525.87 | 7,718.10 | 0.00 | 7,718.10 |

Issue Date: 28 Apr 15  Rate: 3.448% Yield to Maturity: 3.077% Maturity Date: 25 Oct 27

CMO J P MORGAN MTG TR 2014-5  MTG       PASSTHRU CTF CL A-1  144A  10-25-2029    CUSIP: 46643KAA9

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 125,622.94 | 102.8459300 | 307.49 | 129,198.08 | 127,722.89 | 1,475.19 | 0.00 | 1,475.19 |

Issue Date: 1 Oct 14  Rate: 2.93727% Yield to Maturity: 1.553% Maturity Date: 25 Oct 29

CONNECTICUT AVENUE SECURITIES SERIES      SER 2016-C05  CL 2M-2  FLTG 01-25-29     CUSIP: 30711XDK7

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 446,891.79 | 104.1279300 | 228.31 | 465,339.17 | 458,080.83 | 7,258.34 | 0.00 | 7,258.34 |

Issue Date: 10 Aug 16  Rate: 4.598% Yield to Maturity: 2.072% Maturity Date: 25 Jan 29

# Northern Trust

# *Portfolio Statement*

31 DEC 2020

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

## ◆ Asset Detail - Base Currency

Page 153 of 1,860

| Description/Asset ID<br>Investment Mgr ID<br>Shares/PAR value | Exchange rate/<br>Local market price | Accrued<br>income/expense | Market value | Cost | Unrealized gain/loss |  |  |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  | Market | Translation | Total |

### *Fixed Income*

#### Non-government backed c.m.o.s

PVTPL CMO CHASE HOME LENDING SER 19-ATR2 CLS A3 VAR RT  07-25-2049    CUSIP: 16159GAC3

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 25,976.57 | 102.7226000 | 75.76 | 26,683.81 | 26,268.79 | 415.02 | 0.00 | 415.02 |

Issue Date:  1 Jul 19  Rate: 3.5% Yield to Maturity: 2.762% Maturity Date: 25 Jul 49

PVTPL CMO J P MORGAN MTG TR SER 19-3  CLS A3 VAR RT 09-25-2049    CUSIP: 46650QAC2

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 39,437.23 | 103.0278200 | 131.45 | 40,631.32 | 39,899.38 | 731.94 | 0.00 | 731.94 |

Issue Date:  1 Apr 19  Rate: 4% Yield to Maturity: 3.08% Maturity Date: 25 Sep 49

PVTPL CMO J P MORGAN MTG TR VAR RT SER 19-5  CL A4 11-25-2049  BEO  CUSIP: 46591FAD6

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 10,611.27 | 100.2155800 | 35.37 | 10,634.15 | 10,805.26 | - 171.11 | 0.00 | - 171.11 |

Issue Date:  1 Jun 19  Rate: 4% Yield to Maturity: 3.128% Maturity Date: 25 Nov 49

PVTPL CMO MELLO WHSE SECURITIZATION TR  2020-2  NT CL A 144A 11-25-2053    CUSIP: 58551VAA0

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 210,000.00 | 100.0619300 | 83.34 | 210,130.05 | 210,000.00 | 130.05 | 0.00 | 130.05 |

Issue Date: 17 Dec 20  Rate: 0.9525% Yield to Maturity: 0.96% Maturity Date: 25 Nov 53

WELLS FARGO MTG BACKED SECS 2020-2  MTG  PASSTHRU CTF CL A-1  3% 12-25-2049    CUSIP: 95002QAA8

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 282,348.32 | 103.4880600 | 705.87 | 292,196.80 | 291,392.29 | 804.51 | 0.00 | 804.51 |

Issue Date:  1 Jun 20  Rate: 3% Yield to Maturity: 2.23% Maturity Date: 25 Dec 49

| Total USD | | 1,759.69 | 1,689,057.35 | 1,670,695.31 | 18,362.04 | 0.00 | 18,362.04 |
|---|---|---|---|---|---|---|---|

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# Portfolio Statement

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

◆ ## Asset Detail - Base Currency

Page 154 of 1,860

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

## *Fixed Income*

**Non-government backed c.m.o.s**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total United States | | 1,759.69 | 1,689,057.35 | 1,670,695.31 | 18,362.04 | 0.00 | 18,362.04 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Total Non-Government Backed C.M.O.s** | | | | | | | |
| **1,642,335.16** | | **1,759.69** | **1,689,057.35** | **1,670,695.31** | **18,362.04** | **0.00** | **18,362.04** |

**Index linked government bonds**

**United States -  USD**

UNITED STATES OF AMER TREAS NOTES INFL IDX T-BOND  .875% 01-15-2029     CUSIP: 9128285W6

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1,515,000.00 | 121.1732160 | 6,314.99 | 1,835,774.22 | 1,585,398.00 | 250,376.22 | 0.00 | 250,376.22 |

Issue Date: 15 Jan 19  Rate: 0.90222% Yield to Maturity: 0.446% Maturity Date: 15 Jan 29

UNITED STATES TREAS INFL INDEXED NTS 0.75%  07-15-2028     CUSIP: 912828Y38

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1,125,000.00 | 120.6272080 | 4,043.21 | 1,357,056.09 | 1,117,260.99 | 239,795.10 | 0.00 | 239,795.10 |

Issue Date: 15 Jul 18  Rate: 0.7779% Yield to Maturity: 0.337% Maturity Date: 15 Jul 28

US TREASURY INFL INDX 0.125%            01-15-2030    CUSIP: 912828Z37

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 530,000.00 | 112.8839170 | 309.73 | 598,284.76 | 549,289.02 | 48,995.74 | 0.00 | 48,995.74 |

Issue Date: 15 Jan 20  Rate: 0.12649% Yield to Maturity: 0.554% Maturity Date: 15 Jan 30

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total USD | | 10,667.93 | 3,791,115.07 | 3,251,948.01 | 539,167.06 | 0.00 | 539,167.06 |

# Northern Trust

# *Portfolio Statement*

**31 DEC 2020**

◆ ## Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Fixed Income*

**Index linked government bonds**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total United States | | 10,667.93 | 3,791,115.07 | 3,251,948.01 | 539,167.06 | 0.00 | 539,167.06 |
| **Total Index Linked Government Bonds** | | | | | | | |
| **3,170,000.00** | | **10,667.93** | **3,791,115.07** | **3,251,948.01** | **539,167.06** | **0.00** | **539,167.06** |
| **Total Fixed Income** | | | | | | | |
| **169,542,218.69** | | **868,355.34** | **181,508,829.54** | **172,016,665.16** | **9,492,164.38** | **0.00** | **9,492,164.38** |

### *Cash and Cash Equivalents*

**Short term bills and notes**

**United States -  USD**

UNITED STATES TREAS BILLS 02-18-2021    CUSIP: 9127964D8

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 2,090,000.00 | 99.9918750 | 0.00 | 2,089,830.19 | 2,089,676.05 | 154.14 | 0.00 | 154.14 |
| Total USD | | 0.00 | 2,089,830.19 | 2,089,676.05 | 154.14 | 0.00 | 154.14 |
| Total United States | | 0.00 | 2,089,830.19 | 2,089,676.05 | 154.14 | 0.00 | 154.14 |

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

# Portfolio Statement

**31 DEC 2020**

**Account number SELPTA**
**Account Name STATIONARY ENGINEERS L39ALL**

## ◆ Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss Market | Translation | Total |
|---|---|---|---|---|---|---|---|

### *Cash and Cash Equivalents*

**Short term bills and notes**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total Short Term Bills and Notes | | | | | | | |
| **2,090,000.00** | | **0.00** | **2,089,830.19** | **2,089,676.05** | **154.14** | **0.00** | **154.14** |

**Funds - short term investment**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| USD - COLTV SHORT TERM INVT FD   CUSIP: 195998AC3 | 1.0000000 | 4,948.83 | 80,521,776.13 | 80,521,776.13 | 0.00 | 0.00 | 0.00 |
| | | | | | | | |
| Total funds - short term investment - all currencies | | 4,948.83 | 80,521,776.13 | 80,521,776.13 | 0.00 | 0.00 | 0.00 |
| | | | | | | | |
| Total funds - short term investment - all countries | | 4,948.83 | 80,521,776.13 | 80,521,776.13 | 0.00 | 0.00 | 0.00 |
| **Total Funds - Short Term Investment** | | | | | | | |
| **80,521,776.13** | | **4,948.83** | **80,521,776.13** | **80,521,776.13** | **0.00** | **0.00** | **0.00** |
| **Total Cash and Cash Equivalents** | | | | | | | |
| **82,611,776.13** | | **4,948.83** | **82,611,606.32** | **82,611,452.18** | **154.14** | **0.00** | **154.14** |

# Northern Trust

*Portfolio Statement*

**31 DEC 2020**

◆ Asset Detail - Base Currency

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Unrealized gain/loss | | |
|---|---|---|---|---|---|---|---|
| | | | | | Market | Translation | Total |

*Adjustments To Cash*

**Pending trade purchases**

| USD - United States dollar | 1.0000000 | 0.00 | - 4,012,535.72 | - 4,012,535.72 | 0.00 | 0.00 | 0.00 |
|---|---|---|---|---|---|---|---|
| Total pending trade purchases - all currencies | | 0.00 | - 4,012,535.72 | - 4,012,535.72 | 0.00 | 0.00 | 0.00 |
| Total pending trade purchases - all countries | | 0.00 | - 4,012,535.72 | - 4,012,535.72 | 0.00 | 0.00 | 0.00 |
| **Total Pending trade purchases** | | | | | | | |
| **0.00** | | **0.00** | **- 4,012,535.72** | **- 4,012,535.72** | **0.00** | **0.00** | **0.00** |

**Pending trade sales**

| USD - United States dollar | 1.0000000 | 0.00 | 3,524,618.37 | 3,524,618.37 | 0.00 | 0.00 | 0.00 |
|---|---|---|---|---|---|---|---|
| Total pending trade sales - all currencies | | 0.00 | 3,524,618.37 | 3,524,618.37 | 0.00 | 0.00 | 0.00 |
| Total pending trade sales - all countries | | 0.00 | 3,524,618.37 | 3,524,618.37 | 0.00 | 0.00 | 0.00 |

**Northern Trust**

*Generated by Northern Trust from periodic data on 22 Jan 21*

## Portfolio Statement

**31 DEC 2020**

Account number SELPTA
Account Name STATIONARY ENGINEERS L39ALL

◆ ## Asset Detail - Base Currency

Page 158 of 1,860

| Description/Asset ID Investment Mgr ID Shares/PAR value | Exchange rate/ Local market price | Accrued income/expense | Market value | Cost | Market | Unrealized gain/loss Translation | Total |
|---|---|---|---|---|---|---|---|

### *Adjustments To Cash*

**Pending trade sales**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Total Pending trade sales** | | | | | | | |
| 0.00 | 0.00 | | 3,524,618.37 | 3,524,618.37 | 0.00 | 0.00 | 0.00 |
| | | | | | | | |
| **Total Adjustments To Cash** | | | | | | | |
| 0.00 | 0.00 | | - 487,917.35 | - 487,917.35 | 0.00 | 0.00 | 0.00 |

| **Total** | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | 1,016,201,336.76 | 765,296,291.98 | | | |

++ Informational Only Asset - an asset that is not held in the account but that is included in Northern Trust's reports at the client's request solely as a matter of convenience to the client. Custodial and other responsibilities for this asset rest solely with the client or another custodian. Northern Trust has no custodial or other responsibilities for this asset, and the asset is not an asset of any Northern Trust account for purposes of the applicable account agreement.

# Northern Trust

*Generated by Northern Trust from periodic data on 22 Jan 21*

**Attachments to 2020 Schedule MB (Form 5500)**
**I.U.O.E. Stationary Engineers Local 39 Pension Plan**
**EIN 94-6118939, Plan 001**

**Schedule MB, line 8b(2) – Schedule of Active Participant Data**

| AGE / SERVICE DISTRIBUTION OF ACTIVE PARTICIPANTS AS OF JANUARY 1, 2020 | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Age | Under 1 | 1 to 4 | 5 to 9 | 10 to 14 | 15 to 19 | 20 to 24 | 25 to 29 | 30 to 34 | 35 to 39 | 40 & up | Total |
| Under 25 | 54 | 60 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 114 |
| 25 to 29 | 92 | 178 | 51 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 321 |
| 30 to 34 | 86 | 240 | 134 | 35 | 1 | 0 | 0 | 0 | 0 | 0 | 496 |
| 35 to 39 | 86 | 233 | 168 | 114 | 43 | 0 | 0 | 0 | 0 | 0 | 644 |
| 40 to 44 | 55 | 170 | 150 | 145 | 66 | 22 | 1 | 0 | 0 | 0 | 609 |
| 45 to 49 | 51 | 120 | 133 | 134 | 94 | 52 | 22 | 1 | 0 | 0 | 607 |
| 50 to 54 | 54 | 124 | 105 | 124 | 145 | 84 | 45 | 29 | 2 | 0 | 712 |
| 55 to 59 | 31 | 118 | 117 | 167 | 168 | 131 | 86 | 73 | 16 | 0 | 907 |
| 60 to 64 | 19 | 64 | 71 | 97 | 93 | 74 | 52 | 72 | 42 | 9 | 593 |
| 65 to 69 | 9 | 15 | 14 | 20 | 27 | 14 | 11 | 5 | 6 | 7 | 128 |
| 70 & up | 1 | 4 | 6 | 1 | 3 | 2 | 1 | 2 | 0 | 1 | 21 |
| Total | 538 | 1,326 | 949 | 837 | 640 | 379 | 218 | 182 | 66 | 17 | 5,152 |

Average Age =  47.2                    Average Service =  11.5



**Attachments to 2020 Schedule MB (Form 5500)**
**I.U.O.E. Stationary Engineers Local 39 Pension Plan**
**EIN 94-6118939, Plan 001**

**Schedule MB, line 9c and 9h – Schedule of Funding Standard Account Bases**

| | Type of Base | Date Established | 1/1/2020 Outstanding Balance | Remaining Amortization Years | Beg of Yr Amortization Amount |
|---|---|---|---|---|---|
|  | **SCHEDULE OF AMORTIZATIONS REQUIRED FOR MINIMUM REQUIRED CONTRIBUTION AS OF JANUARY 1, 2020 - CHARGES** |
| 1. | Plan Amendment | 1/1/1986 | $ 885,455 | 1 | $ 885,455 |
| 2. | Plan Amendment | 1/1/1988 | 1,458,407 | 3 | 522,609 |
| 3. | Plan Amendment | 1/1/1989 | 142,052 | 4 | 39,557 |
| 4. | Plan Amendment | 1/1/1991 | 2,259,350 | 6 | 449,668 |
| 5. | Plan Amendment | 1/1/1992 | 1,278,041 | 7 | 225,593 |
| 6. | Plan Amendment | 1/1/1993 | 6,575,615 | 8 | 1,050,381 |
| 7. | Plan Amendment | 1/1/1997 | 4,088,552 | 12 | 495,940 |
| 8. | Plan Amendment | 1/1/1998 | 763,724 | 13 | 88,244 |
| 9. | Plan Amendment | 1/1/1999 | 1,983,521 | 14 | 219,516 |
| 10. | Plan Amendment | 1/1/2000 | 2,045,213 | 15 | 217,811 |
| 11. | Plan Amendment | 1/1/2001 | 2,201,222 | 16 | 226,497 |
| 12. | Actuarial Loss | 1/1/2001 | 507,552 | 1 | 507,552 |
| 13. | Plan Amendment | 1/1/2002 | 2,411,754 | 17 | 240,605 |
| 14. | Actuarial Loss | 1/1/2002 | 1,691,569 | 2 | 877,140 |
| 15. | Assumption Change | 1/1/2002 | 41,511,903 | 17 | 4,141,374 |
| 16. | Plan Amendment | 1/1/2003 | 1,304,930 | 18 | 126,605 |
| 17. | Actuarial Loss | 1/1/2003 | 5,049,068 | 3 | 1,809,295 |
| 18. | Plan Amendment | 1/1/2004 | 2,950,115 | 19 | 279,098 |
| 19. | Plan Amendment | 1/1/2005 | 2,934,058 | 20 | 271,309 |
| 20. | Actuarial Loss | 1/1/2005 | 2,758,487 | 5 | 636,422 |
| 21. | Plan Amendment | 1/1/2006 | 6,252,558 | 21 | 566,290 |
| 22. | Actuarial Loss | 1/1/2006 | 5,739,434 | 6 | 1,142,294 |
| 23. | Plan Amendment | 1/1/2007 | 5,266,124 | 22 | 468,022 |
| 24. | Actuarial Loss | 1/1/2007 | 5,044,957 | 7 | 890,508 |
| 25. | Assumption Change | 1/1/2008 | 5,068,796 | 8 | 809,684 |



**Attachments to 2020 Schedule MB (Form 5500)**
**I.U.O.E. Stationary Engineers Local 39 Pension Plan**
**EIN 94-6118939, Plan 001**

**Schedule MB, line 9c and 9h – Schedule of Funding Standard Account Bases**

| SCHEDULE OF AMORTIZATIONS REQUIRED FOR MINIMUM REQUIRED CONTRIBUTION AS OF JANUARY 1, 2020 - CHARGES (CONTINUED) | | | | |
|---|---|---|---|---|
| Type of Base | Date Established | 1/1/2020 Outstanding Balance | Remaining Amortization Years | Beg of Yr Amortization Amount |
| 26. Actuarial Loss | 1/1/2008 | 7,487,631 | 8 | 1,196,065 |
| 27. Recognition of 2008 Investment Loss | 1/1/2009 | 124,248,393 | 18 | 12,054,689 |
| 28. Bifurcated loss  - 2008 | 1/1/2009 | 3,726,061 | 9 | 546,933 |
| 29. Recognition of 2008 Investment Loss | 1/1/2010 | 5,815,692 | 18 | 564,244 |
| 30. Recognition of 2008 Investment Loss | 1/1/2011 | 9,997,070 | 18 | 969,925 |
| 31. Recognition of 2008 Investment Loss | 1/1/2012 | 8,530,876 | 18 | 827,673 |
| 32. Bifurcated loss - 2011 | 1/1/2012 | 31,789,652 | 7 | 5,611,336 |
| 33. Recognition of 2008 Investment Loss | 1/1/2013 | 26,271,067 | 18 | 2,548,842 |
| 34. Recognition of 2008 Investment Loss | 1/1/2014 | 32,993,644 | 18 | 3,201,072 |
| 35. Assumption Change | 1/1/2015 | 11,003,934 | 10 | 1,502,125 |
| 36. Actuarial Loss | 1/1/2015 | 801,780 | 10 | 109,449 |
| 37. Actuarial Loss | 1/1/2016 | 22,807,460 | 11 | 2,923,346 |
| 38. Actuarial Loss | 1/1/2017 | 39,662,684 | 12 | 4,811,072 |
| 39. Actuarial Loss | 1/1/2018 | 10,564,149 | 13 | 1,220,635 |
| 40. Actuarial Loss | 1/1/2019 | 29,005,841 | 14 | 3,210,076 |
| 41. Actuarial Loss | 1/1/2020 | 21,160,508 | 15 | 2,253,550 |
| | | $  498,038,899 | | $  60,738,501 |



**Attachments to 2020 Schedule MB (Form 5500)**
**I.U.O.E. Stationary Engineers Local 39 Pension Plan**
**EIN 94-6118939, Plan 001**

**Schedule MB, line 9c and 9h – Schedule of Funding Standard Account Bases**

| | | | | |
|---|---|---|---|---|
| **SCHEDULE OF AMORTIZATIONS REQUIRED FOR MINIMUM REQUIRED CONTRIBUTION AS OF JANUARY 1, 2020 - CREDITS** | | | | |
| **Type of Base** | **Date Established** | **1/1/2020 Outstanding Balance** | **Remaining Amortization Years** | **Beg of Yr Amortization Amount** |
| 1. Assumption Change | 1/1/2000 | $    13,430,018 | 10 | $    1,833,305 |
| 2. Assumption Change | 1/1/2009 | 7,702,368 | 4 | 2,144,842 |
| 3. Bifurcated gain - 2009 | 1/1/2010 | 34,504,264 | 5 | 7,960,627 |
| 4. Bifurcated gain - 2010 | 1/1/2011 | 16,101,562 | 6 | 3,204,622 |
| 5. Bifurcated gain - 2012 | 1/1/2013 | 12,602,587 | 8 | 2,013,122 |
| 6. Bifurcated gain - 2013 | 1/1/2014 | 24,190,100 | 9 | 3,550,765 |
| 7. Assumption Change | 1/1/2016 | 25,968,989 | 11 | 3,328,575 |
| 8. Assumption Change | 1/1/2019 | 6,826,733 | 14 | 755,514 |
| TOTAL CREDITS | | $   141,326,621 | | $   24,791,372 |
| | | | | |
| **NET CHARGE** | | $   356,712,278 | | $   35,947,129 |



**Attachments to 2020 Schedule MB (Form 5500)**
**I.U.O.E. Stationary Engineers Local 39 Pension Plan**
**EIN 94-6118939, Plan 001**

**Schedule MB, line 11 – Justification for Change in Actuarial Assumptions**

In accordance with RPA '94, the interest assumption used to measure the current liability was changed from 3.06% to 2.95%. The mortality table used to determine RPA '94 current liability is the static mortality table as described under Regulation §1.430(h)(3)-1(e). The 2019 table was updated to 2020.



**Attachments to 2020 Schedule MB (Form 5500)**
**I.U.O.E. Stationary Engineers Local 39 Pension Plan**
**EIN 94-6118939, Plan 001**

**Schedule MB, line 6 – Statement of Actuarial Assumptions/Methods**

## A. Actuarial Assumptions

**1. Valuation Date**

January 1, 2020

**2. Rates of Investment Return**

7.70% compounded annually (funding)
2.95% compounded annually (current liability)
Returns are net of investment expenses.

**3. Rates of Turnover**

| Service | Rate |
|---|---|
| 0 | 20.00% |
| 1 | 7.50 |
| 2 | 6.50 |
| 3 | 5.50 |
| 4 | 4.50 |
| 5 | 3.00 |
| 6 | 2.75 |
| 7 | 2.50 |
| 8 | 2.25 |
| 9 | 2.00 |
| 10 | 1.75 |
| 11 | 1.50 |
| 12 | 1.25 |
| 13 | 1.00 |
| 14 | 0.75 |
| 15 | 0.50 |
| 16 and more | 0.25 |

For future inactive participants with service credits prior to June 30, 2008, the lower accrual rate (2.25% vs. 3.50%) is not recognized until they actually retire.

**4. Rates of Retirement**

| Age | Rate* |
|---|---|
| 55 | 5.0% |
| 56 | 5.0 |
| 57 | 5.0 |
| 58 | 5.0 |
| 59 | 5.0 |
| 60 | 20.0 |
| 61 | 20.0 |
| 62 | 20.0 |
| 63 | 20.0 |
| 64 | 25.0 |
| 65 | 35.0 |
| 66 | 40.0 |
| 67 | 40.0 |
| 68 | 40.0 |
| 69 | 40.0 |
| 70 | 100.0 |

*Rate if eligible for retirement*



**Attachments to 2020 Schedule MB (Form 5500)**
**I.U.O.E. Stationary Engineers Local 39 Pension Plan**
**EIN 94-6118939, Plan 001**

**Schedule MB, line 6 – Statement of Actuarial Assumptions/Methods**

**5. Status at Retirement**

It is assumed that all current active employees will retire from active status, and not inactive status, in regards to their accrued benefits.

**6. Retirement Age**

Vested terminated participants are assumed to retire at age 65.

**7. Late Retirement**

Participants are assumed to work continuously until decrement and therefore earn accruals, rather than actuarial increases, for late retirement.

**8. Administrative Expenses**

$1,750,000 per year, assumed beginning of the year, and increasing by 2% per year.

**9. Rates of Mortality**

*Healthy:*
125% of the RP-2014 Blue Collar Mortality and projected with 25% of the ultimate Scale MP-2014 rates.

*Disabled:*
125% of the RP-2014 Disabled Retiree Mortality and projected with 25% of the ultimate Scale MP-2014 rates.

*RPA '94 Current Liability:*
2020 IRS Current Liability Combined Table

Based on available experience, these tables reflect the best estimate of mortality experience as of the measurement date. The adjustments to the RP-2014 Blue Collar Mortality tables reflect a matching of these standard tables to the current experience. The projection of the ultimate Scale MP-2014 rates represents a provision of future mortality improvement.

**10. Rates of Disability**

| Age | Rate |
|-----|------|
| 20 | 0.03% |
| 25 | 0.05 |
| 30 | 0.06 |
| 35 | 0.08 |
| 40 | 0.11 |
| 45 | 0.26 |
| 50 | 0.37 |
| 55 | 0.92 |
| 60 | 0.92 |
| 65 | 0.92 |
| 70 | 0.00 |



**Attachments to 2020 Schedule MB (Form 5500)**
**I.U.O.E. Stationary Engineers Local 39 Pension Plan**
**EIN 94-6118939, Plan 001**

**Schedule MB, line 6 – Statement of Actuarial Assumptions/Methods**

**11. Participant Data**

The participant data used in these calculations was provided by the Administrator of the I.U.O.E. Stationary Engineers Local 39 Pension Plan according to the actuary's data requests. The data consists of pertinent active, terminated vested and retired plan participant information as of January 1, 2020.

**12. Marital Status**

80% of participants are assumed to be married, females are assumed to be four years younger than their spouses.

**13. Future Accrual**

For purposes of calculating the normal cost, it is assumed that active employees will work 1,945 hours in the next plan year and their contribution rate will be equal to their average contribution rate from the prior plan year increased by 5.50%.

**14. New Entrants**

A 2.75% load is added to the normal cost to account for new entrants.

**15. Rationale of Economic Assumptions**

In accordance with Actuarial Standard of Practice No. 27, the justification for the 7.70% discount rate is based on the investment manager's capital market outlook with the current asset allocation.

Based on the latest report from the investment consultant, Greystone Consultants, the 20-year expected geometric return for the portfolio is 7.10% representative of the current asset allocation and on an underlying inflation assumption of 1.9%. However, since 1913, the average rolling 10-year geometric mean of CPI-U is 3.1%. In addition, the 40th-60th percentile corridor of inflation rates is 2.5%-3.5%. Using the investment manager's expectation, but reflecting an assumed long-term reversion to the mean for inflation, an investment return of 7.70% was selected. This rate may not be appropriate for calculations other than those relating to Internal Revenue Code (IRC) Sections 404, 412, 431, and 432.

For purposes of calculating Current Liability per IRC section 431(c)(6), the top of the permissible range was used as published in the applicable IRS Notice based on the historical practice of the Plan.



**Attachments to 2020 Schedule MB (Form 5500)**
**I.U.O.E. Stationary Engineers Local 39 Pension Plan**
**EIN 94-6118939, Plan 001**

**Schedule MB, line 6 – Statement of Actuarial Assumptions/Methods**

**16. Rationale of Demographic Assumptions**

The demographic assumptions are based upon the most recent experience study covering the period from January 1, 2011 to January 1, 2016 that was presented to the Board of Trustees on October 20, 2016.

For purposes of calculating Current Liability per IRC section 431(c)(6), the static mortality table as described under Regulation §1.430(h)(3)-1(a)(3) was used.

**17. Assumption changes since last valuation**

In accordance with RPA '94, the interest assumption used to measure Current Liability was changed from 3.06% to 2.95%.

The mortality table used to determine RPA '94 Current Liability was updated to the current static mortality table as described under Regulation §1.430(h)(3)-1(a)(3).



**Attachments to 2020 Schedule MB (Form 5500)**
**I.U.O.E. Stationary Engineers Local 39 Pension Plan**
**EIN 94-6118939, Plan 001**

**Schedule MB, line 6 – Statement of Actuarial Assumptions/Methods**

## A. Actuarial Methods

**1. Asset Valuation Method**
The value of assets is based on recognizing investment gains/(losses) at the rate of 20% per plan year, except for 2008 investment losses which are recognized at a rate of 10% per plan year due to PRA 2010 Funding Relief. The Actuarial Value of Assets is the market value minus unrecognized gains/(losses). The unrecognized gain/(loss) for each plan year is equal to the actual return on assets minus the expected return on assets. The AVA is adjusted, if necessary, to remain between 80% and 120% of the market value.

**2. Funding Method: Unit Credit Cost Method**
The cost method for determining liabilities for this valuation is the Unit Credit Cost Method. This is one of a family of valuation methods known as accrued benefit methods. The chief characteristic of accrued benefit methods is that the funding pattern follows the pattern of benefit accrual. The normal cost is determined as that portion of each participant's benefit attributable to service expected to be earned in the upcoming plan year. The Actuarial Liability, which is determined for each participant as of each valuation date, represents the actuarial present value of the portion of each participant's benefit attributable to service earned prior to the valuation date.

**3. PRA 2010 Funding Relief**
The results in this valuation report continue to reflect the pension PRA 2010 Funding Relief as provided by the Preservation of Access to Care for Medicare Beneficiaries and Pension Relief Act of 2010 and adopted by the Board. The following special funding rules applied for the plan year commencing January 1, 2009:

- The "special amortization rule," which allows the Plan's investment losses for the plan year ended December 31, 2008 to be separately amortized over 29 years, whereas they were previously required to be amortized over 15 years.
- The "special asset valuation rule" in determining the Actuarial Value of Assets, which allows the Plan to recognize the 2008 loss over 10 years, at 10% per year. Prior to the relief, the 2008 loss would be recognized over five years, or 20% per year.

There are anticipated to be additional adjustments as a result of the elected relief through 2014. No benefit increases can be granted for two years following the last application of PRA 2010 Funding Relief, or January 1, 2016, unless it can be certified that the cost of such changes are covered by additional contribution increases.

**4. Amortization Extensions**
The results also reflect the five-year automatic amortization extension that was adopted effective January 1, 2009.

**5. Changes in Actuarial Methods since Last Valuation**
None.



| Employer Name | Group Number | Effective From | CBA Expiration Date | Description |
|---|---|---|---|---|
| | | | | |
| | | | | |
| ABLE | 1601-6136 | 9/1/2022 | 1/0/1900 | NON |
| | 1601-1214 | 3/1/2023 | 12/31/2018 | BOMA |
| | 1601-6115 | | 6/30/2021 | NON |
| | 1601-0239 | | 6/30/2021 | NON |
| | 1601-0418 | | 12/31/2021 | NON |
| | 1601-1503 | | 12/31/2022 | NON |
| | 1601-0204 | | 9/30/2023 | NON |
| | 1601-0205 | | 9/30/2023 | NON |
| | 1601-0850 | | 9/30/2023 | NON |
| | 1601-1176 | | 9/30/2023 | NON |
| | 1601-1195 | | 11/30/2023 | NON |
| | 1602-5853 | | 2/28/2024 | BOMA |
| | 1601-6102 | | 5/31/2024 | BOMA |
| | 1601-6103 | | 5/31/2024 | BOMA |
| | 1601-1301 | | 7/15/2024 | NON |
| | 1601-1334 | | 7/15/2024 | NON |
| | 1314-0678 | | 7/31/2024 | NON |
| | 1601-0254 | | 7/31/2024 | NON |
| | 1601-0267 | | 7/31/2024 | NON |
| | 1601-1457 | | 7/31/2024 | NON |
| | 1601-1258 | 3/1/2023 | No Date | BOMA |
| | 1601-5826 | 3/1/2023 | No Date | BOMA |
| | 1601-0234 | 7/16/2023 | No Date | NON |
| | 1601-1138 | 3/1/2023 | No Date | NON |
| | 1601-1171 | 3/1/2023 | No Date | NON |
| | 1601-1307 | 1/1/2021 | No Date | NON |
| | 1602-6057 | 11/16/2023 | No Date | NON |
| | 1601-1258 | 3/1/2023 | No Date | BOMA |

**Attachments to 2020 Schedule MB (Form 5500)**
**I.U.O.E. Stationary Engineers Local 39 Pension Plan**
**EIN 94-6118939, Plan 001**

**Schedule MB, line 8b(1) – Schedule of Projected Benefit Payments**

| Plan Year | Expected Annual Benefit Payments |
|---|---|
| 2020 | $ 98,889,954 |
| 2021 | 108,529,494 |
| 2022 | 117,765,152 |
| 2023 | 126,085,223 |
| 2024 | 133,069,580 |
| 2025 | 139,111,154 |
| 2026 | 144,095,025 |
| 2027 | 148,014,206 |
| 2028 | 150,874,024 |
| 2029 | 152,625,042 |

Notes on the Expected Annual Benefit Payments:
- Based on the 2020 funding assumptions
- Amounts are payable mid-year
- Per the 5500 instructions they do not include additional accruals, new entrants, or expected expenses



IUOE Stationary Engineers
Local 39 Pension Plan
EIN: 94-6118939   Plan: 001

Contribution Rate History
Able Engineering Services
From 1/1/2020 to 12/31/2020

| Work Classification | Fund | Rate | Calc Type |
|---|---|---|---|

**NON - Stand Alone Contract (Able Engineering Services) - Effective: 01/01/2020**

| Work Classification | Fund | Rate | Calc Type |
|---|---|---|---|
| DFLT - Default Work Classification | Pension DB | 10.5600 | H - Hours Worked |
| | Pension DB | 10.8400 | H - Hours Worked |

Total for Selected Funds: 21.4000

**NON - Stand Alone Contract (Able Engineering Services) - Effective: 05/01/2020**

| Work Classification | Fund | Rate | Calc Type |
|---|---|---|---|
| DFLT - Default Work Classification | Pension DB | 7.7600 | H - Hours Worked |

Total for Selected Funds: 7.7600

**NON - Stand Alone Contract (Able Engineering Services) - Effective: 07/01/2020**

| Work Classification | Fund | Rate | Calc Type |
|---|---|---|---|
| DFLT - Default Work Classification | Pension DB | 10.6600 | H - Hours Worked |

Total for Selected Funds: 10.6600

**NON - Stand Alone Contract (Able Engineering Services) - Effective: 07/16/2020**

| Work Classification | Fund | Rate | Calc Type |
|---|---|---|---|
| DFLT - Default Work Classification | Pension DB | 9.3500 | H - Hours Worked |
| | Pension DB | 9.3500 | H - Hours Worked |
| | Pension DB | 9.4800 | H - Hours Worked |
| | Non-Credited Pension | 1.5800 | H - Hours Worked |
| | Non-Credited Pension | 1.7100 | H - Hours Worked |
| | Non-Credited Pension | 1.7100 | H - Hours Worked |

Total for Selected Funds: 33.1800

**NON - Stand Alone Contract (Able Engineering Services) - Effective: 08/01/2020**

| Work Classification | Fund | Rate | Calc Type |
|---|---|---|---|
| DFLT - Default Work Classification | Pension DB | 7.8400 | H - Hours Worked |
| | Pension DB | 9.3500 | H - Hours Worked |
| | Pension DB | 9.4200 | H - Hours Worked |
| | Pension DB | 9.4800 | H - Hours Worked |
| | Non-Credited Pension | 0.5800 | H - Hours Worked |
| | Non-Credited Pension | 1.3800 | H - Hours Worked |
| | Non-Credited Pension | 1.5800 | H - Hours Worked |
| | Non-Credited Pension | 1.7100 | H - Hours Worked |

Total for Selected Funds: 41.3400

IUOE Stationary Engineers
Local 39 Pension Plan
EIN: 94-6118939   Plan: 001

Contribution Rate History
Able Engineering Services
From 1/1/2020 to 12/31/2020

### KAISR - Kaiser - Effective: 09/20/2020

| | | | | |
|---|---|---|---|---|
| DFLT - Default Work Classification | | Pension DB | 9.2800 | H - Hours Worked |
| | | Non-Credited Pension | 1.6200 | H - Hours Worked |

Total for Selected Funds: 10.9000

### NON - Stand Alone Contract (Able Engineering Services) - Effective: 10/01/2020

| | | | | |
|---|---|---|---|---|
| DFLT - Default Work Classification | | Pension DB | 4.7600 | H - Hours Worked |
| | | Pension DB | 8.8200 | H - Hours Worked |
| | | Pension DB | 8.8900 | H - Hours Worked |
| | | Non-Credited Pension | 0.5700 | H - Hours Worked |
| | | Non-Credited Pension | 1.5800 | H - Hours Worked |
| | | Non-Credited Pension | 1.6200 | H - Hours Worked |

Total for Selected Funds: 26.2400

### BOMA - BOMA(Building Owners Mgmt Assoc) (Able Engineering Services) - Effective: 11/01/2020

| | | | | |
|---|---|---|---|---|
| DFLT - Default Work Classification | | Pension DB | 8.9200 | H - Hours Worked |
| | | Pension DB | 8.9200 | H - Hours Worked |
| | | Pension DB | 10.7200 | H - Hours Worked |
| | | Non-Credited Pension | 1.6400 | H - Hours Worked |
| | | Non-Credited Pension | 1.6400 | H - Hours Worked |

Total for Selected Funds: 31.8400

### NON - Stand Alone Contract (Able Engineering Services) - Effective: 11/01/2020

| | | | | |
|---|---|---|---|---|
| DFLT - Default Work Classification | | Pension DB | 4.7600 | H - Hours Worked |
| | | Pension DB | 7.7600 | H - Hours Worked |
| | | Pension DB | 7.8400 | H - Hours Worked |
| | | Pension DB | 8.8200 | H - Hours Worked |
| | | Pension DB | 8.8900 | H - Hours Worked |
| | | Pension DB | 9.1300 | H - Hours Worked |
| | | Pension DB | 9.3500 | H - Hours Worked |
| | | Pension DB | 9.3500 | H - Hours Worked |
| | | Pension DB | 9.4200 | H - Hours Worked |
| | | Pension DB | 9.4800 | H - Hours Worked |
| | | Pension DB | 10.6600 | H - Hours Worked |
| | | Pension DB | 10.8400 | H - Hours Worked |
| | | Non-Credited Pension | 0.5700 | H - Hours Worked |
| | | Non-Credited Pension | 0.5800 | H - Hours Worked |

IUOE Stationary Engineers
Local 39 Pension Plan
EIN: 94-6118939    Plan: 001

Contribution Rate History
Able Engineering Services
From 1/1/2020 to 12/31/2020

|  |  | Non-Credited Pension | 1.3800 | H - Hours Worked |
|--|--|----------------------|--------|------------------|
|  |  | Non-Credited Pension | 1.4800 | H - Hours Worked |
|  |  | Non-Credited Pension | 1.5800 | H - Hours Worked |
|  |  | Non-Credited Pension | 1.6200 | H - Hours Worked |
|  |  | Non-Credited Pension | 1.7100 | H - Hours Worked |
|  |  | Non-Credited Pension | 1.7100 | H - Hours Worked |

Total for Selected Funds: 116.9300

**BOMA - BOMA(Building Owners Mgmt Assoc) (ABLE Engineering Services) - Effective: 12/01/2020**

| DFLT - Default Work Classification | Pension DB | 11.3200 | H - Hours Worked |
|------------------------------------|------------|---------|------------------|
|  | Non-Credited Pension | 1.6400 | H - Hours Worked |

Total for Selected Funds: 12.9600

**NON - Stand Alone Contract (Able Engineering Services) - Effective: 12/01/2020**

| DFLT - Default Work Classification | Pension DB | 9.6800 | H - Hours Worked |
|------------------------------------|------------|--------|------------------|
|  | Non-Credited Pension | 1.4800 | H - Hours Worked |

Total for Selected Funds: 11.1600

**Attachments to 2020 Schedule MB (Form 5500)**
**I.U.O.E. Stationary Engineers Local 39 Pension Plan**
**EIN 94-6118939, Plan 001**

**Schedule MB, line 3 – Withdrawal Liability Amounts**

| Date | Withdrawal Liability Payments |
|---|---|
| 01/2020 | $          0 |
| 02/2020 | 0 |
| 03/2020 | 0 |
| 04/2020 | 0 |
| 05/2020 | 0 |
| 06/2020 | 0 |
| 07/2020 | 33,459 |
| 08/2020 | 0 |
| 09/2020 | 0 |
| 10/2020 | 26,349 |
| 11/2020 | 0 |
| 12/2020 | 0 |

Given the relative magnitude of the Withdrawal Liability payments to all employer contributions made to the Plan, all contributions are assumed to be made mid-year.



**Attachments to 2020 Schedule MB (Form 5500)**
**I.U.O.E. Stationary Engineers Local 39 Pension Plan**
**EIN 94-6118939, Plan 001**

**Schedule MB, line 8e – Minimum Required Contributions (MRC)**

In Schedule MB prior to 2020, the number reported on Line 8e was the difference in the net amortizations with interest with and without the IRC 431(d)(1) extensions applied. Starting in 2020, the difference in the end of year Minimum Required Contribution was reported in Line 8e. The new method will factor in the on-going differences in credit balances or funding deficiencies.

| | MRC without Extensions | MRC with Extensions | Difference |
|---|---|---|---|
| 1. Normal Cost | $   66,172,592 | $   66,172,592 | $               0 |
| 2. Amortization Charges | 57,129,367 | 60,738,501 | (3,609,134) |
| 3. Interest | 9,494,251 | 9,772,154 | (277,903) |
| 4. Total Charges | $ 132,796,210 | $ 136,683,247 | $   (3,887,037) |
| | | | |
| 5. Prior Year Credit Balance | $   49,559,844 | $   91,410,586 | $   (4,164,940) |
| 6. Amortization Credits | 24,791,372 | 24,791,372 | (8,051,977) |
| 7. Interest | 5,725,044 | 8,947,551 | (12,216,917) |
| 8. Total Credits | $   80,076,260 | $ 125,149,509 | $ (24,433,834) |
| | | | |
| 9. MRC [4. - 8.] | 52,719,950 | 11,533,738 | 41,186,212 |
| 10. Prior Method [1. + 2. - 6. + Interest] | 106,095,902 | 109,982,940 | (3,887,038) |



**IUOE Stationary Engineers Local 39 Pension Plan**

**EIN:  94-6118939**　　　　　　　　　　　　**Plan Number:   001**

**FYE: December 31, 2020**

**Schedule of Reportable Transactions, Form 5500, Schedule H, Line 4j**

| (a) Identity of party involved | (b) Description of asset | (c) Purchase Price | (d) Selling price | (e) Lease Rental | (f) Expense incurred with transaction | (g) Cost of asset | (h) Current value of asset on transaction date | (l) Net gain or (loss) |
|---|---|---|---|---|---|---|---|---|
| | See Attached | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

◆  5% Report - Part A

*Single Transaction in Excess of 5%*

| Security Description / Asset ID | Shares/Par Value | Date | Acquisition Price | Disposition Price | Lease Rental | Expenses Incurred | Cost | Current Value on Transaction Date | Net Gain/Loss |
|---|---|---|---|---|---|---|---|---|---|
| **Value of Interest in Common/Collective Trusts** | | | | | | | | | |
| **United States -  USD** | | | | | | | | | |
| COLTV SHORT TERM INVT FD CUSIP: 195998AC3 | 50,000,000.000 | 28 Oct 20 | 1.0000 | | | 0.00 | 50,000,000.00 | 50,000,000.00 | 0.00 |

NOTE: TRANSACTIONS ARE BASED ON THE 2019-12-31  VALUE (INCLUDING ACCRUALS) OF 946,712,836.13

**Northern Trust        - Dol**

**5500 Supplemental Schedules**

1 JAN 20 - 31 DEC 20

Account number SELPTA
Account Name STATIONARY ENGINEERS L39ALL

◆ 5% Report - Part C Summary

*Series of Transactions by Issue in Excess of 5%*

| Security Description / Asset ID | | Number of Transactions | Transaction Aggregate Acquisition Price | Disposition Price | Lease Rental | Expenses Incurred | Cost of Asset | Current Value of Asset on Transaction |
|---|---|---|---|---|---|---|---|---|
| COLTV SHORT TERM INVT FD CUSIP: 195998AC3 | Total acquisitions | 890 | 546,732,254.03 | | | 0.00 | 546,732,254.03 | 546,732,254.03 |
| | Total dispositions | 508 | | 538,575,430.75 | | 0.00 | 538,575,430.75 | 538,575,430.75 |
| UNITED STATES TREAS NTS 1.375% DUE 01-31-2022  REG CUSIP: 912828Z60 | Total acquisitions | 26 | 43,184,064.66 | | | 0.00 | 43,184,064.66 | 43,184,064.66 |
| | Total dispositions | 15 | | 43,902,034.18 | | 0.00 | 43,184,064.66 | 43,902,034.18 |
| UNITED STATES TREAS NTS 1.375% DUE 01-31-2025 CUSIP: 912828Z52 | Total acquisitions | 13 | 32,501,980.86 | | | 0.00 | 32,501,980.86 | 32,501,980.86 |
| | Total dispositions | 17 | | 33,616,306.10 | | 0.00 | 32,501,980.86 | 33,616,306.10 |
| UTD STATES TREAS 1.5% DUE 10-31-2021   CUSIP: 912828YP9 | Total acquisitions | 6 | 8,981,492.20 | | | 0.00 | 8,981,492.20 | 8,981,492.20 |
| | Total dispositions | 25 | | 41,323,540.64 | | 0.00 | 41,251,580.68 | 41,323.540.64 |

**NOTE: TRANSACTIONS ARE BASED ON THE 2019-12-31  VALUE (INCLUDING ACCRUALS) OF 946,712,836.13**

**Northern Trust          - Dol**

| SCHEDULE MB<br>(Form 5500)<br><br>Department of the Treasury<br>Internal Revenue Service<br><br>Department of Labor<br>Employee Benefits Security Administration<br><br>Pension Benefit Guaranty Corporation | Multiemployer Defined Benefit Plan and Certain<br>Money Purchase Plan Actuarial Information<br><br>This schedule is required to be filed under section 104 of the Employee<br>Retirement Income Security Act of 1974 (ERISA) and section 6059 of the<br>Internal Revenue Code (the Code).<br><br>▶ File as an attachment to Form 5500 or 5500-SF. | OMB No. 1210-0110<br><br>**2020**<br><br>This Form is Open to Public<br>Inspection |

For calendar plan year 2020 or fiscal plan year beginning  `01/01/2020`  and ending  `12/31/2020`

▶ **Round off amounts to nearest dollar.**

▶ **Caution:** A penalty of $1,000 will be assessed for late filing of this report unless reasonable cause is established.

| A Name of plan<br>IUOE STATIONARY ENGINEERS LOCAL 39 PENSION FUND | B Three-digit<br>plan number (PN)   ▶   001 |
| C Plan sponsor's name as shown on line 2a of Form 5500 or 5500-SF<br>BOT OF IUOE STATIONARY ENGINEERS<br>LOC 39 PENSION FND | D Employer Identification Number (EIN)<br>94-6118939 |

E Type of plan:   (1) ☒ Multiemployer Defined Benefit      (2) ☐ Money Purchase (see instructions)

**1a** Enter the valuation date:   Month `1`   Day `1`   Year `2020`

**b** Assets

| | | |
|---|---|---:|
| (1) | Current value of assets ..................................................................................... | 1b(1) | 1,401,042,110 |
| (2) | Actuarial value of assets for funding standard account ...................................... | 1b(2) | 1,375,285,213 |

**c** (1) Accrued liability for plan using immediate gain methods ...... **1c(1)** `1,640,586,905`

(2) Information for plans using spread gain methods:

| | | |
|---|---|---|
| (a) | Unfunded liability for methods with bases ........................................ | 1c(2)(a) | |
| (b) | Accrued liability under entry age normal method ............................. | 1c(2)(b) | |
| (c) | Normal cost under entry age normal method .................................... | 1c(2)(c) | |
| (3) | Accrued liability under unit credit cost method ................................ | 1c(3) | 1,640,586,905 |

**d** Information on current liabilities of the plan:

| | | |
|---|---|---|
| (1) | Amount excluded from current liability attributable to pre-participation service (see instructions) ....... | 1d(1) | |
| (2) | "RPA '94" information: | | |
| (a) | Current liability........................................................................................... | 1d(2)(a) | 3,289,022,349 |
| (b) | Expected increase in current liability due to benefits accruing during the plan year...................... | 1d(2)(b) | 175,107,126 |
| (c) | Expected release from "RPA '94" current liability for the plan year............. | 1d(2)(c) | 97,996,063 |
| (3) | Expected plan disbursements for the plan year...................................... | 1d(3) | 100,833,982 |

**Statement by Enrolled Actuary**

To the best of my knowledge, the information supplied in this schedule and accompanying schedules, statements and attachments, if any, is complete and accurate. Each prescribed assumption was applied in accordance with applicable law and regulations. In my opinion, each other assumption is reasonable (taking into account the experience of the plan and reasonable expectations) and such other assumptions, in combination, offer my best estimate of anticipated experience under the plan.

| SIGN<br>HERE | *Joshua A. C. Davis* | `9/12/21` |
|---|---|---|
| | Signature of actuary | Date |

Joshua A. C. Davis                          20-07397

Type or print name of actuary              Most recent enrollment number

Cheiron, Inc.                               (703)893-1456

Firm name                                   Telephone number (including area code)

101 SW Main Street
Suite 1602
Portland                          OR  97204

Address of the firm

If the actuary has not fully reflected any regulation or ruling promulgated under the statute in completing this schedule, check the box and see instructions  ☐

For Paperwork Reduction Act Notice, see the Instructions for Form 5500 or 5500-SF.

Schedule MB (Form 5500) 2020
v. 200204

Schedule MB (Form 5500) 2020                                    Page **2 -** ☐

**2** Operational information as of beginning of this plan year:

**a** Current value of assets (see instructions) ..........................................................

| | **2a** | 1,401,042,110 |
|---|---|---|

**b** "RPA '94" current liability/participant count breakdown:

| | | **(1)** Number of participants | **(2)** Current liability |
|---|---|---|---|
| **(1)** | For retired participants and beneficiaries receiving payment ..................... | 3,284 | 1,239,022,723 |
| **(2)** | For terminated vested participants ........................................................ | 1,336 | 228,548,668 |
| **(3)** | For active participants: | | |
| | **(a)** Non-vested benefits............................................................... | | 72,935,066 |
| | **(b)** Vested benefits.................................................................... | | 1,748,515,892 |
| | **(c)** Total active ........................................................................ | 5,152 | 1,821,450,958 |
| **(4)** | Total ................................................................................... | 9,772 | 3,289,022,349 |

**c** If the percentage resulting from dividing line 2a by line 2b(4), column (2), is less than 70%, enter such percentage

| | **2c** | 42.60 % |
|---|---|---|

**3** Contributions made to the plan for the plan year by employer(s) and employees:

| **(a)** Date (MM-DD-YYYY) | **(b)** Amount paid by employer(s) | **(c)** Amount paid by employees | **(a)** Date (MM-DD-YYYY) | **(b)** Amount paid by employer(s) | **c)** Amount paid by employees |
|---|---|---|---|---|---|
| 07/01/2020 | 92,741,555 | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | **Totals ▶** **3(b)** | 92,741,555 | **3(c)** 0 |

**4** Information on plan status:

**a** Funded percentage for monitoring plan's status (line 1b(2) divided by line 1c(3)) ..............................

| | **4a** | 83.8 % |
|---|---|---|

**b** Enter code to indicate plan's status (see instructions for attachment of supporting evidence of plan's status). If entered code is "N", go to line 5

| | **4b** | N |
|---|---|---|

**c** Is the plan making the scheduled progress under any applicable funding improvement or rehabilitation plan? ...................... ☐ Yes ☐ No

**d** If the plan is in critical status or critical and declining status, were any benefits reduced (see instructions)? ...................... ☐ Yes ☐ No

**e** If line d is "Yes," enter the reduction in liability resulting from the reduction in benefits (see instructions), measured as of the valuation date ...................................

| | **4e** | |
|---|---|---|

**f** If the rehabilitation plan projects emergence from critical status or critical and declining status, enter the plan year in which it is projected to emerge.
If the rehabilitation plan is based on forestalling possible insolvency, enter the plan year in which insolvency is expected and check here .................................................................................. ☐

| | **4f** | |
|---|---|---|

**5** Actuarial cost method used as the basis for this plan year's funding standard account computations (check all that apply):

| **a** | ☐ Attained age normal | **b** | ☐ Entry age normal | **c** | ☒ Accrued benefit (unit credit) | **d** | ☐ Aggregate |
|---|---|---|---|---|---|---|---|
| **e** | ☐ Frozen initial liability | **f** | ☐ Individual level premium | **g** | ☐ Individual aggregate | **h** | ☐ Shortfall |
| **i** | ☐ Other (specify): | | | | | | |

**j** If box h is checked, enter period of use of shortfall method ..............................................

| | **5j** | |
|---|---|---|

**k** Has a change been made in funding method for this plan year? .............................................................. ☐ Yes ☒ No

**l** If line k is "Yes," was the change made pursuant to Revenue Procedure 2000-40 or other automatic approval? ........................ ☐ Yes ☐ No

**m** If line k is "Yes," and line l is "No," enter the date (MM-DD-YYYY) of the ruling letter (individual or class) approving the change in funding method ...................................

| | **5m** | |
|---|---|---|

Schedule MB (Form 5500) 2020           Page **3** - ☐

**6** Checklist of certain actuarial assumptions:

**a** Interest rate for "RPA '94" current liability ................................................................ **6a** | 2.95 %

| | Pre-retirement | Post-retirement |
|---|---|---|
| **b** Rates specified in insurance or annuity contracts .................... | ☐ Yes ☐ No ☒ N/A | ☐ Yes ☐ No ☒ N/A |

**c** Mortality table code for valuation purposes:

| | | Pre-retirement | Post-retirement |
|---|---|---|---|
| **(1)** Males ........................................... | **6c(1)** | A | A |
| **(2)** Females ........................................ | **6c(2)** | A | A |

| | | Pre-retirement | Post-retirement |
|---|---|---|---|
| **d** Valuation liability interest rate .................... | **6d** | 7.70 % | 7.70 % |
| **e** Expense loading ................................... | **6e** | 2.7 % ☐ N/A | % ☒ N/A |
| **f** Salary scale ....................................... | **6f** | % ☐ N/A | |

| | | |
|---|---|---|
| **g** Estimated investment return on actuarial value of assets for year ending on the valuation date ............... | **6g** | 6.5 % |
| **h** Estimated investment return on current value of assets for year ending on the valuation date ............... | **6h** | 16.2 % |

**7** New amortization bases established in the current plan year:

| **(1)** Type of base | **(2)** Initial balance | **(3)** Amortization Charge/Credit |
|---|---|---|
| 1 | 21,160,508 | 2,253,550 |
| | | |
| | | |

**8** Miscellaneous information:

| | | |
|---|---|---|
| **a** If a waiver of a funding deficiency has been approved for this plan year, enter the date (MM-DD-YYYY) of the ruling letter granting the approval ........................................................................ | **8a** | |
| **b(1)** Is the plan required to provide a projection of expected benefit payments? (See the instructions.) If "Yes," attach a schedule ........................................................................ | | ☒ Yes ☐ No |
| **b(2)** Is the plan required to provide a Schedule of Active Participant Data? (See the instructions.) If "Yes," attach a schedule ........................................................................ | | ☒ Yes ☐ No |
| **c** Are any of the plan's amortization bases operating under an extension of time under section 412(e) (as in effect prior to 2008) or section 431(d) of the Code? ........................................................................ | | ☒ Yes ☐ No |

**d** If line c is "Yes," provide the following additional information:

| | | |
|---|---|---|
| **(1)** Was an extension granted automatic approval under section 431(d)(1) of the Code? ........................ | | ☒ Yes ☐ No |
| **(2)** If line 8d(1) is "Yes," enter the number of years by which the amortization period was extended ........ | **8d(2)** | 5 |
| **(3)** Was an extension approved by the Internal Revenue Service under section 412(e) (as in effect prior to 2008) or 431(d)(2) of the Code? ........................................................................ | | ☐ Yes ☒ No |
| **(4)** If line 8d(3) is "Yes," enter number of years by which the amortization period was extended (not including the number of years in line (2)) ........................................................................ | **8d(4)** | |
| **(5)** If line 8d(3) is "Yes," enter the date of the ruling letter approving the extension .................... | **8d(5)** | |
| **(6)** If line 8d(3) is "Yes," is the amortization base eligible for amortization using interest rates applicable under section 6621(b) of the Code for years beginning after 2007? ........................................ | | ☐ Yes ☐ No |
| **e** If box 5h is checked or line 8c is "Yes," enter the difference between the minimum required contribution for the year and the minimum that would have been required without using the shortfall method or extending the amortization base(s) ........................................................................ | **8e** | 41,186,212 |

**9** Funding standard account statement for this plan year:

**Charges to funding standard account:**

| | | |
|---|---|---|
| **a** Prior year funding deficiency, if any ........................................................................ | **9a** | 0 |
| **b** Employer's normal cost for plan year as of valuation date ................................................ | **9b** | 66,172,593 |

**c** Amortization charges as of valuation date:

| | | Outstanding balance | |
|---|---|---|---|
| **(1)** All bases except funding waivers and certain bases for which the amortization period has been extended ........................................... | **9c(1)** | 498,038,899 | 60,738,501 |
| **(2)** Funding waivers ........................................... | **9c(2)** | 0 | 0 |
| **(3)** Certain bases for which the amortization period has been extended ........................................... | **9c(3)** | 0 | 0 |

| | | |
|---|---|---|
| **d** Interest as applicable on lines 9a, 9b, and 9c ............................................................. | **9d** | 9,772,154 |
| **e** Total charges. Add lines 9a through 9d ................................................................... | **9e** | 136,683,248 |

Schedule MB (Form 5500) 2020            Page **4**

**Credits to funding standard account:**

| | | | |
|---|---|---|---|
| **f** Prior year credit balance, if any.......................................................... | **9f** | | 91,410,586 |
| **g** Employer contributions. Total from column (b) of line 3............................ | **9g** | | 92,741,555 |

| | | Outstanding balance | |
|---|---|---|---|
| **h** Amortization credits as of valuation date............................ | **9h** | 141,326,621 | 24,791,372 |

| | | |
|---|---|---|
| **i** Interest as applicable to end of plan year on lines 9f, 9g, and 9h .......................... | **9i** | 12,451,892 |

**j** Full funding limitation (FFL) and credits:

| | | | |
|---|---|---|---|
| **(1)** ERISA FFL (accrued liability FFL)................................ | **9j(1)** | 455,447,006 | |
| **(2)** "RPA '94" override (90% current liability FFL) .................................... | **9j(2)** | 1,742,482,610 | |
| **(3)** FFL credit ................................................................ | **9j(3)** | | 0 |
| **k (1)** Waived funding deficiency .................................................. | **9k(1)** | | 0 |
| **(2)** Other credits ........................................................... | **9k(2)** | | 0 |
| **l** Total credits. Add lines 9f through 9i, 9j(3), 9k(1), and 9k(2) ................... | **9l** | | 221,395,405 |
| **m** Credit balance: If line 9l is greater than line 9e, enter the difference ............ | **9m** | | 84,712,157 |
| **n** Funding deficiency: If line 9e is greater than line 9l, enter the difference................ | **9n** | | |

**9 o** Current year's accumulated reconciliation account:

| | | | |
|---|---|---|---|
| **(1)** Due to waived funding deficiency accumulated prior to the 2020 plan year ..................... | **9o(1)** | | 0 |
| **(2)** Due to amortization bases extended and amortized using the interest rate under section 6621(b) of the Code: | | | |
|      **(a)** Reconciliation outstanding balance as of valuation date ................................ | **9o(2)(a)** | | 0 |
|      **(b)** Reconciliation amount (line 9c(3) balance minus line 9o(2)(a)) ........................ | **9o(2)(b)** | | 0 |
| **(3)** Total as of valuation date ....................................................... | **9o(3)** | | 0 |
| **10** Contribution necessary to avoid an accumulated funding deficiency. (See instructions.)........................ | **10** | | |
| **11** Has a change been made in the actuarial assumptions for the current plan year? If "Yes," see instructions................. | | | ☒ Yes ☐ No |

# EXHIBIT L





## INDEPENDENT ACCOUNTANT'S REPORT
## ON APPLYING AGREED-UPON PROCEDURES

To the Board of Trustees
Stationary Engineers Local 39 Trust Funds

Re: Regional Medical Center of San Jose
    Employer Number - 1432-0001

We have performed the procedures described in our engagement letter to the accounting records of the employer for the period as shown on the attached schedules. These procedures, which were agreed to by the Board of Trustees, were performed solely to assist you in evaluating the propriety of contributions to the Trust. The Trustees are responsible for evaluating the propriety of the contributions. The agreed-upon procedures were performed in accordance with attestation standards established by the American Institute of Certified Public Accountants. The sufficiency of these procedures is solely the responsibility of the Board of Trustees. Consequently, we make no representation regarding the sufficiency of the procedures either for the purpose for which this report has been prepared or for any other purpose.

We were not engaged to and did not conduct an examination, the objective of which is the expression of an opinion on the propriety of contributions to the Trust. Accordingly, we do not express such an opinion. Had we performed additional procedures, other matters might have come to our attention that would have been reported to you.

This report is intended solely for the information and use of the Board of Trustees and is not intended to be and should not be used by anyone other than those specified parties.

*Lindquist LLP*

June 5, 2017

## STATIONARY ENGINEERS LOCAL 39
## TRUST FUNDS

**EMPLOYER NAME:** Regional Medical Center of San Jose

**EMPLOYER #:** 1432-0001

**LOCAL #:** 39

**ADDRESS:** 225 North Jackson Avenue, San Jose, CA 95116          **PHONE:** (408) 272-6496

**CONTACT:** Wendy Ahrens, Human Resources Manager

**TESTING PERIOD COVERED:** February 1, 2010 through October 31, 2013

**RANGE OF EMPLOYEES REPORTED:** 9 - 11

**5% OF CONTRIBUTIONS REPORTED:** $20,983.77

---

During our testing we noted that the employer is subcontracting out work covered by the collective bargaining agreement. The collective bargaining agreement states, " Such rights of management shall include, among other things, but are not limited to: The right of the Hospital in its sole discretion, to plan, direct, control, increase, decrease, or diminish staffing in whole or in part; to change methods, to introduce new methods, techniques, and/or machines, to change or discontinue any procedure used; to hire , transfer, discharge for just cause as defined elsewhere in the Agreement, or relieve engineers for lack of work, to add or reduce the numbers of shifts, the work schedule and/or the number of overtime hours to be worked; and to determine the number or employees that it shall employ at any one time and the qualifications necessary for any of the jobs it shall have; to subcontract work for economic reasons, in its discretion to rescind, or change reasonable Hospital work rules and regulations, or policies, so long as such rules are not inconsistent with an express provision of this agreement". We have discussed this matter with the Local Union and Legal Counsel and they are in agreement that we cannot quantify subcontractors due to the wording in the collective bargaining agreement.

The following types of discrepancies were noted:

1.   Employee was compensated for more straight-time hours during the month than the number of hours reported to the Pension Trust.

2.   Employee was compensated for fewer straight-time hours during the month than the number of hours reported to the Pension Trust.

# STATIONARY ENGINEERS LOCAL 39 TRUST FUNDS

REGIONAL MEDICAL CENTER OF SAN JOSE

EMPLOYER #1432-0001

FEBRUARY 1, 2010 THROUGH OCTOBER 31, 2013

## SUMMARY OF DISCREPANCIES

|  | UNDER PAYMENTS | INTEREST DUE | LIQUIDATED DAMAGES | TOTAL DUE | IMPROPER PAYMENTS |
|---|---|---|---|---|---|
| PENSION | $ 6,730.55 | $ 3,264.00 | $ 673.06 | $ 10,667.61 | $ 49.60 |
| TOTAL | $ 6,730.55 | $ 3,264.00 | $ 673.06 | $ 10,667.61 | $ 49.60 |

DAILY INTEREST TO BE USED FOR INTEREST     $   1.39
CALCULATION BY THE TRUST OFFICE SUBSEQUENT TO
JUNE 30, 2016

Case 5:21-cv-09997-NC   Document 554-1   Filed 12/27/17   Page 430 of 433

## STATIONARY ENGINEERS LOCAL 39 PENSION AND ANNUITY TRUSTS
### REGIONAL MEDICAL CENTER OF SAN JOSE
### EMPLOYER #1432-0001
### FEBRUARY 1, 2010 THROUGH OCTOBER 31, 2013
### SUMMARY OF DISCREPANCIES

| EMPLOYEE SOCIAL SECURITY NUMBER | DISCREPANCY TYPE | WORK MONTH | HOURS REPORTABLE | HOURS REPORTED | DIFFERENCE | PENSION RATE | UNDER PAYMENTS | IMPROPER PAYMENTS |
|---|---|---|---|---|---|---|---|---|
| BURNLEY, B. | | | | | | | | |
| XXX-XX-3682 | | | | | | | | |
| | 1 | JUL-13 | 183.75 | 157.50 | 26.25 | $ 6.20 | $ 162.75 | $ - |
| | | | 183.75 | 157.50 | 26.25 | | 162.75 | - |
| HO, H. | | | | | | | | |
| XXX-XX-3749 | | | | | | | | |
| | 2 | SEP-13 | 160.00 | 168.00 | (8.00) | 6.20 | - | 49.60 |
| | | | 160.00 | 168.00 | (8.00) | | - | 49.60 |
| KEITH, K. | | | | | | | | |
| XXX-XX-8783 | | | | | | | | |
| | 1 | JAN-11 | 17.95 | - | 17.95 | 5.70 | 102.32 | - |
| | 1 | FEB-11 | 25.00 | - | 25.00 | 5.70 | 142.50 | - |
| | 1 | MAR-11 | 24.75 | - | 24.75 | 5.70 | 141.08 | - |
| | 1 | APR-11 | 66.25 | - | 66.25 | 5.70 | 377.63 | - |
| | 1 | MAY-11 | 16.00 | - | 16.00 | 5.70 | 91.20 | - |
| | 1 | JUN-11 | 16.00 | - | 16.00 | 5.70 | 91.20 | - |
| | 1 | JUL-11 | 32.00 | - | 32.00 | 5.70 | 182.40 | - |
| | 1 | AUG-11 | 32.00 | - | 32.00 | 5.70 | 182.40 | - |
| | 1 | SEP-11 | 32.00 | - | 32.00 | 5.70 | 182.40 | - |
| | 1 | NOV-11 | 24.75 | - | 24.75 | 5.95 | 147.26 | - |
| | 1 | DEC-11 | 16.25 | - | 16.25 | 5.95 | 96.69 | - |
| | 1 | JAN-12 | 16.00 | - | 16.00 | 5.95 | 95.20 | - |
| | 1 | FEB-12 | 16.00 | - | 16.00 | 5.95 | 95.20 | - |
| | 1 | MAR-12 | 16.00 | - | 16.00 | 5.95 | 95.20 | - |

# STATIONARY ENGINEERS LOCAL 39 PENSION AND ANNUITY TRUSTS

REGIONAL MEDICAL CENTER OF SAN JOSE

EMPLOYER #1-432-0001

FEBRUARY 1, 2010 THROUGH OCTOBER 31, 2013

## SUMMARY OF DISCREPANCIES

| EMPLOYEE SOCIAL SECURITY NUMBER | DISCREPANCY TYPE | WORK MONTH | HOURS REPORTABLE | HOURS REPORTED | DIFFERENCE | RATE | PENSION UNDER PAYMENTS | IMPROPER PAYMENTS |
|---|---|---|---|---|---|---|---|---|
| KEITH, K. (CONT) | 1 | APR-12 | 32.00 | – | 32.00 | $ 5.95 | $ 190.40 | – |
| | 1 | MAY-12 | 8.00 | – | 8.00 | 5.95 | 47.60 | – |
| | 1 | JUL-12 | 32.00 | – | 32.00 | 5.95 | 190.40 | – |
| | 1 | AUG-12 | 40.00 | – | 40.00 | 5.95 | 238.00 | – |
| | 1 | SEP-12 | 39.75 | – | 39.75 | 5.95 | 236.51 | – |
| | 1 | OCT-12 | 31.50 | – | 31.50 | 5.95 | 187.43 | – |
| | 1 | NOV-12 | 32.00 | – | 32.00 | 6.20 | 198.40 | – |
| | 1 | DEC-12 | 32.00 | – | 32.00 | 6.20 | 198.40 | – |
| | 1 | JAN-13 | 32.00 | – | 32.00 | 6.20 | 198.40 | – |
| | 1 | FEB-13 | 32.00 | – | 32.00 | 6.20 | 198.40 | – |
| | 1 | MAR-13 | 32.00 | – | 32.00 | 6.20 | 198.40 | – |
| | 1 | APR-13 | 32.00 | – | 32.00 | 6.20 | 198.40 | – |
| | 1 | MAY-13 | 32.00 | – | 32.00 | 6.20 | 198.40 | – |
| | 1 | JUN-13 | 30.50 | – | 30.50 | 6.20 | 189.10 | – |
| | 1 | JUL-13 | 32.00 | – | 32.00 | 6.20 | 198.40 | – |
| | 1 | AUG-13 | 48.00 | – | 48.00 | 6.20 | 297.00 | – |
| | 1 | SEP-13 | 32.00 | – | 32.00 | 6.20 | 198.40 | – |
| | | | 900.70 | – | 900.70 | | 5,385.32 | – |
| KEITH, S. XXX-XX-6012 | | | | | | | | |
| | 1 | FEB-12 | 72.00 | – | 72.00 | 5.95 | 428.40 | – |
| | 1 | MAR-12 | 62.40 | – | 62.40 | 5.95 | 371.28 | – |
| | 1 | APR-12 | 24.00 | – | 24.00 | 5.95 | 142.80 | – |
| | 1 | MAY-12 | 16.00 | – | 16.00 | 5.95 | 95.20 | – |
| | 1 | JUN-12 | 8.00 | – | 8.00 | 5.95 | 47.60 | – |
| | 1 | JUL-12 | 8.00 | – | 8.00 | 5.95 | 47.60 | – |
| | | | 190.40 | – | 190.40 | | 1,132.88 | – |

## STATIONARY ENGINEERS LOCAL 39 PENSION AND ANNUITY TRUSTS

REGIONAL MEDICAL CENTER OF SAN JOSE

EMPLOYER #1432-0001

FEBRUARY 1, 2010 THROUGH OCTOBER 31, 2013

### SUMMARY OF DISCREPANCIES

| EMPLOYEE SOCIAL SECURITY NUMBER | DISCREPANCY TYPE | WORK MONTH | HOURS REPORTABLE | HOURS REPORTED | DIFFERENCE | RATE | PENSION UNDER PAYMENTS | IMPROPER PAYMENTS |
|---|---|---|---|---|---|---|---|---|
| NOONAN, J. xxx-xx-9658 | 1 | Sep-13 | 168.00 | 160.00 | 8.00 | $ 6.20 | $ -49.60 | $ - |
| | | | 168.00 | 160.00 | 8.00 | | 49.60 | - |
| | | Total | 1,602.85 | 485.50 | 1,117.35 | | $ 6,730.55 | $ 49.60 |

## PROOF OF SERVICE

I, Mary Garner, declare:

I am a citizen of the United States and employed in Los Angeles County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is 350 South Grand Avenue, Suite 2300, Los Angeles, California 90071.  On July 7, 2022, I served a copy of the within document(s):

**DECLARATION OF PATRICIA G. GRIFFITH IN SUPPORT OF PETITIONER'S MOTION FOR FED. R. CIV. P. 54 APPLICATION FOR ATTORNEYS' FEES**

☒  ELECTRONICALLY: I caused a true and correct copy thereof to be electronically filed using the Court's Electronic Court Filing ("ECF") System and service was completed by electronic means by transmittal of a Notice of Electronic Filing on the registered participants of the ECF System. I served those parties who are not registered participants of the ECF System as indicated below.

☐  by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐  by placing the document(s) listed above in a sealed FedEx Overnight envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a FedEx agent for delivery.

Linda Baldwin Jones
Roberta D. Perkins
Bisma Shehbaz
Weinberg, Roger & Rosenfeld
1375 55th Street
Emeryville, CA 94608-2609
Telephone: 510 337-1001
Facsimile:  510 337-1023
Email:      Lbjones@unioncounsel.net
            Rperkins@unioncounsel.net
            bshebaz@unioncounsel.net

Counsel for Respondent

*Registered participant[s] in the ECF System*

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on July 7, 2022, at Los Angeles, California.

_Mary Garner_
_____
Mary Garner

DECLARATION OF PATRICIA G. GRIFFITH IN
SUPPORT OF PETITIONER'S FED. R. CIV. P. 54 MOTION
FOR ATTORNEYS' FEES; 5:21-CV-09974-SVK